IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(WESTERN DIVISION)

| | |
|---|---|
| TITAN TIRE CORPORATION OF FREEPORT, | ) |
| | ) |
| Plaintiff, | ) CASE NO. _____ |
| | ) |
| v. | ) MOTION TO VACATE |
| | ) ARBITRATION AWARD |
| UNITED STEELWORKERS OF AMERICA, | ) |
| LOCAL 745L, | ) |
| | ) |
| Defendant. | ) |

COMES NOW Titan Tire Corporation of Freeport ("Titan Tire") and in its claim against the United Steelworkers of America, Local 745L ("Union") moves to vacate an arbitration award as follows:

1. Titan Tire is an Illinois corporation with its principal place of business in Freeport, Illinois. Titan Tire operates a manufacturing facility in Freeport, Illinois for the construction of agricultural and other off-road tires.

2. The Union is a "labor organization" as defined in the Labor Management Relations Act, 29 U.S.C. § 152(5). The Union represents employees of Titan Tire's Freeport facility.

3. Jurisdiction in this court is appropriate under 9 USC § 1 *et seq.*, 28 USC § 1331 and 29 U.S.C. § 185.

4. Venue is appropriate in that this case is brought in the judicial district within which Defendant resides, pursuant to 28 USC § 1391(b), and within which a substantial part of the events giving rise to the claim occurred.

#337498-v1

## **FACTS**

5. The parties have entered into a labor agreement which provides that any controversy between Titan Tire and the Union shall be a grievance. A copy of the Collective Bargaining Agreement is attached hereto as Exhibit "A." (See Exhibit "A," Article VI).

6. Under the grievance procedure, any dispute that is not resolved by the parties is submitted to an arbitrator. (See Exhibit "A," Article VI, Section 4).

7. Under the terms of the Collective Bargaining Agreement, the arbitrator has limited authority:

> The impartial arbitrator shall not have the power to make any award changing, amending, or adding to the provisions of the Agreement. Specifically, the arbitrator shall not have the power to arbitrate general wage levels.

(Exhibit "A," Article VI, Section 4(e)).

8. On August 14, 2007 the parties submitted to arbitration the Company's refusal to permit United Way canvassing of employees at the Freeport facility. It was the Company's position that there was no agreement between the parties regarding solicitation of United Way contributions and any decision to allow such solicitation would be outside the contract.

9. On September 22, 2007 Arbitrator Alan Cook entered an Award granting the grievance permitting the Union the right to solicit contributions to United Way. A copy of the decision of the arbitrator is attached hereto as Exhibit "B."

10. Under the terms of the Collective Bargaining Agreement, the Arbitrator shall not enter an award that in any manner changes, amends or adds to the provisions of the Agreement.

11. The October 22, 2007 Award modifies the contract in that it permits solicitation of employees for the United Way, which was not a part of the Collective Bargaining Agreement.

12. Because the Arbitrator's Award violates the provision in the Collective Bargaining Agreement that limits the arbitrator's power, the Award does not draw its essence from the Collective Bargaining Agreement and is therefore outside the terms of the Agreement and invalid.

WHEREFORE, Plaintiff, Titan Tire Corporation of Freeport, requests that the Court enter an order vacating the October 22, 2007 Award of Arbitrator Alan Cook as being outside the terms of the Collective Bargaining Agreement.

/s/ Michael R. Lied
Michael R. Lied
Tracy C. Litzinger
Howard & Howard
One Technology Plaza, Ste. 600
211 Fulton Street
Peoria, IL 61602-1350
Telephone: (309) 999-6313
Facsimile: (309) 672-1568
E-mail: MLied@howardandhoward.com
E-mail: TLitzinger@howardandhoward.com

Gene R. La Suer
Davis, Brown, Koehn, Shors & Roberts, P.C.
666 Walnut Street, Suite 2500
Des Moines, Iowa 50309-3993
Telephone: (515) 288-2500
Facsimile: (515) 243-0654
E-mail: GeneLaSuer@davisbrownlaw.com

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

The undersigned caused a copy of the foregoing document to be served on all persons listed below, via courier and facsimile 815-232-7762, on this 21st day of January 2008.

