WGB/lmm/#1814076                                                          6975-07003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. |
| TIME INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |

## NOTICE OF REMOVAL

**TO:**  The Honorable Judges of the United States District Court
     For the Northern District of Illinois, Western Division at Rockford
     211 South Court Street
     Rockford, IL 61101

**CC:**  W. Randal Baudin, Esq.
     Baudin & Baudin
     P.O. Box 845
     Dundee, IL 60118-0845

NOW COMES the defendant, TIME INSURANCE COMPANY, incorrectly sued herein

as "TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION,

INC.," by and through its attorney, William G. Beatty; Johnson & Bell, Ltd., of counsel, and

giving notice of the removal of the above-captioned cause from the Circuit Court for the Twenty-

second Judicial Circuit, McHenry County, Illinois, to the United States District Court for the

Northern District of Illinois, Western Division at Rockford, pursuant to the provisions of 28

U.S.C. §§ 1332(a) and 1441(a) here states as follows:

1.     This action is being removed to federal court on the basis of this Court's subject matter jurisdiction over civil actions between citizens of different states in circumstances under which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(a) and 1441(a).

2.     Venue is proper in the Unites States District Court for the Northern District of Illinois, Western Division, pursuant to the provisions of 28 U.S.C. § 1391(a), insofar as a substantial portion of the claimed events and alleged acts or omissions giving rise to the plaintiffs' claims occurred within this federal judicial district.

3.     Plaintiffs John V. Dano, Christine Dano and Emily Dano have heretofore filed a four-count Complaint at Law against defendant Time Insurance Company, seeking approximately contractual and extra-contractual damages, both common law and statutory, in claims arising under contract and tort law, relative to the denial of certain medical benefits claimed by the plaintiffs from Time Insurance Company ("Time") relative to certain care and treatment rendered to plaintiff Emily Dano.

4.     Specifically, plaintiffs seek contractual damages in excess of $50,000.00 in Count I of their Complaint, in addition to which plaintiffs seek and additional award of extra-contractual damages in excess of $50,000.00 under the statutory fraud claim set forth in Count III of their Complaint, along with additional relief in the form of statutory penalties, costs and attorneys' fees pursuant to Section 55 of the Illinois Insurance Code (215 ILCS 5/155) for alleged vexatious and unreasonable delay in the payment of insurance benefits, as is claimed in Count IV of plaintiffs' Complaint

5.     Upon information and belief, and at all times herein relevant, all plaintiffs were and are citizens and residents of the State of Illinois.

6.      At all times herein relevant, the defendant, Time Insurance Company, was and is a corporation organized and existing under the laws of the State of Wisconsin, having its principle place of business in Milwaukee, Wisconsin.

7.      The Complaint demonstrates that the plaintiffs are seeking both contractual and extra-contractual damages, under theories of common law breach of contract and statutory fraud, in combined excess of $100,000.00 in addition to which plaintiffs seek additional relief in the form of statutory penalties, attorneys' fees and costs of up to an additional $60,000.00 pursuant to the Illinois Insurance Code.

8.      This action is therefore one over which the United States District Court for the Northern District of Illinois, Western Division, has valid subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a), and is therefore one which is properly removable to this Court pursuant to the provisions of 28 U.S.C. § 1441(a), insofar as:

    a.      this case involves claims between citizens of different states;

    b.      the amount in controversy herein exceeds the sum of $75,000.00, exclusive of interest and costs; and

    c.      this Notice of Removal is timely filed in that it is being brought within thirty (30) days of service of the plaintiffs' Complaint, defendant Time having first been served with plaintiffs' Summons and Complaint on February 8, 2008, as is demonstrated in the Affidavit of the Process Server, a true and correct copy of which is appended to this Notice of Removal.

9.    In accordance with the provisions of 28 U.S.C. §1447(b), there are attached to this Notice of Removal true and correct copies of all pleadings and process served upon Time in this matter to date.

10.    In accordance with the provisions of 28 U.S.C. §1446(d), defendant Time will give prompt written notice of the removal of this cause to the plaintiff's counsel, and shall also file a copy of this Notice of Removal with the Clerk of the Circuit Court for the Twenty-second Judicial Circuit, McHenry County, Illinois.

WHEREFORE, the defendant, TIME INSURANCE COMPANY, incorrectly sued herein as "TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC.," hereby gives notice to this Honorable Court of the removal of this action from the Circuit Court of the Twenty-second Judicial Circuit, McHenry County, Illinois, to the United States District Court for the Northern District of Illinois, Western Division, and respectfully requests that this Honorable Court assume jurisdiction over the parties to this cause, and over the claims asserted herein, to the same extent and degree as if this matter had been originally filed in this Court.

Respectfully submitted,

**s/ William G. Beatty**
William G. Beatty Bar Number:  03121542
One of the attorneys for defendant,
    Time Insurance Company
Of counsel
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Telephone:  (312) 372-0770
Fax:  (312) 372-2881
E-mail:  beattyw@jbltd.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and will send notification of such filing to:

> W. Randal Baudin, Esq.
> Baudin & Baudin
> P.O. Box 845
> West Dundee, IL 60118-0845

via first-class, U.S. mail, postage prepaid.

> **s/ William G. Beatty**
> William G. Beatty Bar Number: 03121542
> One of the attorneys for defendant,
>     Time Insurance Company
> Of counsel
> Johnson & Bell, Ltd.
> 33 West Monroe Street, Suite 2700
> Chicago, IL 60603
> Telephone: (312) 372-0770
> Fax: (312) 372-2881
> E-mail: beattyw@jbltd.com

From: Law Offices Baudin and Baudin     Case 1:07-cv-05998    Document 32    Filed 03/06/2008    Page 6 of 68    #243 P.004/004
02/14/2008  13:54    8153444831    8474265057

02/27/2008 14:26    #243 P.003/004

MDS INVESTIGATIONS

PAGE  01/02

**SUMMONS – 30 DAY**

IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

(Name all parties)

JOHN V. DANO, CHRISTINE DANO, and

EMILY DANO,

_____

Plaintiff(s)

vs.

TIME INSURANCE COMPANY, a division

of ASSURANT HEALTH FOUNDATION,

INC., a Wisconsin corporation,

_____

Defendant(s)

Case Number __07 LA 450__

Amount Claimed $ __in excess of $50,000.00__

### ALIAS
# SUMMONS

**To each Defendant:**

    YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this court, McHenry County Government Center, 2200 N. Seminary Avenue, Woodstock, Illinois, 60098, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

**To the officer:**

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.



WITNESS _____January 22___ 20 08

_____Vernon W Kays Jr_____

Clerk of the Circuit Court

Plaintiff's attorney or plaintiff if he is not represented by an attorney

Name __W. RANDAL BAUDIN__

Attorney for __Plaintiffs__

Address __P.O. Box 845__

City, State Zip __Dundee, IL  60118-0845__

Telephone __847.426.5295__

Prepared by __W. RANDAL BAUDIN__

Attorney for __Plaintiffs__

Attorney Registration No. __137189__

CV-SUM9: Revised 12/01/06

Page 1 of 2

COPY

STATE OF ILLINOIS )
                        )
COUNTY OF McHENRY )

2/20/07

IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

FILED
DEC 18 2007

VERNON W. KAYS, JR.
McHENRY C'TY CIR. CLK.

JOHN V. DANO, CHRISTINE DANO, )
and EMILY DANO, )
      Plaintiffs, )
                         )
           vs. )
                         )
TIME INSURANCE COMPANY, )
a division of ASSURANT HEALTH )
FOUNDATION, INC., )
a Wisconsin corporation, )
      Defendant. )

No. 07LA450

## COMPLAINT AT LAW

NOW COME the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY

DANO, by and through their attorney, W. RANDAL BAUDIN, and complain against the

Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH

FOUNDATION, INC., a Wisconsin corporation, in separate counts as follows:

## COUNT I

## BREACH OF CONTRACT

1. That at all times herein, the Plaintiffs, JOHN V. DANO, CHRISTINE DANO,

and EMILY DANO, were residents of McHenry County, Illinois.

NOTICE
BY LOCAL RULE 3.10
THIS CASE IS HEREBY SET FOR SCHEDULING
CONFERENCE IN COURTROOM 204 ON
4-29 2008, AT 9 AM PM
FAILURE TO APPEAR MAY RESULT IN THE CASE
BEING DISMISSED OR AN ORDER OF
DEFAULT BEING ENTERED.

1

2.  The Plaintiff, JOHN V. DANO, obtained health insurance coverage for his family initially through Fortis Insurance Company of Milwaukee, Wisconsin, who on information and belief of the Plaintiff, JOHN V. DANO, has been succeeded in its business undertakings by TIME INSURANCE COMPANY, a corporation licensed to do business and doing business in the State of Illinois and in McHenry County, selling among other products, health insurance policies.

3.  On further information and belief of the Plaintiff, JOHN V. DANO, the said TIME INSURANCE COMPANY, is an affiliate or subsidiary of ASSURANT HEALTH FOUNDATION, INC., which is a Wisconsin corporation licensed to do business and doing business in the State of Illinois and in McHenry County, in that ASSURANT HEALTH products are underwritten and issued by TIME INSURANCE COMPANY.

4.  The Plaintiff, JOHN V. DANO'S relationship in acquiring said health insurance for his family began on or about August 20, 1990, with the said Fortis Insurance Company, and has continued uninterruptedly thereafter with the said Fortis Insurance Company's successors.

5.  On or about April 26, 2006, the Plaintiff, JOHN V. DANO, received his most current health insurance policy for his family, which was underwritten by the most recent successor of Fortis—to wit:  the Defendant, TIME INSURANCE COMPANY.  A copy of the said health insurance policy between the Defendant, TIME INSURANCE COMPANY, and the Plaintiff, JOHN V. DANO, is attached hereto as Group Exhibit "A."

6.  That under the terms and provisions of the said health insurance policy, the Defendant, TIME INSURANCE COMPANY, in essence agreed to provide health

2

insurance under a "family plan," which includes the Plaintiff's family members, *inter alia* EMILY DANO, the daughter of the named policyholder, JOHN V. DANO.

7.    That at all times herein, the Plaintiff, JOHN V. DANO, was married to CHRISTINE DANO, who was also a covered party under the said Defendant, TIME INSURANCE COMPANY'S health insurance policy.

8.    That EMILY DANO, born on May 2, 1988, at all times herein was a beneficiary of the said Defendant, TIME INSURANCE COMPANY'S health insurance policy attached hereto as Exhibit "A."

9.    The said health insurance policy of the Defendant, TIME INSURANCE COMPANY, with the Plaintiffs includes provisions of coverage and for reimbursement and/or payment for prescription medications purchased by its insureds for the treatment of their various medical maladies (the provision for "covered prescription drug services" pursuant to the said agreement, Exhibit "A," is included at pages 17 and 18 thereof).

10.    On or about 2002, the Plaintiff, EMILY DANO, was diagnosed as having a health condition known as Kleine-Levin Syndrome, which in essence is recognized as a "rare medical disorder characterized by the need for excessive amounts of sleep (hypersomnolence), *i.e.*, up to 20 hours a day, excessive food intake (compulsive hyperphagia); and an abnormally uninhibited sexual drive.  When awake, individuals afflicted with this disease may exhibit irritability, lack of energy (lethargy), and/or lack of emotions (apathy).   They may also appear confused (disoriented), and experience hallucinations.   Symptoms of Kleine-Levin Syndrome are cyclical.   An affected individual may go for weeks or months without experiencing symptoms.  When present, symptoms may persist for days to weeks."

3

11.  In the course of the Plaintiff, EMILY DANO'S recommended course of treatment for her Kleine-Levin Syndrome by board certified neurologist, Dr. Carol Macmillan—Dr. Macmillan has prescribed a regime of medications, including but not limited to:  Provigil, Seasonale, Inderal, Proamatine, Midodrine, Propranolol, Low-Ogestrel, and Methylphenidate.

12.  From time to time, since on or about November 2002, the Plaintiff, EMILY DANO, has had these prescriptions filled, and thereafter pursuant to the terms and provisions of the said health insurance policy she has with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), has submitted claims for payment of or reimbursement of her costs for the aforesaid medications.

13.  The Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, have complied with all of the obligations required of them pursuant to their agreement with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), and have duly submitted or have submitted on EMILY DANO'S behalf any and all documentation required to seek either payment for, or reimbursement of the expenditures made by JOHN V. DANO and/or CHRISTINE DANO and/or EMILY DANO, for her various said prescriptions—but the Defendant, TIME INSURANCE COMPANY, has consistently, persistently and wrongfully refused to pay for, or reimburse the DANOS for their expenditures for the aforesaid prescriptions.

14. As a result of the Defendant, TIME INSURANCE COMPANY'S failure and refusal to pay and/or reimburse the Plaintiffs for EMILY DANO'S said prescriptions—the Defendant, TIME INSURANCE COMPANY, is in breach and default of its said insurance policy agreement with the DANOS (Exhibit "A")—and as a proximate result

4

thereof, the DANOS have sustained considerable financial loss in excess of Fifty Thousand Dollars ($50,000.00), because they have been forced and compelled to pay for said medications.

15. That at all times herein, there was in full force and effect a certain statute in the State of Illinois, 750 ILCS 65/15(a)(1), what is commonly known as the Family Expense Statute, which provides in pertinent part:

> The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife or either of them in favor of creditors therefor.

16. That as a consequence of the aforesaid Family Expense Statute—in addition to the Plaintiff, EMILY DANO'S obligation to pay for her medications and prescriptions as aforesaid—her parents, JOHN V. DANO and CHRISTINE DANO, with whom she resides, are also liable and obligated to make such payments and/or have made such payments for the Plaintiff, EMILY DANO'S prescriptions.

