02-07019 PAGE 1

LASALLE COUNTY RECORDER

2002 MAR -5 PM 3:36

R2002-07019

CITIZENS FIRST NATIONAL BANK
606 SOUTH MAIN
PRINCETON, IL 61356
815-875-4444   (Lender)

8


EXHIBIT A

01-26398
COMPUTER ☒
PREP ☒
SCAN ☒

Description Is a Copy

176 pd 22

## COMMERCIAL MORTGAGE

| GRANTOR | BORROWER |
|---|---|
| HARTMANN PROPERTIES, LLC | HARTMANN PROPERTIES, LLC |
| **ADDRESS**<br>540 W GALENA BLVD<br>AURORA, IL 60506 | **ADDRESS**<br>540 W GALENA BLVD<br>AURORA, IL 60506 |
| **TELEPHONE NO.** 630-906-0250  **IDENTIFICATION NO.** 36-4421564 | **TELEPHONE NO.** 630-906-0250  **IDENTIFICATION NO.** 36-4421564 |

1. **GRANT.** For good and valuable consideration, Grantor hereby mortgages and warrants to Lender identified above, the real property described in Schedule A which is attached to this Mortgage and incorporated herein together with all future and present improvements and fixtures; privileges, hereditaments, and appurtenances; leases, licenses and other agreements; rents, issues and profits; water, well, ditch, reservoir and mineral rights and stocks, and standing timber and crops pertaining to the real property (cumulatively "Property").

2. **OBLIGATIONS.** This Mortgage shall secure the payment and performance of all of Borrower and Grantor's present and future, indebtedness, liabilities, obligations and covenants (cumulatively "Obligations") to Lender pursuant to:

(a) this Mortgage and the following promissory notes and other agreements:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $2,600,000.00 | 02/01/02 | 09/01/22 | | |

[X] all other present or future obligations of Borrower or Grantor to Lender (whether incurred for the same or different purposes than the foregoing);

b) all renewals, extensions, amendments, modifications, replacements or substitutions to any of the foregoing.

3. **PURPOSE.** This Mortgage and the Obligations described herein are executed and incurred for commercial purposes.

4. **FUTURE ADVANCES.** ☐ This Mortgage secures the repayment of all advances that Lender may extend to Borrower or Grantor under the promissory notes and other agreements evidencing the revolving credit loans described in paragraph 2. The Mortgage secures not only existing indebtedness, but also secures future advances, with interest thereon, whether such advances are obligatory or to be made at the option of Lender to the same extent as if such future advances were made on the date of the execution of this Mortgage, and although there may be no indebtedness outstanding at the time any advance is made. The total amount of indebtedness secured by this Mortgage under the promissory notes and agreements described above may increase or decrease from time to time, but the total of all such indebtedness so secured shall not exceed $ _____. [X] This Mortgage secures the repayment of all advances that Lender may extend to Borrower or Grantor under the promissory notes and other agreements described in paragraph 2, but the total of all such indebtedness so secured shall not exceed $ 2,600,000.00.

LP-IL509 © John H. Harland Co. (1/16/98) (800) 937-3799

Page 1 of 6 _____ initials

02-07019 PAGE 2

5. **EXPENSES.** To the extent permitted by law, this Mortgage secures the repayment of all amounts expended by Lender to perform Grantor's covenants under this Mortgage or to maintain, preserve, or dispose of the Property, including but not limited to, amounts expended for the payment of taxes, special assessments, or insurance on the Property, plus interest thereon.

6. **CONSTRUCTION PURPOSES.** If checked, ☐ this Mortgage secures an indebtedness for construction purposes.

7. **REPRESENTATIONS, WARRANTIES AND COVENANTS.** Grantor represents, warrants and covenants to Lender that:

(a) Grantor shall maintain the Property free of all liens, security interests, encumbrances and claims except for this Mortgage and those described in Schedule B which is attached to this Mortgage and incorporated herein by reference.

(b) Neither Grantor nor, to the best of Grantor's knowledge, any other party has used, generated, released, discharged, stored, or disposed of any "Hazardous Materials", as defined herein, in connection with the Property or transported any Hazardous Materials to or from the Property. Grantor shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to, (i) petroleum; (ii) friable or nonfriable asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute; and (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute or any other similar statute, rule, regulation or ordinance now or hereafter in effect;

(c) Grantor has the right and is duly authorized to execute and perform its Obligations under this Mortgage and these actions do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may be binding on Grantor at any time;

(d) No action or proceeding is or shall be pending or threatened which might materially affect the Property;

(e) Grantor has not violated and shall not violate any statute, regulation, ordinance, rule of law, contract or other agreement which might materially affect the Property (including, but not limited to, those governing Hazardous Materials) or Lender's rights or interest in the Property pursuant to this Mortgage.

