Sec. 8-1-7. (a) Except as provided otherwise in this Section, **no contract shall be made** by the corporate authorities, or by any committee or member thereof, **and no expense shall be incurred** by any of the officers or departments of any municipality, *whether the object of the expenditure has been ordered by the corporate authorities or not*, **unless an appropriation has been previously made concerning that contract or expense. Any contract made**, or any expense otherwise incurred, **in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof.** However, pending the passage of the annual appropriation ordinance for any fiscal year, the corporate authorities may authorize heads of departments or other separate agencies of the municipality to make necessary expenditures for the support thereof upon the basis of the appropriations of the preceding fiscal year. However, if it is determined by two-thirds vote of the corporate authorities then holding office at a regularly scheduled meeting of the corporate authorities that it is expedient and in the best public interest to begin proceedings for the construction of a needed public work, then the provisions of this section shall not apply to the extent that the corporate authorities may employ or contract for professional services necessary for the planning and financing of such public work.

(b) Notwithstanding any provision of this Code to the contrary, **the corporate authorities of any municipality may make contracts for a term exceeding one year and not exceeding the term of the mayor or president holding office at the time the contract is executed, relating to:** (1) the employment of a municipal manager, administrator, engineer, health officer, land planner, finance director, attorney, police chief or other officer who requires technical training or knowledge; **(2) the employment of outside professional consultants** such as engineers, doctors, land planners, auditors, attorneys **or other professional consultants who require technical training or knowledge;** (3) the provision of data processing equipment and services; or (4) the provision of services which directly relate to the prevention, identification or eradication of disease. In such case the corporate authorities shall include in the annual appropriation ordinance for each fiscal year, an appropriation of a sum of money sufficient to pay the amount which, by the terms of the contract, is to become due and payable during the current fiscal year.

(c) This section shall not apply to municipalities operating under special charters.

(d) In order to promote orderly collective bargaining relationships, to prevent labor strife and to protect the interests of the public and the health and safety of the citizens of Illinois, this Section shall not apply to multi-year collective bargaining agreements between public employers and exclusive representatives governed by the provisions of the Illinois Public Labor Relations Act.

Notwithstanding any provision of this Code to the contrary, the corporate authorities of any municipality may enter into multi-year collective bargaining agreements with exclusive representatives under the provisions of the Illinois Public Labor Relations Act.

(e) Notwithstanding any provision of this Code to the contrary, the corporate authorities of any municipality may enter into any multi-year contract or otherwise associate for any term under the provisions of Section 10 of Article VII of the Illinois Constitution or the Intergovernmental Cooperation Act.

(Source: P.A. 90-517, eff. 8-22-97.)

# CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT BETWEEN THE CITY OF OTTAWA, ILLINOIS AND JOHN COLT LANDRETH

Whereas, the City of Ottawa (the "City") is an Illinois municipal corporation and body politic operating under the provisions of the Illinois Municipal Code, (65 ILCS 5/1-1-1 *et seq.*) (the "Code"), and

Whereas, the Code authorizes the City to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area, and

Whereas, the City is attempting to promote the commercial, industrial and economic development and welfare of the City, and

Whereas, the City encourages the increase of industry and commerce within the City and the State of Illinois, and

Whereas, the City now owns certain real property within the Ottawa Industrial Park Conservation TIF District ("OIP"), and

Whereas, the City has caused said real property to be platted and developed as an industrial park, and

Whereas, John Colt Landreth ("Landreth") is an individual with expertise in the development and marketing of industrial real property, and

Whereas, the specific and primary purposes for which OIP was created were to stimulate the promotion of industrial development within the City and to interest industry to locate in and about the City by the establishment of a comprehensive real estate marketing and development program (the "Program"), and

Whereas, the establishment of the program will further the public health, safety and welfare by the creation of jobs within the City, and

Whereas, Landreth has developed an expertise and experience with respect to the program and with regard to general economic development within the territory of the City, and

Whereas, the continued commercial and industrial development of the City is one of the primary corporate purposes of the City, and

Whereas, the Council of the City believes that it is in the best interest of the City to utilize Landreth as the primary economic development organization for the City, and

Whereas, efforts for the continued economic development of the City will require funds for all of the necessary development activity, including the appropriate marketing of the City as a viable location for potential commercial and industrial prospects, and

Whereas, Landreth is willing to act as the primary economic development organization of the City and devote one-half (1/2) of his time thereto.

WITNESSETH:

FOR AND IN CONSIDERATION of the mutual promises and undertakings herein set forth and other good and valuable considerations, the sufficiency of which is hereby acknowledged, the **CITY** and **LANDRETH** agree as follows:

1.    Incorporation of Recitals. All of the foregoing recitals are incorporated herein by reference and are acknowledged as true and correct.

2.    Term of Agreement. The initial term of this agreement shall be for twenty-four (24) months commencing, 2003, to and including, 2005. The initial term may be extended by mutual, written agreement of the parties.

3.    Obligations of City. In order to provide a continuous and reliable source of funding for economic development within the City and OIP:

(a) the City shall pay to Landreth the sum of $5,000.00 upon the execution of this agreement and the further sum of $5,000.00 on the same day of each succeeding month during the term of this agreement; said sum shall be for Landreth's monthly retainer; together with an monthly amount not to exceed $2,000.00 for Chicago support staff, travel, telephone; and similar items of expense.

(b) the further and additional sum of not to exceed $28,900.00 annually for web hosting and web modifications, broker events, CoreNet/SIOR dues, advertising, brochures and miscellaneous (wats line); and

(c)    the further and additional sum (one time expense only) of $2,000.00 for web site design.

(d)    the further and additional sum equal to 1 ½% of the actual project cost of all industrial developments occurring within the City during the term or any extension of this agreement. Such sum shall be paid one-half (1/2) upon the commencement of construction based upon the estimate of project cost, and the balance shall be paid upon completion of construction as soon as the total project cost is determined. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case by case basis and mutually agreed upon.

(e)    The projects known as Murph-Haines, Galaxy, Bedrock and Burton shall not be eligible for compensation under paragraph (d) above.

Landreth shall provide a monthly statement to the City for the items of expense set forth in paragraphs (a) and (b) above; such statements shall contain reasonable detail for each item of expense, including receipts or copies of invoices, if available.

