EXHIBIT M

FILED

IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
LASALLE COUNTY, ILLINOIS

FEB 0 2 2007

LA SALLE COUNTY CIRCUIT CLERK
THIRTEENTH JUDICIAL CIRCUIT OF ILLINOIS

| | | |
|---|---|---|
| John Colt Landreth, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-L- \17 |
| | ) | |
| City of Ottawa, Illinois | ) | |
| a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW AND JURY DEMAND

Plaintiff, **John Colt Landreth** ("*Landreth*"), by his attorneys, Myers, Berry, O'Conor &

Kuzma, Ltd., complaining of the Defendant, **City of Ottawa, Illinois** (the "*City*"), states as follows:

### COUNT I

### Breach of Contract – Consulting Agreement

1.      The City is an Illinois municipal corporation and body politic operating under the

provisions of the Illinois Municipal Code, 65 ILCS 5/1-1-1 *et seq.*

2.      On and prior to August 5, 2003, the City was engaged in an effort to promote

commercial, industrial and economic development within the political boundaries of Ottawa, Illinois

("*Ottawa*").

3.      At all material times hereto, Landreth was an individual with expertise in the

development and marketing of commercial and industrial real property and, as of August 5, 2003,

Landreth possessed expertise and experience with regard to the general economic development of

Ottawa.

4.      On August 5, 2003, the City sought to promote and market Ottawa as a site for

commercial and industrial development by utilizing Landreth's skills and contacts.

5.    On August 5, 2003, the City and Landreth entered into a written agreement entitled "Consulting, Development and Marketing Agreement" (the "*Consulting Agreement*"). A true and correct copy of the Consulting Agreement is attached hereto as Exhibit "A."

6.    The Consulting Agreement provided, *inter alia,* that Landreth was to promote commercial, industrial and economic development within Ottawa.

7.    In Section 3(a) of the Consulting Agreement the City agreed to pay Landreth a monthly retainer of $5,000.00 and to reimburse his expenses.

8.    In Section 3(d) of the Consulting Agreement the City agreed to pay incentive compensation to Landreth based on the "project cost" of new industrial developments occurring within Ottawa during the term or any extension of the Consulting Agreement (the "*incentive compensation*"). Section 3(d) of the Consulting Agreement provides::

> 3.    Obligations of City.  In order to provide a continuous and reliable source of funding for economic development within the City and OIP:
>
> * * *
>
> (d)  [The City shall pay to Landreth]  the further and additional sum equal to 1 ½% of the actual project cost of all industrial developments occurring within the City during the term of (sic) any extension of this agreement. Such sum shall be paid one-half (½) upon the commencement of construction based upon the estimate of project cost, and the balance shall be paid upon completion of construction as soon as the total project cost is determined. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case by case basis and mutually agreed upon. (emphasis in original)

9.   Landreth performed the duties and obligations imposed upon him by the Consulting Agreement and, in particular, promoted Ottawa as a viable site for commercial and industrial development.

10.  By reason of certain industrial developments which occurred within Ottawa during the initial term of the Consulting Agreement, Landreth became entitled to incentive compensation under Section 3(d) of the Consulting Agreement, including (on information and belief) at least $450,000.00 attributable to the PetsMart warehouse/distribution center (the "PetsMart Development") constructed in the Ottawa I-80 North TIF Redevelopment Project Area.

11.  The City has failed to pay Landreth the incentive compensation to which he became entitled under Section 3(d) of the Consulting Agreement.

WHEREFORE, Landreth prays for judgment against the City for the following amounts:

A.   $450,000.00, being the least amount of incentive compensation to which Landreth became entitled under Section 3(d) of the Consulting Agreement prior to August 5, 2005;

B.   other incentive compensation to which Landreth became entitled under Section 3(d) of the Consulting Agreement prior to August 5, 2005;

C.   pre-judgment interest on all amounts due Landreth under the Consulting Agreement from the date Landreth became entitled to receive such amounts;

D.   the costs of this action; and

E.   such other and further relief as may be just and proper in the premises.

## COUNT II

### Breach of Contract – Agreement to Extend

1.-9.   Plaintiff restates the allegations contained in paragraphs 1 through 9 of Count I as and

for paragraphs 1 through 9 of Count II.

10.     On June 20, 2005, Landreth and Robert Eschbach, Mayor of the City, met and agreed to extend the Consulting Agreement without change for an additional six months – or until February 5, 2006 – while they attempted to negotiate a new agreement (the "*agreement to extend* ").

11.     Subsequent to August 5, 2005, in furtherance of the agreement to extend, Landreth continued to perform the duties and obligations required of him under the Consulting Agreement, and, *inter alia,* continued to promote Ottawa as a viable site for commercial and industrial development.

12.     In furtherance of the agreement to extend, the City paid Landreth the monthly retainer required by Section 3(a) of the Consulting Agreement as follows:

| Date | Amount Paid |
|---|---|
| August 5, 2005 | $5,000.00 |
| September 5, 2005 | $5,000.00 |
| October 5, 2005 | $5,000.00 |

13.     On August 23, 2005, the City presented Landreth with a draft of a proposed new consulting agreement (the "*proposed new consulting agreement*"). A copy of the proposed new consulting agreement is attached hereto as Exhibit "B."

14.     The proposed new consulting agreement substantially changed the terms of the Consulting Agreement. Among other changes, the proposed new consulting agreement required that Landreth relinquish incentive compensation attributable to the PetsMart Development which Landreth had earned prior to August 5, 2005 (the "*accrued PetsMart compensation*").

15.     During the period between August 23, 2005 and October 18, 2005, Landreth attempted to negotiate the terms of a new consulting agreement with the City, but the City refused to negotiate with Landreth in good faith and instead –

(a) repeatedly demanded that Landreth relinquish his right to the accrued PetsMart compensation; and

(b) repeatedly insisted that the terms of the proposed new consulting agreement – including the City's demand that Landreth relinquish his right to the accrued PetsMart compensation – were not negotiable but rather were "take it or leave it" terms.

16.     Throughout the period of their negotiations, Landreth refused to accede to the City's demand that he relinquish the accrued PetsMart compensation.

17.     On October 18, 2005, the City dishonored the $5,000.00 check which the City had issued to Landreth on October 5, 2005 in payment of his monthly retainer fee.

18.     On October 25, 2005, the City terminated the Consulting Agreement.

19.     The City has failed to reimburse Landreth for $9,139.13 of expenses he incurred during the period August 2005 through November 2005 in connection with the Consulting Agreement.

20.     To the extent industrial developments occurred within Ottawa subsequent to August 5, 2005, Landreth became entitled to incentive compensation under Section 3(d) of the Consulting Agreement.

21.     The City has failed to pay Landreth any incentive compensation to which he may have become entitled under Section 3(d) of the Consulting Agreement by reason of industrial

developments which occurred within Ottawa subsequent to August 5, 2005.

WHEREFORE, Landreth prays for judgment against the City for the following amounts:

A.    $20,000.00, being Landreth's monthly retainers for the period October 5, 2005 through February 5, 2006;

B.    $9, 139.13, being the expenses Landreth incurred during the period August 2005 through November 2005 in connection with the Consulting Agreement;

C.    incentive compensation due Landreth for the period August 5, 2005 through February 5, 2006;

D.    pre-judgment interest on all amounts due Landreth under the Consulting Agreement from the date Landreth became entitled to receive such amounts;

E.    the costs of this action; and

F.    such other and further relief as may be just and proper in the premises.

## COUNT III

### Declaratory Judgment – Post-Termination Incentive Compensation

1.-9.    Plaintiff restates the allegations contained in paragraphs 1 through 9 of Count I as and for paragraphs 1 through 9 of Count III.

10.-12. Plaintiff restates the allegations contained in paragraphs 10 through 12 of Count II as and for paragraphs 10 through 12 of Count III.

13.    On October 25, 2005, the City terminated the Consulting Agreement.

14.    In Section 9 of the Consulting Agreement the City agreed to pay incentive compensation to Landreth after the termination of the Consulting Agreement ("*post-termination*

*incentive compensation*"). Section 9 of the Consulting Agreement provides, in pertinent part:

> 9. Breach.                * * *
>
> Upon termination of this agreement, Landreth shall provide the City with a list of Prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof. (emphasis in original)

15.     On or about November 18, 2005, Landreth delivered his list of prospects (the

"*prospect list*") to the City. A true and correct copy of the prospect list is attached hereto as Exhibit

"C."

16.     Under Section 9 of the Consulting Agreement, Landreth is entitled to post-termination

incentive compensation (as provided in Section 3(d) of the Consulting Agreement) –

(i)     based on the "project cost" of industrial developments

(ii)    constructed on land in a City TIF district (or future TIF district)

(iii)   where the land was purchased within 24 months of the termination of the

Consulting Agreement by a person or entity on the prospect list.

17.     An actual controversy exists between Landreth and the City as to whether or not

Landreth is entitled to post-termination incentive compensation pursuant to Section 9 of the

Consulting Agreement.

WHEREFORE, Landreth requests the following relief:

A.    That this Court determine and declare that Landreth and the City validly entered into an agreement to extend the Consulting Agreement for six months – or until February 5, 2006.

B.    That this Court determine and declare that the City wrongfully terminated the Consulting Agreement on October 25, 2005.

C.    That this Court determine and declare that the Consulting Agreement, if not wrongfully terminated by the City, would have expired February 5, 2006.

D.    That this Court determine and declare that Landreth is entitled to post-termination incentive compensation (as provided in Section 3(d) of the Consulting Agreement) –

(i)    based on the "project cost" of industrial developments

(ii)   constructed on land in a City TIF district (or future TIF district)

(iii)  where the land was purchased within 24 months of the termination of the Consulting Agreement by a person or entity on the prospect list.

E.    That Landreth have judgment for the costs of this action and for such other and further relief as may be just and proper in the premises.

John Colt Landreth, Plaintiff

By _____
     One of His Attorneys

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

**John Colt Landreth**

## JURY DEMAND

Plaintiff demands that all issues properly submissible to a jury be tried by a jury of twelve persons.

**John Colt Landreth, Plaintiff**

By: _____
One of His Attorneys

Stephen C. Myers
Richard J. Berry
Myers, Berry, O'Conor & Kuzma, Ltd.
130 East Madison Street
Ottawa, Illinois 61350
Telephone: 815-434-6206

## CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT
## BETWEEN THE CITY OF OTTAWA, ILLINOIS
## AND JOHN COLT LANDRETH

**Whereas**, the City of Ottawa (the "City") is an Illinois municipal corporation and body politic operating under the provisions of the Illinois Municipal Code, (65 ILCS 5/1-1-1 *et seq.*) (the "Code"), and

**Whereas**, the Code authorizes the City to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area, and

**Whereas**, the City is attempting to promote the commercial, industrial and economic development and welfare of the City, and

**Whereas**, the City encourages the increase of industry and commerce within the City and the State of Illinois, and

**Whereas**, the City now owns certain real property within the Ottawa Industrial Park Conservation TIF District ("OIP"), and

**Whereas**, the City has caused said real property to be platted and developed as an industrial park, and

**Whereas**, John Colt Landreth ("Landreth") is an individual with expertise in the development and marketing of industrial real property, and

**Whereas**, the specific and primary purposes for which OIP was created were to stimulate the promotion of industrial development within the City and to interest industry to locate in and about the City by the establishment of a comprehensive real estate marketing and development program (the "Program"), and

**Whereas**, the establishment of the program will further the public health, safety and welfare by the creation of jobs within the City, and

**Whereas**, Landreth has developed an expertise and experience with respect to the program and with regard to general economic development within the territory of the City, and

**Whereas**, the continued commercial and industrial development of the City is one of the primary corporate purposes of the City, and

**Whereas**, the Council of the City believes that it is in the best interest of the City to utilize Landreth as the primary economic development organization for the City, and



**Whereas**, efforts for the continued economic development of the City will require funds for all of the necessary development activity, including the appropriate marketing of the City as a viable location for potential commercial and industrial prospects, and

**Whereas**, Landreth is willing to act as the primary economic development organization of the City and devote one-half (1/2) of his time thereto.

### WITNESSETH:

FOR AND IN CONSIDERATION of the mutual promises and undertakings herein set forth and other good and valuable considerations, the sufficiency of which is hereby acknowledged, the **CITY** and **LANDRETH** agree as follows:

1.　Incorporation of Recitals. All of the foregoing recitals are incorporated herein by reference and are acknowledged as true and correct.

2.　Term of Agreement. The initial term of this agreement shall be for twenty-four (24) months commencing, 2003, to and including, 2005. The initial term may be extended by mutual, written agreement of the parties.

3.　Obligations of City. In order to provide a continuous and reliable source of funding for economic development within the City and OIP:

(a) the City shall pay to Landreth the sum of $5,000.00 upon the execution of this agreement and the further sum of $5,000.00 on the same day of each succeeding month during the term of this agreement; said sum shall be for Landreth's monthly retainer; together with an monthly amount not to exceed $2,000.00 for Chicago support staff, travel, telephone; and similar items of expense.

(b) the further and additional sum of not to exceed $28,900.00 annually for web hosting and web modifications, broker events, CoreNet/SIOR dues, advertising, brochures and miscellaneous (wats line); and

(c)　the further and additional sum (one time expense only) of $2,000.00 for web site design.

(d)　the further and additional sum equal to 1 ½% of the actual project cost of all industrial developments occurring within the City during the term or any extension of this agreement. Such sum shall be paid one-half (1/2) upon the commencement of construction based upon the estimate of project cost, and the balance shall be paid upon completion of construction as soon as the total project cost is determined. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case by case basis and mutually agreed upon.

2

(e)     The projects known as Murph-Haines, Galaxy, Bedrock and Burton shall not be eligible for compensation under paragraph (d) above.

Landreth shall provide a monthly statement to the City for the items of expense set forth in paragraphs (a) and (b) above; such statements shall contain reasonable detail for each item of expense, including receipts or copies of invoices, if available.

4.     Services of Landreth. During the term of this Agreement Landreth shall provide to the City consulting, development and marketing services which shall be designed to increase and promote the commercial, industrial and economic base of the City, including, but not limited to the following:

(a)     Advertise and otherwise promote the City and OIP;

(b)     Develop and implement a marketing strategy for the City and OIP;

(c)     Develop and implement a master plan for OIP in conjunction with the City;

(d)     Develop and implement a strategic plan for OIP which shall include a a statement of mission and goals, as well as financial considerations and projections;

(e)     Develop community relations and public awareness on behalf of the City;

(f)     Identify and rank potential users and companies for location within OIP;

(g)     Coordinate and cooperate with other units of government and industry, as well as other economic development agencies;

(h)     Field and respond to all inquiries, and provide all necessary information to all prospects;

(i)     Coordinate activities and work with industrial real estate brokers in the Chicago metropolitan area;

(j)     Maintain and operate an office within the City of Chicago for the promotion and development of OIP;

(k)     Provide regular reports to the City, but not less frequently than quarterly, of all economic development activity;

(k)     Perform all other services as outlined and contained in the written proposal of Plaza Property Advisors dated March 17, 2003; and

(l)     Perform such other services as the City may reasonably require to accomplish the objective of increasing the job base within the City by attracting industry and distribution centers to the City.

5.     Independent Contract. Landreth understands and agrees that his obligation under this Agreement is to serve the City for the promotion and development of commercial and industrial development. It is understood and agreed between the parties that all persons working for Landreth under this Agreement, if any, shall be employees of Landreth and shall be in no way considered employees of the City. Should any liability arise under the Illinois Worker's Compensation Act during any time that employees are working for Landreth, said employees are covered by the Illinois Worker's Compensation Act and are the employees of Landreth. Neither Landreth nor his employees shall hold himself or themselves out to be employees, agents, or servants of the City.

3

6.      Best Efforts. Landreth agrees to devote his best efforts to the City's interest and to endeavor in every way to make successful the promotion of the City as a significant commercial and industrial location.

