# EXHIBIT A



STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

FILED
Date: FEB 11 2008
COPY

LORITA ALDANA-HAYWOOD,    )
                          )
        Plaintiff,        )
                          )    Case No. 08 L 54
    v.                    )
                          )
                          )
SMITHKLINE BEECHAM CORP., d/b/a  )
GLAXOSMITHKLINE           )
                          )
        Defendant.        )
                          )
                          )

## COMPLAINT

Plaintiff, Lorita Aldana-Haywood, by and through her below-listed attorneys, alleges as follows:

## STATEMENT OF FACTS

1.    This is an action to recover damages for personal injuries sustained by the Plaintiff, Lorita Aldana-Haywood, ("Plaintiff"), as the direct and proximate result of the wrongful conduct of the Defendant, SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, (hereinafter referred to as "Defendant" or "GSK"), in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely-used diabetes prescription drug Avandia (rosiglitazone).

235998    1

## STATEMENT OF PARTIES

2.      Plaintiff, Lorita Aldana-Haywood, is a resident of Winnebago County, Illinois and brings this action to recover damages for personal injuries sustained as a result of ingesting Avandia.

3.      GlaxoSmithKline (GSK) is incorporated under the laws of Pennsylvania and has its principal place of business in the United States at One Franklin Plaza, 200 N. 16th Street, Philadelphia, Pennsylvania. GSK is the surviving entity from the following mergers: On May 7, 1995, GSK merged into Burroughs Wellcome Co. In connection with that merger, Burroughs Wellcome Co. changed its name to Glaxo Wellcome, Inc. On March 31, 2001, Glaxo Wellcome, Inc. merged with GSK. As the surviving entity, GSK is liable for the actions and inactions of all the companies involved in the mergers. GSK is engaged in manufacturing, marketing, promoting, selling and/or distributing the drugs Avandia, Avandamet, and Avandaryl and regularly conducts business within the state of Illinois and within this circuit and derives substantial revenues from goods consumed in Illinois and within this circuit.

4.      At all times material to this lawsuit, the Defendant was engaged in the business of, or was successor in interest to, entity engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, distributing and/or selling the prescription drug product Avandia, Avandamet, and Avandaryl (hereinafter referred to individually or collectively as "Avandia" or "rosiglitazone") as an antidiabetic medication to the general public including Plaintiff.

5.      At all times material to this lawsuit, the Defendant was authorized to do business within the state of Illinois and did in fact supply Avandia within the state of Illinois.

## JURISDICTION AND VENUE

6.    The Circuit Court of Winnebago County has subject matter jurisdiction over this matter, pursuant to Article 6 of the Constitution of the State of Illinois.

7.    The Circuit Court of Winnebago County has personal jurisdiction over the Plaintiff, as she has entered a general appearance in this matter and voluntarily submits herself to the jurisdiction of this Court.

8.    The Circuit Court of Winnebago County has personal jurisdiction over the Defendant, as it is physically present in Illinois (through its registered agent) when it is properly served with the Summons and Complaint in this matter, and under 735 ILCS 5/2-209(a)(1) (for transacting business within the state), §2-209(a)(2) (for the commission of a tortious act within the State), §2-209(a)(7) (for the making or performance of a promise or contract within the state), and §2-209(b)(4) (for doing business within the state). Jurisdiction is also proper under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10(a).

9.    Venue is proper in the Circuit Court of Winnebago County, under 735 ILCS d/2-101, as this is the county in which the transaction or some part thereof occurred out of which the cause of action arose. Moreover, the Defendant is a nonresident of the State of Illinois, making jurisdiction proper in any county.

## FACTUAL ALLEGATIONS

10.    GSK manufactures, promotes, distributes, labels, and markets rosiglitazone under the trade name(s) of Avandia® Tablets, Avandamet® Tablets, and Avandaryl® Tablets.

11.    Rosiglitazone is a member of a class of drugs known as Thiazolidinediones (TZDs).

12.    Avandia® was first approved for use in the United States in 1999 for the use in treatment of type 2 diabetes mellitus, also known as non-insulin-dependent diabetes mellitus ("NIDDM") or adult-onset diabetes.

13.    In 2002, Avandamet®, a single pill combination of Avandia® and metformin, was approved in the United States for use in treatment of type 2 diabetes mellitus.

14.    In 2005, Avandaryl®, a single pill combination of Avandia® and Amaryl®, likewise was approved in the United States for use in treatment of type 2 diabetes mellitus.

