**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| KIRK RAAB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. |
| | ) | |
| COUNTY OF JO DAVIESS, JO DAVIESS | ) | **JURY DEMAND** |
| COUNTY SHERIFF'S OFFICE, SHERIFF | ) | |
| LEO HEFEL in his official capacity as | ) | |
| Sheriff of Jo Daviess County and his | ) | |
| Individual capacity, CHIEF DEPUTY | ) | |
| COLIN FULRATH, in his official capacity | ) | |
| As Chief Deputy and his individual capacity,) | | |
| DONALD SCHWEIHS, in his official | ) | |
| Capacity as County of Jo Daviess Public | ) | |
| Defender and in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Kirk Raab, by and through his attorneys, Dolan Law Offices, P.C., complaining of

Defendants, COUNTY OF JO DAVIESS, JO DAVIESS COUNTY SHERIFF'S

OFFICE, SHERIFF LEO HEFEL in his official capacity and his individual capacity,

CHIEF DEPUTY COLIN FULRATH, in his official capacity and his individual capacity,

and DONALD SCHWEIHS, in his official capacity as County of Jo Daviess Public

Defender and his individual capacity, and states as follows:

**JURISDICTION AND VENUE**

1.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 and U.S.C.

§1343 because this action arises under the laws of the United States, specifically the

United States Constitution, the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983 and 42 U.S.C. §1988.

2.     This Court has supplemental jurisdiction, under 28 U.S.C. § 1367(a), over Plaintiffs' state law claims because that claim is so related to the claims in this action with the Court's original jurisdiction that it forms part of the same case or controversy.

3.     Venue is in this district and is proper pursuant to 28 U.S.C. Sec. 1391(b) because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

**THE PARTIES**

4.     Kirk Raab is a citizen of the United States and a resident of Jo Daviess County, Illinois.  Kirk Raab is a Sergeant at the Jo Daviess County Sheriff's Office and has been employed with the Sheriff's Office since December 22, 1999.

5.     The County of Jo Daviess is at all relevant times an administrative arm of the State of Illinois and maintains the Jo Daviess County Sheriff's Office to enforce the laws of the State of Illinois, to ensure the public safety and maintain order.

6.     The Jo Daviess County Sheriff's Office is a municipal agency of the County.  It maintains its headquarters at the Jo Daviess County Public Safety Building, 330 North Bench Street, Galena, Illinois

7.      Sheriff Leo Hefel was elected to the position of Sheriff of Jo Daviess County in November, 2006.  At all times relevant herein, Sheriff Hefel was the Sheriff of Jo Daviess County and is being sued individually and in his official capacity.  Sheriff Hefel, at all relevant times, was an agent for the County of Jo Daviess and the Jo Daviess

County Sheriff's Office and acted as a policy maker pursuant to color of governmental authority vested in him by the State of Illinois and Jo Daviess County.

8.    Chief Deputy Colin Fulrath is a police officer with the Jo Daviess County Sheriff's Office and also serves as the Chief Deputy since November, 2006. At all times relevant herein, Chief Deputy Fulrath is being sued individually and in his official capacity. Chief Deputy Fulrath, at all relevant times, was an agent for the County of Jo Daviess and the Jo Daviess County Sheriff's Office and acted as a policy maker pursuant to color of governmental authority vested in him by the State of Illinois and Jo Daviess County.

9.    Donald Schweihs, is the Public Defender for Jo Daviess County and Carroll County and is a private attorney with an office in Galena, Illinois, and is licensed and authorized to practice law within the State of Illinois. At all times relevant herein, Donald Schweihs is being sued individually and in his official capacity as Public Defender for Jo Daviess County. Mr. Schweihs, at all relevant times, was acting in concert with and under color of law with Jo Daviess County, the Jo Daviess County Sheriff's Office, Sheriff Hefel and Chief Deputy Fulrath to violate the plaintiff's rights under Section 1983.

## STATEMENT OF FACTS

10.    Prior to Defendant Hefel taking office as Sheriff of Jo Daviess County, Plaintiff Sergeant Kirk Raab had only minor performance related disciplinary matters.

