## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| WASTE MANAGEMENT OF ILLINOIS, INC.; | ) | |
| WASTE MANAGEMENT OF WISCONSIN, | ) | |
| INC.;  and ECOLAB INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United

States of America, on behalf of the Administrator of the United States Environmental Protection

Agency ("U.S. EPA"), and by and through its undersigned attorneys, alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action brought pursuant to Sections 106, 107 and 113(g)(2) of the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended

("CERCLA"), 42 U.S.C. §§ 9606, 9607 and 9613(g)(2).  The United States seeks injunctive relief

under CERCLA Section 106, 42 U.S.C. § 9606, specifically the implementation of U.S. EPA's

selected remedy at the Evergreen Manor Groundwater Superfund Site, Roscoe Township,

Winnebago County, Illinois ("Site" or "Evergreen Manor Site").  The United States also seeks the

recovery, pursuant to CERCLA Section 107, 42 U.S.C. § 9607, of unreimbursed costs that have been

or will be incurred by the United States in response to the release and/or threatened release of

hazardous substances at and from the Evergreen Manor Site. The United States further seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201, that each Defendant shall be liable for all future response costs to be incurred by the United States in connection with the Evergreen Manor Site.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action and each Defendant pursuant to 28 U.S.C. §§ 1331 and 1345 because this is a civil action commenced by the United States that arises under the laws of the United States. This Court has exclusive original jurisdiction over this action pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), because it concerns controversies arising under CERCLA.

3.      Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the releases of hazardous substances from the Site occurred in this district and because the events or omissions giving rise to the claims herein occurred in this district.

## DEFENDANTS

4.      Defendant Waste Management of Illinois, Inc. ("WMIL") is incorporated under the laws of the State of Delaware and is registered to do business in the State of Illinois. WMIL is an owner and/or operator of a waste hauling and transfer station business on property located at 13125 North Second Street, Roscoe, Illinois, which it acquired in 1988 from AAA Disposal Systems, Inc., a currently defunct Illinois corporation.

5.      Defendant Waste Management of Wisconsin, Inc. ("WMWI") is incorporated under the laws of the State of Delaware and is registered to do business in the State of Illinois. WMWI is

an owner and/or operator of a waste hauling and transfer station business on property located at

13125 North Second Street, Roscoe, Illinois, which it acquired in 1988 from AAA Disposal Systems,

Inc., a currently defunct Illinois corporation.

6.    Defendant Ecolab, Inc. ("Ecolab") is a corporation organized under the laws of the

State of Delaware and is registered to do business in the State of Illinois.  Ecolab (and its predecessor

entities) is the owner and/or operator of a mechanical assembly business on property located at State

Highway 251 and Rockton Road, South Beloit, Illinois.

7.    Each Defendant is a "person" within the meaning of CERCLA Sections 101(21) and

107, 42 U.S.C. §§ 9601(21) and 9607.

8.    Each Defendant's property, described respectively, in Paragraphs 4, 5 and 6, above,

is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and

9607(a).

9.    Each Defendant is a person, who owns or operates a facility, or is a person (or

is a successor to a person), who at the time of disposal of hazardous substances, owned or operated

a facility, from which there has been a release of hazardous substances, or a threatened release of

hazardous substances that caused the incurrence of response costs, within the meaning of CERCLA

Section 107(a)(1) or (2), 42 U.S.C. § 9607(a)(1) or (2).

10.    Hazardous substances released from each Defendant's facility have contributed to the

plume of contaminated ground water at the Evergreen Manor Site.

## GENERAL ALLEGATIONS

11.    The Evergreen Manor Site is an area of groundwater contamination in unincorporated

Roscoe Township, Winnebago County, north of Roscoe, Illinois, and is a "facility" within the

meaning of CERCLA sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a). The Evergreen Manor Site contains groundwater contamination in the upper sand and gravel aquifer, located from the water table down to approximately 100 feet below ground, extending from an industrial area near State Route 251 and Rockton Road approximately 2 miles southwest through the residential subdivisions of Hononegah Heights, Tresemer, Olde Farm and Evergreen Manor. Approximately 1 mile of open farmland is located between the industrial area and the residential subdivisions.

12.    Hazardous substances as defined in CERCLA Section 101(14), 42 U.S.C. § 9601(14), including, but not limited to, trichloroethylene, tetrachloroethylene, benzene, 1,1,1-trichloroethane, cis-1,2-dichloroethylene, 1,2-dichloroethane, and 1,1-dichloroethane, have come to be located in the groundwater at the Evergreen Manor Site.

