**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| **WASTE MANAGEMENT OF ILLINOIS, INC.;** | ) | |
| **WASTE MANAGEMENT OF WISCONSIN,** | ) | **HON.** |
| **INC.;  and ECOLAB INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**CONSENT DECREE FOR REMEDIAL ACTION AND COST RECOVERY,**
**EVERGREEN MANOR GROUNDWATER SITE, ROSCOE, ILLINOIS**

TABLE OF CONTENTS

| I. | BACKGROUND | 2 |
|---|---|---|
| II. | JURISDICTION AND VENUE | 7 |
| III. | PARTIES BOUND | 7 |
| IV. | DEFINITIONS | 8 |
| V. | GENERAL PROVISIONS | 14 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS | 18 |
| VII. | REMEDY REVIEW | 24 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 25 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 26 |
| X. | REPORTING REQUIREMENTS | 32 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 35 |
| XII. | PROJECT COORDINATORS | 38 |
| XIII. | ASSURANCE OF ABILITY TO COMPLETE WORK | 38 |
| XIV. | CERTIFICATION OF COMPLETION | 40 |
| XV. | EMERGENCY RESPONSE | 43 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 44 |
| XVII. | INDEMNIFICATION AND INSURANCE | 48 |
| XVIII. | FORCE MAJEURE | 51 |
| XIX. | DISPUTE RESOLUTION | 53 |
| XX. | STIPULATED PENALTIES | 57 |
| XXI. | COVENANTS NOT TO SUE BY PLAINTIFF | 62 |
| XXII. | COVENANTS BY SETTLING DEFENDANTS | 67 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 69 |
| XXIV. | ACCESS TO INFORMATION | 71 |
| XXV. | RETENTION OF RECORDS | 72 |
| XXVI. | NOTICES AND SUBMISSIONS | 74 |
| XXVII. | EFFECTIVE DATE | 76 |
| XXVIII. | RETENTION OF JURISDICTION | 76 |
| XXIX. | APPENDICES | 77 |
| XXX. | COMMUNITY RELATIONS | 77 |
| XXXI. | MODIFICATION | 77 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 78 |
| XXXIII. | SIGNATORIES/SERVICE | 79 |
| XXXIV. | FINAL JUDGMENT | 80 |

I.    BACKGROUND

A.    The United States of America ("United States"), on behalf of the United States

Environmental Protection Agency ("EPA"), filed a Complaint in this action against Defendants

Waste Management of Illinois, Inc. and Waste Management of Wisconsin, Inc. ("WM") and

Ecolab Inc. ("Ecolab") (collectively the "Settling Defendants"), pursuant to Sections 106, 107

and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act

of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607 and 9613(g)(2), concerning the

Evergreen Manor Groundwater Site, Roscoe Township, Winnebago County, Illinois (the

"Evergreen Manor Site" or "Site").

B.    The United States, on behalf of EPA, filed a Complaint on January 4, 2007

against Defendant Regal-Beloit, Inc. ("Regal-Beloit"), pursuant to Sections 107 and 113(g)(2) of

the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as

amended ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(g)(2) concerning the Evergreen Manor Site.

See United States v. Regal- Beloit Corp., Civ. No. 07-CV-50002 (N.D. Ill.).

C.    The United States' Complaint against Settling Defendants seeks *inter alia*:  (1)

reimbursement of costs that have been incurred by EPA and the Department of Justice for

response actions at the Evergreen Manor Site, together with accrued interest; (2) injunctive relief

under CERCLA Section 106, 42 U.S.C. § 9606, specifically the performance of response action

at the Evergreen Manor Site consistent with the National Contingency Plan, 40 C.F.R. Part 300;

and (3) a declaration, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), that the

Settling Defendants are jointly and severably liable for future response and oversight costs that

2

may be incurred by the United States in connection with the Evergreen Manor Site.

D.      Waste Management of Illinois, Inc. and Waste Management of Wisconsin, Inc. are corporations organized under the laws of the State of Delaware and do business in the State of Illinois. Waste Management of Wisconsin, Inc. is the owner and/or operator of a waste hauling and transfer station business on property located at 13125 North Second Street, Roscoe, Illinois, which it acquired in 1988 from AAA Disposal Systems, Inc., a currently defunct Illinois corporation.

E.      Ecolab is a corporation organized under the laws of the State of Delaware and does business in the State of Illinois. Ecolab (and predecessor entities) is the owner and/or operator of a mechanical assembly business on property located at State Highway 251 and Rockton Road, South Beloit, Illinois.

F.      In accordance with the  National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"), and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Illinois (the "State") on September 17, 2006 of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

G.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior on September 17, 2006, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s)

3

to participate in the negotiation of this Consent Decree.

      H.    The Settling Defendants that have entered into this Consent Decree do not admit any liability arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that there have been releases or threatened releases of hazardous substance(s) at or from the Site, nor that any alleged release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

      I.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, on or about July 28, 1998, EPA proposed the Site for listing on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, 63 Fed. Reg. 40247.

      J.    Pursuant to CERCLA Section 104, 42 U.S.C. § 9604, and in response to the releases and threatened releases of hazardous substances into the environment, at and from the Evergreen Manor Site, EPA separately, and in conjunction with the Settling Defendants and Defendant Regal-Beloit, has undertaken response actions. These response actions have included, without limitation, investigations of Evergreen Manor Site conditions and removal actions within the meaning of CERCLA Section 101(23), 42 U.S.C. § 9601(23), including the connection of 281 residences (202 residences identified as having contaminated well water, plus a contingency factor of 79 residences that are located in a buffer zone at the Site) to the North Park Public Water District, and a Remedial Investigation and Feasibility Study ("RI/FS").

      K.    On or about April 1, 1999, the United States entered into an Administrative Order on Consent ("1999 AOC") with Settling Defendants, Regal-Beloit, and the State of Illinois.

Pursuant to that 1999 AOC, Settling Defendants and Regal-Beloit agreed to pay $2.1 million to EPA for the removal action to connect residences to the North Park Public Water District. EPA completed the municipal hook-up during 1999 to 2000. The private wells at the homes that were connected to the municipal water supply were permanently sealed.

L.    Pursuant to 40 C.F.R. § 300.430, EPA approved an RI/FS for the Site on or about July 2003. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the RI/FS and of a Proposed Plan for remedial action. EPA provided an opportunity for written and oral public comments on the Proposed Plan and held a public meeting on August 19, 2003.

