**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| CHARLOTTE K., as parent and next friend of GILLIAN K., a minor and KIMBERLY K., as parent and next friend of MATTHEW K., a minor, <br>           Plaintiffs, <br><br> vs. <br><br> ROCKFORD BOARD OF EDUCATION DISTRICT #205, <br><br>           Defendant. | ) ) ) ) ) )   08-C ) ) ) ) ) ) ) ) |

## PETITION/COMPLAINT FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND/OR A PERMANENT RESTRAINING ORDER

**NOW COMES** the Plaintiffs, CHARLOTTE K., as parent and next friend of GILLIAN K., a minor, and KIMBERLY K., as parent and next friend of MATTHEW K., a minor, by their attorneys, LAW OFFICES OF SHRIVER, O'NEILL & THOMPSON, and complains of the Defendants, ROCKFORD BOARD OF EDUCATION DISTRICT #205, as follows:

### PARTIES

1. At all times relevant herein, Plaintiffs CHARLOTTE K., GILLIAN K. and MATTHEW K. were residents of the City of Rockford, County of Winnebago and State of Illinois. KIMBERLY K. is a resident of the City of Naperville, State of Illinois.

2. At all times relevant herein, ROCKFORD BOARD OF EDUCATION DISTRICT #205 (hereinafter referred to as DISTRICT) was a corporate body under the State of Illinois located within the boundaries of Winnebago County, State of Illinois.

3. Defendant DISTRICT employs at its Rockford, Illinois, site certain schools, which include the DISTRICT administrative offices located at 201 S. Madison Street and Page Park School located at 5949 Safford Road and Wilson School located at 520 N. Pierpont Avenue, Rockford, Illinois, and has over 3,000 employees.

## JURISDICTION AND VENUE

4. This is an action for violations of the Civil Rights Act of 1964 § 1983; I.D.E.A. 2004 20 U.S.C. §1400 et. seq.; Rehabilitation Act of 1973 §501 et. seq., 29 U.S.C. §791 et. seq.; Americans with Disabilities Act of 1990, §2 et. seq.; 42 U.S.C. §12101 et. seq. Equal Protection Clause and the Due Process Clause of the U.S. Constitution. Jurisdiction is founded upon a federal question of law, pursuant to 28 USC §1331.

5. Venue is proper in this district and division pursuant to 28 USC §1391a.

## COMPLAINT

6. The Plaintiffs are parents, guardians and next friends of children identified as having the need for special education as children with a disability as defined by I.D.E.A. 2004 20 U.S.C. §1412. Each of these children have Individualized Educational Programs ("I.E.P.") under 20 U.S.C. §1414(d) and have "individual appropriate accommodations". 20 U.S.C. §1414(d).

7. These children have I.E.P.'s that demonstrate their disability is of such a nature or severity that they cannot be educated in regular classes or regular schools even with the use of supplementary aids and services. 20 U.S.C. § 1412 (a)(5).

8. That in violation of all of the placement decisions made by the special education team, and without any meaningful notice to the parents who are a part of the

special education team, the Defendant DISTRICT have announced a plan to unilaterally move these children from their separate therapeutic day school located at Page Park, closing all of their therapeutic programs. Namely a therapeutic pool, a therapeutic garden, a therapeutic kitchen, and a therapeutic play ground (donated by musical artist Bob Dylan) all designed to meet their special needs. These unilateral actions prevent parents from "meaningful participation" in educational decision-making for their child. 20 U.S.C. §1414(e). See the attached generic letters from the DISTRICT of the only actual notice received. Exhibit 1.

9. That the DISTRICT failed to notify any of the above parents and give prior notice of these changes to be made in the educational placement for their children as required under 20 U.S.C. §1415(b)(3), so as to allow them to have meaningful participation in these decisions.

10. These unilateral changes being made by the DISTRICT would be denying the disabled children assistive technology services and equipment particularly designated for them. 20 U.S.C. §1401.

