08-11831

CC-45

# IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
# WINNEBAGO COUNTY

2854

SECRETS APPAREL & GIFTS, INC.,
an Illinois Corporation,

        Plaintiff,

           vs.

CITY OF ROCKFORD, an Illinois
Municipality,

        Defendant.

SERVE:  City of Rockford
        c/o City Clerk
        425 East State Street
        Rockford, IL 61104

No. 08 CH 946

RECEIVED
JUN 11 2008
CITY OF...

## SUMMONS

To each defendant:

    You are summoned and required to file an answer in this case, or otherwise file your appearance in the Office of the Clerk of this Court _____ Winnebago County Courthouse _____ building, room _____,

_400 W. State Street, Rockford_ , Illinois, within 30 days after service of this summons,
   (Address)       (City)

not counting the day of service. IF YOU FAIL TO DO SO, A JUDGEMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

                       WITNESS _6-6-08_ , _____

        (Seal of Court)                       _Thomas A Klein_     (Year)

                                  (Clerk of the Circuit Court)

                      By: _Carroll Dexter_

                               (Deputy)

(Plaintiff's Attorney or Plaintiff if he is not represented by an Attorney)

Name _Attorney Wayne B. Giampietro_

Attorney for _Plaintiff_

Address _2550 West Golf Road, Suite 250_

City _Rolling Meadows, IL   60008_

Telephone _(847) 590-8700_

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**
**WINNEBAGO COUNTY, ILLINOIS**

FILED
Date: _____
JUN  6 2008

Clerk of the Circuit Court
By _____ Deputy
Winnebago County, IL.

| | |
|---|---|
| SECRETS APPAREL & GIFTS, INC., <br> an Illinois Corporation, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) |
| CITY OF ROCKFORD, an Illinois <br> Municipality, | ) <br> ) <br> ) |
| Defendant. | ) |

NO. 08 CA 946

RECEIVED
JUN 11 2008
CITY OF ROCKFORD
LEGAL DEPT.

**COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF**
**AND DECLARATORY RELIEF**

NOW COMES Plaintiff, SECRETS APPAREL & GIFTS, INC., ("Secrets") and

Complaining of Defendant CITY OF ROCKFORD, an Illinois Municipality, ("ROCKFORD") and

alleges as follows:

1.  Plaintiff, Secrets Apparel & Gifts, Inc., is a corporation organized under the laws of the State

    of Illinois, with its principal place of business in Rockford, Winnebago County, Illinois.

2.  Defendant, Rockford is a city organized under the laws of the State of Illinois and is located

    in Winnebago County, Illinois.

3.  All references to Rockford are, *inter alia*, understood to include any and all of its

    departments, agents, officials, and employees of Rockford.

4.  Unless otherwise noted, the acts of these employees and agents were also done under the

    color and pretense of the statutes, ordinances, regulations, customs and usages of Rockford,

    and its divisions, pursuant to the official custom, habit, or policy of Rockford, as created by

    its divisions under color of its authority and were taken pursuant to color of law.

5.  Since its incorporation in 2002, Plaintiff has engaged in the business of retail sales within

the City of Rockford, including the sale of constitutionally protected erotic video tapes, CDs, books, magazines and novelties.

6. Plaintiff has been informed on several occasions by officials of the City of Rockford that its operations complied with the laws of the City of Rockford, including all zoning laws.

7. On or about March 24, 2008, the Rockford City Council adopted and approved a new zoning ordinance, which became effective on April 3, 2008.

8. On or about May 20, 2008, Plaintiff was served with a letter issued by Darius Morrow, Land Use Planner of the City of Rockford, a copy of which is attached hereto as Exhibit "A".

9. The letter alleges that Plaintiff's business is a "sexually-oriented business". (Ex. A) There is no basis for this statement, as the current Rockford Zoning Ordinance contains no definition of adult use. Table 21, Use Classification Table, contained adjacent to Article 21, Commercial Districts, does, however, have a use category entitled "Sexually-Oriented Business". (Ex. B) That term, however, is not defined in any way in the Rockford Zoning Ordinance.

10. Table 21 states that "sexually-oriented businesses" are subject to a "Performance Review" standard. (Ex. B)

11. Article 40 of the Rockford Zoning Ordinance contains "Performance and Development Standards" which are to be met for all land uses which are subject to "Performance Review". (Ex. C)

12. The Rockford Zoning Ordinance contains no objective definition of what land uses are subject to this performance review, containing only the following description of uses subject to that standard:

40-001 PERFORMANCE STANDARDS

Certain land uses that generate significant traffic volumes, that have significant "visual" impacts due to the use's outdoor operations, or those uses that have neighborhood impacts due to their size, scale, and hours of operation are subject to the performance standards of this Section....:

13. The Rockford Zoning Ordinance is vague and undefined regarding land uses which are subject to Performance Review including: Traffic Impact (40-001-C. 1); Environmental Impact (40-001-C. 2); Architectural Integrity and Design (40-001-C. 3) and Landscaping Screening and Buffering (40-001-C. 4). (Ex. C)

14. In addition the Rockford Zoning Ordinance contains the following restrictions regarding Sexually-Oriented Businesses:

40-002-G.  Sexually-Oriented Businesses
Sexually-oriented business uses must comply with all applicable City licensing requirements and may not be located in any of the following areas of locations:
 1. Within 1,000 feet of another existing sexually-oriented business;
 2. Within 1,000 feet of any property legally used or zoned for residential use;
 3. Within 1,000 feet of any pre-existing public or private elementary or high school or a licensed day care facility;
 4. Within 1,000 feet of any religious assembly establishment; or
 5. Within 1,000 feet of a public park.  (Ex. C)

15. In addition, the Rockford Zoning Ordinance contains the following provision:

60-0001-F.  Certificate of Zoning Compliance Required
No building or addition thereto, constructed after the effective date of this ordinance, and no addition to a previously existing building shall be occupied, and no land that is vacant on the effective date of this Ordinance shall be used for any purpose until a certificate of zoning compliance has been issued by the Zoning Officer.  No change in use to the production, processing or storage of materials or goods, and no change in use from the production, processing, or storage of one kind of materials or goods to another shall be made until a certificate of zoning compliance has been issued by the Zoning Officer.  Every certificate of zoning compliance shall state that the intended use or occupancy of the property complies with this Ordinance.  (Ex. D)

16. The letter served upon Plaintiff states that Plaintiff is in violation of the provisions of the Rockford Zoning Ordinance because "The Zoning Officer has not provided a Certificate of Zoning Compliance for the establishment of use for a Sexually-Oriented Business in this

tenant space.  Until such time any other use is not authorized on the property or within the building and a violation of the Zoning Ordinance".  (Ex. A)

17.    That statement is the letter is obviously false.  Plaintiff's business has existed continuously in the premises currently occupied by it since 2002.  The Rockford Zoning Ordinance became effective on April 3, 2008, six years after Plaintiff commenced its operations. Plaintiff had no obligation to obtain a certificate of zoning compliance in 2002.

18.    The letter served upon Plaintiff by the City of Rockford concludes with the statements: "The use of a sexually-oriented business shall be discontinued immediately and prior to the establishment of any use of the property shall have a Certificate of Zoning Compliance issued by the Zoning Office.  The establishment of future uses needs to be in conformance with the zoning ordinance and State Laws".  (Ex. A)

19.    Defendant's directive that Plaintiff's business be discontinued and that a Certificate of Zoning Compliance be obtained is null and void and of no force and effect for the following reasons:

   A.    By the terms of the Rockford Zoning Ordinance, a Certificate of Compliance is required only for buildings which are built after April 3, 2008, or which have had an addition added to it after April 3, 2008, or where there has been a change in the use of the building after April 3, 2008.  None of these conditions apply to Plaintiff's business.  Plaintiff has been open since 2002 and no addition has been made.

