IN THE CIRCUIT COURT OF THE 22ⁿᵈ JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

**COPY**

| | |
|---|---|
| PALTRONICS, INC. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08LA171 |
| | ) |
| ADLINE NETWORK HOLDINGS, INC. and | ) |
| ADLINE MEDIA, LLC | ) |
| Defendants. | ) |
| | ) |

**FILED**

MAY 0 2 2008

VERNON W. KAYS, JR.
McHENRY CTY. CIR. CLK.

## COMPLAINT

Paltronics, Inc. ("Paltronics"), through its undersigned attorneys, for its Complaint

against Adline Network Holdings, Inc. and Adline Media, LLC, states as follows:

### Introduction

1.    Paltronics paid $350,000 for the opportunity (option) to purchase Adline Media,

LLC. Paltronics was interested in purchasing Adline for its intellectual property portfolio, which

allegedly included various patented or patentable inventions. Adline would not allow Paltronics

to review, inspect or analyze these inventions unless and until Paltronics entered into an option

agreement and paid one-half of the $350,000 option fee. Paltronics did so, but did not, despite

many months of prodding, receive the information required to assess whether there was

sufficient value in Adline's intellectual property. Eventually, Paltronics demanded a refund and

Adline refused. On the same day that Adline rejected Paltronics' demand, three of Paltronics'

employees, two of whom worked previously for Adline resigned suddenly. These employees

refused to disclose where they were going to work. Moreover, these employees wiped clean the

hard drives on the computer they were given by Paltronics for their work, thus, purposely

covering their tracks. This action is brought to collect the option fee Paltronics paid to Adline

for the due diligence information it never received.

BY LOCAL RULE 3.10
THIS CASE IS HEREBY SET FOR SCHEDULING
CONFERENCE IN COURTROOM 201 ON
9-11 200 8 , AT 9 (AM)PM
FAILURE TO APPEAR MAY RESULT IN THE CASE
BEING DISMISSED OR AN ORDER OF
DEFAULT BEING ENTERED.

479182.2 051639-38602

### Parties and Jurisdiction

2.      Plaintiff, Paltronics, Inc., is an Illinois corporation based in Crystal Lake, Illinois. Paltronics manufactures casino gaming products.

3.      Defendant, Adline Network Holdings, Inc. ("Adline Network") is a Georgia corporation.

4.      The parent company and, upon information and belief, the sole shareholder of Adline Network is Defendant Adline Media, LLC ("Adline Parent"), which is a Georgia limited liability company.

5.      Jurisdiction and venue are proper in this Court as the parties agreed in writing that any dispute relating to the subject matter of this Verified Complaint be brought within the State of Illinois (Exhibit A, par. 12), and a substantial portion of the events that are the subject matter hereof occurred within the Nineteenth Judicial Circuit.

### Background

6.      On or about May 24, 2007, Paltronics and Defendants entered into that certain "Option to Purchase Adline Network Holdings, Inc." (the "Agreement"). A true and correct copy of the Agreement is attached hereto and made a part hereof as Exhibit A.

7.      Under the Agreement, Paltronics paid Adline Parent a fee for the option to purchase "[Adline] Network, including all tangible and intangible property and all intellectual property owned by Network...for the sum of....$5,000,000." Exhibit A, par. 1.A.

8.      The purchase price for the option was $350,000 (the "Option Fee"). Exhibit A, par. 1.B.

9.      Paltronics paid the Option Fee in full.

10.     Under the Agreement, Adline Network was required to "provide Paltronics with all information in its possession relating to Network, including information relating to the

Network Technology, pending patent applications and trade secret technology, ownership documents and contracts, and financial information." Exhibit A, par. 1.C. (In this Verified Complaint, the foregoing information is collectively referred to as the "Due Diligence Materials."

11.    But for Adline Network's promise to provide to the Due Diligence Materials, Paltronics would never have entered into the Agreement and paid the Option Fee. Indeed, Paltronics requested, prior to the execution of the Agreement, to review the Due Diligence Materials. Adline Network refused, explicitly informing Paltronics that it was exclusive access to the Due Diligence Materials that Paltronics was paying for in the Agreement.

**Adline Breached the Agreement**

12.    Notwithstanding these conversations, Adline's Network breached its promise to provide the Due Diligence Materials, as follows:

A.    Although the Agreement was executed in May, 2007, no Due Diligence Materials were produced at all until July, when Sam Johnson, Adline Network's President, provided a document in Word format purporting to be the file history on the Adline Network patents. The file was not, in fact, a file history and did not establish Adline Network's rights in that intellectual property. Sam Johnson, although President of Adline Network, was also acting as a paid consultant to Paltronics pursuant to a separate agreement between Paltronics and Adline Network. Later, in September 4, 2007, Sam Johnson was hired by Paltronics as a full time employee. Upon information and belief, Sam Johnson remained a shareholder and officer of Adline Network following his employment by Paltronics.

