IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS | |
| Plaintiffs, | CIVIL ACTION NO. _____ |
| v. | |
| HAMILTON SUNDSTRAND CORPORATION, | |
| Defendant. | |

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 3 |
| III. | PARTIES BOUND | 4 |
| IV. | DEFINITIONS | 4 |
| V. | GENERAL PROVISIONS | 9 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANT | 15 |
| VII. | REMEDY REVIEW | 21 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 23 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 25 |
| X. | REPORTING REQUIREMENTS | 31 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 33 |
| XII. | PROJECT COORDINATORS | 36 |
| XIII. | PERFORMANCE GUARANTEE | 37 |
| IV. | CERTIFICATE OF COMPLETION | 44 |
| XV. | EMERGENCY RESPONSE | 47 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 48 |
| XVII. | INDEMNIFICATION AND INSURANCE | 53 |
| XVIII. | FORCE MAJEURE | 55 |
| XIX. | DISPUTE RESOLUTION | 58 |
| XX. | STIPULATED PENALTIES | 64 |
| XXI. | COVENANTS NOT TO SUE BY PLAINTIFFS | 70 |
| XXII. | COVENANTS BY SETTLING DEFENDANT | 75 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 78 |
| XXIV. | ACCESS TO INFORMATION | 80 |
| XXV. | RETENTION OF RECORDS | 81 |
| XXVI. | NOTICES AND SUBMISSIONS | 83 |
| XXVII. | EFFECTIVE DATE | 85 |
| XXVIII. | RETENTION OF JURISDICTION | 85 |
| XXIX | APPENDICES | 85 |
| XXX. | COMMUNITY RELATIONS | 86 |
| XXXI. | MODIFICATION | 86 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 87 |
| XXXIII. | SIGNATORIES/SERVICE | 87 |
| XXXIV. | FINAL JUDGMENT | 88 |

I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of
the United States Environmental Protection Agency ("EPA"), and the State of Illinois, on behalf
of the People of the State of Illinois, by Lisa Madigan, Attorney General of the State of Illinois,
on her own motion and at the request of the Illinois Environmental Protection Agency, filed a
complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental
Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States and the State of Illinois (the "State") in their complaints seek,
inter alia: (1) reimbursement of costs incurred by EPA, the State and the Department of Justice
for response actions at the Southeast Rockford Groundwater Contamination Superfund Site-
Source Area 9/10 in Rockford, Winnebago County, Illinois, together with accrued interest; and
(2) performance of studies and response work by the defendant at the Site consistent with the
National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C.
§ 9621(f)(1)(F), EPA notified the State on July 25, 2007, of negotiations with the potentially
responsible party regarding the implementation of the remedial action for the Site, and EPA has
provided the State with an opportunity to participate in such negotiations and be a party to this
Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA
notified the United States Department of the Interior on September 27, 2007, of negotiations with
the potentially responsible party regarding the release of hazardous substances that may have
resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s)

1

to participate in the negotiation of this Consent Decree.

E.      The defendant that has entered into this Consent Decree ("Settling Defendant") does not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on March 31, 1989, 54 Fed. Reg. 13,296.

G.      In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, the State commenced in May 1996, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

H.      The State completed a Remedial Investigation ("RI") Report in July 2000, and the State completed a Feasibility Study ("FS") Report in September 2000.

I.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, the State published notice of the completion of the FS and of the proposed plan for remedial action on June 11, 2001, in a major local newspaper of general circulation. The State provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

J.      The decision by EPA and Illinois EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on June 11, 2002, on

2

which EPA has given its concurrence. The ROD includes the Agencies' explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

K.      Based on the information presently available to EPA and the State, EPA and the State believe that the Work will be properly and promptly conducted by the Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.      Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendant shall constitute a response action taken or ordered by the President.

M.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Hamilton Sundstrand Property at the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendant waives all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not

3

challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. Parties Bound

2.     This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. Definitions

4.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

4

meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 107.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs related to the Hamilton Sundstrand Property at the Site, that the United States and the State incur in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney

time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 89 of Section XXI. Future Response Costs shall also include all Interim Response Costs, and all Interest on those Interim Response Costs Settling Defendant has agreed to reimburse under this Consent Decree that have accrued pursuant to 42 U.S.C. § 9607(a) during the period from April 27, 2007, to the date of entry of this Consent Decree.

"GMZ" shall mean the Groundwater Management Zone as described in the Statement of Work.

"Hamilton Sundstrand Property" shall mean the property owned by Hamilton Sundstrand within the boundary of Source Area 9/10 defined by the ROD and depicted on the map attached as Appendix D.

"Illinois EPA" shall mean the Illinois Environmental Protection Agency and any successor departments or agencies of the State.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States and/or State in connection with the Hamilton Sundstrand Property at Source Area 9/10 of the Site between April 27, 2007 and the Effective Date, or (b) incurred by the United States and/or State prior to the Effective Date but paid after that date.

6

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work (SOW).

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State of Illinois, and the Settling Defendant.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action for the Hamilton Sundstrand Property set forth in the ROD,  Section II of the SOW, or any modified standards established by EPA consistent with the scope of the remedy selected in the ROD and implemented pursuant to this Consent Decree.

"Plaintiffs" shall mean the United States and the State of Illinois.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act), as well as the applicable portions of the Illinois Environmental Protection Act, 415 ILCS 5/21(f), Section 21(f), and 35 Illinois Administrative Code Parts 703 and 725.

"Record of Decision" or "ROD" shall mean the EPA Record of Decision for the

7

Southeast Rockford Groundwater Contamination Site signed on June 11, 2002, by the Regional

Administrator, EPA Region 5, and all attachments thereto. The ROD is attached as Appendix A.

For purposes of this Consent Decree only, Settling Defendant agrees to implement the ROD to

the extent defined by the Statement of Work.

"Remedial Action" or "RA" shall mean those activities, except for Operation and

Maintenance, to be undertaken by the Settling Defendant to implement the ROD as described in

the SOW, the Final 100% Remedial Design and Remedial Action Work Plan, and other plans

approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to

Paragraph 11 of this Consent Decree and approved by EPA, after reasonable opportunity for

review and comment by Illinois EPA, and any amendments thereto.

"Remedial Design" or "RD" shall mean the Final 100% Remedial Design developed by

Settling Defendant, dated March 31, 2007, and approved by EPA on April 26, 2007. The RD is

attached as Appendix B.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean Hamilton Sundstrand Corporation.

"Site" shall mean the Source Area 9/10 portion of the Southeast Rockford Groundwater

Contamination Superfund Site, located within the approximate boundaries of Eleventh Street on

the east, Twenty-third Avenue on the north, Harrison Avenue on the south, and Sixth Street on

the west, in Rockford, Winnebago County, Illinois, and depicted generally on the map attached

as Appendix D.

8

"SERGWCSS" shall mean the Southeast Rockford Groundwater Contamination Superfund Site (SERGWCSS) as described in the ROD.

"State" shall mean the State of Illinois, including the Illinois Attorney General and the Illinois EPA.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action and Operation and Maintenance within the Hamilton Sundstrand Property portion of the Site, as set forth in Appendix C to this Consent Decree, and any modifications made pursuant to this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under 415 Illinois Compiled Statutes ("ILCS") 5/3.215.

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

V. GENERAL PROVISIONS

5.   Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the

implementation of response actions at the Hamilton Sundstrand Property at the Site by the

Settling Defendant, to reimburse response costs of the Plaintiffs, and to resolve the claims of

Plaintiffs against Settling Defendant as provided in this Consent Decree.

The Work to be performed under this Consent Decree shall be consistent with the ROD,

with the RD, SOW and all work plans and other plans, standards, specifications, and schedules

developed by Settling Defendant and approved by EPA pursuant to this Consent Decree, serving

as the implementing documents for such Work.

6.    Commitments by Settling Defendant.

a.    Settling Defendant shall finance and perform the Work in accordance with

this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards,

specifications, and schedules set forth herein or developed by Settling Defendant and approved

by EPA pursuant to this Consent Decree.  Settling Defendant shall also reimburse the United

States and the State for Interim Response Costs and Future Response Costs, as provided in this

Consent Decree.

7.    Compliance With Applicable Law.  All activities undertaken by Settling

Defendant pursuant to this Consent Decree shall be performed in accordance with the

requirements of all applicable federal and state laws and regulations.  Settling Defendant must

also comply with all applicable or relevant and appropriate requirements of all Federal and state

environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to

this Consent Decree, if approved by EPA and Illinois EPA, as applicable, in accordance with this

Consent Decree, shall be considered to be consistent with the NCP.

