UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| ) | |
| ST. MARYS CEMENT INC. (U.S.) and ) | |
| ST. BARBARA CEMENT INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

CONSENT DECREE

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     APPLICABILITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     CIVIL PENALTY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.      COMPLIANCE REQUIREMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      NOx Control Technology and Emission Rates. . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      Retirement Of and Election Regarding Kiln 4.  . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      Continuous Emissions Monitoring System (CEMS).  . . . . . . . . . . . . . . . . . . . 14

VI.     PROHIBITION ON NETTING CREDITS OR OFFSETS FROM REQUIRED
        CONTROLS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII.    APPROVAL OF DELIVERABLES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VIII.   PERMITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IX.     REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

X.      STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XI.     FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XII.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XIII.   INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . . . . . 31

XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . . . . 33

XV.     COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XVI.    NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XVII.   EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

i

XVIII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XIX.  MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

XX.   TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

XXI.  PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XXII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XXIII. INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

WHEREAS, Plaintiff, the United States of America ("Plaintiff" or "the United States"), on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint against the Defendants St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc. ("Defendants"), seeking civil penalties and injunctive relief alleging violations of the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. §§ 7470-7492, and the federally approved and enforceable Illinois State Implementation Plan ("Illinois SIP") at a Portland cement plant located in or near Dixon, Illinois;

WHEREAS, pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), by notice dated May 12, 2005, EPA issued (with a copy to the State of Illinois) a Notice of Violation and Finding of Violation ("NOV") and St. Marys Cement Inc. (U.S.) stipulates that the NOV provided it with notice of the violations set forth therein and waives any objection to the adequacy of notice provided by the NOV;

WHEREAS, pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), by notice dated July 3, 2008 (with mailing on July 7, 2008), EPA issued Defendants (with a copy to the State of Illinois) a Notice of Violation, thereby providing notice to Defendants and the State of Illinois of EPA's findings of Defendants' alleged violations of the CAA and the Illinois SIP;

WHEREAS, the United States has provided notice of the commencement of this action to the appropriate State air pollution control agency, in accordance with Section 113(b) of the CAA, 42 U.S.C. § 7413(b);

WHEREAS, the Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the United States and the Defendants have agreed that settlement of this action is in the best interest of the Parties and in the public interest, have agreed on the

1

appropriateness of various measures intended to resolve the alleged violations and have further

agreed that entry of this Consent Decree without further litigation is the most appropriate means

of resolving this matter; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds,

that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation

between the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or

admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue),

below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND

DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction of the subject matter herein pursuant to 28 U.S.C. §§

1331, 1345 and 1355 and pursuant to Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b)

and 7477 and over the Parties to this action.  Venue is proper under Section 113(b) of the Act, 42

U.S.C. § 7413(b), and under 28 U.S.C. § 1391(b) and (c) because the violations alleged in the

Complaint are alleged to have occurred in, and Defendants conduct business in, this judicial

district.

2.      For purposes of this Consent Decree, the Defendants agree that the Complaint

states claims upon which relief may be granted pursuant to the CAA, and the Defendants waive

all objections and defenses that they may have to the jurisdiction of the Court or to venue.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United

States and upon the Defendants and any successors, assigns, or other entities or persons

2

otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendants of their obligation to ensure that the terms of the Decree are implemented, unless (1) the transferee agrees to undertake the obligations required by Sections V (Compliance Requirements), VI (Prohibition on Netting Credits or Offsets From Required Controls), VII (Approval of Deliverables), VIII (Permits), IX (Reporting Requirements), X (Stipulated Penalties), XI (Force Majeure), XII (Dispute Resolution), and XIII (Information Collection and Retention) of this Decree and to be substituted for the Defendants as a Party under the Decree and be thus bound by the terms thereof, and (2) the United States consents to relieve Defendants of their obligations. At least 30 Days prior to such transfer, the Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Department of Justice, in accordance with Section XVI (Notices) of this Consent Decree. Any attempt to transfer ownership or operation of a Facility, or any portion thereof, without complying with this Paragraph constitutes a violation of this Decree.

5.      The Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents of the Defendants whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. The Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, the Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take

3

any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "30-Day Rolling Average NOx Emission Limit" shall mean with respect to any Kiln or Kilns at the Facility, the maximum allowable rate of emission of a specified air pollutant from such Kiln or Kilns and shall be expressed as pounds of such air pollutant emitted per Ton of clinker produced as specified in Paragraphs 11, 14, 15, 21 and 22.  Compliance with the 30-Day Rolling Average NOx Emission Limit shall be determined in accordance with the following procedure, beginning on the 30th Day after the applicable deadline to Continuously Operate  a Control Technology pursuant to Paragraphs 11, 14 or 15:  first, sum the total pounds of the air pollutant in question emitted from the Kiln or Kilns during an Operating Day and the previous twenty-nine (29) Operating Days, as measured in accordance with Paragraph 19, below; second, sum the total tons of clinker produced by the Kiln or Kilns during the same Operating Day and previous 29 Operating Days; and third, divide the total number of pounds of the air pollutant emitted from the Kiln or Kilns during the thirty (30) Operating Days by the total tons of clinker produced by such Kiln or Kilns during the same 30 Operating Days.  A new compliance determination of the 30-Day Rolling Average NOx Emission Limit shall be calculated for each new Operating Day in accordance with the provisions of this Consent Decree.  In calculating each compliance determination for a specified air pollutant in accordance with this Paragraph 7.a., the total pounds of such air pollutant emitted from the Kiln or Kilns

