UNITED STATES DISTRICT COURT FOR THE
NOTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DR. KENNETH JACKSON, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **Case No.** |
| | ) | |
| | ) | **Judge** |
| **v.** | ) | |
| | ) | |
| BOARD OF EDUCATION OF ROCKFORD | ) | **PLAINTIFF DEMANDS** |
| PUBLIC SCHOOLS DISTRICT 205, AND | ) | **TRIAL BY JURY** |
| LINDA HERNANDEZ, | ) | |
| INDIVIDUALLY AND AS AN AGENT | ) | |
| OF THE DEFENDANT BOARD | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, DR. KENNETH JACKSON (hereinafter "JACKSON"), by and through his attorneys Elaine K. B. Siegel & Associates, P.C.,  complains as follows against Defendants BOARD OF EDUCATION OF ROCKFORD PUBLIC SCHOOLS DISTRICT 205  ("BOARD" or "SCHOOL DISTRICT") AND LINDA HERNANDEZ ("HERNANDEZ") (hereinafter collectively "DEFENDANTS"):

## INTRODUCTION

On September 11, 2007, Defendants launched an attack on Plaintiff, Dr. Kenneth Jackson, suspending him from his position as Principal of Jefferson High School without pay, in violation of Board policy.  Defendants initially told Dr. Jackson he was being suspended in order to "protect" a reinvestigation into allegations that Dr. Jackson had improperly changed student grades, a charge of which he had previously been investigated, and exonerated.

The September 11, 2007, action was the beginning of a series of discriminatory and

1

retaliatory measures against Dr. Jackson, an African-American male 55 years of age.   For example, Defendants publicly claimed that Dr. Jackson was unqualified to act as Principal of Jefferson High School.  This was false.  In flagrant contrast, Earl Hernandez, the husband of Defendant Hernandez, was acting as principal of another school in the School District, East High School, although he lacked the Type 75 administrative certificate required under the Illinois School Code.    105 ILCS 5/21-7.1.  Mr. Hernandez, who is Latino, held only a temporary, nonrenewable Type 29 bilingual education certificate.  Defendant Hernandez is White, as are all but one of the members of defendant Board.

In retaliation for filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Defendants imposed disparate treatment upon Dr. Jackson, leveled false criticisms, spread false and defamatory rumors, and prepared a false evaluation in order to justify his termination.  Defendants inflamed racial tensions at Jefferson High School, creating a hostile and dangerous working and learning environment. On April 9, 2008, the Board voted to terminate Dr. Jackson's employment.

## JURISDICTION AND VENUE

1.    At all relevant times, PLAINTIFF DR. KENNETH JACKSON ("Dr. Jackson"), was a resident of the County of Winnebago, State of Illinois.

2.    DEFENDANT BOARD OF EDUCATION OF ROCKFORD PUBLIC SCHOOLS DISTRICT 205 ("Rockford Public Schools"), is a body politic and corporate, organized pursuant to the Illinois School Code, 150 ILSC 5/11.

3.    DEFENDANT LINDA HERNANDEZ ("Hernandez"), in her individual capacity, as employee of the Board, is the Interim Superintendent of the Rockford Public Schools, and has an office and does business in County of Winnebago, State of Illinois.

4.    All of the relevant actions complained hereof took place in the County of Winnebago, State of Illinois.

5.    This Court has personal and subject matter jurisdiction over the parties hereto and the issues contained herein.

## FACTS

### A.    PLAINTIFF'S EDUCATION EXPERTISE

6.    Dr. Jackson is an African-American male, over the age of forty (40).

7.    Dr. Jackson is a school administrator with over 30 years of experience, who has held a variety of administrative positions in the Illinois, Michigan and Kentucky public school systems.

8.    After serving with the United States Marine Corps, and acting as a Guard for President Nixon, Dr. Jackson earned his bachelors degree in business administration from Western Michigan University, an accredited institution of higher learning.

9.    In 1997, Dr. Jackson earned a masters in educational leadership from Western Michigan University, an accredited institution of higher learning.

10.    In 2002, Dr. Jackson earned his doctorate degree in education from Nova Southeastern University, an accredited institution of higher learning.

11.    Dr. Jackson holds a valid license from the State of Michigan as a teacher for grades K through 12, and as a school administrator, prior to its expiration, in August, 2012.

12.    Dr. Jackson was a teacher with the Covert Public School District, in Covert, Michigan for approximately 17 years.

13.    Dr. Jackson was employed as an Assistant Principal with the Kalamazoo Public School District, in Kalamazzoo, Michigan, for approximately four years.

14.    Dr. Jackson was a High School Principal in the Beecher Community School District in Flint, Michigan from 1999 until 2001.

15.    In 2001, Dr. Jackson was promoted to Superintendent of the Beecher Community School District.  During that time Dr. Jackson was also an adjunct professor at the University of Michigan at Flint in its education department.

16.    Dr. Jackson retired in 2004, after 5 years of service as the Superintendent of Public Schools in Flint, Michigan.

17.    During the 2005-2006 academic school year, Dr. Jackson served as a High School Principal with the Franklin Simpson School District, in Franklin, Kentucky.

18.    In approximately July 2006, Dr. Jackson was recruited by Dr. Dennis L. Thompson ("Thompson"), the then-Superintendent of the Rockford Public Schools, to serve as the principal of Jefferson High School.

