## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| KEY EQUIPMENT FINANCE INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. |
| v. | ) | |
| | ) | |
| STATELINE EXPRESS INC., an Illinois | ) | |
| corporation, OWEN COSTANZA, individually, | ) | |
| and TIMOTHY C. NORTON, individually, | ) | |
| | ) | |
| Defendants. | ) | |

### VERIFIED COMPLAINT

**COMES NOW**, KEY EQUIPMENT FINANCE INC., ("KEY EQUIPMENT") plaintiff in the instant matter, by and through its attorneys, Coston & Rademacher, and complains against Defendants, STATELINE EXPRESS INC., an Illinois corporation ("STATELINE"), OWEN COSTANZA, individually ("COSTANZA") and TIMOTHY C. NORTON, individually ("NORTON"), as follows:

### NATURE OF ACTION

1.     This action arises out of STATELINE EXPRESS INC.'s refusal and failure to perform its obligation as lessee under an equipment lease agreement, and COSTANZA's and NORTON's failure to perform their obligations under the personal guaranties related to the lease agreement.

### JURISDICTION

2.     Plaintiff is a corporation organized under the laws of the State of Michigan, with its principal place of business in Superior, Colorado.

3.     Upon information and belief, Defendant STATELINE EXPRESS INC. is an Illinois corporation with its principle place of business at 115 Benedict Dr. SW, Poplar Grove, IL 61065.

4.     Upon information and belief, Defendant OWEN COSTANZA is a citizen of the State of Illinois and resides at 199 Edson St., Poplar Grove, IL 61065.

5.     Upon information and belief, Defendant TIMOTHY C. NORTON is a citizen of the State of Wisconsin and resides at 2126 Angelo Drive, Mosinee, WI 54455.

6.     Jurisdiction in this Court is proper under 28 U.S.C. §1332 as the total amount in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different States.

7.     Venue in this action is proper pursuant to 28 U.S.C. §1391 (a) in that a substantial part of the events giving rise to this claim occurred in the Western District of Illinois.

## COUNT I
## BREACH OF MODIFICATION AND ASSUMPTION AGREEMENT AS TO MASTER LEASE #1128560 / 1253668

1.     On or about October 4, 2006, Just Us Inc. ("JUI") entered into a Master Lease Agreement #1128560 / 1253668 (the "Original Agreement") with KEY EQUIPMENT, whereby KEY EQUIPMENT agreed to lease to JUI two 2005 Frt CL 120 trucks ("Vehicle I") and JUI agreed to pay forty eight (48) monthly installments of $3,595.97 each therefore.   (See Master Lease Agreement and Vehicle Schedule attached hereto and incorporated herein as Exhibit A).

2.     KEY EQUIPMENT performed its obligations pursuant to the lease terms by and among other things supplying the trucks of said lease to JUI.   The

equipment under the Original Agreement was accepted by JUI and signed by NORTON as President on October 4, 2006. (See attached Delivery and Acceptance Certificate attached hereto as Exhibit B).

3.     JUI made payments under the terms of the Original Agreement but it breached the terms of the Original Agreement in that it ceased making monthly payments to KEY EQUIPMENT on or about May 1, 2007, which constituted a default under the Original Agreement.

4.     Pursuant to a Modification and Assumption Agreement entered into on or about March 1, 2008, ("Assumption Agreement") (see Exhibit C attached) STATELINE agreed to assume all the obligations and duties of JUI under the Original Agreement. KEY consented to the Assumption Agreement with the understanding that JUI and NORTON would continue to be responsible for the terms of the Original Agreement in the event that STATELINE defaulted on the terms of the Original Agreement or the Assumption Agreement.

5.     Pursuant to paragraph 16, upon default of the Original Agreement, STATELINE agreed to allow lessor to: (1) to recover from lessee the sum of (a) any and all rentals, late charges and other amounts due and owing under any or all leases, (b) collect the applicable stipulated loss value under any and all leases, and (c) lessor's related attorney's fees, collection costs and expenses; (2) enter upon lessee's premises and take possession of any or all such equipment; (3) terminate any and all leases; and/or (4) utilize any other remedy provided by law. Lessee shall also pay to Lessor interest on all unpaid sums due hereunder from the date thereof until paid in full at a rate per annum equal to the lower of 1 ½% per month or the highest rate of interest

permitted by application law.  Lessee waives any rights that lessee may have to require lessor to sell or otherwise dispose of the Equipment.

5.    Pursuant to paragraph 17 of the Original Agreement, Lessee may not assign any schedule or any of its rights or obligations thereunder without the parties' written consent.

6.    Pursuant to paragraph 4 of the Original Agreement, STATELINE agreed to pay late charges equal to ten (10%) percent of the amount of each such late payments for failure to pay amounts due under the Original Agreement within ten (10) days after the due date.

7.    Pursuant to paragraph A of the Trac Lease Rider to the Original Agreement, STATELINE agreed to pay $40,000 (the estimated fair market value) upon expiration of the Initial Term of the Original Agreement.  The Trac Lease Rider is attached hereto and incorporated herein as Exhibit D.

8.    KEY EQUIPMENT has accelerated the balance of the Original Agreement pursuant to paragraph 176(i)(A).

9.    Due to STATELINE's default, as of September 8, 2008, KEY EQUIPMENT claimed as due and owing pursuant to the Assumption Agreement $172,578.92, which is based on:  (a) the past due unpaid balance of $23,259.46; plus (b) the accelerated balance of all amounts due under the Agreement totaling $109,319.46; plus (c) $40,000.00 Trac Lease Rider payment.

10.    The foregoing sum was demanded from JUI but JUI failed and refused to pay said sum, which sum remains due and owing.

**WHEREFORE**, Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendant STATELINE EXPRESS INC., in at least the sum of $172,578.92, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

## COUNT II
## BREACH OF PERSONAL GUARANTY
## LEASE #1128560 / 1253668

11.     Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 10 of this Complaint, inclusive, as if fully set forth herein.

12.     On or about October 4, 2006, Defendant NORTON, individually, duly executed an instrument in writing and in consideration of KEY EQUIPMENT's leasing and delivering to JUI two (2) 2005 Frt CL 120 trucks, NORTON unconditionally and irrevocably guaranteed prompt payment and performance of all obligations of the lessee, JUI, under the Original Agreement.  NORTON further agreed to waive all defenses and notices and that lessor, KEY EQUIPMENT, can proceed directly against NORTON without first proceeding against JUI or against the Equipment.  Moreover, NORTON agreed that KEY EQUIPMENT could renew, extend or otherwise modify the terms of each Schedule and that NORTON would be bound by such changes.  A true and correct copy of the Personal Guaranty is attached hereto and incorporated herein as Exhibit E.

13.     Thereafter, in reliance on the aforementioned guaranty and after the guaranty was given, the vehicles were delivered to JUI and due notice thereof was

given to NORTON and KEY EQUIPMENT entered into the Original Agreement with JUI.

14.     JUI defaulted under the Original Agreement and notice of the default as well as a demand for the amounts due were sent to NORTON.

15.     Demand has been made upon NORTON to pay the amounts due and owing under the Original Agreement but NORTON has failed and refused to pay and continues to refuse to pay the amounts due KEY EQUIPMENT under the Original Agreement.

16.     Due to NORTON's failure to cure the amounts owed under the Personal Guaranty, KEY EQUIPMENT has been damaged in the amount of $172,578.92, plus costs, interest and attorneys' fees.

17.     Pursuant to the Assumption Agreement entered into on or about March 1, 2008, COSTANZA individually, duly executed an instrument in writing and in consideration of STATELINE acquiring two (2) 2005 Frt CL 120 trucks from NORTON. COSTANZA unconditionally and irrevocably guaranteed prompt payment and performance of all obligations of STATELINE, under the Assumption Agreement. COSTANZA further agreed to waive all defenses and notices and that lessor, KEY EQUIPMENT, can proceed directly against COSTANZA without first proceeding against STATELINE or against the Equipment. Moreover, COSTANZA agreed that KEY EQUIPMENT could renew, extend or otherwise modify the terms of each Schedule and that COSTANZA would be bound by such changes. A true and correct copy of the Personal Guaranty is attached hereto and incorporated herein as Exhibit F.

18.     STATELINE has defaulted under the Assumption Agreement and notice

of the default as well as a demand for the amounts due were sent to COSTANZA.

19.     Demand has been made upon COSTANZA to pay the amounts due and owing under the Assumption Agreement but COSTANZA has failed and refused to pay and continues to refuse to pay the amounts due KEY EQUIPMENT under the Assumption Agreement.

20.     Due to COSTANZA's failure to cure the amounts owed under the Personal Guaranty, KEY EQUIPMENT has been damaged in the amount of $172,578.92, plus costs, interest and attorneys' fees.

**WHEREFORE**, Plaintiff, KEY EQUIPMENT FINANCE INC., prays for judgment against Defendants, OWEN COSTANZA and TIMOTHY C. NORTON, in at least the sum of $172,578.92, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

Respectfully Submitted,

KEY EQUIPMENT FINANCE INC.

By:_____
One of its Attorneys

Patricia E. Rademacher
Maysoun B. Iqal
Coston & Rademacher
105 W. Adams, Suite 1400
Chicago, IL 60603
Phone: 312-205-1010
Firm No. 41421

## **VERIFICATION**

I, Sal Boscia, on oath state that I am the Senior Litigation Coordinator of Key Equipment Finance Inc. in the above-entitled action. The allegations in this Complaint are true to the best of my knowledge and belief.

_____
Sal Boscia

Subscribed and sworn to before me
this /0ᵗʰ day of  September, 2008

_____
Notary Public



**MASTER LEASE AGREEMENT**

Master Lease Agreement # 1128560

| Lessor: | Lessee: |
|---|---|
| Key Equipment Finance Inc.<br>3075 Highland Pkwy, 7th floor<br>Downers Grove, IL 60515 | JUST US INC.<br>865 E. JACKSON SUITE 7<br>Belvidere, IL 61008<br>TIM NORTON                    (715) 573-0240 |

**1. Master Lease.** The undersigned Lessee ("**Lessee**") unconditionally and irrevocably agrees to lease from the above referenced Lessor (together with all successors and Assignees thereof, collectively, "**Lessor**") the equipment and other personal property (together with all current and future accessories, additions and attachments thereto, and all replacements and substitutions therefore, collectively, the "**Equipment**") described in each Equipment Schedule referencing this Master Lease Agreement (each, together with any attachments thereto, a "**Schedule**") and purchased from the supplier(s) noted in the applicable Schedule (each, a "**Supplier**"). Any Equipment subject to title registration laws may be referred to herein as a Vehicle ("**Vehicle**"). Each Schedule shall incorporate by reference all of the terms of this Master Lease Agreement and shall constitute a separate lease agreement (each such Schedule, together with such incorporated terms of this Master Lease Agreement, collectively, a "**Lease**") that is assignable separately from each other Lease. In the event of a conflict between this Master Lease Agreement and the terms of a Schedule, the terms of the Schedule shall prevail. No provision of a Lease may be waived or modified except in a writing signed by Lessor's duly authorized representative.

**2. Term.** The term of each Lease shall consist of an interim term ("**Interim Term**"), initial term ("**Initial Term**") and, one or more renewal terms, if any ("**Renewal Term**"). The Interim Term, Initial Term and Renewal Term are referred to collectively as the "**Term**". The Interim Term shall commence on the date the Equipment is accepted for lease by Lessee under the Lease ("**Commencement Date**") and shall terminate on the day prior to the commencement of Lessor's applicable monthly billing cycle, which latter date shall be the date the Initial Term commences as set forth in the applicable Schedule. The Initial Term shall continue for the number of months set forth in the Schedule. Lessee shall be deemed to have accepted the Equipment for lease promptly upon its delivery from the Supplier and, at Lessor's request, shall confirm for Lessor such acceptance.

**3. Rent.** All advance rent under any Schedule is due and payable upon its execution and is not refundable. All subsequent periodic rental payments payable with respect to each month during the Term ("**Periodic Rent**") and other amounts due from Lessee to Lessor under such Schedule (together with all advance rentals, "**Rent**") shall be paid pursuant to the terms set forth in such Schedule. No acceptance of any item of Equipment may be revoked by Lessee. Unless otherwise instructed by Lessor in writing, all payments of Rent shall be made to Lessor's address set forth in the applicable Schedule. Any payment by or on behalf of Lessee that purports to be payment in full for any obligation under any Lease may only be made after Lessor's prior written agreement to accept such payment amount. If any check or funds transfer request for any Rent is returned to Lessor unpaid, Lessee shall pay Lessor a service charge of $55 for each such returned check or request.

