# Exhibit 1

INSURED — FRANK H CLARK SR

POLICY NUMBER — 46 323 072

POLICY DATE — JULY 5, 1998

# New York Life Insurance Company

**New York Life Insurance Company** will pay the benefits of this policy in accordance with its provisions. The pages which follow are also a part of this policy.

**10 Day Right To Examine Policy.** Please examine your policy. Within 10 days after delivery, you can return it to New York Life Insurance Company or to the agent through whom it was purchased, with a written request for a full refund of premium. Upon such request, the policy will be void from the start, and a full premium refund will be made.

**Premiums.** The premiums for this policy are shown in the Premium Schedule on the Policy Data page. They are payable in accordance with the Premiums section.

This policy is executed as of the date of issue shown on the Policy Data page.

*[signature]*

President

*[signature]*

Secretary

**Whole Life Policy.**

Life Insurance Proceeds Payable at Insured's Death.

Premiums Payable During Insured's Lifetime, as shown on the Policy Data page.

Policy is Eligible for Dividends.

987-50

INSURED -- FRANK H CLARK SR                                          AGE 42   MALE

POLICY NUMBER -- 46 323 072                    CLASS OF RISK - STANDARD
                                               (NON-SMOKER DISCOUNT)

POLICY DATE -- JULY 5, 1998                     DATE OF ISSUE
                                                   JULY 30, 1998


OWNER -- INSURED


PLAN        WHOLE LIFE WITH
            DISABILITY WAIVER OF PREMIUM (WP) AND
            DIVIDEND OPTION TERM (DOT)




AMOUNT    FACE AMOUNT                                                $50,000.00
          DIVIDEND OPTION TERM (TARGET FACE AMOUNT)                  $48,725.00




BENEFICIARY
(subject to change)   AS DESIGNATED ON APPLICATION, OR AS SUBSEQUENTLY CHANGED
                      IN ACCORDANCE WITH THE CHANGE OF BENEFICIARY PROVISIONS




SEE CONTINUATION OF PAGE 2.

**POLICY DATA**                                    **NEW YORK LIFE INSURANCE COMPANY**

PREMIUM SCHEDULE
PREMIUMS PAYABLE        AT MONTHLY            INTERVALS, AS FOLLOWS  SEE ENDORSEMENT HEREON
                                             (Premium includes the following amounts for
                                             any supplementary benefits)

BEGINNING AS OF
MO. DAY YR.          PREMIUM
7- 5-1998            $93.81
7- 5-2003            $86.50    PAYABLE FOR REMAINDER OF INSURED'S LIFE.


                           WP∂#          DOT
7- 5-1998              $.49        $6.82
7- 5-2003               -            -


∂#  FOR THIS POLICY, THE DISABILITY WAIVER OF PREMIUM RIDER IS NOT OPTIONAL AND MUST BE
INCLUDED WITH THE POLICY.  THERE IS NO SEPARATE ADDITIONAL CHARGE FOR THIS RIDER UNLESS YOU
HAVE THE CHILDREN'S INSURANCE, SPOUSE AND CHILDREN'S INSURANCE, POLICY PURCHASE OPTION,
TERM INSURANCE ON OTHER COVERED INSURED, DIVIDEND OPTION TERM, AND/OR INCREASING PREMIUM
TERM RIDERS AS PART OF YOUR POLICY.  A CHARGE FOR INCLUSION OF THE DISABILITY WAIVER OF
PREMIUM RIDER IS INCLUDED IN THE BASIC POLICY PREMIUM.


THE INTEREST RATE REFERRED TO IN THE BASIS OF COMPUTATION SECTION IS 4.5% PER YEAR.

**POLICY DATA**                                    **NEW YORK LIFE INSURANCE COMPANY**

# TABLE OF GUARANTEED VALUES*

| END OF POLICY YEAR | CASH VALUE + | ALTERNATIVES TO CASH VALUE PAID-UP INSURANCE OR EXTENDED INSURANCE | | | END OF POLICY YEAR |
|---|---|---|---|---|---|
| | | | YEARS | DAYS | |
| 1 | ***** | *** | ** | *** | 1 |
| 2 | ***** | *** | ** | *** | 2 |
| 3 | $650.00 | $2,100 | 2 | 75 | 3 |
| 4 | 1,450.00 | 4,550 | 4 | 154 | 4 |
| 5 | 2,200.00 | 6,650 | 6 | 24 | 5 |
| 6 | 3,100.00 | 9,050 | 7 | 241 | 6 |
| 7 | 4,000.00 | 11,300 | 8 | 329 | 7 |
| 8 | 4,900.00 | 13,400 | 9 | 322 | 8 |
| 9 | 5,850.00 | 15,450 | 10 | 270 | 9 |
| 10 | 6,800.00 | 17,400 | 11 | 148 | 10 |
| 11 | 7,750.00 | 19,200 | 11 | 333 | 11 |
| 12 | 8,800.00 | 21,150 | 12 | 148 | 12 |
| 13 | 9,750.00 | 22,700 | 12 | 243 | 13 |
| 14 | 10,750.00 | 24,300 | 12 | 327 | 14 |
| 15 | 11,800.00 | 25,850 | 13 | 38 | 15 |
| 16 | 12,750.00 | 27,150 | 13 | 50 | 16 |
| 17 | 13,750.00 | 28,450 | 13 | 57 | 17 |
| 18 | 14,700.00 | 29,550 | 13 | 26 | 18 |
| 19 | 15,700.00 | 30,650 | 12 | 357 | 19 |
| 20 | 16,750.00 | 31,850 | 12 | 320 | 20 |
| AGE 60 | 14,700.00 | 29,550 | 13 | 26 | AGE 60 |
| AGE 65 | 19,800.00 | 34,750 | 12 | 110 | AGE 65 |

*This table assumes premiums have been paid to the end of the policy year shown. These values do not include any dividend accumulations, paid-up additions, or policy loans.

+The loan value is equal to the cash value, plus dividend values, if any, less any unpaid loan and accrued interest.

POLICY DATA                                    NEW YORK LIFE INSURANCE COMPANY

**WE & YOU**

In this policy, the words "we", "our" or "us" refer to New York Life Insurance Company, and the words "you" or "your" refer to the owner of this policy.

When you write to us, please include the policy number, the Insured's full name, and your current address.

---

# CONTENTS

**POLICY DATA PAGES**   Policy Identification and Specifications; Table of Guaranteed Values / **2-2A**

**LIFE INSURANCE PROCEEDS**   Life Insurance Proceeds / **4**

**POLICY OWNERSHIP**   Owner; Successor Owner; Change of Ownership / **4**

**BENEFICIARY**   Naming of Beneficiary; Change of Beneficiary; Death of Beneficiary / **4**

**PREMIUMS**   Payment of Premiums; Grace Period; Nonpayment of Premium; Options Upon Lapse; Reinstatement; Premium Adjustment at Death / **5-6**

**CASH VALUE AND LOANS**   Cash Value; Loan Value; Loan Interest; Loan Interest Rate; Automatic Premium Loan (APL); Loan Repayment; When Unpaid Loan Exceeds Loan Value / **6-7**

**DIVIDENDS**   Annual Dividend; Dividend Options; Automatic Dividend Option; Dividend Values; Fully Paid-up Policy; Dividend at Death / **8**

**PAYMENT OF POLICY PROCEEDS**   Payment; Election of Optional Method of Payment; Change of Option; Payees; Minimum Payment; Options 1A and 1B. Proceeds at Interest; Options 2A and 2B. Elected Income; Options 3A, 3B and 3C. Life Income / **8-10**

**GENERAL PROVISIONS**   Entire Contract; Application; Incontestability; Suicide Exclusion; Dates; Age and Sex; Policy Changes; Assignment; Protection Against Creditors; Payments to Company; Basis of Computation; Conformity with Law; Voting Rights / **11**

**APPLICATION**   Attached to the Policy.

**RIDERS OR ENDORSEMENTS (IF ANY)**   Attached to the Policy.

---

**Note:** This policy is a legal contract between the policyowner and the Company.
**READ YOUR POLICY CAREFULLY FOR FULL DETAILS.**

# LIFE INSURANCE PROCEEDS

**Life Insurance Proceeds** We will pay the life insurance proceeds to the beneficiary promptly when we have proof that the Insured died, if premiums have been paid as called for in the Premiums section. These proceeds will include the face amount and any other benefits from riders or dividends which are payable because of the Insured's death, all as stated in the policy. When we determine these proceeds, there may be an adjustment for the last premium. We will deduct any unpaid loan.