> President of the United Steel Workers
> Local 745 – Freeport, IL
> 2496 East Maize Road
> Freeport, IL  61032

Under penalties as provided by law, the undersigned certifies that the statements set forth in this Certificate of Serve are true and accurate.

/s/ Michael R. Lied
Michael R. Lied
Tracy C. Litzinger
Howard & Howard
One Technology Plaza, Ste. 600
211 Fulton Street
Peoria, IL  61602-1350
Telephone:  (309) 999-6313
Facsimile:  (309) 672-1568
E-mail:  MLied@howardandhoward.com
E-mail:  TLitzinger@howardandhoward.com

## ARTICLE IV - GRIEVANCE PROCEDURE

(b)  On a date set by the Impartial Arbitrator, the parties shall at the time and place appointed by the Impartial Arbitrator, appear and present for his consideration a statement of the issues involved, either in writing or orally, as each party may desire. The Impartial Arbitrator shall schedule hearings of grievances in the order in which such grievances are submitted to him, unless the Company and the Union agree on a different order. The place of hearing shall be restricted to Freeport, Illinois, unless otherwise agreed upon.

(c)  The Impartial Arbitrator shall render a decision on the grievance within thirty (30) days following the hearing date of a grievance. At the close of a hearing, the parties may request an award. The Arbitrator shall make any request for additional time in writing and if the parties agree to the additional time, the Arbitrator will be so notified in writing.

   (1)  For the purpose of this section an award means the disposal of the grievance without a statement of reasoning leading to the conclusion reached. Henceforth, awards will not be regarded as having precedent value.

The decision of the Impartial Arbitrator shall be final and binding upon both parties and shall invoke immediate compliance by the parties. If such decision directs a retroactive wage payment the Company will notify the Union without delay of the date on which payment can be made to the employees affected. The Union will be notified in writing of the amount, to whom paid, and the date paid.

(d)  The expense and compensation of the Impartial Arbitrator shall be borne equally by the Company and the Union.

The parties to this agreement have agreed upon a panel of three arbitrators to be selected as set out in the arbitration protocol.

Within five (5) days following a request made by either party for the submission of an issue or issues to an Impartial Arbitrator, the President of the Local Union or his designated representative shall meet with the representative of the Employer for the purpose of selecting an Arbitrator from the panel listed above. In the event a selection cannot be made at such meeting by mutual agreement, the selection shall then be made by the Employer's representative and the Local Union representative alternately striking one name from the list until one name remains who shall be designated as the Arbitrator to hear the issue or issues to be submitted.

(e)  The Impartial Arbitrator shall not have the power to make any award changing, amending, or adding to the provisions of the Agreement. Specifically, the Arbitrator shall not have the power to arbitrate general wage levels.



AGREEMENT BETWEEN

TITAN TIRE CORPORATION OF FREEPORT

AND

LOCAL NO. 745L

UNITED STEELWORKERS

AFL-CIO

EFFECTIVE January 1, 2006

#1202779

## ARTICLE XI - MISCELLANEOUS CLAUSES

**Section 4—Management Working**
No supervisory personnel shall perform any work which would ordinarily be done by employees in the Bargaining Unit except for emergencies, inventory, trouble-shooting, and demonstrating methods or operations.

**Section 5—Address And Telephone**
It is each employee's responsibility to keep his current address and telephone number (if any), on record with the Company. Notice of change must be made on proper form available for that purpose and may be made with the employee's Supervisor or at the Human Resources Office. Listed telephone numbers should be in the residence of the employee. When the occasion arises, an attempt will be made to call those who have listed other than a residence number, but the Company will not be responsible for failure to reach such employees.

**Section 6—Employee Payroll And Production Records**
Whenever possible employees' payroll or production records will not be changed without first consulting the employee. Employees will be furnished with a copy of any adjustment or correction made by the Company to any payroll document which affects their earnings. When the change affects only the performance reported, the employee will be notified of the change that was made at the earliest practical opportunity.