WHEREFORE, in view of the foregoing, it is respectfully requested that Judgment be entered on behalf of the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, and against the Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC., in the sum of $50,000.00, plus costs of this suit, together with such other further and different relief as this Court deems appropriate.

## COUNT II

## DECLARATORY JUDGMENT ACTION

1. That at all times herein, the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, were residents of McHenry County, Illinois.

5

2. The Plaintiff, JOHN V. DANO, obtained health insurance coverage for his family initially through Fortis Insurance Company of Milwaukee, Wisconsin, who on information and belief of the Plaintiff, JOHN V. DANO, has been succeeded in its business undertakings by TIME INSURANCE COMPANY, a corporation licensed to do business and doing business in the State of Illinois and in McHenry County, selling among other products, health insurance policies.

3. On further information and belief of the Plaintiff, JOHN V. DANO, the said TIME INSURANCE COMPANY, is an affiliate or subsidiary of ASSURANT HEALTH FOUNDATION, INC., which is a Wisconsin corporation licensed to do business and doing business in the State of Illinois and in McHenry County, in that ASSURANT HEALTH products are underwritten and issued by TIME INSURANCE COMPANY.

4. The Plaintiff, JOHN V. DANO'S relationship in acquiring said health insurance for his family began on or about August 20, 1990, with the said Fortis Insurance Company, and has continued uninterruptedly thereafter with the said Fortis Insurance Company's successors.

5. On or about April 26, 2006, the Plaintiff, JOHN V. DANO, received his most current health insurance policy for his family, which was underwritten by the most recent successor of Fortis—to wit: the Defendant, TIME INSURANCE COMPANY. A copy of the said health insurance policy between the Defendant, TIME INSURANCE COMPANY, and the Plaintiff, JOHN V. DANO, is attached hereto as Group Exhibit "A."

6. That under the terms and provisions of the said health insurance policy, the Defendant, TIME INSURANCE COMPANY, in essence agreed to provide health

6

insurance under a "family plan," which includes the Plaintiff's family members, *inter alia* EMILY DANO, the daughter of the named policyholder, JOHN V. DANO.

7. That at all times herein, the Plaintiff, JOHN V. DANO, was married to CHRISTINE DANO, who was also a covered party under the said Defendant, TIME INSURANCE COMPANY'S health insurance policy.

8. That EMILY DANO, born on May 2, 1988, at all times herein was a beneficiary of the said Defendant, TIME INSURANCE COMPANY'S health insurance policy attached hereto as Exhibit "A."

9. The said health insurance policy of the Defendant, TIME INSURANCE COMPANY, with the Plaintiffs includes provisions of coverage and for reimbursement and/or payment for prescription medications purchased by its insureds for the treatment of their various medical maladies (the provision for "covered prescription drug services" pursuant to the said agreement, Exhibit "A," is included at pages 17 and 18 thereof).

10. On or about 2002, the Plaintiff, EMILY DANO, was diagnosed as having a health condition known as Kleine-Levin Syndrome, which in essence is recognized as a "rare medical disorder characterized by the need for excessive amounts of sleep (hypersomnolence), *i.e.*, up to 20 hours a day, excessive food intake (compulsive hyperphagia); and an abnormally uninhibited sexual drive. When awake, individuals afflicted with this disease may exhibit irritability, lack of energy (lethargy), and/or lack of emotions (apathy). They may also appear confused (disoriented), and experience hallucinations. Symptoms of Kleine-Levin Syndrome are cyclical. An affected individual may go for weeks or months without experiencing symptoms. When present, symptoms may persist for days to weeks."

7

11. In the course of the Plaintiff, EMILY DANO'S recommended course of treatment for her Kleine-Levin Syndrome by board certified neurologist, Dr. Carol Macmillan—Dr. Macmillan has prescribed a regime of medications, including but not limited to:  Provigil, Seasonale, Inderal, Proamatine, Midodrine, Propranolol, Low-Ogestrel, and Methylphenidate.

12. From time to time, since on or about November 2002, the Plaintiff, EMILY DANO, has had these prescriptions filled, and thereafter pursuant to the terms and provisions of the said health insurance policy she has with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), has submitted claims for payment of or reimbursement of her costs for the aforesaid medications.

13. The Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, have complied with all of the obligations required of them pursuant to their agreement with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), and have duly submitted or have submitted on EMILY DANO'S behalf any and all documentation required to seek either payment for, or reimbursement of the expenditures made by JOHN V. DANO and/or CHRISTINE DANO and/or EMILY DANO, for her various said prescriptions—but the Defendant, TIME INSURANCE COMPANY, has consistently, persistently and wrongfully refused to pay for, or reimburse the DANOS for their expenditures for the aforesaid prescriptions.

14. The Defendant, TIME INSURANCE COMPANY, has refused payment as aforesaid because it claims that the aforesaid medications for the Plaintiff, EMILY DANO, were excluded for coverage by reason of its definition of "Experimental or Investigational Services" set forth at page 6 of its policy (Exhibit "A"), which provides:

8

Treatment that, at the time the charges were incurred, we determine was:

*not proven to be of benefit for the diagnosis or treatment of the illness or injury; or

*not generally used or recognized by the United States medical community as safe, effective, or appropriate for the illness or injury; or

*in the research or investigational stage; or

*not generally accepted throughout the United States as we determine by reference to English language peer review literature, consultation with physicians, authoritative medical compendia, the American Medical Association, and other pertinent professional medical organizations or governmental agencies.

15. Dr. Carol Macmillan, however, has repeatedly advised the Defendant, TIME INSURANCE COMPANY, that EMILY DANO'S medication regime is not experimental, and because of the rarity of her disease, this prescription regime has been utilized—and by virtue of Dr. Macmillan's own reputation in treating Kleine-Levin Syndrome, that she has had various documented successes using this medication regime, and therefore, these medications should *not* be deemed experimental nature—and should be covered by the Defendant, TIME INSURANCE COMPANY.

16. As s result of the foregoing, there is an actual case and controversy between the parties as to coverage to be provided by the Defendant, TIME INSURANCE COMPANY, for EMILY DANO'S said prescriptions—and this dispute must be resolved by this Honorable Court.

17. As a result of the Defendant, TIME INSURANCE COMPANY'S failure and refusal to pay and/or reimburse the Plaintiffs for EMILY DANO'S said prescriptions— the Defendant, TIME INSURANCE COMPANY, is in breach and default of its said

insurance policy agreement with the DANOS (Exhibit "A")—and as a proximate result thereof, the DANOS have sustained considerable financial loss in excess of Fifty Thousand Dollars ($50,000.00), because they have been forced and compelled to pay for said medications.

18. That at all times herein, there was in full force and effect a certain statute in the State of Illinois, 750 ILCS 65/15(a)(1), what is commonly known as the Family Expense Statute, which provides in pertinent part:

> The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife or either of them in favor of creditors therefor.

19. That as a consequence of the aforesaid Family Expense Statute—in addition to the Plaintiff, EMILY DANO'S obligation to pay for her medications and prescriptions as aforesaid—her parents, JOHN V. DANO and CHRISTINE DANO, with whom she resides, are also liable and obligated to make such payments and/or have made such payments for the Plaintiff, EMILY DANO'S prescriptions.

WHEREFORE, in view of the foregoing, it is respectfully requested that the Court ascertain, determine, and declare the rights and obligations of the parties hereto, with regard to the Defendant, TIME INSURANCE COMPANY'S insurance policy insuring the Plaintiffs, including EMILY DANO, and further order that pursuant to the said policy, the Defendant, TIME INSURANCE COMPANY, is obligated to pay for all of EMILY DANO'S aforesaid medications that it has refused to pay for in the past, and is obligated to continue to pay for those said medications for as long as they are prescribed by EMILY DANO'S physicians for her welfare, together with such other further and

different relief as this Court deems appropriate, including an award of the Plaintiffs' costs.

## COUNT III

## VIOLATION OF THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et seq.

1. That at all times herein, the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, were residents of McHenry County, Illinois.

2. The Plaintiff, JOHN V. DANO, obtained health insurance coverage for his family initially through Fortis Insurance Company of Milwaukee, Wisconsin, who on information and belief of the Plaintiff, JOHN V. DANO, has been succeeded in its business undertakings by TIME INSURANCE COMPANY, a corporation licensed to do business and doing business in the State of Illinois and in McHenry County, selling among other products, health insurance policies.

3. On further information and belief of the Plaintiff, JOHN V. DANO, the said TIME INSURANCE COMPANY, is an affiliate or subsidiary of ASSURANT HEALTH FOUNDATION, INC., which is a Wisconsin corporation licensed to do business and doing business in the State of Illinois and in McHenry County, in that ASSURANT HEALTH products are underwritten and issued by TIME INSURANCE COMPANY.

4. The Plaintiff, JOHN V. DANO'S relationship in acquiring said health insurance for his family began on or about August 20, 1990, with the said Fortis Insurance Company, and has continued uninterruptedly thereafter with the said Fortis Insurance Company's successors.

5. On or about April 26, 2006, the Plaintiff, JOHN V. DANO, received his most current health insurance policy for his family, which was underwritten by the most recent

successor of Fortis—to wit: the Defendant, TIME INSURANCE COMPANY. A copy of the said health insurance policy between the Defendant, TIME INSURANCE COMPANY, and the Plaintiff, JOHN V. DANO, is attached hereto as Group Exhibit "A."

6. That under the terms and provisions of the said health insurance policy, the Defendant, TIME INSURANCE COMPANY, in essence agreed to provide health insurance under a "family plan," which includes the Plaintiff's family members, *inter alia* EMILY DANO, the daughter of the named policyholder, JOHN V. DANO.

7. That at all times herein, the Plaintiff, JOHN V. DANO, was married to CHRISTINE DANO, who was also a covered party under the said Defendant, TIME INSURANCE COMPANY'S health insurance policy.

8. That EMILY DANO, born on May 2, 1988, at all times herein was a beneficiary of the said Defendant, TIME INSURANCE COMPANY'S health insurance policy attached hereto as Exhibit "A."

9. The said health insurance policy of the Defendant, TIME INSURANCE COMPANY, with the Plaintiffs includes provisions of coverage and for reimbursement and/or payment for prescription medications purchased by its insureds for the treatment of their various medical maladies (the provision for "covered prescription drug services" pursuant to the said agreement, Exhibit "A," is included at pages 17 and 18 thereof).

10. On or about 2002, the Plaintiff, EMILY DANO, was diagnosed as having a health condition known as Kleine-Levin Syndrome, which in essence is recognized as a "rare medical disorder characterized by the need for excessive amounts of sleep (hypersomnolence), *i.e.*, up to 20 hours a day, excessive food intake (compulsive

hyperphagia); and an abnormally uninhibited sexual drive. When awake, individuals afflicted with this disease may exhibit irritability, lack of energy (lethargy), and/or lack of emotions (apathy). They may also appear confused (disoriented), and experience hallucinations. Symptoms of Kleine-Levin Syndrome are cyclical. An affected individual may go for weeks or months without experiencing symptoms. When present, symptoms may persist for days to weeks."

11. In the course of the Plaintiff, EMILY DANO'S recommended course of treatment for her Kleine-Levin Syndrome by board certified neurologist, Dr. Carol Macmillan—Dr. Macmillan has prescribed a regime of medications, including but not limited to: Provigil, Seasonale, Inderal, Proamatine, Midodrine, Propranolol, Low-Ogestrel, and Methylphenidate.

12. From time to time, since on or about November 2002, the Plaintiff, EMILY DANO, has had these prescriptions filled, and thereafter pursuant to the terms and provisions of the said health insurance policy she has with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), has submitted claims for payment of or reimbursement of her costs for the aforesaid medications.

13. The Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, have complied with all of the obligations required of them pursuant to their agreement with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), and have duly submitted or have submitted on EMILY DANO'S behalf any and all documentation required to seek either payment for, or reimbursement of the expenditures made by JOHN V. DANO and/or CHRISTINE DANO and/or EMILY DANO, for her various said prescriptions—but the Defendant, TIME INSURANCE COMPANY, has consistently,

persistently and wrongfully refused to pay for, or reimburse the DANOS for their expenditures for the aforesaid prescriptions.

14. As a result of the Defendant, TIME INSURANCE COMPANY'S failure and refusal to pay and/or reimburse the Plaintiffs for EMILY DANO'S said prescriptions—the Defendant, TIME INSURANCE COMPANY, is in breach and default of its said insurance policy agreement with the DANOS (Exhibit "A")—and as a proximate result thereof, the DANOS have sustained considerable financial loss in excess of Fifty Thousand Dollars ($50,000.00), because they have been forced and compelled to pay for said medications.

15. That at all times herein, there was in full force and effect a certain statute in the State of Illinois, 750 ILCS 65/15(a)(1), what is commonly known as the Family Expense Statute, which provides in pertinent part:

> The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife or either of them in favor of creditors therefor.

16. That as a consequence of the aforesaid Family Expense Statute—in addition to the Plaintiff, EMILY DANO'S obligation to pay for her medications and prescriptions as aforesaid—her parents, JOHN V. DANO and CHRISTINE DANO, with whom she resides, are also liable and obligated to make such payments and/or have made such payments for the Plaintiff, EMILY DANO'S prescriptions.

17. That at all times herein, there was in full force and effect an Act commonly known as the Consumer Fraud and Deceptive Business Practices Act in the State of Illinois, to wit: 815 ILCS 505/1, et seq., which at Section 505/2 provides in pertinent part as follows:

14

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful, whether any person has in fact been misled, deceived, or damaged thereby.***

and as well, 815 ILCS 505/10a, provides:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages *or any other relief which the court deems proper*, provided, however, that no award of punitive damages may be assessed under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code, unless the conduct engaged in was willful or intentional and done with evil motive or reckless indifference to the rights of others. Proof of a public injury, a pattern, or an effect on consumers and the public interest generally shall be required in order to state a cause of action under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Motor Vehicle Code. Proof of such public injury may be shown by any one of the following factors:

(1) Violation of a statute that has a public interest impact.