8. **TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWERS.** On sale or transfer to any person without the prior written approval of Lender of all or any part of the real property described in Schedule A, or any interest therein, or of all or any beneficial interest in Borrower or Grantor (if Borrower or Grantor is not a natural person or persons but is a corporation, partnership, trust, or other legal entity), Lender may, at Lender's option declare the sums secured by this Mortgage to be immediately due and payable, and Lender may invoke any remedies permitted by the promissory note or other agreement or by this Mortgage, unless otherwise prohibited by federal law.

9. **INQUIRES AND NOTIFICATION TO THIRD PARTIES.** Grantor hereby authorizes Lender to contact any third party and make any inquiry pertaining to Grantor's financial condition or the Property. In addition, Lender is authorized to provide oral or written notice of its interest in the Property to any third party.

10. **INTERFERENCE WITH LEASES AND OTHER AGREEMENTS.** Grantor shall not take or fail to take any action which may cause or permit the termination or the withholding of any payment in connection with any lease or other agreement ("Agreement") pertaining to the Property. In addition, Grantor, without Lender's prior written consent, shall not: (a) collect any monies payable under any Agreement more than one month in advance; (b) modify any Agreement; (c) assign or allow a lien, security interest or other encumbrance to be placed upon Grantor's rights, title and interest in and to any Agreement or the amounts payable thereunder; or (d) terminate or cancel any Agreement except for the nonpayment of any sum or other material breach by the other party thereto. If Grantor receives at any time any written communication asserting a default by Grantor under an Agreement or purporting to terminate or cancel any Agreement, Grantor shall promptly forward a copy of such communication (and any subsequent communications relating thereto) to Lender.

11. **COLLECTION OF INDEBTEDNESS FROM THIRD PARTY.** Lender shall be entitled to notify or require Grantor to notify any third party (including, but not limited to, lessees, licensees, governmental authorities and insurance companies) to pay Lender any indebtedness or obligation owing to Grantor with respect to the Property (cumulatively "Indebtedness") whether or not a default exists under this Mortgage. Grantor shall diligently collect the Indebtedness owing to Grantor from these third parties until the giving of such notification. In the event that Grantor possesses or receives possession of any instrument or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Indebtedness or the payment of any insurance or condemnation proceeds, Grantor shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral upon, or otherwise settle any of the indebtedness whether or not an event of default exists under this Agreement. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom.

12. **USE AND MAINTENANCE OF PROPERTY.** Grantor shall take all actions and make any repairs needed to maintain the Property in good condition. Grantor shall not commit or permit any waste to be committed with respect to the Property. Grantor shall use the Property solely in compliance with applicable law and insurance policies. Grantor shall not make any alterations, additions or improvements to the Property without Lender's prior written consent. Without limiting the foregoing, all alterations, additions and improvements made to the Property shall be subject to the interest belonging to Lender, shall not be removed without Lender's prior written consent, and shall be made at Grantor's sole expense.

13. **LOSS OR DAMAGE.** Grantor shall bear the entire risk of any loss, theft, destruction or damage (cumulatively "Loss or Damage") to the Property or any portion thereof from any case whatsoever. In the event of any Loss or Damage, Grantor shall, at the option of Lender, repair the affected Property to its previous condition or pay or cause to be paid to Lender the decrease in the fair market value of the affected Property.

14. **INSURANCE.** Grantor shall keep the Property insured for its full value against all hazards including loss or damage caused by fire, collision, theft, flood (if applicable) or other casualty. Grantor may obtain insurance on the Property from such companies as are acceptable to Lender in its sole discretion. The insurance policies shall require the insurance company to provide Lender with at least thirty (30) days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a mortgagee and provide that no act or omission of Grantor or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Property. At Lender's option, Lender may apply the insurance proceeds to the repair of the Property or require the insurance proceeds to be paid to Lender. In the event Grantor fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Property and the insurance cost shall be an advance payable and bearing interest as described in Paragraph 28 and secured hereby. Grantor shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-fact for Grantor in making and settling claims under insurance policies, cancelling any policy or endorsing Grantor's name on any draft or negotiable instrument drawn by any insurer. All such insurance policies shall be constantly assigned, pledged and delivered to Lender for further securing the Obligations. In the event of loss, Grantor shall immediately give Lender written notice and Lender is authorized to make proof of loss. Each insurance company is directed to make payments directly to Lender instead of to Lender and Grantor. Lender shall have the right, at its sole option, to apply such monies toward the Obligations or toward the cost of rebuilding and restoring the Property. Any amount applied against the Obligations shall be applied in the inverse order of the due dates thereof. In any event Grantor shall be obligated to rebuild and restore the Property.