4.    Services of Landreth. During the term of this Agreement Landreth shall provide to the City consulting, development and marketing services which shall be designed to increase and promote the commercial, industrial and economic base of the City, including, but not limited to the following:

(a)    Advertise and otherwise promote the City and OIP;

(b)    Develop and implement a marketing strategy for the City and OIP;

(c)    Develop and implement a master plan for OIP in conjunction with the City;

(d)    Develop and implement a strategic plan for OIP which shall include a a statement of mission and goals, as well as financial considerations and projections;

(e)    Develop community relations and public awareness on behalf of the City;

(f)    Identify and rank potential users and companies for location within OIP;

(g)    Coordinate and cooperate with other units of government and industry, as well as other economic development agencies;

(h)    Field and respond to all inquiries, and provide all necessary information to all prospects;

(i)    Coordinate activities and work with industrial real estate brokers in the Chicago metropolitan area;

(j)    Maintain and operate an office within the City of Chicago for the promotion and development of OIP;

(k)    Provide regular reports to the City, but not less frequently than quarterly, of all economic development activity;

(k)    Perform all other services as outlined and contained in the written proposal of Plaza Property Advisors dated March 17, 2003; and

(l)    Perform such other services as the City may reasonably require to accomplish the objective of increasing the job base within the City by attracting industry and distribution centers to the City.

5.    Independent Contract. Landreth understands and agrees that his obligation under this Agreement is to serve the City for the promotion and development of commercial and industrial development. It is understood and agreed between the parties that all persons working for Landreth under this Agreement, if any, shall be employees of Landreth and shall be in no way considered employees of the City. Should any liability arise under the Illinois Worker's Compensation Act during any time that employees are working for Landreth, said employees are covered by the Illinois Worker's Compensation Act and are the employees of Landreth. Neither Landreth nor his employees shall hold himself or themselves out to be employees, agents, or servants of the City.

3

6.   _Best Efforts_. Landreth agrees to devote his best efforts to the City's interest and to endeavor in every way to make successful the promotion of the City as a significant commercial and industrial location.

7.   _Revocation_. The City understands the long-term nature of this Agreement and the long-term nature of economic development. Therefore, the City agrees and covenants not to revoke or rescind this agreement or to institute any proceeding or action to challenge the validity of this agreement or in any way to rescind, modify or alter said agreement, understanding that Landreth is relying upon the representations and financial commitment contained herein and has every right to do so. Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement my cancel this agreement for any reason by providing the other party with not less than thirty (30) days prior, written notice of cancellation.

8.   _Waiver_. Waiver by either party of a breach of any term, condition or covenant herein shall not be deemed a waiver of any other term or condition or covenant.

9.   _Breach_. Upon a breach of any term or provision of this Agreement, the non-breaching party shall immediately provide a written notice to the other party describing the nature of the breach and a request for its immediate cure. In the event that said breach has not been cured within thirty (30) days of the issuance of written notice as aforesaid, then the non-breaching party may take such action as it deems necessary for the specific performance of this Agreement or its termination.

_Upon termination of this agreement, Landreth shall provide the City with a list of Prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof._

10.   _Assignability_. It is agreed that neither party shall have the right to assign this Agreement, in whole or in part, without the written consent of the other party.

11.   _Binding Effect_. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective assessors or assigns.

12.   _Warranties_. The parties warrant and represent that :

a.   Each of the undersigned representatives of such party has been duly authorized by such party to execute this Agreement on behalf of such party;

b.   This Agreement is binding, valid and specifically enforceable according to its terms against each party;

4

c.    This Agreement does not violate any presently existing provision of law or any applicable order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality to which such party may be subject;

d.    This Agreement does not constitute a default under any indenture, mortgage, deed of trust, agreement or contract of any kind to which such party may be bound;

e.    There are no pending legal proceedings by any party against the other party.

13.    Headings. The headings of the sections of this Agreement are for convenience and reference only and in no way define, extend, limit or describe the scope or intent of this Agreement or any provision hereof.

14.    Execution and Counterparts. This Agreement may be executed in multiple identical counterparts and all of said counterparts shall, taken together, constitute the same agreement.

15.    Disclosure. The parties have jointly utilized the law firm of Pool, Leigh & Fabricius with respect to this Agreement, and each party acknowledges this fact and hereby expressly authorizes such joint representation. Each party also waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation.

Executed in duplicate this _5th_ day of _August_ , 2003, by authority of a resolution of the Council of the City and by Landreth.

City of Ottawa, Illinois

By: _____          _____
    Its Mayor                                     John Colt Landreth

Attest:

_____
Its Clerk
F:\Docs\SRPD\Development and Marketing Agreement.doc

5

State of Illinois ）
　　　　　　　　　　）　SS
County of LaSalle ）

I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that Robert M. Eschbach, personally known to me to be the Mayor of the City of Ottawa, Illinois, and Elizabeth A. Taylor, personally known to me to be the Clerk of said City, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as Mayor and Clerk of said City, they signed and delivered said instrument in their official capacities as caused the corporate seal of said City be affixed thereto, pursuant to authority given by the Council said City, as the free and voluntary act and deed of said City, for the uses and purposes therein set forth.

Given under my hand and notarial seal
this ___5th___ day of ___August___ , 2003.

_Vicki V. Donahue_
　　　　Notary Public

"OFFICIAL SEAL"
VICKI V. DONAHUE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/16/07

6

State of Illinois          )
                           )      SS
County of                  )

I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that John Colt Landerth, personally known to me to be the same person whose names is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act and deed for the uses and purposes therein set forth.

Given under my hand and notarial seal
this _____ day of _____, 2003.

_____
        Notary Public

L:\Docs\ottawa\Contracts-Agreements\Landreth revised 7-31-03.doc

"OFFICIAL SEAL"
NANCY C. STISSER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/16/07

RESOLUTION NO. _93_ -2003

## A RESOLUTION AUTHORIZING THE EXECUTION OF A CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT BETWEEN THE CITY OF OTTAWA AND JOHN COLT LANDRETH
### (Ottawa Industrial Park Conservation TIF District)

**BE IT RESOLVED BY THE COUNCIL OF THE CITY OF OTTAWA, ILLINOIS, AS FOLLOWS:**

**Section One:** That the Mayor and City Clerk of the City of Ottawa, Illinois, be, and they are hereby authorized and directed to execute a Consulting, Development and Marketing Agreement between the City of Ottawa and John Colt Landreth, a copy of which is attached hereto and incorporated herein by reference.