7.      Revocation. The City understands the long-term nature of this Agreement and the long-term nature of economic development. Therefore, the City agrees and covenants not to revoke or rescind this agreement or to institute any proceeding or action to challenge the validity of this agreement or in any way to rescind, modify or alter said agreement, understanding that Landreth is relying upon the representations and financial commitment contained herein and has every right to do so. Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement my cancel this agreement for any reason by providing the other party with not less than thirty (30) days prior, written notice of cancellation.

8.      Waiver. Waiver by either party of a breach of any term, condition or covenant herein shall not be deemed a waiver of any other term or condition or covenant.

9.      Breach. Upon a breach of any term or provision of this Agreement, the non-breaching party shall immediately provide a written notice to the other party describing the nature of the breach and a request for its immediate cure. In the event that said breach has not been cured within thirty (30) days of the issuance of written notice as aforesaid, then the non-breaching party may take such action as it deems necessary for the specific performance of this Agreement or its termination.

Upon termination of this agreement, Landreth shall provide the City with a list of Prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof.

10.     Assignability. It is agreed that neither party shall have the right to assign this Agreement, in whole or in part, without the written consent of the other party.

11.     Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective assessors or assigns.

12.     Warranties. The parties warrant and represent that :

a.      Each of the undersigned representatives of such party has been duly authorized by such party to execute this Agreement on behalf of such party;

b.      This Agreement is binding, valid and specifically enforceable according to its terms against each party;

4

c.     This Agreement does not violate any presently existing provision of law or any applicable order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality to which such party may be subject;

d.     This Agreement does not constitute a default under any indenture, mortgage, deed of trust, agreement or contract of any kind to which such party may be bound;

e.     There are no pending legal proceedings by any party against the other party.

13.    Headings. The headings of the sections of this Agreement are for convenience and reference only and in no way define, extend, limit or describe the scope or intent of this Agreement or any provision hereof.

14.    Execution and Counterparts. This Agreement may be executed in multiple identical counterparts and all of said counterparts shall, taken together, constitute the same agreement.

15.    Disclosure. The parties have jointly utilized the law firm of Pool, Leigh & Fabricius with respect to this Agreement, and each party acknowledges this fact and hereby expressly authorizes such joint representation. Each party also waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation.

Executed in duplicate this _5th_ day of _August_ , 2003, by authority of a resolution of the Council of the City and by Landreth.

City of Ottawa, Illinois

By: _____            _____
        Its Mayor                                            John Colt Landreth

Attest:

_____
Its Clerk
F:\Docs\SRPD\Development and Marketing Agreement.doc

5

State of Illinois )
                 )    SS
County of LaSalle )

    I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that Robert M. Eschbach, personally known to me to be the Mayor of the City of Ottawa, Illinois, and Elizabeth A. Taylor, personally known to me to be the Clerk of said City, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as Mayor and Clerk of said City, they signed and delivered said instrument in their official capacities as caused the corporate seal of said City be affixed thereto, pursuant to authority given by the Council said City, as the free and voluntary act and deed of said City, for the uses and purposes therein set forth.

    Given under my hand and notarial seal
this _____5th_____ day of ___August___ , 2003.

_____
         Notary Public

"OFFICIAL SEAL"
VICKI V. DONAHUE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/16/07

State of Illinois          )
                           )          SS
County of                  )


     I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that John Colt Landerth, personally known to me to be the same person whose names is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act and deed for the uses and purposes therein set forth.

     Given under my hand and notarial seal
this _____ day of _____, 2003.

_____
Notary Public

"OFFICIAL SEAL"
NANCY C. STISSER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/16/07

L:\Docs\ottawa\Contracts-Agreements\Landreth revised 7-31-03.doc

## CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT
## BETWEEN THE CITY OF OTTAWA, ILLINOIS
## AND JOHN COLT LANDRETH

Whereas, the City of Ottawa (the "City") is an Illinois municipal corporation and body politic operating under the provisions of the Illinois Municipal Code, (65 ILCS 5/1-1-1 *et seq.*) (the "Code"), and

Whereas, the Code authorizes the City to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area, and

Whereas, the City is attempting to promote the commercial, industrial and economic development and welfare of the City, and

Whereas, the City encourages the increase of industry and commerce within the City and the State of Illinois, and

Whereas, the City now owns certain real property within the Ottawa Industrial Park Conservation TIF District ("OIP"), and

Whereas, the City has caused said real property to be platted and developed as an industrial park, and

Whereas, John Colt Landreth ("Landreth") is an individual with expertise in the development and marketing of industrial real property, and

Whereas, the specific and primary purposes for which OIP was created were to stimulate the promotion of industrial development within the City and to interest industry to locate in and about the City by the establishment of a comprehensive real estate marketing and development program (the "Program"), and

Whereas, the establishment of the program will further the public health, safety and welfare by the creation of jobs within the City, and

Whereas, Landreth has developed an expertise and experience with respect to the program and with regard to general economic development within the territory of the City, and

Whereas, the continued commercial and industrial development of the City is one of the primary corporate purposes of the City, and

~~Whereas, the Council of the City believes that it is in the best interest of the City to utilize Landreth as the primary economic development organization for the City, and~~



Whereas, efforts for the continued economic development of the City will require funds for all of the necessary development activity, including the appropriate marketing of the City as a viable location for potential commercial and industrial prospects, and

Whereas, Landreth and the City entered into a Consulting, Development And Marketing Agreement in 2003 and said agreement has expired, and

Whereas, Landreth is willing to continue to act as the primary economic development organization of the City and devote ~~one-half (1/2) of his time thereto~~ any and all time which is reasonably and necessarily required therefore.

WITNESSETH:

FOR AND IN CONSIDERATION of the mutual promises and undertakings herein set forth and other good and valuable considerations, the sufficiency of which is hereby acknowledged, the CITY and LANDRETH agree as follows:

1.    Incorporation of Recitals. All of the foregoing recitals are incorporated herein by reference and are acknowledged as true and correct.

2.    Term of Agreement. The ~~initial~~ term of this agreement shall be for six (6) ~~twenty-four (24)~~ months commencing on the date hereof. The initial term may be extended by mutual, written agreement of the parties.

3.    Obligations of City. In order to provide a continuous and reliable source of funding for economic development within the City and OIP:

(a)    The City shall pay to Landreth the sum of $5,000.00 upon the execution of this agreement and the further sum of $5,000.00 on the same day of each succeeding month during the term of this agreement; said sum shall be for Landreth's monthly retainer; together with an additional monthly amount not to exceed $2,000.00 for Chicago support staff, travel, telephone and similar items of reasonable and necessary expense.

(b) The further and additional sum of not to exceed $28,900.00 annually for web hosting and web modifications, broker events, CoreNet/SIOR dues, advertising, brochures and miscellaneous (wats line); and

(c)    The further and additional sum equal to 1 ½ % of the actual project cost of all industrial developments occurring within the City during the term or any extension of this agreement. Such sum shall be paid one-half (1/2) upon the commencement of construction based upon the estimate of project cost as submitted by a developer and approved by the City, and the balance shall be paid upon completion of construction as soon as the total project cost is determined, and approved by the City. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building

2

permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case-by-case basis and mutually agreed upon. **Notwithstanding any of the foregoing to the contrary, the obligation of the City under this paragraph (c) shall be limited solely to industrial developments that result from the marketing efforts of Landreth and not from other sources.**

(d)    The projects known as Murph-Haines, Galaxy, Bedrock, Burton and **PetSmart** shall not be eligible for compensation under paragraph (c) above.

Landreth shall provide a monthly statement to the City for the items of expense set forth in paragraphs (a) and (b) above; such statements shall contain reasonable detail for each item of expense, including receipts or copies of invoices, and **such statements shall separate the items of expense as set forth in paragraphs (a) and (b) above.**

4.    <u>Services of Landreth</u>. During the term of this Agreement Landreth shall provide to the City consulting, development and marketing services which shall be designed to increase and promote the commercial, industrial and economic base of the City, including, but not limited to the following:

(a)    Advertise and otherwise promote the City and OIP;

(b)    Develop and implement a marketing strategy for the City and OIP;

(c)    Develop and implement a master plan for OIP in conjunction with the City;

(d)    Develop and implement a strategic plan for OIP which shall include a a statement of mission and goals, as well as financial considerations and projections;

(e)    Develop community relations and public awareness on behalf of the City;

(f)    Identify and rank potential users and companies for location within OIP;

(g)    Coordinate and cooperate with other units of government and industry, as well as other economic development agencies;

(h)    Field and respond to all inquiries, and provide all necessary information to all prospects;

(i)    Coordinate activities and work with industrial real estate brokers in the Chicago metropolitan area;

(j)    Maintain and operate an office within the City of Chicago for the promotion and development of OIP;

(k)    Provide regular written reports to the City, but not less frequently than quarterly, of all economic development activity **including the names of all industrial prospects.**

(k)    Perform all other services as outlined and contained in the written proposal of Plaza Property Advisors dated March 17, 2003; and

(l)    Perform such other services as the City may reasonably require to accomplish the objective of increasing the job base within the City by attracting industry and distribution centers to the City.

5.    Independent Contract. Landreth understands and agrees that his obligation under this Agreement is to serve the City for the promotion and development of commercial and industrial development. It is understood and agreed between the parties that all persons working for Landreth under this Agreement, if any, shall be employees of Landreth and shall be in no way considered employees of the City. Should any liability arise under the Illinois Worker's Compensation Act during any time that employees are working for Landreth, said employees are covered by the Illinois Worker's Compensation Act and are the employees of Landreth. Neither Landreth nor his employees shall hold himself or themselves out to be employees, agents, or servants of the City.

6.    Best Efforts. Landreth agrees to devote his best efforts to the City's interest and to endeavor in every way to make successful the promotion of the City as a significant commercial and industrial location.

7.    Revocation. The City understands the long-term nature of this Agreement and the long-term nature of economic development. Therefore, the City agrees and covenants not to revoke or rescind this agreement or to institute any proceeding or action to challenge the validity of this agreement or in any way to rescind, modify or alter said agreement, understanding that Landreth is relying upon the representations and financial commitment contained herein and has every right to do so. Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement my cancel this agreement for any reason by providing the other party with not less than thirty (30) days prior, written notice of cancellation.

8.    Waiver. Waiver by either party of a breach of any term, condition or covenant herein shall not be deemed a waiver of any other term or condition or covenant.

9.    Breach. Upon a breach of any term or provision of this Agreement, the non-breaching party shall immediately provide a written notice to the other party describing the nature of the breach and a request for its immediate cure. In the event that said breach has not been cured within thirty (30) days of the issuance of written notice as aforesaid, then the non-breaching party may take such action as it deems necessary for the specific performance of this Agreement or its termination.

Upon termination of this agreement, Landreth shall provide the City with a list of all industrial prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year 180 days of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof.

10.    Assignability.  It is agreed that neither party shall have the right to assign this Agreement, in whole or in part, without the written consent of the other party.

11.    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective assessors or assigns.

12.    Warranties.  The parties warrant and represent that :

a.    Each of the undersigned representatives of such party has been duly authorized by such party to execute this Agreement on behalf of such party;

b.    This Agreement is binding, valid and specifically enforceable according to its terms against each party;

c.    This Agreement does not violate any presently existing provision of law or any applicable order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality to which such party may be subject;

d.    This Agreement does not constitute a default under any indenture, mortgage, deed of trust, agreement or contract of any kind to which such party may be bound;

e.    There are no pending legal proceedings by any party against the other party.

13.    Headings.  The headings of the sections of this Agreement are for convenience and reference only and in no way define, extend, limit or describe the scope or intent of this Agreement or any provision hereof.

14.    Execution and Counterparts.  This Agreement may be executed in multiple identical counterparts and all of said counterparts shall, taken together, constitute the same agreement.

15.    Disclosure.  The parties have jointly utilized the law firm of Pool, Leigh & Fabricius with respect to this Agreement, and each party acknowledges this fact and hereby expressly authorizes such joint representation.  Each party also waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation.

Executed in duplicate this _____ day of _____, 2005, by authority of a resolution of the Council of the City and by Landreth.

City of Ottawa, Illinois


By:_____                    _____
            Its Mayor                                              John Colt Landreth


Attest:

                                        .

_____
Its Clerk


F:\Docs\ottawa\Contracts-Agreements\Landreth Consulting 8-05.doc

State of Illinois       )
                        )       SS
County of LaSalle       )

    I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that Robert M. Eschbach, personally known to me to be the Mayor of the City of Ottawa, Illinois, and Shelly L. Munks, personally known to me to be the Clerk of said City, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as Mayor and Clerk of said City, they signed and delivered said instrument in their official capacities as caused the corporate seal of said City be affixed thereto, pursuant to authority given by the Council said City, as the free and voluntary act and deed of said City, for the uses and purposes therein set forth.

    Given under my hand and notarial seal
this _____ day of _____, 2005.


_____
    Notary Public

7

State of Illinois    )
                     )    SS
County of            )

       I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that John Colt Landerth, personally known to me to be the same person whose names is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act and deed for the uses and purposes therein set forth.

       Given under my hand and notarial seal
this _____ day of _____, 2005.

_____
      Notary Public

F:\Docs\ottawa\Contracts-Agreements\Landreth Consulting 8-05.doc

November 18, 2005

The Honorable Robert M. Eschbach                    **VIA FACSIMILE**
Mayor                                               **and FDX**
City of Ottawa
301 West Madison Street
Ottawa, Illinois 61350

RE: Prospect List

Dear Bob:

Pursuant to the terms of the "Consulting, Development and Marketing Agreement between The City of Ottawa and John Colt Landreth executed on August 5, 2003, I am submitting the following list of prospects pursuant to the second section of Paragraph 9.

Due to the fact that, while we have been in the process of negotiating a contract extention, I have been working for the City as usual with The City's knowledge, we have had an implied contract through at least November 8, 2005.My submittal of the following list of prospects is well within the requirement of thirty (30) days from termination.

PROSPECTS

International Titanium Powder
Mortorcycle Tour Conversion (final payment due upon bldg. completion)
Varney Land Sale (an additional fee will be due when this property is developed)
Project Crunch (Snack Food Co.)
Project Searchlight
GE Plastics
Advantage Logistics



Honorable Robert M. Eschbach
Mayor of Ottawa
Page 2
November 18, 2005

| | |
|---|---|
| BLAIR Group DC | APL |
| Super Valu | Hub Group |
| TLC (Total Logistic Control) | Kuehne + Nagel |
| ABBA Plastics | Maersk |
| Aaron Equipment | New Breed |
| Vehicle Manufacturer (IDCEO) | Panalpina |
| Lowe's Distribution Center | Exel Logistics |
| Warehouse (broker D. Botthof) | Dayton Freight |
| Retail Co. DC (Staubach) | UPS |
| Heritage Harbor Ottawa (Heimsoth) | USF |
| Distribution Center CBRE (Frain) | CAT Logistics |
| Stock Seigle | NYK |
| George Weston Bakeries | |

I look forward to the opportunity to extend our contract. There is much work to do.

Sincerely yours,

John Colt Landreth

EXHIBIT N
COPY

## IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
## LASALLE COUNTY, ILLINOIS

FILED

APR — 4 2007

LA SALLE COUNTY CIRCUIT
(THIRTEENTH) JUDICIAL CIRCUIT

John Colt Landreth,                    )
                                       )
            Plaintiff,                 )
                                       )
    vs.                                )        No. 07-L-17
                                       )
City of Ottawa, Illinois,              )
a municipal corporation,               )
                                       )
            Defendant.                 )

### MOTION TO DISMISS

Now comes the Defendant, City of Ottawa, an Illinois municipal corporation, by its attorneys, Pool, Leigh & Kopko, P.C., pursuant to section 2-619 (9) of the Code of Civil Procedure (735 ILCS 5/2-619 (9)) and moves this Honorable Court to dismiss the Complaint of Plaintiff, and in support hereof states as follows:

<u>Count I</u>

1.  Count I of Plaintiff's Complaint seeks damages against the Defendant based upon the breach of a written contract (the "Agreement"). (See, Exhibit A of Plaintiff's Complaint).