15.    Type 2 diabetes is the most common form of diabetes and occurs where the body fails to properly use insulin (insulin resistance), combined with relative insulin deficiency[1]. Insulin, which is made in the pancreas, helps the body's cells use sugar from the bloodstream, which comes from foods and drinks.  Sugar is a source of energy for cells[2].  The third type, gestational diabetes, affects about 4% of all pregnant women - about 135,000 cases in the United States each year[3].

16.    Most people with diabetes have health problems -- or risk factors -- that increase the risk for heart disease and stroke. More than 65% of people with diabetes die from heart disease or stroke. With diabetes, heart attacks occur earlier in life and often result in death.

17.    Cardiovascular disease (CVD) is the main cause of death in these patients.  Thus, it is important that an antidiabetic agent reduce the risk of cardiovascular injury.

18.    During the past decade, numerous drugs have been introduced for the treatment of type 2 diabetes that, used in monotherapy or in combination therapy, are supposed to better control the disease in patients and reduce the health complications often associated with diabetes, such as heart attacks, strokes and other cardiovascular complications.

---

[1] http://www.diabetes.org/about-diabetes.jsp
[2] Id.
[3] Id.

19.    Thiazolidinediones (TZDs) are a novel class of insulin-sensitizing antidiabetic agents.  In the USA and Canada, two TZDs are indicated for use in type 2 diabetes mellitus, rosiglitazone and pioglitazone.  A third, troglitazone (Rezulin) has been removed from the market because of an association with significant hepatotoxicity.

20.    At all relevant times, GSK was in the business of designing, licensing, promoting, manufacturing, marketing, selling and distributing pharmaceuticals and other products, including Avandia.

21.    GSK is licensed to do business and in fact does business by agent in the state of Illinois.  At all relevant times, GSK designed, developed, licensed, marketed, manufactured, sold and placed in the stream of commerce Avandia, including the Avandia at issue in this lawsuit.  GSK did this throughout the United States, in this circuit and in the state of Illinois.

22.    On or about August 2001, Lorita Aldana-Haywood purchased and began to use Avandia which had been prescribed for her by a physician licensed in the state of Illinois and she used it as prescribed.  Avandia was manufactured, sold, distributed, and placed in the stream of commerce by the Defendant.

23.    At the time Ms. Aldana-Haywood began to use Avandia, she did not know, and could not have known, that Avandia was defective and could cause injury and death.

24.    Lorita Aldana-Haywood did not know, and could not have known, that prior to the date she used Avandia referred to above, that the Defendant was aware and had knowledge that Avandia which it manufactured, marketed, sold, and distributed was defective and had the propensity to cause severe injury including death.

25.    In fact, Defendant knew as early as 1999 that Avandia was unreasonably dangerous and could cause heart attacks and deaths.

26.    In 1999, Dr. John B. Buse (the current president-elect of the American Diabetes Association), a diabetes expert and head of endocrinology at the University of North Carolina, Chapel Hill, raised concerns about Avandia and heart problems, including the risk of heart attack and death.

27.    GSK attempted to silence Dr. Buse and further conceal the true nature of Avandia risks by threatening Dr. Buse with a $4 Million lawsuit and by characterizing him as a liar[4].

28.    In response to GSK's pressure, Dr. Buse sent a three-page letter to Dr. Tadataka Yamada, GSK's Chairman of Research and Development. In the letter, Dr. Buse wrote, "I may disagree with GSK's interpretation of that data…I am not for sale ... Please call off the dogs. I cannot remain civilized much longer under this kind of heat." Eventually, Dr. Buse signed a clarifying statement with the company to help ease investor concerns.

29.    On March 15, 2000, John Buse, MD wrote a letter to the FDA again raising concerns about a "worrisome trend in cardiovascular deaths and severe adverse events" associated with Avandia:

> I would like you to know exactly what my concerns are regarding rosiglitazone as a clinical scientist and my approach as a clinician. On the basis of the increase in LDL concentration seen in the clinical trial program (whether the number we accept as the truth is the 18.6% at 4 mg bid in the package insert or the "average of 12%" now being discussed) one would expect an increase in cardiovascular events….Based on studies with statins and plasmapheresis, changes in LDL concentration can be associated with substantial changes in vascular reactivity and endothelial function over a time course of days to weeks[5].

30.    Dr. Buse was not the only person to alert GSK to the increased risk of heart attack and death associated with Avandia. Shortly after Dr. Buse raised concerns related to increased

---

[4] John Buse, M.D. Congressional Hearing Transcript (June 6, 2007).
[5] Letter from Dr. Buse to FDA (March 15, 2000).

risk of heart attacks associated with Avandia, Public Citizen filed a petition, on March 7, 2000, seeking immediate class labeling changes for all marketed TZDs[6], including rosiglitazone.