11.    Prior to November, 2006, Defendant Donald Schweihs was the public defender for Jo Daviess County and was a private attorney practicing in Galena, Illinois.

12.     Prior to November, 2006, Defendant Schweihs ran for office for the Jo Daviess County State's Attorney position on one prior occasion.  Mr. Schweihs lost the election for Jo Davies' County State's Attorney.

13.     Following his loss, beginning in 2004, Defendant Schweihs began to interrogate his own clients through the Jo Daviess County Public Defenders' Office and falsely telling others within Jo Daviess' County that Plaintiff, Sergeant Raab and others were involved in illegal drug deals and using planes and boats to transfer drugs and using drugs to set up innocent people.

14.     At no time did Defendant Schweihs produce any evidence to support his false accusations although he was specifically asked to provide them by the Jo Daviess County Sheriff's Office.

15.     In fact, Lieutenant Wand went to several "sources" who Defendant Schweihs claimed supported his accusations.  All of these "sources" denied that they ever told Defendant Schweihs any information about Sgt. Raab, but that Defendant Schweihs was the person who was accusing Sgt. Raab and others in the Sheriff's Department of making illegal drug deals and doing illegal activities.

16.     Following the false accusations of the Defendant Schweihs, then Acting Sheriff Brian Melton requested the Jo Daviess County State's Attorney to initiate a criminal investigation against Sergeant Raab and Detective Ketelsen for any possible criminal activity based on Defendant Schweihs's accusations.  State's Attorney Kurt denied the request for lack of any supporting evidence of a crime.

17.     On or about August 29, 2006, the then acting Sheriff, Brian Melton filed an official complaint against Defendant Shweihs with the Illinois Attorney Registration

& Disciplinary Commission regarding Defendant Schweihs' actions including but not limited to, accusing Sergeant Raab and Detective Ketelsen of being drug dealers, that the Jo Daviess County Sheriff's Office was full of corruption and was involved in a murder cover up.

18.    In or around July or August of 2006, an Inspector with the Drug Enforcement Agency contacted Acting Sheriff Brian Melton and stated that Defendant Schweihs had contacted his agents and agents of the Federal Bureau of Investigations at the Rockford, Illinois office to request an investigation be conducted against Sergeant Kirk Raab.  The Inspector advised Acting Sheriff Brian Melton that his agents did conduct a preliminary investigation and found no credible evidence against Sergeant Raab for any unlawful narcotic activity and stated that a case was not even opened due to the lack of supporting information.

19.    Upon information and belief, at all times prior to the November, 2006 election for Jo Daviess' County Sheriff, Schweihs' was a supporter of Defendant Sheriff Leo Hefel when he was running for the Sheriff's office.

20.    During the election in 2006 for a new Sheriff, Lieutenant Tim Wand also ran in the primaries for the Jo Daviess' County Sheriff's Office.

21.    During the election, Sergeant Raab was a vocal supporter of Lieutenant Wand's bid for the Sheriff's Office and acted as Lieutenant Wand's campaign manager.

22.    After Defendant Sheriff Hefel took office as the Jo Daviess' County Sheriff in December, 2006, Defendant Hefel, Defendant Fulrath, and Defendant Schweihs, began a systematic and concerted effort to intimidate, harass and retaliate against Plaintiff for exercising his First Amendment rights.

23.     On or about December 1, 2006, Defendant Colin Fulrath stated during a mandatory department meeting, "if anyone tries to undermine myself or the Sheriff, you will be sorry".

24.     On or about December 1, 2006, Defendant Fulrath asked Detective Ketelsen about the complaint filed with the Attorney Registration Disciplinary Committee about Defendant Don Schweihs and if there were any pending lawsuits against any of the defendants.

25.     On or about December 1, 2006, Defendant Hefel ordered Sgt. Raab to switch rotations, which is switching his work schedule to different days.   Further, Defendant Hefel switched Sgt. Raab's shift from the night shift to the day shift.  Sgt. Raab had been on the night shift as the "Night Supervisor" for the past 4 to 5 years and had been on the same rotation since he was hired at the Sheriff's Department.  No other officers in the Sheriff's department had their rotations changed.