13.    The Evergreen Manor Groundwater Superfund Site was proposed for listing on the CERCLA National Priorities List ("NPL") on or about July 28, 1998, 63 Fed. Reg. 40247. The NPL, established pursuant to section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and 40 C.F.R. Part 300, lists sites throughout the United States that, because of releases or threatened releases of hazardous substances, pose a significant threat to human health and the environment.

14.    Pursuant to CERCLA Section 104, 42 U.S.C. § 9604, and in response to the releases and threatened releases of hazardous substances into the environment, at and from the Evergreen Manor Groundwater Site, the U.S. EPA separately, and in conjunction with potentially responsible parties including Defendants, has undertaken response actions. These response actions have included, without limitation, investigations of Evergreen Manor Site conditions and "removal" actions within the meaning of CERCLA Section 101(23), 42 U.S.C. § 9601(23), including the connection to the North Park Public Water District of 281 residences with contaminated water

supplies.

15.     On or about April 1, 1999, the United States entered into an Administrative Order on Consent ("AOC") with Defendants, the State of Illinois, and another potentially responsible party at the Site. Pursuant to that AOC, the Defendants and the other potentially responsible party agreed to pay $2.1 million to partially fund U.S. EPA's removal action for connection of residences with contaminated water supplies to the North Park Public Water District.

16.     U.S. EPA approved the Remedial Investigation and Feasibility Study (RI/FS) for the groundwater contamination at the Evergreen Manor Site in or about July 2003.

17.     On September 30, 2003, the U.S. EPA selected a groundwater Remedial Action that is embodied in a Record of Decision ("ROD"). The selected remedy, designed to take advantage of aquifer restoration over an extended period of time, includes but is not limited to:  a) natural attenuation to restore groundwater to federal and State of Illinois regulatory groundwater standards; b) local government controls to limit use of contaminated groundwater as a water supply until cleanup is complete; c) groundwater and residential well monitoring to track the progress of natural attenuation and to verify the remedy remains protective of human health and the environment until cleanup levels are attained; and d) vapor monitoring at selected residences at the Evergreen Manor Site to verify that exposure risks are below regulatory levels.

18.     On or about September 29, 2004, the U.S. EPA entered into an AOC with the Defendants for the performance and funding of the Remedial Design phase of the selected Remedial Action at the Evergreen Manor Site. U.S. EPA approved the Remedial Design on or about May 24, 2006.

19.     U.S. EPA subsequently approved and documented changes to the remedy selected

in the ROD in a memorandum dated December 6, 2006 ("2006 Memorandum"), in which U.S.

EPA concurred with the findings in the Remedial Design that a definable groundwater

contamination plume no longer exists and that vapor monitoring at the selected residences at the

Evergreen Manor Site was not necessary.

20.    As a result of responding to the releases or threatened releases of hazardous

substances from the Evergreen Manor Site, the United States has incurred at least $1.6 million in

unreimbursed response costs, excluding prejudgment interest.

21.    The United States will continue to incur response costs as a result of the releases

or threatened releases of hazardous substances at or from the Evergreen Manor Site.

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief Under Section 106 of CERCLA, 42 U.S.C. § 9606)

22.    The allegations appearing in Paragraphs 1 through 21 above are realleged and

incorporated herein by reference.

23.    CERCLA Section 106(a), 42 U.S.C. § 9606(a), provides, in pertinent part,

> . . . when the President determines that there may be an imminent and substantial
> endangerment to the public health or welfare or the environment because of an
> actual or threatened release of a hazardous substance from a facility, he may . . .
> secure such relief as may be necessary to abate such danger or threat, and the
> district court of the United States in the district in which the threat occurs shall
> have jurisdiction to grant such relief as the public interest . . . may require. The
> President may also . . . take other action under this section including . . . issuing
> such orders as may be necessary to protect public health and welfare and the
> environment.

24.    Executive Order 12580 of January 23, 1987, delegated the President's

functions under CERCLA Section 106(a) to the Administrator of EPA.

25.    EPA has determined that there is or may be an imminent and substantial

-6-

endangerment to the public health or welfare or the environment because of actual or threatened releases of hazardous substances from the Site.

26.    Pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), the Defendants are subject to injunctive relief to abate the danger or threat presented by releases or threatened releases of hazardous substances from the Site.