M.    On September 30, 2003, EPA selected a groundwater Remedial Action that is embodied in a Record of Decision ("ROD"), attached as Appendix A. The selected remedy, designed to take advantage of aquifer restoration over an extended period of time, includes but is not limited to:  a) natural attenuation to restore groundwater to federal and State of Illinois regulatory groundwater standards; b) local government controls to limit use of contaminated groundwater as a water supply until cleanup is complete; c) groundwater and residential well monitoring to track the progress of natural attenuation and to verify the remedy remains protective of human health and the environment until cleanup levels are attained; and d) vapor monitoring at selected residences of the Evergreen Manor Site to verify that exposure risks are below regulatory levels.

N.    On or about September 29, 2004, EPA entered into an AOC with Settling Defendants ("2004 AOC"), for the performance and funding of the Remedial Design phase of the

Remedial Action selected in the ROD for the Evergreen Manor Site.

O.    EPA approved the Remedial Design Report dated February 13, 2006, on or about May 24, 2006. The results of the Remedial Design investigation indicated no contamination exceeding the standards set forth in the ROD. EPA subsequently approved and documented changes to the selected remedy in the ROD in a memorandum dated December 6, 2006 ("2006 Memorandum"), attached as Appendix E to this Consent Decree. EPA concurred with the findings in the Remedial Design Report that a definable groundwater contamination plume no longer exists and that vapor monitoring at the selected residences at the Evergreen Manor Site was not necessary.

P.    As a result of responding to the releases or threatened releases of hazardous substances from the Evergreen Manor Site the United States has incurred at least $1.5 million in unreimbursed response costs, excluding prejudgment interest.

Q.    Based on the information presently available to EPA, EPA believes that the response actions already performed by EPA, and the Settling Defendants pursuant to the 1999 AOC and the 2004 AOC at the Evergreen Manor Site have been consistent with the NCP, and the Work to be performed as described in this Consent Decree will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its Appendices.

R.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

S.    The United States and the Settling Defendants (collectively, "the Parties")

recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has

been negotiated by the Parties in good faith and implementation of this Consent Decree will

protect human health and the environment and will avoid prolonged and complicated litigation

between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has

personal jurisdiction over the Settling Defendants. Venue is proper in this District pursuant to

Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the releases

of hazardous substances from the Site occurred in this district and because the events or

omissions giving rise to the claims herein occurred in this district. Solely for the purposes of this

Consent Decree and the underlying Complaint, Settling Defendants waive all objections and

defenses that they may have to jurisdiction of the Court or to venue in this District. Settling

Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to

enter and enforce this Consent Decree.

## III.    PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon

Settling Defendants and their successors and assigns. Any change in ownership or corporate

status of a Settling Defendant including, but not limited to, any transfer of assets or real or

personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendants shall provide a copy of this Consent Decree to the Supervising Contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their Supervising Contractor shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree; provided, however, that such notice shall not be required for subcontractors providing less than $10,000 worth of services. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.    DEFINITIONS

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

8

a.    "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

b.    "Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any Appendix, this Decree shall control.

c.    "Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

d.    "Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 110.

e.    "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

f.    "Illinois EPA" shall mean the Illinois Environmental Protection Agency, and any successor departments or agencies of the State.

g.    "Future Oversight Costs" shall mean that portion of Future Response Costs that EPA incurs in monitoring and supervising Settling Defendant's performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted

9

pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the

Work; however, Oversight Costs do not include, *inter alia*, the costs incurred by the United

States pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls), XV

(Emergency Response), and Paragraph 91 (Work Takeover) of Section XXI, or the costs incurred

by the United States in enforcing the terms of this Consent Decree, including all costs incurred in

connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution) and all

litigation costs.

        h.     "Future Response Costs" shall mean all costs, including, but not limited to

Future Oversight Costs, direct and indirect costs, that the United States incurs in reviewing or

developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or

otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited

to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to

Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to

secure access and/or to secure or implement institutional controls including, but not limited to,

the amount of just compensation), XV, and Paragraph 91 (Work Takeover) of Section XXI,

Future Response Costs shall also include all Interim Response Costs.

        i.     "Interim Response Costs" shall mean all costs, including direct and

indirect costs, (a) paid by the United States in connection with monitoring and oversight of the

2004 AOC, between September 29, 2004 (the issue date of the 2004 AOC), and the Effective

Date, or (b) incurred in connection with the 2004 AOC prior to the Effective Date but paid after

that date.

j. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

k. "Matters Addressed" in this Consent Decree shall mean all response actions taken, and all response costs incurred by the United States, or any other person with respect to the Site. The "Matters Addressed" in this Consent Decree do not include those response costs or those response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against the Settling Defendants coming within the scope of such reservations.

l. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

m. "Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Remedial Action Work Plan.

n. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

o. "Parties" shall mean the United States and the Settling Defendants.

11

      p.     "Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurred at or in connection with the Site through the Effective Date, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

      q.     "Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section 2.8 of the ROD, Section 3 and Table 1 of the Statement of Work (included as an appendix to the 2004 AOC, attached as Appendix F to this Consent Decree, the RAWP and the 2006 Memorandum.

      r.     "Plaintiff" shall mean the United States.

      s.     "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

      t.     "Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Evergreen Manor Site signed on September 30, 2003, by the Regional Administrator, EPA Region 5, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

      u.     "Remedial Action" shall mean those activities except for Operation and Maintenance to be undertaken by the Settling Defendants to implement the ROD, 2006 Memorandum, Remedial Design and EPA-approved Remedial Action Work Plan and other plans approved by EPA prepared pursuant to this Consent Decree, if any.

      v.     "Remedial Action Work Plan" or "RAWP" shall mean the Long-Term

12

Monitoring Plan attached hereto as Appendix B and any amendments thereto.

w.      "Remedial Design" shall mean those activities that have been undertaken by the Settling Defendants and approved by EPA to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan approved by EPA under the 2004 AOC.

x.      "Remedial Design Report" shall mean the document developed by Settling Defendants pursuant to the 2004 AOC and approved by EPA on May 24, 2006 and attached as Appendix D to this Consent Decree.

y.      "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

z.      "Settling Defendants" shall mean Waste Management of Illinois, Inc., Waste Management of Wisconsin, Inc. and Ecolab Inc.

aa.     "Site" shall mean the Evergreen Manor Groundwater Site in unincorporated Roscoe Township, Winnebago County, north of Roscoe, Illinois, containing groundwater contamination in the area's upper sand and gravel aquifer, located from the water table down to approximately 100 feet below ground. The Site consists of an industrial area encompassing Settling Defendants' business facilities near State Route 251 and north of Rockton Road approximately 2 miles southwest through the Hononegah Heights, Tresemer, Olde Farm and Evergreen Manor residential subdivisions, as well as approximately one mile of open farmland between the industrial area and the residential subdivisions. The Site is depicted on the map in Appendix C.

bb.    "State" shall mean the State of Illinois.

cc.    "Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

dd.    "United States" shall mean the United States of America.

ee.    "Waste Material" shall mean:  (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under 35 Ill. Admin. Code, Part 721.

ff.    "Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

V.    GENERAL PROVISIONS

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.    Recognition of Settling Defendants' Performance.  EPA hereby recognizes and acknowledges that Settling Defendants have in the past complied with the administrative orders issued by EPA -- the 1999 AOC and the 2004 AOC -- which have become effective with respect

14

to the Site. Upon entry of this Consent Decree, the 1999 AOC and 2004 AOC shall be considered terminated and no longer in effect except for any continuing obligations under the 1999 AOC and 2004 AOC that have not been subsumed by this Consent Decree.