11. That the Defendant DISTRICT has used federal funds under 20 U.S.C. §1404 to construct, alter and design Page park for these severely handicapped children.

12. Upon information and belief the DISTRICT will be destroying the equipment, playground, pool, etc. within the next two to three days and not replacing it.

13. That the Plaintiffs have authorized a filing of a Due Process Request to challenge the unilateral decision of the DISTRICT to transfer their children to a more restrictive environment where they will be unsafe and exposed to an environment harmful to their well being. See attached Exhibits 2 and 3.

14. Under 34 CFR §300.518, 20 U.S.C. §1415(e)(2), a stay-put provision is in place during a Due Process Hearing and a child must remain in his or her current educational placement which would be the therapeutic program at Page Park school or a similar facility with the same therapeutic programs and adaptive equipment available to the children Plaintiffs.

15. That the DISTRICT, by unilaterally closing Page Park School without making provisions for the health, safety and necessary therapeutic programming for the students, has violated their civil rights as a protected class under the Equal Protection Clause of the U.S. Constitution in that the DISTRICT is placing regular students without any special education needs there instead. See Exhibit 4.

16. By failing to properly notify the parents/guardians of this unilateral move the DISTRICT has violated the Due Process Clause of the U.S. Constitution. I.D.E.A. 2004 20 U.S.C. §1400 et. al.  The DISTRICT even failed to provide adequate notice in its school board meeting agenda that it would be closing the Page Park program for the severely disabled and is in violation of the Open Meetings Act.

17. In Honig v. Doe, 484 U.S. 305 (1988), "...a parent seeking review under §1415(e)(2) must exhaust time-consuming administrative remedies...[However] parents may by-pass the administrative process where exhaustion would be futile or inadequate."

18. If the "stay-put provision" of 34 CFR §300.518, 20 U.S.C. §1415(e)(2) is not put in place, DISTRICT #205 will close Page Park School and destroy millions of dollars of therapeutic equipment that can never be replaced i.e. within one to two days they will be pouring concrete into the therapeutic pool or if it could be replaced it would not be able to be done prior to school starting in August, 2008.

19. The DISTRICT has been systematically depriving the children at Page Park of the programming and the facilities available at Page Park because there are few remaining children with I.E.P.'s that required the pool in the 2007-2008 school year. Excuse after excuse was given for not using the pool. "We cannot find a teacher; the chemicals are not right; etc." The DISTRICT eliminated or cut out adaptive physical education necessary for these children.

20. This systematic discrimination began approximately three years ago as they have gradually moved students from Page Park to new settings less accommodating to these children who have severe and profound needs both physically and mentally.

21. This has been a systematic and consistent effort to gradually deprive these children of the necessary free and appropriate educational benefits so that they can become more independent and progress in their educational programming and not regress. All of the children need a form of adaptive physical education that can be best accommodated at Page Park with the multiple therapeutic equipment and facilities that they will have no access to at the new facilities. There is no present adequate substitute for these facilities that could be available for these children by August, 2008, when school will start in the fall.

22. The facilities at the "new" location proposed by the DISTRICT are entirely inadequate for the severe and profoundly disabled children all of whom have sensory integration issues and who have physical difficulties as well: a) The drop off place for the buses has no protection from the rain and elements and the children have to walk hundreds of yards or be pushed in their wheelchairs to the entrance; b) No play ground at all or outside activities available; c) No classroom bathrooms-adult children

have to be changed and cleaned in classrooms. Two handicapped stalls for 30 students-no handicapped showers; d) The only way out of the building is by a key in a dead bolt which could be a serious hazard; e) No access or very poor access to a gymnasium; f) no cafeteria-the children have to stay in their classrooms; and g) No access to a therapeutic pool-the proposed pool at Auburn is a regular pool too deep and too cold for the handicapped. This in not a school especially designed for the handicapped-it is only adapted with an elevator that presently is not working.