   B.    There is no definition of a "sexually-oriented business" contained within the Rockford Zoning Ordinance, and Defendant has no basis upon which to assert that Plaintiff is operating a "sexually-oriented business".

   C.    The Rockford Zoning Ordinance, as interpreted and applied by the City of Rockford

gives officials of the City of Rockford unbridled discretion to determine what businesses are Sexually-Oriented Businesses and which are not.

20. The right to disseminate adult-oriented literature and media is protected by the First and Fourteenth Amendments to the United States Constitution and by Article 1, Section 4 of the Illinois Constitution of 1970.

21. Rockford's zoning ordinance attempts to regulate a Sexually-Oriented Business, and the alleged requirement that a Certificate of Compliance is required before such a business may operate is a prior restraint on free speech.

22. Rockford's Performance Standards procedure applicable to an alleged Sexually-Oriented Business does not provide the essential procedural safeguards required by due process and the Constitutional right to freedom of speech.

23. The conditions and standards which can be imposed on the issuance of a Certificate of Compliance for a Sexually-Oriented Business are vague, and vest unbridled discretion in City officials whether to grant or deny a Certificate of Compliance.

24. Rockford's Zoning Ordinance procedure for obtaining a Certificate of Compliance for a Sexually-Oriented Business fails to require the granting or denial of such a certificate within a specified, brief time period.

25. Rockford's Zoning Ordinance procedure for obtaining a Certificate of Compliance for a Sexually-Oriented Business fails to provide for prompt administrative or judicial review.

26. Rockford's Zoning Ordinance which requires a Sexually-Oriented Business to comply with the Performance and Development Standards contained in the Ordinance fails to serve a substantial or significant governmental interest, is not narrowly tailored to serve any such interest, and fails to provide for adequate alternative avenues of communication. Rockford

fails to regulate Sexually-Oriented Businesses by the least restrictive means available.

27. Defendant's regulatory scheme violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, as an unlawful exercise of the State's police power in that there is no substantial relationship to the protection of the public health and welfare or any legitimate governmental objective, resulting from the fact that there has been no proper predicate for the basis of the challenged legislation.

28. Rockford's Performance and Developments Standards, coupled with the requirement of obtaining a Certificate of Compliance constitutes a content-based, prior restraint on free speech.

29. Rockford's Zoning Ordinance as it applies to a Sexually-Oriented Business is unconstitutional on its face.

30. The City of Rockford has unconstitutionally applied its Zoning Ordinance to Plaintiff when it has decreed that Plaintiff cease its operations and may not operate without a Certificate of Zoning Compliance.

31. Rockford's Zoning Ordinance, as it applies to Sexually-Oriented Businesses was adopted with a predominately censorial purpose, and was adopted without any basis to believe that the conduct described therein would cause adverse secondary effects which would justify the restrictions on those businesses imposed by that ordinance.

32. Plaintiff's business creates no adverse secondary effects. Defendant has taken no action against Plaintiff regarding any adverse secondary effects during the entire time in which it has operated its business.

33. The enactment of and application of the Rockford Zoning Ordinance, both on its face, and as applied to Plaintiff, violates Plaintiff's rights under the First and Fourteenth Amendments

to the United States Constitution and the Illinois Constitution.

34.    This Court has jurisdiction to entertain and enforce actions brought under 42 U.S.C.§ 1983 when a municipality such as Rockford, under color of state law, attempts to deprive parties such as Plaintiff of its rights under the First and Fourteenth Amendments to the United States Constitution and the provisions of the Illinois Constitution of 1970, with the application of unconstitutional laws.

## COUNT I

### Declaratory Relief

1.    Plaintiff incorporates paragraphs 1 through 34 above, as though referenced herein as paragraphs 1 through 34.

35.    This is an action for Declaratory Relief brought pursuant to 735 ILCS 5/2-701.

36.    There is an actual, *bona fide* controversy between Plaintiff and the City of Rockford in that Plaintiff contends that the subject Rockford Zoning Ordinance is unconstitutional on its face, and as applied, in violation of the First and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution of 1970, whereas Rockford presumably contends that its ordinances and actions are constitutional.

37.    Plaintiff is uncertain with regard to its rights and responsibilities in connection with the continued operation of its business and expression prohibited under the subject ordinances, particularly in the face of threats by Defendant to fine it between Fifty Dollars ($50.00) and Five Hundred Dollars ($500.00) per day during each day on which Defendant contends that a violation of the Zoning Ordinance exists.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment finding:

A.    That the Rockford Zoning Ordinance is unconstitutional as applied to sexually-

oriented businesses, on its face, and as applied to Plaintiff.

B.      Award to Plaintiff its court costs incurred in prosecuting this action including a reasonable attorney's fee pursuant to 42 U.S.C. §1988.

C.      Award to Plaintiff such further relief as this Court may deem appropriate.

## COUNT II

### Injunctive Relief

1.   Plaintiff incorporates paragraphs 1 through 34 above, as though referenced herein as paragraphs 1 through 34.

35.   This is an action for injunctive relief.

36.   Rockford has the actual and present ability to continue to enforce the subject Ordinances and laws, and to punish Plaintiff for exercising its rights to free expression by imposing a fine upon it and charge of violation of such ordinance every day.

37.   The mere existence of such prior restraint on free speech causes a chilling effect on protected expression.

38.   Deprivation of First Amendment Rights, even for minimal amounts of time, constitutes irreparable injury, *per se*.

39.   Any harm to Rockford resulting from the issuance of an injunction is substantially outweighed by the hard to Secrets caused by the deprivation of cherished First Amendment Rights.

40.   It is always in the public interest to protect constitutional freedoms by enjoining unconstitutional laws and preventing bad faith prosecution by government officials.

41.   Any legal remedy Plaintiff might have is *per se* inadequate when loss of First Amendment rights is involved.

42.    Injunctive relief is appropriate upon a declaration that a law is unconstitutional and where the defendant is threatening to impose large fines for the violation of an ordinance which is invalid and which penalizes the exercise of constitutional rights.

43.    Defendant City of Rockford will continue its unconstitutional conduct unless enjoined by this Court and Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests that this Court enter an order granting the following relief:

A.    Enjoin the City of Rockford, and its agents and employees, from enforcing the Rockford Zoning ordinance in such a matter so as to prohibit Plaintiff or any of its employees from engaging in the dissemination of protected speech;

B.    Enjoin the City of Rockford, and its agents and employees from commencing any litigation relating to the subject matter of this case against Plaintiff or any of its employees, during the pendency of this litigation.

C.    Enjoin the City of Rockford, its agents and employees from harassing Plaintiff, its employees and agents in retaliation for its exercise of the right to disseminate non-obscene, sexually explicit media;

D.    Award Plaintiff its court costs incurred in prosecuting this action, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988 and Rule 137, Illinois Supreme Court Rules.

DATED THIS ___5-th___ day of June, 2008.