B.    Approximately two months later, in late September, Mr. Johnson hand-delivered what appeared to be an analysis of the intellectual property owned by Adline Network. However, Johnson added that this analysis was not the file history, which he said he needed to obtain from another company, Las Vegas Gaming, Inc. ("LVGI").

C.    Despite the fact that Paltronics had received virtually none of the Due Diligence Materials, on December 3, 2007, Larry Enterline, a principal of both Defendants, asked Terri Cooper of Paltronics whether Paltronics intended to exercise the option. Cooper told him that Paltronics still had not received the Due Diligence

Materials needed to determine whether it made sense to exercise the option. Cooper wrote in an email:

> Yes, we are in need of information to move forward and I think Sam has tried to get this, but we are way behind the eight ball on timing at this point. In order for us to properly do our due diligence, we requested the patent application from the outset (even before if you recall our discussions). Because of the delicacy of the situation, it took quite a bit of time. I think we received a portion of this only about 6 weeks ago, and our attorney performing the analysis is now asking for the drawings (full application and office actions) to continue his evaluation. I'm sure you can understand that this is necessary in order for us to move forward internally or externally. Any help on this front would be greatly appreciated.

D.    On December 31, 2007, more than six months after the Agreement had been executed, Larry Enterline admitted in an email that some of the Due Diligence Materials had not been provided:

> Attached please find some detail as to the diligence issues you raised---as I suspected three of the items are in LVGI control. We will secure these ASAP as we do have a contractual right to them however it is difficult to predict the timing. Sam does offer some color on these issues that maybe helpful. Let me know if I can do anything else and I will keep you posted on our progress with LVGI.

E.    On January 29, 2008, Sam Johnson sent Terri Cooper what was purported to be the file history on the patents. Once again, it was not complete. On January 31, 2008, Terri notified Sam Johnson that:

> I sent it to our attorney as soon as you gave it to me on Tuesday. He has mentioned that there are items missing from the original list he requested. I have requested confirmation of what he needs so I can forward to you and Larry [Enterline].

F.    By January 31, 2008, two days later, Terri Cooper wrote directly to Larry Enterline the following:

> Hi Larry – the paragraph below is from our counsel based on the information we received from Sam this week. As you can see – we really do not have the core of what we need to do our due diligence. His letter to me goes on further to say that he can only assume but not he cannot comfortably give us an opinion with regard to a diligence analysis because of the missing data. What can be done to get the items listed below? We want to do our homework, but we need your help. Suggestions?

> The information provided is a step in the right direction but does not completely fulfill the list of items that I requested. More particularly, I

still have not received a copy of the provisional application 60/280,084 from which the utility application 10/113,882 presumably claims priority (item #1 in my letter of 12/26/07) or a copy of the filing receipt for the utility application (item #2 in my letter of 12/26/07). Nor have I received the complete file history for the utility patent application (item #4 in my letter of 12/26/07).

G.    On February 1, 2008, after Larry Enterline sent an email to Cooper of Paltronics, asking whether Paltronics would exercise the option, Cooper responded as follows:

> Hi Larry – our counsel performing the analysis does not feel he has the core information to perform the diligence we are requesting (paraphrased below). It really is not possible to give a date until we receive this information and give him a chance to review and estimate. It is difficult for me to understand why the delay in producing the documents because we have discussed and requested the file history long before we signed the agreement. Maybe there is a misunderstanding of what we are requesting or other? Let me know if we need to clarify and I can get that going. Terri

H.    On March 1, 2008, Cooper of Paltronics sent the following message to Enterline of Defendants:

> Larry - the primary deliverable (and issue) that we've asked for time and time again are the assignments. The inventor began with a gentleman named Aldemaro Ribeiro, at some point in time it became FreeView, possibly Adline at another point in time, and then ultimately LVGI. Along the same line regarding assignments - nothing is provided how Adline has the rights to sell the IP to Paltronics belonging to LVGI? We have heard the methodology - but we have no documentation to support. I have asked repetitively that we need these assignments to complete the due diligence.

> I have a couple of comments aside from this - but this remains our unfulfilled request - stated numerous times. It should be part of the file history in order to establish the rights.

13.    Unable to obtain Defendants' performance of its obligations under the Agreement, and in the face of Adline Network's repeated demands that Paltronics make a decision on the exercise of the option, on March 6, 2008, Paltronics requested a refund of the Option Fee and all of its due diligence expenses.