10

8.    <u>Permits</u>.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.    <u>Notice to Successors-in-Title</u>.

a.    With respect to the Hamilton Sundstrand Property within the Site, within fifteen (15) days after the entry of this Consent Decree, the Settling Defendant shall submit to EPA for review and approval a notice, substantially in the form of that attached hereto as Appendix E to be filed with the Recorder of Deeds, Winnebago County, State of Illinois, which shall provide notice to all successors-in-title that the property is part of an NPL Site that contains source contamination and contaminated groundwater, and that EPA selected a remedy for the NPL Site on June 11, 2002, and that Settling Defendant has entered into a Consent Decree requiring implementation of the remedy as well as land and water use restrictions to maintain the integrity and protectiveness of the remedy. Such notice shall identify the United States District

11

Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. The Settling Defendant shall record the notice within ten (10) days of EPA's approval of the notice. Settling Defendant shall provide EPA and the State with certified copies of the recorded notice within ten (10) days of recording such notice.

b.   At least thirty (30) days prior to the transfer of any interest in real property, or any portion thereof, located within the Hamilton Sundstrand Property portion of the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, Settling Defendant shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which consent for access has been given that confers a right of access to the Hamilton Sundstrand Property at the Site (hereinafter referred to as "Restrictive Covenant") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which Settling Defendant has restricted the use of such property (hereinafter referred to as "Restrictive Covenant") pursuant to Section IX (Access and Institutional Controls). At least thirty (30) days prior to such transfer, Settling Defendant transferring the interest shall also give written notice to EPA and the State of the proposed transfer, including the name and address of the transferee, and the date on which notice of the Consent Decree and restrictive covenant was given to the transferee.

c.   In the event of any such transfer, the Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Settling Defendant. In no event shall the transfer release or otherwise affect the liability of

Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of the United States after a reasonable opportunity for review and comment by Illinois EPA.

d.    Any instrument transferring complete or partial possession or ownership of the Hamilton Sundstrand Property at the Site through sale, lease, deed or otherwise by Settling Defendant, or memorandum thereof, in the case of a lease shall be recorded with the Winnebago County Recorder of Deeds and shall provide that:

i.    Settling Defendant reserves a right of access for the purpose of conducting any activity related to this Consent Decree; and reserves the right to enforce the restrictions and covenants in the Restrictive Covenant required by Paragraph 25(b) for: (1) Settling Defendant; (2) EPA and its authorized representatives as a third party beneficiary; and, (3) the State and its authorized representatives as a third party beneficiary.

ii.    The transferee expressly agrees to comply with restrictions and covenants in the Restrictive Covenant required pursuant to Paragraph 25(b) and agrees that the entities listed in Paragraph 9(d)(i) may enforce the restrictions and covenants in the Restrictive Covenant against transferee and its successors and assigns;

iii.    An agreement to comply with the restrictions and covenants in the Restrictive Covenant required by Paragraph 25(b) shall be expressly included by any subsequent transferor in any instrument transferring complete or partial possession or ownership of the Hamilton Sundstrand Property at the Site;

iv.    The entities listed in Paragraph 9(d)(i) shall be expressly named in any instrument effecting such transfer of complete or partial possession or ownership of the

13

Hamilton Sundstrand Property at the Site as having the right to enforce the restrictions and

covenants in the Restrictive Covenant required by Paragraph 25(b) and such instrument shall

provide that these entities may directly enforce such obligations and rights as against the

transferee under such instrument and any successor to any such transferee; and

        v.      Any subsequent instrument, or memorandum thereof in the case of

a lease, effecting such transfer of complete or partial possession or ownership of the Hamilton

Sundstrand Property at the Site shall be recorded with the Winnebago County Recorder of Deeds.

        e.      Settling Defendant shall provide at least thirty (30) days prior written

notice to EPA and the State of any proposed conveyance of all or part of the Hamilton

Sundstrand Property at the Site.

        i.      For any conveyance utilizing the form Covenant Deed attached

hereto as Appendix F, such notice shall include submittal to EPA of the draft conveyance

document utilizing the form Covenant Deed attached hereto as Appendix F and a current title

search, commitment for title insurance or other evidence of title which documents that the

recorded Restrictive Covenant required in Paragraph 25(b) remains in place and effective.

        ii.      For any conveyance not utilizing the form Covenant Deed in

Appendix F, Settling Defendant shall submit to EPA and the State for review and concurrence

that the instrument of conveyance complies with the requirements of Paragraph 9(d) including:

        (a) The proposed draft deed, in recordable form, or other

instrument of conveyance, including a lease, that is enforceable under the laws of the State of

Illinois;

        (b) With respect to any lease, a memorandum of lease in recordable

form setting forth the requirements of Paragraph 25 contained in such lease; and

(c) A current title search, commitment for the title insurance or other evidence of title which documents that the recorded Restrictive Covenant remains in place and effective, as provided in Paragraph 26.

iii. Settling Defendant shall record such instrument of conveyance, or memorandum thereof in the case of a lease, with the Winnebago County Recorder of Deeds.

iv. Settling Defendant shall provide a true copy of the recorded instrument of conveyance, or memorandum, thereof in the case of a lease, showing the liber and page of recordation to EPA within thirty (30) days after Settling Defendant's receipt of a copy thereof from the Winnebago County Recorder of Deeds.

## VI. Performance of the Work By Settling Defendant

10.   Selection of Supervising Contractor.

a.   All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by the State. Within ten (10) days after the lodging of this Consent Decree, Settling Defendant shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and

15

Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA and the State a list of contractors, including the qualifications of each contractor that would be acceptable to them within thirty (30) days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within twenty-one (21) days of EPA's authorization to proceed.

c.      If EPA, with reasonable opportunity to review and comment by Illinois EPA, fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendant from meeting one or more deadlines in a plan approved by the EPA, with reasonable opportunity to review and comment by

16

Illinois EPA, pursuant to this Consent Decree, Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

    11.   <u>Remedial Action</u>.

        a.    Within thirty (30) days after entry of this Consent Decree, Settling Defendant shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Hamilton Sundstrand Property at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Final 100% Remedial Design approved by EPA. Upon its approval by EPA, after a reasonable opportunity for review and comment by Illinois EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time that it submits the Remedial Action Work Plan, Settling Defendant shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. §.1910.120.

        b.    The Remedial Action Work Plan shall include the following: (1) schedule for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for developing and submitting other required Remedial Action plans; (4) groundwater monitoring plan; (5) methods for satisfying permitting requirements; (6) methodology for implementation of an Institutional Control Implementation and Assurance Plan; (7) methodology for implementation of the Operation and Maintenance Plan; (8) methodology

for implementation of the Contingency Plan; (9) tentative formulation of the Remedial Action team; (10) construction quality control plan (by constructor);  (11) procedures and plans for the decontamination of equipment and the disposal of contaminated materials; and (12) the EPA- and Illinois EPA-approved Remedial Action Process Flow Diagram (RAPFD) for implementation of the Remedial Action at the Hamilton Sundstrand Property.  The Remedial Action Work Plan also shall include the methodology for implementation of the Construction Quality Assurance Plan and a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of the Settling Defendant's Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

    c. Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the Illinois EPA, Settling Defendant shall implement the activities required under the Remedial Action Work Plan.  The Settling Defendant shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Defendant shall not commence physical Remedial Action activities at the Hamilton Sundstrand Property at the Site prior to approval of the Remedial Action Work Plan.

    12. The Settling Defendant shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

13.     Modification of the SOW or Related Work Plans.

      a.     If EPA determines, with a reasonable opportunity for review and comment by Illinois EPA, that modification to the Work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD related to the Hamilton Sundstrand Property at the Site, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD related to the Hamilton Sundstrand Property at the Site.  In accordance with the SOW and/or work plans developed pursuant to the SOW, Settling Defendant may propose, and EPA and Illinois EPA may consider and determine whether certain modifications be made to the SOW and/or work plans.

      b.     For the purposes of this Paragraph 13 and Paragraphs 51 and 52 only, the "scope of the remedy selected in the ROD" related to the Hamilton Sundstrand Property at the Site is: Pages 88-92 of the ROD and Section II of the SOW including Soil Vapor Extraction ("SVE") for contaminated soils/soil gas to the cleanup standards set forth in Section II of the SOW, OSA soil removal and capping in designated area of the Hamilton Sundstrand Property at the Site, air sparging ("AS") of leachate, installation and treatment of groundwater using Granular Activated Carbon air filter devices, establishment of the GMZ and imposition of institutional controls, including restrictions within the GMZ, additional air sparging or SVE at partially remediated or newly discovered source areas, contingent remedy of hydraulic containment through additional air sparging wells, contingent remedy of groundwater pump and treat, enhanced or modified SVE and AS systems implementation or operation, or similarly

19

designed or other systems that may be implemented consistent with the ROD or pursuant to this Consent Decree.

        c.      If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, or objects to a determination by EPA and Illinois EPA as to a proposal made by Settling Defendant pursuant to this Paragraph 13, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

        d.      Settling Defendant shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

        e.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

    14.      Settling Defendant acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

    15.    a.      Settling Defendant shall, prior to any off-Site shipment of Waste Material from the Hamilton Sundstrand Property at the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed ten (10) cubic yards.

(1)     The Settling Defendant shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendant shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendant following the award of the contract for Remedial Action construction. The Settling Defendant shall provide the information required by Paragraph 15(a) as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

(a)     Before shipping any hazardous substances, pollutants, or contaminants from the Hamilton Sundstrand Property at the Site to an off-site location, Settling Defendant shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendant shall only send hazardous substances, pollutants, or contaminants from the Hamilton Sundstrand Property at the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

VII. REMEDY REVIEW

16.     Periodic Review. Settling Defendant shall conduct any studies and investigations related to the Hamilton Sundstrand Property at the Site as requested by EPA, or as requested by Settling Defendant and agreed upon by EPA, after reasonable opportunity for review and

comment by the Illinois EPA, in order to permit EPA to conduct reviews of whether the

Remedial Action is protective of human health and the environment at least every five (5) years

as required by Section 121( c) of CERCLA and any applicable regulations.

17.    <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that

the Remedial Action is not protective of human health and the environment, EPA may select

further response actions for the Site in accordance with the requirements of CERCLA and the

NCP, after a reasonable opportunity for review and comment by Illinois EPA.