4

during a specified period (Operating Day or 30-Day Period) shall include all emissions of that pollutant during each Startup, Shut Down, or Malfunction that occurs during the specified period, except to the extent a Malfunction qualifies as a force majeure event under Section XI (Force Majeure) and Defendants have complied with the requirements of that Section.

b.    "CEMEX, Inc." shall mean CEMEX, Inc., a Louisiana corporation, which by merger is the successor to CEMEX Central Plains Cement LLC which was the former owner and/or operator of the Facility whose liability for claims in the Complaint in this case has been expressly assumed by Defendant St. Barbara Cement Inc. through the agreement by which it acquired the Facility.

c.    "CEMS" or "Continuous Emissions Monitoring System" shall mean equipment that continuously measures and records the concentration and/or emission rate of a pollutant, including NOx.

d.    "Complaint" shall mean the complaint filed by the United States in this action.

e.    "Consent Decree" or "Decree" shall mean this Decree.

f.    "Continuously Operate" shall mean that when a Control Technology is used at a Kiln, except during a Malfunction, it shall be operated at all times of Kiln Operation, consistent with the technological limitations, manufacturers' specifications, and good engineering and maintenance practices for such Control Technology and the Kiln.

g.    "Control Technology" shall mean Selective Catalytic Reduction, Selective Non-Catalytic Reduction, or other NOx emission control technology as may be necessary to achieve a NOx emission limit as required by this Consent Decree in Paragraph 15.

h.    "Date of Lodging" shall mean the date the Consent Decree is filed for

5

lodging with the Clerk of the Court for the United States District Court for the Northern District of Illinois.

   i.  "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

   j.  "Defendants" shall mean St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc.

   k.  "Effective Date" shall have the meaning given in Paragraph 75.

   l.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

   m.  "Facility" or the "Dixon Facility" shall mean the Portland cement plant located at 1914 White Oak Lane in or near Dixon, Illinois.

   n.  "Facility-Wide 12-Month Rolling Tonnage Limit" shall mean the maximum allowable mass of a specified air pollutant that may be emitted from all Kilns at the Facility during any consecutive 12 month period, expressed as tons of such air pollutant. Compliance with the Facility-Wide 12-Month Rolling Average Tonnage Limit shall be determined on a monthly basis beginning on the last Day of the 24th complete month after the Effective Date of this Consent Decree. Each monthly compliance determination shall be performed by summing the total tons of the air pollutant in question emitted from all stacks that receive emissions from any Kiln at the Facility during the most recent complete month and the previous eleven (11) months. A new compliance determination of the Facility-Wide 12-Month Rolling Tonnage Limit shall be calculated for each new complete month in accordance with the

6

provisions of this Consent Decree. In calculating each compliance determination of the Facility-Wide 12-Month Rolling Tonnage Limit for a specified air pollutant at any Facility, the total tons of such air pollutant emitted from the Kiln or Kilns shall include all emissions of that air pollutant during each Startup, Shut Down, or Malfunction that occurs during the 12-month period at issue.

        o.      "Kiln" as used in this Consent Decree shall have the same meaning as defined at 40 C.F.R. § 63.1341, and shall include both current and future Kilns located at the Facility. The following are identified as the individual Kilns at the Facility as of the Effective Date: Kiln 1; Kiln 2; Kiln 3; and Kiln 4.

        p.      "Kiln Operation" shall mean any period when any raw materials are fed into the Kiln or any period when any combustion is occurring or fuel is being fired, including but not limited to coal, coke, petcoke, oil, natural gas, or tire-derived fuel.

        q.      "Malfunction" as used in this Consent Decree shall have the same meaning as defined at 40 C.F.R. § 60.2.

        r.      "Nonattainment NSR" shall mean the non-attainment area New Source Review (NSR) program within the meaning of Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515, 40 C.F.R. Part 51, and any applicable state implementation plan.

        s.      "NOx" shall mean oxides of nitrogen, measured in accordance with the provisions of this Consent Decree.

        t.      "Operating Day" shall mean any calendar day on which Kiln Operation occurs.

        u.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

v.  "Parties" shall mean the United States and the Defendants.

w.  "PSD" shall mean the Prevention of Significant Deterioration program within the meaning of Part C of Subchapter I of the Act, 42 U.S.C. §§ 7470-7492, 40 C.F.R. Part 52, and the Illinois State Implementation Plan.

x.  "Replace" or "Replacement" shall mean the construction of any new Kiln at the Dixon Facility pursuant to Section V (Compliance Requirements) of this Consent Decree, such that the Kiln replaced by the new Kiln has been Retired.

y.  "Retire" shall mean that the Defendant shall: (1) permanently Shut Down and cease to operate the Kiln; and (2) comply with any state and/or federal requirement applicable to that Kiln.  Defendant shall amend any applicable permits so as to reflect the Retirement status of such Kiln.

z.  "Section" shall mean a portion of this Decree identified by a roman numeral.

aa.  "Selective Catalytic Reduction" or "SCR" means a pollution control system that employs ammonia-based reagent injection and a catalyst to speed the reaction of the reagent with NOx, for the purpose of reducing NOx emissions;

bb.  "Selective Non-Catalytic Reduction" or "SNCR" means a pollution control system that injects an ammonia-based reagent into the primary kiln gas stream without the use of a catalyst for the purpose of reducing NOx emissions.

cc.  "Shut Down" shall mean to cease Kiln Operation.

dd.  "Startup" shall mean the commencement of Kiln Operation.

ee.  "Title V permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. §§ 7661-7661f.

8

ff.    "Ton" or "tons" shall mean short ton or short tons.

gg.    "United States" shall mean the United States of America, acting on behalf

of EPA.