19.    On or about August 7, 2006, Dr. Jackson changed his residence from Franklin, Kentucky to Rockford, Illinois.  He obtained a provisional Illinois administrative certificate in order to perform his duties as principal of Jefferson High School.  The certificate states, on its face, that it is valid until June 2008.  It qualifies Dr. Jackson for employment as principal, and in fact as General Superintendent of Schools.

### B.    JEFFERSON HIGH SCHOOL

20.    During the 2005-2006 academic school year, Jefferson had 2,200 students; the student body was approximately 50% Caucasian, 28% African-American, 17% Latino, and 5% other.

21.    Jefferson is a public high school currently composed of approximately 2,000 students; the student body is approximately 30% Caucasian, 30% African-American, 30% Latino and

10% other.

22.  This parity was achieved through a bitter desegregation battle.  *See*, *e.g., People Who Care v. Rockford Board of Education, et. al*, 1996 U.S. Dist. LEXIS 9530, Case No. 89 C 20168.

23.  Prior to Dr. Jackson's arrival, Jefferson High School was plagued by violence, poor academic performance, and a wide "achievement" gap between racial and ethnic groups.

24.  Whereas, 46.5% of Caucasian students passed the Prairie State Achievement Test ("PSAT"), reading exam, only 27.8% of African-American, and 34.1% of Latino students passed the reading exam.   Caucasian students passed the PSAT math portion at a rate of 45.7%, while only 16.7% of African-American, and 25% of Latino students passed.

25.  Prior to Dr. Jackson's arrival, 78.8% of Caucasian students and 72.2% of Latino students graduated, in comparison with 49.6% of African-American students.

26.  Overall, only 69.1% of Jefferson High School students graduated prior to Dr. Jackson's arrival.

27.  On best information and belief, Dr. Jackson's predecessor, Angelina Bua ("Bua"), was criticized for her inability to address these issues and for her inability to stem the tide of violence at Jefferson High School.

28.  On June 13, 2006, Ms. Bua was reassigned to Roosevelt Center, to act as an Alternative School Specialist.  On best information and belief, Ms. Bua, a Caucasian female, is a close friend of Defendant Hernandez.

29.  Also on best information and belief, Defendant Hernandez and Ms. Bua are both Caucasian females.

### C.    PLAINTIFF'S SUCCESSFUL PERFORMANCE AS PRINCIPAL OF JEFFERSON HIGH SCHOOL

30.    Dr. Jackson implemented a program to increase parental involvement in their childrens' education, a factor demonstrated by substantial research to enhance student academic performance.  In developing and implementing this program, Dr. Jackson acted jointly with then-Superintendent Thompson.

31.    Dr. Jackson implemented the District's first and only Parent Center located on Jefferson High School's campus.

32.    As directed by then-Superintendent Thompson, Dr. Jackson required teachers to notify parents of academic problems before imposing failing grades.  Upon best information and belief, in some classrooms as many as 70-80% of the students were failing, but many parents were not notified.

33.    Also on best information and belief, several other Illinois school districts have similar parental contact policies to that implemented by Dr. Jackson at the direction of then-Superintendent Thomspon.

34.    Dr. Jackson also instituted a requirement that students who received suspensions had to return to Jefferson accompanied by their parents whenever possible.

35.    The vast majority of students benefiting from Dr. Jackson's procedures to engage parents in student achievement and disciplinary problems were African-American and Latino.

36.    During his tenure at Jefferson High School, Dr. Jackson imposed firm disciplinary practices, emphasizing mutual respect to and from students.  He required equal disciplinary treatment of all students, regardless of race, ethnicity, or gender.  There was a marked improvement in student discipline at this school, which was often plagued with violence.

37.    As a result of Dr. Jackson's initiatives, Jefferson High School was recognized as the most improved school in the city in the 2005-06 year.

38.    Dr. Jackson's 2005-2006 evaluation conducted by Assistant Superintendent, Martha Hayes, rated Dr. Jackson's performance as "superior."

39.    Several Jefferson teachers resisted Dr. Jackson's innovations, and refused to comply with Dr. Jackson's parental notification directive.  In response, Dr. Jackson changed the grades of numerous affected students from "F" to "D."

40.    In Spring 2007, the teachers' union and the Rockford Education Association ("REA"), filed a grievance regarding the grade changes.

41.    At the time of the 2007 grievance, the School District administration supported Dr. Jackson in enforcing the parental notification procedures.  The administration further asserted that it had tried, and failed, to implement similar changes during Ms. Bua's tenure.

42.    Following an investigation and grievance proceedings, the dispute was resolved by changing the failing grades of underclassmen back to "F", while the graduating seniors' grades remained changed ("D"), in accordance with the parent contact policy.  Dr. Jackson was fully exonerated of any wrongdoing.

43.    On best information and belief, in the fall of 2007, the REA filed an unfair labor practice charge with the Illinois Education Labor Relations Board ("IELRB").

44.    In July 2007, then-Superintendent Thompson resigned, effective August 2007, to accept a position as superintendent of schools in Naples, Florida.

45.    In August, 2007, following Dr. Thompson's resignation, the Defendant Board named Defendant Hernandez as Interim Superintendent.

46.    The REA filed a complaint regarding the grade dispute with the Regional Superintendent of Schools for Boone-Winnebago County, Richard Fairgrieves ("Fairgrieves").

47.    On September 11, 2007, Dr. Jackson was abruptly, and without warning, removed from his position as Principal of Jefferson High School, and suspended without pay.  He received neither pre- nor post-deprivation hearings.