**4. Rent Payments; Fees.** Other than Periodic Rent payable as part of an advance payment, the first payment of Periodic Rent due under the Lease shall be due and payable on the date specified in Lessor's first invoice therefore ("**First Payment Date**"). On the First Payment Date, in addition to the Periodic Rent due on such date Lessee shall pay Interim Rent for each day from and including the date Lessor pays the Vendor of the Equipment the price thereof, to but excluding the first day of Lessor's applicable monthly billing cycle at a daily rate equal to one 30th of the periodic Rent amount set forth on the Schedule in question. Periodic Rent (other than that which is part of any advance payment) is due monthly in advance beginning on the First Payment Date and continuing on the same day of each month during the Term regardless if Lessee receives an invoice therefore. If Lessee fails to pay any sum due under the Lease within ten (10) days after its due date, Lessee agrees to pay a late charge equal to (as reasonable liquidated damages and not as a penalty) the greater of $29 or 10% of the amount of each such late payment. If any check or funds transfer request for any Rent is returned to Lessor unpaid, Lessee shall pay Lessor a service charge of $55 for each such returned check or request. Lessee agrees to pay Lessor a documentation and other transaction fees as applicable, as set forth on the Schedule.

**5. Equipment.** Lessee shall keep the Equipment free of liens, claims and encumbrances, and shall not modify, alter, add to, move, sell, transfer, lease, sublease or otherwise encumber any Equipment or permit any Equipment to become attached to any realty, in each case without the prior written consent of Lessor. Any modification, alteration or addition to any Equipment shall automatically become the sole property of Lessor. Lessor shall have the right to enter Lessee's premises during business hours to inspect any Equipment and observe its use upon at least one (1) day's prior written or verbal notice. Lessee shall comply with all applicable laws, rules and regulations concerning the operation, ownership, use and/or possession of the Equipment, and Supplier's requirements for continued maintenance thereof. If Lessee fails to accept delivery of any Equipment for any purpose, Lessee agrees to pay the price invoiced by Supplier to Lessor therefore and to indemnify and hold Lessor harmless and to defend Lessor (with counsel selected by Lessor) against, any claim brought by Supplier. Any Vehicle shall be titled and registered as directed by Owner within ten (10) days of User's receipt of the Equipment. If the Equipment is not timely or properly registered within the ten (10) day period, then, in addition to the other remedies available to Owner hereunder, User shall be charged a late fee as set forth above in Section 4 for each additional thirty (30)-day period the Equipment remains unregistered or improperly registered.

**6. Obligations Absolute.** NOTWITHSTANDING ANY CLAIM OF DEFECT OR ANY OTHER REASON WHATSOEVER, ALL RENTALS AND OTHER PAYMENTS UNDER EACH LEASE SHALL BE PAID BY LESSEE TO LESSOR ON EACH PAYMENT DATE ABSOLUTELY AND UNCONDITIONALLY, WITHOUT ANY DEFENSE, SETOFF, CLAIM OR COUNTERCLAIM OF ANY NATURE. Lessee hereby waives all rights to any indirect, punitive, special or consequential damages in connection with the Equipment or this Lease.

**7. Use.** All Equipment shall be used solely for business purposes, and not for personal, household or other use. Lessee shall maintain the Equipment in good repair in accordance with the instructions of the manufacturer thereof so that it shall be able to operate in accordance with the manufacturer's specifications. Lessee shall bear the entire risk of loss or damage to the Equipment, and may not transfer, sublease or assign any of its rights or obligations under any Lease or Equipment without Lessor's prior written consent. Lessor shall own the Equipment and may sell, assign, transfer or grant a security interest to any third party (each, an "**Assignee**") in any Equipment, Rent or Lease without notice to or consent by Lessee.

**8. Early Termination.** Lessor hereby agrees that Lessee may terminate this Lease at any time upon thirty (30) days prior written notice and on the next Rent Payment date, in addition to the payment of Rent due on such date, and the payment from Lessee to Lessor of all amounts then due and owing. Lessee shall pay to Lessor the higher of the Vehicle's then fair market value or the applicable Stipulated Loss Value of the Vehicle as set forth in the applicable exhibit to the Schedule in question ("**SLV**") and upon the indefeasible receipt of all such amounts Lessor shall convey to Lessee its entire right title and interest in and to such Vehicle "as-is", "where-is" without representation or warranty.



**EXHIBIT**

**A**



**MASTER LEASE AGREEMENT, continued**

Master Lease Agreement # 1128560

**9. Insurance; Loss or Damage; Indemnification.** Lessee shall at all times maintain liability, fire, damage, collision, casualty (covering death and personal injury) and theft insurance on the Equipment in amounts and with insurers acceptable to Lessor and as may be further specified in the Schedule. All such policies shall list Lessor and each Assignee as an additional insured and loss payee thereon. With respect to insurance covering loss or damage to Equipment that are Vehicles, Lessee shall procure and maintain insurance coverage for no less than the SLV of each Vehicle, insuring Lessee and Lessor, as their respective interests appear. With respect to insurance covering liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the Vehicle, the minimum required coverage per occurrence shall be as indicated on the Schedule. All insurance policies shall require the insurer to provide Lessor with at least 30 days' prior written notice of any material change in or cancellation of such insurance. In the event that Lessor determines that any such insurance is not in effect, Lessor may (but shall not be required to) obtain such insurance at Lessee's expense. Upon any damage to any Equipment Lessee shall promptly repair such Equipment to Lessor's satisfaction at Lessee's sole expense. In the event Lessor determines any item of Equipment has suffered a total loss ("Casualty Occurrence"), Lessee shall upon Lessor's written notice pay to Lessor the applicable SLV of the Equipment suffering such Casualty Occurrence. Notwithstanding any loss or damage to the Equipment, Lessee shall continue to pay all Rent as and when the same shall become due and in the case of a Casualty Occurrence, continue to pay Rent until such time as Lessor has received the applicable SLV and all other amounts then due and owing under the Lease. Lessee shall indemnify, reimburse and defend (with counsel acceptable to Lessor) Lessor, including each Assignee, its and their affiliated companies and its and their officers, directors, employees and agents, on demand, from and against any and all damages, losses, liabilities, expenses, claims or legal proceedings relating to or arising out of this Lease or the ownership, use, operation, possession, sale, lease or maintenance of the Equipment, regardless of whether the term thereof shall have commenced or expired, including (without limitation) Lessor's attorneys' fees and expenses. Lessee's tax and indemnity obligations shall survive the termination of this Lease.

**10. UCC Filings.** Lessee acknowledges that this Lease is intended to be a "finance lease" as defined in §2A-103(1)(g) of the Uniform Commercial Code, as in effect in Utah ("UCC"). LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES OTHERWISE GRANTED TO LESSEE BY UCC §§2A-508 THROUGH 2A-522. Lessee authorizes Lessor to file UCC financing statements disclosing Lessor's interest in the Equipment and in any change to Lessee's principal place of business, organization or forth in any Schedule.     Lessee shall provide Lessor with at least 45 days' prior written notice of any change to Lessee's principal place of business, organization or incorporation.

**11. Taxes and Fees.** Lessee shall pay when and as due all taxes and fees, (together with all interest, fines and penalties for the late payment or non-payment thereof "Taxes" or motor vehicle registration fees) imposed on any Lease or the ownership, use, possession, sale or lease of the Equipment (whether assessed on Lessor or Lessee) and shall indemnify and hold Lessor harmless from any such Taxes. Lessor may estimate the amount of any such Taxes due on the Equipment or this Lease and pay such Taxes on Lessee's behalf, and Lessee shall pay to Lessor as additional Rent any such amounts, upon Lessor's invoice therefore. In connection with and in addition to each of the payments of Periodic Rent required under the Schedule, Lessee will pay to Lessor Lessor's estimate of the annual amount of property Taxes (if applicable) divided by the number of monthly or other payments per annum. If the actual annual amount of such Taxes differ from the estimated payments made by Lessee, then Lessor will apply any overpayment to the remaining Rent due under the Lease.  Lessee also agree to pay Lessor upon demand a per annum administration fee for the handling or collecting of any such property Tax or related return in an amount as Lessor determines but not to exceed $50 per annum.  Upon the termination of the Lease Lessee agrees to promptly remit upon Lessor's written notice 90% of the previous year's personal property Tax due with respect to the Equipment for application against the personal property Tax due or to become due with respect to the year of Lease termination; provided, Lessee will remain liable for any deficiency.

**12. Return of Equipment.** Upon the expiration or earlier termination of the Lease, if Lessee has not exercised any option to purchase available to it, Lessee shall return Vehicle/Equipment to a location designated by Lessor in the continuous 48 states of the United States. All Equipment upon its return to Lessor shall be in the same condition and appearance as when delivered to Lessee, excepting only reasonable wear and tear from proper use and all such Equipment shall be eligible for manufacturer's maintenance. Lessee shall in all events pay Rent and otherwise comply with the Lease until the Equipment has been returned to Lessor.

**13. Facsimile Copies.** A photocopy or facsimile of this Master Lease Agreement and each Schedule will be legally admissible under the "best evidence rule." A signed copy of this Master Lease Agreement, any Schedule and/or any related document sent by facsimile shall be treated as an original document and shall be admissible as evidence thereof, and all signatures thereon shall be binding as if manual signatures were personally delivered.

**14. Disclaimers.** Lessor is not the manufacturer or supplier of any Equipment and is not responsible for any delivery, installation, repair, maintenance or servicing thereof and Lessor shall have no obligations, or liabilities of any kind whatsoever concerning or relating to the Equipment. Lessee has selected each Supplier and manufacturer and all of the Equipment. Neither Supplier nor any manufacturer is an agent of Lessor, and no representative of Supplier is authorized to bind Lessor for any purpose or make any representation on Lessor's behalf. So long as Lessee is not in default under the Lease, Lessee is entitled to any and all warranties provided to Lessor by or through Supplier or the manufacturer, and may communicate with Supplier and the manufacturer, and receive those warranties. So long as Lessee is not in default under the Lease, Lessor assigns such warranties to Lessee for the duration of the Lease Term. Lessee agrees to look only to Supplier or the manufacturer for any defect or breach of warranty regarding the Equipment. LESSEE LEASES THE EQUIPMENT ON AN "AS-IS", "WHERE-IS" BASIS. LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, REGARDING ANY EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**15. Notices.** All notices required or provided for in any Lease , shall be in writing and shall be addressed to Lessee or Lessor, as the case may be, at its address set forth above or such other address as either such party may from time to time designate in writing to the other party. Such notice shall be deemed delivered and effective: (a) upon receipt, if delivered by fax, U.S. mail, hand or overnight courier, or (b) three (3) days after deposit with the U.S. Postal Service, if sent certified mail, return receipt requested with postage prepaid.  Lessee agrees that if any Schedule contains non-substantive errors, Lessor may correct such errors and advise Lessee by first class mail of such corrections.  No other means of delivery of notices shall be permitted.

**16. Default; Remedies.** Lessee will be in "default" hereunder, if any one or more of the following shall occur: (a) Lessee or any Guarantor of any Lease fails to timely pay Lessor any Rental(s) due under the Lease, or (b) Lessee or any such Guarantor breaches any other term of the  Lease (including any failure to carry required insurance at any time), or (c) Lessee or any such Guarantor makes any misrepresentation to Lessor, or (d) Lessee or any such Guarantor fails to pay any other obligation owed to Lessor, or the related Guaranty, or any of Lessor's affiliates, or any other party, or (e) Lessee or any such Guarantor shall consent to the appointment of a receiver, trustee or liquidator of itself or a substantial part of its assets, or (f) there shall be filed by or against Lessee or any such Guarantor a petition in bankruptcy, or (g) Lessee's articles of incorporation or other formation documents shall be amended to change Lessee's name or state of incorporation or formation, or (h) Lessee's legal existence in its state of incorporation or formation shall have lapsed or terminated or Lessee shall otherwise dissolve or liquidate its assets. Upon default, Lessor may do any one or more of the following: (1) recover from Lessee the sum of (A) any and all Rentals, late charges and other amounts then in each case due and owing under any or all Leases, (B) collect the applicable SLV under any or all Leases and (C) Lessor's related attorneys' fees, collection costs and expenses; (2) enter upon Lessee's premises and take possession of any or all of such Equipment; (3) terminate any or all Leases; and/or (4) utilize any other right or remedy provided by applicable law. Lessee shall also pay to Lessor interest on all unpaid sums due hereunder from the due date thereof until paid in full, at a rate per annum equal to the lower of 1-1/2% per month or the highest rate of interest permitted by applicable law. Lessee waives any rights that Lessee may have to require Lessor to sell or otherwise dispose of any Equipment.