# POLICY OWNERSHIP

**Owner** In this policy, the words "you" and "your" refer to the owner of this policy. As the owner, you have all rights of ownership in this policy while the Insured is living. To exercise these rights, you do not need the consent of any successor owner or beneficiary.

**Successor Owner** A successor owner can be named in the application, or in a notice you sign which gives us the facts that we need. The successor owner will become the new owner when you die, if you die before the Insured. If no successor owner survives you and you die before the Insured, your estate becomes the new owner.

**Change of Ownership** You can change the owner of this policy, from yourself to a new owner, in a notice you sign which gives us the facts that we need. When this change takes effect, all rights of ownership in this policy will pass to the new owner.

When we record a change of owner or successor owner, these changes will take effect as of the date you signed the notice, subject to any payment we made or action we took before recording these changes. We may require that these changes be endorsed in the policy. Changing the owner or naming a new successor owner cancels any prior choice of successor owner, but does not change the beneficiary.

# BENEFICIARY

**Naming of Beneficiary** One or more beneficiaries for any life insurance proceeds can be named in the application, or in a notice you sign which gives us the facts that we need. If more than one beneficiary is named, they can be classed as first, second, and so on. If 2 or more are named in a class, their shares in the proceeds can be stated.

The stated shares of the proceeds will be paid to any first beneficiaries who survive the Insured. If no first beneficiaries survive, payment will be made to any beneficiary surviving in the second class, and so on. Beneficiaries who survive in the same class have an equal share in the proceeds, unless the shares are stated otherwise.

**Change of Beneficiary** While the Insured is living, you can change a beneficiary in a notice you sign which gives us the facts that we need. When we record a change, it will take effect as of the date you signed the notice, subject to any payment we made or action we took before recording the change.

**Death of Beneficiary** If no beneficiary for the life insurance proceeds, or for a stated share, survives the Insured, the right to these proceeds or this share will pass to you. If you are the Insured, this right will pass to your estate. Unless stated otherwise in the policy or in your signed notice which is in effect at the Insured's death, if any beneficiary dies at the same time as the Insured, or within 15 days after the Insured but before we receive proof of the Insured's death, we will pay the proceeds as though that beneficiary died first.

# PREMIUMS

**Payment of Premiums** Each premium is payable, while the Insured is living, on or before its due date as shown in the Premium Schedule on the Policy Data page. Premiums are payable at our Home Office or at one of our service offices.

The premium for this policy can be paid at intervals of 3 months or 6 months, or once each year. The method we use to determine the premium rate for each of these intervals is the method that was in effect as of the policy date shown on the Policy Data page. The interval can be changed by paying the correct premium for the new interval. Premiums can be paid by any other method we make available.

**Grace Period** We allow 31 days from the due date for payment of a premium. All insurance coverage continues during this grace period.

**Nonpayment of Premium** If a premium is not paid by the end of the grace period, this policy will lapse. All insurance will end at the time of lapse, if the policy has no cash value and no dividend values. If the policy has cash value or dividend values, insurance can be continued only as stated in Options 1 or 2 of the Options Upon Lapse provision, but any insurance or benefits from riders or dividends will end at the time of lapse.

**Options Upon Lapse** If the policy has cash value or dividend values at the time of lapse, it will continue as extended insurance, if available. It may happen that the amount of extended insurance would be less than or equal to the amount of paid-up insurance available, or the Table of Guaranteed Values on the Policy Data page shows that extended insurance is not available. In these cases, the policy will continue under the paid-up insurance option instead.

Instead of extended insurance, paid-up insurance can be elected or you can surrender the policy for cash. The paid-up insurance option can be elected in the application or in your signed notice. We must receive this notice no later than 3 months after the due date of the overdue premium.

**1. Extended Insurance** Extended insurance is level term insurance for which no more premiums are due. It is payable to the beneficiary when we have proof that the Insured died after

the end of the grace period and before the end of the term period. The amount of extended insurance will equal the face amount of this policy, plus the amount of any paid-up additions and dividend accumulations, less any unpaid loan. No insurance or benefits from riders or dividends will be provided after the end of the grace period.

We calculate the term period as of the due date of the overdue premium. We do this by applying the sum of the cash value and dividend values, less any unpaid loan, at the net single premium rate for term insurance for the Insured's age on that date. The term period is measured from that due date.

This insurance can be surrendered at any time for its cash value, but it has no loan value and is not eligible for dividends. All insurance will end when you send us your signed request for the cash value proceeds.

**2. Paid-up Insurance** Paid-up life insurance begins as of the date we record your notice electing it, or begins at the end of the grace period if later. No more premiums are due for this insurance. It is payable to the beneficiary when we have proof that the Insured died while this paid-up insurance option was in effect.

We calculate the amount of paid-up insurance as of the due date of the overdue premium. We do this by applying the sum of the cash value and dividend values, less any unpaid loan, at the net single premium rate for the Insured's age on that date. In most cases, this amount will be less than the face amount of this policy. No insurance or benefits from riders will be provided after this paid-up insurance option goes into effect.

This insurance can be surrendered at any time. It has cash value and loan value, and is eligible for dividends. All insurance will end when you send us your signed request for the cash value proceeds.

**3. Surrender for Cash** Instead of extended insurance or paid-up insurance, you can surrender this policy for its cash value and dividend values, less any unpaid loan, as stated in the Cash Value provision. All insurance will end when you send us your signed request for the cash value proceeds.

## PREMIUMS (continued)

**Reinstatement**  Within 5 years after lapse, you may apply to reinstate the policy if you have not surrendered it. We must have evidence of insurability that is acceptable to us. All overdue premiums must be paid, with interest at 6% per year from each of their due dates, unless we declare a policy loan interest rate of less than 6%. In that case, the interest rate for all overdue premiums at the time of reinstatement will be the same as the policy loan interest rate, but not more than 6%. Any unpaid loan, and any loan deducted when we determined the extended or paid-up insurance, must also be repaid. Interest on the loan will be compounded once each year and will be based on the loan interest rate or rates that were in effect since the time of lapse.

All or part of these payments can be charged as a new unpaid loan if there is enough loan value.

We do not need evidence of insurability if we receive the required payment within 31 days after the end of the grace period, but the Insured must be living when we receive it.

**Premium Adjustment at Death**  We will increase the life insurance proceeds by any part of a premium paid for the period after the policy month in which the Insured dies.

If the Insured dies during a grace period, we will reduce the proceeds by an amount equal to the premium for one policy month.

## CASH VALUE AND LOANS

**Cash Value**  Cash values for this policy at the end of selected policy years are as shown in the Table of Guaranteed Values on the Policy Data page, if premiums have been paid as called for in the Premiums section. These values do not include dividend values, and they do not reflect any unpaid loan. Cash values at other times depend on the date to which premiums have been paid, and on how much time has passed since the last policy anniversary. When you ask us, we will tell you how much cash value there is.

The cash value on the due date of an unpaid premium will not decrease during the 3 months after that date. Also, the cash value of any extended or paid-up insurance on a policy anniversary will not decrease during the next 31 days after that anniversary.