**Section 7—Effect Of Agreement**

The parties have entered into this Collective Bargaining Agreement, a Benefits Agreement and a Supplemental Unemployment Benefits Plan ("Agreements"). Those Agreements shall constitute the sole and entire Agreement between the parties and supersedes all prior Agreements. The language of these Agreements will prevail over any oral agreements, unless specifically adopted by the Company in writing after the effective date of these Agreements.

For any past Freeport arbitration decisions, Goodyear arbitration decisions on relevant Benefits Agreement or Supplemental Unemployment Benefits Plan language or under the SUB agreement, precedent setting grievance settlements, memorandums of agreement, administrative letters or Standard Practice Letters ("Claimed Precedent") to be considered as applicable, they must be presented by either party before the Company issues a final response at Step 3 or they will not be relevant or admissible in any subsequent step, including, but not limited to arbitration. The parties agree that either party has up to ten (10) days after the close of the third step meeting to present to the other side any relevant "Claimed Precedent" for consideration. If any "Claimed Precedent" is presented, the other party will have until the case is certified for arbitration to provide any countervailing "Claimed Precedent" for consideration. Nothing herein will prevent the parties from arguing why the "Claimed Precedent" is not controlling before an arbitrator.

## ARTICLE XI - MISCELLANEOUS CLAUSES

For any past arbitration decision at the facility, not disclosed as set forth above, the decision shall not be controlling, but may be introduced for argument in any subsequent arbitration. Nothing herein shall be deemed to limit submission of arbitration cases as argument in accordance with the arbitration protocol.

No oral modifications to the Agreements or oral representations with Goodyear regarding: (a) the Agreements, (b) grievance settlements or (c) past practices that occurred prior to the effective date of these Agreements will be binding on the Company, nor will they be admissible in arbitration proceedings, unless specifically adopted by the Company in writing after the effective date of these Agreements. By "specifically adopted by the Company in writing" includes items in this Agreement as well as those adopted by the following procedure:

(1) Within 60 days of the effective date, the Union must present a list of all oral modifications, grievance settlements or past practices to the Company for review.

(2) Within 30 days of the date of presentation of the list, the Company will investigate all oral modifications, grievance settlements or past practices at the facility. The Company will then meet with the union and either accepts the oral modifications, grievance settlements or past practices or ask that the items disputed be specially set before an arbitrator for resolution. The standard for the arbitrator will be whether the oral agreement existed at least one day prior to the effective date of the this Agreement.

(3) To the extent either party intends to introduce as evidence, refer to or discuss any oral modifications to the Agreements, oral grievance settlements or past practices that are attributed to Goodyear that are not established by this provision, the following will apply. Written notice of said intent must be given no later than 30 days before the arbitration. With said notice must be given the name of the persons who were parties to the agreement, the terms of the agreement and the approximate date of the agreement. Nothing herein prevents either party from arguing any other legal basis from preventing this evidence to be received or considered.

(4) In no event may either party introduce evidence of either Goodyear's "intent" or the Union's "intent" at the bargaining table prior to the 1997 negotiations. If either party intends to introduce evidence of "intent" the following will apply. Written notice of said intent must be given no later than 30 days before the arbitration. With said notice must be given the name of the person expressing the intent, the approximate date of the statements, copies of all notes regarding the statements. Nothing herein prevents either party from arguing any other legal basis from preventing this evidence to be received or considered.

## ARTICLE XI - MISCELLANEOUS CLAUSES

    (5)    Nothing in this provision will prohibit either party from introducing either parties' intent or any oral modifications, grievance settlements or past practices attributed to Titan Tire.

### Section 8—Gloves

Gloves will be furnished in the first instance by the Company to employees who are regularly assigned to jobs which require usage of gloves, as determined by departmental management.

Replacements will be given only when the old gloves are unusable and turned in to the Company for exchange. Otherwise, the employees must sign a charge slip and have the price of the gloves deducted from his pay. An employee who has been furnished gloves by the Company and subsequently transfers to another job where gloves are not furnished, or who terminates his employment, must turn in his gloves to the Company or pay the price of the gloves.