(2) Repeated acts prior to the act involving the plaintiff.

(3) Potential for repetition.
***

(c) Except as provided in subsections (f), (g), and (h) of this Section, in any action brought by a person under this Section, *the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.*

(Italics supplied.)

18.   The Defendant, TIME INSURANCE COMPANY, has violated the said Consumer Fraud Act by virtue of its said policy with the DANOS (Exhibit "A"), because it promised and contracted and agreed with the DANOS to pay for EMILY DANO'S said prescriptions—and the Defendant has failed to pay those prescriptions, and has not proffered any rational, reasonable or justifiable reason for not paying those said prescription bills, and consequently has made false representations—to wit: its policy says that it will pay the prescriptions—and it has wrongfully not paid those prescriptions.

WHEREFORE, in view of the foregoing, the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, pray for the following relief:

A.   That Judgment be entered on behalf of the Plaintiffs, JOHN V. DANO, CHRISTINE DANO and EMILY DANO, against the Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC., in the sum of $50,000.00 as and for compensatory damages;

B.   An additional award and Judgment against the Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC., in the sum of $250,000.00 as and for punitive damages;

C.   An additional award and Judgment against the Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC., as and for the said Plaintiffs' attorney's fees and costs;

D.   For such other further and different relief as this Court deems just.

## COUNT IV

## VEXATIOUS DELAY OF PAYMENT OF CLAIMS

16

## PURSUANT TO 215 ILCS 5/155

1. That at all times herein, the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, were residents of McHenry County, Illinois.

2. The Plaintiff, JOHN V. DANO, obtained health insurance coverage for his family initially through Fortis Insurance Company of Milwaukee, Wisconsin, who on information and belief of the Plaintiff, JOHN V. DANO, has been succeeded in its business undertakings by TIME INSURANCE COMPANY, a corporation licensed to do business and doing business in the State of Illinois and in McHenry County, selling among other products, health insurance policies.

3. On further information and belief of the Plaintiff, JOHN V. DANO, the said TIME INSURANCE COMPANY, is an affiliate or subsidiary of ASSURANT HEALTH FOUNDATION, INC., which is a Wisconsin corporation licensed to do business and doing business in the State of Illinois and in McHenry County, in that ASSURANT HEALTH products are underwritten and issued by TIME INSURANCE COMPANY.

4. The Plaintiff, JOHN V. DANO'S relationship in acquiring said health insurance for his family began on or about August 20, 1990, with the said Fortis Insurance Company, and has continued uninterruptedly thereafter with the said Fortis Insurance Company's successors.

5. On or about April 26, 2006, the Plaintiff, JOHN V. DANO, received his most current health insurance policy for his family, which was underwritten by the most recent successor of Fortis—to wit: the Defendant, TIME INSURANCE COMPANY. A copy of the said health insurance policy between the Defendant, TIME INSURANCE

COMPANY, and the Plaintiff, JOHN V. DANO, is attached hereto as Group Exhibit "A."

6. That under the terms and provisions of the said health insurance policy, the Defendant, TIME INSURANCE COMPANY, in essence agreed to provide health insurance under a "family plan," which includes the Plaintiff's family members, *inter alia* EMILY DANO, the daughter of the named policyholder, JOHN V. DANO.

7. That at all times herein, the Plaintiff, JOHN V. DANO, was married to CHRISTINE DANO, who was also a covered party under the said Defendant, TIME INSURANCE COMPANY'S health insurance policy.

8. That EMILY DANO, born on May 2, 1988, at all times herein was a beneficiary of the said Defendant, TIME INSURANCE COMPANY'S health insurance policy attached hereto as Exhibit "A."

9. The said health insurance policy of the Defendant, TIME INSURANCE COMPANY, with the Plaintiffs includes provisions of coverage and for reimbursement and/or payment for prescription medications purchased by its insureds for the treatment of their various medical maladies (the provision for "covered prescription drug services" pursuant to the said agreement, Exhibit "A," is included at pages 17 and 18 thereof).

10. On or about 2002, the Plaintiff, EMILY DANO, was diagnosed as having a health condition known as Kleine-Levin Syndrome, which in essence is recognized as a "rare medical disorder characterized by the need for excessive amounts of sleep (hypersomnolence), *i.e.*, up to 20 hours a day, excessive food intake (compulsive hyperphagia); and an abnormally uninhibited sexual drive. When awake, individuals afflicted with this disease may exhibit irritability, lack of energy (lethargy), and/or lack of

emotions (apathy).    They may also appear confused (disoriented), and experience
hallucinations.    Symptoms of Kleine-Levin Syndrome are cyclical.    An affected
individual may go for weeks or months without experiencing symptoms. When present,
symptoms may persist for days to weeks."

11.    In the course of the Plaintiff, EMILY DANO'S recommended course of
treatment for her Kleine-Levin Syndrome by board certified neurologist, Dr. Carol
Macmillan—Dr. Macmillan has prescribed a regime of medications, including but not
limited to:    Provigil, Seasonale, Inderal, Proamatine, Midodrine, Propranolol, Low-
Ogestrel, and Methylphenidate.

12.    From time to time, since on or about November 2002, the Plaintiff, EMILY
DANO, has had these prescriptions filled, and thereafter pursuant to the terms and
provisions of the said health insurance policy she has with the Defendant, TIME
INSURANCE COMPANY (Exhibit "A"), has submitted claims for payment of or
reimbursement of her costs for the aforesaid medications.

13.    The Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO,
have complied with all of the obligations required of them pursuant to their agreement
with the Defendant, TIME INSURANCE COMPANY (Exhibit "A"), and have duly
submitted or have submitted on EMILY DANO'S behalf any and all documentation
required to seek either payment for, or reimbursement of the expenditures made by JOHN
V. DANO and/or CHRISTINE DANO and/or EMILY DANO, for her various said
prescriptions—but the Defendant, TIME INSURANCE COMPANY, has consistently,
persistently and wrongfully refused to pay for, or reimburse the DANOS for their
expenditures for the aforesaid prescriptions.

14. As a result of the Defendant, TIME INSURANCE COMPANY'S failure and refusal to pay and/or reimburse the Plaintiffs for EMILY DANO'S said prescriptions—the Defendant, TIME INSURANCE COMPANY, is in breach and default of its said insurance policy agreement with the DANOS (Exhibit "A")—and as a proximate result thereof, the DANOS have sustained considerable financial loss in excess of Fifty Thousand Dollars ($50,000.00), because they have been forced and compelled to pay for said medications.

15. That at all times herein, there was in full force and effect a certain statute in the State of Illinois, 750 ILCS 65/15(a)(1), what is commonly known as the Family Expense Statute, which provides in pertinent part:

> The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife or either of them in favor of creditors therefor.

16. That as a consequence of the aforesaid Family Expense Statute—in addition to the Plaintiff, EMILY DANO'S obligation to pay for her medications and prescriptions as aforesaid—her parents, JOHN V. DANO and CHRISTINE DANO, with whom she resides, are also liable and obligated to make such payments and/or have made such payments for the Plaintiff, EMILY DANO'S prescriptions.

17. That at all times herein, there was in full force and effect, 215 ILCS 5/155, which provides in pertinent part as follows:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an *unreasonable delay* in settling a claim, and it appears to the court that such action or delay is *vexatious and unreasonable*, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs,

20

plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(Italics supplied.)

18.    That by reason of the foregoing, the Defendant, TIME INSURANCE COMPANY, has been wrongful and vexatious in not paying the claims of the Plaintiffs for EMILY DANO'S said prescriptions,

WHEREFORE, in view of the foregoing, the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, pray for the following relief:

A.    That Judgment be entered on behalf of the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, against the Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC., in the sum of $50,000.00 as and for compensatory damages;

B.    An additional award and Judgment against the Defendant, TIME INSURANCE COMPANY, a division of ASSURANT HEALTH FOUNDATION, INC., on behalf of the Plaintiffs, JOHN V. DANO, CHRISTINE DANO, and EMILY DANO, for such other relief as afforded by 215 ILCS 5/155, as cited above;

C.  For such other further and different relief as this Court deems just, including an award of the Plaintiffs' costs.

Respectfully submitted,
JOHN V. DANO, CHRISTINE DANO, and
EMILY DANO, Plaintiffs,

By:_____
W. RANDAL BAUDIN,
Their Attorney

W. RANDAL BAUDIN
Attorney No. 137189
BAUDIN & BAUDIN
P.O. Box 845
Dundee, IL   60118-0845
847.426.5295

STATE OF ILLINOIS      )
                                )
COUNTY OF McHENRY   )

### IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL CIRCUIT
### McHENRY COUNTY, ILLINOIS

| | |
|---|---|
| JOHN V. DANO, CHRISTINE DANO, )<br>and EMILY DANO, )<br>     Plaintiffs, )<br>)<br>        vs. )<br>)<br>TIME INSURANCE COMPANY, )<br>a division of ASSURANT HEALTH )<br>FOUNDATION, INC., )<br>a Wisconsin corporation, )<br>     Defendant. ) | No. |

### <u>AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(b)</u>

Pursuant to Supreme Court Rule 222(b), counsel for the above-named Plaintiffs

certifies that the Plaintiffs are seeking money damages in excess of $50,000.00.

Respectfully submitted,

W. RANDAL BAUDIN

SUBSCRIBED AND SWORN TO
before me this 17th day of December 2007.

Notary Public

W. RANDAL BAUDIN
Attorney No. 137189
BAUDIN & BAUDIN
P.O. Box 845
Dundee, IL 60118-0845
847-426-5295

OFFICIAL SEAL
VALERIE J WELLBANK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/09/11

CERTIFICATE HOLDER:  John V Dano
CERTIFICATE NUMBER:  0003090705
Our Telephone Number: 1-800-800-1212

**Time Insurance Company**
501 West Michigan
Milwaukee, WI 53203
A Stock Company

# MEDICAL CERTIFICATE

Time Insurance Company has issued a Master Group Policy to the trust to insure the Certificate Holder and Covered Dependents named on the Schedule or added by endorsement. This certificate describes the benefits available under the Master Group Policy. However, this certificate is not a legal contract. You may review the Master Group Policy at our office.

Please note that words beginning with capitals have special definitions.  See the Definitions section.

Your rates will not change during the first 12 months this certificate is in force unless you change benefits, add or delete Covered Dependents, or move to another ZIP code.

## RIGHT TO EXAMINE FOR TEN DAYS

Please read your certificate carefully. If you are not satisfied, return the certificate to us or our agent within 10 days after you have received it. All premiums will be refunded and your coverage will be void.

This certificate was issued based on the information you gave us on your enrollment form. Omissions or misstatements in the enrollment form can cause claims to be denied or coverage to be rescinded. Please read the enclosed copy of your enrollment form. If any information shown is incorrect, incomplete, or if anything is missing, write to us within 10 days.

Secretary

President

FORM 225.001.IL
DUPLICATE POLICY

Page 1



EXHIBIT
"A"

227

P1

## Table of Contents

Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5
When Your Coverage Begins and Ends . . . . . . . . . . . . . PAGE 9
Health Care Review . . . . . . . . . . . . . . . . . . . . . PAGE 11
How to File a Claim for Benefits . . . . . . . . . . . . . . . PAGE 12
Covered Medical Services . . . . . . . . . . . . . . . . . . PAGE 13
Covered Prescription Drug Services . . . . . . . . . . . . . PAGE 17
Pre-existing Conditions Limitation . . . . . . . . . . . . . . PAGE 19
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 19
Coordination of Benefits . . . . . . . . . . . . . . . . . . . PAGE 21
Other Provisions . . . . . . . . . . . . . . . . . . . . . . . PAGE 23

# TIME INSURANCE COMPANY

### SCHEDULE

Cert Holder:   John V Dano

SSN:   325 44 6570

Type of Plan:  Family Plan

Effective Date of this Schedule:  04/26/2006

Certificate Number:   0003090705

Effective Date:   08/20/1990

Benefits will be paid for Covered Charges you incur while your coverage is in force. Payment of benefits will be subject to all benefit provisions and other conditions of this plan. After you have paid any Deductible or Copayment, we will pay benefits for Covered Charges at the Rate of Payment up to the Out-of-Pocket Limit and subject to the Lifetime Maximum Benefit.

For most services the Rate of Payment for a network provider is more than the Rate of Payment for an out-of-network provider. However, if you receive Emergency Treatment from an out-of-network provider when you cannot reasonably reach a network provider, benefits will be paid as if received from a network provider. A network provider is any Health Care Provider or Hospital participating in the network provider plan. The list of network providers is subject to change. You are responsible for calling the network manager to verify the participation status of a provider prior to treatment. Covered Charges incurred after a provider's participation in the network provider plan has terminated will be subject to the normal provisions of this plan, including medical Deductible and out-of-network Rate of Payment.

See the Covered Medical Services and the Covered Prescription Drug Services sections for any limits that apply to benefits.

(Schedule continues on next page.)