15. **ZONING AND PRIVATE COVENANTS.** Grantor shall not initiate or consent to any change in the zoning provisions or private covenants affecting the use of the Property without Lender's prior written consent. If Grantor's use of the Property becomes a nonconforming use under any zoning provision, Grantor shall not cause or permit such use to be discontinued or abandoned without the prior written consent of Lender. Grantor will immediately provide Lender with written notice of any proposed changes to the zoning provisions or private covenants affecting the Property.

16. **CONDEMNATION.** Grantor shall immediately provide Lender with written notice of any actual or threatened condemnation or eminent domain proceeding pertaining to the Property. All monies payable to Grantor from such condemnation or taking are hereby assigned to Lender and shall be applied first to the payment of Lender's attorneys' fees, legal expenses (to the extent permitted by applicable law) and other costs including appraisal fees, in connection with the condemnation or eminent domain proceedings and then, at the option of Lender, to the payment of the Obligations or the restoration or repair of the Property. In any event, Grantor shall be obligated to restore or repair the Property.

17. **LENDER'S RIGHT TO COMMENCE OR DEFEND LEGAL ACTIONS.** Grantor shall immediately provide Lender with written notice of any actual or threatened action, suit, or other proceeding affecting the Property. Grantor hereby appoints Lender as its attorney-in-fact to commence, intervene in, and defend such actions, suits, or other legal proceedings and to compromise or settle any claim or controversy pertaining thereto. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Nothing contained herein will prevent Lender from taking the actions described in this paragraph in its own name. Grantor shall cooperate and assist Lender in any action hereunder.

18. **INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Grantor's Obligations with respect to the Property under any circumstances. Grantor shall immediately provide Lender and its shareholders, directors, officers, employees and agents with written notice of and indemnify and hold Lender harmless from all claims, damages, liabilities, (including attorneys' fees and legal expenses, to the extent permitted by applicable law) causes of action, actions, suits and other legal proceedings (cumulatively "Claims") pertaining to the Property (including, but not limited to, those involving Hazardous Materials). Grantor, upon the request of Lender, shall hire legal counsel acceptable to Lender to defend Lender from such Claims, and pay the attorneys' fees, legal expenses (to the extent permitted by applicable law) and other costs incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Grantor's cost. Grantor's obligation to indemnify Lender shall survive the termination, release or foreclosure of this Mortgage.

19. **TAXES AND ASSESSMENTS.** Grantor shall pay all taxes and assessments relating to Property when due. Upon the request of Lender, Grantor shall deposit with Lender each month one-twelfth (1/12) of the estimated annual insurance premium, taxes and assessments pertaining to the Property as estimated by Lender. So long as there is no default, these amounts shall be applied to the payment of taxes, assessments and insurance on the Property. In the event of default, Lender shall have the right, at its sole option, to apply the funds so held to pay said taxes or against the Obligations. Any funds applied against the Obligations shall be applied in the inverse order of the due dates thereof.

20. **INSPECTION OF PROPERTY, BOOKS, RECORDS AND REPORTS.** Grantor shall allow Lender or its agents to examine and inspect the Property and examine, inspect and make copies of Grantor's books and records pertaining to the Property from time to time. Grantor shall provide any assistance required by Lender for these purposes. All of the signatures and information contained in Grantor's books and records shall be genuine, true, accurate and complete in all respects. Grantor shall note the existence of Lender's beneficial interest in its books and records pertaining to the Property. Additionally, Grantor shall report, in a form satisfactory to Lender, such information as Lender may request regarding Grantor's financial condition or the Property. The information shall be for such periods, shall reflect Grantor's records at such time, and shall be rendered with such frequency as Lender may designate. All information furnished by Grantor to Lender shall be true, accurate and complete in all respects.