**Section Two:** That all Resolutions or parts thereof which are in conflict herewith are hereby repealed.

**Section Three:** That this Resolution shall be in full force and effect from and after its passage and approval as required by law.

**Passed** and **Approved** this _5th_ day of _August_, 2003.

_____
Robert M. Eschbach, Mayor

**ATTEST:**

_____
Elizabeth A. Taylor, City Clerk

L:\Docs\ottawa\Resolutions\Agreements\Agreement - Colt Landreth - OIP.doc

# CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT
## BETWEEN THE CITY OF OTTAWA, ILLINOIS
### AND JOHN COLT LANDRETH

**Whereas**, the City of Ottawa (the "City") is an Illinois municipal corporation and body politic operating under the provisions of the Illinois Municipal Code, (65 ILCS 5/1-1-1 *et seq.*) (the "Code"), and

**Whereas**, the Code authorizes the City to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area, and

**Whereas**, the City is attempting to promote the commercial, industrial and economic development and welfare of the City, and

**Whereas**, the City encourages the increase of industry and commerce within the City and the State of Illinois, and

**Whereas**, the City now owns certain real property within the Ottawa Industrial Park Conservation TIF District ("OIP"), and

**Whereas**, the City has caused said real property to be platted and developed as an industrial park, and

**Whereas**, John Colt Landreth ("Landreth") is an individual with expertise in the development and marketing of industrial real property, and

**Whereas**, the specific and primary purposes for which OIP was created were to stimulate the promotion of industrial development within the City and to interest industry to locate in and about the City by the establishment of a comprehensive real estate marketing and development program (the "Program"), and

**Whereas**, the establishment of the program will further the public health, safety and welfare by the creation of jobs within the City, and

**Whereas**, Landreth has developed an expertise and experience with respect to the program and with regard to general economic development within the territory of the City, and

**Whereas**, the continued commercial and industrial development of the City is one of the primary corporate purposes of the City, and

**Whereas**, the Council of the City believes that it is in the best interest of the City to utilize Landreth as the primary economic development organization for the City, and

FOIA000843

**Whereas,** efforts for the continued economic development of the City will require funds for all of the necessary development activity, including the appropriate marketing of the City as a viable location for potential commercial and industrial prospects, and

**Whereas,** Landreth is willing to act as the primary economic development organization of the City and devote one-half (1/2) of his time thereto.

**WITNESSETH:**

FOR AND IN CONSIDERATION of the mutual promises and undertakings herein set forth and other good and valuable considerations, the sufficiency of which is hereby acknowledged, the **CITY** and **LANDRETH** agree as follows:

1.      Incorporation of Recitals. All of the foregoing recitals are incorporated herein by reference and are acknowledged as true and correct.

2.      Term of Agreement. The initial term of this agreement shall be for twenty-four (24) months commencing, 2003, to and including, 2005. The initial term may be extended by mutual, written agreement of the parties.

3.      Obligations of City. In order to provide a continuous and reliable source of funding for economic development within the City and OIP:

(a) the City shall pay to Landreth the sum of $5,000.00 upon the execution of this agreement and the further sum of $5,000.00 on the same day of each succeeding month during the term of this agreement; said sum shall be for Landreth's monthly retainer; together with an monthly amount not to exceed $2,000.00 for Chicago support staff, travel, telephone; and similar items of expense.

(b) the further and additional sum of not to exceed $28,900.00 annually for web hosting and web modifications, broker events, CoreNet/SIOR dues, advertising, brochures and miscellaneous (wats line); and

(c)      the further and additional sum (one time expense only) of $2,000.00 for web site design.

(d)      the further and additional sum equal to 1 ½% of the actual project cost of all industrial developments occurring within the City during the term or any extension of this agreement. Such sum shall be paid one-half (1/2) upon the commencement of construction based upon the estimate of project cost, and the balance shall be paid upon completion of construction as soon as the total project cost is determined. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case by case basis and mutually agreed upon.

FOIA000844

(e)     The projects known as Murph-Haines, Galaxy, Bedrock and Burton shall not be eligible for compensation under paragraph (d) above.

Landreth shall provide a monthly statement to the City for the items of expense set forth in paragraphs (a) and (b) above; such statements shall contain reasonable detail for each item of expense, including receipts or copies of invoices, if available.

4.     Services of Landreth.  During the term of this Agreement Landreth shall provide to the City consulting, development and marketing services which shall be designed to increase and promote the commercial, industrial and economic base of the City, including, but not limited to the following:

(a)     Advertise and otherwise promote the City and OIP;
(b)     Develop and implement a marketing strategy for the City and OIP;
(c)     Develop and implement a master plan for OIP in conjunction with the City;
(d)     Develop and implement a strategic plan for OIP which shall include a
        a statement of mission and goals, as well as financial considerations and
        projections;
(e)     Develop community relations and public awareness on behalf of the City;
(f)     Identify and rank potential users and companies for location within OIP;
(g)     Coordinate and cooperate with other units of government and industry, as well
        as other economic development agencies;
(h)     Field and respond to all inquiries, and provide all necessary information to all
        prospects;
(i)     Coordinate activities and work with industrial real estate brokers in the Chicago
        metropolitan area;
(j)     Maintain and operate an office within the City of Chicago for the promotion and
        development of OIP;
(k)     Provide regular reports to the City, but not less frequently than quarterly, of all
        economic development activity;
(k)     Perform all other services as outlined and contained in the written proposal of
        Plaza Property Advisors dated March 17, 2003; and
(l)     Perform such other services as the City may reasonably require to accomplish the
        objective of increasing the job base within the City by attracting industry and
        distribution centers to the City.

5.     Independent Contract.  Landreth understands and agrees that his obligation under this Agreement is to serve the City for the promotion and development of commercial and industrial development.  It is understood and agreed between the parties that all persons working for Landreth under this Agreement, if any, shall be employees of Landreth and shall be in no way considered employees of the City.  Should any liability arise under the Illinois Worker's Compensation Act during any time that employees are working for Landreth, said employees are covered by the Illinois Worker's Compensation Act and are the employees of Landreth.  Neither Landreth nor his employees shall hold himself or themselves out to be employees, agents, or servants of the City.