2.  The contract is dated August 5, 2003.

3.  On August 5, 2003 section 8-1-7 (a) of the Illinois Municipal Code (65 ILCS 5/8-1-7 (a)) provided:

    § 8-1-7. (a) Except as provided otherwise in this Section, <u>no contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof.</u> However, pending the passage of the annual appropriation ordinance for any fiscal year, the corporate authorities may authorize heads

of departments or other separate agencies of the municipality to make necessary expenditures for the support thereof upon the basis of the appropriations of the preceding fiscal year. However, if it is determined by two-thirds vote of the corporate authorities then holding office at a regularly scheduled meeting of the corporate authorities that it is expedient and in the best public interest to begin proceedings for the construction of a needed public work, then the provisions of this section shall not apply to the extent that the corporate authorities may employ or contract for professional services necessary for the planning and financing of such public work. (emphasis supplied).

4. Attached hereto and incorporated herein by reference as Exhibit A is a certified copy of the Budget & Appropriation of the City of Ottawa for the fiscal year ending April 30, 2004.

5. The fiscal year of the City of Ottawa commences on May 1 of each year and ends on April 30 of the following year.

6. The Budget & Appropriation of the City of Ottawa for the fiscal year commencing May 1, 2003 and ending April 30, 2004 did not make an appropriation for the Agreement or any expense related thereto.

7. Without a prior appropriation for the Agreement or the expenses thereof, the Agreement is null and void.

8. Attached hereto and incorporated by reference as Exhibit B is the Affidavit of Shelly L. Munks, City Clerk of the City of Ottawa.

**Wherefore,** Defendant prays that Count I of Plaintiff's Complaint be dismissed with prejudice.

## Count II

1. Count II of Plaintiff's Complaint seeks damages against the Defendant based upon an alleged oral agreement to extend the term of the Agreement.

2. The Agreement provides in paragraph 2 thereof: "The initial term of this agreement shall be for twenty-four (24) months commencing, 2003, to and including, 2005. The initial term may be extended by **mutual, written agreement** of the parties." (emphasis supplied).

2

3. The Agreement commenced on August 5, 2003.

4. The Plaintiff alleges that on June 20, 2005 he and the Mayor Robert Eschbach agreed to extend the Agreement without change for an additional six months or until February 5, 2006. (See, Par. 10 of Count II of Plaintiff's Complaint).

5. Defendant had no duty or obligation to renew or extend the Agreement, and the Agreement expressly provided in paragraph 7 thereof: "Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement may cancel this agreement for any reason by providing the other party with not less than thirty (30 days prior, written notice of cancellation."

6. The Agreement expressly provided that any extension was required to be mutual and written.

7. Any agreement to extend the original Agreement required approval by the Council of the City of Ottawa.

8. Section 30.02 (B) of the Code of Ordinances of the City of Ottawa expressly provides:

   The Council shall make or authorize the making of all contracts, and no contract shall bind or be obligatory upon the city unless either made by ordinance or resolution adopted by the Council or reduced to writing and approved by the Council or expressly authorized by ordinance or resolution adopted by the Council.

9. Implied contracts are not recognized in cases involving municipalities.

10. Unless the power to bind a municipality in contract is expressly delegated to someone other than the corporate authority, only the corporate authority may authorize contracts.

11. The Agreement was never extended by subsequent agreement of the parties.

12. While the Council of the City of Ottawa did authorize a subsequent agreement with Plaintiff, the Plaintiff never executed the subsequent agreement and the Council repealed the authorization for the subsequent agreement.

13. Attached hereto and incorporated by reference as Exhibit B is the Affidavit of Shelly L. Munks, City Clerk of the City of Ottawa.

**Wherefore,** the Defendant prays that Count II of Plaintiff's Complaint be dismissed with prejudice.

<u>Count III</u>

1.  Count III of Plaintiff's Complaint seeks declaratory relief for compensation under the Agreement and any valid extension thereof, and in effect, a declaration that the Agreement was extended for compensatory purposes.

2.  In as much as the Agreement is null and void for the reasons set forth in Counts I and II of this motion, the Court should dismiss Count III of Plaintiff's Complaint.

Wherefore, Defendant prays that Count III of Plaintiff's Complaint be dismissed with prejudice.

**City of Ottawa, an Illinois
municipal corporation**

By: _____
One of its Attorneys

Keith R. Leigh
Anita L. Kopko
Pool, Leigh & Kopko, P.C
628 Columbus Street, Suite 208
Ottawa, IL 61350
Telephone: 815-434-0097
Email: poolleighlaw@mchsi.com

L:\Docs\ottawa\Landreth v. Ottawa\Pleadings\Motion to Dismiss 3-28-07.doc

4



# City of Ottawa

### Robert M. Eschbach
### Mayor

Year Ending

## April 30, 2004

# BUDGET & APPROPRIATION

Commissioners

Edward V. Whitney
Finance & General Administration

William E. Walsh
Streets & Public
Improvements

Dale F. Baxter
Public Health & Safety

Wayne Eichelkraut, Jr.
Public Property

**EXHIBIT A**

City of Otawa                           Revenue Estimates                    Fiscal year ending April 30, 2003

Estimated Revenue

**GENERAL CORPORATE FUND**

| Account | Description | Estimated Revenue |
|---|---|---|
| 001-001-31100 | PROPERTY TAX | 1,220,000 |
| 001-001-31200 | REPLACEMENT TAX | 123,000 |
| 001-001-31301 | UTILITY TAX | 980,000 |
| 001-001-31500 | RETAILERS OCCUPATIONAL SALES TAX | 3,500,000 |
| 001-001-31600 | STATE INCOME TAX | 1,150,000 |
| 001-001-31700 | GAMBLING TAX | 6,000 |
| 001-002-32104 | MISCELLANEOUS LICENSES | 750 |
| 001-002-32105 | PEDDLERS LICENSE | 4,000 |
| 001-002-32106 | LIQUOR LICENSE | 30,000 |
| 001-002-32110 | SCAVENGER LICENSE | 350 |
| 001-002-32111 | SIGN FILING FEE | 550 |
| 001-002-32112 | TV FRANCHISE FEE | 160,000 |
| 001-002-32113 | PLUMBER LICENSE | 1,500 |
| 001-002-32116 | ARCADE LICENSE | 500 |
| 001-002-32118 | ELECTRICAL LICENSE | 18,000 |
| 001-002-32120 | RAFFLE LICENSE | 500 |
| 001-002-32121 | USE OF SIDEWALK LICENSE | 150 |
| 001-002-32124 | TREE CARE LICENSE | 400 |
| 001-002-32125 | CONTRACTOR LICENSE | 1,000 |
| 001-002-32201 | ELECTRICAL TEST FEE | 1,000 |
| 001-002-32202 | DOG RELEASE FEES | 3,000 |
| 001-002-32203 | PLUMBING PERMIT | 8,000 |
| 001-002-32204 | REZONING FILING FEE | 1,600 |
| 001-002-32205 | BUILDING PERMIT | 35,000 |
| 001-002-32206 | SWIMMING POOL PERMIT | 400 |
| 001-002-32207 | WRECKING PERMIT | 750 |
| 001-002-32210 | ELECTRICAL PERMIT | 10,000 |
| 001-002-32211 | PROPERTY VACATION PERMIT | 1,500 |
| 001-002-32212 | HOME OCCUPATION/BUSINESS PERMIT | 150 |
| 001-002-32214 | 1.5 MILE ZONING/LAND USE PERMIT | 1,000 |
| 001-002-32215 | GROWTH IMPACT FEES | 40,000 |
| 001-003-32208 | PARKING METER FEES | 750 |
| 001-003-32209 | REGISTRAR FEES | 8,000 |
| 001-003-32301 | MAGISTRATE FINES | 185,000 |
| 001-003-32303 | PARKING FINES | 40,000 · |
| 001-003-32304 | LIQUOR FINES | 2,000 |
| 001-003-33210 | HIGHWAY MAINTENANCE | 28,000 |
| 001-003-33220 | TRAFFIC LIGHT REIMBURSEMENT | 45,000 |
| 001-003-33230 | POLICE & FIRE TRAINING | 10,000 |
| 001-003-33231 | LAW ENFORCEMENT GRANT | 30,230 |
| 001-003-33240 | GRANTS | 442,500 |
| 001-006-34110 | POLICE MISCELLANEOUS | 5,000 |
| 001-006-34130 | GROUP INSURANCE PAYMENTS | 380,000 |
| 001-006-34131 | GROUP INSURANCE PAYMENTS-W&S FUND | 200,000 |
| 001-006-34150 | TELEPHONE FRANCHISE | 58,000 |
| 001-006-34225 | SPECIAL DUTY OFFICERS | 160,000 |
| 001-006-34310 | TREE REMOVAL | 5,000 |
| 001-006-35101 | RECOUP LIENS | 500 |
| 001-006-36111 | INTEREST ON INVESTMENTS | 25,000 |
| 001-006-36113 | TREE PROGRAM DONATIONS  - | 7,500 |

City of Otawa                          Revenue Estimates          Fiscal year ending April 30, 2003

|  |  | Estimated Revenue |
|---|---|---|
| 001-006-36201 | RENTS | 500 |
| 001-006-36401 | SALE OF PROPERTY | - |
| 001-006-36402 | SALE OF EQUIPMENT | 500 |
| 001-006-36501 | REDDICK MANSION UTILITIES | 7,000 |
| 001-006-36502 | MUSEUM REIMBURSEMENT | 2,900 |
| 001-006-36650 | AMBULANCE FEES | 326,801 |
| 001-006-36701 | OTHER | 101,801 |
| 001-006-36706 | SKATEBOARD POP CONCESSION | - |
| 001-006-36711 | DONATIONS-PARKS | 2,500 |
| 001-006-36712 | DONATIONS-RIVERWALK | 50,000 |
| 001-006-36713 | DONATIONS-LINCOLN/DOUGLAS STATUE | 65,000 |
| 001-006-36716 | DONATIONS/YEAR OF LINCOLN | - |
| 001-006-36717 | DONATIONS-STR LIGHTING PROJECT | - |
| 001-006-36718 | DONATIONS-TOLL HOUSE PROJECT | 50,000 |
| 001-006-39300 | BOND SALE PROCEEDS | 200,000 |
|  | GENERAL CORPORATE FUND | 9,738,582 |

|  | CROSSING GUARD FUND |  |
|---|---|---|
| 101-001-31100 | PROPERTY TAX | 36,000 |
| 101-006-36111 | INTEREST ON INVESTMENTS | 50 |
|  | CROSSING GUARD FUND | 36,050 |

|  | AUDITING FUND |  |
|---|---|---|
| 102-001-31100 | PROPERTY TAX | 30,000 |
| 102-006-36111 | INTEREST ON INVESTMENTS | 200 |
| 102-006-36701 | OTHER | 8,500 |
|  | AUDITING FUND | 38,700 |

|  | ILL MUNICIPAL RETIREMENT FUND |  |
|---|---|---|
| 103-001-31100 | PROPERTY TAX | 341,000 |
| 103-001-31200 | REPLACEMENT TAX | 35,000 |
| 103-006-36111 | INTEREST ON INVESTMENTS | 10,000 |
| 103-006-36701 | OTHER | 4,000 |
|  | ILL MUNICIPAL RETIREMENT FUND | 390,000 |

|  | PUBLIC LIABILITY INSURANCE FUND |  |
|---|---|---|
| 104-001-31100 | PROPERTY TAX | 192,000 |
| 104-006-36111 | INTEREST ON INVESTMENTS | 10,000 |
| 104-006-36701 | OTHER | - |
|  | PUBLIC LIABILITY INSURANCE FUND | 202,000 |

|  | CIVIL DEFENSE FUND |  |
|---|---|---|
| 105-001-31100 | PROPERTY TAX | 8,200 |
| 105-006-36111 | INTEREST ON INVESTMENTS | 350 |
| 105-006-36701 | OTHER | - |
|  | CIVIL DEFENSE FUND | 8,550 |

| | | Estimated Revenue |
|---|---|---:|
| | **MOTOR FUEL TAX FUND** | |
| 107-001-31800 | MOTOR FUEL TAX ALLOCATIONS | 511,000 |
| 107-006-36111 | INTEREST ON INVESTMENTS | 5,500 |
| 107-006-36701 | OTHER | - |
| | **MOTOR FUEL TAX FUND** | **516,500** |
| | | |
| | **FOREIGN FIRE INSURANCE FUND** | |
| 108-006-36701 | OTHER | 19,000 |
| | | |
| | **PLAYGROUND & RECREATION FUND** | |
| 109-001-31100 | PROPERTY TAX | 150,000 |
| 109-006-36111 | INTEREST ON INVESTMENTS | 3,000 |
| 109-006-36220 | PLAY & REC CONCESSIONS | 19,600 |
| 109-006-36221 | PLAY & REC PARTICIPANT FEES | 12,800 |
| 109-006-36225 | ADULT SOFTBALL PROGRAM | 22,000 |
| 109-006-36226 | BASKETBALL PROGRAM | 4,000 |
| 109-006-36227 | TENNIS PROGRAM | - |
| 109-006-36228 | EVENING RECREATION PROGRAM | 1,200 |
| 109-006-36229 | MINOR LEAGUE PROGRAM | - |
| 109-006-36230 | CRAFT PROGRAM | - |
| 109-006-36231 | SPECIAL SUMMER PROGRAMS | - |
| 109-006-36232 | YOUTH ORGANIZATION PROGRAMS | - |
| 109-006-36701 | OTHER | - |
| | **PLAYGROUND & RECREATION FUND** | **212,600** |
| | | |
| | **REDDICK LIBRARY FUND** | |
| 110-001-31100 | PROPERTY TAX | 343,240 |
| 110-001-31200 | REPLACEMENT TAX | 24,989 |
| 110-003-33240 | GRANTS | 22,800 |
| 110-006-36111 | INTEREST ON INVESTMENTS | 8,000 |
| 110-006-36676 | LEGACIES & BEQUESTS | 3,500 |
| 110-006-36701 | OTHER | 30,000 |
| 110-006-39200 | PERMANENT TRANSFERS | 69,011 |
| | **REDDICK LIBRARY FUND** | **501,540** |
| | | |
| | **INDUSTRIAL DEVEL COMM FUND** | |
| 111-006-36111 | INTEREST ON INVESTMENTS | 200 |
| 111-006-36114 | LOAN INTEREST ON LOAN | 800 |
| | **INDUSTRIAL DEVEL COMM FUND** | **1,000** |
| | | |
| | **POLICE DEPT DRUG EDUCATION FUND** | |
| 112-006-36111 | INTEREST ON INVESTMENTS | 2,000 |
| 112-006-36701 | OTHER | 35,000 |
| | **POLICE DEPT DRUG EDUCATION FUND** | **37,000** |
| | | |
| | **911 EMERGENCY PHONE SYSTEM FUND** | |
| 113-006-36111 | INTEREST ON INVESTMENTS | 2,500 |
| 113-006-36701 | OTHER | 137,500 |
| | **911 EMERGENCY PHONE SYSTEM FUND** | **140,000** |

City of Otawa                      Revenue Estimates              Fiscal year ending April 30, 2003