31.    In an independent investigation of the TZDs, Public Citizen, after studying reviews by FDA Medical Officers, Statisticians, and Pharmacologists, transcripts of FDA advisory committee meetings, and scientific literature on troglitazone, rosiglitazone, and pioglitazone, argued that information associating rosiglitazone to heart attacks and serious cardiovascular injuries "was never included in the label, or seriously understated[7]."

32.    Public Citizen cited studies submitted to the FDA for approval that evidenced lack of efficacy and increase in cardiovascular risks, including but not limited to the increased risk of suffering a heart attack.

33.    Public Citizen argued that no where in the product insert was there any mention of myocardial infarction even where the increased risk of myocardial infarctions was found in GSK's own studies.

34.    Public Citizen pointed to several studies, many of which were studies conducted by GSK. The conclusion reached by Public Citizen was that rosiglitazone was not as effective as alleged and the ingestion of rosiglitazone increased the risk of myocardial infarction, death and other serious cardiovascular injuries[8].

35.    This is obviously a major concern since diabetics are already susceptible to an increased risk of cardiovascular injury.

36.    In addition to the concerns raised by Dr. Buse and Public Citizen, there has also been three meta-analyses conducted. Each meta-analysis has found that Avandia increases the

---

[6] Public Citizen's Petition to the FDA requesting that it immediately require labeling for diabetes drugs troglitazone (Rezulin), rosiglitazone (Avandia) and pioglitazone (Actos) (HRG Publication #1514) (March 7, 2000)
[7] Id. at 1
[8] Id. at 6

risk of cardiovascular-related injury, including but not limited to myocardial infarction and death.

37.    A meta-analysis combines the result of several studies that address a set of related research hypotheses.

38.    The first analysis was performed by GSK and was handed over to the FDA in August of 2006.  The meta-analysis consisted of 42 separate double-blinded, randomized, controlled clinical trials to assess the efficacy of rosiglitazone for treatment of type 2 diabetes compared to either placebo or other antidiabetic therapies in patients with type 2 diabetes.  The combined studies included 8,604 patients on rosiglitazone and 5,633 patients randomized to a variety of alternative therapeutic regimens, including placebo.

39.    GSK's own meta-analysis found an overall incidence of myocardial ischemia in rosiglitazone-treated subjects.  The risk equated to more than a 30 percent excess risk of myocardial ischemic events in rosiglitazone-treated patients.

40.    A second meta-analysis conducted by Dr. Steven Nissen and Kathy Wolski titled Effect of Rosiglitazone on the Risk of Myocardial Infarction and Death from Cardiovascular Causes was published on May 21, 2007, in the New England Journal of Medicine (NEJM).

41.    Nissen and Wolski reviewed data available to them through published literature, the FDA website, and GlaxoSmithKline's clinical-trials registry.  The analysis included a review of 42 clinical trials involving nearly 28,000 patients.

42.    Nissen and Wolski concluded that "[r]osiglitazone was associated with a significant increase in the risk of myocardial infarction and with an increase in the risk of death from cardiovascular causes that had borderline significance[9]."

---

[9] Nissen SE and Wolski K., *Effects of Rosiglitazone on the Risk of Myocardial Infarction and Death from Cardiovascular Causes*, N Engl J Med; 356, May 21, 2007.

43.    Hence, it was found that patients suffering from type 2 diabetes mellitus have a higher risk of experiencing a heart attack within seven years than non-diabetic patients. But a diabetic taking Avandia has a much greater risk of suffering a heart attack or serious cardiovascular event – an estimated 43 percent increase or greater –when compared with other diabetes drugs or placebos.

44.    On July 30, 2007, the FDA presented its results of the FDA meta-analysis. Similar to the GSK and Nissen/Wolski findings, the FDA likewise found an increase risk of heart attack, cardiovascular death, stroke and other serious ischemic related adverse events and ultimately recommended that a boxed warning be placed on the Avandia label.

45.    Thus, while GSK's rosiglitazone-containing drugs are marketed and sold by GSK as antidiabetic agents that reduce a diabetic patient's risk of heart attacks, studies conducted by GSK showed that rosiglitazone actually increases those risks by 43 percent according to the Nissen/Wolski meta-analysis and by 31 percent according to GSK's own meta-analysis.

46.    Yet, even with this information available to it, GSK failed to warn consumers and the medical community about the increased risk of heart attacks and other serious injuries associated with Avandia.

47.    Moreover, Defendant has repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which issues relating to public hazards should be warned about.

48.    For instance, after the FDA required GSK to change its label on February 8, 2001, to reflect a risk of heart failure observed in patients on Avandia and Insulin, GSK defied FDA recommendations by engaging in false and misleading promotional activities.