26.     On or about December 6, 2006, Defendant Hefel ordered Sgt. Raab to drive from one side of Jo Daviess' County where he was on duty to the Sheriff's office to provide the serial numbers from his duty weapon.  Defendant Hefel did not order anyone else in the department to personally appear to provide serial numbers but rather told them to email him the information.

27.     Upon information and belief, on or about December 29, 2006, Defendant Hefel and a member of his transition team, Tom Martin, went to the Stephenson County Jail, a jail that is out of Defendant Hefel's jurisdiction, and interviewed an inmate, William Sperry, about Sgt. Raab and alleged drug activity.

28.    On or about January 11, 2007, Sgt. Raab checked onto work detail on the night shift when Defendant Sheriff Hefel ordered him to call into the department to ask him what he was doing. When Sgt. Raab explained his work for the night, Defendant Sheriff Hefel ordered Sgt. Raab to come into the Sheriff's office to speak with him. When Sgt. Raab arrived at the Sheriff's department, Defendant Sheriff Hefel began to interrogate him regarding the number of service calls Sgt. Raab had in one shift and what kind of calls Sgt. Raab responded to. Defendant Sheriff Hefel does not interrogate other officers in the Sheriff's office in the same manner regarding their service calls.

29.    In that same meeting on January 11, 2007, Defendant Sheriff Hefel asked Sgt. Raab about a receipt he turned in which Defendant Sheriff Hefel claimed was late and caused the County to incur a late charge. At the same time, several other officers in the department, including Defendant Chief Deputy Fulrath, had outstanding receipts that were not turned in. Sgt. Raab was the only officer that was given a written reprimand.

30.    In the same meeting on January 11, 2007, Defendant Sheriff Hefel then said "I question whether you love your job or not", "…you got involved in politics. Anyone who gets involved in politics must not love their job because they do not know what the outcome will be". Sgt. Raab responded and said "I have always supported someone during an election and when it is over, the outcome doesn't matter you move on, its politics". Defendant Sheriff Hefel stated, "you guys got involved in asking questions at the debates and you did it just to fuck with me…" Defendant made further comments about Sgt. Raab being involved in the elections with Lt. Wand and ended with "Well I am going home. Be safe out there and write some warnings. I don't care about tickets, but turn the lights on, write some warnings and make me look good."

31.     On or about January 12, 2007, Defendant Fulrath called Sgt. Raab on his day off.  Defendant Fulrath began to question Sgt. Raab about his on-duty activity the night before.  Sgt. Raab explained he forgot to call on the radio about business checks he performed after his meeting with Defendant Hefel and put them into the sheriff's system, a/k/a "CAD", but that there was no official policy to place business checks into the system at that time.  Defendant Fulrath then asked why Sgt. Raab left his shift a few hours early.  Sgt. Raab then explained that he had asked Defendant Fulrath earlier in the week that if command officers who do not get overtime and have hours built up can take off a few hours early without calling in to Defendant Fulrath and Defendant Fulrath stated that if it was just a few hours it was ok.

32.     On January 12, 2007, Sgt. Raab received a written letter stating that he would be suspended for one day for not having his activity called in to the station, for not placing information into the CAD system, and for taking off early without Command approval.  Further, Defendant Fulrath wrote that Sgt. Raab did not know that he was supposed to call the station about his activity.  This was not the conversation Sgt. Raab and Defendant Fulrath had earlier in the evening.  Other officers in the Sheriff's office are not being treated in the same manner as Sgt. Raab as there was no policy that requires input of activity into the CAD system at that time.

33.     On or about January 22, 2007, Sgt. Raab turned in a written response to Lt. Brian Melton, Chief Deputy Fulrath and Sheriff Hefel regarding the suspension denying the allegations in the letter by Defendant Fulrath that he did not have permission to leave early and that there was no policy for inputting data into the Sheriff's CAD system.

34.    On or about January 22, 2007, Sgt. Raab also turned in a written response to Lt. Melton, Chief Deputy Fulrath and Sheriff Hefel regarding the alleged late receipt.