## SECOND CLAIM FOR RELIEF

### (Recovery of Costs Under Section 107 of CERCLA, 42 U.S.C. § 9607)

27.    The allegations appearing in Paragraphs 1 through 26 above are realleged and incorporated herein by reference.

28.    Section 107(a) of CERCLA provides, in pertinent part, that:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section —

(1)    the owner and operator of a vessel or a facility,

(2)    any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3)    any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4)    any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for —

(A) all costs of removal or remedial action incurred
by the United States Government or a State . . .  not
inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred
by any other person consistent with the national
contingency plan; . . . and

(D) the costs of any health assessment or health
effects study carried out under Section 9604(I) of
[Title 42].

42 U.S.C. § 9607(a).

29.    Section 113(g)(2) of CERCLA provides, in pertinent part, that:

(2) Actions for recovery of costs

* * * *

In any . . . action [for recovery of costs] . . .,  the court shall enter a
declaratory judgment on liability for response costs or damages
that will be binding on any subsequent action or actions to recover
further response costs or damages.

42 U.S.C. 9613(g)(2).

30.    Chlorinated solvents, including but not limited to, trichloroethylene,

tetrachloroethylene, and 1,1,1-trichloroethane, are "hazardous substances" and were "disposed

of" at the Evergreen Manor Site within the meaning of Sections 101(14) and 107(a)(2) of

CERCLA, 42 U.S.C. §§ 9601(14) and 9607(a)(2).

31.    Each Defendant is a current owner and/or operator of a facility at the Evergreen

Manor Site, at which there have been releases of hazardous substances, within the meaning of

Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

32.    Each Defendant is an owner and/or operator (or is a successor to an owner and/or

operator) of a facility at the Evergreen Manor Site, at a time when hazardous substances were disposed there, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

33.    At times relevant hereto, there were "releases" or "threatened releases" of one or more hazardous substances into the environment at and from the Site within the meaning of Sections 101(14) and (22), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and (22), and 9607(a).

34.    The actions taken by the United States in connection with the releases, or threatened releases of hazardous substances at the Evergreen Manor Site constitute response actions that are not inconsistent with the National Contingency Plan, within the meaning of Section 101(25)of CERCLA, 42 U.S.C. § 9601(25), for which the United States has incurred and will continue to incur response costs.

35.    Each Defendant is a person within one or more of the classes of persons liable for response costs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as specified in Paragraph 28, above.

36.    Each Defendant is jointly and severally liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all unreimbursed response costs, including oversight and enforcement costs and prejudgment interest on such costs, incurred in connection with releases at the Evergreen Manor Site.

37.    Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the Court should enter in this action a declaratory judgment on the joint and several liability of each Defendant for response costs that will be binding on any subsequent action(s) to recover further response costs.

38.    To date, each Defendant has failed to reimburse the United States for a portion of the response costs incurred in connection with the Evergreen Manor Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that this Court:

1.    Order the Defendants to remedy the conditions at the Site that may present an imminent and substantial endangerment to the public health or welfare or the environment by implementing the remedial actions selected in the ROD for the Site;

2.    Enter judgment against each Defendant finding each Defendant jointly and severally for all unreimbursed costs incurred by the United States, including pre-and post-judgment interest, in connection with response actions related to the release of hazardous substances at and from the Evergreen Manor Groundwater Contamination Superfund Site not inconsistent with the National Contingency Plan;

3.    Enter a declaratory judgment, pursuant to Section 113(g) (2) of CERCLA, 42 U.S.C. § 9613(g)(2) finding Defendant jointly and severally liable for all response costs incurred by the United States in connection with the releases of hazardous substances at and from each Defendant's facility at the Site that will be binding in any subsequent action or actions to recover further response costs;

4.    Award the United States its costs of this action; and

5.    Grant such other relief as the Court deems appropriate.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General

-10-

Environment and Natural Resources Division

*Francis J. Biros*

FRANCIS J. BIROS
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-2580


PATRICK C. FITZGERALD
United States Attorney
Northern District of Illinois

*Monica Mallory*

MONICA MALLORY
Assistant United States Attorney
308 West State Street, Suite 300
Rockford, Illinois 61101
(815) 987-4444


OF COUNSEL:

JOHN C. MATSON
Associate Regional Counsel
U.S. Environmental Protection Agency - Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, Illinois 60604