    7.    <u>Commitments by Settling Defendants</u>.

    a.    Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the 2006 Memorandum and the RAWP and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree. Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

    b.    The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one of the Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendant shall complete all such requirements.

    8.    <u>Compliance With Applicable Law</u>. All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

9.    Permits.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, 40 C.F.R.§ 300.400(e), no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

10.    Notice to Successors-in-Title.

a.    With respect to any property owned or controlled by the Settling Defendants that is located within the Site, within 15 days after the entry of this Consent Decree, the Settling Defendants shall submit to EPA for review and approval a notice to be filed with the Recorder's Office, Winnebago County, Illinois, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site on September 30, 2003, and that Settling Defendants have entered into a Consent Decree requiring implementation of the remedy. Such notice(s) shall identify the United States District Court in which the

16

Consent Decree was filed, the name and civil action number of this case, and the date the

Consent Decree was entered by the Court. The Settling Defendants shall record the notice(s)

within 10 days of EPA's approval of the notice(s). The Settling Defendants shall provide EPA

with a certified copy of the recorded notice(s) within 10 days of recording such notice(s).

      b.    At least 30 days prior to the conveyance of any interest in property located

within the Site including, but not limited to, fee interests and leasehold interests, the Settling

Defendants conveying the interest shall give the grantee written notice of (i) this Consent Decree,

(ii) any instrument by which an interest in real property has been conveyed that confers a right of

access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access

and Institutional Controls), and (iii) any instrument by which an interest in real property has been

conveyed that confers a right to enforce restrictions on the use of such property (hereinafter

referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls).

At least 30 days prior to such conveyance, the Settling Defendant conveying the interest shall

also give written notice to EPA of the proposed conveyance, including the name and address of

the grantee, and the date on which notice of the Consent Decree, access easements, and/or

restrictive easements was given to the grantee.

      c.    In the event of any such conveyance, the Settling Defendants' obligations

under this Consent Decree, including, but not limited to, its obligation to provide or secure access

and institutional controls, as well as to abide by such institutional controls, pursuant to Section

IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the

Settling Defendants. In no event shall the conveyance release or otherwise affect the liability of

the Settling Defendants to comply with all provisions of this Consent Decree, absent the prior

written consent of EPA. If the United States approves, the grantee may perform some or all of

the Work under this Consent Decree.

VI.    PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

11.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendants pursuant

to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII

(Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this

Consent Decree shall be under the direction and supervision of the Supervising Contractor, the

selection of which shall be subject to disapproval by EPA. Within 10 days after the lodging of

this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and

qualifications of any contractor proposed to be the Supervising Contractor. With respect to any

contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the

proposed contractor has a quality system that complies with ANSI/ASQC E4-1994,

"Specifications and Guidelines for Quality Systems for Environmental Data Collection and

Environmental Technology Programs," (American National Standard, January 5, 1995), by

submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP

should be prepared in accordance with "EPA Requirements for Quality Management Plans

(QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by

EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time after

receiving authorization to proceed, Settling Defendants propose to change a Supervising

18

Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

       b.     If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

       c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

       12.    <u>Remedial Action Work Plan</u>. The Remedial Action Work Plan, or RAWP, is attached to this Consent Decree as Appendix B. It is incorporated into this Consent Decree and is enforceable as part of the Consent Decree. Settling Defendants shall implement the activities required under the RAWP. The Settling Defendants shall submit to EPA all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with

19

the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

13.    The Settling Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

14.    Modification of the RAWP or Related Work Plans.

a.    If EPA determines that modification to the work specified in the RAWP and/or in work plans developed pursuant to the RAWP is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy, set forth in the ROD, the 2006 Memorandum and this Consent Decree, EPA may require that such modification be incorporated in the RAWP and/or such work plans; provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD and the 2006 Memorandum, and is not inconsistent with the NCP.

b.    For the purposes of this Paragraph 14 and Paragraphs 51 & 52 only, the "scope of the remedy selected in the ROD and the 2006 Memorandum" is:  1) Monitored Natural Attenuation (MNA) of contaminated groundwater until federal Maximum Contaminant Levels (MCLs) and Illinois primary drinking water standards for trichloroethene, tetrachloroethene, and other site related chemicals are reached; 2) institutional controls to limit the use of contaminated

groundwater until the cleanup is complete; 3) groundwater and residential well monitoring to track the progress of MNA and to verify the remedy remains protective of human health and the environment until cleanup levels are attained; and 4) contingency actions should Site conditions deteriorate.

      c.     If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 70 (record review). The RAWP and/or related work plans shall be modified in accordance with final resolution of the dispute.

      d.     Settling Defendants shall implement any work required by any modifications incorporated in the RAWP and/or in work plans developed pursuant to the RAWP in accordance with this Paragraph.

      e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

      15.     Settling Defendants acknowledge and agree that nothing in this Consent Decree, the ROD, the Remedial Design or the Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the RAWP will achieve the Performance Standards.

      16.     a.     Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall

not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

   (1) The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

   (2) The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a. as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

   b. Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3), 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440.  Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

22

VII.  REMEDY REVIEW

17.     Periodic Review.  Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any other applicable regulations.  The Settling Defendants may submit a petition for a No Further Action Determination (NFAD).  If EPA deems that additional data and analyses are required to support an NFAD, the Settling Defendants will be solely responsible for collecting the required data and performing the requested analyses.

18.     EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19.     Opportunity To Comment.  Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. §§ 9613(k)(2) and 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20.     Settling Defendants' Obligation to Perform Further Response Actions.  If EPA selects further response actions for the Site, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 86 or Paragraph 87

23

(United States' reservations of liability based on unknown conditions or new information) are satisfied. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 86 or Paragraph 87 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 70 (record review).