23. The children Plaintiffs either wear depends, wet their pants or touch unhealthy and/or inappropriate things. Therefore, Page Park has a bathroom or a sink in nearly every classroom in order to clean the children up quickly and often and to control the spread of disease. The "new" facility does not have bathrooms in the classrooms. Upon information and belief, there will be liquid hand sanitizer used instead of soap and water. The children will have to be escorted down the hall instead taking them away from their activity and nessitating additional aides to assist in this process because the remaining children cannot be left without constant supervision. Presently the plan is that certain adult children will have their depends changed in front of classmates in their classrooms. Even the life skills of proper bathroom behavior is going to be impossible to teach in those circumstances.

24. All that the DISTRICT has said is the law mandates that these children be educated in the least restrictive environment so they have to be moved. This is totally incorrect. <u>Board of Educ. of Tp. High School Dist. No. 211 v. Ross</u>, 486 F.3d 267 C.A. 7 (Ill.) 2007. In fact, the intent of the DISTRICT is to move much less handicapped children, some without I.E.P.s' at all, in fact, regular education students to Page Park

School. Those children have no need of the therapeutic pool, playground or special bathrooms in each classroom and which are not a part of their program. Upon information and belief, the therapeutic pool will be closed and be filled in with concrete at the end of June in the next one to two days, so no one can ever reopen or use it again. See attached Affidavits of Kimberly K. and Charlotte K.

25. To obtain a temporary restraining order (TRO) the movant must show that 1.) It is reasonably likely to succeed on the merits; 2.) No adequate remedy at law exists; 3.) It will suffer irreparable harm which absent injunctive relief outweighs the irreparable harm the respondent will suffer if the injunction is granted; and 4.) The injunction will not harm the public interest. <u>International Profit Associates, Inc. V. Paisola</u>, 461 F.Supp.2d 672 ND.Ill.2006.

26. It is reasonably likely that the Plaintiffs shall succeed in that the stay-put provision of I.D.E.A. allows them to remain in the same school and classes they have been if the parents have filed a Due Process Request objecting to the move of their child from Page Park School. This has been done. See attached Affidavits from Kimberly K. and Charlotte K. It is also likely that they will succeed in that the children's past I.E.P.'s mandate the use of the therapeutic pool and the outdoor activities at Page Park.

27. There had been no change in the children's need for such programming and without it they will not receive the educational benefit it is designed to give them, to relieve their stress, sensory integration issues and provide use of therapeutic equipment to reinforce the occupational and physical therapy necessary for their physical and mental handicaps. For example, the Plaintiffs continue to need constant monitoring of their bathroom needs. Just because the DISTRICT has systematically changed the Plaintiffs'

I.E.P.'s over the last three years to remove some of the accommodations listed and because they are only available at Page Park School, does not mean that those accommodations are not necessary to provide an educational benefit to the child. One Plaintiff's behavior in particular has gotten much worse as a result of the restrictions in movement and physical activity that the DISTRICT has imposed on him at Page Park School this last year depriving him of the pool and other appropriate activities. This will only get worse at the "new" facility. See attached Affidavit of Kimberly K.

28.  No adequate remedy at law exists in that even if the DISTRICT added on to the "new" facility, it would cost millions to replicate the setting and facility at Page Park School even to add multiple bathrooms. All of these items were accumulated over 35 years which would be impossible to rebuild prior to school starting this fall.

29.  Most of these children have limited time left to learn as much as possible regarding their own safety and life skills and would most likely regress substantially without the accommodations and the facility and programming available to them at Page Park School. See attached Affidavits from Kimberly K. and Charlotte K.