_____
Wayne B. Giampietro
Michael G. Aretos
Attorney for Plaintiff

Stitt, Klein, Daday, Aretos & Giampietro, LLC
2550 W. Golf Road, Suite 250
Rolling Meadows, IL 60008
847-590-8700; Fax: 847-590-9925

William J. Howard
Howard & Hardyman, LLP
124 N. Water St. # 100, Rockford, IL 61110-7146
(815) 964-8888 - Phone
(815) 964-8779 - Fax

VERIFICATION

Derek Fadden, Manager of Secrets Apparel & Gifts, Inc., Plaintiff herein, certifies under penalty of perjury, pursuant to the provisions of 735 ILCS 5/1-109, that he has personal knowledge of the allegations of the foregoing Complaint and that those allegations are true.

nce Everywhere



THE CITY OF
ROCKFORD
ILLINOIS, USA

**Reid Montgomery**
*Director*
*Community and Economic*
*Development Department*

## Notice of Violation

May 20, 2008

erek Fadden
ecrets
30 N. Phelps Ave
ockford, IL 61108

E: *280 North Phelps Avenue*

ear Mr. Fadden:

his letter is a follow up to are previous conversation regarding the property located at 280 North Phelps Avenue
nd to serve as Notice of Zoning Violation for this property. An inspection of property has on May 20, 2008 for a
exually-oriented business has confirmed that the property is in violation with the City of Rockford Zoning
ordinance. An inspection of the property has confirmed that the property has uses not legally established by the
ity of Rockford Zoning Ordinance.

he Rockford Zoning Ordinance regulates sexually oriented business as a performance use in the C-3, General
ommercial District Classification. This is outlined in Section 21-002 of the Rockford Zoning Ordinance,
attached).

t the site inspection of May 20, 2008 at the subject property, I observed the operation of a sexually oriented book/
exually oriented video store as defined by the City of Rockford Zoning Ordinance, definition attached. As stated
bove, sexually-oriented businesses are a performance use in the C-3, General Commercial District. Being that
exually-oriented businesses are a performance use, they are subject to compliance with the performance and
evelopment standards of Article 40 particularly Sections 40-001 and 40-002 (G).

section 60-001(F) of the Zoning Ordinance states that "No building or addition thereto, constructed after the
effective date of this Ordinance, and no addition to a previously existing building, shall be occupied, and no land
acant on the effective date of this Ordinance shall be used for any purpose until a Certificate of Zoning
compliance has been issued by the Zoning Officer. No change in use to the production, processing or storage of
materials or goods, and no change in use from the production, processing or storage of one kind of materials or
goods to another kind shall be made until a Certificate of Zoning Compliance has been issued by the Zoning
officer. Every Certificate of Zoning Compliance shall state that the intended use or occupancy of the property
complies with this Ordinance." The Zoning Officer has not provided a Certificate of Zoning Compliance for the
establishment of use for a Sexually-oriented business in this tenant space. Until such time any other use is not
authorized on the property or within the building and a violation of the Zoning Ordinance.

correction(s) of said violation(s) shall be done in the following manner: The use of a sexually oriented business
hall be discontinued immediately and prior to the establishment of any use of the property shall have a Certificate

425 East State Street Rockford, Illinois 61104-1068 USA
(815) 987-5600   (815) 967-6933 fax   www.rockfordil.gov



A

Excellence Everywhere



THE CITY OF
**ROCKFORD**
ILLINOIS, USA

Reid Montgomery
Director
Community and Economic
Development Department

of Zoning Compliance issued by the Zoning Office.  The establishment of future uses needs to be in conformance with the zoning ordinance and State laws.

Failure to comply with the City of Rockford Zoning Ordinance may result in fines being levied against you. VIOLATIONS OF THE CITY OF ROCKFORD ZONING ORDINANCE CARRY A PENALTY OF A FINE OF $50 TO $500 PER DAY FOR EACH DAY THE VIOLATION EXISTS.  To avoid a problem or if you would like additional information, please feel free to contact me in the Planning Office at (815) 987-5610 weekdays between 8:00 AM and 5:00 PM.  I will be happy to answer any questions you may have.

Sincerely,

Darius Morrow
Land Use Planner

**Table 21-1 Use Classification Table**

| USE GROUP Use Category └Specific use type | Zoning District C-1 | Zoning District C-2 | Zoning District C-3 | Use Standard | Parking Standard |
|---|---|---|---|---|---|
| P=Permitted Use, S=Special Use, PR=Performance Review, PUD= Planned Unit Development, - = Prohibited Use | | | | | |
| **RESIDENTIAL** | | | | | |
| **Household Living** | | | | | |
| └Artist Live/Work Space located on the ground floor | S | S | S | | 50-003-F-B |
| └Artist Live/Work Space located above the ground floor | P | P | P | | 50-003-F-B |
| └Dwelling Units located above the ground floor | P | P | P | | 50-003-F-B |
| └Dwelling Units located on the ground floor (as follows) | | | | | |
| └Detached house | S | S | S | | 50-003-F-A |
| └Attached house | S | S | S | | 50-003-F-A |
| └Two-unit house | S | S | S | | 50-003-F-B |
| └Apartment/condo (3+ units) | S | S | S | | 50-003-F-B |
| **Group Living** | | | | | |
| └Community-based housing | S | S | S | 40-002-B | 50-003-F-P |
| └Group Home for Adjustment | S | S | S | | 50-003-F-P |
| **Group Living Not Otherwise Classified** | S | S | S | | |
| **Single-Room Occupancy** | S | S | S | | |
| **PUBLIC / CIVIC** | | | | | |
| **Child Care Facility (State licensed)** | P | P | P | | |
| **College/University, Public or Private** | P | P | P | | 50-003-F-D |
| **Homeless Shelter** | S | S | S | | 50-003-F-P |
| **Hospital** | PUD | PUD | PUD | | 50-003-F-P |
| **Library/Cultural Exhibit** | P | P | P | | 50-003-F-E |
| **Public Park/Recreation** | P | P | P | | 50-003-F-D |
| **Religious Assembly** | P | P | P | | 50-003-F-H |
| **Safety Service** | P | P | P | | 50-003-F-D |
| **School, Public or Private** | P | P | P | | 50-003-F-D |
| **Utilities and Services** | | | | | |
| └Basic, minor | P | P | P | | 50-003-F-D |
| └All other utilities and services | S | S | S | | 50-003-F-D |
| **COMMERCIAL** | | | | | |
| **Animal Services** | - | - | | | |
| └Shelter/Boarding Kennel | - | - | PR | 40-001 | 50-003-F-J |
| └Sales and Grooming | S | P | P | | 50-003-F-K |
| └Veterinary | S | P | P | | 50-003-F-J |
| **Artist Work or Sales Space** | P | P | P | | 50-003-F-L |
| **Body Art Services** | S | S | S | | 50-003-F-L |
| **Building Maintenance Services** | - | P | P | | 50-003-F-M |
| **Business Equipment Sales and Service** | - | P | P | | 50-003-F-M |
| **Business Support Services (except as more specifically regulated)** | P | P | P | | 50-003-F-K |
| └Day Laborer Agency | - | P | P | | 50-003-F-K |
| └Employment Agency | P | P | P | | 50-003-F-K |
| **Communication Service Establishments** | - | P | P | | 50-003-F-K |
| **Construction Sales and Service** | | | | | |
| └Building Material Sales | - | S | PR | 40-001 | 50-003-F-N |