14.    On March 10, 2008, Defendants stated in writing that they would not refund the Option Fee.

15.    Also on March 10, 2008, three employees of Paltronics suddenly resigned without notice. The employees were Chris Henley, Eric Toops, and Darin Heuermann.

16.    Sam Johnson is no longer employed by Paltronics.    Defendants' website, www.adlinenetwork.com states that Johnson is its CEO. The website also states that Eric Toops, of the employees who resigned, is the vice-president of hardware development.    Upon information and belief, Chris Henley and Darin Heuermann are also now employed by Defendants, directly or indirectly.  Henley and Heuermann were expressly asked by Paltronics where they are now employed, but they have refused to answer the question.

17.    Henley, Toops, and Heuermann all used computers that were property of Paltronics. Before they resigned, and without Paltronics' knowledge or consent, they erased the hard-drives of these computers.

18.    On March 14, 2008 and again on March 31, 2008, Paltronics renewed its request for a refund of the Option Fee based on Defendants' breach of its obligations under the Agreement, but Defendants refused to refund the Option Fee.

19.    Paltronics has been damaged in the amount of the Option Fee, $350,000, plus an amount equal to the expenses it incurred in attempting to conduct its due diligence pursuant to the Agreement.

WHEREFORE, Plaintiff Paltronics, Inc. prays for the entry of a judgment in its favor and against Defendants, jointly and severally, in the amount of $350,000 plus its due diligence expenses plus its legal fees and expenses hereunder, together with such further and other relief as the Court deems just and proper.

Date:  April 30, 2008

Respectfully submitted,

PALTRONICS, INC.

By: _____
                One of its Attorneys

Patrick T. Stanton
Heather L. Kramer
Schwartz Cooper Chartered
180 North La Salle, Suite 2700
Chicago, IL  60601
(312) 346-1300

and

James A. Campion
Campion, Curran, Dunlop & Lamb, P.C.
8600 U.S. Hwy 14, Suite 201
Crystal Lake, Illinois 60012
Phone:  (815) 459-8440
Fax:  (815) 455-8134

## <u>*OPTION TO PURCHASE ADLINE NETWORK HOLDINGS, INC.*</u>

This Agreement is entered into between Paltronics Inc., an Illinois corporation located at 1145 Paltronics Court, Crystal Lake, IL, ("Paltronics") and Adline Network Holdings Inc ("Network"), a Georgia corporation, and Adline Media LLC ("Media"), a Georgia limited liability company, the sole shareholder of Network. Both Network and Media are located at 2699 Buford Highway, Buford, GA 30518.

### *RECITALS*

*WHEREAS,* Network represents that it owns the rights to the technology listed in Exhibit A, reflective of the licensing agreement attached in Exhibit B;

**WHEREAS,** Media represents that it is the sole owner of all right, title and interest in Network.

*WHEREAS,* Paltronics may be interested in purchasing Network and all of its assets and is willing to pay Media a fixed sum for the option to purchase Network over the next year.

***NOW, THEREFORE,*** in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

### *WARRANTIES*

A.    Network represents and warrants that:



(i) it is the owner of all right, title and interest to the patents and technology listed in Exhibit A, including the pending and issued patent applications listed therein and has the right to assign the technology in accordance with the terms of this Agreement if the option to purchase is exercised hereunder ("Network Technology");

(ii) it does not own any other trade secrets, copyrights, patents, patent applications, trademarks or intellectual property other than the property set forth in Exhibit A;

(iii) this Agreement does not violate any agreements, rights or obligations existing between it and any third party except for the licenses set forth in Exhibit B;

(iv) other than the licenses set forth in Exhibit B, it has not and will not sell, assign, transfer, negotiate or otherwise compromise any portion of or interest in any asset covered by this Agreement;

(v) no third party has filed any action, cause, proceeding, complaint, prayer, motion, request, demand or pleading against each it;

(vi) during the Option Term it will not sell, assign, transfer, negotiate, license or otherwise compromise any portion of or interest in any of its Assets;

(vii) it has a good faith belief, but can not guarantee, all the patent applications listed in Exhibit A will issue to registration and they will continue to prosecute said patents up through and including the date of purchase by Paltronics (assuming Paltronics exercises its option.)

(viii) it believes that the products currently made using the Network Technology are embodied within its Patent applications and registrations listed in Exhibit A;

(ix) it believes that the Network Technology does not infringe the intellectual

property rights of any third party;

(x) it has no knowledge of any bars to the patentability or validity of its Patent applications and registrations listed in Exhibit A;

(xi) it has the authority to sign this Agreement.