18.    <u>Opportunity To Comment</u>.  Settling Defendant and, if required by Sections

113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on

any further response actions proposed by EPA as a result of the review conducted pursuant to

Section 121( c) of CERCLA and to submit written comments for the record during the comment

period.

19.    <u>Settling Defendant's Obligation To Perform Further Response Actions</u>.  If EPA,

after reasonable opportunity for review and comment by Illinois EPA, selects further response

actions related to the Hamilton Sundstrand Property at the Site, the Settling Defendant shall

undertake such  further response actions to the extent that the reopener conditions in

Paragraph 85 or Paragraph 86 (United States' reservations of liability based on unknown

conditions or new information) are satisfied.  Settling Defendant may invoke the procedures set

forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener

conditions of Paragraph 85 or Paragraph 86 of Section XXI (Covenants Not To Sue by Plaintiffs)

are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health

and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining

22

to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 68 (record review).

20.    <u>Submissions of Plans</u>.  If Settling Defendant is required to perform the further response actions pursuant to Paragraph 19, it shall submit a plan for such work to Illinois EPA for review and comment and to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendant) and shall implement the plan approved by EPA in accordance with the provisions of this Consent Decree.

VIII.  Q<small>UALITY</small> A<small>SSURANCE,</small> S<small>AMPLING,</small> <small>AND</small> D<small>ATA</small> A<small>NALYSIS</small>

21.    Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling Defendant shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling

23

Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure

that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for

quality assurance monitoring. Settling Defendant shall ensure that the laboratories it utilizes for

the analysis of samples taken pursuant to this Decree perform all analyses according to accepted

EPA methods. Accepted EPA methods consist of those methods which are documented in the

"Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab

Program Statement of Work for Organic Analysis," dated February 1988, and any amendments

made thereto during the course of the implementation of this Decree; however, upon approval by

EPA, after opportunity for review and comment by the State, the Settling Defendant may use

other analytical methods which are as stringent as or more stringent than the CLP- approved

methods. Settling Defendant shall ensure that all laboratories they use for analysis of samples

taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.

Settling Defendant shall only use laboratories that have a documented Quality System which

complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for

Environmental Data Collection and Environmental Technology Programs," (American National

Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2),"

(EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA

may consider laboratories accredited under the National Environmental Laboratory Accreditation

Conference (NELAC) as meeting the Quality System requirements. Settling Defendant shall

ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant

to this Decree will be conducted in accordance with the procedures set forth in the QAPP

approved by EPA.

     22.    Upon request, the Settling Defendant shall allow split or duplicate samples to be

taken by EPA and the State or their authorized representatives. Settling Defendant shall notify EPA and the State not less than twenty-eight (28) days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deem necessary. Upon request, EPA and the State shall allow the Settling Defendant to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendant's implementation of the Work.

23.      Settling Defendant shall submit to EPA and the State two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

24.      Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

IX. ACCESS AND INSTITUTIONAL CONTROLS

25.      If the Hamilton Sundstrand Property at the Site, or any other property where access and/or Institutional Controls are needed to implement this Consent Decree, is owned or controlled by the Settling Defendant, Settling Defendant shall:

a.      commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the Hamilton Sundstrand Property at the Site, or such other

25

property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

    (1)    Monitoring the Work;

    (2)    Verifying any data or information submitted to the United States or the State;

    (3)    Conducting investigations relating to contamination at or near the Hamilton Sundstrand Property at the Site;

    (4)    Obtaining samples;

    (5)    Assessing the need for, planning, or implementing additional response actions at or near the Hamilton Sundstrand Property at the Site;

    (6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

    (7)    Implementing the Work pursuant to the conditions set forth in Paragraph 89 of this Consent Decree;

    (8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or their agents, consistent with Section XXIV (Access to Information);

    (9)    Assessing Settling Defendant's compliance with this Consent Decree; and

    (10)  Determining whether the Hamilton Sundstrand Property at the Site or such other property is being used in a manner that is prohibited or restricted, or that may need

to be prohibited or restricted, by or pursuant to this Consent Decree;

        b.      commencing on the date of lodging of this Consent Decree, implement selected Institutional Controls at the Hamilton Sundstrand Property at the Site in accordance with the Institutional Control requirements set forth in this Section IX (Access and Institutional Controls) of this Consent Decree, refrain from using the Hamilton Sundstrand Property at the Site, or such other property in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to,

        i. the prohibition of extraction of groundwater at the Hamilton Sundstrand Property at the Site for any purpose other than to implement the Remedial Action and Operation and Maintenance pursuant to the ROD and this Consent Decree until Maximum Contaminant Levels are met throughout the plume;

        ii. the prohibition of digging, excavation, construction or other activity that could or would interfere with, or adversely affect, the integrity of any engineering control implemented as part of the Remedial Action at the Hamilton Sundstrand Property at the Site;

        iii. the prohibition of uses that are incompatible with soil cleanup standards;

        iv. at EPA's request, execute and record a Restrictive Covenant or other land use restrictions to assure continued protection of human health and the environment or the integrity of the remedial action; and

        v. any other Institutional Controls or restrictions set forth in the approved Institutional Control Implementation and Assurance Plan and/or O & M Work Plan.

c.      upon request of EPA, execute and record with the Recorder of Deeds of Winnebago County, State of Illinois, a Declaration of Environmental Easement and Restrictive Covenants, running with the land, that (i) consents to a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25(a) of this Consent Decree, and (ii) establishes the land/water use restrictions listed in Paragraph 25(b) of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Settling Defendant shall, upon request of EPA, submit to EPA for review and approval with respect to such property:

(1)      a draft Declaration of Environmental Easement and Restrictive Covenants, in substantially the form attached hereto as Appendix G, that is enforceable under the laws of the State of Illinois, and

(2)      a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

Within fifteen (15) days of EPA's approval and acceptance of the Declaration of Environmental Easement and Restrictive Covenants and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder of Deeds,

28

Winnebago County, State of Illinois. Within thirty (30) days of recording the Declaration of

Environmental Easement and Restrictive Covenants, Settling Defendant shall provide EPA with

a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified

copy of the original recorded Declaration of Environmental Easement and Restrictive Covenants

showing the clerk's recording stamps. Pursuant to Paragraph 9(b), in any instrument conveying

an interest in the property, Settling Defendant shall reserve the access rights and the rights to

enforce the Institutional Controls and restrictions to (i) Settling Defendant; (ii) the United States,

on behalf of EPA, and its representatives as a third party beneficiary, and (iii) the State and its

representatives as a third party beneficiary.

26.    If the Hamilton Sundstrand Property at the Site, or any other property where

access and/or Institutional Controls or restrictions are needed to implement this Consent Decree,

is owned or controlled by persons other than the Settling Defendant, Settling Defendant shall use

best efforts to secure from such persons:

a.    an agreement to provide access thereto for Settling Defendant, its agents

and contractors, as well as for the United States on behalf of EPA, and the State, as well as their

representatives (including contractors), for the purpose of conducting any activity related to this

Consent Decree including, but not limited to, those activities listed in Paragraph 25(a) of this

Consent Decree within thirty (30) days of the date such access is determined to be necessary;

b.    an agreement, enforceable by the Settling Defendant and the United States,

as third party beneficiary, to refrain from using the Hamilton Sundstrand Property at the Site, or

such other property, in any manner that would interfere with or, adversely affect the

implementation, integrity, or protectiveness of the remedial measures to be performed pursuant

29

to this Consent Decree. Such restrictions include, but are not limited to those listed in Paragraph

25(b)(i)-(iv), as applicable; and

      c.    the execution and recordation with the Recorder of Deeds of Winnebago

County, State of Illinois, of an easement, running with the land, that (i) grants a right of access

for the purpose of conducting any activity related to this Consent Decree including, but not

limited to, those activities listed in Paragraph 25(a) of this Consent Decree, and (ii) grants the

right to enforce the Institutional Controls or restrictions listed in Paragraph 25(b) of this Consent

Decree, or other restrictions that EPA determines are necessary to implement, ensure non-

interference with, or ensure the protectiveness of the remedial measures to be performed pursuant

to this Consent Decree. The access rights and/or rights to enforce Institutional Controls or

restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, as

a third party beneficiary; (ii) the State and its representatives, as a third party beneficiary; (iii) the

Settling Defendant and their representatives, and/or (iv) other appropriate grantees.

    27.    For purposes of Paragraphs 25 and 26 of this Consent Decree, "best efforts"

includes the payment of reasonable sums of money in consideration of access, access easements,

Institutional Controls or restrictions, restrictive easements, and/or an agreement to release or

subordinate a prior lien or encumbrance. If Settling Defendant is unable to obtain the access

agreements required under Paragraph 26, Settling Defendant shall promptly notify the United

States in writing, and shall include in that notification a summary of the steps (including

requests, offers and responses thereto) that Settling Defendant has taken in attempting to comply

with this Section. The United States may in its unreviewable discretion and as it deems

appropriate, assist Settling Defendant in obtaining such access. Settling Defendant shall

reimburse the United States in accordance with the procedures in Section XVI (Payments for

Response Costs), for all costs incurred by the United States in obtaining such access, including, but not limited to the cost of attorney time and the amount of monetary consideration paid.

28.    If EPA or the State determines that additional Institutional Controls or restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's and the State's efforts to secure such governmental controls.