## IV. CIVIL PENALTY

8.    The Defendants shall pay a civil penalty in the principal amount of $800,000, plus

an additional sum for interest as explained below. Payment shall be made in two installments.

Each installment shall include the principal amount due plus an additional sum for accrued

interest, calculated from the Date of Lodging through the date of payment at the rate specified in

28 U.S.C. § 1961 as of the Date of Lodging, on the principal balance for the first payment and on

the declining principal balance for the second payment. The first payment of $200,000 and

accrued interest shall be due within thirty (30) calendar Days after the Effective Date of this

Consent Decree. The second payment of $600,000 and accrued interest shall be due on March 1,

2009. Defendants may accelerate these payments, and interest due on the accelerated payments

shall be reduced accordingly.

9.    Defendants shall pay each installment of the civil penalty due by FedWire

Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written

instructions to be provided to the Defendants, following lodging of the Consent Decree, by the

Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Illinois,

Everett McKinley Dirksen Building, Room 500 S, 219 S. Dearborn St., Chicago, Illinois 60604-

1702, phone number (312) 353-5446. At the time of each installment payment, the Defendants

shall send a copy of the EFT authorization form and the EFT transaction record, together with a

transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the

Consent Decree in <u>United States v. St. Marys Cement Inc. (U.S.) et al.</u>, and shall reference the

9

civil action number and DOJ case number 90-5-2-1-08782, to the United States in accordance

with Section XVI (Notices) of this Decree; by email to acctsreceivable.CINWD@epa.gov; and

to:

> U.S. Environmental Protection Agency
> Fines and Penalties
> Cincinnati Finance Center
> P.O. Box 979077
> St. Louis, MO 63197-9000

10.    Defendants shall not deduct the civil penalty and any interest paid under this

Section or Section X (Stipulated Penalties) in calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS

### A.    NOx Control Technology and Emission Rates.

11.    a.    On and after April 30, 2009, Defendants shall not operate Kilns 1, 2, or 3

unless (i) Defendants first have installed SNCR on each Kiln as the appropriate Control

Technology on the Kiln and (ii) Defendants thereafter Continuously Operate SNCR on each

Kiln.  On and after April 30, 2009, during all periods of Kiln Operation, Defendants shall

achieve and maintain compliance with the 30-Day Rolling Average NOx Emission Limit of 3.7

lbs/Ton of clinker at Kilns 1, 2 and 3 as determined in accordance with Paragraph 7.a., above.

b.    If Defendants temporarily cease Kiln Operation of Kilns 1, 2 and/or 3,

Defendants may resume operations at Kilns 1, 2 and/or 3 prior to January 1, 2016, provided the

Defendants have been and are in continuous compliance with all Consent Decree requirements

relating to such Kilns.  Further, Defendants shall not be obligated to apply for or obtain

applicable permits under the Clean Air Act's PSD or Nonattainment NSR programs for the

purpose of resuming Kiln Operation of Kilns 1, 2 and/or 3 following the aforementioned

temporary cessation of Kiln Operation, provided that the Defendants have not made any physical

10

changes or changes in the method of operation at Kilns 1, 2, and/or 3 during the period of temporary cessation at such Kiln(s) that could cause significant net emissions increases of any PSD or Nonattainment NSR regulated pollutant. Notwithstanding the preceding sentence, nothing in this Paragraph is intended to relieve the Defendants of any obligation to comply with all applicable requirements of the Clean Air Act's PSD or Nonattainment NSR programs following the Effective Date of this Consent Decree.

        c.     Kiln 4 shall be Retired by the date specified in Paragraph 14. Should Defendants elect to Replace Kiln 4, the Defendants shall comply with the requirements set forth in Section V.B. for the Replacement Kiln.

        12.     Defendants shall Continuously Operate each SNCR at Kilns 1, 2, and 3 at all times of Kiln Operation.

        13.     Within 24 months after the Effective Date of this Consent Decree, Defendants shall achieve and maintain compliance with the Facility-Wide 12-Month Rolling Tonnage Limit of 1,900 tons per year ("tpy").

**B.    Retirement Of and Election Regarding Kiln 4.**

        14.     The Defendants shall Retire Kiln 4 within 12 months after the Effective Date of the Consent Decree. Within 6 months of the Effective Date of this Consent Decree, Defendants shall provide written notice to EPA stating whether Defendants intend to Replace Kiln 4. Notwithstanding such notice, the Defendants are not required to construct a Replacement Kiln under this Consent Decree, however, the NOx emission reductions credited under Paragraph 21 or 22, as applicable, will not be available under this Consent Decree should Defendants fail to Replace Kiln 4 pursuant to the terms of this Decree. If Defendants elect to Replace Kiln 4, Defendants shall commence construction of the Replacement Kiln by no later than January 1,

2014. Any Replacement Kiln shall be equipped with an SNCR which Defendants shall

Continuously Operate at the same time as the Replacement Kiln begins Kiln Operation. Any

Replacement Kiln constructed pursuant to this Paragraph shall within 30 Days after Defendants

are required to Continuously Operate an SNCR at the Replacement Kiln achieve and thereafter

maintain compliance with a 30-Day Rolling Average NOx Emission Limit of not more than 1.7

lbs/Ton of clinker produced at the Replacement Kiln, as determined in accordance with

Paragraph 7.a., above, or shall achieve and maintain compliance with the applicable New Source

Performance Standard for NOx for Portland Cement Manufacturing Facilities, whichever is

more stringent.