48.    According to Defendant Hernandez, Dr. Jackson's suspension was necessary to "protect the investigation" which she had launched into the REA complaint.

49.    Upon best information and belief, Defendant Hernandez was familiar with the Districts' well-publicized response to the initial grievance filed by the REA, and knew Dr. Jackson had acted at the direction of the prior superintendent, Dr. Thompson.

50.    Nonetheless, Defendant Hernandez imposed disciplinary action beyond the scope of her authority, and in direct contravention of District policy.

51.    The District's Suspension Policy ("Suspension Policy"), Rockford Public Schools Policy 5.240, provides:

> The Board of Education may suspend certified staff without pay *(1) pending a dismissal hearing, or (2) as a disciplinary measure for up to 10 employment days* for misconduct which is detrimental to the School District.
>
>                    \*      \*      \*
>
> *Before invoking a suspension without pay, the Board will appoint a hearing officer who shall conduct a hearing and make a report to the Board.*  The Board shall determine whether the facts warrant suspension without pay.  The Board or its designee shall notify certified staff stating the alleged charges and causes and indicating the date and time of the hearing.  At the pre-suspension hearing, certified staff may have a representative present evidence.
>
> <u>Suspension With Pay</u>
> The Board of Education authorizes the Superintendent to suspend certified staff with pay during an investigation into allegations of disobedience or misconduct whenever the employee's continued presence in his or her

position would not be in the best interest of the School District or pending a Board hearing to suspend certified staff without pay. *Certified staff shall have the right upon request, to meet with the Superintendent or designee to present his/her version of events during the suspension.* (emphasis added)

A true and correct copy of the Suspension Policy is attached hereto as Exhibit A.

52.   In direct violation of the Suspension Policy, Defendant Hernandez suspended Dr. Jackson without the requisite hearing and without providing him the opportunity to respond to the REA's false allegations.

53.   During the September 11, 2007 meeting, Defendants refused to give Dr. Jackson a copy of the grievance or his suspension documents. Yet Fairgrieves and Defendant Hernandez publicly announced Dr. Jackson's suspension to the school community and media.

54.   Moments after Dr. Jackson left the September 11, 2007 meeting, he was barraged by telephone calls from the media and teachers inquiring about his suspension, although he himself had not informed anyone of the actions against him.

55.   In response, in September 12, 2007, Jefferson High School students held a rally to protest Dr. Jackson's suspension. A riot ensued and when police arrived, they were unable to quell the disturbance. Defendant Hernandez directed the Acting Principal to cancel all classes, close the building, and send the students home, placing them in harm's way. Although students were locked out of the building, parents were not contacted. Parents were forced to learn of the incident from news programs.

56.   In Dr. Jackson's absence, a heavy police presence was required to maintain order, as well as, with the re-assignment of six additional administrators to Jefferson High School.

57.   On or about September 19, 2007, upon Dr. Jackson's retention of legal counsel, Defendant Hernandez assigned Dr. Jackson to the position of truant officer, a lower-paid, non-

administrative position.

58.  Dr. Jackson was not interviewed, or otherwise given any opportunity to present his side of the story, during the course of Superintendent Hernandez's investigation of the grade changes.  Nonetheless, he was again exonerated of any wrongdoing.  Defendants refused to give him a copy of the investigation report, yet a form of the report was anonymously leaked to the media.

59.  After Defendant Hernadez's investigation cleared Dr. Jackson of any and all wrongdoing, the School District continued his suspension, purportedly due to inadequate certification. Fully certificated as an administrator in the State of Michigan, Dr. Jackson held a provisional administrative certificate from the State of Illinois, with a Superintendent endorsement.  That certificate stated, on its face, that it was valid until June 2008.  On best information and belief, that certificate lapsed, and required renewal. Dr. Jackson immediately applied for reinstatement of his certificate to the Regional Superintendent of Schools for Boone-Winnebago County, Richard Fairgrieves.  On best information and belief, Fairgreaves delayed processing his application, until October 2007.

60.  On or about September 15, 2007, Defendant Hernandez and Fairgreaves told the media that Dr. Jackson lacked the necessary qualifications to serve as Principal of Jefferson High School.

61.  Defendants treated Dr. Jackson differently from similarly-situated administrators in the School District, many of whom served without the Illinois certification mandated by the Illinois School Code while they attempted to qualify for standard Illinois administrative certificates.  For example, Earl Hernandez, the husband of Defendant Hernandez, held at all relevant times nothing more than a temporary, non-renewable Type 29 Illinois

bilingual education certificate. Yet Earl Hernandez served as Administrator of East High School, where he was styled the "Chief Operating Officer."

62. Upon the reinstatement of his administrative certificate, Dr. Jackson was finally reinstated at Jefferson High School on or about October 17, 2007.

63. Following Dr. Jackson's reinstatement, Defendant Hernandez placed false accusations in Dr. Jackson's personnel file, and denied Dr. Jackson backpay for the period he was wrongfully suspended.

64. Upon best information and belief, numerous other District personnel have been subject to investigation, due to various allegations of misconduct, but have been treated differently.

### D.    DEFENDANTS' ATTACKS ON PLAINTIFF'S CREDENTIALS

65. In the summer of 2006, concurrent with his move from Michigan to Illinois, Dr. Jackson obtained a two-year provisional Illinois certification. A true and correct copy of the certificate is attached hereto as Exhibit B.