**MASTER LEASE AGREEMENT, continued**

Master Lease Agreement # 1128560

**17. Miscellaneous.** Lessee may not assign any Schedule or any of it rights or obligations thereunder without the parties written consent. Lessor may, by written notice to Lessee amend this Master Lease Agreement, as amended shall be effective with respect to all Schedules. Leases shall be binding on Lessee's successors and permitted assigns, and shall inure to the benefit of Lessor and its successors and Assignees. This Master Lease Agreement and each Lease shall be deemed entered into and performed in Salt Lake County, Utah. **EACH LEASE SHALL BE GOVERNED BY THE LAWS OF UTAH, WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW. IN ANY ACTION OR PROCEEDING RELATING TO ANY LEASE OR EQUIPMENT, THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL THEREIN.** The parties intend each Lease to be a true lease or a time-sale of goods (for which a cash price was offered to Lessee), and not a loan, and do not intend to exceed any applicable usury laws. If for any reason a Lease is held to involve a loan of money, any amounts payable hereunder in excess of the applicable highest lawful rate of interest shall be deemed a prepayment of any principal amount hereunder and, if such principal is paid in full, such excess amounts shall be immediately refunded to Lessee. The Lessee named below and all individuals whose names appear on the application expressly authorize consumer reporting agencies and other persons to furnish credit information to Lessor, separately or jointly with other creditors. Lessors or other parties with whom Lessee has a contractual relationship relating to the Equipment for use in connection with this Lease. Lessors and joint users of such information are authorized to receive and exchange credit and payment history and to update such information as appropriate during the term of this Agreement. Information about the undersigned may be used for marketing and administrative purposes and shared with Lessor's affiliates. The undersigned may direct Lessor not to disclose that information (except transaction and experience information) with Lessor's affiliates by writing to the Lessor name and address referenced above.

**LESSEE HAS READ THIS MASTER LEASE AGREEMENT AND EACH SCHEDULE BEFORE SIGNING IT.**

Lessee: JUST US INC.

Signature: X _Tim Norton_    Date: _10-04-06_
Tim Norton , President

Signature: X _____    Date: _____

Federal Tax Identification or Social Security Number: 364442220 _____





**VEHICLE SCHEDULE TO**
**MASTER LEASE AGREEMENT**

MASTER LEASE AGREEMENT # 1128560/1253668

| Lessor: | Lessee: | Supplier: |
|---|---|---|
| Key Equipment Finance Inc. | JUST US INC. | Stoops Freightliner Quality Trailer, Inc |
| 3075 Highland Pkwy. 7th floor | 865 E. JACKSON SUITE 7 | 1851 W Thompson Rd |
| Downers Grove, IL 60515 | Belvidere, IL 61008 | Indianapolis, IN 46217 |
| | TIM NORTON          (715) 573-0240 | |

**Vehicle Description:** (described below and/or as described in invoice(s) attached hereto and made a part hereof collectively, the "Equipment")
See Exhibit A

| V.I.N: See Exhibit A | Mileage: |
|---|---|

**Mileage Charges:** N/A    miles may be accumulated per each 12-month period. Lessee must pay $0.00    per mile for mileage in excess of the allowed amount.

**Equipment Location:**
865 E. Jackson Suite 7, Belvidere, IL 61008

**Schedule of Payments:**

| Initial Term (In Months) | Total Number Of Payments | Amount of Each Periodic Rent Payment (plus applicable taxes) | Total Initial Payment  $3,595.97 | | |
|---|---|---|---|---|---|
| | | | First  $3,595.97 | Documentation Fee  $400.00 | Other Transaction Fees (if applicable) |
| 48 | 48 | 3,595.97 | Last  $0.00 | Deposit  $0.00 | $0.00 |

Purchase Option: Fair Market Value/TRAC    (see Terms and Conditions for description of Purchase Option)   | Purchase Amount (if applicable): See TRAC Rider

**TERMS AND CONDITIONS**

**Lease.** The undersigned Lessee ("Lessee") unconditionally and irrevocably agrees to lease from the above referenced Lessor ("Lessor") the Equipment described above, on the terms specified herein and in the Master Lease Agreement referred to above (as amended from time to time, the "Agreement"). The terms of this Agreement are hereby ratified and incorporated in this Schedule as if set forth herein in full, and shall remain in full force and effect and be fully enforceable throughout the Term of this Schedule (this Schedule, together with such incorporated terms of the Agreement, collectively, this "Lease"). Lessee hereby certifies that the Equipment described above has been delivered to, and accepted by, Lessee for all purposes under this Lease. Capitalized terms used and not otherwise defined in this Schedule have the respective meanings set forth in the Agreement.

**Fair Market Value / TRAC.** At the end of the Initial Term, Lessee must satisfy the terms of the TRAC Lease Rider. Lessee acknowledges receipt of TRAC Lease Rider. Provided no default has occurred and is continuing under this Schedule, upon the expiration of the Initial Term, Lessee shall have the option to purchase all (but not less than all) of the Equipment, "AS IS," "WHERE IS," without representation or warranty of any kind, from Lessor, for the Equipment's then estimated "fair market value" as set forth on the TRAC Lease Rider, plus all applicable taxes. Lessee shall continue to pay all Rent and comply with all other terms of this Schedule until all of the provisions of the TRAC Lease Rider have been complied with and purchase price received by Lessor.

**Insurance Requirements.**

Type & Level of Insurance:  $1,000,000 Combined Single Limit Liability (each accident)
**or**
$   500,000 Personal Injury or Death (per person)
$1,000,000 Bodily Injury (per accident)
$   500,000 Property Damage (per accident)
**AND**
Comprehensive and Collision -Valued at SLV with maximum deductible of $1,000

**Miscellaneous.** The amount of each periodic Rent payment set forth above is based on Supplier's best estimate of the Equipment cost, as initially configured herein. Prior to the commencement hereof, Rent may be increased up to 15%, or decreased without limit, if the actual cost of the Equipment differs from that assumed hereunder. This Lease is fully integrated and supersedes any and all prior oral or other written statements, agreements and understandings regarding the subject matter hereof. For purposes of perfection of a security interest in chattel paper by possession under the Uniform Commercial Code (a) this is the sole original executed counterpart of this Schedule; (b) transfer/possession of no other purported counterpart of this Schedule shall effect such perfection; and (c) transfer/possession of an original counterpart of the Agreement shall not be necessary to effect such perfection. In the event this Lease is deemed to be a security agreement, then as security for all now existing or hereafter arising obligations of Lessee under the Lease and all other obligations of Lessee to Lessor, Lessee hereby grants to Lessor a first priority security interest in all of Lessee's rights, title (if any) and interests in the Equipment and any additional collateral described herein, and all proceeds and products thereof, including, without limitation, all proceeds of insurance. To secure its obligations under this Schedule, Lessee hereby grants, assigns, transfer and pledge to the benefit of Lessor a lien and security interest in all Equipment, inventory, contract rights, including without limitation any and all distribution rights, territory rights or any other rights to sell and/or deliver goods or services, accounts receivable and all other assets owned by Lessee whether now existing or hereinafter acquired.

**Power of Attorney.** Lessee does hereby constitute and appoint Lessor the true and lawful attorney-in-fact of the undersigned to sign in the name, place and stead of the Lessee any UCC financing statements, transfer and assumption agreements, bills of sale, certificates of ownership or title, applications for registration and any and all related documents, issued by the Division of Motor Vehicles of the State covering the Vehicle described above in whatever manner necessary to transfer title and registration of said Vehicle as the said attorney may deem fit and proper and Lessee hereby ratifies and confirms whatever action said attorney shall or may take by virtue hereof.








**EXHIBIT "A"**

Reference Agreement #: 1128560/1253668

**LESSOR:**     Key Equipment Finance Inc.

**LESSEE:**     JUST US INC.

**LOCATION:**   865 E. Jackson Suite 7, Belvidere , IL 61008

**VENDOR:**     Stoops Freightliner Quality Trailer, Inc
                1851 W Thompson Rd
                Indianapolis , IN 46217

| QTY | VEHICLE DESCRIPTION | VEHICLE IDENTIFICATION NUMBER |
|-----|---------------------|-------------------------------|
| 1   | 2005 FRT CL120      | 1FUJA6CK05LM71243             |
| 1   | 2005 FRT CL120      | 1FUJA6CK55LM71271             |

This Exhibit A is attached to and a part of the above referenced agreement and constitutes a true and accurate
description of the vehicle(s).

Rev 12/01



 



**Authority and Incumbency Certificate**

**Authorization to Sign**

Agreement # 1128560

**Company:**
Key Equipment Finance Inc.
3075 Highland Pkwy, 7th floor
Downers Grove, IL 60515

**Customer:**
JUST US INC.

865 E. JACKSON SUITE 7
Belvidere , IL 61008

---

**Purpose:**
The purpose of this "Authorization to Sign" form is to ensure that the person signing KEF Leases or Loans on behalf of the Customer is authorized to do so for the Customer noted above. Please follow the steps to fill out this from.

---

## Step 1: Complete Signor's information

The person who will ultimately be signing the Lease or Loan should complete this Section

| Name of Signor (Print) | Title | Signature |
|---|---|---|
| TIM NORTON | PRESIDENT | *Tim Norton* |

## Step 2: Complete Authorization information

**NOTE: The Officer and the Signor CANNOT be the same person.** An Officer, Member or Partner of the above-name Customer who can attest that the Signor has authority to sign Leases or Loans on behalf of the Customer must complete this Section. If the person signing in this Section is not different from the person whose signature appears above, this could delay the approval process.

As the authorizing    Officer    of the above-name Customer, I do hereby certify that I am a duly qualified and acting    Officer    of the Customer. In such capacity, I have the authority and do hereby certify as follows:

- As of the date of this certification, the Customer is validly existing and in good standing under the laws of the State of  *Illinois*  ; and

- Customer's governing body has taken such action including, without limitation, the adoption of resolutions, as may be necessary to authorize Customer to enter into and perform its obligations under the Agreement.

- As of the date of this certification and the date upon which any document(s) relating to, or constituting, the above-referenced Agreement is executed, the person identified above, in the respective capacity indicated above is fully authorized to sign the Agreement and all other documents relating to the Agreement on behalf of the Customer and to bind the Customer thereto. The signature opposite Signor's name is the true signature of such individual. Company is authorized to rely upon this Certificate until such time as Customer gives Company written notice specifically revoking this Certificate; provided, no such revocation shall in any manner affect the obligations of Customer to Company under the Agreement or any other agreements entered into by Customer with Company prior to the receipt by Company of such notice of revocation.

Executed this  *4th*  day of  *October* , 20 *06*

Name of Party Executing Certificate:  ✓ *Lee Jacobs*

Title    Officer :  *Vice President*

Signature:

*Nov 7/4*



 



**DELIVERY & ACCEPTANCE CERTIFICATE**

Reference Agreement # 1128560/1253668

**Company:**
Key Equipment Finance Inc.
3075 Highland Pkwy, 7th floor
Downers Grove, IL 60515

**Customer:**
JUST US INC.

865 E. JACKSON SUITE 7
Belvidere , IL 61008

The undersigned certifies to the Company referenced above, its successors and assigns that all items, referred to in the Agreement referenced above, as either Equipment or Collateral (the "Property"), have been received and irrevocably accepted by the undersigned for all purposes under the Agreement referenced above and were at the time of receipt in good order and condition and acceptable to use.

Customer, its successors and assigns, approve payment by Company to the Supplier. Undersigned hereby certifies that the Company has fully and satisfactorily performed all covenants and conditions to be performed by it under the above-described Agreement. Undersigned agrees to enforce, in its own name, all warranties, agreements or representations, if any, which may be made by the Supplier in respect to the Property.

JUST US INC.

Signature:    *Tim Norton*

Print Name and Title:    Tim Norton President

Date:    10/04/06

Rev 13/01



**EXHIBIT**

**B**

## MODIFICATION AND ASSUMPTION AGREEMENT

This Modification and Assumption Agreement (the "Agreement") is made and entered into effective March ____, 2008, by and among JUST US INC., a dissolved Illinois corporation, and TIM NORTON (on behalf of Just Us Inc., a dissolved Illinois corporation and as defaulted Personal Guarantor hereinafter "PG"), KEY EQUIPMENT FINANCE ("KEY"), and STATELINE EXPRESS INC. ("STATELINE"), with reference to the following:

A.    PG and KEY entered into that certain Master Lease Agreement No. 1128560 and a Personal Guaranty on or about October, 04, 2006, and pursuant to the terms thereof entered into Supplement Schedules and a "TRAC LEASE RIDER" for the lease of certain equipment described in the equipment schedules attached to each of the Supplements (the "Equipment") in the aggregate amount of $161,281.60 (all of which documentation is collectively referred to herein as the "Lease"), true copies of which are attached hereto as Exhibit A and made a part hereof by this reference;

B.    On or prior to May 01, 2007, STATELINE acquired certain assets and liabilities of PG.  Included in this acquisition was certain equipment pursuant to the Lease, specifically two 2005 FRT CL 120 trucks, Vehicle Identification Numbers: 1FUJA6CKLM71243 and 1FUJA6CK55LM71271 (See attached Exhibit "A" of the Lease).  In consideration of execution of this Agreement by STATELINE and PG, KEY consents to PG's surrender and STATELINE's assumption of such assets and liabilities of PG pursuant to the Lease.  KEY does not release PG from any obligations, duties or responsibilities under the Lease or Personal Guaranty.