At any time after the policy has cash value or dividend values, you can surrender it for the sum of these values, less any unpaid loan. All insurance will end when you send us your signed request for these surrender proceeds.

We may defer paying these proceeds for up to 6 months after the date of surrender. Interest will be paid on any amount deferred for 30 days or more. We set the interest rate each year. This rate will be at least 3.5% per year.

**Loan Value**  You can borrow any amount up to the loan value, using this policy as sole security. On a policy anniversary, on a premium due date, or during the grace period, the loan value is the cash value, plus any dividend values, less any unpaid loan and accrued interest. At any other time, the loan value is the amount which, with interest, will equal the loan value on the next anniversary or on the next premium due date, if earlier. Extended insurance has no loan value.

We may require that you sign a loan agreement. We may defer a loan, except to pay a premium due us for this policy, for as long as 6 months after we receive your loan request.

**Loan Interest**  Loan interest accrues each day. Interest is due on each anniversary, or on the date of death, surrender, a lapse, a loan increase or loan repayment, or on any other date we specify. Interest not paid when due becomes part of the loan and will also bear interest.

**Loan Interest Rate**  The loan interest rate for this policy may go up or down as described in this provision. However, the rate at any given time will apply to the entire amount of an unpaid loan. We may set this rate as often as once every 3 months, but will set it at least once each year.

## CASH VALUE AND LOANS (continued)

The loan interest rate will not be more than the Monthly Average Corporates yield shown in Moody's Corporate Bond Yield Averages published by Moody's Investors Services, Inc., or any successor to that service (the published monthly average), for the second calendar month prior to the date when we set an interest rate for this policy. If the rate, at this time, as determined by the published monthly average, is 0.5% or more above the current loan interest rate, we have the right to increase the loan interest rate to reflect this. However if the rate, at this time, as determined by the published monthly average, is 0.5% or more below the current loan interest rate, we will reduce the loan interest rate to reflect this. The loan interest rate will never be less than the interest rate shown on the Policy Data page plus 1%.

We will tell you the interest rate in effect when a loan, including an Automatic Premium Loan (APL), is made and when we send you notice of loan interest due. If a loan is outstanding 40 days or more before the effective date of an increase in the interest rate, we will notify you of that increase at least 30 days prior to its effective date. We will notify you of any increase in the interest rate when a loan is made during the 40 days before the effective date of the increase.

It may happen that the published monthly average ceases to be published. In this case, we will use a new basis approved by the insurance supervisory official of the state or district in which the policy is delivered.

**Automatic Premium Loan (APL)**  If elected, APL provides an automatic loan which pays an overdue premium at the end of the grace period, subject to 2 conditions. First, the loan value must be enough to pay that premium. Second, if premiums have been paid by APL for 2 years in a row, the next premium will not be paid by APL. After a premium is paid other than by APL, before

the end of the grace period, premiums can again be paid by APL.

APL can be elected in the application. You can also elect APL in your signed notice which we must receive before the end of the grace period. You can cancel this election for future premiums by telling us in your signed notice.
**(SEE ENDORSEMENT HEREON)**

**Loan Repayment**  All or part of an unpaid loan and accrued interest can be repaid before the Insured's death or before you surrender the policy. We will deduct any unpaid loan when policy proceeds are payable.

If the policy is being continued as extended or paid-up insurance, any loan which we deducted in determining that insurance may be repaid only if the policy is reinstated. If that loan is not repaid, we will not deduct it again when policy proceeds are payable.

**When Unpaid Loan Exceeds Loan Value**  In a given policy year it may happen that, based on the loan interest rate in effect when that year began (ignoring any higher interest rate during that year), an unpaid loan and accrued interest will exceed the sum of the cash value and any dividend values. In this case, we will mail a notice to you at your last known address, and a copy to any assignee on our records. All insurance will end 31 days after the date on which we mail that notice, if the excess of the unpaid loan and accrued interest over the sum of the cash value and any dividend values is not paid within that 31 days.

After a given policy year begins, it may happen that a lower loan interest rate or rates may take effect during that year. In this case, when we determine if an unpaid loan and accrued interest will exceed the cash value and any dividend values, we will use the rate of interest in effect when that year began, and will also take into account the lower rate or rates.

## DIVIDENDS

**Annual Dividend**  While this policy is in force, except as extended insurance, it is eligible to share in our divisible surplus. Each year we determine the policy's share, if any. This share is payable as a dividend on the policy anniversary, if all premiums due before then have been paid. We do not expect a dividend to be payable before the second anniversary.

**Dividend Options**  Each dividend can be applied under one of the 4 options listed below. An option can be elected in the application. You can also elect or change the option for future dividends if you tell us in your signed notice.

**1. Paid-up Addition**  Applied to provide paid-up life insurance at the net single premium rate for the Insured's age at that time. No more premiums are due for this insurance. It has cash value and is eligible for dividends. Before the Insured's death, you can surrender paid-up additions for their cash value that has not been borrowed against. The amount of this insurance in force at the Insured's death will be part of the life insurance proceeds.

**2. Dividend Accumulation**  Left with us to accumulate at interest. On each policy anniversary, we credit interest at the rate we set each year. This rate will be at least 3.5% per year. Before the Insured's death, you can withdraw accumulations that have not been borrowed against, with interest to the date of withdrawal. Any accumulations which we still have at the Insured's death will be part of the life insurance proceeds.

**3. Premium Payment**  Applied toward payment of a premium, provided any balance of that premium is also paid when due. Any part of the dividend not needed to pay the premium will be used to pay any loan interest due, unless you have asked to have that part paid in cash. Any part of the dividend not used to pay a premium or loan interest will be paid in cash.

**4. Cash**  Paid in cash.

**Automatic Dividend Option**  If no other option is in effect when a dividend becomes payable, we will apply it as a paid-up addition. If we pay a dividend in cash, and the dividend check is not cashed within one year after that dividend became payable, we will apply the dividend as a paid-up addition instead.

**Dividend Values**  Dividend values are any dividend accumulations plus the cash value of any paid-up additions.

**Fully Paid-up Policy**  You may shorten the premium paying period for this policy by having it made fully paid-up with no more premiums due. This may be done on any premium due date, if the sum of the cash value and dividend values equals the total single premium for the policy and any riders, based on the Insured's age on that date. We must receive your signed notice within 31 days of that date.

**Dividend at Death**  The part of any annual dividend earned from the last policy anniversary to the end of the policy month in which the Insured dies will be part of the life insurance proceeds.

## PAYMENT OF POLICY PROCEEDS

**Payment**  We will pay the life insurance proceeds in one sum or, if elected, all or part of these proceeds may be placed under one or more of the options described in this section. If we agree, the proceeds may be placed under some other method of payment instead.

Any life insurance proceeds paid in one sum will bear interest compounded each year from the Insured's death to the date of payment. We set the interest rate each year. This rate will be at least 3.5% per year, and will not be less than required by law.

**Election of Optional Method of Payment**  While

the Insured is living, you can elect or change an option. You can also name or change one or more beneficiaries for the life insurance proceeds who will be the payee or payees under that option.

After the Insured dies, any person who is to receive proceeds in one sum (other than an assignee) can elect an option and name payees. The person who elects an option can also name one or more successor payees to receive any unpaid amount we have at the death of a payee. Naming these payees cancels any prior choice of successor payee.

## PAYMENT OF POLICY PROCEEDS (continued)

A payee who did not elect the option does not have the right to advance or assign payments, take the payments in one sum, or make any other change. However, the payee may be given the right to do one or more of these things if the person who elects the option tells us in writing and we agree.