### Section 9–Adoption Expenses

It was agreed that an employee who, while accumulating continuous service during the term of this Agreement, wishes to adopt such a child (a child under age 18 not related to the employee by blood or marriage), will, at the time of court finalization of the adoption, be reimbursed for the following covered expenses:

    (1)    Expenses for court costs and investigative, counseling and supervision fees charged by a recognized adoption agency which is licensed by appropriate State or County government authorities, not to exceed one thousand five hundred dollars ($1,500.00).

    (2)    Legal fees associated with the adoption procedure, not to exceed five hundred dollars ($500.00).

### Section 10–Lubrication

The responsibility for lubrication of all plant non-powered rolling equipment would be placed under the responsibility of production, the clean machinery and equipment classification.

### Section 11–Qualified Guidelines For Overtime And Short Work Week Scheduling

The term "qualified" as it applies to overtime opportunities and Short Work Week scheduling shall be determined by the following guidelines.

    (1)    A list will be maintained for each employee of the jobs they are qualified to perform.

```
-------------------------------------------------- )
In the Matter of Arbitration Between:            )   ARBITRATION AWARD
                                                 )
TITAN TIRE CORPORATION OF FREEPORT)                  GRIEVANCE CONCERNING
                                                 )
And                                              )   CONTINUATION OF ACTIVITIES
                                                 )   FOR THE UNITED WAY CHARITY
UNITED STEELWORKERS OF AMERICA,                  )
LOCAL NO. 745                                    )
                                                 )
ARBITRATION CASE NO. 07-08                       )
-------------------------------------------------- )   Grievance No. G06-199
```

## ALAN J. COOK
## IMPARTIAL ARBITRATOR

APPEARANCES:

   For the Employer ("Titan")

   Gene R. La Suer, Attorney At Law

   For the Union

   John Fuller, Union Spokesman

### STATEMENT

The parties were not able to reach a mutually satisfactory settlement of a certain grievance and therefore submitted the matter to arbitration in accordance with the terms of their Collective Bargaining Agreement. Alan J. Cook was selected to serve as Impartial Arbitrator. The parties agree the grievance is properly before the Arbitrator for resolution. They also agree there are no issues of arbitrability for this grievance.

A hearing was held in Freeport, Illinois on August 14, 2007. At this hearing the parties were afforded an opportunity to present oral and written evidence, to examine and cross-examine witnesses, and to make such arguments as were deemed pertinent. The hearing was closed on

EXHIBIT "B"

August 14, 2007 upon the conclusion of oral testimony and arguments.

## ISSUE

Did the Company violate the terms of the Collective Bargaining Agreement when it stopped participating in the annual collection of funds for the United Way Charity, discontinued the system of payroll withholding for employee contributions, and discontinued special parking spaces for certain contributors; and, if it did, what remedy would be appropriate?

## BACKGROUND STATEMENT

Titan purchased the Freeport facility from Goodyear Tire and Rubber Company ("Goodyear") on January 1, 2006. At this plant, the Company manufactures tires for construction, farming and off-road purposes. The purchase was preceded by many months of negotiation between Titan and Goodyear. In addition, Titan negotiated a Collective Bargaining Agreement ("Titan Agreement" or "Contract") with the Union which expires in November of 2010. This Contract contains many provisions that are very similar to terms in the earlier 2004 Agreement between Goodyear and the Union ("Goodyear Agreement"). New language was developed to establish certain provisions that did not appear in the Goodyear contract. In addition, the parties agreed to the terms of the document labeled "Understandings Outside the Agreement" ("Understandings").

For many years prior to Titan's purchase of the facility, Goodyear and the Union cooperated in jointly conducting yearly campaigns to collect money for the United Way Charity. The evidence shows this practice existed since at least 1996. A solicitation team of Union and

2

Company representatives contacted hourly and salary employees to ask them to give donations to the United Way Charity. Goodyear also made a corporate donation to the campaign. Many employees had their donations made through the process of withholding specified sums of money from their paychecks. Goodyear then forwarded these funds to United Way.

Goodyear and the Union also provided prizes and other incentives to entice employees to donate money to United Way. One of the incentives was the designation of two parking spaces near the entrance to the plant that would be awarded as prizes to employees who contribute funds to the yearly campaign.