**FORM 225.S01.XX**

227

DUPLICATE POLICY

| | | |
|---|---:|---:|
| LIFETIME MAXIMUM BENEFIT per *covered person* . . . . . . . . . . . . . . . . | | $2,000,000 |

Medical Deductible
Individual Medical Deductible each *calendar year* (January 1–December 31)  $  1,500
Maximum Family Medical Deductible each *calendar year*  $  3,000

Medical Out-of-Network Deductible (In addition to the plan Deductible)
Individual medical out-of-network Deductible each calendar year (Jan 1–Dec 31) $  1,000
Maximum family medical out-of-network Deductible each calendar year  $  2,000

Prescription Drug Deductible
Individual Prescription Drug Deductible each *calendar year*  $    500
Maximum Family Prescription Drug Deductible each *calendar year*  $  1,000

Rate of Payment (unless listed elsewhere on this schedule)     Network     50%
                                                          Out-of-Network   30%

Brand Name Prescription Drugs                                            80%

**Out-of-Pocket Limits**
Individual Out-of-Pocket Limit each *calendar year*  $  2,750
Family Out-of-Pocket Limit each *calendar year*  $  5,500

**Copayments**
Generic Prescription Drugs                    $   10
Brand Name Prescription Drugs                 $   25
Mail Order Generic Prescription Drugs         $   20
Mail Order Brand Name Prescription Drugs      $   50
Emergency Department Services                 $   75   (waived if admitted as an Inpatient
                                                        directly from the emergency department)

**Rate of Payment and Deductible Waived**
Hospice Care Services
Home Health Care Services
Inpatient Rehabilitation Services
Skilled Nursing Facility Services

## COVERED DEPENDENTS

| | |
|---|---|
| Christine Dano | 04/01/1962 |
| Emily Dano | 05/02/1988 |
| Bradley Dano | 07/05/1990 |
| Molly Dano | 07/27/1991 |
| Kelly L Dano | 01/30/1994 |

## BENEFIT SCHEDULE

| FORM | BENEFIT DESCRIPTION |
|---|---|
| 225-1L | Medical Expense Coverage |
| 2802-1L | Mental Illness and Substance Abuse |

DUPLICATE POLICY

# Definitions

The capitalized terms used in this certificate are defined below. However, "we," "our," "us," "you" and "your" are defined but not capitalized. Just because a term is defined does not mean it is covered. See the Covered Medical Services, Covered Prescription Drug Services and Exclusions sections.

**Common Accident Deductible**

If more than one Insured is injured in the same accident, only one individual medical Deductible must be met for all Covered Charges for that accident within 90 days of the accident.

**Copayment**

The dollar amount you pay each time you receive a covered service. This amount will not be applied to any Out-of-Pocket Limit or Deductible.

**Covered Charges**

An allowable charge for treatment that we determine is:

- provided by a Health Care Practitioner, facility or supplier,
- Medically Necessary,
- incurred by an Insured for an Illness or Injury,
- listed in the Covered Medical Services or Covered Prescription Drug Services sections, and
- not listed in the Exclusions section.

We will determine how much of a Covered Charge is allowable using the following:

- the actual charge;
- relative value scales which include difficulty, work risk and materials used;
- regional geographic factors for your area or a comparable area; and
- the rate we negotiate with the provider of service.

Treatment is the medical or surgical management of a patient. Treatment includes any prescribed service, supply, test, consultation, advice or Prescription Drug.

**Covered Dependent**

The Certificate Holder's lawful spouse; or child who is age 18 or less and either a natural child, a child legally adopted or placed for adoption, or a stepchild.

- If an unmarried child is age 23 or less, the child will be considered a Covered Dependent if you submit proof that the child meets the standards for a full-time student at an accredited educational institution. The student will be considered a Covered Dependent until the student is no longer a full-time student, graduates, attains age 24, or marries, whichever occurs first.

- An unmarried child of the Certificate Holder who is Totally Disabled will be considered a Covered Dependent. The child must depend upon the Certificate Holder for financial support or upon other care providers for lifetime care and supervision. As used here, "depend upon other care providers" means requiring residential services licensed or certified by the State of Illinois. Proof of support must be given to us no later than 31 days after we notify you of this option. Additional proof may be requested annually.

- If children only are covered, siblings of the Certificate Holder will be considered Covered Dependents if they meet the above requirements.

| | |
|---|---|
| **Custodial Care** | Services that: |
| | • do not contribute substantially to the improvement of a medical condition according to accepted medical standards; |
| | • are provided primarily to assist with daily living activities; and |
| | • are supportive or primarily for the purpose of providing companionship or ensuring safety. |
| **Deductible** | The amount of Covered Charges you must pay each calendar year before we pay benefits. Once two or more Insureds have collectively met the maximum family medical Deductible, no additional Deductible will be taken during the calendar year. |
| **Emergency Treatment** | Treatment for an Illness or Injury which presents symptoms of sufficient severity that, in the absence of immediate medical attention, a prudent person would expect serious jeopardy to health, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. |
| **Experimental or Investigational Services** | Treatment that, at the time the charges were incurred, we determine was: |
| | • not proven to be of benefit for the diagnosis or treatment of the Illness or Injury; or |
| | • not generally used or recognized by the United States medical community as safe, effective, or appropriate for the Illness or Injury; or |
| | • in the research or investigational stage; or |
| | • not generally accepted throughout the United States as we determine by reference to English language peer review literature, consultation with physicians, authoritative medical compendia, the American Medical Association, and other pertinent professional medical organizations or governmental agencies. |
| **Health Care Practitioner** | Any person who is state-licensed to treat the Illness or Injury for which a claim is made. |
| **Hospital** | A state-licensed facility accredited by the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO) that is not primarily a nursing home, convalescent home, a place for the aged, or for Custodial Care. |
| **Illness** | A sickness, disease or condition that first manifests itself while covered under this plan. |
| **Injury** | Accidental bodily damage, occurring unexpectedly, and sustained while covered under this plan. |
| **Insured** | Any person named on the Schedule or added by endorsement. |
| **Inpatient** | Admitted to a Hospital or other state-licensed facility for a stay of at least 24 hours and where a charge is made for room and board or observation. |
| **Lifetime Maximum Benefit** | The maximum we will pay for Covered Charges incurred by an Insured while covered under this plan or any other plan we have issued over the lifetime of that person. |
| **Master Group Policy** | The policy which is issued to the trust. |

**Medically Necessary**

Treatment that we determine:

- is appropriate and consistent with the diagnosis and is in accordance with accepted United States medical practice and federal government guidelines;

- can reasonably be expected to contribute substantially to the improvement of a condition resulting from an Illness or Injury;

- is not for Experimental or Investigational Services;

- is provided in the least intense setting without adversely affecting the condition or the quality of medical care provided; and

- is not primarily for the convenience of you, your family, your Health Care Practitioner, or provider.

Prescription by a Health Care Practitioner does not automatically make treatment Medically Necessary.

**Mental Illness**

All conditions classified as mental disorders as shown in the International Classification of Diseases (ICD).

**Out-of-Pocket Limits**

The maximum dollar amount you pay each calendar year in Deductible and coinsurance for Covered Charges before we pay 100% of Covered Charges. Once two or more Insureds have collectively met the maximum family Out-of-Pocket Limits, we will pay 100% of Covered Charges for all Insureds.

The following do not count toward any Out-of-Pocket Limit: any Copayment; any Prescription Drug Deductible, Ancillary Charge, or coinsurance; any penalty applied under the Health Care Review section; and any amount not paid by us due to the difference between the out-of-network benefit and the benefit that would have applied had you used a network provider or pharmacy.

**Outpatient**

Treatment received at a Hospital or other state-licensed medical facility other than on an Inpatient basis.

**Prescription Drug**

Any medication that has been fully approved by the Food and Drug Administration (FDA) and that can be legally dispensed only with a Health Care Practitioner's prescription.

**Rate of Payment**

The percentage of Covered Charges we will pay. You are responsible for any balance (coinsurance).

**Rehabilitation Services**

Services that include:

- Inpatient services provided in a Hospital, a state-licensed rehabilitation facility accredited by the Commission on Accreditation of Rehabilitation Facilities (CARF), or a residential treatment facility that is part of an accredited rehabilitation program;

- physical therapy, occupational therapy, speech therapy, cardiac rehabilitation programs; and

- the evaluation of the need for such therapy performed on an Outpatient basis or in the Insured's home.

**Substance Abuse**

Abuse of, addiction to or dependency on drugs, chemicals or alcohol.

**Total Disability**

You are being treated and under the regular care of a Health Care Practitioner for a specific condition and because of that Illness or Injury:

- are unable to perform all of the essential duties of any occupation you are reasonably fitted for by education, training or experience; or

- you are unable to engage in the normal and customary activities of a person of the same age and sex if you are not employed.

**We, Us, Our**                Time Insurance Company.

**You, Your**                  Any person named on the Schedule or added by endorsement.

# When Your Coverage Begins and Ends

### Eligibility and Effective Date

To be insured under this plan, the Certificate Holder must be a member of the trust and a resident of the state where the certificate is issued. The Insured must complete an enrollment form and a health assessment upon enrollment and at renewal. You are covered under this plan as of 12:01 a.m. standard time at your residence on the effective date of your certificate or the endorsement date if Covered Dependents are added.

1. **Adding Newborn and Adopted Children:** A newborn or adopted child will be covered if the child is a Covered Dependent, written enrollment is made to us, and we receive any required premium within 60 days of birth or adoption.

   If this is an individual plan and these requirements are not met, the child will not be covered from birth or adoption. However, if this is a family plan, the child will be covered for the first 60 days from birth or adoption.

2. **Adding Any Other Eligible Dependent:** To add any other Covered Dependent, written enrollment with evidence of insurability must be submitted for our approval along with any required premium.

### Termination

The Certificate Holder may cancel this coverage at any time by sending us written notice. Upon cancellation, we will promptly return the unearned portion of any premium paid.

This certificate will terminate at 12:01 a.m. standard time at the Certificate Holder's residence on the date:

- requested in writing or the date we receive the request, whichever is later;

- there is fraud or material misrepresentation made by or with the knowledge of any Insured applying for this coverage or filing a claim for benefits;

- if all certificates with the same form number are non-renewed in the state in which your certificate was issued or the state in which you presently reside;

- if you have a PPO plan and move outside of the service area;

- you become eligible for Medicare, if allowed by federal law; or

- you are no longer a Covered Dependent.

We will pay benefits to the end of the time for which we have accepted premiums.

### Conversion

A Covered Dependent who is no longer eligible for coverage under this plan can obtain a conversion policy without evidence of insurability. Written application, signed by one of our licensed agents, must be made within 60 days after the Covered Dependent's coverage terminates.

### Reinstatement

If any premium is not paid within the time required, your coverage will lapse. We will reinstate your coverage, provided:

- the lapse was not more than 6 months,

- your supplemental enrollment form is furnished to us, and

- we approve your request for reinstatement.

Your coverage will be reinstated on the date we approve the request. If we have not responded to the reinstatement request by the 45th day after it is received by us, your coverage will be reinstated on that date.

After your coverage is reinstated, you and Time Insurance Company will have the same rights as existed before your coverage lapsed.

No benefits will be paid for any condition not fully disclosed on the enrollment form for reinstatement if, during the time between the lapse date and the reinstatement date:

- you received medical treatment, diagnosis, consultation, or service, or took Prescription Drugs; or

- the condition produced symptoms or was capable of being diagnosed.

This limitation will apply until coverage has been in force for 12 months after the reinstatement date, unless the condition has been specifically excluded from coverage.

### Extension of Benefits During Total Disability

If you are totally disabled on the date this coverage terminates, we will extend benefits for the Illness or Injury that caused the Total Disability. We will pay benefits subject to the terms, limits and conditions of this plan. Premium payment will not be required during the extension of benefits period.

You will need to submit medical documentation verifying your Total Disability within 60 days of termination. The extension will end when you are no longer totally disabled, or at the end of a 365 day period after the date your insurance terminates, whichever occurs first.

# Health Care Review

When you need Inpatient treatment or Outpatient surgery, call the toll free number on your identification (ID) card. We will review the proposed medical care with you or your provider to determine the appropriateness of treatment and to assist you with discharge needs. We will notify you and your Health Care Practitioner of the review outcome. For an Inpatient stay, we will also notify the Hospital.

Contact us for the following:

- **Nonemergency Confinement:**   Call at least 7 days prior to an Inpatient Hospital stay. A nonemergency confinement is an Inpatient stay for an Illness or Injury that is not immediately lifethreatening but is Medically Necessary.

- **Emergency Confinement:**   Call within 24 hours, or as soon as reasonably possible, after an Inpatient admission for Emergency Treatment.

- **Maternity:**   Call within the first 12 weeks of confirmation of a pregnancy by a Health Care Practitioner. Also call as soon as you know the Inpatient stay for the mother and/or newborn will exceed 48 hours for a normal delivery or 96 hours for a caesarean section delivery.

- **Organ or Cellular Transplant:**   Call prior to any transplant evaluation, testing, preparative treatment or donor search.

- **Outpatient Procedures:**   Call at least 7 days prior to a scheduled Outpatient procedure if the facility charge is expected to be more than $500.

- **Home Health Care**

- **Durable Medical Equipment** if the purchase or rental price per month is more than $500.

- **Inpatient Rehabilitation Confinement**

- **Skilled Nursing Facility Confinement**

- **Hospice Care**

- **Parenteral (intravenous infusion) Therapy**

The review process must be repeated if treatment is received more than 30 days after the review or if a new Health Care Practitioner or facility is used.

The Health Care Review requirements above are included to assist you in obtaining the most appropriate health care. If these guidelines are not followed, your benefits will be reduced by 25% to a maximum of $1,000 for any service requiring Health Care Review.

**Health Care Review is not the same as "verification of benefits" and does not guarantee that benefits will be paid. Health Care Review addresses only the Medical Necessity and appropriateness of the care to be received. Payment of benefits is  subject to all the terms, limits, and conditions of this plan.**

# How to File a Claim for Benefits

Most providers will file claims directly with us. You are responsible for filing your claim with us only if the provider does not file it. The following provisions tell you how to file your claims with us.