21. **ESTOPPEL CERTIFICATES.** Within ten (10) days after any request by Lender, Grantor shall deliver to Lender, or any intended transferee of Lender's rights with respect to the Obligations, a signed and acknowledged statement specifying (a) the outstanding balance on the Obligations; and (b) whether Grantor possesses any claims, defenses, set-offs or counterclaims with respect to the Obligations and, if so, the nature of such claims, defenses, set-offs or counterclaims. Grantor will be conclusively bound by any representation that Lender may make to the intended transferee with respect to these matters in the event that Grantor fails to provide the requested statement in a timely manner.

22. **DEFAULT.** Grantor shall be in default under this Mortgage in the event that Grantor, Borrower or any guarantor of any Obligation:

(a) fails to pay any Obligation to Lender when due;

02-07019 PAGE 4

(b) fails to perform any Obligation or breaches any warranty or covenant to Lender contained in this mortgage or any other present or future, written or oral, agreement;
(c) allows the Property to be damaged, destroyed, lost or stolen in any material respect;
(d) seeks to revoke, terminate or otherwise limit its liability under any guaranty to Lender;
(e) allow the Property to be used by anyone to transport or store goods the possession, transportation, or use of which, is illegal; or
(f) causes Lender to deem itself insecure in good faith for any reason.

**23. RIGHTS OF LENDER ON DEFAULT.** If there is a default under this Mortgage, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):
(a) to declare the Obligations immediately due and payable in full;
(b) to collect the outstanding Obligations with or without resorting to judicial process;
(c) to require Grantor to deliver and make available to Lender any personal property constituting the Property at a place reasonably convenient to Grantor and Lender;
(d) to enter upon and take possession of the Property without applying for or obtaining the appointment of a receiver and, at Lender's option, to appoint a receiver without bond, without first bringing suit on the Obligations and without otherwise meeting any statutory conditions regarding receivers, it being intended that Lender shall have this contractual right to appoint a receiver;
(e) to employ a managing agent of the Property and let the same, in the name of Lender or in the name of Mortgagor, and receive the rents, incomes, issues and profits of the Property and apply the same, after payment of all necessary charges and expenses, on account of the Obligations;
(f) to foreclose this Mortgage;
(g) to set-off Grantor's Obligations against any amounts due to Lender including, but not limited to, monies, instruments, and deposit accounts maintained with Lender; and
(h) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, separately, and in any order. In the event that Lender institutes an action seeking the recovery of any of the Property by way of a prejudgment remedy in an action against Grantor, Grantor waives the posting of any bond which might otherwise be required.

**24. WAIVER OF HOMESTEAD AND OTHER RIGHTS.** Grantor hereby waives all homestead or other exemptions to which Grantor would otherwise be entitled under any applicable law.

**25. WAIVER OF REDEMPTION.** Grantor, to the extent Grantor may lawfully do so, hereby waives any and all rights to redeem the Property sold under an order of sale pursuant to foreclosure proceedings, and hereby waives the period of redemption, and any and all rights which would have accrued during such redemption period, but for this waiver.

**26. SATISFACTION.** Upon the payment and performance in full of the Obligations, Lender will execute and deliver to Grantor those documents that may be required to release this Mortgage of record. Except as prohibited by law, Grantor shall be responsible to pay any costs of recordation.

**27. APPLICATION OF FORECLOSURE PROCEEDS.** The proceeds from the foreclosure of this Mortgage and the sale of the Property shall be applied in the following manner: first, to the payment of any sheriff's fee and the satisfaction of its expenses and costs; then to reimburse Lender for its expenses and costs of the sale or in connection with securing, preserving and maintaining the Property, seeking or obtaining the appointment of a receiver for the Property, (including, but not limited to, attorneys' fees, legal expenses, filing fees, notification costs, and appraisal costs); then to the payment of the Obligations; and then to any third party as provided by law.

**28. REIMBURSEMENT OF AMOUNTS EXPENDED BY LENDER.** Upon demand, Grantor shall immediately reimburse Lender for all amounts (including attorneys' fees and legal expenses) expended by Lender in the performance of any action required to be taken by Grantor or the exercise of any right or remedy of Lender under this Mortgage, together with interest thereon at the lower of the highest rate described in any Obligation or the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations herein and shall be secured by the interest granted herein.

**29. APPLICATION OF PAYMENTS.** All payments made by or on behalf of Grantor may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Mortgage and then to the payment of the remaining Obligations in whatever order Lender chooses.

**30. POWER OF ATTORNEY.** Grantor hereby appoints Lender as its attorney-in-fact to endorse Grantor's name on all instruments and other documents pertaining to the Obligations or indebtedness. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Grantor under this Mortgage. Lender's performance of such action or execution of such documents shall not relieve Grantor from any Obligation or cure any default under this Mortgage. The powers of attorney described in this paragraph are coupled with an interest and are irrevocable.