3

FOIA000845

6.    Best Efforts. Landreth agrees to devote his best efforts to the City's interest and to endeavor in every way to make successful the promotion of the City as a significant commercial and industrial location.

7.    Revocation. The City understands the long-term nature of this Agreement and the long-term nature of economic development. Therefore, the City agrees and covenants not to revoke or rescind this agreement or to institute any proceeding or action to challenge the validity of this agreement or in any way to rescind, modify or alter said agreement, understanding that Landreth is relying upon the representations and financial commitment contained herein and has every right to do so. Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement my cancel this agreement for any reason by providing the other party with not less than thirty (30) days prior, written notice of cancellation.

8.    Waiver. Waiver by either party of a breach of any term, condition or covenant herein shall not be deemed a waiver of any other term or condition or covenant.

9.    Breach. Upon a breach of any term or provision of this Agreement, the non-breaching party shall immediately provide a written notice to the other party describing the nature of the breach and a request for its immediate cure. In the event that said breach has not been cured within thirty (30) days of the issuance of written notice as aforesaid, then the non-breaching party may take such action as it deems necessary for the specific performance of this Agreement or its termination.

Upon termination of this agreement, Landreth shall provide the City with a list of Prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof.

10.    Assignability. It is agreed that neither party shall have the right to assign this Agreement, in whole or in part, without the written consent of the other party.

11.    Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective assessors or assigns.

12.    Warranties. The parties warrant and represent that :

a.    Each of the undersigned representatives of such party has been duly authorized by such party to execute this Agreement on behalf of such party;

b.    This Agreement is binding, valid and specifically enforceable according to its terms against each party;

4

c.    This Agreement does not violate any presently existing provision of law or any applicable order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality to which such party may be subject;

d.    This Agreement does not constitute a default under any indenture, mortgage, deed of trust, agreement or contract of any kind to which such party may be bound;

e.    There are no pending legal proceedings by any party against the other party.

13.    Headings. The headings of the sections of this Agreement are for convenience and reference only and in no way define, extend, limit or describe the scope or intent of this Agreement or any provision hereof.

14.    Execution and Counterparts. This Agreement may be executed in multiple identical counterparts and all of said counterparts shall, taken together, constitute the same agreement.

15.    Disclosure. The parties have jointly utilized the law firm of Pool, Leigh & Fabricius with respect to this Agreement, and each party acknowledges this fact and hereby expressly authorizes such joint representation. Each party also waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation.

Executed in duplicate this _5th_ day of _August_, 2003, by authority of a resolution of the Council of the City and by Landreth.

City of Ottawa, Illinois

By: _____              _____
     Its Mayor                                          John Colt Landreth

Attest:

_____
Its Clerk
F:\Docs\SRPD\Development and Marketing Agreement.doc

5

FOIA000847

State of Illinois    )
                     )    SS
County of LaSalle    )

    I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that Robert M. Eschbach, personally known to me to be the Mayor of the City of Ottawa, Illinois, and Elizabeth A. Taylor, personally known to me to be the Clerk of said City, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as Mayor and Clerk of said City, they signed and delivered said instrument in their official capacities as caused the corporate seal of said City be affixed thereto, pursuant to authority given by the Council said City, as the free and voluntary act and deed of said City, for the uses and purposes therein set forth.

    Given under my hand and notarial seal
this _5th_ day of _August_ , 2003.

_____
           Notary Public

"OFFICIAL SEAL"
VICKI V. DONAHUE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/16/07

6

FOIA000848

State of Illinois          )
                           )          SS
County of                  )

    I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that John Colt Landerth, personally known to me to be the same person whose names is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act and deed for the uses and purposes therein set forth.

    Given under my hand and notarial seal this _____ day of _____, 2003.

_____
Notary Public

```
"OFFICIAL SEAL"
NANCY C. STISSER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/16/07
```

L:\Docs\ottawa\Contracts-Agreements\Landreth revised 7-31-03.doc

FOIA000849

EXHIBIT D

# RESOLUTION NO. $\underline{106}$ -2005

## A RESOLUTION AUTHORIZING THE EXECUTION OF A CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT BETWEEN THE CITY OF OTTAWA AND JOHN COLT LANDRETH
### (Ottawa Industrial Park Conservation TIF District)

BE IT RESOLVED BY THE COUNCIL OF THE CITY OF OTTAWA, ILLINOIS,

AS FOLLOWS:

Section One: That the Mayor and City Clerk of the City of Ottawa, Illinois, be, and they are

hereby authorized and directed to execute a Consulting, Development and Marketing Agreement

between the City of Ottawa and John Colt Landreth, a copy of which is attached hereto and

incorporated herein by reference.

Section Two: That all Resolutions or parts thereof which are in conflict herewith are hereby

repealed.

Section Three: That this Resolution shall be in full force and effect from and after its passage

and approval as required by law.

Passed and Approved this 6th day of September, 2005.


_____
Robert M. Eschbach, Mayor

ATTEST:

_____
Shelly L. Munks, City Clerk

L:\Docs\ottawa\Resolutions\Agreements\Agreement - Colt Landreth - OIP - 2005.doc

## CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT
## BETWEEN THE CITY OF OTTAWA, ILLINOIS
## AND JOHN COLT LANDRETH

**Whereas**, the City of Ottawa (the "City") is an Illinois municipal corporation and body politic operating under the provisions of the Illinois Municipal Code, (65 ILCS 5/1-1-1 *et seq.*) (the "Code"), and

**Whereas**, the Code authorizes the City to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area, and

**Whereas**, the City is attempting to promote the commercial, industrial and economic development and welfare of the City, and

**Whereas**, the City encourages the increase of industry and commerce within the City and the State of Illinois, and

**Whereas**, the City now owns certain real property within the Ottawa Industrial Park Conservation TIF District ("OIP"), and

**Whereas**, the City has caused said real property to be platted and developed as an industrial park, and

**Whereas**, John Colt Landreth ("Landreth") is an individual with expertise in the development and marketing of industrial real property, and