                                                                          Estimated Revenue

|  |  |  |
|---|---|---:|
|  | FIRE DEPT FIRST AID FUND |  |
| 115-006-36111 | INTEREST ON INVESTMENTS | 1,500 |
| 115-006-36701 | OTHER | 3,500 |
|  | FIRE DEPT FIRST AID FUND | 5,000 |
|  |  |  |
|  | POLICE D.A.R.E. FUND |  |
| 116-006-36111 | INTEREST ON INVESTMENTS | 15 |
| 116-006-36701 | OTHER | 6,000 |
|  | POLICE D.A.R.E. FUND | 6,015 |
|  |  |  |
|  | REVOLVING LOAN FUND |  |
| 117-006-36111 | INTEREST ON INVESTMENTS | 3,000 |
| 117-006-36114 | LOAN INTEREST ON LOAN | 10,000 |
|  | REVOLVING LOAN FUND | 13,000 |
|  |  |  |
|  | POLICE FEDERAL DRUG FUND |  |
| 118-006-36111 | INTEREST ON INVESTMENTS | 225 |
| 118-006-36701 | OTHER | - |
|  | POLICE FEDERAL DRUG FUND | 225 |
|  |  |  |
|  | MAIN STREET LOAN FUND |  |
| 119-006-36111 | INTEREST ON INVESTMENTS | 500 |
| 119-006-36114 | LOAN INTEREST ON LOAN | 800 |
|  | MAIN STREET LOAN FUND | 1,300 |
|  |  |  |
|  | WASHINGTON PARK STATUE FUND |  |
| 129-003-33240 | GRANTS | - |
| 129-006-36111 | INTEREST ON INVESTMENTS | 500 |
| 129-006-36701 | OTHER | 67,500 |
|  | WASHINGTON PARK STATUE FUND | 68,000 |
|  |  |  |
|  | WEST LAFAYETTE STREET PROJECT FUND |  |
| 130-006-36111 | INTEREST ON INVESTMENTS | 10 . |
|  | WEST LAFAYETTE STREET PROJECT FUND | 10 |
|  |  |  |
|  | ILL AVENUE SEWER SEPARATION FUND |  |
| 131-006-36111 | INTEREST ON INVESTMENTS | 100 |
|  | ILL AVENUE SEWER SEPARATION FUND | 100 |
|  |  |  |
|  | POLICE DRUG LAB FUND |  |
| 132-006-36111 | INTEREST ON INVESTMENTS | 250 |
| 132-006-36701 | OTHER | 1,000 |
|  | POLICE DRUG LAB FUND | 1,250 |
|  |  |  |
|  | POLICE PENSION FUND |  |
| 133-001-31100 | PROPERTY TAX | 200,000 |
| 133-006-31200 | REPLACEMENT TAX | 8,500 |
|  | POLICE PENSION FUND | 208,500 |

City of Otawa                     Revenue Estimates              Fiscal year ending April 30, 2003

Estimated Revenue

|  |  | FIRE PENSION FUND |  |
|---|---|---|---|
| 134-001-31100 |  | PROPERTY TAX | 336,304 |
| 134-006-31200 |  | REPLACEMENT TAX | 26,000 |
|  |  | FIRE PENSION FUND | 362,304 |
|  |  | DUI EQUIPMENT FUND |  |
| 135-006-36111 |  | INTEREST ON INVESTMENTS | 225 |
| 135-006-36701 |  | OTHER | 13,775 |
|  |  | DUI EQUIPMENT FUND | 14,000 |
|  |  | PUBLIC BENEFIT FUND |  |
| 202-001-31100 |  | PROPERTY TAX | 98,000 |
| 202-006-36111 |  | INTEREST ON INVESTMENTS | 3,000 |
|  |  | PUBLIC BENEFIT FUND | 101,000 |
|  |  | CORP PURPOSE BOND & INT FUND |  |
| 206-001-31100 |  | PROPERTY TAX | 334,000 |
| 206-006-36111 |  | INTEREST ON INVESTMENTS | 3,000 |
|  |  | CORP PURPOSE BOND & INT FUND | 337,000 |
|  |  | TIF DRAINAGE BOND & INT FUND |  |
| 207-003-39200 |  | PERMANENT TRANSFER | 96,300 |
| 207-006-36111 |  | INTEREST ON INVESTMENTS | 2,200 |
|  |  | TIF DRAINAGE BOND & INT FUND | 98,500 |
|  |  | SERIES 2001 BOND & INT FUND |  |
| 209-001-31100 |  | PROPERTY TAX | 208,730 |
| 209-006-36111 |  | INTEREST ON INVESTMENTS | 1,000 |
|  |  | SERIES 2001 BOND & INT FUND | 209,730 |
|  |  | STEVENSON ROAD IMPROVEMENT FUND |  |
| 319-006-36111 |  | INTEREST ON INVESTMENTS | 175 |
|  |  | STEVENSON ROAD IMPROVEMENT FUND | 175 |
|  |  | ANITA DRIVE PAVING FUND |  |
| 320-006-36111 |  | INTEREST ON INVESTMENTS | 225 |
| 320-006-36302 |  | INTEREST RECD/SPEC ASSESSMENTS | 250 |
|  |  | ANITA DRIVE PAVING FUND | 475 |
|  |  | KANSAS STREET PAVING FUND |  |
| 321-006-36111 |  | INTEREST ON INVESTMENTS | 100 |
| 321-006-36302 |  | INTEREST RECD/SPEC ASSESSMENTS | 400 |
|  |  | KANSAS STREET PAVING FUND | 500 |
|  |  | PINE STREET PAVING FUND |  |
| 322-006-36111 |  | INTEREST ON INVESTMENTS | 150 |
| 322-006-36302 |  | INTEREST RECD/SPEC ASSESSMENTS | - |
|  |  | PINE STREET PAVING FUND | 150 |

City of Otawa                         Revenue Estimates          Fiscal year ending April 30, 2003

Estimated Revenue

|  | TIF DRAINAGE CAP PROJECT FUND | |
|---|---|---|
| 323-006-36111 | INTEREST ON INVESTMENTS | 400 |
|  | TIF DRAINAGE CAP PROJECT FUND | 400 |
|  | | |
|  | MAUDELLE ADDITION PAVING FUND | |
| 324-006-36111 | INTEREST ON INVESTMENTS | - |
| 324-006-36301 | SPECIAL ASSESSMENTS | - |
| 324-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 375 |
|  | MAUDELLE ADDITION PAVING FUND | 375 |
|  | | |
|  | ILL ELM PAVING FUND | |
| 325-006-36111 | INTEREST ON INVESTMENTS | 45 |
| 325-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 30 |
|  | ILL ELM PAVING FUND | 75 |
|  | | |
|  | PORTER STREET PAVING FUND | |
| 326-006-36111 | INTEREST ON INVESTMENTS | 50 |
| 326-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 75 |
|  | PORTER STREET PAVING FUND | 125 |
|  | | |
|  | ELM KANSAS PAVING FUND | |
| 327-006-36111 | INTEREST ON INVESTMENTS | 25 |
| 327-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 60 |
|  | ELM KANSAS PAVING FUND | 85 |
|  | | |
|  | FIFTH AVE SANITARY SEWER FUND | |
| 328-006-36111 | INTEREST ON INVESTMENTS | 5 |
| 328-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 195 |
|  | FIFTH AVE SANITARY SEWER FUND | 200 |
|  | | |
|  | CATHERINE ST SPEC ASSMNT FUND | |
| 329-006-36111 | INTEREST ON INVESTMENTS | 40 |
| 329-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 710 |
|  | CATHERINE ST SPEC ASSMNT FUND | 750 |
|  | | |
|  | HURON STREET ROADWAY FUND | |
| 330-006-36111 | INTEREST ON INVESTMENTS | 10 |
| 330-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 665 |
|  | HURON STREET ROADWAY FUND | 675 |
|  | | |
|  | FOX RIVER PARK PROJECT FUND | |
| 331-006-36111 | INTEREST ON INVESTMENTS | 1,325 |
| 331-006-36701 | OTHER | - |
| 331-006-36712 | DONATIONS-RIVERWALK | - |
| 331-006-36714 | DONATIONS-FOX RIVER PARK | - |
|  | FOX RIVER PARK PROJECT FUND | 1,325 |
|  | | |
|  | BELLEVUE AVE ROADWAY FUND | |
| 332-006-36111 | INTEREST ON INVESTMENTS | 500 |
| 332-006-36302 | INTEREST RECD/SPEC ASSESSMENTS | 4,350 |

City of Otawa                     Revenue Estimates          Fiscal year ending April 30, 2003

| | | Estimated Revenue |
|---|---|---|
| 332-006-39200 | PERMANENT TRANSFER | - |
| | BELLEVUE AVE ROADWAY FUND | 4,850 |
| | | |
| | SERIES 2001-02 BOND PROJECT FUND | |
| 333-006-36111 | INTEREST ON INVESTMENTS | 1,000 |
| 333-006-36701 | OTHER | - |
| | SERIES 2001-02 BOND PROJECT FUND | 1,000 |
| | | |
| | OTTAWA VISITORS CENTER FUND | |
| 334-003-33240 | GRANTS | - |
| 334-006-36111 | INTEREST ON INVESTMENTS | - |
| 334-006-36675 | HOTEL MOTEL TAX | 205,540 |
| 334-006-36701 | OTHER | 888 |
| | OTTAWA VISITORS CENTER FUND | 206,428 |
| | | |
| | TIF DISTRICT 1/I-80 NORTH | |
| 501-001-31100 | PROPERTY TAX | 675,000 |
| 501-001-31500 | RETAILERS OCCUPATIONAL SALES TAX | 45,000 |
| 501-006-36111 | INTEREST ON INVESTMENTS | 8,000 |
| | TIF DISTRICT 1/I-80 NORTH | 728,000 |
| | | |
| | TIF DISTRICT 2/ROUTE 6 EAST | |
| 502-001-31100 | PROPERTY TAX | 265,000 |
| 502-001-31200 | RETAILERS OCCUPATIONAL SALES TAX | 135,000 |
| 502-006-36111 | INTEREST ON INVESTMENTS | 3,500 |
| | TIF DISTRICT 2/ROUTE 6 EAST | 403,500 |
| | | |
| | TIF DISTRICT 3/DOWNTOWN | |
| 503-001-31100 | PROPERTY TAX | 25,000 |
| 503-001-31200 | RETAILERS OCCUPATIONAL SALES TAX | 6,000 |
| 503-006-36111 | INTEREST ON INVESTMENTS | - |
| | TIF DISTRICT 3/DOWNTOWN | 31,000 |
| | | |
| | TIF DISTRICT 4/OTTAWA INDUSTRIAL PARK | |
| 504-001-31100 | PROPERTY TAX | - |
| 504-001-31200 | RETAILERS OCCUPATIONAL SALES TAX | - |
| 504-003-33240 | GRANTS | 660,000 |
| 504-006-36111 | INTEREST ON INVESTMENTS | - |
| | TIF DISTRICT 4/OTTAWA INDUSTRIAL PARK | 660,000 |
| | | |
| | WATER & SEWER FUND | |
| 601-003-33240 | GRANTS | 78,000 |
| 601-004-34401 | WATER REVENUE | 1,450,000 |
| 601-004-34402 | SEWER REVENUE | 655,000 |
| 601-004-34403 | PENALTY REVENUE | 35,000 |
| 601-004-34404 | TAPPING FEES | 3,500 |
| 601-004-34405 | SEWER EXTENSION FEES | 1,500 |
| 601-004-34406 | WATER MAIN EXTENSIONS | 500 |
| 601-004-34407 | BULK WATER REVENUE | 1,000 |
| 601-004-34408 | SEWER ASSESSMENT REVENUE | 350 |

City of Otawa                          Revenue Estimates              Fiscal year ending April 30, 2003

|  |  | Estimated Revenue |
|---|---|---|
| 601-004-34409 | NEW WATER METER REVENUE | 15,000 |
| 601-004-34412 | BASIC WATER REVENUE | 375,000 |
| 601-004-34413 | BASIC SEWER REVENUE | 360,000 |
| 601-006-36402 | SALE OF EQUIPMENT | 2,000 |
| 601-006-36701 | OTHER | 5,000 |
| 601-006-39100 | NON OPERATING INTEREST | 45,000 |
| 601-006-39300 | BOND SALE PROCEEDS | 1,500,000 |
|  | **WATER & SEWER FUND** | **4,526,850** |
|  | | |
|  | SWIMMING POOL | |
| 603-006-36210 | POOL CONCESSIONS | 28,000 |
| 603-006-36211 | POOL GATE RECEIPTS | 57,000 |
| 603-006-36701 | OTHER | - |
| 603-006-39100 | NON OPERATING INTEREST | - |
| 603-006-39200 | PERMANENT TRANSFER | 35,000 |
|  | **SWIMMING POOL** | **120,000** |
|  | | |
|  | CANAL RENTAL & PURCHASE FUND | |
| 604-006-36201 | RENTS | 3,050 |
| 604-006-39100 | NON OPERATING INTEREST | 400 |
|  | **CANAL RENTAL & PURCHASE FUND** | **3,450** |
|  | | |
|  | FRIENDLY CITY RIVERFEST FUND | |
| 605-006-36701 | OTHER | 325,000 |
| 605-006-39100 | NON OPERATING INTEREST | 250 |
|  | **FRIENDLY CITY RIVERFEST FUND** | **325,250** |
|  | | |
|  | HOTEL MOTEL TAX FUND | |
| 606-006-36701 | OTHER | 183,400 |
| 606-006-36704 | SPECIAL EVENTS REVENUE | 21,200 |
| 606-006-36708 | THUNDER MONEY | 12,000 |
| 606-006-39100 | NON OPERATING INTEREST | 500 |
|  | **HOTEL MOTEL TAX FUND** | **217,100** |
|  | | |
|  | Grand total | 20,500,194 |

| | Estimated Revenue |
|---|---|
| GENERAL CORPORATE FUND | 9,738,582 |
| CROSSING GUARD FUND | 36,050 |
| AUDITING FUND | 38,700 |
| ILL MUNICIPAL RETIREMENT FUND | 390,000 |
| PUBLIC LIABILITY INSURANCE FUND | 202,000 |
| CIVIL DEFENSE FUND | 8,550 |
| MOTOR FUEL TAX FUND | 516,500 |
| FOREIGN FIRE INSURANCE FUND | 19,000 |
| PLAYGROUND & RECREATION FUND | 212,600 |
| REDDICK LIBRARY FUND | 501,540 |
| INDUSTRIAL DEVEL COMM FUND | 1,000 |
| POLICE DEPT DRUG EDUCATION FUND | 37,000 |
| 911 EMERGENCY PHONE SYSTEM FUND | 140,000 |
| FIRE DEPT FIRST AID FUND | 5,000 |
| POLICE D.A.R.E. FUND | 6,015 |
| REVOLVING LOAN FUND | 13,000 |
| POLICE FEDERAL DRUG FUND | 225 |
| MAIN STREET LOAN FUND | 1,300 |
| WASHINGTON PARK STATUE FUND | 68,000 |
| WEST LAFAYETTE STREET PROJECT FUND | 10 |
| ILL AVENUE SEWER SEPARATION FUND | 100 |
| POLICE DRUG LAB FUND | 1,250 |
| POLICE PENSION FUND | 208,500 |
| FIRE PENSION FUND | 362,304 |
| DUI EQUIPMENT FUND | 14,000 |
| PUBLIC BENEFIT FUND | 101,000 |
| CORP PURPOSE BOND & INT FUND | 337,000 |
| TIF DRAINAGE BOND & INT FUND | 98,500 |
| SERIES 2001 BOND & INT FUND | 209,730 |
| STEVENSON ROAD IMPROVEMENT FUND | 175 |
| ANITA DRIVE PAVING FUND | 475 |
| KANSAS STREET PAVING FUND | 500 |
| PINE STREET PAVING FUND | 150 |
| TIF DRAINAGE CAP PROJECT FUND | 400 |
| MAUDELLE ADDITION PAVING FUND | 375 |
| ILL ELM PAVING FUND | 75 . |
| PORTER STREET PAVING FUND | 125 |
| ELM KANSAS PAVING FUND | 85 |
| FIFTH AVE SANITARY SEWER FUND | 200 |
| CATHERINE ST SPEC ASSMNT FUND | 750 |
| HURON STREET ROADWAY FUND | 675 |
| FOX RIVER PARK PROJECT FUND | 1,325 |
| BELLEVUE AVE ROADWAY FUND | 4,850 |
| SERIES 2001-02 BOND PROJECT FUND | 1,000 |
| OTTAWA VISITORS CENTER FUND | 206,428 |
| TIF DISTRICT 1/I-80 NORTH | 728,000 |
| TIF DISTRICT 2/ROUTE 6 EAST | 403,500 |
| TIF DISTRICT 3/DOWNTOWN | 31,000 |
| TIF DISTRICT 4/OTTAWA INDUSTRIAL PARK | 660,000 |
| WATER & SEWER FUND | 4,526,850 |
| SWIMMING POOL | 120,000 |