49.    In a letter dated February 22, 2001, the FDA's Division of Drug Marketing, Advertising and Communications (DDMAC) informed GSK that all promotional materials for Avandia should be revised to prominently include the new risks, no later than March 8, 2001.

50.    GSK responded on March 1, 2001, wherein GSK committed to include the new risk information by March 8, 2001.

51.    However, instead of complying with FDA requirements GSK's sales representatives engaged in false or misleading promotional activities with respect to the new risk information in Avandia's product labeling.

52.    In a Warning Letter dated July 17, 2001, the FDA warned GSK that it had engaged in a continual violation of federal regulations in its promotional activities for the marketing of Avandia.

53.    In that July 17, 2001 letter, the FDA warned that the DDMAC had been monitoring its marketing of Avandia and had:

> [C]oncluded that GSK has promoted Avandia in violation of the Federal Food, Drug, and Cosmetic Act (Act) and its implementing regulations. See 21 U.S.C. §§ 331(a),(b), and 352(a),(n).

> Specifically, during the 10th Annual American Association of Clinical Endocrinologists (AACE) Meeting in San Antonio, Texas, on May 2-6, 2001, representatives of GSK made oral representations denying the existence of serious new risks associated with Avandia at GSK's promotional exhibit booth. Additionally, GSK displayed Exhibit panels (AV013G) at the meeting that minimized these new risks associated with Avandia.

> Your promotional activities that minimize serious new risks are particularly troublesome because we have previously objected, in two untitled letters, to your dissemination of promotional material for Avandia that failed to present any risk information about Avandia or minimized the hepatic risk associated with Avandia. Despite your assurances that such violative promotion of Avandia had ceased, your violative promotion of Avandia has continued. [10]

---

[10] Letter from Thomas Abrams, R.Ph., MBA, Director of the FDA's Division of Drug Marketing, Advertising and Communications to JP Garnier, Chief Executive Officer, GlaxoSmithKline (July 17, 2001) (on file with the FDA).

54.    Following the May 21, 2007 NEJM publication of the Nissen/Wolski meta-analysis, the FDA issued a safety alert for Avandia and advised patients who take it to consult their doctors.

55.    On June 1, 2007, GSK published a "Dear Avandia Patient" letter, which responded to the "recent press coverage about the safety of Avandia." Therein, GSK stated that it "stands firmly behind Avandia" and that "Avandia is the most widely studied medicine for type 2 diabetes" and that the evaluation of clinical trials by "well-informed experts and researcher has been encouraging."

56.    At the congressional hearing on June 6, 2007, the FDA indicated that a black box warning should be added to rosiglitazone (Avandia), for increased risk of heart failure.

57.    On July 30, 2007, the FDA held an Advisory Committee Hearing on the safety of Avandia. The panel was determining whether to recommend keeping the label the same, adding a black box warning, or taking Avandia off the market all together.

58.    Dr. David Graham, testifying on behalf of the FDA, called for withdrawing Avandia and estimated that its toxic effects on the heart had caused up to 205,000 heart attacks and strokes, some fatal, from 1999 to 2006. For every month that Avandia is sold, Dr. Graham said, 1,600 to 2,200 patients will suffer more of those problems.

59.    The FDA provided testimony that Avandia offers no unique benefits compared to other drugs in battling diabetes, but that all indications point to increased risks of heart attack and sudden death.

60.    The panel of advisers to the Food and Drug Administration voted 20-to-3 that Avandia increases the risks of heart attacks.

61.    Despite knowing of this defect prior to the date of Lorita Aldana-Haywood's injury due to the use of Avandia, the Defendant took inadequate steps to advise physicians, hospitals, nursing homes and other health care providers of the possibility of heart attacks and death.

62.    Despite having actual notice of the dangerous propensities associated with Avandia, prior to the date Lorita Aldana-Haywood purchased and used Avandia, the Defendant took inadequate steps to advise consumers or medical providers, including Lorita Aldana-Haywood of the known dangers of Avandia consumption, including but not limited to the increased risk of heart attacks and deaths. The Defendant failed to take adequate steps to ensure that the Avandia it manufactured was safe for the public and would function in the manner in which they were intending.

63.    The Avandia ingested by Lorita Aldana-Haywood was defective in that it exposed her to the risk of suffering a heart attack and that it could ultimately lead to her death. As a result of using said Avandia, Lorita Aldana-Haywood suffered a heart attack in February 2006 as a direct and proximate result of her ingestion of Avandia.

64.    Even after being made aware of the numerous reports of myocardial infarctions, including those adverse events that occurred during GSK's own studies, Defendant still failed to take all reasonable and necessary steps to ensure that the consuming public, including Plaintiff, was aware of the increased risk of suffering a heart attack or death. As stated in the above, Defendant knew that Avandia caused heart attacks and deaths.