35.    On or about January 22, 2007, Defendant Hefel and Defendant Fulrath ordered Sgt. Raab into Defendant Fulrath's office to discuss Sgt. Raab's upcoming suspension day.  Defendant Hefel asked whether Sgt. Raab was working the next day and said "we are going call you and have you come in and we are going to suspend you for leaving early."  Defendants Hefel and Fulrath would not give the date for Sgt. Raab's suspension while he was in the office, but rather ordered him to come in the next day during his shift to get suspended.  Further, Sgt. Raab was ordered to pay the $37.00 late fee from the alleged late receipt that was turned in by Sgt. Raab.  No other employees of the Sheriff's department are treated in the same manner.

36.    On or about January 23, 2007, Sgt. John Korth told Sgt. Raab that he had spoken with Kathy Lippert, the Sheriff's Department secretary, regarding the late fee that Sgt. Raab was ordered to pay by Defendant Hefel.  Ms. Lippert told Sgt. Korth that it was a combination of all of the credit cards, not just Sgt. Raab's that created the late fee.

37.    On or about January 23, 2007, when Sgt. Raab reported to work, neither Defendant Hefel nor Defendant Fulrath called Sgt. Raab into their office regarding his suspension.  Later that day, Defendants Hefel and Fulrath gave Sgt. Raab a suspension date of January 31, 2007 and Defendant Hefel stated "just think of it as another day off".

38.    On or about January 23, 2007, Defendant Fulrath again changed Sgt. Raab's shift from days to nights, and stated the reason was so that a new deputy could be on the dayshift and learn the county.  However, another deputy on the dayshift was not asked to change his shift although Sgt. Raab is of a higher rank in the department.

39.     On or about February 5, 2007, Defendant Hefel had Sgt. Raab call into the Sheriff's Department and ordered Sgt. Raab to call him when he got to the parking lot and to write down the odometer reading to Sgt. Raab's assigned car and take it to him. When Sgt. Raab arrived at Defendant Hefel's office, he then told Sgt. Raab that his credit card and department cell phone were being taken away for alleged misuse.  Sgt. Raab has never been questioned about misuse of his department phone or credit card use prior to Defendant Hefel taking office.  Other command personnel and detectives have received memorandums regarding use of too many minutes on department cell phones but have never had their department cell phones taken away.

40.     Defendant Hefel took only the cell phones and credit cards of Sgt. Raab and Lt. Tim Wand for alleged misuse.

41.     On or about February 5, 2007, Defendant Hefel also questioned Sgt. Raab about February 1, 2007 when he had called in sick.  When Sgt. Raab stated he was home all day, Defendant Hefel asked him "are you sure about that?" and said "you did not leave the house?" and laughed at Sgt. Raab and called Defendant Fulrath into his office. Defendant Hefel then asked Sgt. Raab whether he had any house closings on Thursday, February 1, 2007, and when Sgt. Raab responded that it was actually on Friday, February 2, 2007, Defendant Hefel then changed the subject.

42.     At the same meeting, Defendant Hefel again switched Sgt. Raab's shift from nights to days without an explanation.

43.     On or about February 5, 2007, before the command meeting that night, Defendant Fulrath told Sgt. Raab that he was taking away the Field Training Officer title from him.  Defendant Fulrath informed Sgt. Raab that two people told him that Sgt. Raab

10

did not train them in accidents.  However, when Sgt. Raab stated that if Defendant Fulrath looked at their daily observation reports it would show that they were both trained in accidents.  Defendant Fulrath then stated, "well this is the way it is going to be".

44.    Defendant Hefel also asked Sgt. Raab how many houses he owned.  When Sgt. Raab replied and asked Defendant Hefel why he was asking, Defendant Hefel changed the subject and began talking about personal cell phone use. When it was explained to Defendant Hefel that the previous Sheriff and Chief Deputy allowed them to use it, Defendant Hefel became silent.

45.    After the meeting, Sgt. Raab asked Defendant Hefel why he was asking about the number of houses he owned.  Defendant Hefel then stated that he had heard that Sgt. Raab owned a lot of land and houses and was hanging out with drug dealers.  This is the same information that Defendant Schweihs was spreading about Sgt. Raab.

46.    Sgt. Raab was told by several dispatchers within the department that every morning after Sgt. Raab gets off his shift, Defendants Hefel and Fulrath ask for the mileage on Sgt. Raab's patrol vehicle.  No other officer in the department is asked about mileage of their patrol vehicles.