21.     <u>Submissions of Plans</u>.  If Settling Defendants are required to perform further response actions pursuant to Paragraph 20, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

VIII.  <u>QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS</u>

22.     The Quality Assurance Project Plan ("QAPP") submitted by Settling Defendants pursuant to the Remedial Design Report is incorporated in, and enforceable, under this Consent Decree.

23.     Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives.  Settling Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA and shall have the right to take any additional samples that EPA deems

24

necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

24.     Settling Defendants shall submit to EPA three (3) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

IX.     ACCESS AND INSTITUTIONAL CONTROLS

26.     If any property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendant shall:

a.     commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)    Verifying any data or information submitted to the United States;

(3)    Conducting investigations relating to contamination at or near the Site;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)    Implementing the Work pursuant to the conditions set forth in Paragraph 91 of this Consent Decree;

(8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)    Assessing Settling Defendants' compliance with this Consent Decree; and

(10)    Determining whether the Site, or such other property, is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.    commencing on the date of lodging of this Consent Decree, refrain from using such property, in any manner that would interfere with or adversely affect the

26

implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions on use include, but are not limited to, institutional controls to prevent any use of the Site, or such other property, in a manner not in accordance with the ROD, including, but not limited to, a prohibition on groundwater use until such time that all groundwater meets federal and State of Illinois drinking water standards. Notwithstanding the above, if monitoring identifies the need for modifications or changes to the Remedial Action, the restrictions on use of the Site, such other property, or groundwater may be modified by EPA; and

      c.      If EPA so requests, execute and record in the Recorder's Office of Winnebago County, State of Illinois, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a. of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26.b. of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendant shall grant the access rights and the rights to enforce the land/water use restrictions to one or more of the following persons as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other Settling Defendant and its representatives, and/or (iv) other appropriate grantees. Such Settling Defendant shall, within 45 days of EPA's request, submit to EPA for review and approval with respect to such property:

            (1)     A draft easement, in substantially the form attached hereto as

Appendix G that is enforceable under the laws of the State of Illinois, and

(2)     a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

d.     Update the title search within 15 days of EPA's approval and acceptance of the easement and the title evidence, and if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder's Office of Winnebago County. Within 30 days of recording the easement, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

27.     If any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants, if EPA so requests, shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for Settling Defendants, as well as

28

for the United States on behalf of EPA, as well as, its representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a. of this Consent Decree;

      b.     an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to those restrictions established by Paragraph 26.b. of this Consent Decree including, but not limited to, institutional controls to prevent any use of the Site, or such other property, in a manner not in accordance with the ROD, including, but not limited to, a prohibition on groundwater use until such time that all groundwater meets federal and State of Illinois drinking water standards. Notwithstanding the above, if monitoring identifies the need for modifications or changes to the Remedial Action, the restrictions on use of the Site, such other property, or groundwater may be modified by EPA. The nature and content of the agreements secured by Settling Defendants pursuant to this Paragraph shall be subject to review and approval by EPA; and

      c.     the execution and recordation in the Recorder's Office of Winnebago County, State of Illinois, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a. of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26.b. of this Consent Decree,

or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Within 45 days of entry of this Consent Decree, Settling Defendants shall submit to EPA for review and approval with respect to such property:

(1) A draft easement, in substantially the form attached hereto as Appendix G, that is enforceable under the laws of the State of Illinois, and

(2) a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances)

e. Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Recorder's Office of Winnebago County. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the

30

United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

28.    For purposes of Paragraphs 26 and 27 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.  If (a) any access or land/water use restriction agreements required by Paragraphs 27.a. or 27.b. of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, (b) or any access easements or restrictive easements required by Paragraph 27.c. of this Consent Decree are not submitted to EPA in draft form within 45 days of the date of entry of this Consent Decree, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 26.c.(1) or Paragraph 27.c.(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Decree within 45 days of the date of entry of this Consent Decree, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 26 or 27 of this Consent Decree.  The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Payments for Response Costs),

for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.    If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

30.    Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X.    REPORTING REQUIREMENTS

31.    Settling Defendants shall submit to EPA three (3) copies of written quarterly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous quarter; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous quarter; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous quarter; (d) describe all actions, including, but not limited to, data collection and implementation

of work plans, which are scheduled for the next quarter and provide other information relating to

the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and

Pert charts; (e) include information regarding percentage of completion, unresolved delays

encountered or anticipated that may affect the future schedule for implementation of the Work,

and a description of efforts made to mitigate those delays or anticipated delays; (f) include any

modifications to the work plans or other schedules that Settling Defendants have proposed to

EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of

the Community Relations Plan during the previous quarter and those to be undertaken in the next

quarter. Settling Defendants shall submit these progress reports to EPA by the tenth day of every

calendar quarter following the lodging of this Consent Decree until EPA notifies the Settling

Defendants pursuant to Paragraph 52.b. of Section XIV (Certification of Completion). If

requested by EPA, Settling Defendants shall also provide briefings for EPA to discuss the

progress of the Work.

      32.     In addition to any other requirement of this Consent Decree, Settling Defendants

shall submit to EPA periodic progress reports as are required by the approved RAWP or as

directed by the EPA Project Coordinator.

      33.     The Settling Defendants shall notify EPA of any change in the schedule described

in the progress report for the performance of any activity, including, but not limited to, data

collection and implementation of work plans, no later than seven days prior to the performance

of the activity.

      34.     Upon the occurrence of any event during performance of the Work that Settling

Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

35.    Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiff a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

36.    Settling Defendants shall submit two (2) copies of all plans, reports, and data required by the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Upon request by EPA, Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

37.    All reports and other documents submitted by Settling Defendants to EPA (other than the quarterly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized

34

representative of the Settling Defendants.

## XI.    EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

38.    After review of any plan, report or other item which is required to be submitted

for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and

comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the

submission upon specified conditions; (c) modify the submission to cure the deficiencies;

(d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify

the submission; or (e) any combination of the above.  However, EPA shall not modify a

submission without first providing Settling Defendants at least one notice of deficiency and an

opportunity to cure within 30 days, except where to do so would cause serious disruption to the

Work or where previous submission(s) have been disapproved due to material defects and the

deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an

acceptable deliverable.

39.    In the event of approval, approval upon conditions, or modification by EPA,

pursuant to Paragraph 38(a), (b), or (c), Settling Defendants shall proceed to take any action

required by the plan, report, or other item, as approved or modified by EPA subject only to their

right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution)

with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the

submission to cure the deficiencies pursuant to Paragraph 38(c) and the submission has a

material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX

(Stipulated Penalties).