30.  If the program at Page Park School closes for the severe and profound children and there is no bathrooms available to them in their classroom or at least a sink; there is no therapeutic pool; no therapeutic playground ($20,000 was donated by Bob Dylan for the playground and he helped build it many years ago), these children will be irreparably harmed. Even if this court finds there is good sound and educational reasons to move the children to a new facility, there is no earthly reason to fill the pool in with concrete. It is as if the DISTRICT is deliberately destroying it so that no one in the future could resurrect it so that it could be used on a daily/weekly field trip by the children who

need it most. It is specially designed to be extra warm and shallow and it has a special lift for wheelchair children to have access. See attached documentation of the lack of necessary facilities at the "new" location and Affidavit of Charlotte K.

31. There appears to be no irreparable harm to the DISTRICT in that money appears to be no object in that they are not closing the school, they are just taking the necessary educational benefits and accommodations away from the handicapped children who need it most. They are discriminating against the most handicapped by restricting their access and confining them to a locked facility where they will have no ability to have outside contacts. Page Park School has a playground and walking trails onsite, the "new" facility does not. They are putting them more at risk for the spread of disease by not making bathroom facilities readily available. They are putting them in regular classroom facilities without any of the amenities and accommodations expected for the severe and profound population. The Page Park School is still in a condition that it can reopen in the fall for these children provided a TRO is granted not to further destroy the facility and stop the pool from being concreted in.

32. An injunction that prevents the DISTRICT from further altering the facilities at Page Park School so that they are so irreparably altered and no longer usable for the severe and profoundly disabled children Plaintiffs and that prevents the DISTRICT from causing the therapeutic pool at Page Park School to be utterly destroyed by filling it in with concrete will not harm the public interest. In fact, the public interest would be best served by providing the best programming available to maximize the educational benefit to this severe population so that they can be as independent as

possible and not regress into adverse behaviors and the adverse consequences of keeping them in lock down institutions that they left over 35 years ago when Page Park opened.

33. If any more notice than what has been given will put the Page Park pool at further risk because the plans are to fill/destroy the therapeutic pool and the issue would be moot.

**WHEREFORE,** Plaintiffs request this Court grant the following relief:

A. Issue a temporary restraining order and/or a permanent restraining order against the Defendant, DISTRICT #205, to stop the tearing down of Page Park's therapeutic equipment including but not limited to the pool, playground and other facilities that were designed specifically for the disabled children Plaintiffs to use.

B. Find that it is not necessary for Plaintiffs to exhaust administrative remedies because any delay will irreparably harm the Plaintiffs and their children.

C. Find that the DISTRICT has intentionally deprived the children Plaintiffs of their civil rights under the Americans with Disability Act.

D. Award Plaintiffs their reasonable attorney's fees and costs in this action.

E. And for such other and further relief as this Court deems proper and just**.**

                                           CHARLOTTE K., as parent and next friend of GILLIAN K.**,** a minor and KIMBERLY K., as parent and next friend of MATTHEW K., a minor, Plaintiffs.

                                           BY:      /s/ Joyce O'Neill Austin
                                                              Joyce O'Neill Austin,
                                                              Attorney for Plaintiffs

Prepared by:
THE LAW OFFICES OF
SHRIVER, O'NEILL & THOMPSON
Joyce O'Neill Austin, #959
515 N. Court Street
Rockford, IL 61103
Phone:   (815) 963-4896
Fax:       (815) 963-4904
joneillaustin@sotlaw.net

## AFFIDAVIT OF SERVICE

The undersigned certifies that on June 24, 2008, a copy of the following was electronically served via the U.S. District Court CM/ECF E-Filing System upon the following:

**CHARLOTTE K., et al.  v. Rockford Board of Education, District No. 205**

For Defendant:
Lori L. Hoadley
Hinshaw & Culbertson LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL 61105-1389
Phone: (815) 490-4900


  /s/ Michelle Kayser


Prepared by:
THE LAW OFFICES OF
SHRIVER, O'NEILL & THOMPSON
Joyce O'Neill Austin
515 N. Court Street
Rockford, IL 61103
Phone: (815) 963-4896
Fax:    (815) 963-4904