B

| USE GROUP Use Category └Specific use type | Zoning District | | | Use Standard | Parking Standard |
|---|---|---|---|---|---|
| P=Permitted Use  S=Special Use  PR=Performance Review  PUD= Planned Unit Development  - = Prohibited Use | C-1 | C-2 | C-3 | | |
| └Contractor/Construction Storage Yards | - | - | PR | 40-001 | 50-003-F-N |
| Drive-Through Restaurant, Drug Stores, Dry Cleaners and Other Services | - | S | PR | 40-001 and 40-002-C | |
| Eating and Drinking Establishments | P | P | P | | 50-003-F-L |
| Entertainment and Spectator Sports | | | | | 50-003-F-O |
| └Inter-Track Wagering Facility | - | - | S | | 50-003-F-O |
| └Small Venues | P | P | P | | 50-003-F-O |
| └Medium Venues | - | S | S | | 50-003-F-O |
| └Large Venue | - | S | S | | 50-003-F-O |
| └Banquet or Meeting Hall | - | - | PUD | | 50-003-F-O |
| └Entertainment Nightclub | - | S | S | | 50-003-F-L |
| Outdoor Entertainment Facilities (amusement parks, go-cart tracks, etc) | | | S | | |
| Financial Services (except as more specifically regulated) | P | P | P | | 50-003-F-K |
| └Drive-Through Bank | S | S | PR | | |
| └Payday Loan Store | - | S | S | | 50-003-F-K |
| └Pawn Shop | - | S | S | | 50-003-F-K |
| Flea Market and Auction House | - | - | PR | | 50-003-F-Q |
| Food and Beverage Retail Sales | P | P | P | | 50-003-F-L |
| Fortune Telling Service | S | S | P | | 50-003-F-L |
| Funeral and Interment Service | S | P | P | | 50-003-F-P |
| └Cemetery/columbarium/mausoleum | - | S | S | | 50-003-F-P |
| └Undertaking | S | P | P | | 50-003-F-P |
| Gas Station | - | S | PR | 40-001 and 40-002-D | 50-003-F-Q |
| Lodging | | | | | |
| └Bed and breakfast | S | PR | PR | 40-001 and 40-002-A | 50-003-F-R |
| └Hotel/Motel | - | PR | PR | | 50-003-F-R |
| Medical and Dental Clinic | P | P | P | 40-001 | 50-003-F-S |
| └Methadone and Needle Exchange Clinics | S | S | S | | |
| Office | P | P | P | | 50-003-F-R |
| Parking, Non-Accessory | S | P | P | | |
| Personal Service | P | P | P | 40-002-E | 50-003-F-L |
| Repair or Laundry Service, Consumer (except as more specifically regulated) | - | P | P | | 50-003-F-M |
| └Dry cleaning drop-off or pick up | - | P | P | | 50-003-F-M |
| └Coin-operated laundromat | - | P | P | | 50-003-F-M |
| Residential Storage Warehouse | - | S | S | | 50-003-F-P |
| Retail Sales, General | P | P | P | | 50-003-F-L |
| Sexually-Oriented Business | - | - | PR | 40-001 and 40-002-G | 50-003-F-I |
| Sports and Recreation, Participants | | | | | 50-003-F-L |
| └Outdoor (Publicly Owned) | - | P | P | | 50-003-F-L |
| └Outdoor (Privately Owned) | - | S | S | | |
| └Indoor | S | P | P | | 50-003-F-L |

PART 2 | BASE ZONING DISTRICTS

ARTICLE 21 | COMMERCIAL DISTRICTS | 21-002 ALLOWED USES

| USE GROUP / Use Category Lspecific use type | Zoning District C-1 | C-2 | C-3 | Use Standard | Parking Standard |
|---|---|---|---|---|---|
| P=Permitted Use, S=Special Use, PR=Performance Review, PUD= Planned Unit Development, - = Prohibited Use | | | | | |
| └Amusement Arcades | - | P | P | | 50-003-F-L |
| **Vehicle Sales and Service** | | | | | |
| └Auto Supply/Accessory Sales | - | P | P | | 50-003-F-M |
| └Car Wash or Cleaning Service | - | S | PR | 40-001 | 50-003-F-M |
| └Heavy Equipment Sales/Rental | - | - | PR | | 50-003-F-M |
| └Light/Equipment Sales/Rental, indoor (e.g. auto, motorcycle, and boat sales) | - | P | P | | 50-003-F-M |
| └Light/Equipment Sales/Rental, Outdoor ( e.g. auto, motorcycle, and boat sales) | - | S | PR | 40-001 | 50-003-F-M |
| └Motor Vehicle Repair Shop not including body work, painting, or commercial vehicle repairs | - | S | PR | | 50-003-F-M |
| └Motor Vehicle Repair Shop that may include body work, painting, or commercial vehicle repairs | - | S | PR | 40-001 | 50-003-F-M |
| └RV and Boat Sales and Storage | - | S | PR | 40-001 | 50-003-F-M |
| └Vehicle Storage and Towing (indoor storage) | - | - | P | | 50-003-F-M |
| └Vehicle Storage and Towing (outdoor storage) | - | - | PR | 40-001 | 50-003-F-M |
| **INDUSTRIAL** | | | | | |
| **Manufacturing, Production and Industrial Services** | | | | | |
| └Artisan | P | P | P | | 50-003-F-T |
| └Limited | - | - | P | | 50-003-F-T |
| └General | - | - | PR | 40-001 | 50-003-F-T |
| └Research and Development Facilities | | | PR | 40-001 | 50-003-F-T |
| └Laundry Facilities with plant on premises | - | - | PR | 40-001 | 50-003-F-T |
| **Recycling Facilities** | | | | | |
| └Limited-manual separation of paper, plastic, glass | - | S | S | | 50-003-F-T |
| └Commercial-mechanical separation of paper, plastic, or glass | - | - | S | 40-001 | 50-003-F-T |
| **Warehousing, Wholesaling, and Freight Movement** | - | - | PR | | 50-003-F-T |
| **OTHER** | | | | | |
| **Radio and Television Towers** | | | PR | | |
| **Wireless Communication Facility** | | | | 40-002-J | |
| └Co-located on a building or existing tower | P | P | P | 40-002-J | None Required |
| └Freestanding tower | - | S | S | 40-002-J | None Required |

# Article 40 | PERFORMANCE AND DEVELOPMENT STANDARDS

**40-001**   PERFORMANCE STANDARDS

Certain land uses that generate significant traffic volumes, that have significant "visual" impacts due to the use's outdoor operations, or those uses that have neighborhood impacts due to their size, scale, and hours of operation are subject to the performance standards of this Section. The land uses subject to this review are identified by the symbol PR in the "Use Table" of Sections 20-004-A, 21-002, 22-002, and 23-003.

### 40-001-A.   GENERAL REQUIREMENTS

The performance standards of this section must be met before the use is established and, to the extent applicable, thereafter maintained for as long as the use continues. Failure to meet any of these performance standards will require that the applicant file for a special use permit consistent with the procedures and standards established in Section 63-002.

### 40-001-B.   SUBMITTAL REQUIREMENTS

The applicant must submit a detailed site plan to the zoning officer for review by the zoning office, the city engineer, and the city traffic engineer. The contents of the site plan will be consistent with the requirements of Section 61-002-B, as well as such additional data as the City may require to establish whether the performance standards have been satisfied.

### 40-001-C.   PERFORMANCE CRITERIA

Uses subject to review under this Section shall comply with the following general criteria and any specific criteria of Section 40-002:

1. **TRAFFIC IMPACT**
   The city traffic engineer will review the proposed land use and site plan to estimate the traffic generation and to evaluate whether the proposed land use will unduly increase traffic congestion or create traffic hazards on adjacent public *streets* or at the point of egress or ingress to the development. The city traffic engineer will also review the site plan and determine if the proposed internal circulation pattern will minimize traffic congestion problems on the site and on the adjacent public *streets*. If the city traffic engineer concludes that traffic or parking study is necessary in order to evaluate a development proposal then the applicant must submit a study addressing the traffic engineer's concerns.

2. **ENVIRONMENTAL IMPACT**
   The city engineer will review the proposed land use and site plan to determine that the proposed use will meet all city requirements for the prevention of soil erosion and for adequate drainage. In addition, the city engineer will certify that the development includes sufficient improvements for stormwater management and the control of stormwater discharge.

3. **ARCHITECTURAL INTEGRITY AND DESIGN**
   The city zoning officer will review all proposed *buildings* subject to performance review to insure that all sides of *buildings* that are visible to the public are treated with materials,




finishes, and architectural improvements of a high quality and materials that are appropriate for use on the primary *street*-facing façade. Long blank walls lacking windows, doors, or architectural detailing or articulation are discouraged. New *buildings* should include the articulation with windows, varied setbacks, multiple entrances, or other forms of architectural articulation. Where there are multiple *buildings* within a non-residential center, the zoning officer must determine that there is consistency within the center in terms of architectural design, exterior *building* materials, and other design elements.