B.     Media represents and warrants that:

(i)     it owns all right, title and interest in Network;

(ii)     it has the authority to sign this Agreement;

(iii)     during the Option Term it will not sell, assign, transfer, negotiate, license or otherwise compromise any portion of or interest in Network;

(iv)     it does not have the right to license any of the Network Technology.

### *DEFINITIONS*

A. "Licensed Network Technology" shall mean all licenses between Network and any other party relating to or encompassing the Network Technology set forth in Exhibit B.

B. "Net Assets" shall mean the sum of accounts receivable plus inventories plus net fixed assets plus other non "Network Technology" intangible assets less the sum of trade accounts payable plus accrued expenses plus sales taxes payable. *Network Technology assets are not included in the definition of Net Assets.* The value of Net Assets on the effective date of this Agreement is expected to be less than $25,000.

C.  "Option Term" shall end on January 1, 2008.

D.  "Option Fee" shall mean the Three Hundred and Fifty Thousand Dollars ($350,000) non-refundable fee which Paltronics pays to Media for the option to purchase Network for the sum of Five Million Dollars ($5,000,000) in a combination of cash and / or stock.

E.  "Network Technology and Assets" shall mean all of Network's intellectual property, including, but not limited to: i) all patent applications and registrations listed in Exhibit A, including all divisions, continuations in whole or part, substitute applications, reissues, renewals and foreign counterparts of that application and/or resulting registration; ii) all of its technology, iii) all of its trademarks and copyrights (whether registered or not), iv) all of its trade secrets, and iv) all of its other net assets .

F.  "Customer" means the person or entity to whom any product encompassing all or a portion of the Network Technology is sold, leased, licensed or otherwise directly or indirectly transferred or supplied.

G.  "Normal course of business" shall mean the prosecution of the existing and or new efforts to generate revenues from the installation of SAMIT units utilizing the Network Technology in business and or residential locations.

## COVENANTS

1.  Option for Assignment.

A.  For its Agreement to pay the Option Fee to Media under the terms of this Agreement, Paltronics shall receive the exclusive option from the effective date of this Agreement up until January 1, 2008 to purchase Network, including all tangible and intangible property and all intellectual property owned by Network, from Media for the sum of Five Million Dollars ($5,000,000), of which the non-refundable Three Hundred

and Fifty Thousand Dollar ($350,000) Option Fee shall be applied to the purchase price should Paltronics exercise its rights to purchase Network. If Paltronics exercises its option to purchase Network, Media shall assign all of its right, title and interest to all of the outstanding shares of Network's common stock, and all of its interest, if any, in the tangible and intangible assets in Network to Paltronics.

B.  Paltronics agrees to pay the first One Hundred and Seventy Five Thousand Dollars ($175,000) of the Option Fee upon execution of this Agreement and, the remainder of the Option Fee sixty (60) days thereafter.  Immediately upon receipt of the first One Hundred and Seventy Five Thousand Dollars ($175,000) from Paltronics, Network shall provide Paltronics with all information in its possession relating to Network, including information relating to the Network Technology, pending patent applications and trade secret technology, ownership documents and contracts, and financial information. Other information requested to satisfy Paltronics' due diligence requirements prior to its purchase of Network, shall be provided within ten (10) days of receipt of the request. The party's agree that any delay in providing this information to Paltronics shall increase the payment of the remainder of the Option Fee by an equal amount of time without any penalty to Paltronics.

2.  <u>Notice of Exercise.</u>  If Paltronics desires to exercise its exclusive option to purchase Network, it shall provide Media with written notice that it is exercising its exclusive option by the last day of the Option Term.  Notice shall be delivered in accordance with the Notice section set forth below.

3.  <u>Fees</u>.  If Paltronics exercises its exclusive option to purchase Network, Media shall transfer its entire ownership interest in Network to Paltronics for the sum of Five Million Dollars ($5,000,000).  At Paltronics' sole option, this sum less the Option Fee, shall be paid either: a) in equal monthly installments of principal and interest (prime plus 2% APR) over a period of three (3) years beginning with the exercise date of this Agreement, (b) in full less a twenty percent (20%) discount for a net total due of Three Million Seven Hundred Twenty Thousand Dollars ($3,720,000) within thirty (30) days of

the Exercise Date of its Option, or (c) through the issuance of a combination of cash and Paltronics' stock.