29.    Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

30.    In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State two (2) copies of written quarterly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous quarter; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous quarter; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous quarter; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next quarter and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e)

include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous quarter and those to be undertaken in the next quarter. Settling Defendant shall submit these progress reports to EPA and the State by the tenth (10th) day of every quarter following the lodging of this Consent Decree until EPA notifies the Settling Defendant pursuant to Paragraph 51(b) of Section XIV (Certification of Completion). If requested by EPA or the State, Settling Defendant shall also provide briefings for EPA and the State to discuss the progress of the Work.

31.    The Settling Defendant shall notify EPA and Illinois EPA of any change in the schedule described in the quarterly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

32.    Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendant shall within twenty-four (24) hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting

required by CERCLA Section 103 or EPCRA Section 304.

33.    Within twenty (20) days of the onset of an event described in Paragraph 32, Settling Defendant shall furnish to Plaintiffs a written report, signed by the Settling Defendant's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within thirty (30) days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

34.    Settling Defendant shall submit to EPA two (2) copies of all plans, reports, and data required by the SOW, the Remedial Action Work Plan, or any other approved plans in accordance with the schedules set forth in such plans.  Settling Defendant shall simultaneously submit two (2) copies of all such plans, reports and data to the State.  Upon request by EPA or Illinois EPA, Settling Defendant shall submit in electronic form all portions of any report or other deliverable Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

35.    All reports and other documents submitted by Settling Defendant to EPA (other than the quarterly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

36.    After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the Illinois EPA, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; ( c) modify the submission to cure the deficiencies;

(d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above. However, EPA, after reasonable opportunity for review and comment by Illinois EPA, shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within sixty (60) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37.    In the event of approval, approval upon conditions, or modification by EPA, after reasonable opportunity for review and comment by Illinois EPA, pursuant to Paragraph 36(a), (b), or ( c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA, after reasonable opportunity for review and comment by Illinois EPA, subject only to its right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA, after reasonable opportunity for review and comment by Illinois EPA. In the event that EPA, after reasonable opportunity for review and comment by Illinois EPA, modifies the submission to cure the deficiencies pursuant to Paragraph 36( c) and the submission has a material defect, EPA and Illinois EPA retain their right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

38.    Resubmission of Plans.

a.    Upon receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendant shall, within thirty (30) days or such longer time as specified by EPA in such

notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the thirty (30) day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 39 and 40.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall proceed, at the direction of EPA, after reasonable opportunity for review and comment by Illinois EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

39.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, after reasonable opportunity for review and comment by Illinois EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance with the preceding Paragraphs. EPA, after reasonable opportunity for review and comment by Illinois EPA, also retains the right to modify or develop the plan, report or other item. Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XIX (Dispute Resolution).

40.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA, after reasonable opportunity for review and comment by Illinois EPA, due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in

35

Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX (Stipulated Penalties).

41.    All plans, reports, and other items required to be submitted to EPA and Illinois EPA under this Consent Decree shall, upon approval or modification by EPA, after reasonable opportunity for review and comment by Illinois EPA, be enforceable under this Consent Decree. In the event EPA, after reasonable opportunity for review and comment by Illinois EPA, approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

### XII. PROJECT COORDINATORS

42.    Within twenty (20) days of lodging this Consent Decree, Settling Defendant, the State and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendant's Project Coordinator shall be subject to disapproval by EPA, with a reasonable opportunity for review and comment by Illinois EPA, and shall have the technical

36

expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendant's Project Coordinator shall not be an attorney for the Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a representative for the Hamilton Sundstrand Property at the Site for the oversight of performance of daily operations during remedial activities.

43.    Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

44.    EPA's Project Coordinator and the Settling Defendant's Project Coordinator will meet, at a minimum, on a monthly basis unless the parties agree to an alternative schedule in writing.

XIII. PERFORMANCE GUARANTEE

45.    In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of

$7,900,000 (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

      a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

      b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

      c.    A trust fund established for the benefit of EPA that is administered by a trustee (i)that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

      d.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

      e.    A demonstration by Settling Defendant that Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

      f.    A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R.

§ 264.141(h)) with Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

46.     Settling Defendant has selected, and EPA has approved, as an initial Performance Guarantee a written corporate guarantee by United Technologies Corporation pursuant to Paragraph 45.f, in the form attached hereto as Appendix H. Within ten (10) days after entry of this Consent Decree, Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix H, and such Performance Guarantee(s) shall thereupon be fully effective. Within (30) thirty days of entry of this Consent Decree, Settling Defendant shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree, with a copy to Ms. Betty White, U.S. EPA, Region 5 Comptroller, 77 W. Jackson Blvd. (MF-10J), Chicago, Illinois 60604 and to the United States and EPA and the State as specified in Section XXVI.

47.     If at any time during the effective period of this Consent Decree, the Settling Defendant provides a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 45(e) or Paragraph 45(f) above, such Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required

39

financial reports and statements from the relevant entity's chief financial officer and independent

certified public accountant; (ii) the annual re-submission of such reports and statements within

ninety days after the close of each such entity's fiscal year; and (iii) the notification of EPA

within ninety days after the close of any fiscal year in which such entity no longer satisfies the

financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the

Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264,

Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to

refer to the Work required under this Consent Decree, and the terms "current closure cost

estimate," "current post-closure cost estimate," and "current plugging and abandonment cost

estimate" shall be deemed to refer to the Estimated Cost of the Work.

48.    In the event that EPA determines at any time that a Performance Guarantee

provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer

satisfies the requirements set forth in this Section, due to an increase in the estimated cost of

completing the Work or for any other reason, or in the event that Settling Defendant becomes

aware of information indicating that a Performance Guarantee provided pursuant to this Section

is inadequate or otherwise no longer satisfies the requirements set forth in this Section, due to an

increase in the estimated cost of completing the Work or for any other reason, Settling

Defendant, within thirty (30) days of receipt of notice of EPA's determination or, as the case may

be, within thirty days (30) of Settling Defendant becoming aware of such information, shall

obtain and present to EPA for approval a proposal for a revised or alternative form of

Performance Guarantee listed in Paragraph 45 of this Consent Decree that satisfies all

requirements set forth in this Section XIII (Performance Guarantee). In seeking approval for a

revised or alternative form of Performance Guarantee, Settling Defendant shall follow the

procedures set forth in Paragraph 50(b)(2) of this Consent Decree. Settling Defendant's inability

to post a Performance Guarantee for completion of the Work shall in no way excuse performance

of any other requirements of this Consent Decree, including, without limitation, the obligation of

Settling Defendant to complete the Work in strict accordance with the terms hereof.

49.    The commencement of any Work Takeover pursuant to Paragraph 89 of this

Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s)

provided pursuant to Paragraph 45(a), (b), (c), (d), or (f), and at such time EPA shall have

immediate access to resources guaranteed under any such Performance Guarantee(s), whether in

cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work

Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under

any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and

complete the Work assumed by EPA under the Work Takeover, or in the event that the

Performance Guarantee involves a demonstration of satisfaction of the financial test criteria

pursuant to Paragraph 45(e), Settling Defendant shall immediately upon written demand from

EPA deposit into an account specified by EPA, in immediately available funds and without

setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the

estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

50.    Modification of the Amount and/or Form of Performance Guarantee

a. Reduction of Amount of Performance Guarantee. If Settling Defendant

believes that the estimated cost to complete the remaining Work has diminished below the

amount set forth in Paragraph 45 above, Settling Defendant may, after one year after entry of this

Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a

41

reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed. Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a reduction of amount of Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 50(b)(2) of this Consent Decree. If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendant of such decision in writing. After receiving EPA's written acceptance, Settling Defendant may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Defendant may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 48 or 50(b) of this Consent Decree.

      b. <u>Change of Form of Performance Guarantee</u>

          (1) If, after entry of this Consent Decree, Settling Defendant desires to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Subparagraph 50(b)(2) of this Consent Decree. Any decision made by EPA on a petition submitted under this Subparagraph 50(b)(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be

subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this

Consent Decree or in any other forum.

(2)  Settling Defendant shall submit a written proposal for a revised or

alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the

estimated cost of the remaining Work to be performed, the basis upon which such cost was

calculated, and the proposed revised form of Performance Guarantee, including all proposed

instruments or other documents required in order to make the proposed Performance Guarantee

legally binding.  The proposed revised or alternative form of Performance Guarantee must satisfy

all requirements set forth or incorporated by reference in this Section.  Settling Defendant shall

submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional

Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of

this Consent Decree, with a copy to Ms. Betty White, U.S. EPA, Region 5 Comptroller, 77 W.

Jackson Blvd., MF-10J, Chicago, Illinois 60604.  EPA shall notify Settling Defendant in writing

of its decision to accept or reject a revised or alternative Performance Guarantee submitted

pursuant to this Subparagraph.  Within ten (10) days after receiving a written decision approving

the proposed revised or alternative Performance Guarantee, Settling Defendant shall execute

and/or otherwise finalize all instruments or other documents required in order to make the

selected Performance Guarantee(s) legally binding in a form substantially identical to the

documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall

thereupon be fully effective.  Settling Defendant shall submit all executed and/or otherwise

finalized instruments or other documents required in order to make the selected Performance

Guarantee(s) legally binding to the EPA Regional Financial Management Officer within thirty

(30) days of receiving a written decision approving the proposed revised or alternative

43

Performance Guarantee in accordance with Section XXVI (Notices and Submissions) of this

Consent Decree, with a copy to Ms. Betty White, U.S. EPA, Region 5 Acting Comptroller, 77 W.