     15.    Notwithstanding Paragraph 14, above,

        a.    the Defendants may commence construction to Replace Kiln 4 after

January 1, 2014 but in no event later than January 1, 2016 if:

        (i)    The Defendants have submitted, as an addendum to their

construction permit application for the Replacement Kiln, an analysis that proposes an emission

limit for NOx that is equivalent to best available control technology ("BACT") as defined in 42

U.S.C. § 7479(3) that is at least as stringent as the most stringent of the two following emission

limits:

        (a)    the 30-Day Rolling Average NOx Emission Limit of 1.7

lbs/Ton of clinker, or

        (b)    the New Source Performance Standard for NOx for

Portland Cement Manufacturing Facilities, and

        (ii)    The Illinois Environmental Protection Agency (or appropriate

permitting authority) has issued a federally enforceable permit for the Replacement Kiln that

12

includes an emission limit that reflects BACT-equivalent level control for NOx at the time of construction of the Replacement Kiln that is at least as stringent as the most stringent of the two following emission limits:  the 30-Day Rolling Average NOx Emission Limit of 1.7 lbs/Ton of clinker or the New Source Performance Standard for NOx for Portland Cement Manufacturing Facilities.  The Illinois Environmental Protection Agency's (or appropriate permitting authority's) failure to timely issue such permit may qualify as a force majeure event provided the Defendants have complied with the requirements of Paragraph 15.a.(i), Paragraph 30 and Section XI (Force Majeure).

        b.        During all periods of Kiln Operation of the Replacement Kiln, Defendants shall achieve and maintain compliance with the most stringent of the following NOx emission limits:

        (i)        the 30-Day Rolling Average NOx Emission Limit of 1.7 lbs/Ton of clinker,

        (ii)        the New Source Performance Standard for NOx for Portland Cement Manufacturing Facilities, or

        (iii)        the BACT-equivalent emission rate imposed by the Illinois Environmental Protection Agency (or appropriate permitting authority).

        c.        Any Replacement Kiln shall be equipped with either an SNCR, SCR or other NOx Control Technology which is necessary to achieve the most stringent of the foregoing NOx emission limits, which Defendants shall Continuously Operate at the same time as the Replacement Kiln begins Kiln Operation.  Any Replacement Kiln constructed pursuant to this Paragraph shall within 30 Days after Defendants are required to Continuously Operate an SNCR, SCR or other NOx Control Technology at the Replacement Kiln achieve and thereafter maintain

compliance with the most stringent of the foregoing NOx emission limits.

### C. Continuous Emissions Monitoring System (CEMS).

16. Upon the Effective Date of this Consent Decree, the Defendants shall continuously operate a NOx CEMS for the common exhaust from Kilns 1, 2, and 3 during all times of Kiln Operation. Should the Defendants elect to Replace Kiln 4 pursuant to Paragraph 14 or 15, above, Defendants shall by the date of the commencement of the Kiln Operation of the Replacement Kiln have installed and thereafter continuously operate a NOx CEMS for the exhaust from the Replacement Kiln during all times of Kiln Operation.

17. Except during CEMS breakdowns, repairs, preventive maintenance, calibration checks, and/or zero span adjustments, the CEMS required pursuant to Paragraph 16 shall be operated at all times during Kiln Operation. Each such CEMS shall be used to demonstrate compliance with the NOx emission limits established in this Section V (Compliance Requirements).

18. Each NOx CEMS required pursuant to Paragraph 16 shall monitor and record the applicable NOx emission rate in units of pounds of NOx per Ton of clinker produced in the Kilns and shall be installed, certified, calibrated, maintained, and operated in accordance with the applicable requirements of 40 C.F.R. Part 60.

19. All emissions of NOx from any Kilns at the Facility shall be measured by CEMS in accordance with the requirements of Paragraphs 16, 17, and 18. During any time of Kiln Operation when CEMS are inoperable and otherwise not measuring emissions of NOx from any Kiln, the Defendants shall apply the missing data substitution procedures in 40 C.F.R. Part 75, Subpart D or the missing data substitution procedures of the State of Illinois, whichever is deemed appropriate by the State.

14

## VI. PROHIBITION ON NETTING CREDITS OR
## OFFSETS FROM REQUIRED CONTROLS

20.    Except as provided in Paragraph 21 or 22 below, emission reductions resulting

from compliance with the requirements of this Consent Decree shall not be considered as a

creditable contemporaneous emission decrease for the purpose of obtaining a netting credit or

offsets under the Clean Air Act's Nonattainment NSR and PSD programs.

21.    Notwithstanding Paragraph 20, Defendants may use 980 tons of NOx emissions

reductions under this Consent Decree generated from the Retirement of Kiln 4 as creditable

decreases for the purpose of obtaining netting credits for this pollutant under the Clean Air Act's

Nonattainment NSR and PSD programs, solely for construction of any Replacement Kiln at the

Dixon Facility if:

a.    within 12 months of the Effective Date of this Consent Decree

Defendants have Retired Kiln 4;

b.    Defendants commence construction of the Replacement Kiln by no later

than  January 1, 2014; and

c.    Defendants have applied for all applicable permits that include with

respect to NOx emissions from the Replacement Kiln, at a minimum, requirements to:

(i)    install and Continuously Operate an SNCR at the Replacement

Kiln, and

(ii)    continuously comply with a 30-Day Rolling Average NOx

Emission Limit of at least 1.7 lbs/Ton of clinker at the new Kiln, as determined in accordance

with Paragraph 7.a., above, or any applicable New Source Performance Standard for NOx for

Portland Cement Manufacturing Facilities, whichever is more stringent.