66. The Illinois School Code provides that such certifications may be provided to persons who meet the requirements for a regular teaching, school service personnel or administrative certificate in another state. 105 ILCS 5/21-1a.

67. On best information and belief, Dr. Jackson's provisional certificate makes him more highly qualified than numerous other administrators at Rockford Public Schools, including Earl Hernandez, Defendant Hernadez's husband, who held the position of Chief Operating Officer of East High School in Rockford.

68. At all relevant times, Earl Hernandez, whose background is in law enforcement rather than education, did not hold the requisite Type 75 administrative certificate, or even a standard teaching certificate. He merely held a temporary, non-renewable Type 29 certificate,

qualifying him to teach bilingual education classes.

69.    During the summer of 2007, Dr. Jackson made an initial attempt to take the Illinois administrators area test, which he did not pass by several points.

70.    Defendant Hernandez and Fairgrieves commented in the media that Dr. Jackson lacked the proper qualifications for his position, in violation of professional standards of confidentiality, and despite the fact that Dr. Jackson is demonstrably more qualified than other Rockford School District Administrators.

71.    In making statements to the media concerning Dr. Jackson's purported lack of qualifications, Defendant Hernandez and Fairgrieves subjected him to disparate treatment. Other similarly-situated administrators who lacked standard certification for their positions were not subjected to media scrutiny.

72.    Defendant Hernandez publicly claimed Dr. Jackson's "lack of qualification" was the basis for his suspension and demotion.  On or about September 16, 2007, on a radio program, Defendant Hernandez discussed Dr. Jackson's personal academic test scores, and insinuated that he was incompetent.

73.    On or about October 17, 2007, Defendant Hernandez and School District attorney, Steven Katz, advised Dr. Jackson that if he did not pass the administrative examination by March 1, 2008, his contract would not be renewed.

74.    Dr. Jackson passed the administration examination before this deadline.  Despite his compliance, Dr. Jackson's contract was not renewed.

75.    In imposing a deadline for passing the administrative area examination, Defendants treated Dr. Jackson disparately from other, similarly-situated administrators, who were not required to pass that test.  On best information and belief, Earl Hernandez failed the

administrative area examination at the same sitting that Dr. Jackson passed, yet retained his position as chief administrator at Jefferson High School.

E.    **DEFENDANTS' RETALIATORY "INVESTIGATION" INTO PLAINTIFF'S COMPLIANCE WITH THE DISTRICT DISCIPLINE CODE**

76.    On October 17, 2007, the day on which Dr. Jackson was reinstated, Defendant Hernandez met with Dr. Jackson and District Attorney Katz, to charge Dr. Jackson with violating the School District Discipline Code.

77.    Defendant Hernandez stated that Dr. Jackson had violated the Discipline Code by requiring that suspended students return to school with their parents.

78.    Defendant Hernandez also made false claims that Dr. Jackson had suspended "hundreds" of students for more than 10 days without due process, in violation of state law, and the Discipline Code.

79.    During the October 17, 2007, meeting, Dr. Jackson denied that he had suspended any student for greater than 10 days, or that he had violated their due process rights. Defendant Hernandez and Attorney Katz silenced him, and ordered him not to respond to their allegations.

80.    Defendant Hernandez and Attorney Katz told Dr. Jackson that an investigation report had already been prepared, which reflected violations of the School Code. This report was prepared without interviewing, or even notifying, Dr. Jackson of the allegations. When Dr. Jackson asked for a copy of the investigation report, Attorney Katz told him to file a request for the document under the Illinois Freedom of Information Act, 5 ILCS 140/1 *et. seq.* When he filed a FOIA request, it was rejected as "confidential personnel information" whose disclosure was exempted under the Act.

81.     At the conclusion of the October 17, 2007, meeting, Attorney Katz and Defendant Hernandez gave Dr. Jackson a memorandum admonishing him for the alleged violations of the disciplinary code.

## F.    DEFENDANT HERNANDEZ'S ONGOING HARASSMENT OF PLAINTIFF

82.     On best information and belief, during a September 2007 meeting with administrators, Defendant Hernandez told Jefferson Assistant Principals that she would use her supervisory authority and power to drive Dr. Jackson out of his position, and that he "would be gone by the end of the year."

83.     On or about November 20, 2007, Defendant Hernandez placed two district administrators at Jefferson High School, with instructions to report only to her.

84.     On best information and belief, Defendant Hernandez placed these administrators at Jefferson High School, with independent authority, with the intent to undermine Dr. Jackson's authority, and to frustrate his ability to manage and lead the school community.

85.     Defendant Hernandez further undermined Dr. Jackson's authority by requiring Jefferson Assistant Principals to report to the "experienced administrators" she had placed at Jefferson, in addition to Dr. Jackson.

86.     By placing the "experienced administrators" at Jefferson High School, Defendant Hernandez subjected Dr. Jackson to disparate treatment from other, similarly-situated administrators in the School District.

87.     On or about December 13, 2007, Defendant Hernandez ordered Dr. Jackson to prepare and submit daily incident reports.  Defendants Hernandez also ordered Dr. Jackson to spend at least fifty percent (50%) of his time patrolling the building and monitoring the halls, in direct contravention of the District Policy and Illinois State Law.  105 ILCS 5/10-21.4a.

88. On best information and belief, no other District administrators are subject to such requirements.

89. Defendant Hernandez fostered racial tension in the community by encouraging the perception that Dr. Jackson favored African-American and Latino students, who were more heavily affected by the grade changes and disciplinary measures than Caucasian students.