C.    With the consent of KEY, STATELINE is granted the right to acquire all rights, title and interest of PG in the Lease, and does not release PG from any of its obligations or duties to perform under the Lease.

D.    KEY desires to accept this assumption of the Lease to STATELINE, subject to certain modifications to the terms and conditions of the Lease.

**THEREFORE**, in consideration of the foregoing recitals and of the mutual agreements hereinafter set forth, the parties hereto agree as follows:

1.    **MODIFICATION OF TERMS.**  The terms of the Lease are hereby modified as follows:

(a)    The total balance of remaining lease payments due on the Lease, as of March 01, 2008, is hereby agreed to be $139,556.76, ("Lease Balance") exclusive of residual payments, late charges, taxes and other fees and charges, if any.

(b)    The Lease Balance shall be paid in forty-two (42) equal monthly payments of $3,322.78. according to the Lease Payment Schedule attached hereto as Exhibit B,

**EXHIBIT**

**C**

payable monthly in advance on the fifteenth of each month, commencing April 15, 2008 ("Initial Term").

(c)    So long as no events of defaults under the Lease shall have occurred and be continuing, STATELINE shall have the following residual options at the end of the Lease Term:

(1)    At the end of the Initial Term, STATELINE must satisfy the terms of the TRAC LEASE RIDER (See attached Exhibit A), and shall have the option to purchase all (but not less than all) of the Equipment, "AS IS," "Where IS" without representation or warranty of any kind, from KEY, for the Equipment's then estimated "fair market value", as set forth in the TRAC LEASE RIDER, plus all applicable taxes; or

(2)    Upon expiration or earlier termination of the Lease, if STATELINE has not exercised any option to purchase available to it, STATELINE shall return the Vehicles/Equipment to a location designated by KEY in the contiguous 48 states of the United States. Refer to Paragraph 12 of the Lease attached hereto and incorporated herein as Exhibit A.

2.    Only except as modified by this Agreement, all the terms, conditions covenants and provisions set forth in the Master Lease Agreement No. 1128560 and incorporated Schedules and Personal Guaranty shall remain unchanged and continue to remain in full force and effect, and are incorporated into, and shall govern, this Agreement as if set forth herein, until all the obligations contracted for under Master Lease Agreement No.1128560 and its incorporated Schedules and Personal Guaranty have been paid in full.

3.    **ASSUMPTION BY STATELINE.**  In consideration of the surrender and subsequent default from PG, STATELINE agrees to be bound by and promptly to perform or cause to be performed the terms, conditions and covenants, under this Agreement and the Lease assumed by STATELINE.  STATELINE hereby agrees to defend, indemnify, save and hold harmless KEY from and against any and all claims, demands, costs, expenses, attorneys' fees and any other damages or injuries which KEY may sustain as a result of any failure or delay by STATELINE in performing the obligations assumed by STATELINE pursuant hereto, whether or not suit is filed.

4.    **CONTINUATION OF REGULAR MONTHLY PAYMENTS.** STATELINE agrees to continue regular monthly payments to KEY as provided in the Lease with the April 15, 2008, payment, and to continue with regular monthly payments thereafter, and in all other respects to comply with the terms of the Lease.  All payments by STATELINE to KEY shall be made by certified funds payable to the order of "Key Equipment Finance Inc.", and shall actually be delivered to:  Key Equipment Finance Inc., Attn: Sal Boscia, 1000 So. McCaslin Blvd., Superior, CO  80027.

5.     **DISCHARGE.**  KEY, on behalf of itself and its successors and assigns, does not in any way release or discharge PG and the employees, directors and officers from any claims, actions, complaints, liabilities, obligations, damages, demands or suits that KEY may have against PG arising from or in any way related to the Lease or this Agreement.

6.     **FURTHER ASSURANCES.**  PG, STATELINE and KEY shall, at any time and from time to time after the date hereof, upon the request of the other, execute, acknowledge and deliver all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances, and take all such further actions, as shall be necessary or desirable to give effect to the transactions hereby consummated.

7.     **NOTICES.**  All notices and other communications provided for hereunder shall be in writing (including telex or facsimile) and sent by registered mail or courier or telexed or telecopied or delivered as follows:

All such notices and communications shall be effective (i) when sent by registered mail two (2) business days after being duly deposited in registered mail, (ii) when sent by overnight courier, one (1) business day after being delivered to the overnight courier or (iii) when sent by telecopier, the business day when sent (or the following business day if sent on a day that is not a business day).

8.     **SEVERABILITY.**  In the event any provision of this Modification and Assumption Agreement shall become or be adjudicated at any time by a court or other applicable authority, invalid or null and void, such invalidity or nullity shall not affect the validity of the other provisions hereof, which shall, by express agreement, be considered as severable.

9.     **AMENDMENT OR WAIVER.**  This Modification and Assumption Agreement may not be modified, amended, altered or supplemented, discharged or terminated, except by an agreement in writing executed by each of the parties hereto.

10.     **COSTS AND EXPENSES.**  Each party shall be liable for its own costs and expenses incurred in negotiation and preparation of this Modification and Assumption Agreement.  Should legal action be brought to enforce any term or agreement herein contained, the prevailing party in such actions shall be entitled to recover reasonable attorneys' fees, regardless of whether the matter is concluded by Court actions or otherwise, which attorneys fees shall include a reasonable amount for the services of in house counsel, plus actual costs incurred.

11.     **COUNTERPARTS.**  This Modification and Assumption Agreement may be executed in two or more counterparts, each of which shall be deemed as original, but all of which together shall constitute one and the same instrument.

12.     **CHOICE OF LAW.** This Modification and Assumption Agreement shall be governed and construed in accordance with the laws of the State of Utah.

KEY EQUIPMENT FINANCE                    JUST US INC. and TIM NORTON

By: _____           By: _____

STATELINE EXPRESS INC.

By: _____


13.     **GUARANTY:** In consideration of the above referenced KEY EQUIPMENT FINANCE, its successors and assigns ("Lessor"), entering into this Modification and Assumption Agreement, OWEN COSTANZA ("Guarantor"), personally guarantees the prompt payment and performance of all obligations of STATELINE EXPRESS INC. ("STATELINE"), the New Lessee under the Modification and Assumption Agreement and the Master Lease Agreement and incorporated Schedules. Guarantor agrees that this is a guaranty of payment and performance, and not of collection only, and that Lessor can proceed directly against Guarantor without first proceeding against STATELINE or against the Equipment covered by this Agreement. Guarantor waives all defenses and notice, including those of protest, presentment and demand. Lessor is not required to provide Guarantor with notice of default. Guarantor agrees that Lessor can renew, extend or otherwise modify the terms of each Schedule in the Master Lease Agreement or in the Modification and Assumption Agreement and Guarantor will be bound by such changes. If STATELINE defaults under any of the Schedules to the Master Lease Agreement or the Modification and Assumption Agreement, Guarantor will immediately perform all obligations of STATELINE under such Schedule to the Master Lease Agreement or Modification and Assumption Agreement, including but not limited to, paying all amounts due under the Schedules to the master Lease Agreement or the Modification and Assumption Agreement. Guarantor will pay to Lessor all expenses (including attorney's fees) incurred by Lessor in enforcing Lessor's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of STATELINE or Guarantor and will bind Guarantor's heirs, successors, assigns, and personal representatives. Guarantor will not be discharged by any other Guarantor that may be liable to Lessor concerning the Master Lease Agreement. Guarantor agrees that if any other Guarantor has signed a Guaranty relating to said Agreements, that his/her liability is joint and several. Guarantor authorizes Lessor or any of Lessor's designees to obtain and share with others, credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary. This Guaranty shall be

12.    **CHOICE OF LAW.** This Modification and Assumption Agreement shall be governed and construed in accordance with the laws of the State of Utah.

KEY EQUIPMENT FINANCE

By: _Sal Bosseler_

JUST US INC. and TIM NORTON

By: _____

STATELINE EXPRESS INC.

By: _Owen Costanza its Pres_

13.    **GUARANTY:** In consideration of the above referenced KEY EQUIPMENT FINANCE, its successors and assigns ("Lessor"), entering into this Modification and Assumption Agreement, OWEN COSTANZA ("Guarantor"), personally guarantees the prompt payment and performance of all obligations of STATELINE EXPRESS INC. ("STATELINE"), the New Lessee under the Modification and Assumption Agreement and the Master Lease Agreement and incorporated Schedules. Guarantor agrees that this is a guaranty of payment and performance, and not of collection only, and that Lessor can proceed directly against Guarantor without first proceeding against STATELINE or against the Equipment covered by this Agreement. Guarantor waives all defenses and notice, including those of protest, presentment and demand. Lessor is not required to provide Guarantor with notice of default. Guarantor agrees that Lessor can renew, extend or otherwise modify the terms of each Schedule in the Master Lease Agreement or in the Modification and Assumption Agreement and Guarantor will be bound by such changes. If STATELINE defaults under any of the Schedules to the Master Lease Agreement or the Modification and Assumption Agreement, Guarantor will immediately perform all obligations of STATELINE under such Schedule to the Master Lease Agreement or Modification and Assumption Agreement, including but not limited to, paying all amounts due under the Schedules to the master Lease Agreement or the Modification and Assumption Agreement. Guarantor will pay to Lessor all expenses (including attorney's fees) incurred by Lessor in enforcing Lessor's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of STATELINE or Guarantor and will bind Guarantor's heirs, successors, assigns, and personal representatives. Guarantor will not be discharged by any other Guarantor that may be liable to Lessor concerning the Master Lease Agreement. Guarantor agrees that if any other Guarantor has signed a Guaranty relating to said Agreements, that his/her liability is joint and several. Guarantor authorizes Lessor or any of Lessor's designees to obtain and share with others, credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary. This Guaranty shall be

governed and construed in accordance with the laws of the State of Utah. **EACH GUARANTOR WAIVES ANY RIGHT TO A TRIAL BY JURY.**

**Signature:** X _____

Name:        Owen Costanza, Personal Guarantor



# MASTER LEASE AGREEMENT

Master Lease Agreement # 1128560

| Lessor: | Lessee: |
|---|---|
| Key Equipment Finance Inc.<br>3075 Highland Pkwy, 7th floor<br>Downers Grove, IL 60515 | JUST US INC.<br><br>865 E. JACKSON SUITE 7<br>Belvidere , IL 61008<br>TIM NORTON                (715) 573-0240 |

**1. Master Lease.** The undersigned Lessee ("Lessee") unconditionally and irrevocably agrees to lease from the above referenced Lessor (together with all successors and Assignees thereof, collectively, "Lessor") the equipment and other personal property (together with all current and future accessories, additions and attachments thereto, and all replacements and substitutions therefore, collectively, the "Equipment") described in each Equipment Schedule referencing this Master Lease Agreement (each, together with any attachments thereto, a "Schedule") and purchased from the supplier(s) noted in the applicable Schedule (each, a "Supplier"). Any Equipment subject to title registration laws may be referred to herein as a Vehicle ("Vehicle"). Each Schedule shall incorporate by reference all of the terms of this Master Lease Agreement and shall constitute a separate lease agreement (each such Schedule, together with such incorporated terms of this Master Lease Agreement, collectively, a "Lease") that is assignable separately from each other Lease. In the event of a conflict between this Master Lease Agreement and the terms of a Schedule, the terms of the Schedule shall prevail. No provision of a Lease may be waived or modified except in a writing signed by Lessor's duly authorized representative.

**2. Term.** The term of each Lease shall consist of an interim term ("Interim Term"), initial term ("Initial Term") and, one or more renewal terms, if any ("Renewal Term"). The Interim Term, Initial Term and Renewal Term are referred to collectively as the "Term". The Interim Term shall commence on the date the Equipment is accepted for lease by Lessee under the Lease ("Commencement Date") and shall terminate on the day prior to the commencement of Lessor's applicable monthly billing cycle, which latter date shall be the date the Initial Term commences as set forth in the applicable Schedule. The Initial Term shall continue for the number of months set forth in the Schedule. Lessee shall be deemed to have accepted the Equipment for lease promptly upon its delivery from the Supplier and, at Lessor's request, shall confirm for Lessee such acceptance.