**Change of Option**  If we agree, a payee who elects Option 1A, 1B, 2A or 2B may later elect to have any unpaid amount we still have, or the present value of any elected payments, placed under some other option described in this section.

**Payees**  Only individuals who are to receive payments in their own behalf may be named as payees or successor payees, unless we agree to some other payee. We may require proof of the age or the survival of a payee.

It may happen that when the last surviving payee dies, we still have an unpaid amount, or there are some payments which remain to be made. If so, we will pay the unpaid amount with interest to the date of payment, or pay the present value of the remaining payments, to that payee's estate in one sum. The present value of any remaining payments is based on the interest rate used to compute them, and is always less than their sum.

**Minimum Payment**  When any payment under an option would be less than $20, we may pay any unpaid amount or present value in one sum.

### Options 1A and 1B.  Proceeds at Interest

The policy proceeds may be left with us at interest. We set the interest rate each year. This rate will be at least 3.5% per year.

#### 1A.  Interest Accumulation

We credit interest each year on the amount we still have. This amount can be withdrawn at any time in sums of $100 or more. We pay interest to the date of withdrawal on sums withdrawn.

#### 1B.  Interest Payment

We pay interest once each month, every 3 months or every 6 months, or once each year, as chosen, based on the amount we still have.

### Options 2A and 2B.  Elected Income

We make equal payments once each month,

every 3 months or every 6 months, or once each year, as chosen, for an elected period of years or for an elected amount. We set the interest rate for these options each year. This rate will be at least 3.5% per year. If the rate is more than 3.5%, we will increase each payment to reflect this.

#### 2A.  Income for Elected Period

We make the payments for the number of years elected. Monthly payments based on 3.5% interest are shown in the Option 2A Table.

### OPTION 2A TABLE

Minimum Monthly Payment per $1,000 of Proceeds

| Years | | Years | | Years | | Years | |
|---|---|---|---|---|---|---|---|
| 1 | $84.65 | 5 | $18.12 | 9 | $10.75 | 15 | $7.10 |
| 2 | 43.05 | 6 | 15.35 | 10 | 9.83 | 20 | 5.75 |
| 3 | 29.19 | 7 | 13.38 | 11 | 9.09 | 25 | 4.96 |
| 4 | 22.27 | 8 | 11.90 | 12 | 8.46 | 30 | 4.45 |

When asked, we will state in writing what each payment would be, if made every 3 months or every 6 months, or once each year.

#### 2B.  Income of Elected Amount

We make payments of the elected amount until all proceeds and interest have been paid. The total payments made each year must be at least 5% of the proceeds placed under this option. Each year we credit interest of at least 3.5% on the amount we still have.

### Options 3A, 3B, and 3C.  Life Income

We make equal payments each month during the lifetime of the named payee or payees. We determine the amount of the monthly payment by applying the policy proceeds to purchase a corresponding single premium life annuity policy which is being issued when the first payment is due. Payments are based on the appropriately adjusted annuity premium rate in effect at that time, but will not be less than the corresponding minimum amount based on the tables for Options 3A, 3B, and 3C in this policy. The minimum amounts are based on the "1983 Table a" mortality table with projection, and with interest compounded each year at 4%.

# PAYMENT OF POLICY PROCEEDS (continued)

When asked, we will state in writing what the minimum amount of each monthly payment would be under these options. It is based on the sex and the adjusted age of the payee or payees in the year the first payment is due. To find the adjusted age, we increase or decrease the payee's age at that time, as follows:

| 1987-91 | 1992-98 | 1999-2006 | 2007-2013 | 2014-20 | 2021-28 | 2029+ |
|---------|---------|-----------|-----------|---------|---------|-------|
| +3 | +2 | +1 | 0 | -1 | -2 | -3 |

## 3A.  Life Income-Guaranteed Period

We make a payment each month during the lifetime of the payee. Payments do not change, and are guaranteed for 5, 10, 15, or 20 years, as chosen, even if that payee dies sooner.

### OPTION 3A TABLE

Minimum Monthly Payment per $1,000 of Proceeds

| Payee's Adjusted Age | MALE Guaranteed Period 5 Yrs | 10 Yrs | 15 Yrs | 20 Yrs | FEMALE Guaranteed Period 5 Yrs | 10 Yrs | 15 Yrs | 20 Yrs |
|------|------|------|------|------|------|------|------|------|
| 60 | $5.14 | $5.08 | $4.98 | $4.84 | $4.68 | $4.65 | $4.61 | $4.54 |
| 61 | 5.25 | 5.18 | 5.07 | 4.91 | 4.76 | 4.73 | 4.68 | 4.60 |
| 62 | 5.36 | 5.28 | 5.15 | 4.97 | 4.84 | 4.81 | 4.75 | 4.67 |
| 63 | 5.48 | 5.39 | 5.24 | 5.04 | 4.93 | 4.89 | 4.83 | 4.73 |
| 64 | 5.61 | 5.50 | 5.33 | 5.10 | 5.03 | 4.99 | 4.91 | 4.80 |
| 65 | 5.75 | 5.62 | 5.42 | 5.17 | 5.13 | 5.08 | 5.00 | 4.87 |
| 66 | 5.89 | 5.75 | 5.52 | 5.23 | 5.25 | 5.19 | 5.09 | 4.94 |
| 67 | 6.05 | 5.88 | 5.62 | 5.30 | 5.36 | 5.30 | 5.18 | 5.01 |
| 68 | 6.21 | 6.02 | 5.72 | 5.36 | 5.49 | 5.41 | 5.28 | 5.08 |
| 69 | 6.39 | 6.16 | 5.82 | 5.42 | 5.63 | 5.54 | 5.38 | 5.16 |
| 70 | 6.57 | 6.31 | 5.92 | 5.48 | 5.78 | 5.67 | 5.48 | 5.23 |
| 71 | 6.77 | 6.46 | 6.02 | 5.54 | 5.94 | 5.81 | 5.59 | 5.30 |
| 72 | 6.97 | 6.62 | 6.13 | 5.60 | 6.11 | 5.95 | 5.70 | 5.37 |
| 73 | 7.19 | 6.78 | 6.23 | 5.65 | 6.29 | 6.11 | 5.81 | 5.44 |
| 74 | 7.42 | 6.95 | 6.33 | 5.69 | 6.49 | 6.27 | 5.93 | 5.50 |
| 75 | 7.66 | 7.12 | 6.42 | 5.74 | 6.70 | 6.44 | 6.04 | 5.56 |
| 76 | 7.91 | 7.29 | 6.52 | 5.78 | 6.92 | 6.61 | 6.15 | 5.62 |
| 77 | 8.18 | 7.46 | 6.60 | 5.81 | 7.16 | 6.80 | 6.27 | 5.67 |
| 78 | 8.47 | 7.64 | 6.69 | 5.84 | 7.42 | 6.98 | 6.37 | 5.72 |
| 79 | 8.77 | 7.82 | 6.77 | 5.87 | 7.69 | 7.18 | 6.48 | 5.76 |
| 80 | 9.08 | 8.00 | 6.84 | 5.90 | 7.98 | 7.37 | 6.58 | 5.80 |
| 81 | 9.41 | 8.17 | 6.91 | 5.92 | 8.29 | 7.57 | 6.67 | 5.84 |
| 82 | 9.74 | 8.34 | 6.97 | 5.94 | 8.62 | 7.77 | 6.75 | 5.87 |
| 83 | 10.10 | 8.51 | 7.03 | 5.95 | 8.96 | 7.97 | 6.83 | 5.89 |
| 84 | 10.46 | 8.67 | 7.08 | 5.96 | 9.33 | 8.16 | 6.91 | 5.92 |
| 85 & over | 10.84 | 8.82 | 7.13 | 5.97 | 9.71 | 8.34 | 6.97 | 5.94 |

## 3B. Life Income - Guaranteed Total Amount

We make a payment each month during the lifetime of the payee. Payments do not change, and are guaranteed until the total amount paid equals the amount placed under this option, even if that payee dies sooner.