When Titan and the Union were in the process of negotiating the present Contract, Titan made it known that it did not want to participate in any effort to raise funds for the United Way Charity. Since the last solicitation campaign during Goodyear's ownership was conducted during the fall of 2005, Titan agreed to implement in 2006 the payroll withholding requests made by employees during the 2005 solicitation campaign. When the Union began making arrangements for the 2006 solicitation campaign, Titan announced it would not participate in the solicitation efforts, would not withhold money from paychecks and would not provide the special parking space incentive.

The Union responded by filing the instant grievance on October 23, 2006 to protest Titan's refusal to participate in the United Way campaign. When the parties could not resolve the dispute, the grievance proceeded to arbitration for a final and binding resolution.

## POSITIONS OF THE PARTIES

**Union:**

The Union asserts the yearly United Way campaign was conducted pursuant to a

controlling oral argument/past participate with Goodyear. The Union claims this arrangement was carried over to the Contract with Titan via the terms of Article XI, Section 7 of the Agreement which addresses the issue of prior oral agreements/past practices. The Union notes on February 28, 2006 it provided Titan with a list of oral agreements and past practices that existed at the plant at the time of the sale of the facility. The Union gave notice it wanted these arrangements to continue as provided in Article XI, Section 7. The following three oral agreements are pertinent to this case:

12. Payroll deductions will be available for all items currently permissible including COPE/PAC contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishment payments, US savings bond purchases and 401(K) contributions and loan payments. (Emphasis supplied).

33. All employees, both hourly and salaried, are to be canvassed by plant personnel for contributions via payroll deductions to the area United Way organization with those monies forwarded to the United Way offices on a monthly basis. (Emphasis supplied).

34. A parking space inside the plant near the employee entrance will be reserved for use by selected United Way contributors. The selection process will be mutually agreeable. (Emphasis supplied).

While the Union acknowledges the Company rejected items 33 and 34, the Union believes it preserved these issues for resolution through arbitration. As to item 12, the Union points out in the Company's May 17, 2006 letter, Titan accepted this item with the deletion of the words "US savings bond purchases." The Union asks the Arbitrator to uphold the validity of the three above-stated items.

**Company:**

Titan notes it has a company-wide no-solicitation policy at its facilities. It points out it made this policy known to the Union during bargaining. Titan maintains it withheld payroll

4

deductions and allocated special parking spaces in 2006 to carry out the obligations incurred by Goodyear during the 2005 solicitation campaign.

Titan points out its no-solicitation policy (Co. Ex. 2) specifically provides "Employees may not solicit or advocate support for any cause or organization during their working time or during the working time of the employee to whom such activity is directed." Titan explains the reason for its policy is to conserve Company resources and work time that would be spent in solicitation campaigns. Titan also does not want to designate certain charities for favorable treatment at the expense of other worthwhile organizations. Furthermore, the Company does not want to encourage intimidation or pressure on employees to make donations when employees do not want to make contributions.

Titan claims it is management's discretion whether to participate in solicitation campaigns, and it believes it has not agreed with the Union to participate in the United Way campaign. It also disputes whether this arrangement constitutes a valid past practice.

## RELEVANT CONTRACTUAL PROVISIONS

### Collective Bargaining Agreement

Article XI, Section 7 – Effect of Agreement

No oral modification to the Agreements or oral representations with Goodyear regarding:
(a) the Agreements... (c) past practices that occurred prior to the effective date of the Agreements will be binding on the Company, nor will they be admissible in arbitration proceedings, unless specifically adopted by the Company in writing after the effective date of these Agreements. By "specifically adopted by the Company in writing" includes items in this Agreement as well as those adopted by the following procedure:
    (1) Within 60 days of the effective date, the Union must present a list of all oral modifications, grievance settlements or past practices to the Company for review.
    (2) Within 30 days of the date of presentation of the list, the Company will investigate all oral modifications, grievance settlements or past practices at the facility. The Company will then meet with the Union and either accept the oral modifications, grievance settlements or past practices or ask that the items

disputed be specifically set before an arbitrator for resolution. The standard for the arbitrator will be whether the oral agreement existed at least one day prior to the effective date of this Agreement.