Notify us in writing within 60 days after receiving a covered service or as soon as reasonably possible. Include your name and certificate number. Sending us a bill satisfies this requirement.

If you are sending bills directly to us please send an itemized bill and not a balance due statement. Include your certificate number or Social Security number.

Unless you are declared incompetent by a court of law, bills must be sent to us within 15 months of the date of loss. To determine our liability, we may request that you furnish proof of benefits from other sources, proof that you have applied for all benefits from other sources, and confirmation that you have furnished all necessary proof to receive them.

**Claim Payment** We pay either you or your provider for covered services. Upon your death, we will pay benefits at our option to your spouse, the providers of the treatment or your estate.

We may provide benefits for medical care that is not covered under the terms and conditions of this plan. Alternative medical care is treatment that is:

- approved by your Health Care Practitioner in writing,

- not considered an Experimental or Investigational Service,

- considered a Covered Charge, and

- we have given our prior written approval.

The terms and conditions of this plan will not be waived when we provide benefits for this type of medical care.

**Fraud or Misrepresentation**
No payments will be made for claims involving fraud or misrepresentation. If benefits are paid for a claim involving fraud or misrepresentation we will be entitled to a refund from you or the provider.

**Overpayment**
We make every effort to pay claims promptly and correctly. However, if we make incorrect payments we will be entitled to a refund from you or the provider of the services.

# Covered Medical Services

Covered Medical Services include only Covered Charges for the services and supplies listed in this certificate. Charges are subject to all the terms, limits and conditions of this plan. After you have paid any Deductible or Copayment, we will pay benefits for Covered Charges at the Rate of Payment up to the Out-of-Pocket Limit and subject to the Lifetime Maximum Benefit.

Preauthorization is required for some services to ensure maximum benefits. Please see the Health Care Review Section.

**Hospital Services** include:

- daily room and board up to the semi-private room rate;
- confinement in a critical care unit; and
- all other Inpatient or Outpatient treatment provided by a Hospital or ambulatory surgical center. An ambulatory surgical center is a state-licensed facility, other than a Hospital or Health Care Practitioner's office, providing surgical treatment.

Rehabilitation Services provided by a Hospital are covered under the Rehabilitation Services Section.

**Health Care Practitioner Services** including surgery and anesthesia.

**X-ray and laboratory services**

**Professional ground or air ambulance services** to the nearest Hospital that can provide Emergency Treatment for the Illness or Injury. Other types of transportation will not be covered.

**Supplies and durable medical equipment** for the lesser of the rental or purchase price. This coverage is limited to:

- basic prosthetic devices;
- splints, trusses, crutches and orthopaedic braces;
- oxygen and equipment for its administration;
- one standard non-motorized wheelchair and/or basic hospital bed;
- one newborn phototherapy light and/or one apnea monitor; and
- other durable medical equipment or supplies that we determine to be covered.

Repair, replacement or duplicates are not covered.

Durable medical equipment is equipment that can withstand repeated use and is used primarily to serve a medical purpose. It is generally not useful in the absence of an Illness or Injury, and is appropriate for use in the home.

**Home health care services** provided by a home health care agency up to 160 hours each calendar year for visits by a state-licensed nurse, respiratory therapist, and services included in a preauthorized Health Care Practitioner's plan of treatment. A home health care agency is a state-licensed organization certified by Medicare to provide home health care.

Speech, occupational and physical therapy are covered under Rehabilitation Services.

**Hospice care services** provided in either an Inpatient, Outpatient or home setting. A state-licensed hospice must be Medicare certified and/or accredited by the Joint Commission on Accreditation of Healthcare Organization (JCAHO).

Hospice care includes two visits for counseling services for you and one visit for bereavement counseling for you after an Insured's death.

Skilled nursing facility services up to 30 days each calendar year. Covered services in a state-licensed skilled nursing facility include room and board, nursing and ancillary services. Subacute care provided in a Hospital or state-licensed subacute facility is covered under this provision.

Rehabilitation Services include the following:

- Inpatient Rehabilitation Services up to 180 days each calendar year, and

- Outpatient Rehabilitation Services up to $3,000 each calendar year.

Rehabilitation Services are not covered when we determine measurable progress toward expected outcomes has stabilized or is inconsistent. Rehabilitation Services do not include treatment for conditions related to vertebrae, disc, spine, back, neck and adjacent tissues or temporomandibular joint (TMJ) and craniomandibular joint (CMJ) dysfunction.

Vertebrae, disc, spine, back and neck: Outpatient diagnosis and treatment for these conditions are limited to $750 each calendar year. This includes massage, acupuncture, biofeedback, manipulation and electrical stimulation.

The maximum does not apply to Inpatient stays, surgery, anesthesia, laboratory tests, x-rays, magnetic resonance images (MRI) or electromyelograms.

Physical therapy and Rehabilitation Services following an Inpatient stay and/or surgery will be considered under the Rehabilitation Services section.

Temporomandibular joint (TMJ) and craniomandibular joint (CMJ) dysfunction: Benefits for surgical and nonsurgical treatment are limited to a maximum lifetime benefit of $1,000. Covered Charges for nonsurgical treatment are limited to diagnostic examinations, diagnostic x-rays, injection of muscle relaxants, therapeutic drug injections, physical therapy, diathermy and ultrasound therapy

TMJ or CMJ is any jaw/joint disorder causing pain, swelling, clicking and difficulties in opening and closing the mouth; and complications including arthritis, dislocation and bite problems of the jaw.

Transplantation Benefit: No benefits will be paid for any organ, tissue or cellular transplants not reviewed by us prior to transplantation evaluation, testing or donor search.

The maximum lifetime transplant benefit is $100,000 for each transplant, combined transplants, and sequential transplants. The maximum lifetime transplant benefit includes all related expenses from 14 days before transplant until 365 days after transplant. The maximum benefit for potential donor and donor expenses is $10,000 for each transplant and is applied to the maximum lifetime transplant benefit. This limit does not apply to kidney and cornea transplants.

We have contracted with certain specified transplantation centers to provide transplantation services to our Insureds at a negotiated rate. When these specified transplantation centers are used for transplants, the benefit of controlling the medical expense risk is passed on to you by waiving the maximum lifetime transplant benefit limit. All transplant related claims continue to apply to the Lifetime Maximum Benefit.

When generally accepted indications and standards for transplantation are met and all assessments required by the treating institution are successfully completed, Covered Charges are limited to the following solid organ transplants and marrow reconstitution or support.

Solid Organ Transplants

- heart

- lung

- combined heart/lung

- combined kidney/pancreas

- liver (Candidates for liver transplantation must have abstained from alcohol for one year immediately prior to transplantation.)

Marrow Reconstitution or Support (often called Bone Marrow Transplant or Stem Cell Transplant) is a transplantation procedure in which human blood precursor cells are administered to a patient following myelosuppressive or ablative therapy. Such cells may be derived from bone marrow or circulating blood, obtained from the patient in an autologous harvest, or from a matched donor for an allogenic transplant.    The marrow reconstitution and support procedure includes all chemotherapy, the harvesting, and the reinfusion of the marrow or blood precursor cells.

We will not pay for:

- multiple organ, tissue and cellular transplants during one operative session, except for a heart/lung, double lung or simultaneous kidney/pancreas transplant;

- any nonhuman (including animal or mechanical) organ transplant;

- transplants approved for a specific medical condition, but applied to another condition;

- the purchase price of an organ or tissue that is sold rather than donated; or

- any transplants not listed above.

**Wellness services** include services based on the published recommendations of the U.S. Preventive Services Task Force and are subject to change. The maximum benefit payable for each calendar year is $   500.  This maximum will not apply to routine mammograms, pap smears and prostate specific antigen (psa) tests.

**Diabetic services** include

- Outpatient self-management training and education, including medical nutrition therapy, and

- 1 routine eye exam each calendar year, and

    Routine foot care exams.

Insulin, syringes and testing agents are covered under Covered Prescription Drug Services. Other equipment will be considered for coverage under the Supplies and  durable medical equipment provision.

**Injectable drugs** which require a written prescription are covered, except for insulin which is covered under Covered Prescription Drug Services.

**Initial reconstructive surgery after mastectomy for cancer** includes surgery on the unaffected breast to achieve symmetry.

**Parenteral (intravenous infusion) therapy** includes total parenteral nutrition and other fluids, blood and blood products, and medications requiring a written prescription.

**Dental injury:**  Benefits are payable for an Injury resulting from an accidental blow to the mouth causing trauma to sound teeth, the gums or supporting structures of the teeth. A sound tooth has no decay and has never had a filling, root canal therapy or crown. The treatment must begin within 90 days of the Injury and be completed within 365 days of the Injury.

We will pay benefits for the least expensive procedure that will produce a professionally adequate result. You may submit the dental treatment plan in advance for an estimate of the benefits payable.

**Limited coverage for specific conditions of pregnancy** includes only spontaneous miscarriage, ectopic pregnancy, Medically Necessary caesarean section, gestational diabetes mellitus, and medical conditions whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy.

**Sterilization** is payable up to a maximum lifetime benefit of $500 after you have been continuously insured under this plan for 365 days.

**Removal of tonsils and adenoids** are payable after you have been continuously insured under this plan for 90 days except for Emergency Treatment. The 90 days will be waived if other health insurance with reasonably similar benefits was shown on the enrollment form and was in force until the effective date of this certificate. Other health insurance includes  our short term medical plan.

**Surgical treatment for hernia (except strangulated or incarcerated), bunions, varicose veins and hemorrhoids** are payable after you have been continuously insured under this plan for 180 days except for Emergency Treatment. The 180 days will be waived if other health insurance with reasonably similar benefits was shown on the enrollment form and was in force until the effective date of this certificate. Other health insurance includes our short term medical plan.

**World wide coverage** will be provided for any treatment received outside of the United States if such treatment is rendered and covered when provided in the United States.

# Covered Prescription Drug Services

Covered Prescription Drug Services include only Covered Charges for the services and supplies listed in this certificate. Charges are subject to all the terms, limits and conditions of this plan.

## Definitions

| | |
|---|---|
| **Ancillary Charge** | The copay differential or the difference between the actual charge and the MAC list charge or Drug Formulary medication charge. The Ancillary Charge does not count toward any Deductible or Out-of-Pocket Limit. |
| **Brand Name Drug** | A drug for which a pharmaceutical company has received a patent or tradename. |
| **Generic Drug** | A drug that has the same active ingredients as an equivalent Brand Name Drug, does not carry any drug manufacturer's brand name on the label, and is not protected by a patent. It must be listed as a generic drug by our national drug data bank. |
| **Drug Formulary** | A preferred drug list that we approve. We will periodically update the list. |
| **Maximum Allowable Cost (MAC) List** | A list of Prescription Drugs reimbursed at a Generic Drug product level. We will periodically update the list. |

## Prescription Drug Benefits

To obtain benefits at a network pharmacy, present your ID card. Certain drugs require preauthorization prior to dispensing. Once you pay the Prescription Drug Deductible and/or Copayment, any coinsurance and/or any Ancillary Charge, we will pay benefits up to a 30 consecutive day supply for each prescription or up to a 90 consecutive day supply for each prescription from the mail order service unless restricted by the manufacturer's packaging. Some products may be subject to additional supply limits.

For Prescription Drugs and medicines we will pay for the following:

- legend drugs and medicines that by Federal law can only be obtained with a prescription;

- injectable insulin with a prescription; and

- disposable insulin syringes, and disposable blood/urine, glucose/acetone testing agents or lancets.

If you do not use a network pharmacy, or if you do not present your ID card at a network pharmacy, you will have to pay the pharmacy in full and then file a claim form with the prescription card service administrator for reimbursement. You will be reimbursed at the negotiated rate that would have been paid to a network pharmacy for the cost of the drug minus any applicable Prescription Drug Deductible, Copayment, any coinsurance and/or Ancillary Charge.

When a Prescription Drug is available under two or more names or manufacturers' packaging or when more than one drug may be used to treat a condition, we will cover the least expensive drug. Payment for a Prescription Drug does not mean we have any liability under Covered Medical Services. Drugs administered or dispensed by a Health Care Practitioner, Hospital or other state-licensed facility are not payable under this section. They may be covered under the Covered Medical Services section.

## Prescription Drug Exclusions

In addition to the Exclusions section, we will not pay benefits for any of the following:

- replacement of lost, stolen, destroyed or damaged prescriptions;

- drugs or devices used directly or indirectly to promote or prevent conception;

- immunization agents, biological sera, blood, blood plasma or its derivatives;

- drugs containing nicotine or its derivatives;

- injectable drugs which we do not authorize to be paid under this benefit;

- more than we determine is an average quantity of medication required to treat an immediate condition or symptom on an "as needed" basis; or

- over-the-counter medications that can be obtained without a prescription; drugs which we determine have an over-the-counter equivalent or contain the same active ingredient(s) as over-the-counter medication; or compounded medications not containing at least one legend ingredient.

# Pre-existing Conditions Limitation

We will not pay benefits for Covered Charges incurred due to a pre-existing condition until you have been continuously insured under this plan for 12 months. After this 12 month period, benefits will be paid for a pre-existing condition on the same basis as any other condition unless the condition has been specifically excluded from coverage.

A preexisting condition is an Illness or Injury and related complications, not fully disclosed on the enrollment form, if during the 12 month period immediately prior to your effective date:

- you received medical treatment, diagnosis, consultation, or took Prescription Drugs for the condition; or
- the condition produced symptoms or was capable of being diagnosed.