**31. SUBROGATION OF LENDER.** Lender shall be subrogated to the rights of the holder of any previous lien, security interest or encumbrance discharged with funds advanced by Lender regardless of whether these liens, security interests or other encumbrances have been released of record.

**32. COLLECTION COSTS.** If Lender hires an attorney to assist in collecting any amount due or enforcing any right or remedy under this Mortgage, Grantor agrees to pay Lender's reasonable attorneys' fees and costs.

**33. PARTIAL RELEASE.** Lender may release its interest in a portion of the Property by executing and recording one or more partial releases without affecting its interest in the remaining portion of the Property. Nothing herein shall be deemed to obligate Lender to release any of its interest in the Property.

34. **MODIFICATION AND WAIVER.** The modification or waiver of any of Grantor's Obligations or Lender's rights under this Mortgage must be contained in a writing signed by Lender. Lender may perform any of Grantor's Obligations or delay or fail to exercise any of its rights without causing a waiver of those Obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion. Grantor's Obligations under this Mortgage shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the Obligations belonging to any Grantor, third party or any of its rights against any Grantor, third party or the Property.

35. **SUCCESSORS AND ASSIGNS.** This Mortgage shall be binding upon and inure to the benefit of Grantor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

36. **NOTICES.** Any notice or other communication to be provided under this Mortgage shall be in writing and sent to the parties at the addresses described in this Mortgage or such other address as the parties may designate in writing from time to time. Any such notice so given and sent by certified mail, postage prepaid, shall be deemed given three (3) days after such notice is sent and on any other such notice shall be deemed given when received by the person to whom such notice is being given.

37. **SEVERABILITY.** If any provision of this Mortgage violates the law or is unenforceable, the rest of the Mortgage shall continue to be valid and enforceable.

38. **APPLICABLE LAW.** This Mortgage shall be governed by the laws of the state where the Property is located. Grantor consents to the jurisdiction and venue of any court located in such state.

39. **MISCELLANEOUS.** Grantor and Lender agree that time is of the essence. Grantor waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Grantor in this Mortgage shall include all persons signing below. If there is more than one Grantor, their Obligations shall be joint and several. **Grantor hereby waives any right to trial by jury in any civil action arising out of, or based upon, this Mortgage or the Property securing this Mortgage.** This Mortgage and any related documents represent the complete integrated understanding between Grantor and Lender pertaining to the terms and conditions of those documents.

40. **ADDITIONAL TERMS.**

```
PREPAYMENT PENALTY:4% OUTSTANDING BAL IF PAID OFF IN YR 1. 3% OUTSTANDING
BAL IF PAID OFF IN YR 2. 2% OUTSTANDING BAL IF PAID OFF IN YR 3. 1% OUT-
STANDING BAL IF PAID OFF IN YR 4. AT END OF YR 4 ALL RESCINDED. PREPAYMENT
DERIVED FROM LIQUIDATION OF COLLATERAL SECURING DEBT WILL NOT BE INCLUDED.
```

Grantor acknowledges that Grantor has read, understands, and agrees to the terms and conditions of this Mortgage.
Dated: FEBRUARY 1, 2002

GRANTOR: HARTMANN PROPERTIES, LLC

BRUCE E. HARTMANN
VICE-OPERATING MANAGER

GRANTOR:

GRANTOR:

GRANTOR:

GRANTOR:

GRANTOR:

GRANTOR:

GRANTOR:

02-07019 PAGE 6

State of ___ILLINOIS___ )
                          ) ss.
County of ___LaSalle___ )

I, __Tammy A. Hammerich__ a notary public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that __Bruce E. Hartmann__ personally known to me to be the same person _____ whose name ___is___ subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that _____ he _____ signed, sealed and delivered the said instrument as __his__ free and voluntary act, for the uses and purposes herein set forth.

Given under my hand and official seal, this __1st__ day of __Feb. 2002__.

__Tammy A. Hammerich__
Notary Public

Commission expires: __12-4-2004__

"OFFICIAL SEAL"
Tammy A. Hammerich, Notary Public
State of Ill., County of LaSalle
#521527 Comm. Exp. 12-4-04

State of _____ )
                          ) ss.
County of _____ )

The foregoing instrument was acknowledged before me this _____ by _____
as _____
_____
on behalf of the _____.

Given under my hand and official seal, this _____ day of _____.