**Whereas**, the specific and primary purposes for which OIP was created were to stimulate the promotion of industrial development within the City and to interest industry to locate in and about the City by the establishment of a comprehensive real estate marketing and development program (the "Program"), and

**Whereas**, the establishment of the program will further the public health, safety and welfare by the creation of jobs within the City, and

**Whereas**, Landreth has developed an expertise and experience with respect to the program and with regard to general economic development within the territory of the City, and

**Whereas**, the continued commercial and industrial development of the City is one of the primary corporate purposes of the City, and

**Whereas**, the Council of the City believes that it is in the best interest of the City to utilize Landreth as the primary economic development organization for the City, and

Whereas, efforts for the continued economic development of the City will require funds for all of the necessary development activity, including the appropriate marketing of the City as a viable location for potential commercial and industrial prospects, and

Whereas, Landreth and the City entered into a Consulting, Development And Marketing Agreement in 2003 and said agreement has expired, and

Whereas, Landreth is willing to continue to act as the primary economic development organization of the City and devote one-half (1/2) of his time thereto any and all time which is reasonably and necessarily required therefore.

WITNESSETH:

FOR AND IN CONSIDERATION of the mutual promises and undertakings herein set forth and other good and valuable considerations, the sufficiency of which is hereby acknowledged, the CITY and LANDRETH agree as follows:

1.   Incorporation of Recitals. All of the foregoing recitals are incorporated herein by reference and are acknowledged as true and correct.

2.   Term of Agreement. The initial term of this agreement shall be for six (6) twenty-four (24) months commencing on the date hereof. The initial term may be extended by mutual, written agreement of the parties.

3.   Obligations of City. In order to provide a continuous and reliable source of funding for economic development within the City and OIP:

(a)   The City shall pay to Landreth the sum of $5,000.00 upon the execution of this agreement and the further sum of $5,000.00 on the same day of each succeeding month during the term of this agreement; said sum shall be for Landreth's monthly retainer; together with an additional monthly amount not to exceed $2,000.00 for Chicago support staff, travel, telephone and similar items of reasonable and necessary expense.

(b) The further and additional sum of not to exceed $28,900.00 annually for web hosting and web modifications, broker events, CoreNet/SIOR dues, advertising, brochures and miscellaneous (wats line); and

(c)   The further and additional sum equal to 1 ½% of the actual project cost of all industrial developments occurring within the City during the term or any extension of this agreement. Such sum shall be paid one-half (1/2) upon the commencement of construction based upon the estimate of project cost as submitted by a developer and approved by the City, and the balance shall be paid upon completion of construction as soon as the total project cost is determined, and approved by the City. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case-by-case

2

basis and mutually agreed upon. Notwithstanding any of the foregoing to the contrary, the obligation of the City under this paragraph (c) shall be limited solely to industrial developments that result from the marketing efforts of Landreth and not from other sources.

(d)     The projects known as Murph-Haines, Galaxy, Bedrock, Burton and PetSmart shall not be eligible for compensation under paragraph (c) above.

Landreth shall provide a monthly statement to the City for the items of expense set forth in paragraphs (a) and (b) above; such statements shall contain reasonable detail for each item of expense, including receipts or copies of invoices, and such statements shall separate the items of expense as set forth in paragraphs (a) and (b) above.

4.     Services of Landreth. During the term of this Agreement Landreth shall provide to the City consulting, development and marketing services which shall be designed to increase and promote the commercial, industrial and economic base of the City, including, but not limited to the following:

(a)     Advertise and otherwise promote the City and OIP;
(b)     Develop and implement a marketing strategy for the City and OIP;
(c)     Develop and implement a master plan for OIP in conjunction with the City;
(d)     Develop and implement a strategic plan for OIP which shall include a a statement of mission and goals, as well as financial considerations and projections;
(e)     Develop community relations and public awareness on behalf of the City;
(f)     Identify and rank potential users and companies for location within OIP;
(g)     Coordinate and cooperate with other units of government and industry, as well as other economic development agencies;
(h)     Field and respond to all inquiries, and provide all necessary information to all prospects;
(i)     Coordinate activities and work with industrial real estate brokers in the Chicago metropolitan area;
(j)     Maintain and operate an office within the City of Chicago for the promotion and development of OIP;
(k)     Provide regular written reports to the City, but not less frequently than quarterly, of all economic development activity including the names of all industrial prospects.
(k)     Perform all other services as outlined and contained in the written proposal of Plaza Property Advisors dated March 17, 2003; and
(l)     Perform such other services as the City may reasonably require to accomplish the objective of increasing the job base within the City by attracting industry and distribution centers to the City.

5.     Independent Contract. Landreth understands and agrees that his obligation under this Agreement is to serve the City for the promotion and development of commercial and industrial development. It is understood and agreed between the parties that all persons working for Landreth under this Agreement, if any, shall be employees of Landreth and shall be in no

way considered employees of the City. Should any liability arise under the Illinois Worker's Compensation Act during any time that employees are working for Landreth, said employees are covered by the Illinois Worker's Compensation Act and are the employees of Landreth. Neither Landreth nor his employees shall hold himself or themselves out to be employees, agents, or servants of the City.

6.     Best Efforts. Landreth agrees to devote his best efforts to the City's interest and to endeavor in every way to make successful the promotion of the City as a significant commercial and industrial location.

7.     Revocation. The City understands the long-term nature of this Agreement and the long-term nature of economic development. Therefore, the City agrees and covenants not to revoke or rescind this agreement or to institute any proceeding or action to challenge the validity of this agreement or in any way to rescind, modify or alter said agreement, understanding that Landreth is relying upon the representations and financial commitment contained herein and has every right to do so. Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement my cancel this agreement for any reason by providing the other party with not less than thirty (30) days prior, written notice of cancellation.

8.     Waiver. Waiver by either party of a breach of any term, condition or covenant herein shall not be deemed a waiver of any other term or condition or covenant.

9.     Breach. Upon a breach of any term or provision of this Agreement, the non-breaching party shall immediately provide a written notice to the other party describing the nature of the breach and a request for its immediate cure. In the event that said breach has not been cured within thirty (30) days of the issuance of written notice as aforesaid, then the non-breaching party may take such action as it deems necessary for the specific performance of this Agreement or its termination.