City of Otawa                     Revenue Estimates            Fiscal year ending April 30, 2003

|  | Estimated Revenue |
|---|---|
| CANAL RENTAL & PURCHASE FUND | 3,450 |
| FRIENDLY CITY RIVERFEST FUND | 325,250 |
| HOTEL MOTEL TAX FUND | 217,100 |
|  | 20,500,194 |

City of Ottawa

· EXHIBIT A

5/7/03

|  |  | Budget |
|---|---|---|
| | **GENERAL CORPORATE FUND** | |
| | **MAYOR** | |
| 001-110-110 | ELECTED OFFICIAL | 46,000 |
| 001-110-140 | CLERICAL | 72,000 |
| 001-110-150 | PROFESSIONAL | 35,000 |
| 001-110-170 | PART TIME | 29,000 |
| 001-110-240 | DUES, EDUCATION, SEMINARS | 5,000 |
| 001-110-310 | OFFICE SUPPLIES | 1,000 |
| 001-110-320 | OPERATING SUPPLIES | 10,000 |
| 001-110-342 | TELEPHONE & PAGER EXPENSE | 600 |
| 001-110-344 | GASOLINE & DIESEL FUEL | 1,000 |
| 001-110-352 | MISCELLANEOUS | 10,000 |
| 001-110-740 | EQUIPMENT | 3,000 |
| | **MAYOR** | **212,600** |
| | | |
| | **LIQUOR COMMISSIONER** | |
| 001-111-110 | ELECTED OFFICIAL | 4,000 |
| 001-111-140 | CLERICAL | 400 |
| | **LIQUOR COMMISSIONER** | **4,400** |
| | | |
| | **FIRE & POLICE COMMISSION** | |
| 001-112-240 | DUES, EDUCATION, SEMINARS | 600 |
| 001-112-310 | OFFICE SUPPLIES | 200 |
| 001-112-320 | OPERATING SUPPLIES | 200 |
| 001-112-345 | PUBLISHING | 3,000 |
| 001-112-352 | MISCELLANEOUS | 1,000 |
| 001-112-410 | PROFESSIONAL SERVICES | 8,000 |
| | **FIRE & POLICE COMMISSION** | **13,000** |
| | | |
| | **CIVIL SERVICE COMMISSION** | |
| 001-116-320 | OPERATING SUPPLIES | 200 |
| 001-116-345 | PUBLISHING | 2,000 |
| 001-116-352 | MISCELLANEOUS | 100 |
| 001-116-410 | PROFESSIONAL SERVICES | 4,000 |
| | **CIVIL SERVICE COMMISSION** | **6,300** |
| | | |
| | **GENERAL ADMINISTRATION** | |
| 001-120-120 | ADMINISTRATIVE | 80,000 |
| 001-120-140 | CLERICAL | 38,665 |
| 001-120-170 | PART TIME | 5,000 |
| 001-120-180 | OVERTIME | 1,500 |
| 001-120-230 | CLOTHING REIMBURSEMENT | 3,000 |
| 001-120-240 | DUES, EDUCATION, SEMINARS | 15,000 |
| 001-120-25001 | GI - ADMINSITRATION EXPENSE | 38,000 |
| 001-120-25002 | GI - REVIEW SERVICE | 4,000 |
| 001-120-25003 | GI - TRANSPLANT PREMIUM | 20,000 |
| 001-120-25004 | GI - LIFE INSURANCE PREMIUM | 23,000 |
| 001-120-25005 | GI - EMPLOYEE ASSITANCE PLAN | 4,000 |
| 001-120-25006 | GI - STOP LOSS INSURANCE | 331,500 |
| 001-120-25007 | GI - TAX SAVER SELECT PREMIUM | 1,000 |
| 001-120-25030 | GI - CLAIM EXPENSE | 1,120,000 |
| 001-120-25031 | GI - STOP RECOVERIES | (150,000) |
| 001-120-25032 | GI - RX CARD BENEFIT | 165,000 |
| 001-120-280 | UNEMPLOYMENT | 20,000 |
| 001-120-310 | OFFICE SUPPLIES | 15,000 |
| 001-120-320 | OPERATING SUPPLIES | 10,000 |
| 001-120-330 | REPAIRS & MAINTENANCE | 2,500 |
| 001-120-342 | TELEPHONE & PAGER EXPENSE | 12,500 |
| 001-120-343 | POSTAGE | 13,000 |
| 001-120-345 | PUBLISHING | 7,500 |
| 001-120-34501 | PUBLISHING/PROMOTIONS | 5,000 |
| 001-120-352 | MISCELLANEOUS | 20,000 |

City of Ottawa                                    EXHIBIT A                                              5/7/03

|  |  | Budget |
|---|---|---|
| 001-120-410 | PROFESSIONAL SERVICES | 60,000 |
| 001-120-447 | ALLOCATIONS & SUBSIDIES | 5,000 |
| 001-120-44705 | ALLOCATIONS/RIVER RESCUE | 5,000 |
| 001-120-44707 | ALLOCATIONS/LABOR OF LOVE | 2,000 |
| 001-120-44708 | ALLOCATIONS/SENIOR SERVICES | 3,000 |
| 001-120-44710 | SUBSIDY / TAXI CAB | 18,000 |
| 001-120-44720 | ALLOCATIONS/RIORDAN SWIMMING POOL | 35,000 |
| 001-120-450 | LEGAL FEES | 210,000 |
| 001-120-451 | EQUIPMENT LEASES | 2,500 |
| 001-120-453 | OPERATING LEASE | 5,500 |
| 001-120-710 | LAND AND OPTIONS | 156,000 |
| 001-120-740 | EQUIPMENT | 25,000 |
| 001-120-910 | BOISE CASCADE SUBSIDY AGREEMENT | 69,000 |
|  | GENERAL ADMINISTRATION | 2,401,165 |

|  | COMM ACCOUNTS & FINANCE |  |
|---|---|---|
| 001-126-110 | ELECTED OFFICIAL | 7,800 |
| 001-126-240 | DUES, EDUCATION, SEMINARS | 2,000 |
| 001-126-310 | OFFICE SUPPLIES | 500 |
| 001-126-342 | TELEPHONE & PAGER EXPENSE | 1,500 |
| 001-126-344 | GASOLINE & DIESEL FUEL | 700 |
|  | COMM ACCOUNTS & FINANCE | 12,500 |

|  | COMMUNITY DEVELOPMENT |  |
|---|---|---|
| 001-131-140 | CLERICAL | 37,000 |
| 001-131-150 | PROFESSIONAL | 129,000 |
| 001-131-160 | OTHER EMPLOYEES | 54,000 |
| 001-131-170 | PART TIME | 5,000 |
| 001-131-210 | MEAL ALLOWANCE | 500 |
| 001-131-240 | DUES, EDUCATION, SEMINARS | 4,000 |
| 001-131-310 | OFFICE SUPPLIES | 2,000 |
| 001-131-330 | REPAIRS & MAINTENANCE | 500 |
| 001-131-342 | TELEPHONE & PAGER EXPENSE | 1,200 |
| 001-131-344 | GASOLINE & DIESEL FUEL | 4,000 |
| 001-131-345 | PUBLISHING | 2,000 |
| 001-131-352 | MISCELLANEOUS | 1,000 |
| 001-131-410 | PROFESSIONAL SERVICES | 80,000 |
| 001-131-421 | CONTRACTUAL/TREE REMOVAL PROGR | 50,000 |
| 001-131-450 | LEGAL FEES | 1,000 |
| 001-131-451 | EQUIPMENT LEASES | 1,000 |
| 001-131-740 | EQUIPMENT | 12,000 |
| 001-131-750 | CONSTRUCTION IN PROGRESS | 1,000 |
| 001-131-75004 | CIP/STORM SEWER IMPROVEMENTS | 100,000 |
| 001-131-75005 | CIP/IV RAIL STUDY | 140,000 |
| 001-131-75006 | CIP/STOMSEWER MASTER PLANS | 5,000 |
| 001-131-75008 | CIP/STORM SEWER MAINTENANCE | 20,000 |
|  | COMMUNITY DEVELOPMENT | 650,200 |

|  | POLICE |  |
|---|---|---|
| 001-310-120 | ADMINISTRATIVE | 66,560 |
| 001-310-140 | CLERICAL | 320,000 |
| 001-310-160 | OTHER EMPLOYEES | 1,400,000 |
| 001-310-180 | OVERTIME | 120,000 |
| 001-310-190 | SPECIAL DUTY | 140,660 |
| 001-310-230 | CLOTHING ALLOWANCE | 25,000 |
| 001-310-240 | DUES, EDUCATION, SEMINARS | 35,000 |
| 001-310-310 | OFFICE SUPPLIES | 5,500 |
| 001-310-320 | OPERATING SUPPLIES | 18,000 |
| 001-310-330 | REPAIRS & MAINTENANCE | 5,000 |
| 001-310-331 | REPAIRS & MAINTENANCE-EQUIPMENT | 16,000 |
| 001-310-342 | TELEPHONE & PAGER EXPENSE | 30,000 |
| 001-310-343 | POSTAGE | 300 |

City of Ottawa                                EXHIBIT A                                               5/7/03

|  |  | Budget |
|---|---|---|
| 001-310-344 | GASOLINE & DIESEL FUEL | 40,000 |
| 001-310-345 | PUBLISHING | 200 |
| 001-310-352 | MISCELLANEOUS | 300 |
| 001-310-410 | PROFESSIONAL SERVICES | 12,000 |
| 001-310-420 | CONTRACTUAL/ANIMAL CONTROL | 5,000 |
| 001-310-422 | GRANT EXP/ILL VIOLENCE PREVENT | 11,000 |
| 001-310-42201 | GRANT EXP/TOBACCO GRANT | 200 |
| 001-310-740 | EQUIPMENT | 25,000 |
| | **POLICE** | **2,275,720** |

FIRE

| 001-320-120 | ADMINISTRATIVE | 67,000 |
|---|---|---|
| 001-320-160 | OTHER EMPLOYEES | 1,213,469 |
| 001-320-180 | OVERTIME | 135,000 |
| 001-320-210 | MEAL ALLOWANCE | 16,800 |
| 001-320-230 | CLOTHING ALLOWANCE | 8,700 |
| 001-320-240 | DUES, EDUCATION, SEMINARS | 40,000 |
| 001-320-310 | OFFICE SUPPLIES | 2,000 |
| 001-320-320 | OPERATING SUPPLIES | 15,000 |
| 001-320-330 | REPAIRS & MAINTENANCE | 1,500 |
| 001-320-331 | REPAIRS & MAINTENANCE-EQUIPMENT | 5,000 |
| 001-320-335 | REPAIRS & MAINTENANCE-VEHICLES | 10,000 |
| 001-320-342 | TELEPHONE & PAGER EXPENSE | 13,000 |
| 001-320-343 | POSTAGE | 150 |
| 001-320-344 | GASOLINE & DIESEL FUEL | 8,000 |
| 001-320-345 | PUBLISHING | 1,000 |
| 001-320-352 | MISCELLANEOUS | 500 |
| 001-320-35211 | AMBULANCE EXPENSES | 40,000 |
| 001-320-410 | PROFESSIONAL SERVICES | 10,000 |
| 001-320-41001 | PROFESSIONAL SERVICES/WELLNESS GRANT | 43,088 |
| 001-320-740 | EQUIPMENT | 200,000 |
| | **FIRE** | **1,830,207** |

COMM PUBLIC HEALTH & SAFETY

| 001-326-110 | ELECTED OFFICIAL | 7,800 |
|---|---|---|
| 001-326-240 | DUES, EDUCATION, SEMINARS | 2,000 |
| 001-326-310 | OFFICE SUPPLIES | 500 |
| 001-326-342 | TELEPHONE & PAGER EXPENSE | 1,500 |
| 001-326-344 | GASOLINE & DIESEL FUEL | 700 |
| | **COMM PUBLIC HEALTH & SAFETY** | **12,500** |

STREET

| 001-510-120 | ADMINISTRATIVE | 55,120 |
|---|---|---|
| 001-510-160 | OTHER EMPLOYEES | 245,000 |
| 001-510-170 | PART TIME | 40,000 |
| 001-510-180 | OVERTIME | 40,000 |
| 001-510-230 | CLOTHING REIMBURSEMENT | 2,700 |
| 001-510-240 | DUES, EDUCATION, SEMINARS | 500 |
| 001-510-310 | OFFICE SUPPLIES | 500 |
| 001-510-320 | OPERATING SUPPLIES | 73,000 |
| 001-510-330 | REPAIRS & MAINTENANCE | 10,000 |
| 001-510-33010 | TRAFFIC LIGHT MAINT/LABOR | 60,000 |
| 001-510-33011 | STREET LIGHT MAINT/LABOR | 10,000 |
| 001-510-342 | TELEPHONE & PAGER EXPENSE | 3,000 |
| 001-510-344 | GASOLINE & DIESEL FUEL | 20,000 |
| 001-510-345 | PUBLISHING | 1,500 |
| 001-510-352 | MISCELLANEOUS | 700 |
| 001-510-410 | PROFESSIONAL SERVICES | 75,000 |
| 001-510-451 | EQUIPMENT LEASES | 27,000 |
| 001-510-453 | OPERATING LEASE | 500 |
| 001-510-740 | EQUIPMENT | 5,000 |
| 001-510-750 | CONSTRUCTION IN PROGRESS | 198,000 |

City of Ottawa                                    EXHIBIT A                                    5/7/03

|  |  | Budget |
|---|---|---|
|  | STREET | 867,520 |

**VEHICLE MAINTENANCE**

| Code | Description | Amount |
|---|---|---|
| 001-520-160 | OTHER EMPLOYEES | 81,120 |
| 001-520-170 | PART TIME WORKERS | 4,000 |
| 001-520-180 | OVERTIME | 5,500 |
| 001-520-230 | CLOTHING REIMBURSEMENT | 1,000 |
| 001-520-240 | DUES, EDUCATION, SEMINARS | 200 |
| 001-520-310 | OFFICE SUPPLIES | 500 |
| 001-520-320 | OPERATING SUPPLIES | 12,000 |
| 001-520-330 | REPAIRS & MAINTENANCE | 500 |
| 001-520-331 | REPAIRS & MAINTENANCE-EQUIPMENT | 3,000 |
| 001-520-332 | REPAIRS & MAINT/VEHICLES/STREETS | 25,000 |
| 001-520-333 | REPAIRS & MAINT/VEHICLES/PARKS | 5,000 |
| 001-520-334 | REPAIRS & MAINT/VEHICLES/POLIC | 5,000 |
| 001-520-336 | REPAIRS & MAINT/VEHICLES/OTHER | 2,500 |
| 001-520-344 | GASOLINE & DIESEL FUEL | 750 |
| 001-520-352 | MISCELLANEOUS | 100 |
| 001-520-410 | PROFESSIONAL SERVICES | 2,000 |
| 001-520-740 | EQUIPMENT | 3,000 |
|  | VEHICLE MAINTENANCE | 151,170 |

**COMM PUBLIC IMPROVEMENT**

| Code | Description | Amount |
|---|---|---|
| 001-526-110 | ELECTED OFFICIAL | 7,800 |
| 001-526-240 | DUES, EDUCATION, SEMINARS | 2,000 |
| 001-526-310 | OFFICE SUPPLIES | 500 |
| 001-526-342 | TELEPHONE & PAGER EXPENSE | 1,500 |
| 001-526-344 | GASOLINE & DIESEL FUEL | 700 |
|  | COMM PUBLIC IMPROVEMENT | 12,500 |

**MINI BUS**

| Code | Description | Amount |
|---|---|---|
| 001-530-160 | OTHER EMPLOYEES | 35,000 |
| 001-530-170 | PART TIME | 6,650 |
| 001-530-342 | TELEPHONE & PAGER EXPENSE | 700 |
| 001-530-344 | GASOLINE & DIESEL FUEL | 7,000 |
| 001-530-352 | MISCELLANEOUS | 500 |
| 001-530-410 | PROFESSIONAL/CONTRACTUAL SERVICES | 500 |
|  | MINI BUS | 50,350 |