65.    Plaintiff alleges that GSK was aware of the dangerous propensity of Avandia referred to herein, that they knew the risks and dangers posed to those using Avandia, and

Defendant acted with willful and wanton disregard for the safety of the consuming public, including Plaintiff.

66.    Defendant has widely promoted the use of Avandia as a safe and effective method of treating type 2 diabetes mellitus.

67.    Due to the efforts of the Defendant, sales of Avandia rose to more than three billion ($3,246,555,709.7600) dollars in 2006[11].

68.    GSK's net income (adjusted earnings) in 2006 was approximately $10.6 billion.

69.    As a result of Defendant's efforts and actions, the sales of Avandia have become an enormous source of profits for Defendant.

70.    Accordingly, the Defendant had a significant financial incentive to suppress, misrepresent and/or conceal any potential dangers or risks associated with Avandia.

71.    Plaintiff asserts that GSK acted for the purpose of maximizing profits at the expense of the health of Lorita Aldana-Haywood, and the health of others using Avandia. Plaintiff further asserts that this Defendant had actual or constructive knowledge that Avandia posed a significant danger to anyone who used the drug, yet failed to take adequate or timely actions to prevent the injuries and deaths of users of Avandia or to warn the public of these dangers.

72.    GSK failed to adequately or appropriately disclose material information relating to the dangers associated with Avandia. As a result, users of Avandia, including Lorita Aldana-Haywood, were unaware of these dangers, did not have adequate information to know the warnings signs of being exposed to rosiglitazone and were therefore unable to avoid injury caused by using this defective drug product.

---

[11] http://www.gsk.com/investors/reps06/annual_review_2006/key_products.htm

## COUNT ONE - STRICT LIABILITY

73.    Plaintiff adopts and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

74.    Defendant was, at all relevant times, engaged in the business of designing, creating, manufacturing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce Avandia.

75.    Lorita Aldana-Haywood purchased and/or otherwise properly acquired Avandia.

76.    Avandia reached Lorita Aldana-Haywood, the ultimate user and consumer of this product, without any substantial change in its condition from the time it was manufactured and/or sold by Defendant.

77.    Avandia, when it reached Lorita Aldana-Haywood, was in a defective condition and/or was in a condition that was unreasonably dangerous to the ultimate user or consumer. Said Avandia was dangerous to an extent beyond that which would be contemplated by the ordinary user or consumer who purchased it with the ordinary knowledge common to the community as to the product's characteristics.

78.    Lorita Aldana-Haywood used Avandia, as it was designed and intended to be used, and suffered a myocardial infarction as a result.    Said injuries were the direct and proximate result of the product's defective and/or unreasonably dangerous condition.

79.    As a direct and proximate result of Defendant's designing, creating, manufacturing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the Avandia at issue in this lawsuit, Lorita Aldana-Haywood suffered a myocardial infarction.

80.     The conduct of this Defendant, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Lorita Aldana-Haywood and the users and ultimate consumers of this product.

81.     Defendant showed a reckless disregard for the public safety due to Defendant's acts and omissions as set forth in this Complaint. Defendant knew, or should have known, that there was a substantial and unnecessary risk of injury and death to those who used Defendant's product and Defendant failed to either determine the seriousness of the danger or reduce the risk to an acceptable minimal level.

82.     There was a serious risk of harm to the public that resulted from the defect in Avandia. Defendant was aware of the existence and seriousness of the defects prior to the injury of Lorita Aldana-Haywood. Defendant did not correct the defects, or take other steps to reduce the danger of injury. The amount it would have cost to correct the defect, or reduce the danger, was small compared to the risk the defect posed to consumers and users of Avandia. The amount of profits that Defendant received from other sales of the defective drug was in the millions of dollars. Defendant attempted to conceal the defect or deceive the public about the safety of Avandia; and, Defendant has very significant financial resources.