47.    On or about February 8, 2007, Defendant Don Schweihs met with Defendant Sheriff Hefel in his office in closed door meeting.  Don Schweihs is the public defender for the County of Jo Daviess.  These closed door meetings occurred on a regular basis.  Defendant Schweihs is the Jo Daviess County Public Defender, he is not affiliated with the Sheriff's department in any manner.

48.    On or about February 9, 2007, a dispatcher told Sgt. Raab that Defendant Hefel was telling people in the department about how Sgt. Raab had paid for a piece of

property in cash.  These statements were made following Defendant Hefel's comments about hearing that Sgt. Raab was involved with drug dealers from Defendant Schweihs.

49.     On or about February 9, 2007, Sgt. Raab hurt his right knee, right elbow and back while on duty.  He was taken off of work by his doctor and began to receive workman's compensation benefits.

50.     On or about February 20, 2007, Defendant Hefel told Detective Craig Ketelsen that he, Tim Wand and Sgt. Raab should think twice about filing a lawsuit because although they may win they would be "sorry" about it afterwards.

51.     On or about March 1, 2007, Defendant Hefel and Schweihs again went into a closed door meeting with part of Defendant Hefel's transition team, Tom Martin and Stacy Knapp.  Defendant Schweihs is the Jo Daviess County Public Defender, he is not affiliated with the Sheriff's department in any manner.

52.     On or about March 18, 2007, while Sgt. Raab was on workman's compensation for a work related injury, Sgt. Raab was at a rental house he owned with his two sons and a carpenter.  While Sgt. Raab was at the rental house, Defendant Hefel without permission, walked into the home and went up the stairs and stood in the doorway to a room and asked Sgt. Raab "what's going on?"  Defendant Hefel then began to inquire about Sgt. Raab's work related injury and when he would be back to work. This is despite the fact that Sgt. Raab reports to Defendant Chief Deputy Fulrath after every doctor report and after doctor reports are faxed to the Sheriff's Office.  No one present at the house gave Defendant Hefel permission to enter the home at any point in time.

53.    The tenant that resided at the premises owned by Sgt. Raab contacted Defendant Hefel about him entering the premises without her permission.  He took no action.  The tenant then contacted the Warren Police Department, the State Police and the Jo Daviess' State's Attorney who all did nothing against Defendant Hefel for entering the premises without permission.

54.    Sgt. Raab also contacted the Jo Daviess' State's Attorneys Office regarding Defendant Hefel's unauthorized access to his home.  The State's Attorney's Office referred the matter to the Attorney General's Office who told Sgt. Raab that he had a "good civil lawsuit" but refused to bring forth criminal charges against Defendant Hefel.

55.    After Sgt. Raab was injured at work, upon information and belief, at the direction of Defendant Hefel, Robert Albrecht followed Sgt. Raab around, took photographs of Sgt. Raab, and reported to Defendant Hefel about Sgt. Raab's activities.  Upon information and belief, Robert Albrecht is a close personal friend of Defendant Hefel and has no official affiliation with the Sheriff's Department.

56.    On or about May 15, 2007, Robert Albrecht told the Sheriff's Department that he believed Sgt. Raab set fire to a dump truck on his property without any evidence.  The matter was referred to the Illinois State Police.  Sgt. Raab has never been charged criminally nor questioned about the matter.

57.    On or about May 25, 2007, Defendant Fulrath contacted Sgt. Raab and asked how his knee was doing.  He then told Sgt. Raab that he was going to have him come into work the following week and put him on light duty despite the last two work

restrictions stating that Sgt. Raab had total incapacitation.  Defendant Fulrath then requested that the paperwork be resent to him.

58.    On or about May 25, 2007, Defendant Hefel sent a memorandum to Sgt. Raab that he was not to delay surgery on his knee for any personal reasons such as vacation.  On May 29, 2007, Sgt. Raab responded to Defendant Hefel stating that the delay in the surgery was not due to him but a delay with the workman's compensation adjusters and that surgery was scheduled for June 8, 2007.