40.   Resubmission of Plans.

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 38(d),

Settling Defendants shall, within 28 days or such longer time as specified by EPA in such notice,

correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated

penalties applicable to the submission, as provided in Section XX, shall accrue during the 28-day

period or otherwise specified period but shall not be payable unless the resubmission is

disapproved or modified due to a material defect as provided in Paragraphs 41 and 42.

b.     Notwithstanding the receipt of a notice of disapproval pursuant to

Paragraph 38(d), Settling Defendants shall proceed, at the direction of EPA, to take any action

required by any non-deficient portion of the submission.  Implementation of any non-deficient

portion of a submission shall not relieve Settling Defendants of any liability for stipulated

penalties under Section XX (Stipulated Penalties).

41.     In the event that a resubmitted plan, report or other item, or portion thereof, is

disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies

in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the

plan, report or other item.  Settling Defendants shall implement any such plan, report, or item as

modified or developed by EPA, subject only to their right to invoke the procedures set forth in

Section XIX (Dispute Resolution).

42.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA

due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan,

report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution

36

procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

43.    All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII.    PROJECT COORDINATORS

44.    Within 20 days of lodging this Consent Decree, Settling Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she

may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

45.    Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

46.    EPA's Project Coordinator and the Settling Defendants' Project Coordinator shall meet on an as needed basis as determined by the EPA Project Coordinator.

### XIII.  ASSURANCE OF ABILITY TO COMPLETE WORK

47.    Within 30 days of entry of this Consent Decree, Settling Defendants shall establish and maintain financial security in the amount of $100,000 in one or more of the following forms:

      a.    A surety bond guaranteeing performance of the Work;

      b.    One or more irrevocable letters of credit equaling the total estimated cost of the Work;

c.    A trust fund;

d.    A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with at least one of the Settling Defendants; or

e.    A demonstration that one or more of the Settling Defendants satisfy the requirements of 40 C.F.R. Part 264.143(f).

f.    Any other financial mechanism acceptable to and approved by EPA.

48.    If the Settling Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 47.d of this Consent Decree, Settling Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 47.d. or 47.e., they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 47 of this Consent Decree. Settling Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

49.    If Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 47 above after entry of this

Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent

Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security

provided under this Section to the estimated cost of the remaining work to be performed.

Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the

requirements of this Section, and may reduce the amount of the security upon approval by EPA.

In the event of a dispute, Settling Defendants may reduce the amount of the security in

accordance with the final administrative or judicial decision resolving the dispute.

     50.    Settling Defendants may change the form of financial assurance provided under

this Section at any time, upon notice to and approval by EPA, provided that the new form of

assurance meets the requirements of this Section. In the event of a dispute, Settling Defendants

may change the form of the financial assurance only in accordance with the final administrative

or judicial decision resolving the dispute.

## XIV.  CERTIFICATION OF COMPLETION

     51.    <u>Completion of the Remedial Action.</u>

        a.    Within 90 days after Settling Defendants conclude that the Remedial

Action Work Plan has been fully performed and the Performance Standards have been attained,

Settling Defendants shall submit a written report requesting certification of completion of the

Remedial Action to EPA for approval, with a copy to the State, pursuant to Section XI (EPA

Approval of Plans and Other Submissions). In the report, a registered professional engineer and

the Settling Defendants' Project Coordinator shall state that the Remedial Action has been

completed in full satisfaction of the requirements of this Consent Decree. The written report

shall include as-built drawings signed and stamped by a professional engineer, if applicable. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with scope of the remedy selected in the ROD and the 2006 Memorandum as that term is defined in Paragraph 14.b, and are not inconsistent with the NCP. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or will require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.    If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

52.    Completion of the Work.

a.    Within 90 days after Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, and EPA.  If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and

42

comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD and the 2006 Memorandum," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV.    EMERGENCY RESPONSE

53.     In the event of any action or occurrence during the performance of the Work, which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 54, immediately take all appropriate action to

prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 5. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

54.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State: a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

XVI.   PAYMENTS FOR RESPONSE COSTS

55.    Payments for Past Response Costs.

     a.     Within 30 days of the Effective Date, Settling Defendants shall pay to

44

EPA $550,000 in payment for Past Response Costs.  Payment shall be made by FedWire

Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with

current EFT procedures, referencing the Civil Action Number, USAO File Number 2008V01563,

EPA Site/Spill ID Number 05MZ, and DOJ Case Number 90-11-3-08952.  Payment shall be

made in accordance with instructions provided to the Settling Defendants by the Financial

Litigation Unit of the United States Attorney's Office for the Northern District of Illinois, 219

South Dearborn Street, 5th Floor, Chicago, IL 60604, following lodging of the Consent Decree.

Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be

credited on the next business day.

b.    At the time of payment, Settling Defendants shall send notice that payment

has been made to the United States, to EPA and to the Regional Financial Management Officer,

in accordance with Section XXVI (Notices and Submissions).

56.    The total amount to be paid by Settling Defendants pursuant to Subparagraph

55.a. shall be deposited in the EPA Hazardous Substance Superfund.

57.    <u>Payments for Future Response Costs</u>.

a.    Settling Defendants shall pay to EPA all Future Response Costs which are

not inconsistent with the  National Contingency Plan.  On a periodic basis the United States will

send Settling Defendants a bill requiring payment that includes an Itemized Cost Summary from

EPA and DOJ identifying personnel costs, contractor costs, and any other costs, if appropriate.

Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of

each bill requiring payment, except as otherwise provided in Paragraph 58, according to the

following procedures.

       (i)     If the payment amount demanded in a bill is more than $10,000, payment shall be made to U.S. EPA by Electronics Funds Transfer ("EFT") in accordance with current EFT procedures to be provided to Respondents by U.S. EPA Region 5. Payment shall be accompanied by a statement identifying the name and address of the parties making payment, the Site name, U.S. EPA Region 5, the Site/Spill ID Number 05MZ, the DOJ Case Number 90-11-3-08952, and the Civil Action Number for this action.

       (ii)    If the amount demanded in a bill is $10,000 or less, the Settling Defendants may in lieu of the procedures in Subparagraph 57.a.(i) make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund, " referencing the name and address of the party making the payment, the Civil Action Number, the EPA Site/Spill ID Number 05MZ, and DOJ Case Number 90-11-3-08952. Settling Defendants shall send the check(s) to:

      U.S. Environmental Protection Agency, Region 5
      Superfund Program Accounting & Analysis Section
      P.O. Box 70753
      Chicago, Illinois 60673-0753

       b.    At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

       c.    The total amount to be paid by Settling Defendants pursuant to Subparagraph 57.a. shall be deposited in the EPA Hazardous Substance Superfund.