4. **LANDSCAPING, SCREENING AND BUFFERING**
The city zoning officer will review the proposed land use and site plan to determine whether the development meets the requirements of the zoning ordinance and whether the proposed use incorporates adequate landscaping, *screening* and/or *buffering* to minimize the visual impacts of outdoor storage, outdoor display, and any outdoor operations such as *truck* loading and unloading on surrounding properties. The zoning officer may require landscaping, *buffers* and *screening* that exceed those required by Section 52-001 when it is determined that the proposed use will have adverse visual impacts on surrounding properties.

## 40-002   SPECIFIC USE STANDARDS
The following standards and criteria apply to specific uses in addition to the general performance criteria identified above and the other parking, *landscaping*, setback, or other requirements of this zoning ordinance.

### 40-002-A.   BED AND BREAKFAST
*Bed and breakfast* facilities must be located above the ground floor in those zoning districts in which *dwelling units* and other residential uses are not permitted (by-right) on the ground floor.

### 40-002-B.   COMMUNITY-BASED HOUSING
*Community-based housing* must be located above the ground floor in those zoning districts in which *dwelling units* and other residential uses are not permitted (by-right) on the ground floor. In addition, no community-based home may be located within 500 feet of any other legally established community-based home.

### 40-002-C.   DRIVE-THROUGH FACILITY

1. **DRIVE-IN AND DRIVE-THROUGH QUEUE AREA**
Each facility must provide sufficient queuing area, at a minimum of 20 feet per vehicle, in advance of the service window to accommodate the stacking space required by Section 50-003-F. The queue area may not interfere with other on-site circulation and parking facilities.

2. **PEDESTRIAN WALKWAYS**
Pedestrian walkways must have clear visibility, and be emphasized by enhanced paving or markings when they intersect the drive-through aisles.

**3.    SCREENING**

All service areas, trash storage areas, and ground- mounted mechanical equipment must be *screened* from ground-level view by *fences* or walls.

### 40-002-D.    GAS STATIONS

1.    Gas stations are subject to compliance with the applicable landscape regulations of Section 52-001 including the interior *landscaping* requirements of Section 52-002-E.4(f).

2.    No *signs* are allowed on *fences*.

3.    All lighting must be directed downward and shielded to prevent illumination of any nearby residential property.

### 40-002-E.    NON-ACCESSORY PARKING

Non-accessory parking is a permitted use in a residential district when located on those grounds of a public elementary or high school that are currently devoted to accessory parking. Such non-accessory parking is permitted only when the school is not in session. All other non-accessory parking in a residential district requires special use approval in accordance with Section 63-002.

### 40-002-F.    OUTSIDE PARKING OF VEHICLES IN RESIDENTIAL DISTRICTS

The total number of motor vehicles stored or parked outdoors at any residential *dwelling unit* is limited to no more than four and all such vehicles must be operable and have current year vehicle registration and licensing from the State of Illinois.

1.    Autos, motorcycles, vans, and *trucks* with passenger license plates must be parked on a paved surface not within a *front yard*. They may be parked in a *driveway* located within a *front yard* in any R-1, R-1U, or R-2 district.

2.    Motor homes, campers, and travel trailers, up to 30 feet in length, may be stored in side or *rear yards*, providing that any stored in *side yards* are located a minimum of 6 feet from any property line. No motor home, camper, or travel trailer may be stored in any area located between the front property line and the street facing wall of the residential building. *Recreational vehicles* stored within residential districts may not be used for any residential purpose. *Recreational vehicles* stored on residential property must be parked on a paved surface.

3.    Boats, snowmobiles, waverunners, jet skis, all-terrain vehicles, and golf carts when stored on trailers for hauling the vehicles or recreational equipment may be stored in the side or *rear yards*, providing those stored in *side yards* are located a minimum of 6 feet from the property line. No boats, snowmobiles, waverunners, jet skis, all-terrain vehicles, or golf carts may be stored in any area located between the front property line and the street facing wall of the residential building. Vehicles or recreational equipment stored on trailers in residential districts must be parked on a paved surface.

4.    For the purposes of loading or unloading a *recreational vehicle*, such vehicles may be temporarily stored anywhere on a lot for a period not to exceed 6 hours within any 24 hour time period.

5. All other vehicles including, but not limited to, utility type trailers, car hauling trailers, enclosed box type utility trailers, commercial construction trailers, or any other type of hauling trailer are prohibited from storage on a residential property.

6. No more than one motor home, camper, travel trailer, boat, snowmobile, all terrain vehicle, Jet Ski, or similar type of vehicle or piece of recreational equipment may be permitted to be stored outside.

## 40-002-G.    SEXUALLY-ORIENTED BUSINESSES

Sexually-oriented business uses must comply with all applicable City licensing requirements and may not be located in any of the following areas or locations:

1. within 1,000 feet of another existing sexually-oriented business;

2. within 1,000 feet of any property legally used or zoned for residential use;

3. within 1,000 feet of any pre-existing public or private elementary or high school or a licensed day care facility;

4. within 1,000 feet of any religious assembly establishment; or

5. within 1,000 feet of a *public park*.

## 40-002-H.    TOWNHOUSE DEVELOPMENTS

1. **PURPOSE**
   The purpose of these standards is to establish setback, *building* spacing, *landscaping,* and design standards that are tailored to townhouse developments. Such standards are intended to ensure that townhouse developments are compatible with the traditional character of Rockford's neighborhoods.

2. **APPLICABILITY**
   The townhouse development standards of this section apply in all districts in which townhouses are allowed.

3. **NUMBER OF BUILDINGS ON ZONING LOT**
   Multiple townhouse *buildings* are expressly allowed on a single *zoning lot* in those townhouse developments that comply with the townhouse development standards of this section, provided that each *building* contains no more than 8 townhouse units.

4. **LOT FRONTAGE**
   The minimum lot frontage for a townhouse development is 100 feet.

5. **PERMITTED DENSITY**
   Notwithstanding the other provisions of this zoning ordinance, townhouse development projects are permitted to be built at the following densities:

| District | Maximum Permitted Density(units per acre) |
|---|---|
| R-2 | 15 |
| R-3 | 20 |
| R-4 | 30 |
| C - 1 | 15 |
| C - 2 | 30 |
| C - 3 | 30 |
| C - 4 | 40 |

6.    **BUILDING SETBACKS FOR FRONT AND REAR WALLS**

(a)    **FRONT AND REAR WALLS DEFINED**
Front walls and rear walls are those walls that are generally perpendicular to party walls. These walls are typically the primary sources of light and air for a townhouse unit.

(b)    **FRONT OR REAR WALLS FACING A PUBLIC STREET**
Front walls and rear walls that face a public *street* must be set back from the *street* property line as follows:

| District | Minimum Setback (feet) |
|---|---|
| R-2 | 25 |
| R-3 | 20 |
| R-4 | 20 |
| C - 1 | 25 |
| C - 2 | 20 |
| C - 3 | 20 |
| C - 4 | 15 |

(c)    **SETBACK AVERAGING**
Required front wall and rear wall setbacks may be reduced to match the predominant setbacks of adjoining structures on the same side of the *street* between the nearest intersecting *streets* or *alleys*, provided that a minimum setback of 10 feet is provided in all cases. *Landscaping* must be installed within these required setbacks.

7.    **FRONT OR REAR WALLS FACING A SIDE OR REAR PROPERTY LINE**

(a)    When a front wall or rear wall faces the side property line or rear property line of adjoining property, the minimum required *building* setback is as follows:

| District | Minimum Setback (feet) |
|---|---|
| R-2 | 25 |
| R-3 | 20 |
| R-4 | 20 |
| C - 1 | 25 |
| C - 2 | 20 |
| C - 3 | 20 |
| C - 4 | 20 |

**8.    FRONT OR REAR WALLS FACING AN ALLEY**

**(a)**  When a front wall (a wall with the principal pedestrian access) faces an *alley*, the minimum required *building* setback is 25 feet.