4.  Restriction on Network Technology and Assets.  During the Option Term, neither Network nor Media shall (a) sell, pledge, license, hypothecate, transfer or otherwise dispose of all or any portion of the Network Technology and Assets, except as may be expressly authorized under this Agreement, or (b) grant any option, warrant or similar right, or enter into any agreement or understanding with any third party (excluding the existing owners of Media) under which Network or Media will sell all or any portion of themselves or their respective shares or membership interests, except as may be expressly authorized under this Agreement.

5.  Notice to Cure for Payment Default.  Should Paltronics default on any payment due and owing to Media in the time frame set forth above, the sum owed shall accrue interest beginning on the due date thereof, calculated at the annual rate of 18%. Media shall notify Paltronics in writing of its default and allow Paltronics thirty (30) days to cure its default in payment, by paying Media in full, plus interest, pursuant to the terms set forth in Paragraph 3.  If Paltronics does not cure its default within thirty (30) days, at Media's sole discretion, its remedy for default by Paltronics is a) to seek money damages, b) reverse the purchase agreement of Network in favor of Media's rights of such or c) any other remedy available at law.

6.  Termination.  Paltronics shall have the right to terminate this Agreement if Network or Media:  i) sells, assigns, transfers, negotiates, licenses or otherwise compromises any portion of or interest in any of its net assets during the Option Term; or ii) breaches or misrepresents any of its representations and warranties set forth in the WARRANTIES section above.

7.  Post Termination.  If, during the Option Term, Network or Media breaches this Agreement due to the sale, assignment, or transfer of any of its assets outside its normal course of business including any further license under its patents, in addition to

any other remedies available under law, Paltronics shall be entitled to and Network or Media agrees to pay Paltronics a) its Option Fee, b) any and all fees paid to Network or Media during the Option Term and c) any license fees received or negotiated outside its normal course of business with any third parties during the Option Term.

8. <u>Confidentiality</u>. The terms of this Agreement are to remain confidential between the Parties and their counsel. As a limited exception to this paragraph, the Parties have agreed to allow the terms of this Agreement to be disclosed to any regulatory authorities or as required by law. Any information requested shall be provided directly to the person or entity requesting the information. In the event either party is in breach of the requirement of confidentiality, the non-breaching party shall be entitled to monetary damages according to proof.

9. <u>Confidential Information / Non-Disclosure Agreement.</u> During the Option Term and for as period of not less than three (3) years after the exercise or lapse of this Option Agreement, each Party and all related affiliates shall keep in confidence and not disclose to any third party, without the prior written permission of the other, the terms of this Agreement and any proprietary information, documents, software, records and other information of the other made known to it with respect to the Network Technology, provided that Paltronics may disclose this Agreement and such information to its Affiliates on a need-to-know basis only, provided further, that each such party agrees in writing to be bound by the terms and conditions of this confidentiality provision. Either Party may disclose this Agreement and such other information to its Affiliates, legal and accounting professionals, gaming jurisdiction regulators and secured lenders. Proprietary information shall include, but not be limited to including (1) information of a technical nature, such as "know-how," secret processes, computer software and firmware, trade secret information, inventions, and research projects; (2) information of a business nature, such as information about costs, profits, markets, marketing plans, sales, suppliers, manufacturers, and lists of customers; (3) plans for future developments and future products, and (4) other information of a similar nature to the extent not available to the public. This requirement of confidentiality shall not apply to

information that is (a) in the public domain through no wrongful act of the receiving party; (b) rightfully received by the receiving Party from a third party who is not bound by a restriction of nondisclosure; (c) already in the receiving Party's possession without restriction as to disclosure, or (d) is required to be disclosed by applicable rules and regulations of government agencies, judicial bodies, or as otherwise legally required. This confidentiality provision shall survive the termination of this Agreement.

10.   Assignments.   The licenses and assignments granted under this Agreement are assignable and any successors or assigns of the Parties shall be bound by the terms of this Agreement.

11.   Notices.   All notices, requests, demands and other communications required or permitted under this Agreement shall be in writing and delivered in person or by express mail as follows:

**To Paltronics:**
Terri A Cooper
Paltronics Inc.
1145 Paltronics Ct
Crystal Lake, IL

**To Network and Media:**
Keith E Pugh
Strategic Management Inc
2699 Buford Highway
Buford, GA 30518

All notices and other communications required or permitted under this Agreement which are addressed as provided in this Section shall be effective (i) upon delivery if delivered personally, or on the date of receipt if delivered by express mail with proof of delivery. Any party hereto may change its address or designated recipient for the purpose of

notices to such party by a similar notice specifying a new address.

12.    Governing Law/Jurisdiction.    Jurisdiction, venue and choice of law with respect to all matters between the Parties relating to this Agreement shall reside exclusively with and in the State of Illinois.