Jackson Blvd., MF-10J, Chicago, Illinois 60604, and to the United States and EPA and the State

as specified in Section XXVI.

      c. <u>Release of Performance Guarantee.</u> If Settling Defendant receives written

notice from EPA in accordance with Paragraph 51(b) hereof that the Work has been fully and

finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so

notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or

discontinue the Performance Guarantee(s) provided pursuant to this Section.  Settling Defendant

shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this

Section except as provided in this Subparagraph.  In the event of a dispute, Settling Defendant

may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in

accordance with a final administrative or judicial decision resolving such dispute.

### XIV. CERTIFICATION OF COMPLETION

51.    <u>Completion of the Remedial Action.</u>

      a.    Within ninety (90) days after Settling Defendant concludes that the

Remedial Action has been fully performed and the Performance Standards have been attained,

Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by

Settling Defendant, EPA, and the State.  If, after the pre-certification inspection, the Settling

Defendant still believes that the Remedial Action has been fully performed and the Performance

Standards have been attained, it shall submit a written report requesting certification to EPA for

approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans and Other

Submissions) within thirty (30) days of the inspection. In the report, a registered professional

engineer and the Settling Defendant's Project Coordinator shall state that the Remedial Action

has been completed in full satisfaction of the requirements of this Consent Decree. The written

report shall include as-built drawings signed and stamped by a professional engineer. The report

shall contain the following statement, signed by a responsible corporate official of Settling

Defendant or the Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

If, after completion of the pre-certification inspection and receipt and review of the written

report, EPA, after reasonable opportunity to review and comment by the State, determines that

the Remedial Action or any portion thereof has not been completed in accordance with this

Consent Decree or that the Performance Standards have not been achieved, EPA will notify

Settling Defendant in writing of the activities that must be undertaken by Settling Defendant

pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance

Standards, provided, however, that EPA may only require Settling Defendant to perform such

activities pursuant to this Paragraph to the extent that such activities are consistent with the

"scope of the remedy selected in the ROD," as that term is defined in Paragraph 13(b). EPA will

set forth in the notice a schedule for performance of such activities consistent with the Consent

Decree and the SOW or require the Settling Defendant to submit a schedule to EPA for approval

pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant

shall perform all activities described in the notice in accordance with the specifications and

schedules established pursuant to this Paragraph, subject to its right to invoke the dispute

resolution procedures set forth in Section XIX (Dispute Resolution).

      b.     If EPA concludes, based on the initial or any subsequent report requesting

Certification of Completion and after a reasonable opportunity for review and comment by the

State, that the Remedial Action has been performed in accordance with this Consent Decree and

that the Performance Standards have been achieved, EPA will so certify in writing to Settling

Defendant. This certification shall constitute the Certification of Completion of the Remedial

Action for purposes of this Consent Decree, including, but not limited to, Section XXI

(Covenants Not to Sue by Plaintiffs). Certification of Completion of the Remedial Action shall

not affect Settling Defendant's obligations under this Consent Decree.

     52.   <u>Completion of the Work</u>.

      a.     Within ninety (90) days after Settling Defendant concludes that all phases

of the Work (including O & M), have been fully performed, Settling Defendant shall schedule

and conduct a pre-certification inspection to be attended by Settling Defendant, EPA and the

State. If, after the pre-certification inspection, the Settling Defendant still believes that the Work

has been fully performed, Settling Defendant shall submit a written report by a registered

professional engineer stating that the Work has been completed in full satisfaction of the

requirements of this Consent Decree. The report shall contain the following statement, signed by

a responsible corporate official of Settling Defendant or the Settling Defendant's Project

Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

46

If, after review of the written report, and after a reasonable opportunity to review and comment by the State, EPA determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13(b). EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendant and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendant in writing.

## XV. EMERGENCY RESPONSE

53.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Hamilton Sundstrand Property at the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 54,

immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Defendant shall notify the EPA Emergency Response Unit, Region 5. Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendant fails to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendant shall reimburse EPA and the State all costs of such response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

54. Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Hamilton Sundstrand Property at the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Hamilton Sundstrand Property at the Site, subject to Section XXI (Covenants Not to Sue by Plaintiffs).

## XVI. PAYMENTS FOR RESPONSE COSTS

55. Payments for Future Response Costs.

a. Settling Defendant shall pay to EPA all Future Response Costs not

48

inconsistent with the National Contingency Plan. On a periodic basis the United States will send

Settling Defendant a bill requiring payment that includes an Itemized Cost Summary (a Region 5

prepared summary which includes direct and indirect costs incurred by EPA, including costs of

its contractors), and a DOJ-prepared cost summary which reflects costs incurred by DOJ and its

contractors, if any.  Settling Defendant shall make all payments within thirty (30)  days of

Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in

Paragraph 56 according to the following procedures.

   (i) If the payment amount demanded in the bill is more than $10,000,

payment shall be made to EPA by Electronics Funds Transfer ("EFT") in accordance with current

EFT procedures.  EFT/Wire Transfer payments shall be directed to: Federal Reserve Bank of

New York, ABA #02103004, Account #68010727, SWIFT address - FRNYUS33, 33 Liberty

Street, New York, NY 10045 (Field Tag 4200 of the Fedwire message should read "D 68010727

Environmental Protection Agency").  Payment shall be accompanied by a statement identifying

the name and address of the party making payment, the SERGWCSS-Source Area 9/10, EPA

Region 5, the Site/Spill ID Number 05DK, and DOJ Case Number 90-11-3-945/3 and the Court

docket number for this action.

   (ii) If the payment amount demanded in the bill is $10,000 or less, the

Settling Defendant may in lieu of the procedures in Subparagraph 55(a)(i) make all payments

required by this Paragraph by a certified or cashier's check or checks made payable to "EPA

Hazardous Substance Superfund," referencing the name and address of the party making the

payment, EPA Site/Spill ID Number 05DK, DOJ Case Number 90-11-3-945/3 and the Court

docket number for this action.  Settling Defendant shall send the check(s) to:

U.S. EPA
Superfund Payments
Cincinnati Finance Center
P.O. Box 979076
St. Louis, MO 63197-9000

b.      At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

c.      The total amount to be paid by Setting Defendant pursuant to Subparagraph 55(a) shall be deposited in the SERGWCSS-Source Area 9/10 Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

d.      Settling Defendant shall reimburse the State for all State Future Response Costs not inconsistent with the National Contingency Plan.  On a periodic basis, the State will send Settling Defendant a bill or bills requiring payment that includes an itemized cost summary.  Settling Defendant shall make all payments within thirty (30) days of Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 56.

i. As to the Illinois EPA, Settling Defendants shall make all payments required by this Paragraph by check or checks made payable to "Illinois Environmental Protection Agency", for deposit into the "Hazardous Waste Fund." The Settling Defendant shall include the name and number of this case, along with the Illinois Site identification number and FEIN Numbers on all checks.  The check(s) shall be delivered to:

50

Illinois EPA
Fiscal Services Section, Accounts Receivable Unit
P.O. Box 19276
1021 North Grand Avenue East
Springfield, Illinois  62794-9276

ii. As to the Illinois Attorney General, Settling Defendant shall make all payments required by this Paragraph by certified check or money order.  The certified check or money order shall be made payable to the "Illinois Attorney General" designated for deposit in the "Attorney General State Projects and Court Ordered Distribution Fund (801 Fund)."  Settling Defendant shall include the name and number of this case, along with its FEIN Number, on the check.  Payment shall be sent to:

Office of the Illinois Attorney General
Chief, Environmental Bureau North
69 W. Washington St., Ste. 1800
Chicago, IL  60602

56.      Settling Defendant may contest payment of any Future Response Costs under Paragraph 55 if it determines that the United States or the State has made an accounting error or if it alleges that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within thirty (30) days of receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, the Settling Defendant shall within the thirty (30) day period pay all uncontested Future Response Costs to the United States or the State in the manner described in Paragraph 55.  Simultaneously, the Settling Defendant shall establish an interest-

bearing escrow account in a federally-insured bank duly chartered in the State of Illinois and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendant shall send to the United States, as provided in Section XXVI (Notices and Submissions), and the State a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendant shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States or the State prevails in the dispute, within five (5) days of the resolution of the dispute, the Settling Defendant shall pay the sums due (with accrued interest) to the United States or the State, if State costs are disputed, in the manner described in Paragraph 55. If the Settling Defendant prevails concerning any aspect of the contested costs, the Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which it did not prevail to the United States or the State, if State costs are disputed in the manner described in Paragraph 55; Settling Defendant shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendant's obligation to reimburse the United States and the State for their Future Response Costs.

57.    In the event that the payments required by Subparagraph 55(a) are not made within thirty (30) days of the Settling Defendant's receipt of the bill, Settling Defendant shall pay Interest on the unpaid balance. The Interest to be paid on Future Response Costs and State

Future Response Costs under this Paragraph shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 78. The Settling Defendant shall make all payments required by this Paragraph in the manner described in Paragraph 55.

XVII. INDEMNIFICATION AND INSURANCE

58.     Settling Defendant's Indemnification of the United States and the State.

        a.     The United States and the State do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Defendant shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendant agrees to pay the United States and the State all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of

53

Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendant nor any such contractor shall be considered an agent of the United States or the State.

b.    The United States and the State shall give Settling Defendant notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 58, and shall consult with Settling Defendant prior to settling such claim.

59.    Settling Defendant waives all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Hamilton Sundstrand Property at the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Hamilton Sundstrand Property at the Site, including, but not limited to, claims on account of construction delays.