15

22.    Notwithstanding Paragraph 20 and 21, the Defendants may use 980 tons of NOx emissions reductions under this Consent Decree generated from the Retirement of Kiln 4 as creditable decreases for the purpose of obtaining netting credits for this pollutant under the Clean Air Act's Nonattainment NSR and PSD programs, solely for construction of any Replacement Kiln at the Dixon Facility if:

    a.    Within 12 months of the Effective Date of this Consent Decree Defendants have Retired Kiln 4.

    b.    Defendants commence construction of the Replacement Kiln after January 1, 2014 but no later than January 1, 2016.

    c.    The Defendants have submitted, as an addendum to their construction permit application for the Replacement Kiln, an analysis that proposes an emission limit for NOx that is equivalent to best available control technology ("BACT") as defined in 42 U.S.C. § 7479(3) and is at least as stringent as the most stringent of the two following emission limits:

        (i)    the 30-Day Rolling Average NOx Emission Limit of 1.7 lbs/Ton of clinker; or

        (ii)    the New Source Performance Standard for NOx for Portland Cement Manufacturing Facilities; and

    d.    The Illinois Environmental Protection Agency (or appropriate permitting authority) has issued a federally enforceable permit for the Replacement Kiln that includes an emission limit that reflects BACT-equivalent level control for NOx at the time of construction of the Replacement Kiln that is at least as stringent as the most stringent of the two following emissions limits: the 30-Day Rolling Average NOx Emission Limit of 1.7 lbs/Ton of clinker or any applicable New Source Performance Standard for NOx for Portland Cement Manufacturing

16

Facilities.  The Illinois Environmental Protection Agency's (or appropriate permitting authority's) failure to timely issue such permit may qualify as a force majeure event provided the Defendants have complied with the requirements of Paragraph 22.a. and c, Paragraph 30 and Section XI (Force Majeure).

23.    The limitations on the generation and use of netting credits or offsets set forth in Paragraph 20 do not apply to emission reductions achieved by Defendants that are surplus to those required under this Consent Decree.  For purposes of this Paragraph, emission reductions are surplus to those required under this Consent Decree provided that:

a.    the emission reductions result from Defendants' compliance with federally enforceable emissions limits that are more stringent than limits imposed under this Consent Decree, or

b.    the emission reductions result from Defendants' compliance with emission limits otherwise required under applicable provisions of the Clean Air Act that are more stringent than limits imposed under this Consent Decree, or

c.    the emissions reductions result from Defendants' compliance with an applicable SIP that are more stringent than limits imposed under this Consent Decree.

24.    Nothing in this Consent Decree is intended to preclude the emission reductions generated under this Decree from being considered by EPA or a State as creditable contemporaneous emission decreases for the purpose of attainment demonstrations submitted pursuant to Section 110 of the Act, 42 U.S.C. § 7410, or in determining impacts on NAAQS, PSD increments, or air quality-related values, including visibility in a Class I area.

## VII.  APPROVAL OF DELIVERABLES

25.    After review of any plan, report, or other item that is required to be submitted

17

pursuant to this Consent Decree, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

26.     If the submission is approved pursuant to Paragraph 25, the Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 25(b) or (c), the Defendants shall, upon written direction of EPA take all actions required by the approved portions of the plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to the Defendants' right to dispute only the specified conditions or the disapproved portions, under Section XII (Dispute Resolution) of this Consent Decree.

27.     If the submission is disapproved in whole or in part pursuant to Paragraph 25(c) or (d), the Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, the Defendants shall proceed in accordance with the preceding Paragraph.

28.     Any stipulated penalties applicable to an original submission that is disapproved in whole or in part pursuant to Paragraph 25(c) or (d), as provided in Section X (Stipulated Penalties) of this Consent Decree, shall continue to accrue during the period referred to in Paragraph 27, but any stipulated penalties that accrue following the receipt of the submission shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the

18

Defendants' obligations under this Decree, all stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

29.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require the Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to the Defendants' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

## VIII. PERMITS

30.    Where any compliance obligation under this Section requires the Defendants to obtain a federal, state, or local permit or approval, the Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section XI (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if the Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

31.    To the extent not required elsewhere in this Consent Decree, Defendants shall, within one (1) year from the commencement of operation of each Control Technology required to be installed or operated on a Kiln under this Consent Decree, apply to the Illinois Environmental Protection Agency (or appropriate permitting authority) to include the requirements and limitations enumerated in this Consent Decree in:

    a.    an amendment to the Illinois SIP for the Dixon Facility, or

    b.    a construction permit or other permit (other than a Title V permit) which is

19

federally enforceable, issued under the Illinois SIP, and issued under authority independent of the State of Illinois' authority to issue Title V permits.

The permit or SIP amendment shall require compliance with each 30-Day Rolling Average NOx Emission Limit, Facility-Wide 12-Month Rolling Tonnage Limit, the requirements of Paragraph 14 relating to the Retirement of Kiln 4, and any monitoring requirements, including those in Section V.C. of this Consent Decree. Following submission of the permit application, the Defendants shall cooperate with the appropriate permitting authority by promptly submitting all information that such permitting authority seeks following its receipt of the permit application. Upon issuance of such permit or SIP amendment or in conjunction with such permitting as described in Paragraph 30, the Defendants shall file any applications necessary to incorporate the requirements of the permits into the Title V operating permit for the Dixon Facility. Nothing in this Consent Decree is intended nor shall it be construed to require the establishment of emission limits or tonnage limits other than those emission limits and tonnage limits expressly prescribed in this Consent Decree.

32.    Defendants shall provide EPA with a copy of each application for a permit to address or comply with any provision of this Consent Decree, as well as a copy of any permit proposed as a result of such application, to allow for timely participation in any public comment opportunity. If the Defendants sell or transfer to an entity unrelated to the Defendants ("Third Party Purchaser") part or all of their ownership interest in a Kiln or the Facility, the Defendants shall comply with the requirements of Paragraphs 30-32 with regard to that Kiln or Facility prior to any such sale or transfer unless, following any such sale or transfer, the Defendants remain the holder of the Title V or other federally enforceable permit for such Kiln or the Facility.