90. On best information and belief, on February 5, 2008, Defendant Hernandez told Jason Cummins, a Jefferson High School Assistant Principal, that she expected to have Dr. Jackson out of the District by March 2008, because (she claimed) he had falsified his credentials. According to the administrator, Defendant Hernandez stated that (1) Dr. Jackson received his doctorate degree by a fake, on-line, unaccredited school in Jamaica, (2) Dr. Jackson cannot read or write and had someone else complete his doctorate for him, (3) Dr. Jackson lied about serving in the Marines during the Vietnam Era, (4) that if Dr. Jackson did not pass the Illinois State Principal Test by March 1, 2008, he would be fired and his contract not renewed, and (5) she would have "gotten rid of him" a long time ago but the Board of Education wouldn't allow her to.

91. This allegation is demonstrably false, Defendant Hernandez had no basis for her statement, and made the statement knowingly, willfully, and intentionally, with actual malice and intent to defame Dr. Jackson.

### G. PLAINITFF'S EEOC CHARGE AND THE RESULTING RETALIATION

92. On December 13, 2007, Dr. Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which he accused Defendants of engaging in intentional discrimination against him on the basis of his age, gender and race.

15

93.     On or about January 31, 2008, Defendant Hernandez conducted a formal evaluation of Dr. Jackson.   Defendant Hernandez prepared the evaluation, even though she was never physically present at Jefferson High School.

94.     In this evaluation, she falsely rated Dr. Jackson as having "unsatisfactory" job performance in 24 out of 27 job characteristics.

95.     Defendant Hernandez based Dr. Jackson's unsatisfactory ratings on several actions that she herself had instructed him to take.

96.     Defendant Hernandez stated in Dr. Jackson's evaluation that he:

> failed to use staff meetings to communicate essential information.  For example, teachers were not informed of a bomb threat in [his] building. Staff heard about it on the news.  [Dr. Jackson was] informed that it is appropriate to have a staff meeting following student dismissal to explain such occurrences to staff.

97.     This statement is belied.  Dr. Jackson was first informed of the bomb threat by Defendant Hernandez at approximately 2:30 p.m., with only a half hour of school remaining. Defendant Hernandez instructed Officer Danforth, of the Rockford Police Department, to sweep the building, but not to alert anyone of the possible presence of a bomb. Defendant Hernandez explicitly instructed Dr. Jackson not to inform Jefferson staff of the bomb threat.  By withholding this information from his staff, Dr. Jackson was merely following Defendant Hernandez's direct instructions.

98.     Defendant Hernandez also attributed others' failures to Dr. Jackson.

99.     In her evaluation of Dr. Jackson, Defendant Hernandez stated:

> You have failed to follow the teacher contract and assign teachers accordingly.  For example, you recently assigned a teacher to teach all seven periods of the day and failed and refused to provide the teacher with the contractually agreed upon planning periods.  The teacher correctly grieved the inappropriate assignment which resulted in the district expending resources to address the grievance.

100.    This statement is erroneous.  Dr. Jackson did not prepare the master schedule, or make the assignments to which Defendant Hernandez was referring.  When Dr. Jackson discovered that the master schedule had been completed incorrectly, he sought to remedy the error. Dr. Jackson never refused, nor denied, Jefferson teachers their mandatory planning periods.

101.    The teacher's grievance of the schedule was resolved within minutes, with no meaningful expenditure of district resources.

102.    Defendant Hernandez further criticized Dr. Jackson stating:

>   You have failed to participate in staff development with regard to high school reform, student achievement, and discipline.  It is necessary to also encourage staff members in these areas.

103.    This criticism is blatantly false.  Dr. Jackson was highly involved in the reform of Jefferson High School.  He actively encouraged teachers to seek parent involvement in order to increase student achievement.   In fact, he was disciplined by Defendant Hernandez for doing just that.

104.    Defendant Hernandez again falsely alleged that Dr. Jackson had suspended students for more than 10 days in violation of due process, state law, and district policy.  Plaintiff is unaware of any student at Jefferson High School who was suspended for more than 10 days, and Defendants refused to provide any evidence of any such violation.

105.    On or about April 9, 2008, Defendant Rockford elected not to renew Dr. Jackson's contract, based on Hernandez's unsubstantiated and groundless unsatisfactory ratings of Dr. Jackson, and despite Dr. Jackson's formal rebuttal of her false allegations.

106.    Defendants' reasons for terminating Dr. Jackson's employment were pretextual and were

designed to obfuscate Defendants' discrimination against Dr. Jackson.

## H.    PLAINTIFF'S PROTECTED ACTIVITY AND THE RESULTING RETALIATION

107.    While at Jefferson High School, Dr. Jackson advocated for equal treatment of African-American and Latino students.

108.    Dr. Jackson instituted several initiatives to increase equality and eliminate the historical racial discrimination that plagued the school.

109.    Due to a significant correlation between student achievement and race at Jefferson High School, Dr. Jackson instituted initiatives to improve the academic achievement of minority students, and to address the "achievement gap" separating African-American and Latino students from Caucasian and Asian students.  These initiatives included, *inter alia*, a parental contact policy, requiring teachers to contact parents before imposing failing grades, and more fully involving parents in the education and discipline of their children. These research-based strategies have been shown to significantly improve student performance, and reduce the impact of continued racial discrimination.