**3. Rent.** All advance rent under any Schedule is due and payable upon its execution and is not refundable. All subsequent periodic rental payments payable with respect to each month during the Term ("Periodic Rent") and other amounts due from Lessee to Lessor under such Schedule (together with all advance rentals, "Rent") shall be paid pursuant to the terms set forth in such Schedule. **No acceptance of any item of Equipment may be revoked by Lessee.** Unless otherwise instructed by Lessor in writing, all payments of Rent shall be made to Lessor's address set forth in the applicable Schedule. Any payment by or on behalf of Lessee that purports to be payment in full for any obligation under any Lease may only be made after Lessor's prior written agreement to accept such payment amount. If any check or funds transfer request for any Rent is returned to Lessor unpaid, Lessee shall pay Lessor a service charge of $55 for each such returned check or request.

**4. Rent Payments; Fees.** Other than Periodic Rent payable as part of an advance payment, the first payment of Periodic Rent due under the Lease shall be due and payable on the date specified in Lessor's first invoice therefore ("First Payment Date"). On the First Payment Date, in addition to the Periodic Rent due on such date Lessee shall pay Lessor Interim Rent for each day from and including the date Lessor pays the Vendor of the Equipment the price thereof, to but excluding the first day of Lessor's applicable monthly billing cycle at a daily rate equal to one 30th of the periodic Rent amount set forth on the Schedule in question. Periodic Rent (other than that which is part of any advance payment) is due monthly in advance beginning on the First Payment Date and continuing on the same day of each month during the Term regardless if Lessee receives an invoice therefore. If Lessee fails to pay any sum due under the Lease within ten (10) days after its due date, Lessee agrees to pay a late charge equal to (as reasonable liquidated damages and not as a penalty) the greater of $29 or 10% of the amount of each such late payment. If any check or funds transfer request for any Rent is returned to Lessor unpaid, Lessee shall pay Lessor a service charge of $55 for each such returned check or request. Lessee agrees to pay Lessor a documentation and other transaction fees as applicable, as set forth on the Schedule.

**5. Equipment.** Lessee shall keep the Equipment free of liens, claims and encumbrances, and shall not modify, alter, add to, move, sell, transfer, lease, sublease or otherwise encumber any Equipment or permit any Equipment to become attached to any realty, in each case without the prior written consent of Lessor. Any modification, alteration or addition to any Equipment shall automatically become the sole property of Lessor. Lessor shall have the right to enter Lessee's premises during business hours to inspect any Equipment and observe its use upon at least one (1) day's prior written or verbal notice. Lessee shall comply with all applicable laws, rules and regulations concerning the operation, ownership, use and/or possession of the Equipment, and Supplier's requirements for continued maintenance thereof. If Lessee fails to accept delivery of any Equipment for any purpose, Lessee agrees to pay the price invoiced by Supplier to Lessor therefore and to indemnify and hold Lessor harmless and to defend Lessor (with counsel selected by Lessor) against, any claim brought by Supplier. Any Vehicle shall be titled and registered as directed by Owner within ten (10) days of User's receipt of the Equipment. If the Equipment is not timely or properly registered within the ten (10) day period, then, in addition to the other remedies available to Owner hereunder, User shall be charged a late fee as set forth above in Section 4 for each additional thirty (30) day period the Equipment remains unregistered or improperly registered.

**6. Obligations Absolute.** NOTWITHSTANDING ANY CLAIM OF DEFECT OR ANY OTHER REASON WHATSOEVER, ALL RENTALS AND OTHER PAYMENTS UNDER EACH LEASE SHALL BE PAID BY LESSEE TO LESSOR OR ITS ASSIGNEES ABSOLUTELY AND UNCONDITIONALLY, WITHOUT ANY DEFENSE, SETOFF, CLAIM OR COUNTERCLAIM OF ANY NATURE. Lessee hereby waives all rights to any indirect, punitive, special or consequential damages in connection with the Equipment or this Lease.

**7. Use.** All Equipment shall be used solely for business purposes, and not for personal, household or other use. Lessee shall maintain the Equipment in good repair in accordance with the instructions of the manufacturer thereof so that it shall be able to operate in accordance with the manufacturer's specifications. Lessee shall bear the entire risk of loss or damage to the Equipment, and may not transfer, sublease or assign any of its rights or obligations under any Lease or Equipment without Lessor's prior written consent. Lessor shall own the Equipment and may sell, assign, transfer or grant a security interest to any third party (each, an "Assignee") in any Equipment, Rent or Lease without notice to or consent by Lessee.

**8. Early Termination.** Lessor hereby agrees that Lessee may terminate this Lease at any time upon thirty (30) days prior written notice and on the next Rent Payment date, in addition to the payment of Rent due on such date, and the payment from Lessee to Lessor of all amounts then due and owing, Lessee shall pay to Lessor the higher of the Vehicle's then fair market value or the applicable Stipulated Loss Value of the Vehicle as set forth in the applicable exhibit to the Schedule in question ("SLV") and upon the indefeasible receipt of all such amounts Lessor shall convey to Lessee its entire right title and interest in and to such Vehicle "as-is", "where-is" without representation or warranty.





EXHIBIT

A



**MASTER LEASE AGREEMENT, continued**

Master Lease Agreement # 1128560

**9. Insurance; Loss or Damage; Indemnification.** Lessee shall at all times maintain liability, fire, damage, collision, casualty (covering death and personal injury) and theft insurance on the Equipment in amounts and with insurers acceptable to Lessor and as may be further specified in the Schedule.. All such policies shall list Lessor and each Assignee as an additional insured and loss payee thereon. With respect to insurance covering loss or damage to Equipment that are Vehicles, Lessee shall procure and maintain insurance coverage for no less than the SLV of such Vehicle, insuring Lessee and Lessor, as their respective interests appear. With respect to insurance covering liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the Vehicle, the minimum required coverage per occurrence shall be as indicated on the Schedule. All insurance policies shall require the insurer to provide Lessor with at least 30 days' prior written notice of any material change in or cancellation of such insurance. In the event Lessor determines that any such insurance is not in effect, Lessor may (but shall not be required to) obtain such insurance at Lessee's expense. Upon any damage to any Equipment Lessee shall promptly repair such Equipment to Lessor's satisfaction at Lessee's sole expense. In the event Lessor determines any item of Equipment has suffered a total loss ("Casualty Occurrence"), Lessee shall upon Lessor's written notice pay to Lessor the applicable SLV of the Equipment suffering such Casualty Occurrence. Notwithstanding any loss or damage to the Equipment, Lessee shall continue to pay all Rent as and when the same shall become due and in the case of a Casualty Occurrence, continue to pay Rent until such time as Lessor has received the applicable SLV and all other amounts then due and owing under the Lease. Lessee shall indemnify, reimburse and defend (with counsel acceptable to Lessor) Lessor, including each Assignee, its and their affiliated companies and its and their officers, directors, employees and agents, on demand, from and against any and all damages, losses, liabilities, expenses, claims or legal proceedings relating to or arising out of this Lease or the ownership, use, operation, possession, sale, lease or maintenance of the Equipment, regardless of whether the same thereof shall have commenced or expired, including (without limitation) Lessor's attorneys' fees and expenses. Lessee's tax and indemnity obligations shall survive the termination of this Lease.

**10. UCC Filings.** Lessee acknowledges that this Lease is intended to be a "finance lease" as defined in 52A-103(1)(g) of the Uniform Commercial Code, as in effect in Utah ("UCC"). LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES OTHERWISE GRANTED TO LESSEE BY UCC §§2A-508 THROUGH 2A-522. Lessee authorizes Lessor to file UCC financing statements disclosing Lessor's interest in the Equipment and in any "Additional Collateral" set forth in any Schedule. Lessee shall provide Lessor with at least 45 days' prior written notice of any change to Lessee's principal place of business, organization or incorporation.

**11. Taxes and Fees.** Lessee shall pay when and as due all taxes and fees, (together with all interest, fines and penalties for the late payment or non-payment thereof "Taxes" or motor vehicle registration fees) imposed on any Lease or the ownership, use, possession, sale or lease of the Equipment (whether assessed on Lessor or Lessee) and shall indemnify and hold Lessor harmless from any such Taxes. Lessor may estimate the amount of any such Taxes due on the Equipment or in this Lease and pay such Taxes on Lessee's behalf, and Lessee shall pay to Lessor as additional Rent any such amounts, upon Lessor's invoice therefore. In connection with and in addition to each of the payments of Periodic Rent required under the Schedule, Lessee will pay to Lessor Lessor's estimate of the annual amount of property Taxes (if applicable) divided by the number of monthly or other payments per annum. If the actual annual amount of such Taxes differ from the estimated payments made by Lessee, then Lessor shall apply any overpayment to the remaining Rent due under the Lease. Lessee also agree to pay Lessor upon demand a per annum administration fee for the handling or collecting of any such property Tax or related return in an amount as Lessor determines but not to exceed $50 per annum. Upon the termination of the Lease Lessee agrees to promptly remit upon Lessor's written notice 90% of the previous year's personal property Tax due with respect to the Equipment for application against the personal property Tax due or to become due with respect to the year of Lease termination; provided, Lessee will remain liable for any deficiency.

**12. Return of Equipment.** Upon the expiration or earlier termination of the Lease, if Lessee has not exercised any option to purchase available to it, Lessee shall return Vehicle/Equipment to a location designated by Lessor in the continuous 48 states of the United States. All Equipment upon its return to Lessor shall be in the same condition and appearance as when delivered to Lessee, excepting only reasonable wear and tear from proper use and all such Equipment shall be eligible for manufacturer's maintenance. Lessee shall in all events pay Rent and otherwise comply with the Lease until the Equipment has been returned to Lessor.

**13. Facsimile Copies.** A photocopy or facsimile of this Master Lease Agreement and each Schedule will be legally admissible under the "best evidence rule." A signed copy of this Master Lease Agreement, any Schedule and/or any related document sent by facsimile shall be treated as an original document and shall be admissible as evidence thereof, and all signatures thereon shall be binding as if manual signatures were personally delivered.

**14. Disclaimers.** Lessor is not the manufacturer or supplier of any Equipment and is not responsible for any delivery, installation, repair, maintenance or servicing thereof and Lessor shall have no obligations, or liabilities of any kind whatsoever concerning or relating to the Equipment. Lessee has selected each Supplier and manufacturer and all of the Equipment. Neither Supplier nor any manufacturer is an agent of Lessor, and no representative of Supplier is authorized to bind Lessor for any purpose or make any representation on Lessee's behalf. So long as Lessee is not in default under the Lease, Lessee is entitled to any and all warranties provided to Lessor by or through Supplier or the manufacturer, and may communicate with Supplier and the manufacturer, and receive those warranties. So long as Lessee is not in default under the Lease, Lessor assigns such warranties to Lessee for the duration of the Lease Term. Lessee agrees to look only to Supplier or the manufacturer for any defect or breach of warranty regarding the Equipment. LESSEE LEASES THE EQUIPMENT ON AN "AS-IS", "WHERE-IS" BASIS. LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, REGARDING ANY EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**15. Notices.** All notices required or provided for in any Lease , shall be in writing and shall be addressed to Lessee or Lessor, as the case may be, at its address set forth above or such other address as either such party may from time to time designate in writing to the other party. Such notice shall be deemed delivered and effective: (a) upon receipt, if delivered by fax, U.S. mail, hand or overnight courier, or (b) three (3) days after deposit with the U.S. Postal Service, if sent certified mail, return receipt requested with postage prepaid. Lessee agrees that if any Schedule contains non-substantive errors, Lessor may correct such errors and advise Lessee by first class mail of such corrections. No other means of delivery of notices shall be permitted.