### OPTION 3B TABLE

Minimum Monthly Payment per $1,000 of Proceeds

| Payee's Adjusted Age | Male | Female | Payee's Adjusted Age | Male | Female |
|------|------|------|------|------|------|
| 60 | $4.93 | $4.57 | 73 | $6.47 | $5.87 |
| 61 | 5.02 | 4.64 | 74 | 6.64 | 6.01 |
| 62 | 5.11 | 4.71 | 75 | 6.81 | 6.17 |
| 63 | 5.20 | 4.79 | 76 | 7.00 | 6.34 |
| 64 | 5.30 | 4.87 | 77 | 7.19 | 6.51 |
| 65 | 5.40 | 4.96 | 78 | 7.40 | 6.70 |
| 66 | 5.52 | 5.05 | 79 | 7.62 | 6.90 |
| 67 | 5.63 | 5.14 | 80 | 7.85 | 7.11 |
| 68 | 5.75 | 5.25 | 81 | 8.09 | 7.33 |
| 69 | 5.88 | 5.36 | 82 | 8.35 | 7.57 |
| 70 | 6.02 | 5.47 | 83 | 8.61 | 7.81 |
| 71 | 6.16 | 5.60 | 84 | 8.89 | 8.07 |
| 72 | 6.31 | 5.73 | 85 & over | 9.19 | 8.35 |

## 3C.  Life Income - Joint and Survivor

We make a payment each month while both or one of the two payees are living. Payments do not change, and are guaranteed for 10 years, even if both payees die sooner.

### OPTION 3C TABLE
### 10 YEAR GUARANTEED PERIOD

Minimum Monthly Payment per $1,000 of Proceeds

| Male Payee's Adjusted Age | Female Payee's Adjusted Age 60 | 65 | 70 | 75 | 80 |
|------|------|------|------|------|------|
| 60 | $4.32 | $4.50 | $4.67 | $4.82 | $4.93 |
| 65 | 4.42 | 4.66 | 4.91 | 5.15 | 5.34 |
| 70 | 4.51 | 4.81 | 5.14 | 5.49 | 5.80 |
| 75 | 4.57 | 4.92 | 5.34 | 5.81 | 6.27 |
| 80 | 4.61 | 4.99 | 5.49 | 6.07 | 6.69 |

# GENERAL PROVISIONS

**Entire Contract** The entire contract consists of this policy, any attached riders or endorsements and the attached copy of the application. Only our Chairman, President, Secretary, or one of our Vice Presidents can change the contract, and then only in writing. No change will be made in the contract without your consent. No agent is authorized to change this contract.

**Application** In issuing this policy, we have relied on the statements made in the application. All such statements are deemed to be representations and not warranties. We assume these statements are true and complete to the best of the knowledge and belief of those who made them.

No statement made in connection with the application will be used by us to void the policy or to deny a claim unless that statement is a material misrepresentation and is part of the application.

**Incontestability** We will not contest this policy after it has been in force during the lifetime of the Insured for 2 years from the date of issue.

Please refer to the Incontestability of Rider provision that may be in any rider or riders attached to this policy.

**Suicide Exclusion** Suicide of the Insured, while sane or insane, within one year of the date of issue, is not covered by this policy. In that event, this policy will end and the only amount payable will be the premiums paid to us, less any unpaid loan. **(SEE ENDORSEMENT HEREON)**

**Dates** Policy years, months, and anniversaries are measured from the policy date.

**Age and Sex** In this policy when we refer to a person's age on any date, we mean his or her age on the birthday which is nearest that date. If a date on the Policy Data page is based on an age that is not correct, we may change the date to reflect the correct age.

If the age or sex of an insured person is not correct as stated, any amount payable under this policy will be what the premiums paid would have purchased at the correct age and sex.

**Policy Changes** If we agree, you may have riders added to this policy, or have it changed to another plan or to a smaller amount of insurance.

**Assignment** While the Insured is living, you can assign this policy or any interest in it. If you do this, your interest, and anyone else's is subject to

that of the assignee. As owner, you still have the rights of ownership that have not been assigned.

An assignee may not change the owner or the beneficiary, and may not elect or change an optional method of payment of proceeds. Any policy proceeds payable to the assignee will be paid in one sum.

We must have a copy of any assignment. We will not be responsible for the validity of an assignment. It will be subject to any payment we make or other action we take before we record it.

**Protection Against Creditors** Except as stated in the Assignment provision, payments we make under this policy are, to the extent the law permits, exempt from the claims, attachments, or levies of any creditors.

**Payments to Company** Any payment made to us by check or money order must be payable to New York Life Insurance Company. When asked, we will give a countersigned receipt, signed by our President or Secretary, for any premium paid to us.

**Basis of Computation** All cash values and net single premium rates referred to in this policy are based on the 1980 CSO Tables of Mortality. All extended insurance rates and cash values are based on the corresponding 1980 CET Insurance Tables. The interest rate is shown on the Policy Data page. Continuous functions are used.

At the end of each policy year not shown in the Table on the Policy Data page, the cash value is the reserve based on the Commissioner's Reserve Valuation Method. At any time, the cash value of any extended or paid-up insurance or paid-up additions is the reserve on each of these.

We have filed a statement with the insurance official in the state or district in which this policy is delivered. It describes, in detail, the method we used to compute these cash values. Each value is at least as much as the law requires.

**Conformity with Law** This policy is subject to all laws which apply.

**Voting Rights** Each year there is an election of persons to our Board of Directors. You have the right to vote in person or by mail if your policy is in force, and has been in force for at least one year after the date of issue. To find out more about this, write to the Secretary at our Home Office, 51 Madison Avenue, New York, New York 10010.

# ENDORSEMENT

## INCONTESTABILITY AND SUICIDE EXCLUSION PROVISIONS

This policy is issued based on an Insurance Exchange rider.

As such, the time period stated in the Incontest- ability and Suicide Exclusion provisions in this policy starts on the date of exchange.

The date of exchange is the date on which we have received all of the following at our Home Office:

1.  The application for this policy, signed by you and the person to be insured.

2.  The policy being exchanged.

3.  Evidence, acceptable to us, of the insurability of the person to be insured, and your insurable interest in that person.

4.  Any payment required for the exchange.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan S. Triga_
_____
Secretary

_Theodore A. Mathas_
_____
President

6460-89

# ENDORSEMENT
## CHECK-O-MATIC PREMIUM PAYMENT ARRANGEMENT

This policy is issued under New York Life Insurance Company's Check-O-Matic arrangement under which the Company has been authorized to draw checks monthly against a Bank Depositor's specified bank account in order to collect premiums. While premiums for this policy are payable under this arrangement, the Company's Check-O-Matic premium rate will apply.

If the Check-O-Matic arrangement for this policy is terminated, the premium interval will auto-matically be changed to quarterly if the quarterly premium would be at least $12.50, to semi-annually if the semi-annual premium would be at least $15.00 and a quarterly interval is not available, or to annually if a semi-annual interval is not available.

The automatic premium interval change shall be effective beginning with the due date of the first premium following the termination by at least 2 months so that a premium, if payable, would fall due on a policy anniversary.

**NEW YORK LIFE INSURANCE COMPANY**

_____
Secretary

_____
President

5023-76

**NEW YORK LIFE INSURANCE COMPANY (NYLIC)**
**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION (NYLIAC- A DELAWARE CORP.)**

## ENDORSEMENT

### MODIFICATION OF SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO) RIDER

This endorsement is made a part of the policy to which it is attached.