## DISCUSSION AND DECISION

The evidence shows in annual United Way campaigns at this facility the plant was canvassed by teams of employees. These workers were excused from their regular job assignments during the canvass. Throughout the following year, the Company withheld authorized deductions from employees' paychecks and then forwarded the money to the United Way. The Company also designated special parking spaces to be used by selected United Way contributors.

The record reflects the issue of the United Way campaign was discussed by the parties during the negotiations for the current contact. The Company was aware of this oral agreement/past practice. Titan expressed its disapproval of this activity and stated its lack of support for the United Way Charity. However, the parties did not agree to stop supporting United Way. Titan did not successfully negotiate a discontinuance of activities in support of the United Way campaign.

The Union, on the other hand, preserved this issue in its list of oral agreements/past practices that it wanted to be resolved through Article XI, Section 7. Titan did not negotiate a provision to separate or remove this issue from the resolution procedure established by Article XI, Section 7. This provision provides that oral agreements/past practices that occurred prior to the effective date of the Agreement will be binding on the Company if they are "specifically adopted by the Company in writing." This section then defines the term "specifically adopted by the Company in writing" to include notice to the Company about the past practice within sixty days of the date of the Contract. In the present case, as discussed earlier, the Company does not

dispute it had notice of the past practice. This provision then requires the Company to investigate the past practice, meet with the Union, and either accept it or submit it to arbitration for resolution. This provision further states "The standard for the Arbitrator will whether the oral agreement existed at least one day prior to the effective date of this Agreement."

As noted above, Item 12 was "specifically adopted by the Company in writing" in its May 17, 2006 letter. As to Items 33 and 34, it must be concluded the record shows these oral agreements/past practices existed "at least one day prior to the effective date of this Agreement." Therefore, it must be held Items 33 and 34 meet the requirement of being found to be "specifically adopted by the Company in writing," and they, as well as Item 12, are controlling on the parties for the term of the Agreement.

Titan was aware of the oral agreement/past practice pertaining to the United Way Charity. However, this issue was not removed from the purview of the resolution process of Article XI, Section 7. The evidence shows Items 12, 33 and 34 are "specifically adopted by the Company in writing," and it must be concluded they apply to the Titan contract.

Titan argues its no solicitation policy applies to all its facilities. However, in regards to the Freeport plant, operations must comply with the terms of this Collective Bargaining Agreement, including Article XI, Section 7. Titan also argues the United Way campaign does not constitute a past practice because it does not qualify as a "major" condition of employment. It also claims it can terminate a past practice when there is a change in the underlying basis for the practice. However, Article XI, Section 7 applies to a wider scope of activities than just major conditions of employment. By its terms, this provision relates to "oral modifications to the Agreement or oral representations with Goodyear regarding (a) the Agreements, (b) grievance settlements or (c) past practices that occurred prior to the effective date of these agreements..."

7

There is no indication that this provision only applies to "major" conditions of employment or recognized past practices. Article XI, Section 7 has a wide application to oral agreements that include the agreement to utilize procedures to conduct the United Way campaign and the use of parking spaces as incentives for the campaign. Due to the wide scope of this contractual term, it is not necessary to decide if the United Way campaign meets the definition of the term "past practice."

## AWARD

The grievance is granted. The Company is directed to permit the United Way campaign to occur for Union members as it has been conducted in the past. The Company is further directed to continue the system of payroll withholding for contributions to United Way by bargaining unit members and forwarding those funds to United Way. The Company is also directed to reinstate the use of special parking spaces for certain contributors as done in the past. This Award will take effect on the date stated below so that a United Way campaign can occur in the fall of 2007 and payroll deductions can resume in 2008. Due to numerous variables, it is not practical to fashion a remedy that would apply to 2007 contributions. However, this Award applies for the duration of the current Agreement.

_____
ALAN J. COOK
Impartial Arbitrator

Dated at Chicago, Illinois

This 22 day of October, 2007.

8