# Exclusions

We will not pay benefits for any of the following:

- Illness or Injury eligible for benefits under Worker's Compensation, Employers' Liability or similar laws even when you do not file a claim for benefits.
- Illness or Injury caused by:
  - war or act of war (declared or undeclared),
  - active duty in the military service of any country,
  - commission of a felony, crime or illegal act,
  - participation in a riot,
  - an Insured over age 19 being under the influence of illegal narcotics or nonprescribed controlled substances, or
  - attempted suicide or self-inflicted Injury.
- Charges that are payable or reimbursable by:
  - a plan or program of any governmental agency (except Medicaid), or
  - Medicare Part A or Part B (where permitted by law). If you do not enroll in Medicare we will estimate benefits.
- Routine hearing care, routine vision care, vision therapy, surgery to correct vision, routine foot care, or foot orthotics.
- Cosmetic services including treatment primarily designed to change or improve appearance, self-esteem or body image and/or relieve or prevent social, emotional or psychological distress.
- Not covered services, complications of an excluded or not covered service, or charges for which you are not liable.
- Charges by a Health Care Practitioner or medical provider who is an immediate family member. Immediate family members are you, your spouse, your children, brothers, sisters, parents, their spouses and anyone with whom legal guardianship has been established.
- Custodial Care.
- Dental care not related to a dental Injury.
- Any treatment for correction of malocclusion, protrusion, hypoplasia or hyperplasia of the jaws.
- Charges for which there is automobile or liability insurance providing medical payments.
- Charges for educational testing or training, vocational or work hardening programs, transitional living, or services provided through a school system.

- Infertility, which is the inability to conceive despite one year without protection from pregnancy or the inability to carry pregnancies to a live birth resulting in 3 or more miscarriages prior to the 20th week of gestation.

- Maternity and routine nursery charges unless you have a Maternity Rider.

- Genetic testing, counseling and services.

- Charges for sex transformation, and treatment of sexual dysfunction or inadequacy or to enhance sexual performance or desire.

- Over-the-counter products including vitamins and food supplements, herbal and homeopathic medications.

- Treatment of "quality of life" or "lifestyle" concerns including but not limited to: smoking cessation; obesity; hair loss; sexual function, dysfunction, inadequacy or desire; or cognitive enhancement.

- Treatment used to improve memory or to slow the normal process of aging.

- Telemedicine or treatment rendered without the Health Care Provider being physically present with a patient.

- Mental Illness or Substance Abuse unless you have a Mental Illness Rider.

# Coordination of Benefits

**Definitions**

| | |
|---|---|
| **Allowable Charge** | Any charge considered to be a Covered Charge by any Plan. |
| **Plan** | Any plan which provides medical benefits or services. Plan does not include: student accident plans, Medicaid, or any group hospital indemnity plan which pays $100 per day or less. |
| **Primary Plan** | A medical Plan that determines benefits without considering the benefits of any other Plan. |
| **Secondary Plan** | A medical Plan that determines benefits after the primary Plan determines benefits. |

**How Benefits Are Paid**

| If ... | We will... |
|---|---|
| you have another medical Plan in addition to this group Plan | coordinate this group Plan's benefits with the other Plan's benefits so combined benefits do not exceed 100% of the allowable charges incurred in a calendar year. |
| you are eligible for benefits provided by another Plan but do not claim them | consider the benefits for which you are eligible as benefits provided. |
| you receive benefits from another Plan in the form of services instead of cash payments | determine a reasonable cash value for each service which will be considered the amount paid by your other Plan. |
| we are primary (see below) | pay our normal benefits. |
| we are secondary (see below) | pay the lesser of the difference between the allowable charges and the amount paid by the Primary Plan, or our normal benefits. |

When this Plan is secondary, benefits payable will be reduced so that when they are added to the benefits payable under all other Plans, they will not exceed the total Allowable Charges. If both Plans have contractual discount arrangements with a provider, the greater discount will be taken into consideration when making benefit determinations.

**Order of Benefit Determination Rules**
The first applicable rule from the following list determines which Plan pays first.

1.  A Plan that does not have a coordination of benefits provision, or has a provision that differs from this one, pays first.

2.  A Plan that covers the claimant as the primary Certificate Holder pays before a Plan that covers the claimant as a Covered Dependent.

3.  For a child whose parents are not divorced or separated:

    - the Plan of the parent whose birthday (month & day only) is earlier in the year pays first, regardless of which parent is older.

    - if both parents have the same birthday (month & day only), the Plan covering the parent for the longer time pays first.

      If the other Plan does not have this rule, that Plan pays first.

4.   For a child whose parents are separated or divorced, the order is:

- first, the Plan of the parent with child custody
- second, the Plan of the spouse of the parent with child custody
- finally, the Plan of the parent without child custody.

   If a court requires one parent to be responsible for the child's medical expenses, that Plan is the Primary Plan. If a court establishes joint custody without stating which parent is responsible for medical expenses, the rules in item #3 of this section apply.

5.   If none of the above rules apply, the Plan that has been covering the claimant longer pays first.

**Our Rights Under This Section**
We have the right to release or obtain claim information from any organization or individual and pay our normal benefit to any organization which has paid benefits we should have paid.

# OTHER PROVISIONS

**Conformity With State Statutes**
If this plan is in conflict with any laws of the state where it is issued, this plan is changed to meet the minimum requirement of such laws.

**Consideration**
This certificate is issued based on the statements and agreements in the enrollment form, the exam (if required), any other amendment or supplements, and the payment of the required premium. Each renewal premium is payable on the due date subject to the grace period.

**Plan Changes**
No change in this plan will be valid unless approved by an executive officer of Time Insurance Company and attached to this plan. No agent or employee of Time Insurance Company has authority to waive or change any plan provision or waive any requirements within the enrollment form.

**Enforcement of Plan Provisions**
Our failure to enforce or require compliance with any provision within this plan will not waive, modify or render any provision unenforceable at any other time, whether the circumstances are the same or not.

**Grace Period**
There is a 31-day grace period for the receipt, at our home office, of any premium due after the first premium. If you have not paid your premium by the end of the grace period, your insurance will stop as of the last day for which premium has been paid.

No coverage will be provided during the grace period if you have similar coverage available through another carrier. Coverage will continue during the grace period unless you give us written, advance notice that coverage is to terminate.

**Grievance Procedure**
A complaint is any dissatisfaction you have regarding the services or benefits you receive from us. Call us with any complaint. We will attempt to resolve the complaint to your satisfaction. If we are unable to resolve the complaint over the phone, you can submit the complaint in writing as a formal grievance. Please contact us for more information about our formal grievance procedure.

We have the option, upon joint agreement, of initiating mediation as a means of resolving a dispute.

**Incontestability**
In the absence of fraud, all statements made on the enrollment form will be deemed representations and not warranties. After coverage has been in force for two years, no statement made in any enrollment form (unless fraudulent) will be used to void your coverage.

**Legal Action**
You cannot file a lawsuit before 60 days or more than 3 years after written proof of loss has been given to us.

**Misstatements**
If any relevant fact about you is found to have been misstated, the true facts will be used to determine if the insurance is in force. If your age has been misstated and the premium amount is based on age, an adjustment in premiums will be made based on your true age. No misstatement of age will continue insurance otherwise validly terminated or terminate insurance otherwise validly in force.

**Physical Exams**
We have the right to have a Health Care Practitioner examine you while a claim is pending. We will pay for the cost of these examinations.

**Premium Payments**
Premium payment on or before the effective date will keep your coverage in force until the first renewal date. Each renewal premium is due on its due date subject to the grace period. The premium shown on the Schedule may change because a new rate table applies. Premiums may also change when your age increases, family members are added or deleted, coverage is increased or decreased, or if you move to a different ZIP code.

**Recovery**

1. **Subrogation Right:** Upon payment of benefits, we will be subrogated to all rights of recovery you may have against any person or organization. This includes recoveries against such third party, against any liability coverage for such third party or against your automobile insurance in the event a claim is made under the uninsured or underinsured motorist coverages.  Such right extends to proceeds received by settlement, judgment or otherwise; but is limited to the amount of benefits we have paid. You must:

   • do nothing to prejudice any right of recovery;

   • execute and deliver any required instruments or papers; and

   • do whatever else is necessary to secure such rights.

   If we are precluded from exercising our subrogation right, we may exercise our right of reimbursement.

2. **Right of Reimbursement:** If benefits are paid under this plan, and you recover against any person or organization by settlement, judgment or otherwise, we have a right to recover from you an amount equal to the amount we have paid. This includes recoveries against such third party, against any liability coverage for such third party or against your automobile insurance in the event a claim is made under the uninsured or underinsured motorist coverages.

   Any payment we make prior to determination of a work-related injury must be reimbursed when you receive any payment for such injury from another source. You must notify us of any work-related claim you make and reimburse us even when your recovery is the result of settlement or compromise.

**Rights of Administration**
We maintain our ability to determine our rights and obligations under this plan including, without limitation, the eligibility for and amount of any benefit payable.

**Modification of Policy**
The Master Group Policy is issued to the trust. The Master Group Policy may be changed at any time by agreement between the trust and us. You will receive an amendment to your certificate showing any change.

**ASSURANT HEALTH**
501 West Michigan
P.O. Box 624
Milwaukee, WI 53201-0624

## Statement of Rights under the Newborns' and Mothers' Health Protection Act

Under federal law, health insurance issuers generally may not restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a delivery by cesarean section. However, the issuer may pay for a shorter stay if the attending provider (e.g., your physician, nurse midwife, or physician assistant), after consultation with the mother, discharges the mother or newborn earlier.

Also, under federal law, issuers may not set the level of benefits or out-of-pocket costs so that any later portion of the 48-hour (or 96 hour) stay is treated in a manner less favorable to the mother or newborn than any earlier portion of the stay.

In addition, an issuer may not, under federal law, require that a physician or other health care provider obtain authorization for prescribing a length of stay of up to 48 hours (or 96 hours). However, to use certain providers of facilities, or to reduce your out-of-pocket costs, you may be required to obtain precertification. For information on precertification, contact your issuer.

## Women's Health and Cancer Rights Act Notice

Effective October 21, 1998, the Federal Women's Health and Cancer Rights Act requires all health insurance plans that provide coverage for a mastectomy must also provide coverage for the following medical care:

- Reconstruction of the breast on which the mastectomy has been performed.

- Surgery and reconstruction of the other breast to produce a symmetrical appearance.

- Prostheses and physical complications at all stages of the mastectomy, including lymphedemas.

Covered benefits are subject to all provisions described in your plan including, but not limited to: deductible, copayment, rate of pay, exclusions and limitations.

## Notice of Privacy Practices

**This notice describes how medical information about you may be used and disclosed and how you can get access to this information. Please review it carefully.**
Effective date 4-14-03:

Assurant Health is required by law to maintain the privacy of protected health information and to provide the people we insure with this notice of our legal duties and privacy practices. Assurant Health is required to abide by the terms of the Notice.

### Who We Are

In business since 1892, Assurant Health provides health insurance coverage to more than one million people nationwide. Assurant Health develops and provides a wide range of individual medical, small group, short term and student health insurance products, as well as non-insurance products. Assurant Health also provides consumer-choice products such as Health Savings Accounts and Health Reimbursement Arrangements. With almost 3,000 employees. Assurant Health is headquartered in Milwaukee, Wis., and has operations offices in Minnesota, Idaho, and Florida, as well as sales offices across the country. Assurant Health products are underwritten and issued by Time Insurance Company, John Alden Life Insurance Company and Union Security Insurance Company. The Assurant Health website is www.assuranthealth.com. Assurant Health is part of Assurant, which offers specialized insurance products and related services in North America and selected other markets.

### Information We Collect

To serve your health insurance needs, Assurant Health collects information about you. We may collect this information directly from you orally or on applications or other forms.
**DUPLICATE POLICY**

We also collect information from third parties such as your agent or broker, your current or former health care providers and consumer reporting agencies. In addition, this information may include your transactions with Assurant Health, its affiliates and others. It is impossible to describe every type of information that we collect, but here are some examples: your name, age, address, Social Security number, telephone number, occupation and other demographic information about you and your family; whether you are a past or present customer with us, or if you ever applied for an insurance product or service from us, as well as your history of other insurance coverage and applications (if you apply online, information is collected through an Internet "cookie" an information–collecting device from a web server); your past, present or future physical, mental or behavioral health or condition; your health care history; your history of insurance coverage, premiums, claims and payments through Assurant Health; information from consumer reporting agencies and date collection agencies.

## How Assurant Health May Use and Disclose Information About You

We use and disclose information about you in serving your health insurance needs. It is impossible to describe every type of information that we use or disclose but we have provided some examples of how we use this information to provide services to you and your dependents:

**Treatment:** Your health care provider may ask us to use or disclose protected health information in connection with treatment, including the provision, coordination, or management of health care and related services.

**Payment:** We may use and disclose protected health information for payment purposes, including billing, review of health care services, determining whether a service is "medically necessary" and for utilization review. For instance, a doctor or health facility involved in your care may forward a claim to us with your protected health information. Assurant Health must have this health information to process your claims.

**Health Care Operations:** Assurant Health may use and disclose protected health information as part of our health care operations. For example, we may use and disclose information in the underwriting process, renewal process, quality assessment activities or accreditation and certification.

**Plan Sponsors:** If you are enrolled in a group health plan, Assurant Health may provide protected health information to the plan sponsor. For instance, we may share enrollment or disenrollment information with your employer.

**Health-related Benefits and Services:** We may, from time to time, contact you about treatment alternatives or other health–related benefits, products or services that may be of interest to you, and for case management or care coordination.

**Business Associates:** Assurant Health works with companies and consultants who perform a wide variety of functions on our behalf. For example, we work with financial institutions such as agents, brokers, insurance distributors, reinsurers and excess loss insurers, non–financial institutions such as health care providers, detectors of fraud, auditors, insurance support organizations, claims handlers, underwriters, and others such as information technology specialists and consultants. At times it may be necessary for us to provide your protected health information to one or more of these outside persons or organizations who assist us with our health care operations. In all cases, we require these business associates to provide written assurances to us that they will appropriately safeguard the privacy of your protected health information.