_____
Notary Public

Commission expires: _____

SCHEDULE A

The street address of the Property (if applicable) is:  5005 NORTH PLANK ROAD
                                                         PERU, IL  61354

Permanent Index No.(s): 11-31-406-000

The legal description of the Property is:
SEE ATTACHMENT FOR LEGAL DESCRIPTION

SCHEDULE B

This instrument was prepared by: CITIZENS FIRST NATIONAL BANK
After recording return to Lender.
LP-IL509 ©John H. Harland Co. (1/16/98) (800) 937-3799

Page 6 of 6 _____ initials

Parcel No. 1.

That part of the South Half of Section 31, Township 34 North, Range 1, East of the Third Principal Meridian, lying East of center line of the Peru and Grand Detour Plank Road, described as follows: Commencing at the Southeast corner of the Southeast Quarter of said Section 31; thence North 00 degrees 27 minutes 00 seconds East along the East line of said Southeast Quarter of Section 31 for a distance of 662.05 feet to the point of beginning; thence due West for a distance of 2367.16 feet; thence North 31 degrees 03 minutes 43 seconds West for a distance of 424.37 feet; thence South 89 degrees 54 minutes 30 seconds West for a distance of 546.44 feet; thence South 57 degrees 17 minutes 00 seconds West for a distance of 100.00 feet to the center line of the aforementioned Peru and Grand Detour Plank Road; thence North 32 degrees 43 minutes 00 seconds West along center line of the Peru and Grand Detour Plank Road for a distance of 182.74 feet; thence North 89 degrees 54 minutes 30 seconds East for a distance of 669.17 feet to the West line of the Southeast Quarter of said Section 31; thence North 00 degrees 38 minutes 00 seconds East along the West line of the Southeast Quarter of said Section 31 for a distance of 433.50 feet; thence North 89 degrees 56 minutes 00 seconds East for a distance of 2648.57 feet to the East line of the Southeast Quarter of said Section 31; thence South 00 degrees 27 minutes 00 seconds West along the East line of the Southeast Quarter of said Section 31 for a distance of 900.00 feet to the Point of Beginning, EXCEPTING therefrom that portion conveyed to the County of LaSalle as Document No. 596481.

Parcel No. 2.

A non-exclusive easement for drainage purposes for the benefit of Parcel No. 1 as created by agreement between Mary A. Kaszynski and Pearl Bonucci and Consolidated Freightways Corporation of Delaware dated 3 May, 1979 and recorded 9 July, 1979 as document no. 673028, described as follows:
That part of the South Half of Section 31, Township 34 North, Range 1, East of the Third Principal Meridian, lying East of the center line of the Peru and Grand Detour Plank Road described as follows:
Commencing at the Southeast corner of the Southeast Quarter of said Section 31; thence North 00 degrees 27 minutes 00 seconds East along the East line of the Southeast Quarter of said Section 31 for a distance of 443.00 feet; thence due West for a distance of 2257.91 feet; thence South 00 degrees 23 minutes 30 seconds West for a distance of 221.54 feet; thence South 85 degrees 42 minutes 00 seconds West for a distance of 407.66 feet to the Northeasterly right of way line of the aforesaid Plank Road; thence North 32 degrees 07 minutes 30 seconds West along said Northeasterly right of way line for a distance of 13.00 feet to an existing concrete right of way marker; thence South 60 degrees 10 minutes 00 seconds West for a distance of 62.50 feet to the center line of the aforementioned Plank Road; thence North 32 degrees 43 minutes 00 seconds West along said center line of the Plank Road for a distance of 903.08 feet; thence North 57 degrees 17 minutes 00 seconds East for a distance of 34.49 feet to a point on the aforesaid Northeasterly right-of-way line of the Plank Road which point is the Point of Beginning; continuing thence North 57 degrees 17 minutes 00 seconds East for a distance of 65.51 feet; thence North 89 degrees 54 minutes 30

02-07019  PAGE 8

seconds East for a distance of 27.00 feet; thence South 57 degrees 17 minutes 00 seconds West for a distance of 50 feet; thence South 17 degrees 51 minutes 41 seconds West for a distance of 49.51 feet to the point on the aforesaid Northeasterly right-of-way line of the Plank Road; thence North 32 degrees 43 minutes 00 seconds West along said Northeasterly right-of-way line for a distance of 46.00 feet to the Point of Beginning; all situated in Dimmick Township;

ALL SITUATED IN LA SALLE COUNTY, ILLINOIS.