Upon termination of this agreement, Landreth shall provide the City with a list of all industrial prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year 180 days of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof.

10.     Assignability. It is agreed that neither party shall have the right to assign this Agreement, in whole or in part, without the written consent of the other party.

11.     Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective assessors or assigns.

12.     Warranties. The parties warrant and represent that :

4

a.    Each of the undersigned representatives of such party has been duly authorized by such party to execute this Agreement on behalf of such party;

b.    This Agreement is binding, valid and specifically enforceable according to its terms against each party;

c.    This Agreement does not violate any presently existing provision of law or any applicable order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality to which such party may be subject;

d.    This Agreement does not constitute a default under any indenture, mortgage, deed of trust, agreement or contract of any kind to which such party may be bound;

e.    There are no pending legal proceedings by any party against the other party.

13.    Headings. The headings of the sections of this Agreement are for convenience and reference only and in no way define, extend, limit or describe the scope or intent of this Agreement or any provision hereof.

14.    Execution and Counterparts. This Agreement may be executed in multiple identical counterparts and all of said counterparts shall, taken together, constitute the same agreement.

15.    Disclosure. The parties have jointly utilized the law firm of Pool, Leigh & Fabricius with respect to this Agreement, and each party acknowledges this fact and hereby expressly authorizes such joint representation. Each party also waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation.

Executed in duplicate this ___7th___ day of ___September___, 2005, by authority of a resolution of the Council of the City and by Landreth.

**City of Ottawa, Illinois**

By: _____          _____

      **Robert M. Eschbach, Mayor**                                    **John Colt Landreth**

**Attest:**

_____
     **Shelly L. Munks, City Clerk**
F:\Docs\ottawa\Contracts-Agreements\Landreth Consulting 8-05.doc

5

State of Illinois      )
                       )      SS
County of LaSalle      )

     I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that Robert M. Eschbach, personally known to me to be the Mayor of the City of Ottawa, Illinois, and Shelly L. Munks, personally known to me to be the Clerk of said City, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as Mayor and Clerk of said City, they signed and delivered said instrument in their official capacities as caused the corporate seal of said City be affixed thereto, pursuant to authority given by the Council said City, as the free and voluntary act and deed of said City, for the uses and purposes therein set forth.

     Given under my hand and notarial seal this _____ day of _____, 2005.


_____
                Notary Public

State of Illinois     )
                    )    SS
County of LaSalle   )

I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that John Colt Landreth, personally known to me to be the same person whose names is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act and deed for the uses and purposes therein set forth.

Given under my hand and notarial seal this _____ day of _____, 2005.

_____
Notary Public

F:\Docs\ottawa\Contracts-Agreements\Landreth Consulting 8-05.doc

)    .                        )

# RESOLUTION NO. 126 -2005

## A RESOLUTION AUTHORIZING THE EXECUTION OF AN AMENDMENT TO THE CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT BETWEEN THE CITY OF OTTAWA AND JOHN COLT LANDRETH

### BE IT RESOLVED BY THE COUNCIL OF THE CITY OF OTTAWA, ILLINOIS, AS FOLLOWS:

**Section One:** That the Mayor and City Clerk of the City of Ottawa, Illinois, be, and they are hereby authorized and directed to execute an Amendment to the Consulting, Development and Marketing Agreement between the City of Ottawa and John Colt Landreth, a copy of which is attached hereto and incorporated herein by reference.

**Section Two:** That all resolutions or parts thereof which are in conflict herewith are hereby repealed.

**Section Three:** That this Resolution shall be in full force and effect from and after its passage and approval as required by law.

**Passed** and **Approved** this 18th day of October , 2005.

Robert M. Eschbach, Mayor

MAYOR PRO TEM

**ATTEST:**

Shelly L. Munks, City Clerk

L:\Docs\ottawa\Resolutions\Agreements\Agreement - Colt Landreth amendment 10-05.doc

)                                    )

# AMENDMENT TO THE CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT BETWEEN THE CITY OF OTTAWA, ILLINOIS AND JOHN COLT LANDRETH .

This Amendment to the Consulting, Development and Marketing Agreement between the City of Ottawa, Illinois and John Colt Landreth (the "Amendment") is made and entered into as of the |ᵞᵗⱨ day of October, 2005.

## RECITALS:

WHEREAS, the City of Ottawa, Illinois (the "City") and John Colt Landreth ("Landreth") entered into a Consulting, Development and Marketing Agreement (the "Agreement") on August 5, 2003, and

WHEREAS, the City received a grant from the Illinois Department of Commerce and Economic Opportunity ("DCEO") in the amount of $50,000.00 for marketing of the Ottawa Industrial Park (Grant No. 14-20105) and entered into a Grant Agreement, and

WHEREAS, the Grant Agreement between the City and DCEO requires specific language in all subcontracts relating to all services to be performed under the Grant Agreement, and

WHEREAS, Landreth has performed services on behalf of the City under the Grant Agreement between the City and DCEO, and

WHEREAS, the City and Landreth wish to amend the Agreement to incorporate the language required by Section 5.4 A. of the Grant Agreement between the City and DCEO.

NOW, THEREFORE, CITY AND LANDRETH AGREE AS FOLLOWS:

The Agreement is hereby amended by the addition of subparagraph (m) to paragraph 4 as follows:  The Illinois Department of Commerce and Economic

FOIA000851

Opportunity and the Auditor General of the State of Illinois, or any of their duly authorized representatives, shall have full access to and the right to examine any pertinent books, documents, papers and records of Landreth involving transactions related to the Grant Agreement between the City and DCEO, Grant No. 04-20105, for a period of five years from the later of the expiration or termination of said Grant Agreement between the City and DCEO.

**City of Ottawa, Illinois**

By: _____          _____
    Robert M. Eschbach, Mayor                 John Colt Landreth
    MAYOR PRO TEM

F:\Dncs\o\awa\Contracts-Agreements\Landreth amendment 10-05.doc

coltlandreth

| From: | Keith R. Leigh [keithleigh@mchsi.com] |
|---|---|
| Sent: | Tuesday, October 25, 2005 11:03 AM |
| To: | John Colt Landreth |
| Cc: | Robert M. Eschbach; Shelly Munks |
| Subject: | Consulting Agreement/City of Ottawa |

Colt,

I understand that you have indicated that you will not sign the proposed six month extension to your consulting agreement with th
City. In view of that, the City will not be making any further payment because there is no agreement.
The original agreement has expired by its own terms.