**COMM PUBLIC PROPERTY**

| Code | Description | Amount |
|---|---|---|
| 001-626-110 | ELECTED OFFICIAL | 7,800 |
| 001-626-240 | DUES, EDUCATION, SEMINARS | 2,000 |
| 001-626-310 | OFFICE SUPPLIES | 500 |
| 001-626-342 | TELEPHONE & PAGER EXPENSE | 1,500 |
| 001-626-344 | GASOLINE & DIESEL FUEL | 700 |
|  | COMM PUBLIC PROPERTY | 12,500 |

**PARKS & PUBLIC BUILDINGS**

| Code | Description | Amount |
|---|---|---|
| 001-630-120 | ADMINISTRATIVE | 54,600 |
| 001-630-160 | OTHER EMPLOYEES (Garbage) | 100,000 |
| 001-630-170 | PART TIME | 30,000 |
| 001-630-180 | OVERTIME | 10,000 |
| 001-630-230 | CLOTHING ALLOWANCE | 1,350 |
| 001-630-240 | DUES, EDUCATION, SEMINARS | 2,000 |
| 001-630-310 | OFFICE SUPPLIES | 350 |
| 001-630-320 | OPERATING SUPPLIES | 60,000 |
| 001-630-32081 | PARKS ADVISORY-FLOWERS&LAMPPOST | 10,000 |
| 001-630-32082 | TREE BOARD/TREES | 12,500 |
| 001-630-330 | REPAIRS & MAINTENANCE (Public comfort statio | 60,000 |
| 001-630-331 | REPAIRS & MAINTENANCE-EQUIPMEN | 10,000 |
| 001-630-342 | TELEPHONE & PAGER EXPENSE | 2,500 |
| 001-630-344 | GASOLINE & DIESEL FUEL | 8,000 |

City of Ottawa                                     EXHIBIT A                                                      5/7/03

|  |  | Budget |
|---|---|---|
| 001-630-345 | PUBLISHING | 150 |
| 001-630-349 | UTILITIES (Street lighting) | 230,000 |
| 001-630-352 | MISCELLANEOUS | 5,000 |
| 001-630-410 | PROFESSIONAL SERVICES | 65,000 |
| 001-630-41200 | CONTRACTUAL REPAIRS/BLDG/STREETS | 5,000 |
| 001-630-41202 | CONTRACTUAL REPAIRS/BLDG/POLIC | 15,000 |
| 001-630-41203 | CONTRACTUAL REPAIRS/BLDG/FIRE | 15,000 |
| 001-630-41204 | CONTRACTUAL REPAIRS/BLDG/CITYH | 10,000 |
| 001-630-41205 | CONTRACTUAL REPAIRS/BLDG/OTHER | 20,000 |
| 001-630-451 | EQUIPMENT LEASES | 2,000 |
| 001-630-453 | OPERATING LEASE | 2,000 |
| 001-630-710 | LAND & OPTIONS | 40,000 |
| 001-630-740 | EQUIPMENT | 30,000 |
| 001-630-750 | CONSTRUCTION IN PROGRESS | 120,000 |
| 001-630-75002 | CIP - RIVERWALK | 292,500 |
| 001-630-75010 | CIP-BOAT DOCKS | 5,000 |
| 001-630-75011 | CIP-TOLL HOUSE | 8,000 |
|  | PARKS & PUBLIC BUILDINGS | 1,225,950 |
|  |  |  |
|  | GENERAL CORPORATE FUND | 9,738,582 |
|  |  |  |
|  | CROSSING GUARD FUND |  |
| 101-340-563 | PERMANENT TRANSFERS | 36,050 |
|  | CROSSING GUARD FUND | 36,050 |
|  |  |  |
|  | AUDITING FUND |  |
| 102-132-352 | MISCELLANEOUS | 0 |
| 102-132-410 | PROFESSIONAL SERVICES | 42,500 |
|  | AUDITING FUND | 42,500 |
|  |  |  |
|  | IL MUNICIPAL RETIREMENT FUND |  |
| 103-119-260 | SOCIAL SECURITY | 260,000 |
| 103-119-270 | RETIREMENT | 200,000 |
|  | IL MUNICIPAL RETIREMENT | 460,000 |
|  |  |  |
|  | PUBLIC LIABILITY INSURANCE FUND |  |
| 104-133-446 | INSURANCE | 350,000 |
|  | PUBLIC LIABILITY INSURANCE FUND | 350,000 |
|  |  |  |
|  | EMERGENCY SERVICES & DISASTER AGENCY |  |
| 105-322-320 | OPERATING SUPPLIES | 3,000 |
| 105-322-330 | REPAIRS & MAINTENANCE | 250 |
| 105-322-331 | REPAIRS & MAINTENANCE-EQUIPMENT | 2,500 |
| 105-322-332 | REPAIRS & MAINT/VEHICLES/STREETS | 1,000 |
| 105-322-342 | TELEPHONE & PAGER EXPENSE | 3,500 |
| 105-322-344 | GASOLINE & DIESEL FUEL | 750 |
| 105-322-352 | MISCELLANEOUS | 500 |
| 105-322-410 | PROFESSIONAL SERVICES | 500 |
|  | EMERGENCY SERVICES & DISASTER AGENCY | 12,000 |
|  |  |  |
|  | MOTOR FUEL TAX FUND |  |
| 107-535-352 | MISCELLANEOUS | 576,500 |
|  | MOTOR FUEL TAX FUND | 576,500 |
|  |  |  |
|  | FOREIGN FIRE INSURANCE FUND | 19,000 |
|  |  |  |
|  | PLAYGROUND & RECREATION FUND |  |
| 109-187-120 | ADMINISTRATIVE | 14,000 |
| 109-187-140 | CLERICAL | 5,000 |
| 109-187-16001 | OTHER/P&R/PLAYGROUNDS | 31,000 |
| 109-187-16002 | OTHER/P&R/SOFTBALL | 32,000 |
| 109-187-16004 | OTHER/P&R/BASKETBALL | 7,800 |

City of Ottawa

EXHIBIT A

5/7/03

| | | Budget |
|---|---|---|
| 109-187-16005 | OTHER/P&R/TENNIS | 8,500 |
| 109-187-16006 | OTHER/P&R/EVENING | 6,000 |
| 109-187-16009 | OTHER/P&R/SUMMER CAMPS AND PROGRAM | 20,000 |
| 109-187-260 | FICA | 9,000 |
| 109-187-310 | OFFICE SUPPLIES | 300 |
| 109-187-320 | OPERATING SUPPLIES | 3,500 |
| 109-187-32001 | CONCESSION SUPPLIES | 10,500 |
| 109-187-330 | REPAIRS & MAINTENANCE | 500 |
| 109-187-331 | REPAIRS & MAINTENANCE-EQUIPMEN | 500 |
| 109-187-342 | TELEPHONE & PAGER EXPENSE | 1,000 |
| 109-187-345 | PUBLISHING | 2,500 |
| 109-187-352 | MISCELLANEOUS | 500 |
| 109-187-35201 | MISC/P&R/PLAYGROUNDS | 300 |
| 109-187-35202 | MISC/P&R/SOFTBALL | 6,300 |
| 109-187-35203 | MISC/P&R/MINOR LEAGUE | 1,500 |
| 109-187-35204 | MISC/P&R/BASKETBALL | 3,750 |
| 109-187-35205 | MISC/P&R/TENNIS | 600 |
| 109-187-35206 | MISC/P&R/EVENING | 100 |
| 109-187-35207 | MISC/P&R/CRAFT | 3,200 |
| 109-187-35208 | MISC/P&R/YOUTH ORGANIZATIONS | 16,000 |
| 109-187-35209 | MISC/P&R/SPECIAL | 15,400 |
| 109-187-35210 | MISC/P&R/SENIOR CITIZENS | 4,150 |
| 109-187-410 | PROFESSIONAL SERVICES | 1,000 |
| 109-187-740 | EQUIPMENT | 2,000 |
| 109-187-750 | CONSTRUCTION IN PROGRESS | 100,000 |
| | PLAYGROUND & RECREATION FUND | 306,900 |
| | | |
| | LIBRARY FUND | |
| 110-189-120 | ADMINISTRATIVE | 80,000 |
| 110-189-160 | OTHER EMPLOYEES | 85,000 |
| 110-189-170 | PART TIME | 105,000 |
| 110-189-180 | OVERTIME | 3,000 |
| 110-189-240 | DUES, EDUCATION, SEMINARS | 3,000 |
| 110-189-250 | HEALTH & LIFE INSURANCE | 25,000 |
| 110-189-310 | OFFICE SUPPLIES | 12,000 |
| 110-189-320 | OPERATING SUPPLIES | 73,000 |
| 110-189-330 | REPAIRS & MAINTENANCE | 9,240 |
| 110-189-342 | TELEPHONE & PAGER EXPENSE | 3,000 |
| 110-189-343 | POSTAGE | 2,000 |
| 110-189-344 | GASOLINE & DIESEL FUEL | 1,500 |
| 110-189-349 | UTILITIES | 23,000 |
| 110-189-352 | MISCELLANEOUS | 28,800 |
| 110-189-410 | PROFESSIONAL/CONTRACTUAL SERVICE | 20,000 |
| 110-189-41205 | CONTRACTUAL REPAIRS/BLDG/OTHER | 6,000 |
| 110-189-446 | INSURANCE | 10,000 |
| 110-189-450 | LEGAL FEES | 2,000 |
| 110-189-740 | EQUIPMENT | 10,000 |
| | LIBRARY FUND | 501,540 |
| | | |
| | INDUSTRIAL DEVELOPMENT COMMISSION FUND | |
| 111-140-352 | MISCELLANEOUS | 1,000 |
| | INDUSTRIAL DEVELOPMENT COMMISSION FU | 1,000 |
| | | |
| | POLICE DEPT DRUG EDUCATION FUND | |
| 112-190-240 | DUES, EDUCATION, SEMINARS | 2,000 |
| 112-190-310 | OFFICE SUPPLIES | 1,000 |
| 112-190-320 | OPERATING SUPPLIES | 1,000 |
| 112-190-410 | PROFESSIONAL SERVICES | 25,000 |
| 112-190-740 | EQUIPMENT | 100,000 |
| | POLICE DEPT DRUG EDUCATION FUND | 129,000 |

911 EMERGENCY PHONE SYSTEM FUND

OttawaBudLevy2004

Budget 6

City of Ottawa

EXHIBIT A

5/7/03

|  |  | Budget |
|---|---|---|
| 113-191-240 | DUES, EDUCATION, SEMINARS | 1,500 |
| 113-191-310 | OFFICE SUPPLIES | 1,000 |
| 113-191-320 | OPERATING SUPPLIES | 1,000 |
| 113-191-331 | REPAIRS & MAINTENANCE-EQUIPMENT | 20,000 |
| 113-191-342 | TELEPHONE & PAGER EXPENSE | 22,000 |
| 113-191-410 | PROFESSIONAL SERVICES | 20,000 |
| 113-191-450 | LEGAL FEES | 5,000 |
| 113-191-740 | EQUIPMENT | 69,500 |
|  | 911 EMERGENCY PHONE SYSTEM FUND | 140,000 |
|  |  |  |
|  | FIRE DEPT FIRST AID FUND |  |
| 115-192-320 | OPERATING SUPPLIES | 2,000 |
| 115-192-410 | PROFESSIONAL SERVICES | 1,000 |
| 115-192-740 | EQUIPMENT | 2,000 |
|  | FIRE DEPT FIRST AID FUND | 5,000 |
|  |  |  |
|  | POLICE D.A.R.E. FUND |  |
| 116-193-320 | OPERATING SUPPLIES | 6,015 |
|  | POLICE D.A.R.E. FUND | 6,015 |
|  |  |  |
|  | REVOLVING LOAN FUND |  |
| 117-143-352 | MISCELLANEOUS | 13,000 |
|  | REVOLVING LOAN FUND | 13,000 |
|  |  |  |
|  | POLICE FEDERAL DRUG FUND |  |
| 118-194-320 | OPERATING SUPPLIES | 500 |
|  | POLICE FEDERAL DRUG FUND | 500 |
|  |  |  |
|  | MAIN STREET LOAN FUND |  |
| 119-146-352 | MISCELLANEOUS | 1,300 |
|  | MAIN STREET LOAN FUND | 1,300 |
|  |  |  |
|  | WASHINGTON PARK STATUE FUND |  |
| 129-183-352 | MISCELLANEOUS | 17,500 |
|  | WASHINGTON PARK STATUE FUND | 17,500 |
|  |  |  |
|  | WEST LAFAYETTE ST PROJECT FUND |  |
| 130-184-352 | MISCELLANEOUS | 10 |
|  | WEST LAFAYETTE ST PROJECT FUND | 10 |
|  |  |  |
|  | ILLINOIS AVE SEWER SEPARATION FUND |  |
| 131-185-352 | MISCELLANEOUS | 100 |
|  | ILLINOIS AVE SEWER SEPARATION FUND | 100 |
|  |  |  |
|  | POLICE DRUG LAB FUND |  |
| 132-195-320 | OPERATING SUPPLIES | 500 |
| 132-195-410 | PROFESSIONAL SERVICES | 500 |
|  | POLICE DRUG LAB FUND | 1,000 |
|  |  |  |
|  | POLICE PENSION FUND | 208,500 |
|  | FIREMEN'S PENSION FUND | 362,304 |
|  |  |  |
|  | DUI EQUIPMENT FUND |  |
| 135-149-310 | OFFICE SUPPLIES | 500 |
| 135-149-320 | OPERATING SUPPLIES | 2,500 |
| 135-149-410 | PROFESSIONAL/CONTRACTUAL SERVICE | 500 |
| 135-149-450 | LEGAL FEES | 500 |
| 135-149-740 | EQUIPMENT | 10,000 |
|  | DUI EQUIPMENT FUND | 14,000 |
|  |  |  |
|  | PUBLIC BENEFIT FUND |  |
| 202-540-352 | SIDEWALK PROGRAM | 100,000 |

City of Ottawa

EXHIBIT A

5/7/03

|  |  | Budget |
|---|---|---|
| 202-540-410 | PROFESSIONAL/CONTRACTUAL SERVICE | 5,000 |
| 202-540-450 | LEGAL FEES | 5,000 |
|  | PUBLIC BENEFIT FUND | 110,000 |
|  | CORP PURPOSE BOND & INT FUND |  |
| 206-810-410 | PROFESSIONAL SERVICES | 8,000 |
| 206-810-910 | PRINCIPAL | 278,437 |
| 206-810-920 | INTEREST | 67,178 |
|  | CORP PURPOSE BOND & INT FUND | 353,615 |
|  | TIF DRAINAGE BOND & INT FUND |  |
| 207-166-410 | PROFESSIONAL/CONTRACTURAL SERVICE | 250 |
| 207-166-910 | PRINCIPAL | 78,250 |
| 207-166-920 | INTEREST | 20,000 |
|  | TIF DRAINAGE BOND & INT FUND | 98,500 |
|  | SERIES 2001 BOND & INTEREST FUND |  |
| 209-210-910 | PRINCIPAL | 166,000 |
| 209-210-920 | INTEREST | 52,642 |
|  | SERIES 2001 BOND & INTEREST FUND | 218,642 |
|  | STEVENSON ROAD IMPROVEMENT FUND |  |
| 319-160-920 | INTEREST | 175 |
|  | STEVENSON ROAD IMPROVEMENT FUND | 175 |
|  | ANITA DRIVE PAVING FUND |  |
| 320-161-750 | INTEREST | 475 |
|  | ANITA DRIVE PAVING FUND | 475 |
|  | KANSAS STREET PAVING FUND |  |
| 321-162-920 | INTEREST | 500 |
|  | KANSAS STREET PAVING FUND | 500 |
|  | PINE STREET PAVING FUND |  |
| 322-163-920 | INTEREST | 150 |
|  | PINE STREET PAVING FUND | 150 |
|  | TIF DRAINAGE CAP PROJECT FUND |  |
| 323-164-920 | INTEREST | 400 |
|  | TIF DRAINAGE CAP PROJECT FUND | 400 |
|  | MAUDELLE ADDITION PAVING FUND |  |
| 324-169-920 | INTEREST | 375 |
|  | MAUDELLE ADDITION PAVING FUND | 375 |
|  | ILL ELM PAVING FUND |  |
| 325-170-920 | INTEREST | 75 |
|  | ILL ELM PAVING FUND | 75 |
|  | PORTER STREET PAVING FUND |  |
| 326-171-920 | INTEREST | 125 |
|  | PORTER STREET PAVING FUND | 125 |
|  | ELM KANSAS PAVING FUND |  |
| 327-172-920 | INTEREST | 85 |
|  | ELM KANSAS PAVING FUND | 85 |
|  | FIFTH AVENUE SANITARY SEWER FUND |  |
| 328-173-920 | INTEREST | 200 |
|  | FIFTH AVENUE SANITARY SEWER FUND | 200 |
|  | CATHERINE STREET SPEC ASSMNT FUND |  |