83.     At all times relevant herein, Defendant manufactured, labeled, sold, distributed, supplied, dispensed, promoted and/or otherwise placing into the stream of commerce Avandia which was defective, including one or more of the following particulars:

> a.     Avandia contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Lorita Aldana-Haywood to risks which exceeded the benefits of the drug;

b.   When manufactured, packaged, assembled, labeled, distributed, supplied, and placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiff to risks which exceeded the benefits of the drug;

c.   When manufactured, packaged, assembled, labeled, distributed, supplied, and placed in the stream of commerce, it was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with diabetes;

d.   Avandia was insufficiently tested;

e.   Avandia was marketed to be used in a combination which was known to the Defendant to cause harmful side effects which outweighed any potential utility;

f.   Avandia is not safe for its intended use as an anti-diabetic agent;

g.   GSK failed to provide adequate warning of the danger involved in the administration of rosiglitazone;

h.   GSK failed to warn against the use of Avandia without proper supervision and monitoring;

i.   The defective Avandia was defective in design and formulation, making use of the product more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

j.   The defective Avandia contained insufficient and/or incorrect warnings to alert consumers and users of the risks of adverse effects;

k.    The defective medication was not safe for their intended use and were inadequately tested; and/or

l.    The defective Avandia was not accompanied by adequate instructions and/or warnings to fully apprise the prescribing physicians as well as the ultimate consumers, including Lorita Aldana-Haywood, of the full nature or extent of the risks and side effects associated with its use.

84.    Defendant knew and intended that the Avandia would be used by such consumers without any inspection for defects, and would rely upon the representations made by Defendant on the product label and otherwise.

85.    At the time of its manufacture and sale to Plaintiff, Avandia was unsafe and defective to consumers using said product for its advertised purposes and in a reasonably foreseeable manner, in that it posed an unreasonably high risk of serious injury or death to consumers, which information was concealed by Defendant.

86.    Prior to the manufacturing, sale and distribution of Avandia, Defendant knew, or was reckless in not knowing, that Avandia was in a defective condition.

87.    Lorita Aldana-Haywood used the products for its intended purpose and could not have discovered any defect therein through the exercise of due care.

88.    Defendant, as manufacturers, marketers, distributors and sellers of Avandia are held to the level of knowledge of an expert in their field.

89.    Lorita Aldana-Haywood did not have substantially the same knowledge, as an adequate warning from Defendant should have communicated to her.

90.     But for the aforementioned defective and unreasonably dangerous conditions, the drug would not have been prescribed to Plaintiff, Plaintiff would not have ingested the drug, and Plaintiff would not have suffered a heart attack as alleged herein.

91.     As a direct and legal result of the defective condition of the drug, Plaintiff suffered a myocardial infarction in February 2006.

92.     WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

## COUNT TWO - NEGLIGENCE

93.     Plaintiff adopts and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

94.     Defendant had a duty to exercise reasonable care in designing, creating, manufacturing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce Avandia.

95.     Defendant failed to exercise reasonable care in designing, creating, manufacturing, testing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce Avandia.

96.     At all times material hereto, Defendant had a duty to Plaintiff to exercise reasonable care in the making, creation, manufacture, assembly, design, sterilization, testing, labeling, supplying, packaging, distribution, promotion, marketing, advertising, warning and/or sale of their respective drug products.

97.    Defendant breached that duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff in ways which include, but are not limited to, the following:

a.    Failure to include adequate warnings with the drugs that would alert physicians to the potential risks and serious side affects of the drugs;

b.    Failure to adequately and properly test the drugs before placing the drugs on the market;

c.    Failure to conduct sufficient testing on the drugs which, if properly performed, would have shown that the drugs had serious and dangerous side effects;

d.    Failure to adequately warn Plaintiff's prescribing physician that use of the drugs should be accompanied by a professional examination and regularly scheduled follow-up examinations so that myocardial infarctions and other serious cardiovascular injuries could be avoided or detected early;

e.    Failure to adequately warn Plaintiff's prescribing physician that use of the drug carried a risk of temporary or permanent disability due to myocardial infarction or death;

f.    Failure to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of myocardial infarction and death from the use of Avandia;

g.    Failure to adequately warn Plaintiff's prescribing physician that the drug products should not be prescribed for a long period of time;

233998                                  19

h.    Failure to warn Plaintiff's prescribing doctors that the drug product would not reduce diabetic complications and actually increase one's risk of myocardial infarction and death;

i.    Failure to warn Plaintiff's prescribing doctors that the use of the drug products had not been studied as to safety in animals or humans;

j.    Encouraging misuse and overuse while underplaying the side effects to doctors and the public in order to make a profit from sales;

k.    Failure to properly manufacture, develop, assemble, prepare, design, sterilize, test, label, supply, package, distribute, promote, market, advertise, warn, and sell Avandia; and

l.    Failure to conduct proper, adequate and appropriate pre- and post-marketing surveillance of drug reactions, adverse events, and safety signals, including failure to recognize clear product safety signals, as proper surveillance would have revealed.

98.    Defendant knew, or should have known, that the defective condition of Avandia created an unreasonable risk of bodily harm to anyone using said products.