59.    On or about June 5, 2007, Sgt. Raab received another phone call from Defendant Fulrath regarding his shoulder and knee injuries.  Although he had the information directly from the physicians, Defendant Fulrath began questioning Sgt. Raab about where he was getting surgery, when the surgery was, what time the surgery was, and if he was going to stay in the hospital.

60.    On or about June 18, 2007, Defendant Fulrath again contacted Sgt. Raab asking him about his knee and shoulder injuries and asked that Sgt. Raab contact him following his post operation appointment the following day.

61.    On or about July 25, 2007, Defendant Fulrath denied a vacation request by Sgt. Raab although no one else's vacation requests were denied in the department and stated "Kirk has been off long enough, I am going to deny his vacation".

62.    On or about October 2, 2008, while Sgt. Raab was on workman's compensation for his work related injury, Defendant Hefel sent two squad cars to Sgt. Raab's house to deliver a written order stating that Sgt. Raab was to report to the City of Warren Police Department and to stay at the location until he was personally contacted

and relieved by members of the Jo Daviess County Sheriff's Office. Sgt. Raab was not told why he was to report to the Warren Police Department.

63.     On or about October 4, 2007, Sgt. Raab arrived at the Warren Police Department where he was given a random drug test.  The test was administered by Jo Daviess' County Sheriff's Police Officers, Lt. Brian Melton and Sgt. Kevin Turner. Defendant Hefel ordered only Command Officers to have the drug tests done, not all employees.  All of the Command Officers in the Jo Daviess County Sheriff's Office knew they were receiving a drug test that day.   Sgt. Raab was the only command officer that did not know the reason for the official order to report to the Warren Police Department.  All the drug test samples were placed into envelopes and returned to the Jo Daviess County Sheriff's Office.  Before Defendant Hefel took office, pursuant to Sheriff's policy and orders, all drug testing was to be done randomly and not a specific group was to be targeted.

64.     On December 18, 2007, Sgt. Raab went to the hospital for shoulder surgery for a work related injury.

65.      On or about January 7, 2008, Sgt. Raab was released to work light duty. Defendant Hefel refused to allow Sgt. Raab to return to work on a light duty basis in accordance with his work restrictions although there are persons within the department that are performing light duty functions on a part-time basis.

66.     On or about February 19, 2008, Sgt. Raab was served with a letter that he was to be interviewed regarding his return to employment without physical limitation and whether or not he had been employed in any manner from February 8, 2007 to the date of the interview.

67.     On February 22, 2008, Sgt. Raab appeared for his interview and was questioned regarding secondary employment and his physical condition for over two hours.

68.     Sgt. Raab's wife conducts a home business which sells items on eBay.  All of the checks and 1099s are in the name of Sgt. Raab's wife.

69.     On or about March 19, 2008, Sgt. Raab was again served with a notice to appear before Defendant Hefel regarding his physical condition and the business that is run by Sgt. Raab's wife.

70.     On March 27, 2008, Sgt. Raab appeared for the interview and was ordered by Defendant Hefel to turn over his entire income tax returns, including schedules from 2004-2007.  Defendant Hefel never gave a reason for why he wanted the entire income tax returns including the schedules and would not accept W2 forms and 1099s.

71.     After the meeting of March 27, 2008, while Sgt. Raab and his family were out of state on vacation, Defendant Fulrath contacted Sgt. Raab's wife's employer to inquire about any secondary employment that she has.  Defendant Fulrath identified himself to a co-worker of Mrs. Raab as an official with the Jo Daviess County Sheriff's Office and stated "we have an ongoing investigation and were wondering if Kelly Raab has a second job".  Defendant Fulrath never identified that the investigation was an internal investigation of Sgt. Kirk Raab and not a criminal investigation.  The employee told Defendant Fulrath that he needed to speak to someone higher up in the bank and Defendant Fulrath proceeded to contact the President of the company.

72.     Upon information and belief, Defendant Hefel and Fulrath have attempted to approach the Jo Daviess County State's Attorney's Office and the County Board to fire Sgt. Raab for various reasons which were denied.

**COUNT I**
**SECTION 1983 - DEPRIVATION OF RIGHT TO FREE SPEECH**

73.     Sergeant Raab hereby re-alleges the allegations in paragraphs 1 through 72 of his Complaint as though fully set forth herein.