58.    Settling Defendants may contest payment of any Future Response Costs under Paragraph 57 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP.  Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 57. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Illinois and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 57.  If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which

they did not prevail to the United States in the manner described in Paragraph 57; Settling

Defendants shall be disbursed any balance of the escrow account.  The dispute resolution

procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX

(Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the

Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

59.    In the event that the payments required by Subparagraph 57.a. are not made within

30 days of the Effective Date or the payments required by Paragraph 58 are not made within 30

days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the

unpaid balance.  The Interest to be paid on Past Response Costs under this Paragraph shall begin

to accrue on the Effective Date.  The Interest on Future Response Costs shall begin to accrue on

the date of the bill.  The Interest shall accrue through the date of the Settling Defendants'

payment.  Payments of Interest made under this Paragraph shall be in addition to such other

remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make

timely payments under this Section including, but not limited to, payment of stipulated penalties

pursuant to Paragraphs 73-75.  The Settling Defendants shall make all payments required by this

Paragraph in the manner described in Paragraph 57.

## XVII. INDEMNIFICATION AND INSURANCE

60.    <u>Settling Defendants' Indemnification of the United States.</u>

a.    The United States does not assume any liability by entering into this

agreement or by virtue of any designation of Settling Defendants as EPA's authorized

representatives under Section 104(e) of CERCLA.  Settling Defendants shall indemnify, save and

hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States.

         b.     The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 60, and shall consult with Settling Defendants prior to settling such claim.

         61.     Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of

Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

62.    No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Work pursuant to Subparagraph 52.b. of Section XIV (Certification of Completion)] comprehensive general liability insurance with limits of five (5) million dollars, combined single limit, and automobile liability insurance with limits of one (1) million dollars, combined single limit, naming the United States as an additional insured. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance. Settling Defendants shall resubmit such certificates each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the

same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling

Defendants need provide only that portion of the insurance described above which is not

maintained by the contractor or subcontractor.

### XVIII. FORCE MAJEURE

63.    "Force majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of the Settling Defendants, of any entity controlled by

Settling Defendants, or of Settling Defendants' contractors that delays or prevents the

performance of any obligation under this Consent Decree despite Settling Defendants' best efforts

to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to

fulfill the obligation" includes using best efforts to anticipate any potential force majeure event

and best efforts to address the effects of any potential force majeure event (1) as it is occurring

and (2) following the potential force majeure event, such that the delay is minimized to the

greatest extent possible. "Force Majeure" does not include financial inability to complete the

Work or a failure to attain the Performance Standards.

64.    If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, the

Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence,

EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives

are unavailable, the Director of the Superfund Division, EPA Region 5, within 5 days of when

Settling Defendants first knew that the event might cause a delay. Within 5 days thereafter,

Settling Defendants shall provide in writing to EPA an explanation and description of the reasons

for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

65.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the

force majeure event.

66.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 63 and 64, above.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.   DISPUTE RESOLUTION

67.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

68.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of Informal Negotiations between the parties to the dispute.  The period for Informal Negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered

to have arisen when one party sends the other parties a written Notice of Dispute.

69.    Statements of Position.

a.    In the event that the parties cannot resolve a dispute by Informal Negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 70 or Paragraph 71.

b.    Within 45 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 70 or Paragraph 71. Within 30 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.    If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 70 or 71, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the

Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraph 70 or 71.

70.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 70.a.  This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 70.c. and d.

c.     Any administrative decision made by EPA pursuant to Paragraph 70.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is

filed by the Settling Defendants with the Court and served on all Parties within 10 working days

of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the

efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within

which the dispute must be resolved to ensure orderly implementation of this Consent Decree.

The United States may file a response to Settling Defendants' motion.

       d.      In proceedings on any dispute governed by this Paragraph, Settling

Defendants shall have the burden of demonstrating that the decision of the Superfund Division

Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of

EPA's decision shall be on the administrative record compiled pursuant to Paragraph 70.a.

      71.      Formal dispute resolution for disputes that neither pertain to the selection or

adequacy of any response action nor are otherwise accorded review on the administrative record

under applicable principles of administrative law, shall be governed by this Paragraph.

       a.      Following receipt of Settling Defendants' Statement of Position submitted

pursuant to Paragraph 69, the Director of the Superfund Division, EPA Region 5, will issue a

final decision resolving the dispute.  The Superfund Division Director's decision shall be binding

on the Settling Defendants unless, within 10 working days of receipt of the decision, the Settling

Defendants file with the Court and serve on the parties a motion for judicial review of the

decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief

requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly

implementation of the Consent Decree.  The United States may file a response to Settling

Defendants' motion.

      b.     Notwithstanding Paragraph R of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

     72.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agree otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 81. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

XX.   STIPULATED PENALTIES

     73.    Settling Defendants shall be liable to the United States for stipulated penalties in the amounts set forth in Paragraphs 74, 75 and 76 for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

74.    Stipulated Penalty Amounts - Work.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 74.b.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,250 | 1st through 14th day |
| $2,000 | 15th through 30th day |
| $3,000 | 31st day and beyond |

b.    Compliance Milestones.

(1) Payment for Past Response Costs pursuant to Paragraph 55;

(2) Implementation of Remedial Action milestones set forth in the approved Remedial Action Work Plan schedules;

(3) Implementation of Operation and Maintenance (O&M) milestones set forth in the Remedial Action Work Plan schedules.

75.    Stipulated Penalty Amounts - Reports.

a.    The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents required pursuant to any requirement of this Consent Decree, including but not limited to, requirements under Sections V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV and XV of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |

$1,500                                  31st day and beyond

76.    In the event that EPA assumes performance of a portion or all of the Work

pursuant to Paragraph 91 of Section XXI (Covenants Not to Sue by Plaintiff), Settling

Defendants shall be liable for a stipulated penalty in the amount of $25,000.

77.    All penalties shall begin to accrue on the day after the complete performance is

due or the day a violation occurs, and shall continue to accrue through the final day of the

correction of the noncompliance or completion of the activity.  However, stipulated penalties

shall not accrue:  (1) with respect to a deficient submission under Section XI (EPA Approval of

Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's

receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency;

(2) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under

Paragraph 70.b. or 71.a. of Section XIX (Dispute Resolution), during the period, if any,

beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of

Position is received until the date that the Director issues a final decision regarding such dispute;

or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute

Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the

final submission regarding the dispute until the date that the Court issues a final decision

regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate

penalties for separate violations of this Consent Decree.