**(b)**  When a rear wall faces an *alley*, a *building* setback of 5 feet is required, provided that an on-site storage area is provided for trash receptacles and clearly identified on *building* plans.

**9.    SEPARATION BETWEEN FRONT AND REAR WALLS**

**(a)**  When the front wall or rear wall of one row of townhouse units faces the front wall or rear wall of another row of townhouse units, the minimum required separation between such *buildings* (excluding minor *building* projections allowed under Section 92-006-B) is as follows:

| District | Minimum Separation (feet) |
|----------|---------------------------|
| R-2      | 60                        |
| R-3      | 50                        |
| R-4      | 50                        |
| C-1      | 40                        |
| C-2      | 40                        |
| C-3      | 40                        |
| C-4      | 40                        |

*Figure 18:  Required Separation Between Rows of Town Homes*



minimum separation
40-60 feet
(varies by district)

*(Required building separations must be unobstructed and unoccupied and must be measured between the furthermost projections of the structures not including the projections allowed in Section 92-009)*

**(b)**  *Driveways* and open parking areas may be located within this minimum separation area.

**(c)**  The minimum separation at the ground-floor only may be reduced to 40 feet for interior drives with garages doors facing garage doors, provided the upper-story living spaces comply with the separation requirements of Section 40-002-H.9(a)

**10. BUILDING SETBACKS FOR END WALLS**

**(a) END WALLS DEFINED**

An end wall is a wall that is generally parallel to party walls and located at the end of a row of townhouse units. Such walls are typically a secondary source of light and air for townhouse units.

**(b) END WALL FACING PUBLIC STREET**

End walls that face a public *street* must be set back from the *street* property line as follows:

| District | Minimum Setback (feet) |
|----------|------------------------|
| R-2 | 25 |
| R-3 | 20 |
| R-4 | 20 |
| C - 1 | 25 |
| C - 2 | 20 |
| C - 3 | 20 |
| C -4 | 20 |

*Figure 19: Required Setback for End Walls Facing the Street*



**(c) SETBACK AVERAGING**

Required end wall setbacks may be reduced to match the predominant setbacks of adjoining structures on the same side of the *street* between the nearest intersecting *streets* or *alleys*, provided that a minimum setback of 3 feet is provided in all cases. *Landscaping* must be installed within these required setbacks.

**(d) END WALL FACING SIDE OR REAR PROPERTY LINE**

When an end wall adjoins a side property line or rear property line, the minimum required *building* setback is 6 feet. This required setback distance may be reduced to 5 feet if the *building* does not exceed 30 feet in *height*. Secondary stairs required by the Building Code may encroach into this required setback.

*Figure 20:  Setbacks When End Walls Face Property Lines*



**(e)  END WALL FACING ALLEY**

When an end wall adjoins an *alley*, a setback of 2.5 feet is required. In addition, space for an on-site storage area for trash receptacles must be provided on-site and clearly identified on *building* plans.

*Figure 21:  Setback When End Wall Faces Alley*



**(f)  SEPARATION BETWEEN END WALLS AND FRONT OR REAR WALLS**

When the end wall of a row of townhouse units faces the front wall or rear wall of another row of townhouse units, the minimum required separation between such *buildings* (excluding minor *building* projections allowed under Section 92-006-B) is 20 feet in all districts. (Required building separations must be unobstructed and unoccupied and must be measured between the furthermost projections of the structures, not including the projections allowed in Section 92-009.)

*Figure 22:  Required Separation When End Wall Faces Rear Wall*



(g)   *Driveways* and open parking areas may be located within this minimum separation
area, provided that landscaped planting areas with a minimum depth of 4 feet from
one *building* face are provided for the entire length of the separation area not
interrupted by garage doors.

(h)   **END WALLS FACING OTHER END WALLS**
When an end wall of one row of townhouses faces the end wall of another row of
townhouses, the minimum required separation between the facing end walls is 10
feet.

*Figure 23:  Required Separation When End Wall Faces End Wall*



end wall facing end wall

(i)   **BUILDING SETBACKS ON CORNER LOTS**
On a corner lot, the required *building* setback on one (*street*-facing) side of the lot
may be reduced to 15 feet. This setback may be further reduced to match the
predominant setbacks of adjoining structures on the same side of the *street* between
the nearest intersecting *streets* or *alleys*, provided that a minimum setback of 3 feet
is provided in all cases. *Landscaping* must be installed within these required
setbacks.

(j)   **PRIVATE YARD REQUIREMENT**
Private *yards* must be provided for each townhouse unit within a townhouse
development. Each required private *yard* must have the following minimum area:

| District | Minimum Contiguous Area (square feet) |
|----------|----------------------------------------|
| R-2 | 300 |
| R-3 | 250 |
| R-4 | 250 |
| C-1 | 300 |
| C-2 | 250 |
| C-3 | 200 |
| C-4 | 200 |

*Figure 24: Private Yards Adjacent to the Front, Side, or Rear of Townhomes.*



**(1)**   A required private *yard* may be located adjacent to a front wall, rear wall, or end wall provided that it is immediately adjacent to the townhouse unit it serves and directly accessible from the townhouse unit by way of a door or stair. Required private *yards* must be at grade or, if located on a terrace or *patio*, within 4 feet of grade. All private *yards* provided at grade must be landscaped so that they are substantially covered with grass, ground cover, *shrubs*, plants, trees, or other landscape improvements, such as walkways or *patios*.

**(2)**   The following may encroach into required private *yards*:

   **a.**   those encroachments allowed by Section 92-006-B;

   **b.**   open stairs exceeding 4 feet in *height*; and

   **c.**   multi-story bay windows that project no more than 3 feet.

   **d.**   No *driveways* or parking spaces (open or enclosed) may be located within required private *yards*.

**(k)   COMMON OPEN SPACE**
In addition to the required private *yard* (See Section 40-002-H.10(j)), any townhouse development of 40 or more townhouse units must provide a minimum of 150 square feet of common open space per townhouse unit.

   **(1)**   Required common open space must be located in one or more usable, common areas, each with a minimum dimension of 25 feet and a minimum area of 2,000 square feet.

   **(2)**   Common open space areas must be accessible to all townhouse units and must be improved with *landscaping*, recreational facilities, and/or walkways.

(3)    Trees must be planted within common open space areas at the rate of one tree for every 1,000 square feet of required common open space. Such trees must have a minimum 2.5-inch caliper.

(4)    Interior car courts that are at least 36 feet wide may be counted toward satisfying up to 50% of required common open space, provided such car courts include special paving materials (such as bomanite or brick pavers), pedestrian walkways and *landscaping* as required by Section 52-002-E.4(f).

*Figure 25:  Required Common Open Space In Townhome Development (Dotted lines indicate private yards)*



(l)    **LANDSCAPING OF INTERIOR DRIVES**
At least 5% of the vehicular use area in interior *driveways* must be landscaped. Interior *driveway* areas must include at least one tree (minimum 2.5-inch caliper) for every 4 *dwelling units* adjoining the *driveway*. *Landscaping* and trees in private *yards* adjoining interior *driveways* may count toward fulfillment of this requirement.

(m)    **BUILDING MATERIALS ON FRONT FACADES**
Building facades that face a public street must be constructed of materials that contribute to the overall quality of the development. Building materials may consist

of masonry; stone, brick, stucco, wood, vinyl siding (.045 mm or greater thickness)
or a mixture of those materials. At least 50% of those building facades facing a
public street must be brick or stone.