13.    Representative Capacity.    The undersigned represent that they have authority to execute this Agreement on behalf of the respective Parties and to carry out all obligations imposed hereunder.    The undersigned have read, understand, and agree to the terms of this Agreement and have had the opportunity to consult with counsel regarding this Agreement.

14.    Execution.    This Agreement shall be executed in counterparts, each of which shall constitute an original agreement.

15.    Entire Agreement.    This Agreement constitutes the sole and only agreement of the Parties with respect to the subject matter herein and contains all of the covenants and agreements between the parties with respect thereto, and supercedes any previous communications, representations, or agreements, verbal or written, related to the subject matter of this Agreement.    This Agreement shall only be amended in writing.

16.    Further Assurances.    The parties agree to cooperate fully to execute and deliver all documents as may be necessary to give this Agreement full force and effect.

17.    Severability.    If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall, nevertheless, continue in full force and effect without being impaired or invalidated in any way.

18.    Remedies and Attorneys Fees.    If either party commences any action or proceeding against the other party to enforce this Agreement or any right arising in connection with

this Agreement, the prevailing party in such action or proceeding shall be entitled, at the court's discretion, to recover from the other party all fees and expenses incurred in such action or proceeding, including, without limitation, the actual attorneys fees, costs and expenses incurred by such prevailing party in connection with such action or proceeding and in connection with enforcing any judgment or order thereby obtained.

19.  No Partnership or Joint Venture.  This Agreement does not constitute and shall not be construed as constituting a partnership or joint venture between the Parties.

20.  Effective Date.  The effective date of this Agreement shall be the later execution date set forth below.

Next Page is the Signature Page.

# SIGNATURE PAGE

**PALTRONICS INC.**

By:    Terri A Cooper, COO / CFO

Date:  30 May 07

**ADLINE NETWORK HOLDINGS INC**

By: Larry L Enterline, CEO

Date:  5/24/07

**ADLINE MEDIA LLC**

By: Larry L Enterline, CEO

Date:  5/24/07

EXHIBIT "A"

# NETWORK TECHNOLOGY

The "Network Technology" as used in this Agreement means any and all intellectual property which Network owns and / or possesses a license to and / or possesses the right to license others which is included in or relates to video systems that provide for the simulcast overlay of images and text. As of the Execution Date, the inventions and intellectual property comprising the Intellectual Property, include, without limitation, all rights arising under all license agreements, sublicense agreements, and other agreements (the "License Agreements") related to the use of the patents, patent applications, CIPs, derivatives, and copyrights listed below:

1. Patent application filed April 1, 2002 titled "Interactive Video System" USPTO Application #: 10/113,882

2. Source code and executables for operating the Adline network management and delivery software currently located at www.adliner.net and one of the P3-600 /256MEG/250GIGHD Dell server box

3. Design and all associated drawings and electronic files for the SAMIT-1000 and SAMIT-2000 hardware design

4. Source code and executables for the embedded application running on the SAMIT-1000 and SAMIT-2000 hardware designs

The License Agreements include the following:

A) The "License Agreement" dated October 8, 2004 between Adline Gaming Inc and Adline Network LLC (original non-gaming commercial and residential arenas)

B) The "License Agreement" dated October 8, 2004 between Adline Network LLC and Freeview Network LLC (non-gaming commercial arena)

C) The "License Agreement" dated October 21, 2004 between Adline Network LLC and Adline Media LLC (residential arena)

D) The "Assignment of License Agreement Rights" dated March 1, 2005 between Freeview Network LLC and Adline Media LLC (joining of Freeview Network and Adline Media entities into one entity)

E)    The "Assignment of Agreement Rights" dated February 1, 2006 between Adline
      Network LLC and Adline Media LLC (title chain clean-up – original agreement for
      "At Home Wagering" should have been with Adline Media)

F)    The "Assignment of License Agreement Rights" dated May 24, 2006 between
      Adline Media LLC and Adline Network Holdings Inc (Media contributes all
      licensing rights etc in a Section 351 capital contribution in exchange for stock)

G)    The "Assignment of License Agreement Rights" dated June 1, 2006 between
      Adline Network LLC and Adline Network Holdings Inc (title clean-up – combines
      all rights under one entity)

EXHIBIT "B"

THIRD PARTY LICENSES

The "Assignment of License Agreement Rights" dated February 15, 2006 between Las Vegas Gaming Inc and Adline Media LLC (transfer of "At Home Wagering" rights to Las Vegas Gaming)

Case Number: 08LA171 MCHENRY COUNTY, ILLINOIS CIRCUIT COURT
Date Received: 05/21/2008    Time: 2:05 PM
Special Service Inst:

STATE OF GEORGIA
GWINNETT COUNTY

ATTORNEY'S ADDRESS

PALTRONICS, INC.
PLAINTIFF

SCHWARTZ COOPER CHARTERED
180 NORTH LASALLE ST.
SUITE 2700
CHICAGO IL  60601

VS.