60.    No later than fifteen (15) days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 51(b) of Section XIV

(Certification of Completion) comprehensive general liability insurance with limits of 3 million

dollars, combined single limit, and automobile liability insurance with limits of 1 million dollars,

combined single limit, naming the United States and the State as additional insureds. In addition,

for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its

contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision

of worker's compensation insurance for all persons performing the Work on behalf of Settling

Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this

Consent Decree, Settling Defendant shall provide to EPA and the State certificates of such

insurance and a copy of each insurance policy. Settling Defendant shall resubmit such

certificates and copies of policies each year on the anniversary of the Effective Date. If Settling

Defendant demonstrates by evidence satisfactory to EPA and the State that any contractor or

subcontractor maintains insurance equivalent to that described above, or insurance covering the

same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling

Defendant need provide only that portion of the insurance described above which is not

maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

61.    "Force majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of the Settling Defendant, of any entity controlled by

Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance

of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the

obligation. The requirement that the Settling Defendant exercise "best efforts to fulfill the

obligation" includes using best efforts to anticipate any potential force majeure event and best

efforts to address the effects of any potential force majeure event (1) as it is occurring and (2)

following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

62.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within seventy-two (72) hours of when Settling Defendant first knew that the event might cause a delay. Within three (3) days thereafter, Settling Defendant shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

63.    If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendant in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

64.    If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than fifteen (15) days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 61 and 62, above, or in the case of Future Response Costs or State Future Response Costs, Paragraph 56. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree

identified to EPA and the Court.

XIX.  DISPUTE RESOLUTION

65.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  However, the procedures set forth in this Section

shall not apply to actions by the United States to enforce obligations of the Settling Defendant

that have not been disputed in accordance with this Section.

66.     Any dispute which arises under or with respect to this Consent Decree shall in the

first instance be the subject of either: (i) informal negotiations without mediation (unless

otherwise provided for in Paragraph 70(a)), pursuant to Paragraph 67(a), or (ii) mediation with

the opportunity for informal discussions to reduce or eliminate the number of disputes or issues

to be mediated, pursuant to Paragraph 70, between the Parties to the dispute.  The dispute shall

be considered to have arisen when one Party sends the other Parties a written Notice of Dispute.

67.     Statements of Position.

a.     The period for informal negotiations shall not exceed twenty (20) days

from the time the dispute arises, unless it is modified by written agreement of the Parties to the

dispute.  In the event that the Parties cannot resolve a dispute by informal negotiations under this

Paragraph, then the position advanced by EPA shall be considered binding unless, within five (5)

days after the conclusion of the informal negotiation period, Settling Defendant invokes the

formal dispute resolution procedures of this Section.  If Settling Defendant elects formal dispute

resolution, Settling Defendant shall serve on the United States and the State a written Statement

of Position on the matter in dispute, including, but not limited to, any factual data, analysis or

opinion supporting that position and any supporting documentation relied upon by the Settling

Defendant. The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 68 or Paragraph 69.

b.    If Settling Defendant elects formal dispute resolution, within fifteen (15) days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 68 or 69. Within three (3) days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

c.    If there is disagreement between EPA and the Settling Defendant as to whether formal dispute resolution should proceed under Paragraph 68 or 69, the Parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 68 and 69.

68.    Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record of the dispute under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by

Settling Defendant regarding the validity of the ROD's provisions.

      a.      An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position provided for under Paragraph 67 and this Paragraph 68(a), including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental Statements of Position by the Parties to the dispute.

      b.      The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 68(a). This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraphs 68(c) and (d).

      c.      Any administrative decision made by EPA pursuant to Paragraph 68(b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the Court and served on all Parties within ten (10) days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

      d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 68(a).

      69.      Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record

under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 67, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendant unless, within ten (10) days of receipt of the decision, the Settling Defendant files with the Court and serves on the Parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b.    Notwithstanding Paragraph L of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

70.    <u>Mediation.</u>

a.    The Settling Defendant shall make the request to mediate, in lieu of the informal negotiations procedures of Paragraph 67(a), in writing to EPA and Illinois EPA at the time it submits the Notice of Dispute under Paragraph 66. The Settling Defendant may also request mediation in writing to EPA and Illinois EPA during the course of informal dispute resolution under Paragraph 67(a). Within five (5) days of EPA's receipt of the Settling Defendant's request for mediation, EPA, after reasonable opportunity for review and comment by Illinois EPA, will notify the Settling Defendant of whether EPA agrees to utilize mediation. EPA's decision(s) regarding participation in mediation is not subject to dispute resolution or judicial review and shall not constitute a final agency action giving rise to judicial review. If

61

EPA agrees with the Settling Defendant's request for use of mediation, the Settling Defendant, EPA and Illinois EPA will follow the procedures outlined below. If EPA disagrees with Settling Defendant's request for mediation, then the Parties shall engage in or continue informal negotiations and the procedures of Paragraph 67 shall apply (except that the period for informal negotiations shall not exceed twenty (20) days from the date the Notice of Dispute is submitted, plus the number of days from Settling Defendant's request for mediation to the date that Settling Defendant receives written notice of EPA's disagreement with Settling Defendant's request for mediation, unless it is modified by written agreement of the Parties to the dispute). Mediation shall be non-binding on EPA, the Illinois EPA, and the Settling Defendant, unless a mutual agreement is reached and is memorialized in writing.

      (1)      The Settling Defendant shall pay for all the costs of the mediator.

      (2)      EPA, Illinois EPA and the Settling Defendant agree to select mediator(s) in accordance with the following procedures:

      (a)      Within thirty (30) days of the lodging of this Consent Decree, the Parties shall reach agreement in writing on three (3) mutually acceptable mediators (the "Initial Mediator List"). EPA (with consultation with Illinois EPA) shall select a mediator from the Initial Mediator List within three (3) days of receipt of the Settling Defendant's request for the use of mediation.

      (b)      In the event that no mediator from the Initial Mediator List is available to act as a mediator with respect to a given dispute, a mediator shall be selected as follows:

      (i)      EPA shall forward to the Settling Defendants a list of mediators (the "Mediator Selection List"), as may be otherwise available to EPA or agreed to

in writing by the Parties.

        (ii)      Within five (5) days of Settling Defendant's receipt of the Mediator Selection List, EPA, Illinois EPA and the Settling Defendant shall provide to each other in writing the names of three (3) persons from the Mediator Selection List proposed to serve as mediators for the matter in dispute.  Neither the Settling Defendant, EPA, nor Illinois EPA may propose any mediators with whom they have any past, present or planned future business relationships, other than for mediation activities.  All persons nominated shall be provided, by the nominating Party, with a copy of this Consent Decree.

        (iii)     Within two (2) days of the receipt of the list of proposed mediators, EPA, after reasonable opportunity for review and comment by Illinois EPA, shall advise the Settling Defendant in writing of any or all acceptable mediators from the lists of mediators.  Settling Defendant shall enter into a contract for mediation services with the mediator it selects from EPA's list of acceptable mediators within five (5) days.

        (3)     The time period for mediation shall not exceed fourteen (14) days from the date the contract with the mediator is entered, unless it is modified by written agreement of the Parties to the dispute.

        (4)     The mediation shall be conducted pursuant to the applicable ADR provisions of the Local Rules (LR83.5) of this Court.   The contract for mediation services shall be consistent with the U.S. Department of Justice, ENRD, Model ADR Agreement, except as otherwise provided in this Section.

        (5)     If the selected mediator fails to comply with the confidentiality requirements of the contract for mediation services and N.D. Ill. LR 83.5, his/her contract will be terminated and another mediator will be selected.  If any Party fails to comply with the

confidentiality requirements of N.D. Ill. LR 83.5, then such Party may be subject to sanctions as determined by the Court upon application by another Party.

(6)    Any agreement reached by the Parties to the dispute regarding the matter in dispute pursuant to this Paragraph 70 shall be in writing and shall be signed by the Parties. Upon signature by the Parties, and upon approval by the Court if required by Section XXXI (Modification), the agreement shall be incorporated into and become enforceable under this Consent Decree. If the Parties do not reach agreement through mediation, then the Settling Defendant shall have five (5) days to elect to proceed under formal dispute resolution procedures of Paragraph 67 after written notice from EPA or Illinois EPA of an impasse. In any such formal dispute resolution, EPA shall issue a final decision pursuant to Paragraphs 68(b) and 69(a), and the procedures of Paragraphs 68 and 69 shall govern review of such decision by the Court.

71.    The invocation of informal or formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 80. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

72.    Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States and the State for failure to comply with the

requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). Stipulated penalties shall be paid as follows: 50% of the total to the United States and 50% of the total to the State. "Compliance" by Settling Defendant shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73.    Stipulated Penalty Amounts - Work.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 73(b):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $1,500 | 15th through 30th day |
| $2,500 | 31st day and beyond |

b.    Compliance Milestones.

(1)    Identification of Project Coordinator;

(2)    Filing of Notices or Institutional Controls with Winnebago County (IL) Recorder of Deeds, pursuant to Paragraphs 9, 25-29;

(3)    Notification to EPA of proposed Supervising Contractor;

(4)    Submission of RA Work Plan and deliverables required under the approved RA Work Plan;

(5)    Pre-Construction Inspection of RA Contract(s) and meeting;

(6)    Initiation of Construction of RA;

65

(7)    Completion of Construction;

(8)    Pre-final Inspection;

(9)    Pre-Certification of Completion of RA Inspection;

(10)   Pre-Certification of Completion of the Work Inspection;

(11)   Establishment of financial assurance as required by Paragraphs 45 and 46;

(12)   Procurement or proof of insurance;

(13)   Submittal and, if necessary, modification of any Work Plan(s) for further response actions and additional Work pursuant to Sections VI, VII, VIII, or IX, hereof;

(14)   Implementation of further response actions and additional Work pursuant to Sections VI, VII, VIII, or IX, hereof;

(15)   Payment of all monies required to be paid pursuant to Section XVI.