## IX. **REPORTING REQUIREMENTS**

33.    Within 30 Days after the end of each calendar-year half (*i.e.*, by July 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XX (Termination), the Defendants shall submit a semi-annual report to EPA for the preceding calendar-year half (ending June 30 or December 31) that shall include:

a.    Any and all dates on which Defendants have commenced and completed installation of CEMS and certified CEMS required under Section V.C. of this Consent Decree, including problems encountered or anticipated, together with implemented or proposed solutions;

b.    All CEMS data collected for each Kiln, including any missing data for which Defendants applied missing data substitution procedures under Section V.C. of this Consent Decree;

c.    Demonstration of compliance, and explanation of any non-compliance, with each 30-Day Rolling Average NOx Emission Limit in this Consent Decree, including but not limited to those in Section V;

d.    Demonstration of compliance, and explanation of any non-compliance, with the Facility-Wide 12-Month Rolling Tonnage Limit under Section V.A. of this Consent Decree;

e.    The status of the election made pursuant to Section V.B. of this Consent Decree;

f.    If applicable, the date on which the Defendants have commenced construction on a Replacement Kiln for Kiln 4 and the status of actions undertaken to comply with Paragraphs 14 or 15, as applicable.

21

g.     The status of all permit applications and any proposed SIP revisions relating to the Facility; and

h.     The status of any operation and maintenance work required under this Consent Decree.

i.     The date on which Defendants have Retired Kiln 4 in accordance with the requirements of Paragraph 14.

34.     The semi-annual report shall also include a description of each instance of non-compliance with any requirements of this Consent Decree during the reporting period and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, the Defendants shall notify the United States of such violation and its likely duration, in writing, within ten working days of the Day the Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, the Defendants shall so state in the report.  Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the day the Defendants become aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves the Defendants of their obligation to provide the notice required by Section XI (Force Majeure) of this Consent Decree.

35.     Whenever any violation of this Consent Decree, or of any applicable permits, or any other event affecting the Defendants' performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, the

22

Defendants shall notify EPA, orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after the Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

36.     All reports shall be submitted to the persons designated in Section XVI (Notices) of this Consent Decree.

37.     Each report submitted by the Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

38.     The reporting requirements of this Consent Decree do not relieve the Defendants of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

39.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this  Decree and as otherwise permitted by law.

## X. STIPULATED PENALTIES

40.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified in Table 1 below, unless excused under Section XI

23

(Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.   Stipulated Penalties related to violations of the Facility-Wide 12-Month Rolling Annual Tonnage Limit for NOx and the 30-Day Rolling Average NOx Emission Limit for NOx in the table below shall not begin to accrue until there is noncompliance with the emission limits specified in the Table below.  Compliance with a 30-Day Rolling Average NOx Emission Limit shall be determined in accordance with Paragraph 7.a. of this Consent Decree. Compliance with a Facility-Wide 12-Month Rolling Annual Tonnage Limit shall be determined in accordance with Paragraph 7.n. of this Consent Decree.

## TABLE 1

| CONSENT DECREE VIOLATIONS | STIPULATED PENALTY |
|---|---|
| Failure to pay the civil penalty as specified in Section IV (Civil Penalty) of this Consent Decree. | $5,000 per Day. |
| Failure to Comply with any Facility-Wide 12-Month Rolling Annual Tonnage Limit for NOx. | For each new calendar month on which the calculated 12-Month Rolling Annual tonnage Limit for NOx exceeds the applicable limit: $2,500 per Ton for the first 100 tons over the limit, and $5,000 per Ton for each additional Ton over the limit. |
| Failure to comply with any 30-Day Rolling Average NOx Emission Limit as required by Section V (Compliance Requirements), where the emissions are less than 5% in excess of the limits set forth in this Consent Decree. | $1,500 for each Day on which the calculated 30-Day Rolling Average exceeds the applicable limit by less than |

| CONSENT DECREE VIOLATIONS | STIPULATED PENALTY |
|---|---|
| | 5%. |
| Failure to comply with any 30-Day Rolling Average NOx Emission Limit as required by Section V (Compliance Requirements), where the emissions are equal or greater than 5% but less than 10% in excess of the limits set forth in this Consent Decree. | $3,000 for each Day on which the calculated 30-Day Rolling Average exceeds the applicable limit by greater than 5% but less than 10%. |
| Failure to comply with any 30-Day Rolling Average NOx Emission Limit as required by Section V (Compliance Requirements), where the emissions are equal or greater than 10% in excess of the limits set forth in this Consent Decree. | $5,000 for each Day on which the calculated 30-Day Rolling Average exceeds the applicable limit by greater than 10%. |
| Failure to install or Continuously Operate Control Technology at any Kiln as required by Section V (Compliance Requirements). | $5,000 per Day during the first 30 Days, $32,500 per Day for each Day thereafter. |
| Failure to apply for or amend any permit or seek a SIP approval required by Section VIII (Permits). | $1,000 per Day for each such failure. |
| Failure to install or operate a NOx CEMS as required by Section V (Compliance Requirements). | $1,000 per Day for each such failure. |
| Failure to timely submit, modify, or implement, as approved, any report, plan, study, analysis, protocol, or other submittal required by this Consent Decree. | $750 per Day during the first ten Days, $1,000 per Day thereafter. |
| Failure to Retire Kiln 4 as required by Paragraph 14. | $5,000 per Day for each such failure. |
| Any other violation of this Consent Decree. | $1,000 per Day per violation. |

25

41.     Subject to the provisions of Paragraph 40 above, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

42.     Defendants shall pay any stipulated penalty within thirty (30) Days of receiving the United States' demand.

43.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due the United States under this Consent Decree.