110.    Plaintiff reasonably believed that Defendants' unequal treatment of African-American and Latino students was unlawful.

111.    Plaintiff repeatedly complained to Defendants, including then-superintendent Dr. Thompson and Assistant Superintendent, Martha Hayes, regarding Rockford's continued disparate treatment of African-American and Latino students. Dr. Jackson also complained to Defendants that Defendants were disciplining Caucasian and African-American students differently.

112.    Jefferson High School data indicates a large discrepancy between the number of arrests, suspensions, discipline referrals and expulsions among Caucasian and African-American

18

students.

113.    Defendants were aware of, investigated, and intentionally retaliated against Dr. Jackson, based on his enforcement of the parental contact requirement for failing grades, instituted to reduce the disparities in academic achievement by African-American and Latino students at Jefferson High School.

114.    Shortly thereafter, and in response to Dr. Jackson's protected activity, Defendants intentionally, and in retaliation for engaging in protected activity, suspended, and later terminated, Dr. Jackson, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, 42 U.S.C. §1981, and 42 U.S.C. §1983.

115.    Defendants' suspension and termination of Dr. Jackson was part of Defendants' informal custom or policy of retaliating against individuals seeking equality for African-American and Latino students.

## COUNT I
### 42 U.S.C.S. § 1983 VIOLATION

116.    Plaintiff re-alleges Paragraphs 1-115 of this Complaint as though fully set forth herein as paragraphs 1-115 of Count I of this Complaint.

117.    Defendant Board is a body politic and corporation organized pursuant to the Illinois School Code, 105 ILSC 5/11.

118.    Defendant Hernandez, at all times relevant herein, was an officer and agent of Defendant Rockford.  Defendant Hernandez is female, and on best information and belief, is Caucasian.

119.    At all times relevant herein, Defendants were acting under color of state law.

120.    Dr. Jackson is a 55 year old African-American male.

121.    The Board consists of six Caucasian members and one African-American.

122.    During the times relevant herein, Defendants subjected Dr. Jackson to treatment that was different from the manner in which Defendants treated similarly-situated female administrators, and administrators who were not African-American, and did so willfully, intentionally, and deliberately, with intent to discriminate against Dr. Jackson based on his race and gender.

WHEREFORE, Dr. Jackson respectfully requests that this Honorable Court find that Defendants intentionally discriminated against Dr. Jackson, on the basis of age, gender and race, enter a judgment making the following findings and granting the following relief:

A.    That this Honorable Court finds that the Defendants have engaged in intentional discrimination, on the basis of gender and race, against Dr. Jackson;

B.    That this Honorable Court award Dr. Jackson back pay from the date of his discriminatory termination, to date;

C.    That this Honorable Court award Dr. Jackson front pay, or in the alternative, reinstatement;

D.    That this Honorable Court award Dr. Jackson punitive damages as a result of Defendants malicious and reckless indifference to Dr. Jackson's federally protected rights;

E.    That this Honorable Court award prejudgment interest and costs;

F.    That this Honorable Court award reasonable attorney's fees and costs; and

G.    That this Honorable Court award such and other further relief as it may deem just and equitable.

## COUNT II
## 42 U.S.C.S. § 1981 VIOLATION

123. Plaintiff re-alleges Paragraphs 1-122 of this Complaint as though fully set forth herein as paragraphs 1-122 of Count II of this Complaint.

124. Dr. Jackson and Defendant Board were parties to an employment contract.

125. As more fully set forth above, Defendant Board engaged in intentional discrimination against Dr. Jackson in its performance of said contract, because he is African-American.

126. Defendants failed to renew Dr. Jackson's employment contract and terminated his employment, despite his superior performance, in retaliation for his engaging in protected acts.

127. Defendants did not equally treat similarly-situated employees who were not African-Americans in the performance of their employment contracts.

128. As a result of Defendants' intentional discrimination, Dr. Jackson has suffered injury to his personal and professional reputation, loss of income, humiliation and other and further damage and injury.

WHEREFORE, Dr. Jackson respectfully requests that this Honorable Court enter a judgment granting the following relief:

A.    That this Honorable Court finds that the Defendants have engaged in intentional discrimination, on the basis of race, against Dr. Jackson;

B.    That this Honorable Court award Dr. Jackson back pay from the date of his discriminatory and retaliatory termination, to date;

C.    That this Honorable Court award Dr. Jackson front pay, or in the alternative, reinstatement;

D.    That this Honorable Court award Dr. Jackson monetary damages for pain, suffering, emotional distress, and inconvenience;

E.    That this Honorable Court award prejudgment interest and costs;

F.    That this Honorable Court award reasonable attorney's fees and costs; and

G.    That this Honorable Court award such other and further relief as it may deem just and equitable.

<u>**COUNT III**</u>
**SECTION 1981, 42 U.S.C. §1981: RETALIATION**

129.    Plaintiff re-alleges Paragraphs 1-128 of this Complaint as though fully set forth herein as paragraphs 1-128 of Count III of this Complaint.

130.    Dr. Jackson is African-American.

131.    Dr. Jackson engaged in protect activity while employed as Principal of Jefferson High School.

132.    Plaintiff reasonably believed that Defendants' unequal treatment of African-American and Latino students was unlawful under Section 1981.

133.    Plaintiff repeatedly complained to Defendants regarding their continued disparate treatment of African-American and Latino students.