**16. Default; Remedies.** Lessee will be in "default" hereunder, if any one or more of the following shall occur: (a) Lessee or any Guarantor of any Lease fails to timely pay any Rental(s) due under the Lease, or (b) Lessee or any such Guarantor breaches any other term of the Lease (including any failure to carry required insurance at any time), or (c) Lessee or any such Guarantor makes any misrepresentation to Lessor, or (d) Lessee or any such Guarantor shall consent to the appointment of a receiver, trustee or liquidator of itself or a substantial part of its assets, or (f) there shall be filed by or against Lessee or any such Guarantor s appointment of a receiver, trustee or liquidator of itself or a substantial part of its assets, or (f) there shall be filed by or against Lessee or any such Guarantor s petition in bankruptcy, or (g) Lessee's articles of incorporation or other formation documents shall be amended to change Lessee's name or state of incorporation or formation, or (h) Lessee's legal existence in its state of incorporation or formation shall have lapsed or terminated or Lessee shall otherwise dissolve or liquidate its assets. Upon default, Lessor may do any one or more of the following: (1) recover from Lessee the sum of (A) any and all Rentals, late charges and other amounts then in each case due and owing under any or all Leases, (B) collect the applicable SLV under any or all Leases and (C) Lessor's related attorneys' fees, collection costs and expenses; (2) enter upon Lessee's premises and take possession of any or all of such Equipment; (3) terminate any or all Leases; and/or (4) utilize any other right or remedy provided by applicable law. Lessee shall also pay to Lessor interest on all unpaid sums due hereunder from the due date thereof until paid in full, at a rate per annum equal to the lower of 1-1/2% per month or the highest rate of interest permitted by applicable law. Lessee waives any rights that Lessee may have to require Lessor to sell or otherwise dispose of any Equipment.








**MASTER LEASE AGREEMENT, continued**

Master Lease Agreement # 112B560

17. **Miscellaneous.** Lessee may not assign any Schedule or any of it rights or obligations thereunder without the parties written consent. Lessor may, by written notice to Lessee amend this Master Lease Agreement, as amended shall be effective with respect to all Schedules. Leases shall be binding on Lessee's successors and permitted assigns, and shall inure to the benefit of Lessor and its successors and Assignees. This Master Lease Agreement and each Lease shall be deemed entered into and performed in Salt Lake County, Utah. **EACH LEASE SHALL BE GOVERNED BY THE LAWS OF UTAH, WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW. IN ANY ACTION OR PROCEEDING RELATING TO ANY LEASE OR EQUIPMENT, THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL THEREIN. The parties intend each Lease to be a true lease or a time-sale of goods (for which a cash price was offered to Lessee), and not a loan, and do not intend to exceed any applicable usury laws. If for any reason a Lease is held to involve a loan of money, any amounts payable hereunder in excess of the applicable highest lawful rate of interest shall be deemed a prepayment of any principal amount hereunder and, if such principal is paid in full, such excess amounts shall be immediately refunded to Lessee.** The Lessee named below and all individuals whose names appear on the application expressly authorize consumer reporting agencies and other persons to furnish credit information to Lessor, separately or jointly with other creditors. Lessors or other parties with whom Lessee has a contractual relationship relating to the Equipment for use in connection with this Lease. Lessors and joint users of such information are authorized to receive and exchange credit and payment history and to update such information as appropriate during the term of this Agreement. Information about the undersigned may be used for marketing and administrative purposes and shared with Lessor's affiliates. The undersigned may direct Lessor not to disclose that information (except transaction and experience information) with Lessor's affiliates by writing to the Lessor name and address referenced above.

**LESSEE HAS READ THIS MASTER LEASE AGREEMENT AND EACH SCHEDULE BEFORE SIGNING IT.**

Lessee: JUST US INC.

Signature:   x _Tim Norton_____     Date: _10-04-06_
             Tim Norton , President

Signature:   x _____     Date: _____

Federal Tax Identification or Social Security Number: 364442220_____

_Rev 12/03_                     Page 3 of 3





**VEHICLE SCHEDULE TO**
**MASTER LEASE AGREEMENT**

MASTER LEASE AGREEMENT # 1128560/1253668

| Lessor: | Lessee: | Supplier: |
|---|---|---|
| Key Equipment Finance Inc. | JUST US INC. | Stoops Freightliner Quality Trailer, Inc |
| 3075 Highland Pkwy, 7th floor | 865 E. JACKSON SUITE 7 | 1851 W Thompson Rd |
| Downers Grove, IL 60515 | Belvidere , IL 61008 | Indianapolis , IN 46217 |
| | TIM NORTON           (715) 573-0240 | |

**Vehicle Description:** (described below and/or as described in Invoice(s) attached hereto and made a part hereof collectively, the "Equipment")
See Exhibit A

| V.I.N: See Exhibit A | | Mileage: |
|---|---|---|

**Mileage Charges:** N/A        miles may be accumulated per each 12-month period.  Lessee must pay $0.00   per mile for mileage in excess of the allowed amount.

**Equipment Location:**
865 E. Jackson Suite 7, Belvidere , IL 61008

**Schedule of Payments:**

| Initial Term (in Months) | Total Number Of Payments | Amount of Each Periodic Rent Payment (plus applicable taxes) | Total Initial Payment  $ 3,595.97 | | |
|---|---|---|---|---|---|
| | | | First  $ 3,595.97 | Documentation Fee  $ 400.00 | Other Transaction Fees (if applicable) |
| 48 | 48 | 3,595.97 | Last  $ 0.00 | Deposit  $ 0.00 | $ 0.00 |

| Purchase Option: Fair Market Value/TRAC    (see Terms and Conditions for description of Purchase Option) | Purchase Amount (if applicable): See TRAC Rider |
|---|---|

**TERMS AND CONDITIONS**

**Lease.** The undersigned Lessee ("Lessee") unconditionally and irrevocably agrees to lease from the above referenced Lessor ("Lessor") the Equipment described above, on the terms specified herein and in the Master Lease Agreement referred to above (as amended from time to time, the "Agreement"). The terms of the Agreement are hereby ratified and incorporated in this Schedule as if set forth herein in full, and shall remain in full force and effect and be fully enforceable throughout the Term of this Schedule (this Schedule), together with such incorporated terms of the Agreement, collectively, this "Lease"). Lessee hereby certifies that the Equipment described above has been delivered to, and accepted by, Lessee for all purposes under this Lease.  Capitalized terms used and not otherwise defined in this Schedule have the respective meanings set forth in the Agreement.

**Fair Market Value / TRAC.** At the end of the Initial Term, Lessee must satisfy the terms of the TRAC Lease Rider.  Lessee acknowledges receipt of TRAC Lease Rider.  Provided no default has occurred and is continuing under this Schedule, upon the expiration of the Initial Term, Lessee shall have the option to purchase all (but not less than all) of the Equipment, "AS IS," "WHERE IS," without representation or warranty of any kind, from Lessor, for the Equipment's then estimated "fair market value" as set forth on the TRAC Lease Rider, plus all applicable taxes.  Lessee shall continue to pay all Rent and comply with all other terms of this Schedule until all of the provisions of the TRAC Lease Rider have been complied with and purchase price received by Lessor.

**Insurance Requirements.**

    Type & Level of Insurance:  $1,000,000 Combined Single Limit Liability (each accident)
                                                        or
                                $  500,000 Personal Injury or Death (per person)
                                $1,000,000 Bodily Injury (per accident)
                                $  500,000 Property Damage (per accident)
                                                       AND
                                Comprehensive and Collision - Valued at SLV  with maximum deductible of $1,000

**Miscellaneous.** The amount of each periodic Rent payment set forth above is based on Supplier's best estimate of the Equipment cost, as initially configured herein.  Prior to the commencement hereof, Rent may be increased up to 15%, or decreased without limit, if the actual cost of the Equipment differs from that assumed hereunder. This Lease is fully integrated and supersedes any and all prior oral or other written statements, agreements and understandings regarding the subject master hereof. For purposes of perfection of a security interest in chattel paper by possession under the Uniform Commercial Code (a) this is the sole original executed counterpart of this Schedule; (b) transfer/possession of no other purported counterpart of this Schedule shall effect such perfection; and (c) transfer/possession of an original counterpart of the Agreement shall not be necessary to effect such perfection. In the event this Lease is determined to be a security agreement, then as security for all now existing or hereafter arising obligations of Lessee under the Lease and all other obligations of Lessee to Lessor, Lessee hereby grants to Lessor a first priority security interest in all of Lessee's rights, title (if any) and interests in the Equipment and any additional collateral described herein, and all proceeds and products thereof, including, without limitation, all proceeds of insurance.  To secure its obligations under this Schedule, Lessee hereby grants, assigns, transfer and pledges to the benefit of Lessor a lien and security interest in all Equipment, inventory, contract rights, including without limitation any and all distribution rights, territory rights or any other rights to sell and/or deliver goods or services, accounts receivable and all other assets owned by Lessee whether now existing or hereinafter acquired.

**Power of Attorney.** Lessee does hereby constitute and appoint Lessor the true and lawful attorney-in-fact of the undersigned to sign in the name, place and stead of the Lessee any UCC financing statements, transfer and assumption agreements, bills of sale, certificates of ownership or title, applications for registration and any and all related documents, issued by the Division of Motor Vehicles of the State covering the Vehicle described above in whatever manner necessary to transfer title and registration of said Vehicle as the said attorney may deem fit and proper and Lessee hereby ratifies and confirms whatever action said attorney shall or may take by virtue hereof.





**VEHICLE SCHEDULE TO**
**MASTER LEASE AGREEMENT**

MASTER LEASE AGREEMENT # 1128560/1253668

**ELECTRONIC PAYMENT.** As a condition of this Lease, Lessee hereby authorizes Lessor to automatically initiate and make debit entries (charges) to our bank account (and for our bank to accept and post such debit entries) indicated below for the payment of all bills rendered to us by Lessor. Lessee understands that Lessor may charge a fee of $50.00, and Lessee agrees to pay such fee, in the event a debit entry is not paid by our bank. Any erroneous or incorrect charge will be corrected upon notification to Lessor. If corrections in the debit account are necessary, it may involve a credit or debit to my account.

Please attach a copy of a voided check or deposit slip from the bank account to be debited to this Schedule.

Bank/Depository Name: _____
Bank Address: _____
Zip; State; City: _____
Bank Account #: _____
ABA #: _____

**LESSEE HAS READ (AND UNDERSTANDS THE TERMS OF) THIS SCHEDULE BEFORE SIGNING IT.**

LESSEE: JUST US INC.
SIGNATURE: X _Tim Norton_____     DATE: _10-04-06_____
Tim Norton , President

SIGNATURE: X _____     DATE: _____

**Guaranty:** In consideration of the above referenced Lessor, its successors and assigns ("Lessor"), entering into this Schedule and each subsequent Schedule, the part(ies) or individual(s) executing this Guaranty ("Guarantor", whether one or more) unconditionally and irrevocably guaranty to Lessor, the prompt payment and performance of all obligations of the Lessee under this Schedule Agreement. Guarantor agrees that this is a guaranty of payment and performance, and not of collection only, and that Lessor can proceed directly against Guarantor without first proceeding against Lessee or against the Equipment covered by this Schedule. Guarantor waives all defenses and notices, including those of protest, presentment and demand. Guarantor agrees that Lessor can renew, extend or otherwise modify the terms of each Schedule and Guarantor will be bound by such changes. If Lessee defaults under a Schedule, Guarantor will immediately perform all obligations of Lessee under such Schedule, including, but not limited to, paying all amounts due under such Schedule. Guarantor will pay to Lessor all expenses (including attorneys' fees) incurred by Lessor in enforcing Lessor's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Lessee or Guarantor and will bind Guarantor's heirs, personal representatives, successors and assigns. If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Lessor or any of Lessor's designees to obtain, and share with others, credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary. This Guaranty shall be governed by and construed in accordance with the laws of the State of Utah. **EACH GUARANTOR WAIVES ANY RIGHT TO A TRIAL BY JURY.**

Signature(s): X _Tim Norton_____     X _____     X _____
Name(s): Tim Norton

Page 2 of 2

 



**TRAC LEASE RIDER**

(as required by the Internal Revenue Code)

Reference Agreement # 1128560/1253668

| **Lessor:** | **Lessee:** |
|---|---|
| Key Equipment Finance Inc. | JUST US INC. |
| 3075 Highland Pkwy, 7th floor | 866 E. JACKSON SUITE 7 |
| Downers Grove, IL 60515 | Belvidere , IL 61008 |
| Phone: (888) 357-9457    Fax: (866) 256-2230 | |

To and part of the Agreement referenced above between Lessor, its successors and assigns ("Lessor") and Lessee, its successors and assigns ("Lessee").

A. **TERMINAL RENTAL ADJUSTMENT.** It is presently anticipated that the Fair Market Value of the Equipment upon the expiration of the Initial Term relating thereto will be an amount equal to $ 46,000.00   (the "Estimated Fair Market Value"). It is presently anticipated that the Equipment will be sold on the open market to a third party upon the expiration of the Initial Term relating thereto at the Actual Fair Market Value (the "Actual Fair Market Value"). In the event that the Estimated Fair Market Value exceeds the Actual Fair Market Value (less all selling costs and applicable taxes, if any), the amount of the excess shall promptly upon demand be paid by Lessee to Lessor. In the event that the Actual Fair Market Value (less all selling costs and applicable taxes, if any), exceeds the Estimated Fair Market Value, the amount of the excess shall promptly be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Equipment. As required by Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), Lessee shall execute and deliver to Lessor the Certification by Lessee in substantially the form of the Exhibit appearing at the bottom of this Rider.