It may happen that the Owner of this policy is a beneficiary for life insurance proceeds under this policy, and is not the Insured's spouse. In this case, even if the SPPO Rider attached to this policy states otherwise, the Owner-beneficiary has the right to purchase paid-up life insurance on the life of the spouse. This purchase must be made within the 90 days after the Insured's death, in accordance with the provisions of the rider. The application for this insurance, signed by the Insured's spouse, must be received by the Company while the spouse is living. If it is not so received, and even if the SPPO Rider states otherwise, no paid-up life insurance will be payable under this endorsement or the rider, even if the Insured's spouse dies within the 90 days after the Insured's death.

It may happen that a Trust is the Owner and is a beneficiary for life insurance proceeds under this policy, and is authorized by the terms of the Trust instrument to purchase insurance on the life of the Insured's spouse. In this case, even if the SPPO Rider states otherwise, the Trust may purchase the paid-up life insurance. This purchase must be made in accordance with the provisions of the rider and as described in this endorsement. The Company has the right to obtain a copy of the Trust instrument.

Unless stated otherwise in this policy or in the policy for the paid-up insurance described in this endorsement, the beneficiary for that insurance will be the Owner, if living; otherwise, the estate of the Owner.

**NEW YORK LIFE INSURANCE AND**
**ANNUITY CORPORATION**

**By**  _____
                                                    President

_____
                                                    Secretary

**NEW YORK LIFE INSURANCE COMPANY**

**By**  _____
                                                    President

_____
                                                    Secretary

5933-83

NEW YORK LIFE INSURANCE COMPANY (NYLIC)
NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION (NYLIAC- A DELAWARE CORP.)

# ENDORSEMENT

### MODIFICATION OF SUICIDE EXCLUSION PROVISION

The Suicide Exclusion Provision of this policy and any other rider included in this policy is modified so that the suicide exclusion period is changed from one year to two years.

**NEW YORK LIFE INSURANCE AND
ANNUITY CORPORATION**

BY _____
                                    President

_____
                                    Secretary

**NEW YORK LIFE INSURANCE COMPANY**

BY _____
                                    President

_____
                                    Secretary

6370-87

# ENDORSEMENT
## CASH VALUE AND LOANS

This following provision is substituted in its entirety for the corresponding provision in this policy.

**Automatic Premium Loan (APL)** If a premium for this policy remains unpaid, this provision automatically provides a loan at the end of the grace period to pay the overdue premium, if the loan value is enough to pay that premium. If the loan value is not enough, the premium will not be paid by APL and the policy will lapse.

You can cancel or subsequently elect the APL provision by written notice to us. If any premium is not paid by the end of a grace period and an election of APL is not then in effect, the policy will lapse and the Options Upon Lapse provisions will apply if the policy has cash value or dividend values.

While the APL provision is in effect, the Options Upon Lapse provisions will not apply.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thrope_
_____
Secretary

_Theodore A. Mathas_
_____
President

# ENDORSEMENT

This policy is issued in place of a previously issued policy with the same policy number or in place of part of a previously issued policy with the same policy number.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thrope_

Secretary

_Theodore A. Mathas_

President

New York,   OCTOBER 8, 2007

6526-92

# NEW YORK LIFE INSURANCE COMPANY

## RIDER

### DISABILITY WAIVER OF PREMIUM

1. **What Is Your Benefit?** This rider provides for the waiver of premiums for this policy in the event the Insured becomes totally disabled, as defined in this rider, while this rider is in effect.

2. **When Will Premiums Be Waived?** We will start to waive the premiums for this policy when proof is furnished that the Insured's total disability has gone on for at least 6 months in a row. Premiums must be paid when due, until we approve a claim under this rider.

   If a total disability starts on or prior to the anniversary on which the Insured is age 60, we will waive all of the premiums which fall due during that total disability. If it goes on until the anniversary on which the Insured is age 65, we will waive all further premiums payable for this policy.

   If a total disability starts after the anniversary on which the Insured is age 60, we will waive only those premiums which fall due during that total disability, and prior to the anniversary on which the Insured is age 65.

   Premiums are waived at the interval of payment in effect when the total disability started. While we waive premiums, all insurance goes on as if they had been paid. We will not deduct a waived premium from the policy proceeds. If a total disability starts during the grace period, the overdue premium must be paid before we will approve any claim.

3. **How Is "Total Disability" Defined?** "Total Disability" means that, during the first two years of disability, the Insured cannot do any of the essential acts and duties of his or her job because of disease or bodily injury. After the first two years of total disability, "Total Disability" means that the Insured, because of disease or bodily injury, cannot do any of the essential acts and duties of his or her job, or any other job for which he or she is suited based on schooling, training, or experience. If the Insured can do some but not all of these acts and duties, disability is not total and premiums will not be waived.

   If the Insured is a minor and is required by law to attend school, "Total Disability" means that because of disease or bodily injury, he or she is not able to attend school.

   "Total Disability" also means the Insured's total loss, starting while this rider is in effect, of the sight of both eyes or the use of both hands, both feet, or one hand and one foot.

4. **What Are The Total Disabilities For Which Premiums Are Not Waived?** We will not waive premiums in connection with any of these total disabilities:

   (a) Those that start prior to the fifth birthday of the Insured, or start at a time when this rider is not in effect.

   (b) Those that are caused by an injury that is self-inflicted on purpose.

   (c) Those that are caused by any kind of war, declared or not, or by any act incident to a war or to an armed conflict involving the armed forces of one or more countries while the Insured is a member of those armed forces.

   (d) Those that are caused by a disease or injury, listed in the application for this rider, that occurred before this rider was in effect.

5. **How Is Proof of Total Disability Established?** Written notice and proof of this condition must be given to us, while the Insured is living and totally disabled, or as soon as it can reasonably be done.

6. **For How Long May Proof Be Required?** As long as we waive premiums, we may require proof from time to time of the Insured's total disability. After we have waived premiums for 2 years in a row, we will not need to have this proof more than once each year. As part of the proof, we may have the Insured examined, at our own expense, by a doctor we approve.

**(over)**

## DISABILITY WAIVER OF PREMIUM
### (continued)

**7. Will Premiums Be Refunded?** If a total disability starts after a premium has been paid, and if it goes on for at least 6 months in a row, we will refund the part of that premium paid for the period after the policy month when that disability started. Any other premium paid and then waived will be refunded in full.

**8. Does This Rider Have Cash Or Loan Values?** This rider does not have cash or loan values.

**9. Is This Rider Part Of The Contract?** This rider, when paid for, is made a part of the policy, based on the application for the rider.

**10. Will We Be Able To Contest This Rider?** We have no right to contest this rider after it has been in force during the lifetime of the Insured for 2 years from its date of issue, unless the Insured is totally disabled at some time within 2 years of the date of issue.

**11. What Is The Rider's Date of Issue and Amount?** When this rider is issued at the same time as the policy, we show the rider premium amount on the Policy Data page of the policy. The rider and the policy have the same date of issue. When this rider is added to a policy which is already in force, we also put in an add-on rider. The add-on rider shows the date of issue and premium amount.

**12. When Does This Rider End?** You can cancel this rider as of the due date of a premium. To do this, you must send the policy and your signed notice to us within 31 days of that date. If this rider is still in effect on the anniversary on which the Insured is age 65, it will end on that date.

This rider ends if the policy ends or is surrendered. Also, this rider will not be in effect if the policy lapses or is in force as extended or paid-up insurance.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thiese_
_____
Secretary

_Theodore A. Mathas_
_____
President

96225.11-2

# RIDER

## SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)

**Definitions** Any reference to an Insured under this rider includes both the Insured under the basic policy and any Other Covered Insured under any Term Insurance on Other Covered Insured rider attached to this policy.