**Individuals Involved in Your Care or Payment:** We may use or disclose protected health information to you or other family members who are covered under your health insurance policy regarding your care or payment related to your care. If you object to our use or disclosure of your protected health information in communications with other family members covered under your health insurance policy, please contact our customer service department and ask for the *Right to Restrictions* form, or visit our website at **www.assuranthealth.com.** This request must be made in writing and signed by you or your legally authorized representative.

**Permitted or Required by Law:** Assurant Health may release information when requested by law enforcement officials or when permitted or required by law. If you are involved in a lawsuit or dispute, Assurant Health may need to disclose protected health information in response to a court or administrative order.

**More Stringent Laws:** Assurant Health offers health coverage in many states across the nation. In some cases we may be required to follow the state law provisions on use and disclosure of your protected health information, which may be more stringent than those outlined in this notice.

**Our Security Safeguards**
Assurant Health has established safeguards to ensure the security and confidentiality of information about you. These safeguards include protection against any anticipated threats or hazards to the security or integrity of the information, as well as protection against the unauthorized access to or use of this information. We restrict access to your information to those employees "who need to know that information" to provide products or services to you or on your behalf. Any other use or disclosure of your protected health information may only be made with your written authorization, which may be revoked under certain circumstances at any time.

**Your Rights Regarding Protected Health Information**
You have the following rights regarding protected health information we maintain about you:

**Right to Access:** You have the right to request to access and/or inspect your protected health information in a designated record set. A designated record set could include information related to enrollment, premium payment, claims adjudication and medical management.
**Right to Amend:** If you feel that the information we have about you is incorrect, you may ask to have protected health information in a designated record set amended. You have the right to request an amendment as long as the information is kept and created by Assurant Health.
**Right to an Accounting of Disclosures:** You have the right to receive an accounting of disclosures made by us of your protected health information after April 14, 2003. The accounting will not include disclosures made for purposes of treatment, payment or health care operations, disclosures permitted or required by law, or disclosures to you or to third parties to whom you have authorized disclosure.
**Right to Request Restrictions:** You have the right to request a restriction or limitation on the health information we use or disclose about you for treatment, payment or health care operations. We are not required to agree to a requested restriction.
**Right to Confidential Communications:** If you feel that your life may be in danger if Assurant Health contacts you at the address or phone number maintained in our records, you may request that we contact you in a different way or at a different location.
**Complaints:** If you believe your privacy rights have been violated, you may file a complaint with Assurant Health or with the Secretary of the Department of Health and Human Services. All complaints must be in writing. You will not be retaliated against for filing a complaint. If you would like to request to access or amend your personal health information, to request restrictions on use or disclosure, to request confidential communications, or to request an accounting of disclosures, please visit our website at www.assuranthealth.com or contact our Customer Service Department at the number listed below and ask for the appropriate form. Each form must be signed by you or your legally authorized representative. Each of the forms provides additional information relating to your rights, including the cost that may be involved to process your request.

**Changes to This Notice**
We reserve the right to make changes to this notice and to make the revised or changed notice effective for protected health information we already have about you as well as any information we receive or create in the future. Any changes to this notice will be posted on our website, and if we make substantial material changes to the notice, we will distribute the revised notice to you or your plan sponsor via mail. You may view a copy of this notice at any time at our website www.assuranthealth.com or you may receive another copy of the notice by calling our Customer Service Department. For Time Insurance Company and Union Security Insurance Company call 1-800-800-1212. For John Alden Life Insurance Company call 1-800-328-4316.

Form 28280 (4/14/2003)

DUPLICATE POLICY

**Time Insurance Company**
501 West Michigan
Milwaukee, WI 53203
A Stock Company

## PREMIUM GUARANTEE RIDER

The consideration for this rider is the premium shown in the Schedule or endorsement to the policy or certificate. The policy or certificate to which this rider is attached is amended as follows:

The third paragraph on the Certificate Cover Page is changed to read as follows:

- Your rates will not change during the first 1 month this certificate is in force unless You change benefits, add or delete Covered Dependents, or move to another ZIP code.

Nothing in this rider will be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the policy or certificate, other than as stated above.

This rider is effective on the effective date of the policy or certificate to which it is attached, or the endorsement date if later.

*CRPal*

Secretary

**RIDER B019**
**DUPLICATE POLICY**

**Time Insurance Company**
501 West Michigan
Milwaukee, WI 53203
A Stock Company

## POLICY/CERTIFICATE AMENDMENT RIDER

The policy or certificate to which this rider is attached is amended as follows. Benefits provided by this rider will be subject to any Rate of Payment provision or other limitation of the policy and certificate. This rider supercedes other policy or certificate provisions with which it may be in conflict.

1.  The certificate Cover Page form number is changed to be Form 227.001.XX.

2.  The Table of Contents form number is changed to be Form 227.002.XX.

3.  With respect to the Schedule:

    a.  The form number is changed to be Form 227.S01.XX.

    b.  The second paragraph of the Schedule page is deleted and replaced by the following:

    For most services the Rate of Payment for a network provider is more than the Rate of Payment for an out-of-network provider. However, if You receive Emergency Treatment from an out-of-network provider when You cannot reasonably reach a network provider, benefits will be paid as if received from a network provider. In these cases, after the insured's condition is stabilized, We reserve the right to condition payment of subsequent charges at the network Rate of Payment upon transfer to a network facility. A network provider is any Health Care Provider or Hospital participating in the network provider plan. The list of network providers is subject to change. You are responsible for calling the network manager to verify the participation status of a provider prior to treatment. Covered Charges incurred after a provider's participation in the network provider plan has terminated will be subject to the normal provisions of this plan, including medical Deductible and out-of-network Rate of Payment.

4.  With respect to the Definitions section:

    a.  The form number is changed to be Form 227.003.XX.

    b.  The following definition is added:

    **Class:**
    Any common personal characteristic or shared product features, except an individual's claim experience shall only be considered collectively with other individuals' claim experience.

5.  With Respect to the When Your Coverage Begins and Ends section:

    a.  The form number is changed to be Form 227.004.XX.

    b.  The **Adding Newborn and Adopted Children** provision is replaced by the following:

    **Adding Newborn and Adopted Children:** A newborn or adopted child will be covered if the child is a Covered Dependent, written enrollment is made to Us, and We receive any required premium within        60 days of birth or adoption.

    If this is an individual plan and these requirements are not met, the child will not be covered from birth or adoption. However, if this is a family plan, the child will be covered for the first        60 days from birth or adoption.

    c.  The **Termination** provision under When Your Coverage Begins and Ends is replaced by the following:

    **Termination**
    The certificate Holder may cancel this coverage at any time by sending Us written notice. Upon cancellation, We will promptly return the unearned portion of any premium paid.

Rider B021
DUPLICATE POLICY

This certificate will terminate at 12:01 a.m. standard time at the certificate Holder's residence on the date:

- requested in writing or the date We receive the request, whichever is later;
- on which no further premium is received;
- there is fraud or material misrepresentation made by or with the knowledge of any Insured applying for this coverage or filing a claim for benefits;
- all certificates in the same form number or Class are non-renewed or canceled in the state in which Your certificate was issued or the state in which You presently reside;
- You move outside of the service area, if You have a PPO plan;
- You become eligible for Medicare, if allowed by federal law; or
- You are no longer a Covered Dependent.

We will pay benefits to the end of the time for which We have accepted premiums.

d.    The following provisions are added:

**Renewal**
This certificate is renewed on each premium due date while coverage is in effect.

**Modification of Your Coverage**
The Master Group Policy may be changed at any time. We will give the trust 30 days notice prior to any change. In addition, at renewal, We may uniformly modify benefits for all certificates with Your plan of coverage. You will receive an amendment to Your certificate showing any change.

6.    With respect to the Health Care Review section:

a.    The form number is changed to be Form 227.005.XX.

b.    The following provision is added:
**Emergency Confinement in Non-network Hospital or Facility**
If You or a Covered Dependent are admitted to a Non-network facility because of an emergency, follow the instructions above for Emergency Confinement. In these cases, after the insured's condition is stabilized, We reserve the right to condition payment of subsequent charges at the network Rate of Payment upon transfer to a network facility.

c.    The following items are amended:

The **Outpatient Procedures** provision is replaced by the following:

**Outpatient Procedures:**  Call at least 7 days prior to a scheduled Outpatient procedure.

The **Durable Medical Equipment** provision is replaced by the following:

**Durable Medical Equipment**

7.    The How to File a Claim for Benefits form is changed to be Form 227.006.XX.

8.    With respect to the Covered Medical Services section:

a.    The form number is changed to be Form 227.007.XX.

b.    The paragraph that begins **Limited coverage for specific conditions of pregnancy** is changed to read:
**Limited coverage for specific conditions of pregnancy** includes only spontaneous miscarriage, ectopic pregnancy, Medically Necessary cesarean section, gestational diabetes mellitus and medical conditions whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy. In complicated pregnancy, prenatal care and normal delivery are not covered unless Maternity Coverage is in force.

9.    With respect to the Covered Prescription Drugs Services section:

    a.    The form number is changed to be Form 227.008.XX.

10.    With respect to the Pre–existing Conditions Limitation and other Exclusions section:

    a.    The form number is changed to be Form 227.009.XX.

    b.    The following items are added to the Exclusions section:

- Prenatal–related genetic screening or diagnostic testing, including but not limited to maternal serum alpha–fetoprotein, chorionic villus sampling, ultrasonography, percutaneous umbilical blood sampling, fetal skin sampling, unless maternity coverage is in force.

- Pregnancy, maternity and other expenses related to surrogate pregnancy.

    c.    The following items in the Exclusions section are amended:

The exclusion beginning with "Infertility, which is the inability to conceive" is replaced with:

- Diagnosis and treatment of infertility, which is the inability to conceive despite one year without protection from pregnancy or the inability to carry pregnancies to a live birth resulting in 3 or more miscarriages prior to the 20th week of gestation.

The exclusion beginning with "Charges for sex transformation" is replaced with:

- Charges for sex transformation, and treatment of sexual dysfunction or inadequacy or to restore or enhance sexual performance or desire.

The exclusion beginning with "Mental Illness or Substance Abuse" is replaced with:

- Diagnosis or treatment of Mental Illness or Substance Abuse.

11.    The Coordination of Benefits form number is changed to be Form 227.010.XX.

12.    With respect to the Other Provisions section of the certificate:

    a.    The form number is changed to be Form 227.011.XX.

    b.    The Misstatements provision is deleted and replaced by the following:

**Misstatements**
If any relevant fact about You is found to have been misstated, the true facts will be used to determine if the insurance is in force. If Your age or other material information has been misstated and the premium amount would have been different had the correct information been disclosed, an adjustment in premiums may be made based on the corrected information. In addition to adjusting future premiums, We may require payment of past premiums at the adjusted rate in order to continue coverage.

    c.    The Premium Payments provision is deleted and replaced by the following:

**Premium Payments**
Premium payment on or before the effective date will keep Your coverage in force until the first renewal date. Each renewal premium is due on its due date subject to the grace period. Your premium may change on renewal because a new rate table applies, due to claims experience within Your Class of coverage, due to changes in policyholder expense, when Your age increases, family members are added or deleted, coverage is increased or decreased, if You move to a different ZIP code, or for any other reason permitted by law. Your mode of payment (monthly, quarterly or other) is subject to change at Our discretion.

d.    The Modification of Policy provision is deleted.

The Effective Date of this rider is the Effective Date of the policy or certificate to which it is attached, or this endorsement whichever is later.

Secretary

**Time Insurance Company**
501 West Michigan
Milwaukee, WI 53203

ILLINOIS
LIFE AND HEALTH INSURANCE GUARANTY
ASSOCIATION LAW

Residents of Illinois who purchase health insurance, life insurance, and annuities should know that the insurance companies licensed in Illinois to write these types of insurance are members of the Illinois Life and Health Insurance Guaranty Association. The purpose of this Guaranty Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its policy obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the covered claims of policyholders that live in Illinois (and their payees, beneficiaries, and assignees) and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however, as noted below.

ILLINOIS LIFE AND
HEALTH INSURANCE GUARANTY ASSOCIATION

DISCLAIMER

The Illinois Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are substantial limitations and exclusions. Coverage is generally conditioned on continued residence in Illinois. Other conditions also preclude coverage.

You should not rely on availability of coverage under the Life and Health Insurance Guaranty Association Law when selecting an insurer. Your insurer and agent are prohibited by law from using the existence of the Association or its coverage to sell you an insurance policy.

The Illinois Life and Health Insurance Guaranty Association or the Illinois Department of Insurance will respond to any questions you may have which are not answered by this document. Policyholders with additional questions may contact:

Illinois Life and Health Insurance Guaranty Association
8420 West Bryn Mawr Avenue
Chicago, IL  60631
(773) 714-8050

Illinois Department of Insurance
320 West Washington Street
4th Floor
Springfield, IL  62767
(217) 782-4515

Summary of General Purposes And
Current Limitations of Coverage

The Illinois law that provides for this safety-net coverage is called the Illinois Life and Health Insurance Guaranty Association Law ("LAW") (215 ILCS 5/531.01, et seq). The following contains a brief summary of the Law's coverages, exclusions, and limits. This summary does not cover all provisions, nor does it in any way change anyone's rights or obligations under the Law or the rights or obligations of the Guaranty Association. If you have obtained this document from an agent in connection with the purchase of a policy, you should be aware that its delivery to you does not guarantee that your policy is covered by the Guaranty Association.