Initially, I understood that the council simply wanted to extend the original contract for six months to provide time for its review. I
prepared an amendment that merely extended the term for six months without any other substantive change. When that was
presented to the city council, several members of the council requested additional changes before they would consider any
extension of the agreement.

Therefore, I prepared a second amendment that incorporated the requested changes. It is that amended agreement which you
have declined to execute, and without a contract there exists no legal authority to continue to make payments under the terms and
provisions of the expired agreement.

I also note that you are required under the provisions of the original agreement to provide the city with a list of Prospects within 30
days of the termination of the agreement. In as much as the agreement terminated (expired) on August 5, 2005, you were
required to submit the list of Prospects on or before September 5, 2005. Under the circumstances, I urge you to do so
immediately.

Keith

2/22/2005

LAW OFFICES

# POOL, LEIGH & FABRICIUS

AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS
CENTRAL LIFE BUILDING
628 COLUMBUS STREET
SUITE 208
OTTAWA, IL 61350

KEITH R. LEIGH
RAYMOND P. FABRICIUS

ANITA L. KOPKO
JENNIFER H. KOENIG'.
JAMES R. LINDIG

ERNEST H. POOL, SR. (1894-1985)
ERNEST H. POOL, JR. (RETIRED)

TELEPHONE 815 - 434 - 0097
FACSIMILE 815 - 434 - 0270
E-MAIL: POOLLEIGHLAW@MCHSI.COM

December 13, 2005                    **Via Facsimile and U.S. Mail**

Mr. John Colt Landreth
Plaza Property Advisors
One IBM Plaza, Suite 2901
330 N. Wabash Avenue
Chicago, IL 60611

> **Re:**   **City of Ottawa, Illinois**
> **Consulting, Development and Marketing Agreement**

Dear Colt:

The Ottawa City Council has repealed Resolution No. 106-2005, which was approved on
September 6, 2005 authorizing the Mayor to execute a new agreement with you. The
Council took this action primarily because you have declined to execute the agreement,
which had been authorized by Resolution No. 106-2005, and there has been an inability
to arrive at mutually acceptable terms.

In view of the fact that your original agreement with the City of Ottawa expressly
provided for a term of two years, that agreement expired by its own terms on August 5,
2005. Therefore, as of August 5, 2005 you no longer have a contractual relationship with
the City of Ottawa except for the specific provisions of the original agreement, which
provide for compensation to you under certain conditions and within certain time
parameters. Similarly, since you no longer have any contractual relationship with the
City of Ottawa, you have no authority whatsoever to act on the City's behalf or to make
any representations for or on behalf of the City. Please note the language of paragraph 9
of the agreement prohibiting you from holding yourself out as an employee, agent or
servant of the City. Moreover, since August 5, 2005 you have no authority or right to
incur any obligations, costs or expenses which would have been reimbursable pursuant to
paragraphs 3 a and b of the agreement.

On October 25, 2005 I sent you an email requesting a list of prospects pursuant to
paragraph 9 of the agreement. My request was made because the agreement expired on
August 5, 2005, and you elected not to extend the agreement as proposed by the City of
Ottawa.

POOL LEIGH & FABRICIUS Fax:8154340270          Dec 13 2005  16:18   P.03

Mr. John Colt Landreth
December 13, 2005
Page 2

Your correspondence of November 18, 2005 to Mayor Eschbach contains a list identified by you as prospects under paragraph 9 of the agreement. I understand from the City Engineer that you have declined to provide any further or additional information with respect to the list. The City has no way of determining the authenticity of the list at this time. Additionally, if the list consists of genuine and viable economic development prospects, your failure to provide any detail or contact information unreasonably inhibits the City's ability to locate those prospects within the City. In that regard, paragraphs 4 (f) and (k) of the agreement required you to provide an identification and rank of potential users and customers and to provide regular reports not less frequently than quarterly of all economic development activity. Therefore, I do not believe the City's request for the date on which you initially had contact with the company and/or provided services pursuant to the agreement or which prospects are industrial as contrasted with commercial, or the name and address of the contact person for each prospect on the list is unreasonable considering your obligations under paragraph 4 of the agreement.

Obviously, without such information the City is inhibited, if not entirely precluded, from continuing its economic development activity with respect to the "prospects" which you have identified by name alone. With respect to many of the "prospects", the City has no information or knowledge whatsoever, and they have not been previously disclosed by you in any report to the City. If any entity on the list is a genuine prospect for which you might be entitled to compensation under paragraph 9 of the agreement, it would appear in your best interests to provide whatever information you have assembled on the City's behalf. In view of the express provisions of paragraph 4 of the agreement, I believe you have an affirmative obligation to provide that information now. I believe that it is best to resolve any questions or issues with respect to the prospect list at this time, and to permit the City the opportunity to further work with such prospects. Your lack of cooperation in this regard would demonstrate a lack of good faith on your part.

In addition, without the requested information the City has no basis whatsoever to determine your entitlement to future compensation under the agreement. If you claim compensation under paragraph 9 with respect to any entity on the "prospect" list, the City will be requiring such information prior to making any disbursement to you. Furthermore, your filing of the list shall not be construed or deemed an acknowlegement of any obligation of the City to provide compensation to you under paragraph 9 of the agreement.

To the extent that you may be requesting compensation in the future under paragraph 9 of the agreement, I believe you have a distinct economic interest in cooperating with the City at this time. Your lack of cooperation can only diminish the likelihood of any genuine prospect from locating in Ottawa and the realization by you of future compensation.

Mr. John Colt Landreth
December13, 2005
Page 3

Moreover, I understand that the City has requested information about the web site which you established on the City's behalf and which was paid for by the City. I also understand that you have declined to provide that information to enable the City to continue the site's operation and maintenance. Your declination to provide this information and that previously mentioned clearly frustrates the City's efforts at economic development and makes a smooth transition virtually impossible.

Kindly reconsider your refusal to provide the requested information with regard to the prospect list, web site and any other information the City may reasonably require. If you have any questions concerning this letter, kindly contact me at your convenience.