City of Ottawa                                    EXHIBIT A                                    5/7/03

|  |  | Budget |
|---|---|---|
| 329-176-920 | INTEREST | 750 |
|  | CATHERINE STREET SPEC ASSMNT FUND | 750 |
|  | HURON STREET ROADWAY FUND |  |
| 330-179-920 | INTEREST | 675 |
|  | HURON STREET ROADWAY FUND | 675 |
|  | FOX RIVER PARK PROJECT FUND |  |
| 331-201-750 | CONSTRUCTION IN PROGRESS | 15,000 |
|  | FOX RIVER PARK PROJECT FUND | 15,000 |
|  | BELLEVUE AVE ROADWAY FUND |  |
| 332-186-352 | MISCELLANEOUS | 4,850 |
|  | BELLEVUE AVE ROADWAY FUND | 4,850 |
|  | SERIES 2001 PROJECT FUND |  |
| 333-201-410 | PROFESSIONAL SERVICES | 22,083 |
|  | SERIES 2001 PROJECT FUND | 22,083 |
|  | OTTAWA VISITORS CENTER |  |
| 334-202-170 | PART TIME | 64,550 |
| 334-202-240 | DUES, EDUCATION, SEMINARS | 7,300 |
| 334-202-310 | OFFICE SUPPLIES | 3,000 |
| 334-202-320 | OPERATING SUPPLIES | 1,400 |
| 334-202-342 | TELEPHONE & PAGER EXPENSE | 4,700 |
| 334-202-343 | POSTAGE | 6,600 |
| 334-202-34501 | PUBLISHING-PROMOTIONS | 36,883 |
| 334-202-352 | MISCELLANEOUS | 9,117 |
| 334-202-410 | PROFESSIONAL/CONTRACTUAL SERVICES | 900 |
| 334-202-447 | ALLOCATIONS & SUBSIDIES | 32,568 |
| 334-202-44801 | OVC/BRUSH WITH HISTORY | 10,000 |
| 334-202-451 | EQUIPMENT LEASE | 1,500 |
| 334-202-453 | OPERATING LEASE | 5,100 |
| 334-202-910 | PRINCIPAL | 20,000 |
|  | OTTAWA VISITORS CENTER | 203,618 |
|  | TIF 1 I-80 North |  |
| 501-167-450 | LEGAL FEES | 7,000 |
| 501-167-567 | TRANSFER TIF SALES TAX | 45,000 |
| 501-167-568 | TRANSFER PROPERTY TAX | 200,000 |
| 501-167-569 | SCHOOL TAX REIMBURSEMENT | 200,000 |
| 501-167-750 | CONSTRUCTION IN PROGRESS | 276,000 |
|  | TIF 1 I-80 North | 728,000 |
|  | TIF 2 RTE 6 EAST |  |
| 502-177-450 | LEGAL FEES | 5,000 |
| 502-177-567 | TRANSFER TIF SALES TAX | 135,000 |
| 502-177-568 | TRANSFER PROPERTY TAX | 100,000 |
| 502-177-710 | LAND & OPTIONS | 163,500 |
|  | TIF 2 RTE 6 EAST | 403,500 |
|  | TIF 3 DOWNTOWN |  |
| 503-150-450 | LEGAL FEES | 2,000 |
| 503-150-710 | LAND & OPTIONS | 23,000 |
|  | TIF 3 DOWNTOWN | 25,000 |
|  | WATER & SEWER FUND |  |
| 601-610-120 | ADMINISTRATIVE | 60,000 |
| 601-610-140 | CLERICAL | 33,000 |
| 601-610-160 | OTHER EMPLOYEES | 270,000 |
| 601-610-170 | PART TIME | 15,000 |
| 601-610-180 | OVERTIME | 25,000 |

City of Ottawa                                    EXHIBIT A                                    5/7/03

| | | Budget |
|---|---|---|
| 601-610-230 | CLOTHING ALLOWANCE | 3,650 |
| 601-610-240 | DUES, EDUCATION, SEMINARS | 7,000 |
| 601-610-250 | HEALTH & LIFE INSURANCE | 100,000 |
| 601-610-310 | OFFICE SUPPLIES | 5,000 |
| 601-610-320 | OPERATING SUPPLIES | 125,000 |
| 601-610-330 | REPAIRS & MAINTENANCE | 200,000 |
| 601-610-331 | REPAIRS & MAINTENANCE-EQUIPMEN | 50,000 |
| 601-610-337 | REPAIRS & MAINT/VEHICLES/WATER | 10,000 |
| 601-610-342 | TELEPHONE & PAGER EXPENSE | 15,000 |
| 601-610-343 | POSTAGE | 15,000 |
| 601-610-344 | GASOLINE & DIESEL FUEL | 10,000 |
| 601-610-345 | PUBLISHING | 8,000 |
| 601-610-349 | UTILITIES | 250,000 |
| 601-610-352 | MISCELLANEOUS | 5,000 |
| 601-610-410 | PROFESSIONAL SERVICES | 90,000 |
| 601-610-417 | CONTRACTUAL REPAIRS/BLDG/WATER | 25,000 |
| 601-610-446 | INSURANCE | 15,000 |
| 601-610-450 | LEGAL FEES | 7,500 |
| 601-610-740 | EQUIPMENT | 120,000 |
| 601-610-750 | CONSTRUCTION | 2,088,000 |
| 601-610-910 | PRINCIPAL | 500,000 |
| | **WATER** | 4,052,150 |

| | SEWER | |
|---|---|---|
| 601-620-120 | ADMINISTRATIVE | 60,000 |
| 601-620-140 | CLERICAL | 33,000 |
| 601-620-160 | OTHER EMPLOYEES | 301,500 |
| 601-620-170 | PART TIME | 15,000 |
| 601-620-180 | OVERTIME | 15,000 |
| 601-620-230 | CLOTHING ALLOWANCE | 4,050 |
| 601-620-240 | DUES, EDUCATION, SEMINARS | 10,000 |
| 601-620-250 | HEALTH & LIFE INSURANCE | 100,000 |
| 601-620-310 | OFFICE SUPPLIES | 3,000 |
| 601-620-320 | OPERATING SUPPLIES | 30,000 |
| 601-620-330 | REPAIRS & MAINTENANCE | 350,000 |
| 601-620-338 | REPAIRS & MAINT/VEHICLES/SEWER | 8,000 |
| 601-620-342 | TELEPHONE & PAGER EXPENSE | 11,000 |
| 601-620-343 | POSTAGE | 13,000 |
| 601-620-344 | GASOLINE & DIESEL FUEL | 11,000 |
| 601-620-349 | UTILITIES | 125,000 |
| 601-620-352 | MISCELLANEOUS | 3,000 |
| 601-620-410 | PROFESSIONAL SERVICES | 272,000 |
| 601-620-418 | CONTRACTUAL REPAIRS/BLDG/SEWER | 15,000 |
| 601-620-740 | NEW EQUIPMENT | 135,000 |
| 601-620-750 | CONSTRUCTION | 185,000 |
| | **SEWER** | 1,699,550 |

| | W&S TIF PROJ BOND & INTEREST | |
|---|---|---|
| 601-660-410 | PROFESSIONAL SERVICES | 500 |
| 601-660-910 | PRINCIPAL | 100,000 |
| 601-660-920 | INTEREST | 25,000 |
| | **W&S TIF PROJ BOND & INTEREST** | 125,500 |

| | WATER & SEWER FUND | 5,877,200 |
|---|---|---|

| | SWIMMING POOL | |
|---|---|---|
| 603-196-120 | ADMINISTRATIVE | 10,500 |
| 603-196-160 | OTHER EMPLOYEES | 60,000 |
| 603-196-180 | OVERTIME | 2,500 |
| 603-196-260 | FICA | 4,500 |
| 603-196-310 | OFFICE SUPPLIES | 250 |
| 603-196-320 | OPERATING SUPPLIES | 20,000 |

City of Ottawa                                    EXHIBIT A                                          5/5/03

|  |  | Budget |
|---|---|---|
| 603-196-32001 | CONCESSION SUPPLIES | 15,000 |
| 603-196-330 | REPAIRS & MAINTENANCE | 25,000 |
| 603-196-342 | TELEPHONE & PAGER EXPENSE | 2,000 |
| 603-196-345 | PUBLISHING | 200 |
| 603-196-349 | UTILITIES | 12,000 |
| 603-196-410 | PROFESSIONAL/CONTRACTUAL SERVICES | 1,000 |
| 603-196-740 | EQUIPMENT | 5,000 |
| 603-196-750 | CONSTRUCTION IN PROGRESS | 20,000 |
|  | SWIMMING POOL | 177,950 |
|  |  |  |
|  | CANAL RENTAL & PURCHASE FUND |  |
| 604-141-410 | PROFESSIONAL/CONTRACTUAL SERVICE | 3,200 |
| 604-141-453 | OPERATING LEASE | 250 |
|  | CANAL RENTAL & PURCHASE FUND | 3,450 |
|  |  |  |
|  | FRIENDLY CITY RIVERFEST FUND |  |
| 605-118-352 | MISCELLANEOUS | 325,250 |
|  | FRIENDLY CITY RIVERFEST FUND | 325,250 |
|  |  |  |
|  | HOTEL MOTEL TAX FUND |  |
| 606-145-44701 | ALLOCATIONS/READERS THEATER | 300 |
| 606-145-44702 | ALLOCATIONS/CRUISE NIGHT | 1,900 |
| 606-145-44709 | ALLOCATIONS/CITY BLOCK PARTY | 1,250 |
| 606-145-44712 | ALLOCATIONS/THUNDER ON THE RIVER | 3,000 |
| 606-145-44713 | ALLOCATIONS/SCARECROW FESTIVAL | 1,000 |
| 606-145-44714 | ALLOCATIONS/MARBLE SHOW | 1,000 |
| 606-145-44715 | ALLOCATIONS/FESTIVAL/LIGHTS/PARADE | 4,200 |
| 606-145-44716 | ALLOCATIONS/FESTIVAL.LIGHTS/TOUR | 200 |
| 606-145-44717 | ALLOCATIONS/MUSIC IN THE PARK | 1,500 |
| 606-145-44718 | ALLOCATIONS/FISHING TOURNAMENT | 500 |
| 606-145-44722 | ALLOCATIONS/FRISBEE TOURNAMENT | 900 |
| 606-145-44723 | ALLOCATIONS/BRUSH WITH HISTORY | 300 |
| 606-145-44752 | ALLOCATIONS/CONTINGENCY | 5,150 |
| 606-145-563 | PERMANENT TRANSFERS | 183,540 |
|  | HOTEL MOTEL TAX FUND | 204,740 |

Recapitulation

| CROSSING GUARD FUND | 36,050 |
|---|---|
| AUDITING FUND | 42,500 |
| IL MUNICIPAL RETIREMENT | 460,000 |
| PUBLIC LIABILITY INSURANCE FUND | 350,000 |
| EMERGENCY SERVICES & DISASTER AGENCY | 12,000 |
| MOTOR FUEL TAX FUND | 576,500 |
| FOREIGN FIRE TAX FUND | 19,000 |
| PLAYGROUND & RECREATION FUND | 306,900 |
| LIBRARY FUND | 501,540 |
| INDUSTRIAL DEVEL. COMMISSION FUND | 1,000 |
| POLICE DEPT DRUG EDUCATION FUND | 129,000 |
| 911 EMERGENCY PHONE SYSTEM FUND | 140,000 |
| FIRE DEPT FIRST AID FUND | 5,000 |
| REVOLVING LOAN FUND | 13,000 |
| POLICE D.A.R.E. FUND | 6,015 |
| POLICE FEDERAL DRUG FUND | 500 |
| MAIN STREET LOAN FUND | 1,300 |
| WASHINGTON PARK STATUE FUND | 17,500 |
| WEST LAFAYETTE STREET PROJECT FUND | 10 |
| ILL AVENUE SEWER SEPARATION FUND | 100 |
| POLICE DRUG LAB FUND | 1,000 |
| POLICE PENSION FUND | 208,500 |
| FIREMEN'S PENSION FUND | 362,304 |
| DUI EQUIPMENT FUND | 14,000 |
| PUBLIC BENEFIT FUND | 110,000 |

City of Ottawa

EXHIBIT A

5/8/03

|  | Budget |
|---|---|
| CORP PURPOSE BOND & INT FUND | 353,615 |
| TIF DRAINAGE BOND & INT FUND | 98,500 |
| SERIES 2001 BOND & INTEREST FUND | 218,642 |
| STEVENSON ROAD IMPROVEMENT FUND | 175 |
| ANITA DRIVE PAVING FUND | 475 |
| KANSAS STREET PAVING FUND | 500 |
| PINE STREET PAVING FUND | 150 |
| TIF DRAINAGE CAP PROJECT FUND | 400 |
| MAUDELLE ADDITION PAVING FUND | 375 |
| ILL ELM PAVING FUND | 75 |
| PORTER STREET PAVING FUND | 125 |
| ELM KANSAS PAVING FUND | 85 |
| FIFTH AVENUE SANITARY SEWER FUND | 200 |
| CATHERINE ST SPEC ASSMNT FUND | 750 |
| HURON STREET ROADWAY FUND | 675 |
| FOX RIVER PARK PROJECT FUND | 15,000 |
| BELLEVUE AVENUE ROADWAY FUND | 4,850 |
| SERIES 2001 PROJECT FUND | 22,083 |
| OTTAWA VISITORS CENTER FUND | 203,618 |
| TIF 1 I-80 North | 728,000 |
| TIF 2 RTE 6 EAST | 403,500 |
| TIF 3 DOWNTOWN | 25,000 |
| WATER & SEWER FUND | 5,877,200 |
| SWIMMING POOL | 177,950 |
| CANAL RENTAL & PURCHASE FUND | 3,450 |
| FRIENDLY CITY RIVERFEST FUND | 325,250 |
| HOTEL MOTEL TAX FUND | 204,740 |
| | |
| SPECIAL REVENUE FUNDS | 11,979,102 |
| GENERAL CORPORATE FUND | 9,738,582 |
| | |
| TOTAL ALL FUNDS | 21,717,684 |

OttawaBudLevy2004

Budget 12

# IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## LASALLE COUNTY, ILLINOIS

| | | |
|---|---|---|
| **John Colt Landreth,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No. 07-L-17 |
| | ) | |
| **City of Ottawa, Illinois,** | ) | |
| **a municipal corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AFFIDAVIT

I, Shelly L. Munks, swear and affirm that if called to testify I would competently testify to the following:

1. I am the duly appointed and now acting Clerk of the City of Ottawa, Illinois

2. As Clerk, I am the official custodian of all records of the City of Ottawa.

3. A true copy of the Consulting, Development and Marketing Agreement Between the City of Ottawa, Illinois and John Colt Landreth (the "Agreement") is attached to Plaintiff's Complaint as Exhibit A.

4. Exhibit A of the Defendant's Motion To Dismiss is a true copy of the Budget & Appropriation of the City of Ottawa for the fiscal year ending April 30, 2004.