99.    Despite the fact that Defendant knew, or should have known, that the defective condition of Avandia could cause serious and life threatening injuries to anyone who used Avandia. Defendant took inadequate steps to ensure that said products were safe, to notify consumers of this danger, to prevent said products from being used by persons such as Lorita Aldama-Haywood.

100. Defendant knew, or should have known, that it was foreseeable that consumers, such as Lorita Aldana-Haywood, would suffer injuries as a result of these Defendant's failures to exercise ordinary care.

101. The negligence of Defendant was a direct or contributing cause of the heart attack of Lorita Aldana-Haywood.

102. The negligent conduct of Defendant as set out in this Complaint was a direct and proximate cause of the heart attack of Lorita Aldana-Haywood.

103. There was a serious risk of harm to the public that resulted from the defect in Avandia. The Defendant was aware of the existence and seriousness of the defect. Defendant did not correct the defect, or take other steps to reduce the danger of injury.

104. The amount it would have cost to correct the defect, or reduce the danger, was small compared to the risk the defect posed to consumers and users Avandia. The amount of profits that Defendant received from other sales of the defective drug was in the millions of dollars.

105. The Defendant attempted to conceal the defect or deceive the public about the safety of Avandia; and the Defendant has very significant financial resources.

106. But for the Defendant's negligent conduct as described herein, Plaintiff's prescribing physician would have never prescribed Avandia, Plaintiff would not have ingested Avandia, and Plaintiff would not have suffered harm from ingesting Avandia.

107. As a direct and legal result of the negligence of Defendant, Plaintiff suffered a myocardial infarction.

108.   The conduct of GSK, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Lorita Aldana-Haywood and the users and ultimate consumers of this product.

109.   WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

## COUNT THREE – BREACH OF IMPLIED WARRANTY

110.   Plaintiff adopts and realleges each of the foregoing paragraphs of this complaint as if fully set forth herein.

111.   At the time GSK marketed, distributed, and sold Avandia to Plaintiff, GSK warranted that Avandia was merchantable and fit for the ordinary purposes for which it was intended.

112.   GSK sold Avandia with an implied warranty that it was fit for the particular purpose of safely treating diabetes.

113.   Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

114.   Avandia was not merchantable and fit for its ordinary purpose because it had a known propensity to lead to heart attack and stroke, among other serious side effects, and could cause death.

115.   Avandia was not fit for the particular purpose of safely treating diabetes, because it had a known propensity to lead to heart attack and death, among other serious side effects.

116.   Plaintiff reasonably relied upon GSK's representations that Avandia was safe and free of defects and was safe for treating diabetes.

117.   GSK's breach of the implied warranty was the direct and proximate cause of Plaintiff's injury.

118.   The conduct of GSK, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Lorita Aldana-Haywood and the users and ultimate consumers of this product.   GSK made conscious decisions not to redesign, revise the label, warn or inform the consuming public.

119.   WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

### COUNT FOUR – BREACH OF EXPRESS WARRANTY

120.   Plaintiff adopts and realleges each of the foregoing paragraphs of this complaint as if fully set forth herein.

121.   GSK expressly warranted that Avandia was safe and effective to members of the consuming public, including Lorita Aldana-Haywood.

122.   Members of the consuming public, including Lorita Aldana-Haywood, were intended third party beneficiaries of the warranty.

123.   GSK marketed, promoted and sold Avandia as safe for the treatment of diabetes.

124.   Avandia does not conform to these express representations because it is not safe and has serious side effects, including myocardial infarction and death.

125.   GSK breached their express warranty in one of more of the following ways:

   a.   Avandia, as designed, manufactured, sold and/or supplied by GSK, was defectively designed and placed in to the stream of commerce by GSK in a defective and unreasonably dangerous condition.

b. GSK failed to warn and/or place adequate warnings and instructions on Avandia.

c. GSK failed to adequately test Avandia.

d. GSK failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from Avandia.

126.    Plaintiff reasonably relied upon GSK's warranty that Avandia was safe and effective when she purchased and used the medication.

127.    Plaintiff's injuries were the direct and proximate result of GSK's breach of their express warranty.

128.    The conduct of GSK, as set forth herein, was so outrageous and improper as to constitute willful, wanton and reckless disregard for the safety of Lorita Aldana-Haywood and the users and ultimate consumers of this product. GSK risked the lives of their consumers, including Plaintiff, with knowledge of the safety and efficacy not to redesign, revise the label, warn or inform the consuming public, in addition to suppressing this information from the general public.

129.    WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

## COUNT FIVE – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT § 815 ILCS 505

130.    Plaintiff adopts and realleges each of the foregoing paragraphs of this complaint as if fully set forth herein.

23569B                                          24

131.   At all times relevant and material hereto, Defendant conducted business, trade, and commerce with the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 ILCS 505.