74.     Defendants individually and in conspiracy, and acting under color of the authority vested in them by statute, ordinance, regulation, custom or usage of the State of Illinois and the County of Jo Daviess, Illinois, subjected and caused to be subjected Sergeant Raab, a citizen of the State of Illinois to the deprivation of his rights, privileges and/or immunities secured by the Constitution and laws, namely the First Amendment of the United States Constitution.

75.     Sergeant Raab's support of another candidate for the position of Sheriff of Jo Daviess County related to a matter of public concern.  The comments and conduct of Sergeant Raab involving political matters unrelated to his employment constitute the highest degree of speech protected by the United States Constitution.

76.     The complained of conduct by Defendants occurred under color of state law.

77.     The Defendants' conduct arose in retaliation to Sergeant Raab's exercise of his constitutionally protected right to freedom of speech.  The above-alleged comments of Sergeant Raab were a substantial motivating factor by Defendants for their wrongful conduct.

78.     Defendants' conduct will continue and Sergeant Raab will continue to be irreparably harmed unless enjoined by this Court.

**WHEREFORE**, Sergeant Kirk Raab requests that judgment be entered against Defendants County of Jo Daviess, Jo Daviess County Sheriff's Office, Sheriff Leo Hefel, Chief Deputy Colin Fulrath and Donald Schweihs, jointly and severally, and that this Court award the following relief:

A.      Compensatory damages in a fair and reasonable amount;

B.      Exemplary damages;

C.      Interest on Sergeant Raab's compensatory damages at a rate set by law for Sergeant Raab's costs including attorneys' fees pursuant to 42 U.S.C. §1988;

D.      Injunctive relief ordering that Defendants be enjoined from further retaliatory conduct; and

E.      for such other relief as the Court deems just and proper.

**COUNT II**
**EQUAL PROTECTION, FEDERAL LAW**

79.     Sergeant Raab hereby re-alleges the allegations in paragraphs 1 through 72 of his Complaint as though fully set forth herein.

80.     The conduct of Defendants are not in furtherance of a legitimate state objective and reflects a concerted effort by Defendants to deprive Sergeant Raab of equal protection of the law.

81.     None of Sergeant Raab's fellow officers have been subjected to the type of conduct engaged in by the Defendants and directed against Sergeant Raab, as alleged herein.

82.    The Defendants have employed a gross abuse of power, unfair practices and procedures, and gross disparate treatment in their treatment of Sergeant Raab. Defendants have pursued disciplinary actions and other punitive measures against Sergeant Raab while not pursuing disciplinary actions or other punitive measures against the other officers in the department for the same conduct.  Defendants have subjected Sergeant Raab to a different set of rules, regulations and/or standard of conduct than his fellow officers.

83.    Defendant individually and in conspiracy, and acting under color of the authority vested in them by statute, ordinance, regulation, custom or usage of the State of Illinois and the County of Jo Daviess, Illinois, violated Sergeant Raab's rights under the Equal Protection Clause and the Fourteenth Amendment to the United States Constitution.

**WHEREFORE**, Sergeant Kirk Raab requests that judgment be entered against Defendants County of Jo Daviess, Jo Daviess County Sheriff's Office, Sheriff Leo Hefel, Chief Deputy Colin Fulrath and Donald Schweihs, jointly and severally, and that this Court award the following relief:

A.    Compensatory damages in a fair and reasonable amount;

B.    Exemplary damages;

C.    Interest on Sergeant Raab's compensatory damages at a rate set by law for Sergeant Raab's costs including attorneys' fees pursuant to 42 U.S.C. §1988;

D.    Injunctive relief ordering that Defendants be enjoined from further retaliatory conduct; and

E.    for such other relief as the Court deems just and proper.

<u>**COUNT III**</u>
<u>**SUBSTANTIVE DUE PROCESS AND LIBERTY, FEDERAL LAW**</u>

84.    Sergeant Raab hereby re-alleges the allegations in paragraphs 1 through 72 of his Complaint as though fully set forth herein.