78.    Following EPA's determination that Settling Defendants have failed to comply

with a requirement of this Consent Decree,  EPA may give Settling Defendants written

59

notification of the same and describe the noncompliance. EPA may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

79.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund, " shall be mailed to U.S. Environmental Protection Agency, Region 5, Superfund Program Accounting & Analysis Section, P.O. Box 70753, Chicago, Illinois 60673-0753, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #05MZ, the DOJ Case Number 90-11-3-08952, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions).

80.     The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

81.     Penalties shall continue to accrue as provided in Paragraph 77 during any dispute resolution period, but need not be paid until the following:

    a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15

days of the agreement or the receipt of EPA's decision or order;

       b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

       c.     If the District Court's decision is appealed by any Party, Settling Defendants shall pay to the United States all accrued penalties determined by the District Court to be owed into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

82.     If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 78.

83.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l)

of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

84.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

XXI.   COVENANTS NOT TO SUE BY PLAINTIFF

85.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 86, 87 and 89 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA 42 U.S.C. §§ 9606 and 9607, or Section 7003 of RCRA, 42 U.S.C. § 6973, relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 55.a. of Section XVI (Payments for Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 51.b. of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

86.     United States' Pre-certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without

prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

      a.     to perform further response actions relating to the Site, or

      b.     to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

        (1)     conditions at the Site, previously unknown to EPA, are discovered, or

        (2)     information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

      87.   <u>United States' Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

      a.     to perform further response actions relating to the Site, or

      b.     to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

        (1)     conditions at the Site, previously unknown to EPA, are discovered, or

(2)     information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

88.     For purposes of Paragraph 86, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 87, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

89.     General reservations of rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a.     claims based on a failure by Settling Defendants to meet a requirement of this  Consent Decree;

b.     liability arising from the past, present, or future disposal, release,

or threat of release of Waste Material outside of the Site;

      c.     liability based upon the Settling Defendants' ownership or operation of any property within the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

      d.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      e.     criminal liability;

      f.     liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

      g.     liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 14 (Modification of the RAWP or Related Work Plans).

     90.     The United States' authority to bring, maintain and/or resolve any administrative or judicial action for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site against any third party shall not be affected by this Consent Decree. Settling Defendants' obligations pursuant to this Consent Decree shall be unaffected by the bringing,

maintenance, or resolution of any such action. Settling Defendants shall not assert, and may not

maintain, any objections to any resolution (by settlement or otherwise) that the United States

deems appropriate of any claims brought by the United States against such third party.

91.   Work Takeover

   a.     In the event EPA determines that Settling Defendants have (i) ceased

implementation of any portion of the Work, or (ii) are seriously or repeatedly deficient or late in

their performance of the Work, or (iii) are implementing the Work in a manner which may cause

an endangerment to human health or the environment, EPA may issue a written notice ("Work

Takeover Notice") to the Settling Defendants. Any Work Takeover Notice issued by EPA will

specify the grounds upon which such notice was issued and will provide Settling Defendants a

period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of

such notice.

   b.   If, after expiration of the 10-day notice period specified in Paragraph 91.a.,

Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to

EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume

the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover").

EPA shall notify Settling Defendants in writing (which writing may be electronic) if EPA

determines that implementation of a Work Takeover is warranted under this Paragraph 91.b.

   c.  Settling Defendants may invoke the procedures set forth in Section XIX

(Dispute Resolution), Paragraph 68, to dispute EPA's implementation of a Work Takeover under

Paragraph 91.b. However, notwithstanding Settling Defendants= invocation of such dispute

resolution procedures, and during the pendency of any such dispute, EPA may in its sole

discretion commence and continue a Work Takeover under Paragraph 91.b until the earlier of (I)

the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to

EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is

rendered in accordance with Section XIX (Dispute Resolution), Paragraph 70, requiring EPA to

terminate such Work Takeover.

        d.  After commencement and for the duration of any Work Takeover, EPA shall

have immediate access to and the benefit of any performance guarantee(s) provided pursuant to

Section XIII (Assurance of Ability to Complete Work) of this Consent Decree.  If and to the

extent that EPA is unable to secure the resources guaranteed under any such performance

guarantee(s) and the Settling Defendants fail to remit a cash amount up to but not exceeding the

estimated cost of the remaining Work to be performed, any unreimbursed costs incurred by EPA

in performing Work under this Paragraph (Work Takeover) shall be considered Future Response

Costs that Settling Defendants shall pay pursuant to Section XVI (Payment for Response Costs).

        92.    Notwithstanding any other provision of this Consent Decree, the United States

retains all authority and reserves all rights to take any and all response actions authorized by law.

### XXII.  COVENANTS BY SETTLING DEFENDANTS

        93.    Covenant Not to Sue.  Subject to the reservations in Paragraph 94, Settling

Defendants hereby covenant not to sue and agree not to assert any claims or causes of action

against the United States with respect to the Site or this Consent Decree, including, but not

limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 102 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 86, 87 and 89(b)-(d) or 89(g), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

94.    The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any

68

damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

95.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

96.    Settling Defendants agree not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from performance of the Work in any way affected the basis for listing the Site.

97.    Settling Defendants hereby covenant not to sue and agree not to assert any direct or indirect claims against each other or against their own or each others' officers, directors, employees, or agents with respect to Matters Addressed in this Consent Decree except as necessary to enforce the terms of any agreements by or between them relating to Matters Addressed in this Consent Decree.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

98.    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this

Consent Decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

99.    The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for Matters Addressed in this Consent Decree.

100.    The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

101.    The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States within 10 days of service of the complaint on them.  In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

102.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or

other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

XXIV.    ACCESS TO INFORMATION

103.    Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

104.    Business Confidential and Privileged Documents.

a.    Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential

71

under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public

may be given access to such documents or information without further notice to Settling

Defendants.

        b.    The Settling Defendants may assert that certain documents, records and

other information are privileged under the attorney-client privilege or any other privilege

recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing

documents, they shall provide the Plaintiff with the following:  (1) the title of the document,

record, or information; (2) the date of the document, record, or information; (3) the name and

title of the author of the document, record, or information; (4) the name and title of each

addressee and recipient; (5) a description of the contents of the document, record, or information;

and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other

information created or generated pursuant to the requirements of the Consent Decree shall be

withheld on the grounds that they are privileged.

    105.    No claim of privilege or confidentiality shall be made with respect to any data,

including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific,

chemical, or engineering data, or any other documents or information evidencing conditions at or

around the Site.