**(n)** **BUILDING FAÇADES FACING PUBLIC STREETS**
To avoid the appearance of blank walls, *building* façades that face public *streets*
must incorporate windows and/or main entrance doors that comprise at least 15% of
the area of each townhouse units *building* façade facing a *street.*

*Figure 26: Building Façades Facing Public Streets*



front wall ... rear wall

end wall with elements of a front facade

**(1)** Garage door entrances for individual townhouses are not allowed to face
a public *street* whenever an *alley* exists or when interior *driveways* may
be used. This provision is not intended to prohibit garage doors that serve
common parking areas for a row of townhouse units.

**(2)** The Zoning Board of Appeals may authorize a variation permitting
garages for individual townhouse units to face a public *street*; however,
such garage doors must be set back at least 25 feet from the property line
to prevent obstruction of the sidewalk by parked cars.

**40-002-I.** **WASTE-RELATED AND MINING/EXCAVATION USES**
*Buildings*, storage areas, and work areas on the site of all waste-related uses and mining/excavation
uses must be located at least 600 feet from all R zoning district boundaries, provided that landfills
and hazardous waste disposal/storage facilities must be located at least 1000 feet from R zoning
district boundaries.

**40-002-J.** **WIRELESS COMMUNICATION FACILITIES**

1. **GENERAL STANDARDS**
All wireless communication facilities must meet or exceed current standards and
regulations of the Federal Communications Commission (FCC), Federal Aviation
Administration (FAA), and any other agency of the federal government with the authority
to regulate wireless communication facilities.

(a)  If such standards and regulations are changed, then the owners of each wireless communication facility governed by this Zoning Ordinance must bring such facility into compliance with such revised standards and regulations within 6 months of the effective date of such standards and regulations, unless a more stringent compliance schedule is mandated by the controlling federal agency.

(b)  Failure to bring a wireless communication facility into compliance with the federal standards and regulations, as revised, will constitute grounds for the removal of the wireless communication facility at the owner's expense.

2.  Wireless communication facilities must be designed so as not to cause interference with radio, TV, or other electric appliances.

3.  Wireless communication facilities must be set back a minimum of 50 feet from the top of the bank of the Rock River.

4.  Wireless communication facilities must be designed, constructed, and installed to minimize their aesthetic impact on adjoining properties. The design of wireless communication facilities must, to the maximum extent possible, use materials, colors, textures, *screening,* and *landscaping* that will blend the tower and associated equipment with the natural setting and built environment.

5.  Wireless communication towers must maintain a galvanized steel finish or, subject to any applicable standards of the FAA, be painted a neutral color, so as to reduce visual obtrusiveness.

6.  Towers and antennas may not be artificially lighted unless required by the FAA or other applicable authority. If lighting is required, the Zoning Officer or Zoning Board of Appeals, as appropriate, must review the available lighting alternatives and approve the design that would cause the least disturbance to the surrounding views, consistent with FAA rules.

7.  No off-premise *sign* is allowed on a wireless communication facility, except for co-located facilities attached to an existing and approved *sign* or its support structure. Wireless communication facilities may have safety or warning *signs* in appropriate places.

8.  STANDARDS FOR CO-LOCATION ON EXISTING WIRELESS COMMUNICATION FACILITY
Installation of a wireless antenna and associated equipment on an existing wireless communication facility is a permitted use in all zoning districts.

9.  STANDARDS FOR CO-LOCATION BY ATTACHMENT TO EXISTING STRUCTURE
This subsection addresses the installation of a tower or antenna on an existing structure, other than a wireless communication facility tower, including but not limited to *buildings,* light poles, water towers, commercial *signs, church* steeples, and any other freestanding structures. Where a wireless communication facility is proposed on a City of Rockford landmark or national landmark structure, the Zoning Officer will refer the proposed facility to the Rockford Historic Preservation Commission for a recommendation. Co-located facilities, including associated equipment and accessory structures, are subject to the following minimum standards:

**(a)  RESIDENTIAL AND C-1 DISTRICTS**
In Residential (R) and C-1 districts, co-located facilities may not extend above the highest point of the structure to which it is attached by more than:

   **(1)**   10 feet, if the structure is up to 40 feet high; or

   **(2)**   15 feet, if the structure is more than 40 feet high.

**(b)  OTHER C DISTRICTS**
In C-2, C-3, and C-4 districts co-located facilities may extend up to 15 feet above the *building's* roof level or the *height* of the supporting structure. Co-located wireless communication facilities exceeding the *height* limits established in this section are allowed only if reviewed and approved as special uses in accordance with the procedures of Section 63-002.

**(c)  I DISTRICTS**
In Industrial co-located facilities may extend up to 25 feet above the *building* roof level or above the maximum *height* of the supporting structure. Co-located wireless communication facilities exceeding the *height* limits established in this section are allowed only if reviewed and approved as special uses in accordance with the procedures of Section 63-002.

**10.  ANTENNA DIMENSIONS**
Antennas on co-located facilities may not be more than:

   **(a)**   4 feet high or wide, if the structure is up to 40 feet high; or

   **(b)**   6 feet high or wide, if the structure is more than 40 feet high.

**11.  ANTENNA PROJECTION**
The antenna of such a co-located facility may not project more than 3 feet from the side of the structure, nor may any equipment shelter or platform or other supporting electrical or mechanical equipment that is mounted on the structure be located within 5 feet of the outer edge of the structure.

**12.  ANTENNA DESIGN**
The antenna and associated equipment of such a co-located facility must be of a neutral color that is identical to, or closely compatible with, the color of the supporting structure or *building* so as to make the antenna and associated equipment as visually unobtrusive as possible.

**13.  FREESTANDING FACILITIES**
An application for a freestanding facility must include an affidavit of intent committing the site owner, his successors and assigns, the operator, and his successors and assigns to allow the shared use of the tower and to offer at least one potential additional user reasonable terms and conditions for co-location. Failure to abide by such commitment constitutes a violation of this Zoning Ordinance and may result in revocation of the *building* permit associated with the facility.

(a)  When a freestanding facility requires special use approval, it may not be granted unless the applicant demonstrates to the reasonable satisfaction of the Zoning Board of Appeals that no existing facility or structure can accommodate the applicant's proposed facility. Evidence submitted to demonstrate that no existing facility or structure can accommodate the applicant's proposed facility may consist of any of the following:

(1)  No existing wireless communication facilities are located within the geographic area required to meet applicant's engineering requirements.

(2)  Existing wireless communication facilities are not of sufficient *height* to meet applicant's engineering requirements.

(3)  Existing wireless communication facilities do not have sufficient structural strength to support applicant's proposed antenna and associated equipment.

(4)  The applicant's proposed facility would cause electromagnetic interference with an antenna on the existing tower, or vice versa

(5)  The fees, costs, or contractual provisions required by the owner in order to share an existing wireless communication facility, or to adapt an existing wireless communication facility for sharing, are unreasonable. Costs exceeding new facility development are presumed to be unreasonable.

(b)  No freestanding facility may rise more than 75 feet above curb level, or 150 feet in an Industrial (I) district. The *height* limit may be increased to 100 feet for one additional user and to 120 feet for two additional users.

(c)  In Residential (R) or Commercial (C) districts, freestanding facilities must be set back a minimum of 30 feet from the rear or front property line. On a corner lot, the 30-foot setback requirement applies to both property lines fronting on the public way.

(d)  In Industrial districts, freestanding facilities must be set back a minimum of:

(1)  100 feet from a property line that serves as a common boundary line between an industrial district and an R district or the *right-of-way* of an *alley* adjacent to an R District; and

(2)  30 feet from any property line adjoining a public way. On a corner lot, the 30-foot setback requirement applies to both property lines fronting on the public way.

(e)  There may be no more than one freestanding facility per *zoning lot* except for industrial properties exceeding 10 acres in area.

(f)  Except in Industrial districts, no freestanding facility may be located within 1,320 feet of any existing freestanding facility.

(g)  Towers must be of monopole construction (cylindrical, tapering steel tubes without guy wires).