ADLINE MEDIA, LLC, ET AL
DEFENDANT

NAME AND ADDRESS OF PARTY TO BE SERVED

ADLINE MEDIA, LLC
% KEITH E. PUGH, REG. AGENT
2699 BUFORD HIGHWAY
BUFORD  GA  30518

## SHERIFF'S ENTRY OF SERVICE

PERSONAL ☐    Sex____ Skin Color____ Hair Color____ Age____ Hgt____ Wgt____
    I have this day served the defendant_____ personally with a copy
    of the within action and summons.

NOTORIOUS ☐
    I have this day served the defendant_____ by leaving
    a copy of the action and summons at his most notorious place of abode in this County.

    Delivered same into hands of _____ described as follows

    SEX            SKIN COLOR          HAIR COLOR          AGE          HGT          WGT

    _____   _____        _____        _____     _____       _____

CORPORATION ☑
    I have this day served the ___ADLINE MEDIA LLC___ a corporation
    by leaving a copy of the within action and summons with _KEITH E. PUGH (RA)_
    in charge of the office and place of doing business of said Corporation in this County.

TACK AND NAIL ☐
    I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to
    the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true
    copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the
    address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to
    answer said summons at the place stated in the summons.

NON EST ☐
    Deligent search made and defendant _____
    not to be found in the jurisdiction of this Court.

SPECIAL PROCESS
    SUMMONS, COMPLAINT

COMMENTS

Subscribed and sworn to before me this
_____ day of _____, _____.

Notary Public in and for said County and State

SHERIFF DOCKET _____ PAGE _____

Date Served: 05/30/08
Time: 7:46 PM
_____
Deputy Sheriff
GWINNETT COUNTY, GEORGIA

*SUMMONS – 30 DAY*
IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

(Name all parties)

**PALTRONICS, INC.**

Plaintiff(s)

vs.

**ADLINE NETWORK HOLDINGS, INC., and**

**ADLINE MEDIA, LLC**

Defendant(s)

**COPY**

Case Number 08CA171

Amount Claimed $

*Please serve:*
Adline Media, LLC
c/o Keith E. Pugh
Registered Agent
2699 Buford Highway
Bufford, GA 30518

# SUMMONS

Adline Network Holdings, Inc.

**To each Defendant:**   Adline Media, LLC.

   **YOU ARE SUMMONED** and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this court, McHenry County Government Center, 2200 N. Seminary Avenue, Woodstock, Illinois, 60098, within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

**To the officer:**

   This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.  This summons may not be served later than 30 days after its date.

MAY 0 2 2008

WITNESS_____ 20____

_____
Clerk of the Circuit Court

(seal: TWENTY-SECOND JUDICIAL CIRCUIT COURT / McHENRY COUNTY ILLINOIS)

---

Plaintiff's attorney or plaintiff if he is not represented by an attorney

Name____Patrick T. Stanton
   Richard T. Reibmann
   Schwartz, Cooper, Greenberger, Krauss

Attorney for Paltronics, Inc.
   180 N. LaSalle St., Ste. 2700

Address_____

City, State Zip____Chicago, IL  60601

Telephone____312/346-1300

Prepared by____James A. Campion

Attorney for____Paltronics, Inc.

Attorney Registration No._____

**SHERIFF'S FEES**

| | | |
|---|---|---|
| Service and return | $ _____ | |
| Miles _____ | $ _____ | |
| Total Sheriff's Fees | $ _____ | |

Sheriff of _____ County

## I CERTIFY THAT I SERVED THIS SUMMONS ON DEFENDANTS AS FOLLOWS:

**(a) INDIVIDUAL DEFENDANTS – PERSONAL:**
The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant.

_____
_____
_____

**(b) INDIVIDUAL DEFENDANTS – ABODE:**
By leaving a copy of the summons and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years and upwards, informing that person of the contents of the summons. The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person.

_____
_____
_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully pre-paid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of Defendant | Mailing Address | Date of Mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**(c) CORPORATION DEFENDANTS:**
By leaving a copy of the summons and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant Corporation | Registered Agent, Officer or Agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**(d) OTHER SERVICE**

_____
_____

_____, Sheriff of _____ County

By: _____, Deputy

CV-SUM9: Revised 12/01/06                    Page 2 of 2

Case Number: 2008 LA 171 MCHENRY COUNTY, ILLINOIS CIRCUIT COURT
Date Received: 05/21/2008    Time: 2:10 PM
Special Service Inst:

STATE OF GEORGIA
GWINNETT COUNTY

ATTORNEY'S ADDRESS

PALTRONICS, INC.
PLAINTIFF

SCHWARTZ COOPER CHARTERED
180 NORTH LASALLE ST.
SUITE 2700
CHICAGO GA 60601

VS.