74.    <u>Stipulated Penalty Amounts - Reports.</u>

a.    The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Section X (Reporting Requirements) and the SOW:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

75.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 89 of Section XXI (Covenants Not to Sue by Plaintiffs), Settling Defendant shall be liable for a stipulated penalty in the amount of $5 million dollars.

76.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the

correction of the noncompliance or completion of the activity. However, stipulated penalties

shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of

Plans and Other Submissions), during the period, if any, beginning on the thirty-first (31st) day

after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any

deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA

Region 5, under Paragraph 69(b) or 70(a) of Section XIX (Dispute Resolution), during the

period, if any, beginning on the twenty-first (21st) day after the date that Settling Defendant's

reply to EPA's Statement of Position is received until the date that the Director issues a final

decision regarding such dispute; or (3) with respect to judicial review by this Court of any

dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the

thirty-first (31st) day after the Court's receipt of the final submission regarding the dispute until

the date that the Court issues a final decision regarding such dispute. Nothing herein shall

prevent the simultaneous accrual of separate penalties for separate violations of this Consent

Decree.

     77.    Following EPA's determination that Settling Defendant has failed to comply with

a requirement of this Consent Decree, EPA may give Settling Defendant written notification of

the same and describe the noncompliance. EPA and the State may send the Settling Defendant a

written demand for the payment of the penalties. However, penalties shall accrue as provided in

the preceding Paragraph regardless of whether EPA has notified the Settling Defendant of a

violation.

     78.    All penalties accruing under this Section shall be due and payable to the United

States and the State within thirty (30) days of the Settling Defendant's receipt from EPA of a

demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution

procedures under Section XIX (Dispute Resolution).  All payments to the United States under

this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous

Substances Superfund," shall be mailed to U.S. EPA, Fines and Penalties, Cincinnati Finance

Center, P.O. Box 979077, St. Louis, MO 63197-9000, shall indicate that the payment is for

stipulated penalties, and shall reference the EPA Region and Site/Spill ID #05DK , the DOJ Case

Number 90-11-3-945, and the name and address of the party making payment.  Copies of

check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to

the United States as provided in Section XXVI (Notices and Submissions), and to Superfund

Division Director, U.S. EPA, Region 5, 77 W. Jackson Blvd., mail code S-6J, Chicago, IL

60604.  All payments to the State under this Section shall be paid by check or checks made

payable to "Illinois Environmental Protection Agency", for deposit into the "Hazardous Waste

Fund."  The Settling Defendant shall include the name and number of this case, along with the

Illinois Site identification number and FEIN Numbers on all checks and shall indicate that the

payment is for stipulated penalties.  The check(s) shall be delivered to:

> Illinois EPA
> Fiscal Services Section, Accounts Receivable Unit
> P.O. Box 19276
> 1021 North Grand Avenue East
> Springfield, Illinois  62794-9276

79.     The payment of penalties shall not alter in any way Settling Defendant's obligation

to complete the performance of the Work required under this Consent Decree.

80.     Penalties shall continue to accrue as provided in Paragraph 76 during any dispute

resolution period, but need not be paid until the following:

     a.     If the dispute is resolved by agreement or by a decision of EPA that is not

appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and the State within fifteen (15) days of the agreement or the receipt of EPA's decision or order;

        b.    If the dispute is appealed to this Court and the United States and the State prevail in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA and the State within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

        c.    If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States or the State into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the State or to Settling Defendant to the extent that it prevails.

    81.    If Settling Defendant fails to pay stipulated penalties when due, the United States or the State may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 78.

    82.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties

pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is

provided herein, except in the case of a willful violation of the Consent Decree.

83.    Notwithstanding any other provision of this Section, the United States may, in its

unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to

this Consent Decree.

### XXI. COVENANTS NOT TO SUE BY PLAINTIFFS

84.    In consideration of the actions that will be performed and the payments that will

be made by the Settling Defendant under the terms of the Consent Decree, and except as

specifically provided in Paragraphs 85, 86, and 88 of this Section, the United States and the State

covenant not to sue or to take administrative action against Settling Defendant pursuant to

Sections 106 and 107(a) of CERCLA relating to the Hamilton Sundstrand Property at the Site.

Except with respect to future liability, these covenants not to sue shall take effect upon the

receipt by EPA and the State of the payments required by Paragraph 55(a) of Section XVI

(Payments for Response Costs). With respect to future liability, these covenants not to sue shall

take effect upon Certification of Completion of Remedial Action by EPA pursuant to

Paragraph 51(b) of Section XIV (Certification of Completion). These covenants not to sue are

conditioned upon the satisfactory performance by Settling Defendant of its obligations under this

Consent Decree. These covenants not to sue extend only to the Settling Defendant and do not

extend to any other person.

85.    United States' and the State of Illinois' Pre-certification Reservations.

Notwithstanding any other provision of this Consent Decree, the United States and the State

reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this

action or in a new action, or to issue an administrative order seeking to compel Settling Defendant

      a.    to perform further response actions relating to the Hamilton Sundstrand Property at the Site, or

      b.    to reimburse the United States and the State for additional costs of response if, prior to Certification of Completion of the Remedial Action:

         (1)   conditions at the Hamilton Sundstrand Property at the Site, previously unknown to EPA or Illinois EPA, are discovered, or

         (2)   information, previously unknown to EPA or Illinois EPA, is received, in whole or in part,

and EPA determines, after a reasonable opportunity for review and comment by the State, that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

    86.   <u>United States' and State of Illinois' Post-certification Reservations.</u> Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant

      a.    to perform further response actions relating to the Hamilton Sundstrand Property at the Site, or

      b.    to reimburse the United States and the State for additional costs of

response if, subsequent to Certification of Completion of the Remedial Action:

> (1)    conditions at the Hamilton Sundstrand Property at the Site, previously unknown to EPA or the Illinois EPA, are discovered, or

> (2)    information, previously unknown to EPA or the Illinois EPA, is received, in whole or in part,

and EPA determines, after a reasonable opportunity for review and comment by the State, that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

87.    For purposes of Paragraph 85, the information and the conditions known to EPA and the State shall include only that information and those conditions known to EPA and the State as of the date of the ROD and set forth in the Record of Decision for the Site, the administrative record supporting the Record of Decision, and the post-ROD administrative record for the Site.  For purposes of Paragraph 86, the information and the conditions known to EPA and the State shall include only that information and those conditions known to EPA and the State as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

88.    General reservations of rights.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiffs' covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against

Settling Defendant with respect to:

      a.    claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

      b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material, including Waste Material in leachate as described in the ROD, outside of the Hamilton Sundstrand Property at the Site;

      c.    liability based upon the Settling Defendant's ownership or operation of the Hamilton Sundstrand Property at the Site, or upon the Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Hamilton Sundstrand Property at the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendant;

      d.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      e.    criminal liability;

      f.    liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

      g.    liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work Plans);

h.    liability for costs incurred or to be incurred by the Agency for Toxic

Substances and Disease Registry related to the Site.

89.    <u>Work Takeover</u>

a.    In the event EPA determines, after reasonable opportunity for review and

comment by Illinois EPA, that Settling Defendant has (i) ceased implementation of any portion

of the Work, or (ii) is seriously or repeatedly deficient or late in their performance of the Work,

or (iii) is implementing the Work in a manner which may cause an endangerment to human

health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the

Settling Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon

which such notice was issued and will provide Settling Defendant a period of ten (10) days (or

longer, if determined by EPA, after reasonable opportunity for review and comment by Illinois

EPA, to be appropriate under the circumstances) within which to remedy the circumstances

giving rise to EPA's issuance of such notice.

b.    If, after expiration of the ten (10) day notice period specified in Paragraph

89(a), Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to

EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume

the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover").

EPA shall notify Settling Defendant in writing (which writing may be electronic) if EPA

determines, after reasonable opportunity for review and comment by the State, that

implementation of a Work Takeover is warranted under this Paragraph 89(b).

c.    Settling Defendant may invoke the procedures set forth in Section XIX

(Dispute Resolution), Paragraph 65, to dispute EPA's implementation of a Work Takeover under

74

Paragraph 89(b). However, notwithstanding Settling Defendant's invocation of such dispute

resolution procedures, and during the pendency of any such dispute, EPA may in its sole

discretion commence and continue a Work Takeover under Paragraph 89 until the earlier of (i)

the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to

EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is

rendered in accordance with Section XIX (Dispute Resolution), Paragraph 69, requiring EPA to

terminate such Work Takeover.

      d.    After commencement and for the duration of any Work Takeover, EPA

shall have immediate access to and benefit of any Performance Guarantee(s) provided pursuant

to Section XIII of this Consent Decree, in accordance with the provisions of Paragraph 45 of that

Section. If and to the extent that EPA is unable to secure the resources guaranteed under any

such Performance Guarantee(s) and the Settling Defendant fails to remit a cash amount up to but

not exceeding the estimated cost of the remaining Work to be performed, all in accordance with

the provisions of Paragraph 45, any unreimbursed costs incurred by EPA in performing Work

under the Work Takeover shall be considered Future Response Costs that Settling Defendant

shall pay pursuant to Section XVI (Payment for Response Costs).