44.     Stipulated penalties shall continue to accrue as provided in this Section, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, in accordance with Paragraph 47, within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, in accordance with Paragraph 47, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c., below.

c.     If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

26

45.    Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

46.    Defendants shall not deduct any stipulated penalties or interest paid under this Section in calculating their federal income tax.

47.    If Defendants fail to pay stipulated penalties within 30 Days of the United States' demand, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accrued as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from securing any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

48.    Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of any applicable statute or regulation, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI. FORCE MAJEURE

49.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Defendants, of any entity controlled by the Defendants, or of the Defendants' contractors, that delays or prevents the performance of any obligation under this Decree despite the Defendants' best efforts to fulfill the obligation.

27

"Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include the Defendants' financial inability to perform any obligation under this Consent Decree.

50.    Defendants shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time the Defendants first knew of, or by the exercise of due diligence should have known of, a claimed force majeure event. Defendants shall also provide written notice, as provided in Section XVI (Notices) of this Consent Decree, within seven Days of the time the Defendants first knew of, or by the exercise of due diligence should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); the Defendants' past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and the Defendants' rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude the Defendants from asserting any claim of force majeure.

51.    If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for the Defendants to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.

52.    If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by the Defendants, the United States' position

28

shall be binding unless the Defendants invoke Dispute Resolution under Section XII (Dispute Resolution) of this Consent Decree. In any such dispute, the Defendants bear the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that the Defendants gave the notice required by Paragraph 50, that the force majeure event caused any delay the Defendants claims was attributable to that event, and that the Defendants exercised best efforts to prevent or minimize any delay caused by the event.

## XII. DISPUTE RESOLUTION

53.      Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude the Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of the Defendants arising under this Consent Decree.

54.      Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the Defendants sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, the Defendants invoke formal dispute resolution procedures as set forth below.

55.      Formal Dispute Resolution. Defendants shall invoke formal dispute

resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting the Defendants' position and any supporting documentation relied upon by the Defendants.

56.    The United States shall serve its Statement of Position within 45 Days of receipt of the Defendants' Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on the Defendants, unless the Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

57.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of the Defendants position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

58.    The United States shall respond to the Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

59.    Except as otherwise provided in this Consent Decree, in any dispute brought under this Section, the Defendants shall bear the burden of demonstrating that its position clearly complies with this Decree.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and the Defendants reserve the right to oppose this position.

60.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 44.  If the Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII. INFORMATION COLLECTION AND RETENTION

61.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by the Defendants or their representatives, contractors, or consultants;

d.    obtain documents, including photographs and similar data; and

31

    e.  assess the Defendants' compliance with this Consent Decree.

  62.  Until five years after the termination of this Consent Decree, the Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to the Defendants' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, the Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

  63.  At the conclusion of the information-retention period provided in the preceding Paragraph, the Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, the Defendants shall deliver any such documents, records, or other information to EPA. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Defendants assert such a privilege, they shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by the Defendants. However, no documents, records, or other

information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

64.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that the Defendants seek to protect as CBI, the Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

65.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

66.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging and further resolves the civil claims of the United States for all violations alleged in EPA Region 5 Notice of Violation and Finding of Violation EPA-5-05-11-IL (May 12, 2005) and EPA Region 5 Notice of Violation EPA-5-08-23-IL (July 3, 2008) through the Date of Lodging against the Defendants as well as any civil liability of CEMEX, Inc. to the United States with respect to the same violations.

67.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 66. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other

federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 66. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Defendants' Facility, whether related to the violations addressed in this Consent Decree or otherwise.

68.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that the Defendants' compliance with any aspect of this Decree will result in compliance with provisions of the Act or with any other provisions of federal, State, or local laws, regulations, or permits.

69.     This Consent Decree does not limit or affect the rights of the Defendants or of the United States (except as set forth in Paragraph 66) or the States against any third parties, not party to this Decree, nor does it limit the rights of third parties, not party to this Decree, against the Defendants, except as otherwise provided by law.

70.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XV. COSTS

71.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

34

incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Defendants.

## XVI. <u>NOTICES</u>

72.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>As to EPA</u>:

> Director, Air Enforcement Division
> U.S. Environmental Protection Agency
> MC 2242A
> 1200 Pennsylvania Ave. NW
> Washington, D.C. 20460

> Terence W. Stanuch
> Office of Regional Counsel
> U.S. Environmental Protection Agency, Region 5
> Mail Code C-14J
> 77 West Jackson Blvd.
> Chicago, Illinois 60604-3590

> and

> Versia Boyd
> Air and Radiation Division
> U.S. Environmental Protection Agency, Region 5
> Mail Code AE-17J
> 77 West Jackson Blvd.
> Chicago, Illinois 60604-3590

<u>As to the United States (in addition to the EPA addressees above)</u>:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> Box 7611 Ben Franklin Station
> Washington, D.C.  20044-7611
> Re: DOJ No. 90-5-2-1-08782

35

As to the Defendants:

> Fredrick J. Dindoffer
> Bodman LLP
> 6th Floor At Ford Field
> 1901 St. Antoine Street
> Detroit, Michigan 48226
>
> and
>
> Jolanta Malicki
> General Counsel
> St. Marys Cement Group
> 55 Industrial Street
> Toronto, Ontario M4G 3W9
> Canada