134.    Defendants knew of Dr. Jackson's protected activity.

135.    Shortly after Dr. Jackson engaged in protected activity, and in response to Dr. Jackson's protected activity, Defendants intentionally, and in retaliation for engaging in protected activity, suspended, and later terminated, Dr. Jackson, in violation of Section 1981.

136.    Defendants' suspension and termination of Dr. Jackson was part of Defendants' informal custom or policy of retaliation.

WHEREFORE, Dr. Jackson respectfully requests that this Honorable Court enter a

judgment granting the following relief:

A.  That this Honorable Court finds that the Defendants intentionally retaliated against Dr. Jackson for engaging in protected activity under Section 1981;

B.  That this Honorable Court award Dr. Jackson back pay from the date of his discriminatory and retaliatory termination, to date;

C.  That this Honorable Court award Dr. Jackson front pay, or in the alternative, reinstatement;

D.  That this Honorable Court award Dr. Jackson monetary damages for pain, suffering, emotional distress, and inconvenience;

E.  That this Honorable Court award prejudgment interest and costs;

F.  That this Honorable Court award reasonable attorney's fees and costs; and

G.  That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT IV
## SECTION 1983, 42 U.S.C. §1983: RETALIATION

137.  Plaintiff re-alleges Paragraphs 1-136 of this Complaint as though fully set forth herein as paragraphs 1-136 of Count IV of this Complaint.

138.  Defendant Board is a body politic and corporation organized pursuant to the Illinois School Code, 105 ILSC 5/11.

139.  Defendant Hernandez, at all times relevant herein, was an officer and agent of Defendant Rockford.  Defendant Hernandez is a female, and on best information and belief, is Caucasian.

140.  At all times relevant herein, Defendants were acting under color of state law.

141.    Defendant Jackson is a 55 year old African-American male.

142.    The Board consisted of six Caucasian members and one African-American male.

143.    Dr. Jackson engaged in protected activity.

144.    Plaintiff reasonably believed that Defendants' unequal treatment of African American and Latino students was unlawful under Section 1983.

145.    Plaintiff repeatedly complained to Defendants regarding their continued disparate treatment of African-American and Latino students.

146.    Defendants knew of Dr. Jackson's protected activity.

147.    Shortly after Dr. Jackson engaged in protected activity, and in response to Dr. Jackson's protected activity, Defendants intentionally, and in retaliation for engaging in protected activity, suspended, and later terminated, Dr. Jackson, in violation of Section 1983.

WHEREFORE, Dr. Jackson respectfully requests that this Honorable Court enter a judgment granting the following relief:

A.    That this Honorable Court finds that the Defendants intentionally retaliated against Dr. Jackson for engaging in protected activity under Section 1983;

B.    That this Honorable Court award Dr. Jackson back pay from the date of his discriminatory and retaliatory termination, to date;

C.    That this Honorable Court award Dr. Jackson front pay, or in the alternative, reinstatement;

D.    That this Honorable Court award Dr. Jackson monetary damages for *inter alia*, pain, suffering, emotional distress, reputational loss and inconvenience;

E.    That this Honorable Court award prejudgment interest and costs;

F.    That this Honorable Court award reasonable attorney's fees and costs; and

G.    That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT V
## TITLE VI, 42 U.S.C. §2000d, RETALIATION

148.    Plaintiff re-alleges Paragraphs 1-147 of this Complaint as though fully set forth herein as paragraphs 1-147 of Count V of this Complaint.

149.    Dr. Jackson is African-American.

150.    Dr. Jackson engaged in protected activity.

151.    Plaintiff reasonably believed that Defendants' unequal treatment of African-American and Latino students was unlawful under Title VI.

152.    Plaintiff repeatedly complained to Defendants regarding their continued disparate treatment of African-American and Latino students.

153.    Defendants knew of Dr. Jackson's protected activity.

154.    Shortly after Dr. Jackson engaged in protected activity, and in response to Dr. Jackson's protected activity, Defendants intentionally, and in retaliation for engaging in protected activity, suspended, and later terminated, Dr. Jackson, in violation of Title VI.

WHEREFORE, Dr. Jackson respectfully requests that this Honorable Court enter a judgment granting the following relief:

A.    That this Honorable Court finds that the Defendants intentionally retaliated against Dr. Jackson for engaging in protected activity under Title VI;

B.    That this Honorable Court award Dr. Jackson back pay from the date of his discriminatory and retaliatory termination, to date;

C.    That this Honorable Court award Dr. Jackson front pay, or in the alternative,

reinstatement;

D.    That this Honorable Court award Dr. Jackson monetary damages for pain, suffering, emotional distress, and inconvenience;

E.    That this Honorable Court award prejudgment interest and costs;

F.    That this Honorable Court award reasonable attorney's fees and costs; and

G.    That this Honorable Court award such other and further relief as it may deem just and equitable.


## COUNT VI
## TORTIOUS INTERFERRENCE WITH CONTRACT

155.    Plaintiff re-alleges Paragraphs 1-154 of this Complaint as though fully set forth herein as paragraphs 1-154 of Count VI of this Complaint.

156.    A valid and enforceable contract existed between Dr. Jackson and Defendant Rockford.

157.    Based upon his superior evaluation, and on Jefferson High School's steady improvement during the 2006-2007 and 2007-2008 academic years, Dr. Jackson had a reasonable expectation of continuing the business relationship he had with the Defendant Rockford.