B. **INTENT; TITLE.** It is the express intent of the parties that the Agreement constitutes a True Lease and not a sale of the Equipment. Title to the Equipment shall at all times remain in Lessor, and Lessee shall acquire no ownership, title, property, right, equity, or interest in the Equipment other than its leasehold interest solely as Lessee subject to all the terms and conditions of the Agreement.

Notwithstanding the express intent of the parties, should a court of competent jurisdiction determine that the Agreement is not a True Lease, but rather one intended as a security, then solely in that event  and for the express limited purpose thereof, Lessee shall be deemed to have hereby granted Lessor a security interest in the Equipment, and all accessions thereto, substitutions and replacements therefore, and proceeds (including insurance proceeds) thereof (to secure prompt payment and performance as and when due of all obligations and indebtedness of to Lessor, now existing or hereafter created.

---

**CERTIFICATION BY LESSEE**

This Certification is provided by the undersigned Lessee in connection with the Lease Agreement referenced above.  The parties intend and agree that the lease agreement constitute a "Qualified Motor Vehicle Operating Agreement" within the meaning of Section 7701 (h) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury, that it intends that more than fifty (50%) percent of the use of the Equipment (as such term is defined in the lease agreement) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal Income Tax Purposes.

---

**LESSOR:** Key Equipment Finance Inc.

By: _____

Date: _____

**LESSEE:** JUST US INC.

By: _Tim Norton_____

    Tim Norton , President

Date: _10/04/06_____

The undersigned Guarantor hereby agrees that the obligations of the Lessee under this TRAC Lease Rider shall be guaranteed by Guarantor pursuant to the terms of the Guaranty dated _____.

**GUARANTOR:**

By: _Tim Norton_____    Date: _10/04/06_____
    Tim Norton

By: X _____    Date: _____

By: X _____    Date: _____








**EXHIBIT "A"**

Reference Agreement #: 1128560/1253668

**LESSOR:** Key Equipment Finance Inc.

**LESSEE:** JUST US INC.

**LOCATION:** 865 E. Jackson Suite 7, Belvidere , IL 61008

**VENDOR:** Stoops Freightliner Quality Trailer, Inc
1851 W Thompson Rd
Indianapolis , IN 46217

| QTY | VEHICLE DESCRIPTION | VEHICLE IDENTIFICATION NUMBER |
|-----|---------------------|-------------------------------|
| 1 | 2005 FRT CL120 | 1FUJA6CK05LM71243 |
| 1 | 2005 FRT CL120 | 1FUJA6CK55LM71271 |

This Exhibit A is attached to and a part of the above referenced agreement and constitutes a true and accurate
description of the vehicle(s).

Rev 13/01



 



**Authority and Incumbency Certificate**

**Authorization to Sign**

Agreement # 1128560

**Company:**
Key Equipment Finance Inc.
3075 Highland Pkwy, 7th floor
Downers Grove, IL 60515

**Customer:**
JUST US INC.

865 E. JACKSON SUITE 7
Belvidere , IL 61008

**Purpose:**
The purpose of this "Authorization to Sign" form is to ensure that the person signing KEF Leases or Loans on behalf of the Customer is authorized to do so for the Customer noted above. Please follow the steps to fill out this from.

## Step 1: Complete Signor's information

The person who will ultimately be signing the Lease or Loan should complete this Section

| Name of Signor (Print) | Title | Signature |
|---|---|---|
| TIM NORTON | PRESIDENT | *Tim Norton* |

## Step 2: Complete Authorization information

**NOTE: The Officer and the Signor CANNOT be the same person.** An Officer, Member or Partner of the above-name Customer who can attest that the Signor has authority to sign Leases or Loans on behalf of the Customer must complete this Section. If the person signing in this Section is not different from the person whose signature appears above, this could delay the approval process.

As the authorizing   Officer   of the above-name Customer, I do hereby certify that I am a duly qualified and acting   Officer   of the Customer. In such capacity, I have the authority and do hereby certify as follows:

- As of the date of this certification, the Customer is validly existing and in good standing under the laws of the State of ✓ _Illinois_ ; and

- Customer's governing body has taken such action including, without limitation, the adoption of resolutions, as may be necessary to authorize Customer to enter into and perform its obligations under the Agreement.

- As of the date of this certification and the date upon which any document(s) relating to, or constituting, the above-referenced Agreement is executed, the person identified above, in the respective capacity indicated above is fully authorized to sign the Agreement and all other documents relating to the Agreement on behalf of the Customer and to bind the Customer thereto. The signature opposite Signor's name is the true signature of such individual. Company is authorized to rely upon this Certificate until such time as Customer gives Company written notice specifically revoking this Certificate; provided, no such revocation shall in any manner affect the obligations of Customer to Company under the Agreement or any other agreements entered into by Customer with Company prior to the receipt by Company of such notice of revocation.

Executed this _4th_ day of _October_ , 20 _06_

Name of Party Executing Certificate: ✓ _Lee Jacobs_

Title   Officer : _Vice President_

Signature:



*Rev 7/4*

 



### DELIVERY & ACCEPTANCE CERTIFICATE

Reference Agreement # 1128560/1253668

**Company:**
Key Equipment Finance Inc.
3075 Highland Pkwy, 7th floor
Downers Grove, IL 60515

**Customer:**
JUST US INC.

865 E. JACKSON SUITE 7
Belvidere , IL 61008

The undersigned certifies to the Company referenced above, its successors and assigns that all items, referred to in the Agreement referenced above, as either Equipment or Collateral (the "Property"), have been received and irrevocably accepted by the undersigned for all purposes under the Agreement referenced above and were at the time of receipt in good order and condition and acceptable to use.

Customer, its successors and assigns, approve payment by Company to the Supplier. Undersigned hereby certifies that the Company has fully and satisfactorily performed all covenants and conditions to be performed by it under the above-described Agreement. Undersigned agrees to enforce, in its own name, all warranties, agreements or representations, if any, which may be made by the Supplier in respect to the Property.

JUST US INC.

Signature: _Tim Norton_

Print Name and Title: _Tim Norton  President_

Date: _10/04/06_

*Rev 1301*



# INDIANA CERTIFICATE OF TITLE

State Form 9607 (R6/2-02)
Form Approved by State Board of Accounts,1995

S10825

| VEHICLE IDENTIFICATION | YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|---|
| 1FUJA6CK05LM71243 | 2005 | FRT | CL12 | TC |

| PURCHASE DATE | ISSUE DATE | ODOMETER | LEGEND(S) |
|---|---|---|---|
| 05/08/06 | 05/13/06 | EXEMPT | |

**OWNER(S) NAME AND ADDRESS**

CELADON TRUCKING SERVICES INC
9503 E 33RD ST
INDIANAPOLIS    IN 46235

**MAILING ADDRESS**

CELADON TRUCKING SERVICES INC
9503 E 33RD ST
INDIANAPOLIS    IN 46235-4207

1st LIEN

2nd LIEN

## LIEN RELEASES

First Release by:

Title | Date (mo., day, yr.)

Second Release by:

Title | Date (mo., day, yr.)

See back for Safety and Purchasers Requirements.

## SELLER MUST COMPLETE

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

Odometer Reading (no tenths)
☐ 1. The odometer reading stated is in excess of its mechanical limits.
☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY

Signature of seller | Position: Agent

Signature of seller | Position

Printed name of seller: Celadon Trucking S. I.

Printed name of seller

| Date of sale | Selling price | Trade in price (if any) | Total price paid |
|---|---|---|---|
| 9/8/06 | $ | $ | |

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle has been duly titled and the owner of the described vehicle is subject to the liens set forth.

## PURCHASER'S INFORMATION

Name of purchaser: STOOPS FREIGHTLINER-FREMONT | Dealer number: 692M

Address: 7269 NORTH BAKER RD

| City | State | ZIP code |
|---|---|---|
| FREMONT | IN | 46737 |

Lienholder

Address

| City | State | ZIP code |
|---|---|---|

I am aware of the odometer statements made by seller(s).

Signature of purchaser

Printed name of purchaser: LAURA GOSSETT, AGENT

| INVENTORY CONTROL NO. | COMMISSIONER | TITLE NUMBER |
|---|---|---|
| 01060509 | JOEL L. SILVERMAN | 06535097074 M |

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**




REQUIREMENTS: Federal and State law request that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

To Seller:
Please type or print information. Seller is responsible for completing form. If title is in more than one name, all owners must sign as seller. Any portion signing for a company must state positions.

To Purchaser:
You must apply for a new certificate of title within thirty-one days of purchase, or pay a delinquent penalty. At less shown on the face of this title must be released before you apply for a new title. Take this to your local BMVC License Branch to complete your application for a new title.

## FIRST RE-ASSIGNMENT BY REGISTERED DEALER ONLY

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

| I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. | Name of purchaser KEY EQUIPMENT FINANCE INC | | |
|---|---|---|---|
| Odometer reading (no tenths) | ☐ 1. The odometer reading stated is in excess of its mechanical limits. | Address 3075 HIGHLAND PKWY 7thFLOOR | | |
| | ☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY. | City DOWNERS GROVE | State IL | ZIP code 60515 |
| Name of dealership SHOOTS FREIGHTLINER-FREMONT | | Name of lienholder | | |
| Signature [signature] | | Address | | |
| Printed name LAURA GOSSETT | | City | State | ZIP code |
| Position AGENT | Dealer number 692M | I am aware of the above odometer certification made by the seller(s). | | |
| Date of sale (month, day, year) 9/29/06 | | Signature of purchaser | Printed name of purchaser | |

## SECOND RE-ASSIGNMENT BY REGISTERED DEALER ONLY

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

| I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. | Name of purchaser | | |
|---|---|---|---|
| Odometer reading (no tenths) | ☐ 1. The odometer reading stated is in excess of its mechanical limits. | Address | | |
| | ☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY. | City | State | ZIP code |
| Name of dealership | | Name of lienholder | | |
| Signature | | Address | | |
| Printed name | | City | State | ZIP code |
| Position | Dealer number | I am aware of the above odometer certification made by the seller(s). | | |
| Date of sale (month, day, year) | | Signature of purchaser | Printed name of purchaser | |

## THIRD RE-ASSIGNMENT BY REGISTERED DEALER ONLY

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

| I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. | Name of purchaser | | |
|---|---|---|---|
| Odometer reading (no tenths) | ☐ 1. The odometer reading stated is in excess of its mechanical limits. | Address | | |
| | ☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY. | City | State | ZIP code |
| Name of dealership | | Name of lienholder | | |
| Signature | | Address | | |
| Printed name | | City | State | ZIP code |
| Position | Dealer number | I am aware of the above odometer certification made by the seller(s). | | |
| Date of sale (month, day, year) | | Signature of purchaser | Printed name of purchaser | |

NO ADDITIONAL RE-ASSIGNMENTS PERMITTED

# INDIANA CERTIFICATE OF TITLE

State Form 9697 (R8/2-02)
Form Approved by State Board of Accounts,1996

510948

## VEHICLE IDENTIFICATION

| 1FUJA6CK55LM71271 | 2005 | MAKE FRT | MODEL CL12 | BODY STYLE TC |
|---|---|---|---|---|

| PURCHASE DATE | ISSUE DATE | ODOMETER | LEGEND(S) |
|---|---|---|---|
| 05/08/06 | 05/13/06 | EXEMPT | |

**OWNER(S) NAME AND ADDRESS**

CELADON TRUCKING SERVICES INC
9503 E 33RD ST
INDIANAPOLIS    IN   46235

**MAILING ADDRESS**

CELADON TRUCKING SERVICES INC
9503 E 33RD ST
INDIANAPOLIS    IN   46235-4207

1st LIEN

2nd LIEN

### LIEN RELEASES

First Release by:

| Title | | Date (mo., day, yr.) |
|---|---|---|

Second Release by:

| Title | | Date (mo., day, yr.) |
|---|---|---|

See back for Sellers and Purchasers Requirements

## SELLER MUST COMPLETE

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

Odometer Reading (no tenths)

☐ 1. The odometer reading stated is in excess of its mechanical limits.

☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY.

Signature of seller

Position   Ar Agent

Printed name of seller

Celadon Trucking Services

| Date of sale 9/8/06 | Selling price $ | Trade in price (if any) $ | Total price paid $ |
|---|---|---|---|

## PURCHASER'S INFORMATION

Name of purchaser   STOOPS FREIGHTLINER-FREMONT   692M

Address   7269 NORTH BAKER RD

| City   FREMONT | State   IN | ZIP code   46737 |
|---|---|---|

Lienholder

Address

| City | State | ZIP code |
|---|---|---|

I am aware of the odometer statements made by seller(s).