**Benefit** If this rider is in effect at an Insured's death, the person who at that time is that Insured's spouse, has the right to purchase, without proof of insurability, new paid-up life insurance on his or her own life, in accordance with the provisions of this rider. That Insured's spouse must be a beneficiary to whom all or part of the life insurance proceeds resulting from that Insured's death under this policy or its riders will be payable in one sum.

**How Much Insurance May Be Purchased** The largest amount of paid-up life insurance which may be purchased is the amount of the insurance proceeds, applicable to that Insured which is payable in one sum to that Insured's spouse who is the beneficiary. The amount of insurance refers to amounts provided by the basic plan of insurance and/or by any Term Insurance on Other Covered Insured rider attached to the policy, plus any insurance (excluding accidental death benefits) from riders or dividends and which is payable in one sum (prior to deducting any unpaid loan).

However, the actual amount of insurance which can be purchased on any one person must meet our minimum amount requirements. The maximum amount of insurance which can be purchased on any one person can never be greater than the lesser of: (a) the amount which can be purchased by the life insurance proceeds (prior to deducting any unpaid loan) which the Insured's spouse is entitled to receive in one sum because of that Insured's death, or (b) 5 million dollars.

**Premium for New Insurance** The single premium rate for the new paid-up life insurance is based on the spouse's age and sex on the date the new insurance takes effect. This rate will not be more than 105% of the net single premium for paid-up life insurance, defined in the Values provision of this rider.

**Purchase of New Insurance** The Insured's

spouse can apply to purchase the new paid-up life insurance before we have paid life insurance proceeds under the policy to him or her. However, he or she must apply within the 90 days after the Insured's death.

The paid-up life insurance will take effect on the date when all three of the following events have taken place:

1. The spouse's signed application is received by us, while he or she is living.

2. We determine the life insurance proceeds of the policy payable to the spouse.

3. The entire single premium for the paid-up life insurance purchased under this rider has been received by us.

We will reduce the life insurance proceeds in Item 2 to pay the single premium for the paid-up life insurance. If these proceeds are not sufficient to pay that entire single premium, then the balance of that premium must be paid to us before any such insurance will take effect.

It may happen that an Insured's spouse, who has the right to apply for paid-up life insurance under this rider, dies at the same time as that Insured, or within 90 days after that date and before that paid-up insurance takes effect. In these cases, provided the Insured's spouse's death did not result from suicide, while sane or insane, we will pay the maximum amount of paid-up life insurance that the spouse could have applied for under this rider, less the applicable single premium for that insurance.

The beneficiary for any paid-up life insurance payable under a policy issued in connection with this rider will be the estate of that Insured's spouse, unless stated otherwise in the policy for that insurance.

**Availability of Riders** Riders may not be included with the new paid-up life insurance.

**Suicide Exclusion** Suicide of the Insured's spouse, while sane or insane, within 2 years after the date of the Insured's death, is not covered by this rider. In the event of the spouse's

**(over)**

990-375

## SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)
### (continued)

suicide within that 2 year period, any single premium paid for any new paid-up life insurance will be refunded.

**Values**  The new paid-up life insurance has cash value and loan value, and is eligible for dividends. However, it is not expected that any dividends will be payable on this insurance.

The net single premiums and the cash values for the paid-up insurance are based on the 1980 CSO Tables of Mortality. Continuous functions are used. Interest is compounded each year at 4%.

**Contract**  The rider is made a part of the policy to which it is attached at issue of the policy. If added to a policy which is already in force, this rider is made a part of that policy, based on the application for the rider.

**Incontestability of Rider**  We will not contest this rider if it is attached at issue of the policy.

If this rider is added to a policy which is already in force, we will not contest the rider after it has been in force during the lifetime of the Insured for 2 years from the date of issue of the rider.

**Dates**  This rider and the basic policy have the same date of issue, unless the rider is added to a policy which is already in force. In this case, the date of issue of this rider is shown in an add-on rider which is put in the basic policy by us.

**When Rider Ends**  You can cancel this rider as of any date. To do this, a signed notice must be sent to us within 31 days of that date. This rider ends if the policy is surrendered, or if the policy lapses and is not continued as extended insurance or reduced paid-up insurance. However, even though this policy states otherwise, this rider will be in effect if the policy is being continued as extended insurance or reduced paid-up insurance.

**NEW YORK LIFE INSURANCE COMPANY**

_____
Secretary

_____
President

90375-2

# RIDER

## INSURANCE EXCHANGE

**Exchange Provisions** The Owner can exchange this policy for a new policy on a successor Insured, while this rider is in effect, if on the date of exchange:

1. the successor Insured is living and is acceptable under the Company's current rules for the insurance applied for; and

2. the Owner has an insurable interest, satisfactory to the Company, in the successor Insured.

No insurance will be provided under the new policy before the date of exchange, and no insurance will be provided under this policy on or after that date.

The date of exchange will be the latest date on which the Company receives, at its Home Office, the following:

1. the Owner's application for exchange, also signed by the successor Insured, together with this policy;

2. evidence, satisfactory to the Company, of the successor Insured's insurability and the Owner's insurable interest in the successor Insured;

3. any payment required in connection with the exchange.

If this policy is assigned as of the date of the exchange, the Company may require the assignee's written consent to the exchange.

**New Policy** The new policy will be on the same plan of insurance as the plan of this policy on the date of exchange. Riders may not be included in the new policy unless agreed to by the Company. The face amount of the new policy may not be more than the face amount of this policy or, if greater, a face amount with a reserve equal to the reserve for the face amount of insurance provided by this policy as of the date of exchange.

The premium for the new policy will be based on the successor Insured's age and the Company's premium rates on the policy date of the new policy, and on the successor Insured's risk classification

as of the date of exchange. The policy date of the new policy will be the policy date of this policy if the successor Insured was born on or before that date; otherwise, the policy date of the new policy will be the policy anniversary of this policy which first follows the successor Insured's date of birth. Premiums for the new policy must be payable for at least 5 full years beyond the date of exchange.

The new policy will be the same edition and will have the same provisions and limitations as policies being issued by the Company on the policy date of the new policy. In addition, the new policy will have any limitations on the Company's liability which are generally included in policies being issued by the Company on the date of exchange.

The period of time described in the Incontestability and Suicide provisions of the new policy will be measured from the date of exchange.

**Required Payment or Allowance** Any required payment or allowance for the new policy will be determined according to the date of exchange, and will take into account any premiums paid for the period after the date of exchange.

If the date of exchange is before the second policy anniversary of this policy and

1. if the standard premium (i.e. the premium for the face amount of life or endowment insurance at the rate for standard risks) for the new policy is more than the standard premium for this policy, a payment will be required which is the excess of the standard premiums, which would have been due under the new policy before the date of exchange, over the corresponding standard premiums for this policy; or

2. if the standard premium for the new policy is less than the standard premium for this policy, the Company will make an allowance which is equal to the excess, if any, of the cash value of this policy over the cash value of the new policy as of the date of exchange.

**(over)**

978-432

## INSURANCE EXCHANGE
### (continued)

If the date of exchange is on or after the second policy anniversary of this policy and

1. if, as of the date of exchange, the cash value of the new policy is more than the cash value of this policy, a payment will be required which is 103% of the difference in these cash values; or

2. if, as of the date of exchange, the cash value of the new policy is less than the cash value of this policy, the Company will make an allowance which is the difference between these cash values.

The Company will apply any allowance as a dividend accumulation under the new policy.

**Dividend Values** Any dividend accumulations under this policy as of the date of exchange can be left with the Company to accumulate at interest under the new policy. If the Company agrees, the surrender value of any paid-up additions or Whole Life Additions under this policy may be applied, in accordance with the Company's rules, to provide paid-up additions or Whole Life Additions under the new policy.