FORM 2430                                Page 1
DUPLICATE POLICY

a) Coverage:
   The Illinois Life and Health Insurance Guaranty Association provides coverage to policyholders
   that reside in Illinois for insurance issued by members of the Guaranty Association, including:
      1) life insurance, health insurance, and annuity contracts;
      2) life, health or annuity certificates under direct group policies or contracts;
      3) unallocated annuity contracts; and
      4) contracts to furnish health care services and subscription certificates for medical
      or health care services issued by certain licensed entities.  The beneficiaries, payees,
      or assignees of such persons are also protected, even if they live in another state.

b) Exclusions from Coverage:
   1) The Guaranty Association does not provide coverage for:
      A) any policy or portion of a policy for which the individual has assumed the risk;
      B) any policy of reinsurance (unless an assumption certificate was issued);
      C) interest rate guarantees which exceed certain statutory limitations;
      D) certain unallocated annuity contracts issued to an employee benefit plan protected
      under the Pension Benefit Guaranty Corporation and any portion of a contract which
      is not issued to or in connection with a specific employee, union or association of
      natural persons benefit plan or a government lottery;
      E) any portion of a variable life insurance or variable annuity contract not guaranteed
      by an insurer; or
      F) any stop loss insurance.

   2) In addition, persons are not protected by the Guaranty Association if:
      A) the Illinois Director of Insurance determines that, in the case of an insurer which
      is not domiciled in Illinois, the insurer's home state provides substantially similar
      protection to Illinois residents which will be provided in a timely manner; or
      B) their policy was issued by an organization which is not a member insurer of the
      Association.

c) Limits on Amount of Coverage:
   1) The law also limits the amount the Illinois Life and Health Insurance Guaranty Association
   is obligated to pay.  The Guaranty Association's liability is limited to the lesser of either:
      A) the contractual obligations for which the insurer is liable or for which the insurer
      would have been liable if it were not an impaired or insolvent insurer, or
      B) with respect to any one life, regardless of the number of policies, contracts or
      certificates:
         i) in the case of life insurance, $300,000 in death benefits but not more than
         $100,000 in net cash surrender or withdrawal values;
         ii) in the case of health insurance, $300,000 in health insurance benefits, including
         net cash surrender or withdrawal values; and
         iii) with respect to annuities, $100,000 in the present value of annuity benefits,
         including net cash surrender or withdrawal values, and $100,000 in the present
         value of annuity benefits for individuals participating in certain government
         retirement plans covered by an unallocated annuity contract.  The limit for
         coverage of unallocated annuity contracts other than those issued to certain
         governmental retirement plans is $5,000,000 in benefits per contract holder,
         regardless of the number of contracts.

   2) However, in no event is the Guaranty Association liable for more than $300,000 with
   respect to any one individual.

JOHN V DANO
215 DEER RUN
CRYSTAL LAKE IL   60012-3687

Policy:   0003090705

**Assurant Health**
501 West Michigan
P. O. Box 624
Milwaukee, WI 53201-0624

 ASSURANT Health

# HOW YOUR PRESCRIPTION DRUG CARD PROGRAM WORKS

Your coverage for outpatient drugs is provided through Assurant Health's prescription drug card program, administered through Medco. The drug card is easy to use and may offer you savings each time you fill a covered prescription at a pharmacy participating in the Medco network!

## IMPORTANT FEATURES

- To receive maximum benefits, a prescription must be 1) prescribed by a licensed physician, 2) dispensed by a participating pharmacy, and 3) processed on the drug card.

- You must present your card at your local Medco pharmacy each time a prescription is filled.

- You pay the applicable copayment and applicable coinsurance per covered prescription for up to a one-month supply after your calendar year drug card deductible is satisfied. Some medications may have additional supply limits or may require pre-authorization before dispensing at the pharmacy.

- No claim forms are needed when you use your drug card.

- A list of national participating pharmacies is enclosed in this package. To locate the participating pharmacies nearest you, call the pharmacy locator telephone number on your prescription drug card.

- A covered prescription must be Food and Drug Administration (FDA) approved.

- **FDA-Approved Generic Drugs:** Assurant Health considers benefits for covered generic drugs after any applicable copayment, coinsurance and deductible.

- **Brand Name Drugs:** If an FDA-approved generic drug is not available, Assurant Health considers benefits for covered brand name drugs after any applicable deductible, applicable brand copayment and coinsurance. If a generic drug is available, but you or your physician choose a brand name, you will be responsible for the difference in cost, **in addition to other charges required by your plan.**

- Some plans may offer selected maintenance medications through mail order. If you have questions about mail order service, please call 1-800-553-7654

## HOW TO USE THE DRUG CARD

- You must present your card at your local Medco pharmacy each time a prescription is filled.

- Within seconds, the pharmacy transmits the prescription information to Medco. Any available prescription benefits are analyzed and a response is sent back to your pharmacist.

- Once you satisfy your calendar year deductible, you pay the applicable copayment and/or coinsurance specified in your plan.

- If you do not use the drug card at a participating pharmacy, a record of your expenses will not automatically be maintained by Medco. You must then submit your prescription charges with a prescription drug claim form, which may be obtained by calling Assurant Health's Customer Service at 1-800-553-7654. Prescription claims that are **mailed to Medco for processing are subject to the contracted rate and you may have usual and customary reductions in your benefits.**

- Outpatient prescription drug payments are not applied to your policy deductible, rate of payment or out-of-pocket maximum.

ASSURANT Health

## MEDCO HEALTH SOLUTIONS, INC.
### National Participating Pharmacy Network
### PARTICIPATING PHARMACY CHAINS

A & P Pharmacy
ACME Pharmacy
Alaco Pharmacy
Albertsons Food & Drug
Allcare
American Pharmaceutical Svcs
Anchor Pharmacies, Inc.
Arbor Drugs
Arrow
Arthur Drug Store
Aurora Pharmacy
Barnes Drug Store
Bartell Drug
Bel Air Pharmacy
BI-LO Pharmacy/Red Food
BI-Mart Pharmacy
Big Bear Pharmacy (Harts)
Big Bear Plus Pharmacy
BJC Pharmacy Department
Bon Secours Pharmacy
Brookshire Brothers
Brookshire Grocery
Brown Drug Company
(Drug Castle)
Bruno
Buy Wise Drugs
CBC Professional Pharmacy
City Market
Cleveland Clinic Outpatient
Coborn's Inc.
Consumers Pharmacy
(Price Rite) (MO)
Costco Pharmacy
CRX Pharmacy
CVS, Inc.
D & W
Dahl's
Davidson Drugs, Inc
Dayton Cub Foods Phcy
Dierbergs
Dillon Pharmacy
Discount Drug Mart
Doc's Drugs
Dominick's Pharmacy
Downeast Pharmacy

Drug Emporium
Drug Fair
Drug Mart
Drug World
Eagle Pharmacy
Eaton Apothecary
Eckerd Drugs (Thrift)
Edgehill Pharmacy
Emerald Drug Store
Erickson's (More 4)
Fagen
Farmco
Farmer Jack Pharmacy
Fedco Pharmacy
Felpausch Pharmacy
Food City Pharmacy
Four Star Drug
Fred Meyer
Fred's Pharmacy
Freedom Drug
Friendly Hills Pharmacy
Fruth
Fry's
Fulton Pharmacy
Gemmel
Gerland's Family Phcy
Giant (Maryland)
Giant Eagle, Inc.
Giant Foods, Inc.
Gollash Pharmacy
Gooding's Pharmacy
H.E.B. Pharmacy
Harmons Pharmacy
Harris Teeter Pharmacy
Hartig
Hi School Pharmacy

Homeland Pharmacy
Horizon Pharmacy
Horton & Converse Phcy
Hy-Vee Pharmacy
Kash N' Karry Pharmacy
Keltsch Pharmacy
Kerr Drug Inc
Kessel Pharmacy
Keystone Pharmacy
Kiburz Drug
Kiest Park Pharmacy
King Kullen Pharmacy
King Soopers Pharmacy
Kinney
Klingensmith Drug Store
Kmart Pharmacy
Knight Drug
Kohll's Drug
Kopp Drug, Inc.
Kreisler Drug, Inc.
Kroger Pharmacy
Legend Pharmacies
Lehman Drug Store
Lewis Drug, Inc.
Lincoln Pharmacy
Longs Drug Store
Louis & Clark Drug
Lowe's
Lucas Pharmacy
Lucky
Major Value Pharmacy
Network
Maple Drugs
Market Basket Pharmacy
Maxi (Brooks) Drug, Inc.
Maxor Pharmacy
May's Drug Warehouse
Mcauley Pharmacy

Med-Rx Drug
Med-X Drug
Medic Discount Drug
Medic (Pill Box)
Medicap Pharmacy
Medicine Shoppe Phcy
Medistat Pharmacy
Meijer
Merrill's Drug Center
Minyard Pharmacy
More 4 Family Pharmacy
Nash Finch
(Easter Foods, Econofoods)
National (Kare)
Nation's Medicines
Nationwide
Navarro Discount Pharmacy
NCS Health Care
Neighborcare
Nelson Drug
Network Pharmacy
Nob Hill Pharmacy
Northeast Pharmacy Service
Osco Drug
Owl Drug Stores, Inc.
P & C Food Market Phcy
Pamida Pharmacy
Park Nicollet Pharmacy
Pathmark Pharmacy
Payless Drugs, Inc.
Phar-Mor
Pharmacy Plus
Pillbox Drugs, Inc.
Price Chopper Pharmacy
Price Wise Pharmacy
Professional Village Phcy
Publix Pharmacy
Quality Markets Phcy
Quick Check Pharmacy
Raley's
Randall's Pharmacy
Remedies Pharmacy
(continued on next page)

Assurant Health markets products underwritten by Time Insurance Company, Union Security Insurance Company, and John Alden Life Insurance Company.

Rinderer's Drug
Rite Aid Pharmacy
Ritzman Pharmacy
Riverside Pharmacy
Rockbottom Pharmacy
Rogers Pharmacy
Rosauers Pharmacy
RXD Pharmacy
RXExpress
Safeway, Inc.
Safeway Pharmacy
Sav-Mor Drug Store
Sav-On
Sav-Rx Pharmacy
Save Mart Pharmacy
Schnucks Pharmacy

Schwegmann
Schwieterman's
Scolari's Pharmacy
Sedano's Pharmacy
Shelly's Pharmacy
Shop'N Save Pharmacy (MO)
Shop Rite Pharmacy
Shopko Pharmacy
Smith's Food & Drug
Snyder Drug
Squire Drugs
Stadtlanders Pharmacy
Star Markets
Statscript Pharmacy
Stop & Shop Pharmacy
Sun Mart
Super D Drugs
Super Fresh Pharmacy

Super One Pharmacy
Super Sav-On Drugs
Supersaver Pharmacy (Sentry)
Target Pharmacy
Texas Drug Warehouse
Texas Oncology Srvcs
The Clinic Pharmacy
The Pharm (Foodtown, Custer)
Thrifty White Drug
Tidyman's Pharmacy
Tiffany's
Tom Thumb-Page Drug
Top Food & Drug
Tops Pharmacy (Vix)
Twin Knolls Pharmacy
Ukrop's Pharmacy
Uni-Care Health Svcs Inc
United Pharmacy

USA Drug
V.G.'s Pharmacy
Vix Pharmacy
Vons (Pavilions Pharmacy)
Wal-Mart Pharmacy
Waldbaums Pharmacy
Walgreen Drug Store
Wegman's Pharmacy
Weis Pharmacy
Wender & Roberts, Inc
Wilkinson Pharmacy Inc.
Winkelmann Sons Pharmacy
Winn Dixie Pharmacy
Women's Int'l Pharmacy
Woolworth (Rx Place)
Yoke's Pac'N Save Phcy

In addition to this chain listing there are over 20,000 independent pharmacies participating in the Medco Health National Network. To help you locate the nearest participating Pharmacy to your home or office, Medco Health provides an Interactive Voice Response (IVR) 800 Pharmacy Locator Helpline. Please call **1-800-978-6227.**

This chain listing is subject to change without notice.

Rev. 7/2003

DUPLICATE POLICY

COPY

STATE OF ILLINOIS          )
                           )
COUNTY OF McHENRY          )

IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

JOHN V. DANO, CHRISTINE DANO,      )
and EMILY DANO,                    )
        Plaintiffs,                )
                                   )
            vs.                    )       No. 07 LA 450
                                   )
TIME INSURANCE COMPANY,            )
a division of ASSURANT HEALTH      )
FOUNDATION, INC.,                  )
a Wisconsin corporation,           )
        Defendant.                 )

FILED
McHenry County, Illinois

FEB 2 5 2008

VERNON W. KAYS, JR.
Clerk of the Circuit Court

---

Date:

Plaintiff's Attny:
W. Randal Baudin

Defendant's Attny:
William Beatty
Johnson & Bell

## ORDER

This cause having come on before this Honorable Court on the motion of the Plaintiffs to attach Exhibit "A" to the Plaintiffs' Complaint filed herein on December 18, 2007, which was inadvertently omitted from the Plaintiffs' original filing, with the Court understanding that there is no objection by the defense counsel, who has or will shortly file an Appearance in this cause, with the Court being advised in the premises;

IT IS HEREBY ORDERED:

That the Plaintiffs are granted leave to file with the Clerk of the Circuit Court instanter Exhibit "A," and the Clerk of the Court is directed to attach and incorporate the said Exhibit "A" as an attachment exhibit to the Plaintiffs' Complaint filed herein on December 18, 2007.

ENTER:

J U D G E

W. RANDAL BAUDIN, Attorney No. 137189
P.O. Box 845
Dundee, IL 60118-0845
847-426-5295