Sincerely,

POOL, LEIGH & FABRICIUS

By: _____
    Keith R. Leigh

cc:    City Council
       City Clerk
       City Engineer

F:\Docs\ottawa\TIF\Letters\ltr Landreth 12-7-05.doc

# Plaza Property Advisors, Inc.

# INVOICE

One IBM Plaza, Suite 2901
330 North Wabash Avenue
Chicago, Illinois 60611

INVOICE # 0155
Date:12/08/2005

Telephone (312) 670-1500
Facsimile  (312) 670-1523

Bill To:  **City of Ottawa**
**301 West Madison Street**
**Ottawa, IL 61350**

**Attention:  Mayor Robert M. Eschbach**

For:  **Varney Land Deal**
**Ottawa, Illinois**

| DESCRIPTION | | AMOUNT |
|---|---|---|
| **Land Sale** | | |
| 9.5 Acres @ $20,000 per acre - | $190,000.00 | |
| Fee:  Rate | 0.015 | |
| Fee Earned | | 2,850.00 |
| Note:<br>If this land is developed within the next twenty-four (24) months an additional fee based on the development cost will be due and payable pursuant to Paragraph 3 of Consulting, Development and Marketing Agreement between The City of Ottawa, Illinois and John Colt Landreth fully executed and dated 5 August, 2003 | | |
| Please make all checks payable to: | **Total** | **$2,850.00** |

**Plaza Property Advisors**
**Suite 2901**
**One IBM Plaza**
**330 North Wabash Avenue**
**Chicago, IL 60611**
Telephone (312) 670-1500

# Plaza Property Advisors, Inc.

INVOICE

One IBM Plaza, Suite 2901
330 North Wabash Avenue
Chicago, Illinois 60611

INVOICE # 0157
Date: Feb. 7, 2006

Telephone (312) 670-1500
Facsimilie  (312) 670-1523

Bill To: **Honorable Robert M. Eschbach**
**Mayor**
**City of Ottawa**
**301 West Madison Street**
**Ottawa, IL 61350**
**Telephone (815) 433-0161/Fax (815) 433-2270**

For:   **MTC Development**
**Ottawa Industrial Park - Unit I**
**Ottawa, Illinois**

| DESCRIPTION | AMOUNT |
|---|---|
| Total All Costs | $2,496,808 |
| Plaza Property Advisors Fee - 1.5% | 0.0150 |
| Total Fee | $37,452.12 |
| Less:  First Installment (Paid 2-4-05) | 15,879.00 |
| Second Installment due upon receipt | $21,573.12 |
| | |
| **Total** | **$21,573.12** |

Please make all checks payable to:
**Plaza Property Advisors**
**Suite 2901**
**One IBM Plaza**
**330 North Wabash Avenue**
**Chicago, IL 60611**
**Telephone (312) 670-1500**

# Plaza Property Advisors, Inc.

# INVOICE

One IBM Plaza, Suite 2901
330 North Wabash Avenue
Chicago, Illinois 60611

INVOICE # 0158
Date: Feb. 7, 2006

Telephone (312) 670-1500
Facsimilie  (312) 670-1523

Bill To: **Honorable Robert M. Eschbach**　　For:　**PetsMart Development**
**Mayor**　　　　　　　　　　　　　　　　　　　　　**Ottawa, Illinois**
**City of Ottawa**
**301 West Madison Street**
**Ottawa, IL 61350**
**Telephone (815) 433-0161/Fax (815) 433-2270**

| | DESCRIPTION | AMOUNT |
|---|---|---|
| | Total Project Costs (est.) | $32,000,000 |
| | Plaza Property Advisors Fee - 1.5% | 0.0150 |
| | Total Fee (First & Second Installments) (est.) Due upon receipt | $480,000 |
| | | |
| | **Total** | **$480,000** |

Please make all checks payable to:
**Plaza Property Advisors**
**Suite 2901**
**One IBM Plaza**
**330 North Wabash Avenue**
**Chicago, IL 60611**
Telephone (312) 670-1500

# Plaza Property Advisors, Inc.

INVOICE

One IBM Plaza, Suite 2901
330 North Wabash Avenue
Chicago, Illinois 60611

INVOICE # 0159
Date: Feb. 7, 2006

Telephone (312) 670-1500
Facsimilie  (312) 670-1523

Bill To: **Honorable Robert M. Eschbach**
**Mayor**
**City of Ottawa**
**301 West Madison Street**
**Ottawa, IL 61350**
**Telephone (815) 433-0161/Fax (815) 433-2270**

For: **International Titanium Powder**
**Ottawa Industrial Park - Unit I**
**Ottawa, Illinois**

| DESCRIPTION | AMOUNT |
|---|---|
| Total Project Costs (est.) | $4,360,000 |
| Plaza Property Advisors Fee - 1.5% | 0.0150 |
| Total Fee (est.) | $65,400.00 |
| First Installment (not due yet) | $32,700 |
| **Total** | **$32,700** |

Please make all checks payable to:
**Plaza Property Advisors**
**Suite 2901**
**One IBM Plaza**
**330 North Wabash Avenue**
**Chicago, IL 60611**
Telephone (312) 670-1500

# Plaza Property Advisors, Inc.

INVOICE

One IBM Plaza, Suite 2901
330 North Wabash Avenue
Chicago, Illinois 60611

INVOICE # 0154
Date:12/12/2005

Telephone (312) 670-1500
Facsimile  (312) 670-1523

Bill To:  Ms. Shelly Munks
          City Clerk
          City of Ottawa
          301 West Madison Street
          Ottawa, IL 61350
          Telephone (815) 433-0161/Fax (815) 433-2270

For:  **Ottawa Industrial Development Authority**
      **November, 2005 Non-recurring Expenses**

| Nov. | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| | **Miscellaneous Budget Expenses** | |
| | **Broker Events** | |
| 4 | SIOR Fall Conference | 650.00 |
| | Taxis 4 @ $8.00 each | 32.00 |

Please make all checks payable to:          Total          682.00

**Plaza Property Advisors**
Suite 2901
One IBM Plaza
330 North Wabash Avenue
Chicago, IL 60611
Telephone (312) 670-1500