5. The fiscal year of the City of Ottawa commences on May 1 and ends on April 30.

6. The Budget & Appropriation of the City of Ottawa for the fiscal year ending April 30, 2004 did not contain an appropriation for the Agreement or any expense related thereto.

7. On September 6, 2005 the Council of the City of Ottawa adopted Resolution No. 106-2005 authorizing the execution of an agreement between the City of Ottawa and Plaintiff, a copy of said Resolution is attached hereto as Exhibit 1.

8. The agreement authorized by Resolution No. 106-2005 was never executed by the Plaintiff, and on information and belief, the Plaintiff declined to execute the agreement.

9. On December 6, 2005 the Council of the City of Ottawa adopted Resolution No. 137-2005 repealing Resolution No. 106-2005, a true copy of Resolution No. 137-2005 is attached hereto as Exhibit 2.

**EXHIBIT B**

Further, Affiant sayeth not.

_Shelly L Munks_
Shelly (L) Munks

Sworn and Subscribed before me this _29th_ day of March 2007.

_Nicole M. Conrad_
Notary Public

OFFICIAL SEAL
NICOLE M CONRAD
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/01/09

L:\Docs\ottawa\Landreth v. Ottawa\Pleadings\Munks Affidavit.docx

2

RESOLUTION NO. ___106___ -2005

## A RESOLUTION AUTHORIZING THE EXECUTION OF A CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT BETWEEN THE CITY OF OTTAWA AND JOHN COLT LANDRETH
### (Ottawa Industrial Park Conservation TIF District)

BE IT RESOLVED BY THE COUNCIL OF THE CITY OF OTTAWA, ILLINOIS,

AS FOLLOWS:

**Section One:** That the Mayor and City Clerk of the City of Ottawa, Illinois, be, and they are hereby authorized and directed to execute a Consulting, Development and Marketing Agreement between the City of Ottawa and John Colt Landreth, a copy of which is attached hereto and incorporated herein by reference.

**Section Two:** That all Resolutions or parts thereof which are in conflict herewith are hereby repealed.

**Section Three:** That this Resolution shall be in full force and effect from and after its passage and approval as required by law.

Passed and Approved this 6th day of September, 2005.

_____
Robert M. Eschbach, Mayor

ATTEST:

_____
Shelly L. Munks, City Clerk

L:\Docs\ottawa\Resolutions\Agreements\Agreement - Colt Landreth - OIP - 2005.doc

## EXHIBIT 1

### CONSULTING, DEVELOPMENT AND MARKETING AGREEMENT
### BETWEEN THE CITY OF OTTAWA, ILLINOIS
### AND JOHN COLT LANDRETH

**Whereas**, the City of Ottawa (the "City") is an Illinois municipal corporation and body politic operating under the provisions of the Illinois Municipal Code, (65 ILCS 5/1-1-1 *et seq.*) (the "Code"), and

**Whereas**, the Code authorizes the City to acquire, develop, and convey real property and to sell and convey such property within a redevelopment area, and

**Whereas**, the City is attempting to promote the commercial, industrial and economic development and welfare of the City, and

**Whereas**, the City encourages the increase of industry and commerce within the City and the State of Illinois, and

**Whereas**, the City now owns certain real property within the Ottawa Industrial Park Conservation TIF District ("OIP"), and

**Whereas**, the City has caused said real property to be platted and developed as an industrial park, and

**Whereas**, John Colt Landreth ("Landreth") is an individual with expertise in the development and marketing of industrial real property, and

**Whereas**, the specific and primary purposes for which OIP was created were to stimulate the promotion of industrial development within the City and to interest industry to locate in and about the City by the establishment of a comprehensive real estate marketing and development program (the "Program"), and

**Whereas**, the establishment of the program will further the public health, safety and welfare by the creation of jobs within the City, and

**Whereas**, Landreth has developed an expertise and experience with respect to the program and with regard to general economic development within the territory of the City, and

**Whereas**, the continued commercial and industrial development of the City is one of the primary corporate purposes of the City, and

**Whereas**, the Council of the City believes that it is in the best interest of the City to utilize Landreth as the primary economic development organization for the City, and

**Whereas**, efforts for the continued economic development of the City will require funds for all of the necessary development activity, including the appropriate marketing of the City as a viable location for potential commercial and industrial prospects, and

**Whereas**, Landreth and the City entered into a Consulting, Development And Marketing Agreement in 2003 and said agreement has expired, and

**Whereas**, Landreth is willing to continue to act as the primary economic development organization of the City and devote one-half (1/2) of his time thereto any and all time which is reasonably and necessarily required therefore.

**WITNESSETH:**

FOR AND IN CONSIDERATION of the mutual promises and undertakings herein set forth and other good and valuable considerations, the sufficiency of which is hereby acknowledged, the **CITY** and **LANDRETH** agree as follows:

1.    Incorporation of Recitals. All of the foregoing recitals are incorporated herein by reference and are acknowledged as true and correct.

2.    Term of Agreement. The initial term of this agreement shall be for six (6) twenty-four (24) months commencing on the date hereof. The initial term may be extended by mutual, written agreement of the parties.

3.    Obligations of City. In order to provide a continuous and reliable source of funding for economic development within the City and OIP:

(a)    The City shall pay to Landreth the sum of $5,000.00 upon the execution of this agreement and the further sum of $5,000.00 on the same day of each succeeding month during the term of this agreement; said sum shall be for Landreth's monthly retainer; together with an additional monthly amount not to exceed $2,000.00 for Chicago support staff, travel, telephone and similar items of reasonable and necessary expense.

(b) The further and additional sum of not to exceed $28,900.00 annually for web hosting and web modifications, broker events, CoreNet/SIOR dues, advertising, brochures and miscellaneous (wats line); and

(c)    The further and additional sum equal to 1 ½% of the actual project cost of all industrial developments occurring within the City during the term or any extension of this agreement. Such sum shall be paid one-half (1/2) upon the commencement of construction based upon the estimate of project cost as submitted by a developer and approved by the City, and the balance shall be paid upon completion of construction as soon as the total project cost is determined, and approved by the City. The phrase "project cost" shall include the cost of land, direct and indirect building costs, and site preparation as shown on the building permit, but shall not include machinery, equipment or any item of personal property. Compensation for industrial developments, which occur outside existing TIF Districts, will be negotiated on a case-by-case

basis and mutually agreed upon. Notwithstanding any of the foregoing to the contrary, the obligation of the City under this paragraph (c) shall be limited solely to industrial developments that result from the marketing efforts of Landreth and not from other sources.

      (d)    The projects known as Murph-Haines, Galaxy, Bedrock, Burton and PetSmart shall not be eligible for compensation under paragraph (c) above.

Landreth shall provide a monthly statement to the City for the items of expense set forth in paragraphs (a) and (b) above; such statements shall contain reasonable detail for each item of expense, including receipts or copies of invoices, and such statements shall separate the items of expense as set forth in paragraphs (a) and (b) above.

      4.    <u>Services of Landreth</u>. During the term of this Agreement Landreth shall provide to the City consulting, development and marketing services which shall be designed to increase and promote the commercial, industrial and economic base of the City, including, but not limited to the following:

      (a)    Advertise and otherwise promote the City and OIP;
      (b)    Develop and implement a marketing strategy for the City and OIP;
      (c)    Develop and implement a master plan for OIP in conjunction with the City;
      (d)    Develop and implement a strategic plan for OIP which shall include a a statement of mission and goals, as well as financial considerations and projections;
      (e)    Develop community relations and public awareness on behalf of the City;
      (f)    Identify and rank potential users and companies for location within OIP;
      (g)    Coordinate and cooperate with other units of government and industry, as well as other economic development agencies;
      (h)    Field and respond to all inquiries, and provide all necessary information to all prospects;
      (i)    Coordinate activities and work with industrial real estate brokers in the Chicago metropolitan area;
      (j)    Maintain and operate an office within the City of Chicago for the promotion and development of OIP;
      (k)    Provide regular written reports to the City, but not less frequently than quarterly, of all economic development activity including the names of all industrial prospects.
      (k)    Perform all other services as outlined and contained in the written proposal of Plaza Property Advisors dated March 17, 2003; and
      (l)    Perform such other services as the City may reasonably require to accomplish the objective of increasing the job base within the City by attracting industry and distribution centers to the City.

      5.    <u>Independent Contract</u>. Landreth understands and agrees that his obligation under this Agreement is to serve the City for the promotion and development of commercial and industrial development. It is understood and agreed between the parties that all persons working for Landreth under this Agreement, if any, shall be employees of Landreth and shall be in no

way considered employees of the City. Should any liability arise under the Illinois Worker's Compensation Act during any time that employees are working for Landreth, said employees are covered by the Illinois Worker's Compensation Act and are the employees of Landreth. Neither Landreth nor his employees shall hold himself or themselves out to be employees, agents, or servants of the City.

6.   Best Efforts. Landreth agrees to devote his best efforts to the City's interest and to endeavor in every way to make successful the promotion of the City as a significant commercial and industrial location.

7.   Revocation. The City understands the long-term nature of this Agreement and the long-term nature of economic development. Therefore, the City agrees and covenants not to revoke or rescind this agreement or to institute any proceeding or action to challenge the validity of this agreement or in any way to rescind, modify or alter said agreement, understanding that Landreth is relying upon the representations and financial commitment contained herein and has every right to do so. Notwithstanding the foregoing or any other provision of this agreement to the contrary, either party to this agreement my cancel this agreement for any reason by providing the other party with not less than thirty (30) days prior, written notice of cancellation.

8.   Waiver. Waiver by either party of a breach of any term, condition or covenant herein shall not be deemed a waiver of any other term or condition or covenant.

9.   Breach. Upon a breach of any term or provision of this Agreement, the non-breaching party shall immediately provide a written notice to the other party describing the nature of the breach and a request for its immediate cure. In the event that said breach has not been cured within thirty (30) days of the issuance of written notice as aforesaid, then the non-breaching party may take such action as it deems necessary for the specific performance of this Agreement or its termination.

Upon termination of this agreement, Landreth shall provide the City with a list of all industrial prospects within thirty days of termination. Said list will serve as a registration of prospects with the City. In the event that any of these prospects shall purchase land in a City TIF district or future TIF district (or any other location as mutually determined) within one year 180 days of the termination of this agreement, then Landreth shall be paid a fee in accordance with Section 3(d) hereof. In the event that any of the prospects purchases land as aforesaid within the period of 13 to 24 months following termination of this agreement, then Landreth shall be paid 75% of the fee provided in Section 3(d) hereof.

10.   Assignability. It is agreed that neither party shall have the right to assign this Agreement, in whole or in part, without the written consent of the other party.

11.   Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective assessors or assigns.

12.   Warranties. The parties warrant and represent that :

4

a.    Each of the undersigned representatives of such party has been duly authorized by such party to execute this Agreement on behalf of such party;

b.    This Agreement is binding, valid and specifically enforceable according to its terms against each party;

c.    This Agreement does not violate any presently existing provision of law or any applicable order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality to which such party may be subject;

d.    This Agreement does not constitute a default under any indenture, mortgage, deed of trust, agreement or contract of any kind to which such party may be bound;

e.    There are no pending legal proceedings by any party against the other party.

13.    <u>Headings</u>. The headings of the sections of this Agreement are for convenience and reference only and in no way define, extend, limit or describe the scope or intent of this Agreement or any provision hereof.

14.    <u>Execution and Counterparts</u>. This Agreement may be executed in multiple identical counterparts and all of said counterparts shall, taken together, constitute the same agreement.

15.    <u>Disclosure</u>. The parties have jointly utilized the law firm of Pool, Leigh & Fabricius with respect to this Agreement, and each party acknowledges this fact and hereby expressly authorizes such joint representation. Each party also waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation.

Executed in duplicate this ___7th___ day of ___September___, 2005, by authority of a resolution of the Council of the City and by Landreth.

**City of Ottawa, Illinois**

By: _____          _____
       **Robert M. Eschbach, Mayor**                              **John Colt Landreth**

Attest:

_____
**Shelly L. Munks, City Clerk**
F:\Docs\ottawa\Contracts-Agreements\Landreth Consulting 8-05.doc

State of Illinois      )
                       )      SS
County of LaSalle      )

I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that Robert M. Eschbach, personally known to me to be the Mayor of the City of Ottawa, Illinois, and Shelly L. Munks, personally known to me to be the Clerk of said City, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as Mayor and Clerk of said City, they signed and delivered said instrument in their official capacities as caused the corporate seal of said City be affixed thereto, pursuant to authority given by the Council said City, as the free and voluntary act and deed of said City, for the uses and purposes therein set forth.

Given under my hand and notarial seal this _____ day of _____, 2005.

_____
Notary Public

State of Illinois    )
                      )    SS
County of LaSalle   )

      I, the undersigned, a notary public, in and for the County and State as aforesaid, do hereby certify that John Colt Landreth, personally known to me to be the same person whose names is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act and deed for the uses and purposes therein set forth.

      Given under my hand and notarial seal this _____ day of _____, 2005.


_____
                   Notary Public

F:\Docs\ottawa\Contracts-Agreements\Landreth Consulting 8-05.doc

7

# RESOLUTION NO. 137 -2005

## A RESOLUTION REPEALING RESOLUTION NO. 106-2005

**WHEREAS**, on September 6, 2005, the Council of the City of Ottawa, Illinois adopted Resolution No. 106-2005 authorizing the execution of a Consulting, Development and Marketing Agreement between the City of Ottawa and John Colt Landreth, and

**WHEREAS**, the Mayor of the City of Ottawa did, pursuant to said Resolution, execute the Consulting, Development and Marketing Agreement as aforesaid, and

**WHEREAS**, the John Colt Landreth has not executed the Consulting, Development and Marketing Agreement, and

**WHEREAS**, John Colt Landreth has proposed different terms and conditions with respect to the Consulting, Development and Marketing Agreement, and

**WHEREAS**, there has been no meeting of the minds with respect to the agreement as previously authorized by virtue of the adoption of Resolution No. 106-2005.

**NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL OF THE CITY OF OTTAWA, ILLINOIS, AS FOLLOWS:**

**Section One:** That the foregoing preambles are incorporated herein by reference as if set forth verbatim.

**Section Two:** That Resolution No. 106-2005 adopted September 6, 2005, be, and the same is hereby repealed.

**Section Three:** That all Resolutions or parts thereof which are in conflict herewith are hereby repealed.

**Section Four:** That this Resolution shall be in full force and effect immediately after its passage and approval as required by law.

Ayes: _____5_____

Nays: _____0_____

Absent: _____0_____

Passed and Approved this 6th day of December, 2005.

Robert M. Eschbach, Mayor

**ATTEST:**

Shelly L. Munks, City Clerk

**EXHIBIT 2**

L:\Docs\ottawa\Resolutions\Repeal 106-2005 Landreth Agreement.doc

(SC28) ORDER - PROOF OF SERVICE                                    ORDPRFS (12/99)

# UNITED STATES OF AMERICA
## STATE OF ILLINOIS        COUNTY OF LASALLE
## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT

LANDRETH

- VS -

CITY OF OTTAWA   LASALLE COUNTY CIRCUIT CLERK   Case No. 07-L-17
THIRTEENTH JUDICIAL CIRCUIT

FILED
FEB 2 8 2003
LaSalle County Circuit Clerk

## ORDER

For the reasons stated on the record in open court after hearing arguments of counsel,

IT IS ORDERED that plaintiff's Complaint be, and it is hereby, DISMISSED WITH PREJUDICE, the Court finding that Section 8-1-7 of the Illinois Municipal Code bars the action because (1) there was no prior appropriation for the contract sought to be enforced and (2) the contract sought to be enforced, or the financial obligations thereunder, would extend beyond the term of the Mayor in office at the time the contract was executed.

Dated: ___2-28-08___

_____
Judge

=====================================================

## PROOF OF SERVICE

I hereby certify that a copy hereof was duly served upon:

Name: _____         Name: _____
Address: _____         Address: _____

_____         _____

Name: _____         Name: _____
Address: _____         Address: _____

_____         _____

on the _____ day of _____ ,20 _____.     By personal service ☐   U.S. Mail ☐

Signed: _____
Title: _____