132.   By reason of the conduct alleged herein, by making false and misleading statements about Avandia's safety and effectiveness through false and/or misleading advertising, representations and statements with the intent to induce or cause reliance, Defendant violated the laws prohibiting unfair and deceptive acts and practices of the Illinois Consumer Fraud and Deceptive Business Practices Act.

133.   Unfair or deceptive acts or practices are defined and declared unlawful in Illinois. The unfair or deceptive acts or practices as defined in Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2 include, "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact... in the conduct of any trade or commerce."

134.   GSK violated the Act by its use of false and misleading misrepresentations or omissions of material fact in connection with the sale of Avandia.  GSK communicated the purported benefits of Avandia, while failing to disclose the serious and dangerous side effects associated with the use of its product, and in fact actually concealing from health care providers the adverse cardiovascular effects of Avandia.

135.   As a result of violating the Illinois consumer fraud statute, GSK is liable to plaintiff for actual damages, costs and reasonable attorneys' fees, and for such additional relief as the Court may deem appropriate.

136.    WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages in an amount to be determined by a jury and demands trial by jury of all issues triable as of right by a jury.

## PRAYER FOR RELIEF

137.    As a proximate, direct and legal result of Defendant's negligent, willful, wanton, malicious and/or oppressive behavior, Plaintiff seeks judgment and relief from Defendant including, but not limited to, compensatory damages as allowed by law; incidental and consequential damages as allowed by law; attorneys fees and costs as allowed by law; any other relief to which the Court finds Plaintiff entitled.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this civil action.

Respectfully submitted January ___, 2008.

David M. Cialkowski
IL ARDC # 6255747
Zimmerman Reed, PLLP
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Phone: 612.341.0400
Fax: 612.341.0844
dmc@zimmreed.com

Of Counsel:

Bryan Aylstock
803 North Palafox Street
Pensacola, Florida 32501
(850) 916-7450
baylstock@nwkolaw.com

Vance Andrus
*Andrus Boudreaux, PLC*
1775 Sherman Street
Denver, Colorado 80203
(303) 376-6360
(303) 376-6361 Fax
vandrus@yahoo.com

Joseph Zonies
*Reilly Pozner & Connelly LLP*
511 Sixteenth Street, Suite 700
Denver, Colorado 80202
(303) 893-6100
(303) 893-6110 Fax
jzonies@litigationcolorado.com

ATTORNEYS FOR PLAINTIFF



**CORPORATION SERVICE COMPANY®**

RECEIVED

MAR 1 3 2008

DEBRA HINTON
LAW DEPARTMENT

## Notice of Service of Process

WCE / ALL
Transmittal Number: 5652968
Date Processed: 03/12/2008

| | |
|---|---|
| Primary Contact: | Debra Hinton<br>SmithKline Beecham Corporation<br>One Franklin Plaza<br>200 North 16th, FP 2335<br>Philadelphia, PA 19102 |

| | |
|---|---|
| Entity: | SmithKline Beecham Corporation<br>Entity ID Number 1681448 |
| Entity Served: | SmithKline Beecham Corp., d/b/a Glaxosmithkline |
| Title of Action: | Lorita Aldana-Haywood vs. Smithkline Beecham Corp. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Product Liability |
| Court: | Winnebago County Circuit Court, Illinois |
| Case Number: | 08 L 54 |
| Jurisdiction Served: | Illinois |
| Date Served on CSC: | 03/11/2008 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | David M. Cialkowski<br>612-341-0400 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

To avoid potential delay, please do not send your response to CSC
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

LORITA ALDANA-HAYWOOD,          )
                                )
          Plaintiff,            )
                                )
v.                              )    Case No. __08 L54__
                                )
                                )
SMITHKLINE BEECHAM CORP., d/b/a )
GLAXOSMITHKLINE                 )
                                )
          Defendant.            )
                                )
                                )

## SUMMONS

TO THE ABOVE NAMED DEFENDANT: SMITHKLINE BEECHAM CORP., d/b/a
GLAXOSMITHKLINE

          Address:    One Franklin Plaza
                      200 N. 16th Street
                      Philadelphia, PA 19102

        You are hereby summoned and required to file with the clerk of this court an answer or
other response to the attached Complaint and Jury Demand within twenty (20) days after this
summons is served on you.

        If you fail to file your answer or other response to the Complaint and Jury Demand in
writing within the applicable time period, judgment by default may be entered against you by the
court for the relief demanded in the Complaint, without any further notice to you.

Dated this __11__ day of __Feb__, 2008.

                                        _Thomas A Klein_
                                             Clerk
                                        by Robin Collet

236057