85.    The conduct of the Defendants is not in furtherance of a legitimate state objective and reflects a concerted effort by Defendants to deprive Sergeant Raab of equal protection of the law.

86.    None of Sergeant Raab's fellow officers have been subjected to the type of conduct engaged in by the Defendants and directed against Sergeant Raab as alleged herein.

87.    Defendants, individually and in a conspiracy, and acting under color of the authority vested in them by statute, ordinance, regulation, custom or usage of the State of Illinois or County of Jo Daviess, Illinois, through their arbitrary, capricious and retaliatory practices, violated Sergeant Raab's substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

**WHEREFORE**, Sergeant Kirk Raab requests that judgment be entered against Defendants County of Jo Daviess, Jo Daviess County Sheriff's Office, Sheriff Leo Hefel, Chief Deputy Colin Fulrath and Donald Schweihs, jointly and severally, and that this Court award the following relief:

A.    Compensatory damages in a fair and reasonable amount;

B.    Exemplary damages;

C.    Interest on Sergeant Raab's compensatory damages at a rate set by law for Sergeant Raab's costs including attorneys' fees pursuant to 42 U.S.C. §1988;

D.      Injunctive relief ordering that Defendants be enjoined from further retaliatory conduct; and

E.      for such other relief as the Court deems just and proper.

## COUNT IV
## FALSE LIGHT

88.     Sergeant Raab hereby re-alleges the allegations in paragraphs 1 through 72 of his Complaint as though fully set forth herein.

89.     Under Illinois law, there is a recognized cause of action for false-light invasion of privacy where (1) a party is put in a false light before the public as a result of the defendant's actions; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with knowledge that the statement was false or with reckless disregard for whether the statement was true or false.

90.     Defendants put Sergeant Raab in a false light before the public as a result of the actions that they have taken against Sergeant Raab, the false light would be highly offensive to a reasonable person and Defendants acted with knowledge that the statement was false or with reckless disregard for whether the statement was true or false.

**WHEREFORE**, Sergeant Kirk Raab requests that judgment be entered against Defendants County of Jo Daviess, Jo Daviess County Sheriff's Office, Sheriff Leo Hefel, Chief Deputy Colin Fulrath and Donald Schweihs, jointly and severally, and that this Court award the following relief:

A.      Compensatory damages in a fair and reasonable amount;

B.      Exemplary damages;

C.      Interest on Sergeant Raab's compensatory damages at a rate set by law for Sergeant Raab's costs including attorneys' fees pursuant to 42 U.S.C. §1988;

D.    Injunctive relief ordering that Defendants be enjoined from further retaliatory conduct; and

E.    for such other relief as the Court deems just and proper.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91.    Sergeant Raab hereby re-alleges the allegations in paragraphs 1 through 72 of his Complaint as though fully set forth herein.

92.    Under Illinois law, there is a recognized cause of action for intentional infliction of emotional distress where (1) the defendant's conduct was extreme and outrageous; (2) defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress.

93.    Defendants' conduct was extreme and outrageous, the Defendants intended to inflict severe emotional distress or knew there was a high probability that their conduct would do so and the Defendants' conduct has caused Sergeant Raab severe emotional distress.

**WHEREFORE**, Sergeant Kirk Raab requests that judgment be entered against Defendants County of Jo Daviess, Jo Daviess County Sheriff's Office, Sheriff Leo Hefel, Chief Deputy Colin Fulrath and Donald Schweihs, jointly and severally, and that this Court award the following relief:

A.    Compensatory damages in a fair and reasonable amount;

B.    Exemplary damages;

C.    Interest on Sergeant Raab's compensatory damages at a rate set by law for Sergeant Raab's costs including attorneys' fees pursuant to 42 U.S.C. §1988;

D.    Injunctive relief ordering that Defendants be enjoined from further retaliatory conduct; and

E.    for such other relief as the Court deems just and proper.


Respectfully Submitted:


By:_____/s/ Martin A. Dolan_____
      One of the Attorneys for Plaintiff
      ***Kirk Raab***

DOLAN LAW OFFICES, P.C.
10 South LaSalle Street
Suite 3712
Chicago, Illinois  60603
(312) 676-7600
ARDC #:  06198500