## XXV.  RETENTION OF RECORDS

    106.    Until ten (10) years after the Settling Defendants' receipt of EPA's notification

pursuant to Paragraph 52.b. of Section XIV (Certification of Completion), each Settling

Defendant shall preserve and retain all non-identical copies of records and documents (including

records or documents in electronic form) now in its possession or control or which come into its

possession or control that relate in any manner to its liability under CERCLA with respect to the

Site, provided, however, that Settling Defendants who are potentially liable as owners or

operators of the Site must retain, in addition, all documents and records that relate to the liability

of any other person under CERCLA with respect to the Site.  Each Settling Defendant must also

retain, and instruct its contractors and agents to preserve, for the same period of time specified

above all non-identical copies of the last draft or final version of any documents or records

(including documents or records in electronic form) now in its possession or control or which

come into its possession or control that relate in any manner to the performance of the Work

under this Consent Decree and compliance with the requirements of the 1999 AOC and 2004

AOC, provided, however, that each Settling Defendant (and its contractors and agents) must

retain, in addition, copies of all data generated during the performance of the Work and not

contained in the aforementioned documents required to be retained.  Each of the above record

retention requirements shall apply regardless of any corporate retention policy to the contrary.

     107.    At the conclusion of this document retention period, Settling Defendants shall

notify the United States at least 90 days prior to the destruction of any such records or

documents, and, upon request by the United States, Settling Defendants shall deliver any such

records or documents to EPA.  The Settling Defendants may assert that certain documents,

records and other information are privileged under the attorney-client privilege or any other

privilege recognized by federal law.  If the Settling Defendants assert such a privilege, they shall

provide the Plaintiffs with the following:  (1) the title of the document, record, or information;

(2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

108.    Each Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. NOTICES AND SUBMISSIONS

109.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendants, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Express Mail:
ENRD Mailroom: Room 2121
601 D Street, N.W.
Washington, D.C. 20004
Re: DJ # 90-11-3-08952
     and
Director, Superfund Division
United States Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604

As to EPA:

William Ryan
EPA Project Coordinator
United States Environmental Protection Agency
Region 5
77 West Jackson Boulevard, SR-6J
Chicago, Illinois 60604
     and
John Matson
Office of Regional Counsel
United States Environmental Protection Agency
Region 5
77 West Jackson Boulevard, C-14J
Chicago, Illinois 60604

As to the Regional Financial Management Officer:

U.S. Environmental Protection Agency, Region 5
Superfund Program Accounting & Analysis Section
77 West Jackson Boulevard
Chicago, Illinois 60604

<u>As to the Settling Defendants:</u>

For Waste Management
Anson Johnson
Waste Management, Inc.
Closed Sites Management Group
720 Butterfield Road
Lombard, Illinois 60148
        and
Rachel Schneider
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2040
Milwaukee, Wisconsin 53202

For Ecolab
Lawrence T. Bell,
Senior Vice President & General Counsel
Ecolab
370 North Wabasha Street
St. Paul, Minnesota 55102
        and
Frederick Mueller
Johnson & Bell, Ltd.
55 East Monroe Street, Suite 4100
Chicago, Illinois 60603

## XXVII.   EFFECTIVE DATE

110.   The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII.   RETENTION OF JURISDICTION

111.   This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for su1ch further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with

its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

112.     The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Record of Decision ("ROD") dated September 30, 2003.

"Appendix B" is the Remedial Action Work Plan ("RAWP", also known as the Long-Term Monitoring Plan).

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the Remedial Design Report.

"Appendix E" is the 2006 Memorandum.

"Appendix F" is the 2004 Administrative Order on Consent ("AOC") and Attachments

"Appendix G" is the Model Draft Declaration of Easement and Restrictive Covenants

## XXX. COMMUNITY RELATIONS

113.     Settling Defendants shall propose to EPA their participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendants under the Plan.  Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

114.     Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants. All such modifications shall be made in writing.

115.     Except as provided in Paragraph 14 (Modification of the RAWP or Related Work Plans), no material modifications shall be made to the RAWP without written notification to and written approval of the United States, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification. Modifications to the RAWP that do not materially alter that document, or material modifications to the RAWP that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

116.     Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

XXXII.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

117.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

118.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

### XXXIII.    SIGNATORIES/SERVICE

119.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

120.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

121.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

XXXIV.   FINAL JUDGMENT

122.   This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree.  The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

123   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 2008.

_____

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Waste Management of Wisconsin, Inc. et al., relating to the Evergreen Manor Superfund Site.

FOR THE UNITED STATES OF AMERICA:

_____
Date

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

5/20/08
Date

FRANCIS J. BIROS
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone: (202) 616 - 6552
Fax: (202) 616 - 6584
frank.biros@usdoj.gov


PATRICK FITZGERALD
United States Attorney
Northern District of Illinois

5/29/08
Date

MONICA MALLORY
Assistant United States Attorney
Northern District of Illinois
308 W. State Street
Rockford, IL 61101
Phone: (815) 987 - 4444

81

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Waste Management of Wisconsin, Inc. et al., relating to the Evergreen Manor Superfund Site.

**FOR THE UNITED STATES**
**ENVIRONMENTAL PROTECTION AGENCY:**

5/15/05
Date

RICHARD C. KARL
Director
Superfund Division, Region 5
U.S. Environmental Protection Agency
77 West Jackson Boulevard
Chicago, Illinois 60604

3-11-08
Date

JOHN MATSON
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604

82

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Waste Management of Wisconsin, Inc. et al., relating to the Evergreen Manor Superfund Site.

**FOR WASTE MANAGEMENT OF ILLINOIS, INC.:**

March 3, 2008
Date

Signature: _____
Name(print): Jack Dowden
Title: Area Director
Address: W124 N9355 Boundary Road
Menomonee Falls, WI 53051
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): The Corporation Trust Company
Title: _____
Address: 1209 Orange Street
Corporation Trust Center
Wilmongton, DE 19801
Ph. Number: 302-658-7581

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Waste Management of Wisconsin, Inc. et al., relating to the Evergreen Manor Superfund Site.

**FOR WASTE MANAGEMENT OF WISCONSIN, INC.:**

*March 3, 2008*
Date

Signature: _____
Name(print):  Jack Dowden
Title:        Area Director
Address:      W124 N9355 Boundary Road
              Menomonee Falls, WI 53051
              _____
              _____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  CT Corporation System
Title:         _____
Address:       8040 Excelsior Drive
               Madison, WI 53717
               _____
Ph. Number:    _____

84

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Waste Management of Wisconsin, Inc. et al., relating to the Evergreen Manor Superfund Site.

### FOR ECOLAB INC.:

February 28, 2008
Date

Signature: _Lawrence P. Bell_
Name (print): Lawrence T. Bell
Title: General Counsel
Address: 370 North Wabasha Street
St. Paul, Minnesota 55102
_____
_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____
Ph. Number: _____