(h)  Towers must be constructed so that if a failure does occur, the tower will collapse into itself and will not fall onto structures near the site.

(i)  Freestanding facilities must be enclosed by security fencing not less than 6 feet high and must also be equipped with an appropriate anti-climbing device. The anti-climbing device may not include barbed wire, razor wire, or similar sharp barrier.

(j)  Wireless communication facilities must be landscaped with a *buffer* of plant materials that effectively *screens* the view of the tower and associated equipment at ground level from adjacent public rights-of-way or residential properties.

   (1)  The standard *buffer* must consist of a landscaped strip at least 10 feet wide outside the perimeter of the facility.

   (2)  In locations where the visual impact of the facility would be minimal, the *landscaping* requirement may be reduced or waived altogether.

   (3)  Existing mature trees (more than 3 inches in diameter) and natural land forms on the site must be preserved to the maximum extent possible. If mature trees are removed to accommodate the tower, the same number of trees must be planted on the site within 6 months following completion of the tower in accordance with Sections 52-004-F.2 and 52-005. In some cases, such as towers sited on large, wooded lots, natural growth around the property perimeter may be sufficient *buffer*.

14.  **ABANDONMENT OF USE**
At such time as the operator of a wireless communication facility plans to abandon operation of the facility, the operator must notify the Zoning Officer by certified mail of the proposed date of abandonment of operation. Such notice must be given no less than 30 days before abandonment of operation.

(a)  In the event the operator fails to give such notice, the facility will be deemed abandoned upon such discontinuance of operation for a period of 12 consecutive months.

(b)  Upon such abandonment or discontinuation of use, the operator must physically remove the wireless communication facility within 120 days from the date of abandonment or discontinuation of use. "Physically remove" includes, but is not limited to:

   (1)  removal of tower, antennas, mount, equipment shelters or platforms, and security barriers from the subject property;

   (2)  proper disposal of the waste materials from the site in accordance with applicable solid waste disposal regulations; and

   (3)  restoration of the location of the wireless communication facility to its natural condition, except that any *landscaping* and grading must remain.

(4) In the event that the operator fails to remove a wireless communication facility in accordance with the provisions of this section, the city or its agents has the authority to enter the subject property and physically remove the facility. Prior to any action by the city, written notice to the operator must be provided at least 30 days prior to any city action. The operator of the facility, or the owner if different from the operator, is liable to the city for all costs associated with entry and removal. This liability will be collectible in the same manner as any other personal liability.

15. **REVIEW AND APPROVAL PROCEDURES**

A *building* permit and zoning certification is required for each wireless communication facility installation.

(a) When a wireless communication facility requires special use approval, such approval must be obtained before any *building* permit may issue.

(b) If the Zoning Board of Appeals does make a recommendation on a special use application for a wireless communication facility within 120 days after the application is filed, the Zoning Board of Appeals will be deemed to have recommended approval of the special use permit, provided that this limitation does not apply during any period of time during which consideration of the application has been delayed at the request of the applicant. Final decisions on any such special use permit application must be made by the City Council by ordinance.

(c) Each applicant requesting a permit for a wireless communication facility must submit with the application a scaled site plan and a scaled elevation view and other supporting drawings, calculations, and other documentation, signed and sealed by appropriate licensed professionals, showing:

   (1) the location and dimension of all improvements;

   (2) information concerning topography;

   (3) radio frequency coverage;

   (4) tower *height* requirements and setbacks;

   (5) drives, parking, fencing, *landscaping*, and adjacent uses; and

   (6) any other information deemed by the Zoning Officer to be necessary to assess compliance with this Zoning Ordinance.

(d) Applications for a wireless communication facility filed before the effective date of this Zoning Ordinance are subject to the requirements of all applicable ordinances in effect at the time the application was filed.

(e) Approved wireless communication facilities may be transferred to successors and assigns of the approved party, subject to all of the conditions that apply to initial approval.

**16. VARIANCES/MODIFICATIONS**

The Zoning Board of Appeals may recommend, and the City Council may approve, variations to modify any of the non-federally-mandated requirements of this section pertaining to *height* limitations, setback requirements, and *screening* or *landscaping* if it determines that the goals of this section are better served thereby.

**(a)** Setback requirements may be modified if the applicant shows, to the satisfaction of the Zoning Board of Appeals and City Council, that such modification will result in a reduction of the visual impact of the wireless communication facility.

**(b)** The *height* increases authorized in Section 40-002-J.13(b) are available only if the applicant shows, to the satisfaction of the Zoning Board of Appeals and City Council, that:

    **(1)** The facility will be constructed to safely and effectively accommodate co-location of one or more wireless communication facilities comparable in weight, size and surface area to the applicant's wireless communication facility; and

    **(2)** Certified letters have been sent to all other wireless carriers licensed to serve the Rockford market notifying them of the construction of the wireless communication facility and its availability for co-location.

Case 1:07-cv-59999    Document 82-2    Filed 06/30/2008    Page 36 of 36

PART 6 | REVIEW AND APPROVAL PROCEDURES

ARTICLE 60 | GENERAL/COMMON PROCEDURES | 60-001 ZONING CLEARANCE, CERTIFICATE OF ZONING COMPLIANCE, AND BUILDING PERMIT REVIEW

**60-001-D.    ISSUANCE OF CONSTRUCTION PERMITS**



No *building* permit or other permit pertaining to the construction of new *buildings* or structures, or to the enlargement or change in use of *buildings* or structures, or the use of land or *buildings* shall be issued by an officer, department, or employee of the City of Rockford unless the application for such permit has been examined by the Zoning Officer and has affixed to it a zoning clearance stating that the proposed *building* or structure and use thereof complies with all the provisions of this Ordinance. Application for a certificate of zoning compliance shall be made on a form prescribed by the Zoning Officer and shall be accompanied by a plat and plot plan as specified below.

**60-001-E.    TIMING OF CERTIFICATE OF ZONING COMPLIANCE**

No certificate of zoning compliance shall be issued until construction has been completed or the use has been established but not initiated and has been inspected and certified by the Zoning Officer to be in compliance with all provisions of this Ordinance. A certificate of zoning compliance shall be issued or written notice shall be given to the applicant stating the reasons why the Zoning Officer will not issue a certificate of zoning compliance.

**60-001-F.    CERTIFICATE OF ZONING COMPLIANCE REQUIRED**

No *building* or addition thereto, constructed after the effective date of this Ordinance, and no addition to a previously existing *building* shall be occupied, and no land that is vacant on the effective date of this Ordinance shall be used for any purpose until a certificate of zoning compliance has been issued by the Zoning Officer. No change in use to the production, processing or storage of materials or goods, and no change in use from the production, processing, or storage of one kind of materials or goods to another kind shall be made until a certificate of zoning compliance has been issued by the Zoning Officer. Every certificate of zoning compliance shall state that the intended use or occupancy of the property complies with this Ordinance.

**60-001-G.    PLAT**

Every application for a certificate of zoning compliance shall be accompanied by a plat legally recorded under the laws of the State of Illinois and Winnebago County giving a legal description, including a reference to a piece or parcel of land, lot or lots, block or blocks, or parts or portions thereof, legally recorded pursuant to the laws of the State of Illinois and Winnebago County.

**60-001-H.    PLOT PLAN**

Every application for a certificate of zoning compliance shall be accompanied by a plot plan drawn to scale in such form as may, from time to time, be prescribed by the Zoning Officer. Such plot plan shall show the location of the *building*, lot area, *height* and *bulk* of the *building* or structure, the *building setback lines* in relation to lot lines, the use to be made of the *building* or structure or land, and such other information as may be required by the Zoning Officer for the proper enforcement of this ordinance. The property owner shall be responsible for locating and identifying the property identification numbers if required by the Zoning Officer.



EXHIBIT

Blumberg No. 6119