NAME AND ADDRESS OF PARTY TO BE SERVED

ADLINE NETWORK HOLDINGS, INC., ET AL
DEFENDANT

ADLINE NETWORK HOLDINGS
KEITH E. PUGH, REG. AGENT
2699 BUFORD HIGHWA
BUFORD GA 30518

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐   Sex____ Skin Color____ Hair Color____ Age____ Hgt____ Wgt____
   I have this day served the defendant_____ personally with a copy
   of the within action and summons.

**NOTORIOUS** ☐
   I have this day served the defendant_____ by leaving
   a copy of the action and summons at his most notorious place of abode in this County.

   Delivered same into hands of _____ described as follows

| SEX | SKIN COLOR | HAIR COLOR | AGE | HGT | WGT |
|-----|-----------|-----------|-----|-----|-----|
|     |           |           |     |     |     |

**CORPORATION** ☑
   I have this day served the ___ADLINE NETWORK HOLDINGS___ a corporation
   by leaving a copy of the within action and summons with ___KEITH E. PUGH (RA)___
   in charge of the office and place of doing business of said Corporation in this County.

**TACK AND NAIL** ☐
   I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to
   the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true
   copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the
   address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to
   answer said summons at the place stated in the summons.

**NON EST** ☐
   Deligent search made and defendant
   not to be found in the jurisdiction of this Court.

**SPECIAL PROCESS**
   SUMMONS, COMPLAINT

**COMMENTS**

Subscribed and sworn to before me this
30 day of MAY , 2008 .

_____
Notary Public in and for said County and State

Date Served: 05/30/08
Time: 7:10 PM
SGT. T. LEE SGR 102
Deputy Sheriff

SHERIFF DOCKET _____ PAGE _____

GWINNETT COUNTY, GEORGIA

**SUMMONS – 30 DAY**
IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

(Name all parties)

**PALTRONICS, INC.**

_____

_____

_____
Plaintiff(s)

vs.

**ADLINE NETWORK HOLDINGS, INC., and**

**ADLINE MEDIA, LLC**

_____
Defendant(s)

**COPY**

Case Number O8CA171

Amount Claimed $_____

Please serve:
Adline Network Holdings
c/o Keith E. Pugh
Registered Agent
2699 Buford Highway
Bufford, GA 30518

## SUMMONS

Adline Network Holdings, Inc.
**To each Defendant:**  Adline Media, LLC.

YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this court, McHenry County Government Center, 2200 N. Seminary Avenue, Woodstock, Illinois, 60098, within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.  This summons may not be served later than 30 days after its date.

WITNESS MAY 0 2 2008 _____ 20____

_____
Clerk of the Circuit Court

| | |
|---|---|
| Plaintiff's attorney or plaintiff if he is not represented by an attorney | |
| Name  Patrick T. Stanton  Richard T. Reibmann | Prepared by  James A. Campion |
| Attorney for Schwartz, Cooper, Greenberger, Krauss  Paltronics, Inc. | Attorney for  Paltronics, Inc. |
| Address  180 N. LaSalle St., Ste. 2700 | Attorney Registration No. _____ |
| City, State Zip  Chicago, IL  60601 | |
| Telephone  312/346-1300 | |

CV-SUM9: Revised 12/01/06                Page 1 of 2

**SHERIFF'S FEES**    Service and return    $ _____

Miles _____    $ _____

Total Sheriff's Fees    $ _____

_____

Sheriff of _____ County

## I CERTIFY THAT I SERVED THIS SUMMONS ON DEFENDANTS AS FOLLOWS:

**(a) INDIVIDUAL DEFENDANTS – PERSONAL:**
The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant.

_____

_____

_____

**(b) INDIVIDUAL DEFENDANTS – ABODE:**
By leaving a copy of the summons and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years and upwards, informing that person of the contents of the summons. The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person.

_____

_____

_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully pre-paid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of Defendant | Mailing Address | Date of Mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**(c) CORPORATION DEFENDANTS:**
By leaving a copy of the summons and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant Corporation | Registered Agent, Officer or Agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**(d) OTHER SERVICE**

_____

_____

_____, Sheriff of _____ County

By: _____, Deputy