      90.    Notwithstanding any other provision of this Consent Decree, the United States

and the State retain all authority and reserve all rights to take any and all response actions

authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANT

      91.    <u>Covenant Not to Sue</u>. Subject to the reservations in Paragraph 92, Settling

Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action

against the United States or the State with respect to the Hamilton Sundstrand Property at the Site, and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

      a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

      b.     any claims against the United States or the State, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Hamilton Sundstrand Property at the Site, or

      c.     any claims arising out of response actions at or in connection with the Hamilton Sundstrand Property at the Site, including any claim under the United States Constitution, the Illinois Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 94 (Waiver of Claims Against De Micromis Parties), and Paragraph 99 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States or the State brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 85, 86, 88 (b) - (d) or 88 (g) - (h), but only to the extent that Settling Defendant's claim arises from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

92.     The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death

caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

93.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

94.    Settling Defendant agrees not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Hamilton Sundstrand Property at the Site, including for contribution, against any person where the person's liability to Settling Defendant with respect to the said property at the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the said property at the Site, or having accepted for transport for disposal or treatment of hazardous substances at said property at the Site, if:

a.    the materials contributed by such person to the Hamilton Sundstrand Property at the Site containing hazardous substances did not exceed the greater of (i) 0.002% of

the total volume of waste at said property at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

b.    This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to said property at the Site by such person contributed or could contribute significantly to the costs of response at said property at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to said property at the Site against such Settling Defendant.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

95.    Except as provided in Paragraph 94 (Waiver of Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 94 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Hamilton Sundstrand Property at the Site against any person not a Party hereto.

96.    The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed

in this Consent Decree. For purposes of the preceding sentence, the "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States or the State or any other person with respect to the Hamilton Sundstrand Property at the Site. Matters addressed in this Consent Decree do not include those response costs or response actions as to which the United States or the State has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States or the State asserts rights against Settling Defendant coming within the scope of such reservations.

97.    The Settling Defendant agrees that with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree it will notify the United States and the State in writing no later than sixty (60) days prior to the initiation of such suit or claim.

98.    The Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree it will notify in writing the United States and the State within ten (10) days of service of the complaint on it. In addition, Settling Defendant shall notify the United States and the State within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

99.    In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Hamilton Sundstrand Property at the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata,

collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention

that the claims raised by the United States or the State in the subsequent proceeding were or

should have been brought in the instant case; provided, however, that nothing in this Paragraph

affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to

Sue by Plaintiffs).

## XXIV. ACCESS TO INFORMATION

100.    Settling Defendant shall provide to EPA and the State, upon request, copies of all

documents and information within its possession or control or that of its contractors or agents

relating to activities at the Site or to the implementation of this Consent Decree, including, but

not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts,

reports, sample traffic routing, correspondence, or other documents or information related to the

Work. Settling Defendant shall also make available to EPA and the State, for purposes of

investigation, information gathering, or testimony, its employees, agents, or representatives with

knowledge of relevant facts concerning the performance of the Work.

101.    <u>Business Confidential and Privileged Documents.</u>

a.      Settling Defendant may assert business confidentiality claims covering

part or all of the documents or information submitted to Plaintiffs under this Consent Decree to

the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C.

§ 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential

by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of

confidentiality accompanies documents or information when they are submitted to EPA and the

State, or if EPA has notified Settling Defendant that the documents or information are not

confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

b.    Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendant. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

102.    No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

103.    Until ten (10) years after the Settling Defendant's receipt of EPA's notification pursuant to Paragraph 52(b) of Section XIV (Certification of Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its

possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendant as owner or operator of the Hamilton Sundstrand Property at the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

104.    At the conclusion of this document retention period, Settling Defendant shall notify the United States and the State at least ninety (90) days prior to the destruction of any such records or documents, and, upon request by the United States or the State, Settling Defendant shall deliver any such records or documents to EPA or the State. Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendant. However, no documents, reports or other information

created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

105.    Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. NOTICES AND SUBMISSIONS

106.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and Settling Defendant, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-3-945

and

Director, Superfund Division, Mail Code: S-6J
U.S. EPA, Region 5
77 W Jackson Blvd.
Chicago, IL 60604-3590

As to EPA:

Shari Kolak
EPA Project Coordinator, Mail Code SR-6J
U.S. EPA Region 5
77 W Jackson Blvd.
Chicago, IL  60604-3590

As to EPA's  Regional Financial Management Officer:

Ms. Betty White
Comptroller's Office, Mail Code: MF-10J
U.S. EPA Region 5
77 W Jackson Blvd.
Chicago, IL 60604-3590

As to the State:

Thomas Williams
State Project Coordinator
Illinois Environmental Protection Agency
Remedial Project Management Section
NPL Unit-Bureau of Land
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

As to the Settling Defendant:

Scott R. Moyer, P.G.
Manager, Remediation
United Technologies Corporation
10501 Ray Drive
Roscoe, Illinois 61073

and

Victoria M. Haines
Hamilton Sundstrand Corporation
4747 Harrison Ave.

84

P.O. Box 7002
Rockford, IL 61125-7002

## XXVII. EFFECTIVE DATE

107.   The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. RETENTION OF JURISDICTION

108.   This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

109.   The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the 100% RD.

"Appendix C" is the SOW.

"Appendix D" is the description and/or map of SERGWCSS and the Hamilton Sundstrand Property.

"Appendix E" is the Notice/Declaration of Environmental Easement and Restrictive Covenants Form.

"Appendix F" is the Deed w/ Declaration of Environmental Easement and Declaration of Restrictive Covenants.

"Appendix G" is the Declaration of Environmental Easement and Restrictive Covenants.

"Appendix H" is the form of Corporate Guarantee

85

### XXX. COMMUNITY RELATIONS

110.    Settling Defendant shall propose to EPA and the State its participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendant under the Plan.  Settling Defendant shall also cooperate with EPA and the State in providing information regarding the Work to the public.  As requested by EPA or the State, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or the State to explain activities at or relating to the Hamilton Sundstrand Property at the Site.

### XXXI. MODIFICATION

111.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant.  All such modifications shall be made in writing.

112.    Except as provided in Paragraph 13 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on

86

the proposed modification, and the Settling Defendant.

113.    Nothing in this Decree shall be deemed to alter the Court's power to enforce,

supervise or approve modifications to this Consent Decree.

## XXXII. Lodging and Opportunity for Public Comment

114.    This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of

CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to

withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

Settling Defendant consents to the entry of this Consent Decree without further notice.

115.    If for any reason the Court should decline to approve this Consent Decree in the

form presented, this agreement is voidable at the sole discretion of any Party and the terms of the

agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. Signatories/Service

116.    Each undersigned representative of the Settling Defendant to this Consent Decree,

the Attorney General for the State of Illinois and the Assistant Attorney General for the

Environment and Natural Resources Division of the U.S. Department of Justice certifies that he

or she is fully authorized to enter into the terms and conditions of this Consent Decree and to

execute and legally bind such Party to this document.

117.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by

this Court or to challenge any provision of this Consent Decree unless the United States has

notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

118. Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV. FINAL JUDGMENT

119. This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

120. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State and the Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 2008.

_____

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Hamilton Sundstrand Corporation, relating to the Southeast Rockford Groundwater Contamination Superfund Site (Source Area 9/10).


FOR THE UNITED STATES OF AMERICA

6/26/08
Date

W. BENJAMIN FISHEROW
Deputy Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530


6/27/08
Date

FRANCIS J. BIROS
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611


7/1/08
Date

MONICA MALLORY
Assistant United States Attorney
Northern District of Illinois
U.S. Department of Justice
308 W. State Street
Rockford, Illinois


89

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Hamilton Sundstrand Corporation, relating to the Southeast Rockford Groundwater Contamination Superfund Site (Source Area 9/10).

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

6-23-08
_____
Date

Richard C. Karl, Director
Superfund Division, Region 5
U.S. Environmental Protection Agency
77 W. Jackson Blvd., (mail code: S-6J)
Chicago, IL 60604

6-13-2008
_____
Date

Tom Turner
Associate Regional Counsel (Mail Code: C-14J)
U.S. Environmental Protection Agency
Region 5   77 W. Jackson Blvd.,
Chicago, IL 60604

90

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Hamilton Sundstrand Corporation, relating to the Southeast Rockford Groundwater Contamination Superfund Site (Source Area 9/10).

**STATE OF ILLINOIS**

LISA MADIGAN
Attorney General of the
State of Illinois

Matthew J. Dunn, Chief
Environmental Enforcement/
Asbestos Litigation Section

6/9/08
Date

By: _____
RoseMarie Cazeau, Chief
Environmental Bureau


**ILLINOIS ENVIRONMENTAL PROTECTION AGENCY**

6/3/08
Date

By: _____
Robert A. Messina
Chief Legal Counsel

91

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Hamilton Sundstrand Corporation, relating to the Southeast Rockford Groundwater Contamination Superfund Site (Source Area 9/10).

**FOR HAMILTON SUNDSTRAND CORPORATION**

Signature: _____

06/06/08

Date

Name (print): Clinton L. Gardiner

Title: Vice President & General Counsel

Address: One Hamilton Road, MS 1-2-BC21
          Windsor Locks, CT  06096

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Earl Phillip

Title: Partner

Address: Robinson & Cole
          280 Trumbull Street
          Hartford, CT  06103

Ph. Number:        860-275-8220