73.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

74.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

75.    The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded in the Court's docket.

## XVIII.  RETENTION OF JURISDICTION

76.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

36

## XIX. MODIFICATION

77.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by the Plaintiff and the Defendants. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

78.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XII (Dispute Resolution) of this Decree, provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking a unilateral modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX. TERMINATION

79.    After the Defendants have completed the requirements of Sections V (Compliance Requirements) and VIII (Permits) of this Consent Decree and have thereafter maintained continuous satisfactory compliance with this Decree for a period of three years, and have paid the civil penalty and any accrued stipulated penalties as required by this Decree, the Defendants may serve upon the United States a Request for Termination, stating that the Defendants have satisfied those requirements, together with all necessary supporting documentation. If the Defendants have elected under Section V to Replace Kiln 4, this Consent Decree shall not terminate until the Defendants have commenced construction of any Replacement Kiln and satisfactorily complied for a period of three years with all requirements in this Consent Decree related to such Replacement Kiln, unless Defendants have provided written notice to EPA and the United States that they no longer intend to construct a Replacement Kiln.

37

80.     Following receipt by the United States of the Defendants' Request for

Termination, the Parties shall confer informally concerning the Request and any

disagreement that the Parties may have as to whether the Defendants have satisfactorily

complied with the requirements for termination of this Consent Decree. If the United States

agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's

approval, a joint stipulation terminating the Decree.

81.     If the United States does not agree that the Consent Decree may be

terminated, the Defendants may invoke Dispute Resolution under Section XII (Dispute

Resolution) of this Consent Decree. However, the Defendants shall not seek Dispute

Resolution of any dispute regarding termination until at least 30 Days after service of its

Request for Termination.

82.     <u>Resort to Enforcement under this Consent Decree</u>. Notwithstanding

Paragraph 79, if enforcement of a provision in this Consent Decree cannot be pursued by a

Party under the applicable Title V permit for the Dixon Facility, or if a Consent Decree

requirement was intended to be part of a Title V Permit and did not become or remain

part of such permit, then such requirement may be enforced under the terms of this Consent

Decree at any time, unless and until the Defendants have secured a source-specific revision

to the Illinois State Implementation Plan that reflects the emission limits and monitoring

requirements set forth in this Consent Decree.

## XXI. **PUBLIC PARTICIPATION**

83.     This Consent Decree shall be lodged with the Court for a period of not less

than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The

United States reserves the right to withdraw or withhold its consent if the comments

38

regarding the Consent Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Decree.

## XXII. SIGNATORIES/SERVICE

84.     Each undersigned representative of the Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

85.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

86.     Defendants shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service or process by mail on behalf of the Defendants with respect to all matters arising under or relating to this Consent Decree. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The Parties agree that the Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXIII. INTEGRATION

87.     This Consent Decree constitutes the final, complete, and exclusive agreement

and understanding among the Parties with respect to the settlement embodied in the Decree

and supersedes all prior agreements and understandings, whether oral or written, concerning

the settlement embodied herein. Other than deliverables that are subsequently submitted and

approved pursuant to this Decree, no other document, nor any representation, inducement,

agreement, understanding, or promise, constitutes any part of this Decree or the settlement it

represents, nor shall it be used in construing the terms of this Decree.

## XXIV. **FINAL JUDGMENT**

88.    Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States and the

Defendants.


Dated and entered this ____ day of _____, _____.


_____

UNITED STATES DISTRICT COURT JUDGE
Northern District of Illinois

40

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc.</u>

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: September 2, 2008

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: August 8, 2009

PAMELA R. LEE
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-2775 (Tel.)
(202) 616-6584 (Fax)
pamela.r.lee@usdoj.gov

PATRICK FITZGERALD
United States Attorney

Date: September 8, 2008

MONICA MALLORY
Assistant United States Attorney
308 W. State Street, Suite 300
Rockford, Illinois 61101
(815) 987-4444 (Tel.)
(815) 987-4236 (Fax)
monica.mallory@usdoj.gov

41

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc.</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: 8/22/08

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

Date: 8-20-08

ADAM M. KUSHNER
Director, Air Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

Date: 8-19-08

ANDREW C. HANSON
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Ariel Rios Building, MC2242A
1200 Pennsylvania Avenue NW
Washington DC 20460

42

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc.</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: 8/21/08

LYNN BUHL
Regional Administrator
United States Environmental Protection Agency
Region 5
Mail Code R-19J
77 West Jackson Blvd.
Chicago, IL 60604-3590

Date: 8/19/08

TERENCE W. STANUCH
Associate Regional Counsel
United States Environmental Protection Agency
Region 5
Mail Code C-14J
77 West Jackson Blvd.
Chicago, IL 60604-3590

43

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in United States of America v. St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc.

FOR ST. MARYS CEMENT INC. (U.S.):

_____          Date: _____
ERIK MADSEN
Vice-President and Chief Operating Officer

The following is the name and address of the Defendant St. Marys Cement Inc. (U.S.)'s agent for service pursuant to Paragraph 86.

Fredrick J. Dindoffer
Bodman LLP
6th Floor At Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7595

44

Through their undersigned representatives, the Parties agree and consent to entry of the foregoing Consent Decree in <u>United States of America v. St. Marys Cement Inc. (U.S.) and St. Barbara Cement Inc.</u>

FOR ST. BARBARA CEMENT INC.:

_____          Date: _Aug 7 2008_
ERIK MADSEN
President and Chief Operating Officer

The following is the name and address of the Defendant St. Barbara Cement Inc.'s agent for service pursuant to Paragraph 86.

Fredrick J. Dindoffer
Bodman LLP
6th Floor At Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7595

45