158.    Defendant Hernandez willfully and intentionally gave Dr. Jackson a false evaluation.

159.    As Superintendent of Rockford Public Schools District 205, and as Dr. Jackson's supervisor, Defendant Hernandez knew of this reasonable expectation.

160.    Defendant Hernandez purposefully interfered with Dr. Jackson's business relationship when she provided false information to Defendant Rockford and encouraged Rockford not to renew Dr. Jackson's employment contract. Specifically, Defendant Hernandez defamed Dr. Jackson when she told Defendant Rockford that he lacked the qualifications to serve

as Principal of Jefferson High School, qualifications, which Defendant Hernandez's husband lacks.

161.  Defendant Hernandez violated District policy when she improperly suspended Dr. Jackson, on September 11, 2007, and prepared and submitted a false evaluation of Dr. Jackson on January 31, 2008.

162.  Furthermore, Defendant Hernandez used the responsibilities invested in her, by Defendant Rockford, to cause the Rockford to breach its responsibilities to Dr. Jackson.

163.  Defendant Hernandez undertook these actions solely to harm Dr. Jackson and not to further the interests of Defendant Rockford.

164.  With actual malice, and in derogation of her responsibilities as Superintendent of Rockford Public Schools District 205, Defendant Hernandez arbitrarily and capriciously induced Defendant Rockford to breach its responsibilities to Dr. Jackson.

165.  As a result of this interference, Dr. Jackson's contract was not renewed and he suffered loss of income, injury to professional reputation and emotional distress, loss of back pay, front pay, humiliation, and other and further damage.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an order finding and granting the following:

A.    Finding that a contractual relationship existed between Dr. Jackson and Defendant Rockford;

B.    Finding that Defendant Hernandez knew and intentionally and unjustifiably induced Defendant Rockford to breach its responsibility to Dr. Jackson;

C.    Finding that, as result of this inducement, Defendant Rockford did, in fact, breach its obligations to Dr. Jackson;

D.    Finding that Defendant Hernandez acted with malice to overcome any privilege to act on behalf of Defendant Rockford, and to interfere with Defendant Rockford's obligations to Dr. Jackson;

E.    Finding that Dr. Jackson engaged in conduct completely unrelated to the interests of Defendant Rockford, which gives rise to his right to act on behalf of those institutions;

F.    Award Dr. Jackson compensation reasonably calculated to compensate him for all damages sustained as result of the breach of contract;

G.    Award prejudgment interest and costs; and

H.    Award such other and further relief as Honorable Court deems appropriate, equitable and just.

## COUNT VII
## DEFAMATION PER SE

166.   Plaintiff re-alleges Paragraphs 1-165 of this Complaint as though fully set forth herein as paragraphs 1- 165of Count VII of the Complaint.

167.   On best information and belief, on February 5, 2008, Defendant Hernandez informed Jason Cummins, a Jefferson High School Assistant Principal, that (1) Dr. Jackson received his doctorate degree by a fake, on-line, unaccredited school in Jamaica, (2) Dr. Jackson cannot read or write and had someone else complete his doctorate for him, (3) Dr. Jackson lied about serving in the Marines during the Vietnam Era, (4) that if Dr. Jackson did not pass the Illinois State Principal Test by March 1, 2008, he would be fired and his contract not renewed, and (5) she would have "gotten rid of him" a long time ago but the Board of Education wouldn't allow her to.

168. On best information and belief, Defendant Hernandez informed this administrator that she would use Dr. Jackson's alleged falsehoods as a basis for termination.

169. On best information and belief, Defendant Hernandez also made such statements to other personnel of Defendant School District.

170. Defendant Hernandez's statements were false.  Contrary to her misrepresentation, Dr. Jackson held a doctorate in education from an accredited university.  His representations concerning his background and qualifications are true.

171. Defendant Hernandez had no basis for making this defamatory allegation about Dr. Jackson to a third party, and chose to make it, knowing that the defamatory allegation was untrue.

172. Defendant Hernandez's unfounded, untruthful allegation harmed Dr. Jackson's reputation and undermined his authority at Jefferson High School.

173. Defendant Hernandez's unfounded and untruthful allegation imputed, to Dr. Jackson, a lack of ability in his chosen profession or trade.

WHEREFORE, Dr. Jackson respectfully requests that this Honorable Court enter a judgment making the following findings and granting the following relief:

A.    That this Honorable Court find that Defendant Hernandez, both individually, and as an agent of Defendant Rockford, made defamatory comments about Dr. Jackson to a third party.

B.    That this Honorable Court find that Defendant Hernandez defamed Dr. Jackson, by imputing a lack of ability in his profession;

C.    That this Honorable Court find that Defendant Hernandez's defamatory statements harmed Dr. Jackson;

D.      That this Honorable Court issue an order enjoining Defendants from making further defamatory comments about Dr. Jackson;

E.      That this Honorable Court award Dr. Jackson money reasonably calculated to compensate him for all monetary damages sustained as a result of the defamation by Defendant;

F.      That this Honorable Court award prejudgment interest and costs; and

G.      That this Honorable Court award such other and further relied as it may deem just and equitable.


DATED:        September 8, 2008

                                    Respectfully submitted,

                                    By:  /s/ Elaine K.B. Siegel

                                    One of Dr. Jackson's Attorneys


OF COUNSEL:

Elaine K.B. Siegel
Ashley B. Zuerlein
Elaine K.B. Siegel & Associates, P.C.
39 South LaSalle Street, Suite 617
Chicago, Illinois 60603
(312) 236-8088