Signature of purchaser

Printed name of purchaser   LAURA GOSSETT, AGENT

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle has been duly titled and the owner of the described vehicle is subject to the liens set forth.

INVENTORY CONTROL NO.

D1060520

COMMISSIONER
JOEL L. SILVERMAN

| TITLE NUMBER |
|---|
| 06535097085 M |

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**




REQUIREMENTS: Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

To Seller: Please type or print information. Seller is responsible for completing form. If title is in more than one name, all owners must sign as seller. Any person signing for a company must state position.

To Purchaser: You must apply for a new certificate of title within thirty-one days of purchase, or pay a delinquent penalty. All liens shown on the face of this title must be released before you apply for a new title. Take this to your local BMV License Branch to complete your application for a new title.

## FIRST RE-ASSIGNMENT BY REGISTERED DEALER ONLY

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

| Odometer Reading (no tenths) | | Name of purchaser |
|---|---|---|
| | ☐ 1. The odometer reading stated is in excess of its mechanical limits. | KEY EQUIPMENT FINANCE INC |
| | ☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY. | Address |
| | | 3075 HIGHLAND PKWY  7TH FLOOR |

Name of dealership
STOOPS FREIGHTLINER-FREMONT

| City | State | ZIP code |
|---|---|---|
| DOWNERS GROVE | IL | 60515 |

Name of lienholder

Signature

Address

Printed name
LAURA COSSETT

| City | State | ZIP code |
|---|---|---|
| | | |

| Position | Dealer number |
|---|---|
| AGENT | 69211 |

I am aware of the above odometer certification made by the seller(s).

Date of sale (month, day, year)
9/29/06

Signature of purchaser | Printed name of purchaser

## SECOND RE-ASSIGNMENT BY REGISTERED DEALER ONLY

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

| Odometer Reading (no tenths) | | Name of purchaser |
|---|---|---|
| | ☐ 1. The odometer reading stated is in excess of its mechanical limits. | Address |
| | ☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY. | City  State  ZIP code |

Name of dealership

Name of lienholder

Signature

Address

Printed name

| City | State | ZIP code |
|---|---|---|
| | | |

| Position | Dealer number |
|---|---|
| | |

I am aware of the above odometer certification made by the seller(s).

Date of sale (month, day, year)

Signature of purchaser | Printed name of purchaser

## THIRD RE-ASSIGNMENT BY REGISTERED DEALER ONLY

We swear or affirm that the information entered on this form is correct. We understand that a false statement may constitute the crime of perjury.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

| Odometer Reading (no tenths) | | Name of purchaser |
|---|---|---|
| | ☐ 1. The odometer reading stated is in excess of its mechanical limits. | Address |
| | ☐ 2. The odometer reading is NOT actual mileage. WARNING - ODOMETER DISCREPANCY. | City  State  ZIP code |

Name of dealership

Name of lienholder

Signature

Address

Printed name

| City | State | ZIP code |
|---|---|---|
| | | |

| Position | Dealer number |
|---|---|
| | |

I am aware of the above odometer certification made by the seller(s).

Date of sale (month, day, year)

Signature of purchaser | Printed name of purchaser

NO ADDITIONAL RE-ASSIGNMENTS PERMITTED

3/13/2008

## ATTACHMENT I

## STATELINE EXPRESS INC.

### AMOUNTS DUE

### KEY EQUIPMENT FINANCE INC.

| REMAINING AMOUNTS DUE | | | | | |
|---|---|---|---|---|---|
| LEASE | | | RENT | SUB TOTAL | TOTAL |
| Schedule No. CW01253668<br>03/01/08 - 10/01/10<br>42months @$3322.78/month | | | 139,556.76 | 139,556.76 | 139,556.76 |
| Trac Lease Rider payment | | | 0.00 | 0.00 | 40,000.00 |
| SUB TOTAL / REMAINING AMOUNTS DUE UNDER LEASE (PLUS ALL TAXES DUE BUT NOT YET BILLED): | | | 139,556.76 | 139,556.76 | 179,556.76 |
| TOTAL OBLIGATION | | | | | 179,556.76 |

EXHIBIT

B






**TRAC LEASE RIDER**
(as required by the Internal Revenue Code)

Reference Agreement # 1128560/1253668

**Lessor:**

Key Equipment Finance Inc.
3075 Highland Pkwy, 7th floor
Downers Grove, IL 60515
Phone: (888) 357-9457      Fax: (866) 256-2230

**Lessee:**

JUST US INC.
886 E. JACKSON SUITE 7
Belvidere , IL 61008

To and part of the Agreement referenced above between Lessor, its successors and assigns ("Lessor") and Lessee, its successors and assigns ("Lessee").

A.  TERMINAL RENTAL ADJUSTMENT.  It is presently anticipated that the Fair Market Value of the Equipment upon the expiration of the Initial Term relating thereto will be an amount equal to $  40,000.00   (the "Estimated Fair Market Value").  It is presently anticipated that the Equipment will be sold on the open market to a third party upon the expiration of the Initial Term relating thereto at the Actual Fair Market Value (the "Actual Fair Market Value").  In the event that the Estimated Fair Market Value exceeds the Actual Fair Market Value (less all selling costs and applicable taxes, if any), the amount of the excess shall promptly upon demand be paid by Lessee to Lessor.  In the event that the Actual Fair Market Value (less all selling costs and applicable taxes, if any), exceeds the Estimated Fair Market Value, the amount of the excess shall promptly be paid by Lessor to Lessee.  Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Equipment.  As required by Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), Lessee shall execute and deliver to Lessor the Certification by Lessee in substantially the form of the Exhibit appearing at the bottom of this Rider.

B.  INTENT; TITLE.  It is the express intent of the parties that the Agreement constitutes a True Lease and not a sale of the Equipment.  Title to the Equipment shall at all times remain in Lessor, and Lessee shall acquire no ownership, title, property, right, equity, or interest in the Equipment other than its leasehold interest solely as Lessee subject to all the terms and conditions of the Agreement.

Notwithstanding the express intent of the parties, should a court of competent jurisdiction determine that the Agreement is not a True Lease, but rather one intended as a security, then solely in that event  and for the express limited purpose thereof, Lessee shall be deemed to have hereby granted Lessor a security interest in the Equipment, and all accessions thereto, substitutions and replacements therefore, and proceeds (including insurance proceeds) thereof (to secure prompt payment and performance as and when due of all obligations and indebtedness of to Lessor, now existing or hereafter created.

---

**CERTIFICATION BY LESSEE**

This Certification is provided by the undersigned Lessee in connection with the Lease Agreement referenced above.  The parties intend and agree that the lease agreement constitute a "Qualified Motor Vehicle Operating Agreement" within the meaning of Section 7701 (h) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury, that it intends that more than fifty (50%) percent of the use of the Equipment (as such term is defined in the lease agreement) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal Income Tax Purposes.

---

**LESSOR:** Key Equipment Finance Inc.

By: _____

Date: _____

**LESSEE:** JUST US INC.

By:  *Tim Norton*

Tim Norton , President

Date:  10/04/06

The undersigned Guarantor hereby agrees that the obligations of the Lessee under this TRAC Lease Rider shall be guaranteed by Guarantor pursuant to the terms of the Guaranty dated _____.

**GUARANTOR:**

By:  *Tim Norton*          Date:  10/04/06
     Tim Norton

By:  X _____     Date: _____

By:  X _____     Date: _____



**EXHIBIT**

**D**



**VEHICLE SCHEDULE TO**
**MASTER LEASE AGREEMENT**

*MASTER LEASE AGREEMENT # 1128560/1253668*

**ELECTRONIC PAYMENT.** As a condition of this Lease, Lessee hereby authorizes Lessor to automatically initiate and make debit entries (charges) to our bank account (and for our bank to accept and post such debit entries) indicated below for the payment of all bills rendered to us by Lessor. Lessee understands that Lessor may charge a fee of $50.00, and Lessee agrees to pay such fee, in the event a debit entry is not paid by our bank. Any erroneous or incorrect charge will be corrected upon notification to Lessor. If corrections in the debit account are necessary, it may involve a credit or debit to my account.

Please attach a copy of a voided check or deposit slip from the bank account to be debited to this Schedule.

Bank/Depository Name: _____
Bank Address: _____
Zip: State: City: _____
Bank Account #: _____
ABA #: _____

**LESSEE HAS READ (AND UNDERSTANDS THE TERMS OF) THIS SCHEDULE BEFORE SIGNING IT.**

LESSEE: JUST US INC.

SIGNATURE: X *Tim Norton*                     DATE: / 10-04-06
            Tim Norton , President

SIGNATURE: X _____          DATE: _____

**Guaranty.** In consideration of the above referenced Lessor, its successors and assigns ("Lessor"), entering into this Schedule and each subsequent Schedule, the part(ies) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guaranty to Lessor, the prompt payment and performance of all obligations of the Lessee under this Schedule Agreement. Guarantor agrees that this is a guaranty of payment and performance, and not of collection only, and that Lessor can proceed directly against Guarantor without first proceeding against Lessee or against the Equipment covered by this Schedule. Guarantor waives all defenses and notices, including those of protest, presentment and demand. Guarantor agrees that Lessor can renew, extend or otherwise modify the terms of each Schedule and Guaranty will be bound by such changes. If Lessee defaults under a Schedule, Guarantor will immediately perform all obligations of Lessee under such Schedule, including, but not limited to, paying all amounts due under such Schedule. Guarantor will pay to Lessor all expenses (including attorneys' fees) incurred by Lessor in enforcing Lessor's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Lessee or Guarantor and will bind Guarantor's heirs, personal representatives, successors and assigns. If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Lessor or any of Lessor's designees to obtain, and share with others, credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary. This Guaranty shall be governed by and construed in accordance with the laws of the State of Utah. **EACH GUARANTOR WAIVES ANY RIGHT TO A TRIAL BY JURY.**

Signature(s): X *Tim Norton*          X _____          X _____
Name(s):      Tim Norton

Page 2 of 2



**EXHIBIT**

**E**

12.    **CHOICE OF LAW.**  This Modification and Assumption Agreement shall be governed and construed in accordance with the laws of the State of Utah.

KEY EQUIPMENT FINANCE                      JUST US INC. and TIM NORTON

By: _____             By: _____


STATELINE EXPRESS INC.

By: _____


13.    **GUARANTY:**  In consideration of the above referenced KEY EQUIPMENT FINANCE, its successors and assigns ("Lessor"), entering into this Modification and Assumption Agreement, OWEN COSTANZA ("Guarantor"), personally guarantees the prompt payment and performance of all obligations of STATELINE EXPRESS INC. ("STATELINE"), the New Lessee under the Modification and Assumption Agreement and the Master Lease Agreement and incorporated Schedules. Guarantor agrees that this is a guaranty of payment and performance, and not of collection only, and that Lessor can proceed directly against Guarantor without first proceeding against STATELINE or against the Equipment covered by this Agreement. Guarantor waives all defenses and notice, including those of protest, presentment and demand.  Lessor is not required to provide Guarantor with notice of default. Guarantor agrees that Lessor can renew, extend or otherwise modify the terms of each Schedule in the Master Lease Agreement or in the Modification and Assumption Agreement and Guarantor will be bound by such changes.  If STATELINE defaults under any of the Schedules to the Master Lease Agreement or the Modification and Assumption Agreement, Guarantor will immediately perform all obligations of STATELINE under such Schedule to the Master Lease Agreement or Modification and Assumption Agreement, including but not limited to, paying all amounts due under the Schedules to the master Lease Agreement or the Modification and Assumption Agreement.  Guarantor will pay to Lessor all expenses (including attorney's fees) incurred by Lessor in enforcing Lessor's rights against Guarantor.  This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of STATELINE or Guarantor and will bind Guarantor's heirs, successors, assigns, and personal representatives. Guarantor will not be discharged by any other Guarantor that may be liable to Lessor concerning the Master Lease Agreement. Guarantor agrees that if any other Guarantor has signed a Guaranty relating to said Agreements, that his/her liability is joint and several.  Guarantor authorizes Lessor or any of Lessor's designees to obtain and share with others, credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary.  This Guaranty shall be



EXHIBIT

F

governed and construed in accordance with the laws of the State of Utah. **EACH GUARANTOR WAIVES ANY RIGHT TO A TRIAL BY JURY.**

**Signature:** X _____

Name:          Owen Costanza, Personal Guarantor