**Loans** If an unpaid loan under this policy, including accrued interest, exceeds the loan value of the new policy on the date of exchange, repayment of that loan, to the extent that it exceeds that loan value, is required. Any loan under this policy which is not repaid at the time of the exchange will be charged against the sole security of the new policy as a loan in accordance with the Cash Value and Loans section of the new policy.

**Values** This rider does not have cash value or loan value.

**Contract** This rider is made a part of the policy to which it is attached.

**Termination of Rider** The Owner can terminate this rider by sending written notice to the Company.

This rider will no longer be in effect if the policy is terminated, surrendered, lapsed, or continued as extended insurance or reduced paid-up insurance.

This rider will also terminate, except as provided in its Dividend Values and Loans provisions, upon exchange of this policy for a new policy on a sucessor Insured.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thiga_
_____
Secretary

_Theodore A. Mathas_
_____
President

# RIDER

## DIVIDEND OPTION TERM  (DOT)

**Benefit**  This rider provides you with the right to purchase an insurance amount, up to the Target Face Amount shown on the Policy Data page, provided the Paid-up Additions Dividend Option under the policy is in effect.

We will pay to the beneficiary any insurance in effect at the death of the Insured. This payment will be made promptly when we have proof that the Insured died while this rider was in effect.

**Initial Purchase of Insurance**  The insurance under this rider is purchased by premium payments for the first 5 years this rider is in effect.  The premiums for the first 5 years this rider is in effect are shown on the Policy Data page and must be paid within 31 days of their due dates.  Each premium payment will first be applied to purchase one year term insurance.  The term insurance will equal the Target Face Amount less any paid-up insurance in force under this policy and any riders attached to this policy, on the policy anniversary.  Any remaining premium will be applied to purchase paid-up insurance.

Any paid-up life insurance purchased under this rider will be a paid-up addition, and no more premiums will be due for this insurance.  The amount of paid-up insurance which will be purchased will be based on the net single premium rate for the Insured's age on the date the purchase takes effect.

It may happen that the policy to which this rider is attached also includes an Option to Purchase Paid-up Additions (OPP) rider.  If during the first 5 year period this DOT rider is in effect no purchases are made under the OPP rider, that rider will end under its terms.  However, in this case, the OPP rider will be automatically restored after the fifth year this DOT rider is in effect.

**Subsequent Purchase of Insurance**  On the fifth and subsequent anniversaries, while this rider is in effect, we will surrender the cash value of any paid-up additions in force under this policy and any riders attached to this policy, to provide term insurance on the Insured for one year from that date.  The amount of cash value we surrender will be equal to the premium for the one year term insurance.  It will be based on the Insured's age and our premium rates on that date.

If the paid-up additions are sufficient, the amount of term insurance in force for a given year will be the difference between the Target Face Amount and the total amount of paid-up insurance in effect after the surrender has been made on the policy anniversary.

In paying for the term insurance under this rider, paid-up additions which were purchased under any rider attached to the policy are surrendered first.  If this surrender value is not sufficient to purchase the amount of term insurance available under this rider, paid-up additions purchased by dividends under the policy and any attached riders will automatically be surrendered.  If the paid-up additions are still insufficient to purchase the necessary term insurance, you must pay the additional premium amount in order to purchase the remaining term insurance.  This additional premium must be made within 31 days of the policy anniversary.  If this additional premium is not received, the amount of term insurance for that year will then be what the surrendered paid-up additions can purchase based on the applicable term insurance rate.

**Adjustment of Target Face Amount**  We will reduce the Target Face Amount on each policy anniversary by the face amount of any paid-up insurance which was surrendered during the prior policy year for any reason other than to pay for the term insurance under this rider, or to pay premiums under the policy.  Any such reduction in the Target Face Amount will be calculated before the amount of term insurance for the current policy year is determined.  You may apply to have the Target Face Amount restored to its original amount provided evidence of insurability satisfactory to us is furnished.

**Continuation of Rider**  If, on a given anniversary, the paid-up insurance in force equals or exceeds the Target Face Amount, the term amount will be reduced to zero.  Subsequently, if the paid-up insurance amount drops below the Target Face Amount due to a surrender to pay premiums due under the policy, this rider will again allow the purchase of term insurance.

**Charge for Term Insurance**  The charge for the term insurance provided under this rider for the first 5 years this rider is in effect is as stated on the Policy Data page.  After the fifth policy year, the charge for the term insurance provided under this rider will be based on the term insurance rates then in effect.  These rates will be uniform by class and will be set by us each year.

If this rider is issued on a standard basis, with no special underwriting, the charge for the term insurance will not be more than the single premium rate for one year term insurance based on the mortality table stated in the Basis of Computation provision in the policy, and the interest rate stated on the Policy Data page. For any other class, we will use the one year term rate in effect for the applicable class on the date the dividend is applied.

**(over)**

991-265

## DIVIDEND OPTION TERM (DOT)
### (continued)

**Unscheduled Increase of Target Face Amount** After the fifth year this rider is in effect, you have the right to request an increase in the Target Face Amount. The amount requested must be at least $25,000. If such a request is made, the following requirements must be met before an increase takes effect:

1.  Any payment required for underwriting and issue expenses incurred at the time the insurance is increased must be paid to us;

2.  The insurance in force, after an increase, must be within our acceptable issue limits; and

3.  Evidence of insurability, satisfactory to us, must be given for the increased amount.

Premium payments for this increased amount will be required for the first 5 years that insurance is in force in the manner described in the Initial Purchase of Insurance provision of this rider. These premium amounts will be shown in an add-on rider which we put in the policy.

The amount of any unscheduled increase provided under this rider will be subject to new Incontestability and Suicide Exclusion periods as described in this rider, beginning on the issue date of that increased amount.

**Values** During any of the first 5 years this rider is in effect, any premium amount remaining after the term insurance has been paid for will purchase paid-up insurance. The paid-up insurance purchased under this rider has cash value and loan value, and is eligible for dividends. The cash value will not decrease for 31 days after an anniversary. Cash values and net single premiums are based on the 1980 CSO Tables of Mortality (the male table if the Insured is a male or the female table if the Insured is a female). Continuous functions are used. Interest is compounded at 4%.

**Contract** This rider is made a part of the policy, based on the application for the rider.

**Incontestability of Rider** We will not contest this rider after it has been in force during the lifetime of the Insured for 2 years from its date of issue.

**Suicide Exclusion** Suicide of the Insured, while sane or insane, within 2 years of the date of issue of this rider, is not covered by this rider. In that event, this rider will end and the only amount payable will be all premiums paid to us under this rider.

**Dates and Amounts** This rider and the policy have the same date of issue, unless the rider is added to a policy which is already in force. In this case, the date of issue of this rider is shown in an add-on rider which we put in the policy. The add-on rider also shows the Target Face Amount and the premiums for the first 5 years this rider is in effect.

**When Rider Ends** You can cancel this rider at any time. To do this, you must send your signed notice to us.

Any paid-up additions, which were surrendered to provide term insurance for the period after the policy month in which that insurance ends, will be reapplied as paid-up additions. If the policy is reinstated, this rider will also be reinstated.

This rider will not be in effect if the Paid-up Additions Dividend Option selected in the policy is changed to another Dividend Option or, if the policy is in force as extended or paid-up insurance resulting from non-payment of policy premiums. Also, this rider ends if the policy ends or is surrendered.

**NEW YORK LIFE INSURANCE COMPANY**

_Susan A. Thrope_
_____
Secretary

_Theodore A. Mathas_
_____
President

# ENDORSEMENT

New York Life Insurance Company

Home Office-51 Madison Avenue
New York, N.Y. 10010

A Mutual Company Founded in 1845

Whole Life Policy

Life Insurance Proceeds Payable at Insured's
Death.

Premiums Payable During Insured's Lifetime,
as shown on the Policy Data page.

Policy is Eligible for Dividends.

987-50